**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Golden | **Case No. 16-40809 (ESS)** |
| Debtor. | **Chapter 7** |

_____

Tashanna B. Golden
Fka Tashanna B. Pearson

        Plaintiff.

   v.

JP Morgan Chase, GoldenTree Asset
Management LP, Firstmark Services, National
Collegiate Trust,

        Defendants.



**PLAINTIFF'S COMPLAINT**

Plaintiff Tashanna B. Golden ("Golden" or "Plaintiff"), by and through undersigned counsel, files this complaint against Defendants JP Morgan Chase Bank ("Chase"), GoldenTree Asset Management LP ("GoldenTree"), National Collegiate Trust ("NCT"), Firstmark Services LLC ("Firstmark," and collectively as "Defendants") on personal knowledge as to those matters within her capacity, and information and belief as to all other matters, as follows:

## I.

## PRELIMINARY STATEMENT

1. For the last ten years, student lenders and servicers, including defendants in this action, have been engaged in an effort to mislead student debtors and subvert the orderly working of the bankruptcy courts. Specifically, student lenders have been originating dischargeable consumer loans and disguising them as non-dischargeable student loans. Student lenders have done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to ensure they can continue to collect on discharged student loans after a debtor's bankruptcy without being cited for discharge violations. In order to effectuate this scheme, student lenders and creditors have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the Bankruptcy Code to cloak their deceptive actions in the color of law. Defendants in this action are willfully and maliciously engaged in a pattern and practice that they know defiles the proper working of the bankruptcy process. Plaintiff brings this action to enforce her rights under law.

## II.
## JURISDICTION AND VENUE

2. This Adversary Proceeding is brought under Case Number 16-40809 (ESS).

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under title 11 because it

concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

4.    This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601 and Federal Rules of Bankruptcy Procedure Rule 7001.

5.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

**III.**
**PARTIES**

6.    Plaintiff Tashana B. Golden is an individual consumer who at all relevant times was and remains a resident of the state of New York and this District.

7.    Defendant JP Morgan Chase Bank is a business located in the State of New York that regularly conducts commercial activity in this District and can be served through its agent, CT Corporation System, located at 111 8th Ave, 13th Floor, New York, NY 10017.

8.    Defendant National Collegiate Trust is a business located in the State of Massachusetts that regularly conducts commercial activity in this District and can be served through its agent, Transworld Systems, Inc., located at PO Box 4275, Norcross, GA, 30091.

9.    Defendant Firstmark Services is a business located in Lincoln, Nebraska that regularly conducts commercial activity in this District and can be served at P.O. Box 82522, Lincoln, NE, 68501.

10.    Defendant GoldenTree Asset Management LP is a business located in the State of New York that regularly conducts commercial activity in this District and can be served at 300 Park Ave, 21st Floor, New York, NY 10022.

# IV.
# BACKGROUND

## A.    Background

### Section 523(a)(8) Of The Bankruptcy Code

11.    In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

### Private lenders are given protections from bankruptcy discharge.

12.    In 2005, after extensive lobbying, private education lenders and debt collectors won limited protection in bankruptcy for some of their educational loan products. Specifically, Congress limited protection to private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").[1]

13.    Qualified Education Loans are defined in federal law as debts incurred by eligible students, at eligible institutions, for eligible education expenses.  In addition, in order for a debt to be a qualified education loan, the debtor must have been a taxpayer in the year the loan was originated, and the loan must have been originated within a "reasonable time" before or after the

---

[1] *In re Decena,* 2016 WL 1371031, at *6 (Bankr. E.D.N.Y. Apr. 4, 2016) ("[S]ection 523(a)(8)(B) excepts from discharge loans for attending an 'eligible educational institution,' recognition of which is dictated by the Federal School Codes List for the years 2004–05, which identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'").

expenses became due to the college or university.  All of these elements are necessary, and none are sufficient, to render a debt a Qualified Education Loan.

14.     Commercial lenders were not satisfied with the origination volume of Qualified Education Loans.  Thereafter, these lenders initiated new "non-qualified" education loan programs to high school students, students at unaccredited trade schools and colleges, recovering alcoholics and drug addicts in rehab programs, and direct-to-consumer ("DTC") loans to students at eligible schools for more than the "cost of attendance."[2]  Like student credit card debt, non-qualified education loans are simply another form of unsecured consumer debt and are discharged automatically upon entry of a discharge injunction.

### Student lenders discover a way to enrich themselves at the expense of the integrity of the bankruptcy system.

15.     Not content with the protections won from Congress in 2005, creditors soon devised a scheme designed to manipulate the presumption of non-dischargeability under section 523(a)(8) and deceive debtors and the bankruptcy courts into thinking that *all private student loans*, both qualified and non-qualified, were excepted from discharge.  In representing that non-qualified student loans were non-dischargeable, creditors were able to deceive students into

---

[2] Notably, these DTC loans do not require school certification, and so can be originated in amounts that far exceed federal borrowing limits.  Although some portion of these loans may coincidentally fall within the "Cost of Attendance," since qualified loans must be made **solely** for qualified education expenses, where any portion of the loan falls outside, that debt is a mixed-use loan. *See* IRS, 26 C.F.R. 1, REG-116826-97 ("Student I signs a promissory note for a loan which is secured by I's personal residence. Part of the loan proceeds will be used to pay for certain improvements to I's residence and part of the loan proceeds will be used to pay qualified higher education expenses of I's spouse. Because the loan is not incurred by I solely to pay qualified higher education expenses, the loan is not a qualified education loan.").

thinking these debts had not been excepted from discharge under section 523(a)(8) and demanding payment.[3]

### Student lenders reveal their bad faith by relaying different information to unsophisticated debtors and sophisticated investors.

16.    During the same time that lenders were telling consumers that their loans were non-dischargeable, lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations.[4]    Major lenders and underwriters (including Citibank, who originated two of the loans at issue in this action) thereafter included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), *only private loans made for qualified expenses* were excepted from discharge:

> Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans ***made for qualified education expenses*** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that ***the loans are not used for qualified education expenses***. If you own any notes, you will bear any risk of loss resulting from the

---

[3] And so, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek discharge their student debts. In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive discharged student debts, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

[4] *See, e.g,* 15 U.S.C. § 78j.

discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement. (emphasis added).[5]

**B.**     **Plaintiff's Factual and Procedural History**

**Plaintiff borrows $22,908 in non-qualified education loans.**

17.     During the 2006-2007 academic term, Plaintiff attended the University of Pennsylvania Law School ("Penn"). The published "Cost of Attendance" at Penn during that term was $53,500.  During this academic year, Plaintiff borrowed $27,500 from the federal government in student loans and received another $22,440 in scholarships and grants.  Thus, Plaintiff was entitled to borrow an additional $3,560 in qualified education loans.  However, Plaintiff borrowed an additional $7,103 on September 28, 2006 in private loans (the "NCT Loan").  Accordingly, the NCT Loan was originated in excess of the published "cost of attendance" and thus was not a qualified education loan as that term is defined in section 523(a)(8)(B). In addition, Plaintiff was not a taxpayer during this year and thus no money lent to her can be construed as a "qualified education loan."[6]  Nor is the NCT Loan a federal or non-profit loan under section 523(a)(8)(A)(i).  In order to be non-dischargeable as a federal or non-profit loan, it must be "made, insured, or guaranteed by a governmental unit" or made under a "program funded in whole or part by" a non-profit"—**merely having a non-profit guarantee a private education loan** is not sufficient to render the debt non-dischargeable under section 523(a)(8)(A)(i).

---

[5] *See,* SLM Student Loan Trust 2008-1 Prospectus Supplement dated January October 16, 2007, at 33 (Citi, along with Deutsche Bank Securities and Barclays Capital, served as "Joint Book-Runners" for this Trust)

[6] *In re LeBlanc,* 404 B.R. 793, 797 (Bankr. M.D. Pa. 2009) ("In this case, the unrebutted testimony was that the Debtor did not file a United States tax return during this relevant time period (Audio Record of 02/22/2008 at 9:45 AM), and so she could not have been a taxpayer. If she was not a taxpayer, then the loan extended to her could not have qualified under 26 U.S.C. § 221(d) and would not be a student loan under 11 U.S.C. § 523(a)(8).").

18.    During the 2007-2008 academic term, Plaintiff attended the University of Pennsylvania Law School ("Penn"). The published "Cost of Attendance" at Penn during that term was $56,380.   During this academic year, Plaintiff borrowed $52,347 from the federal government in student loans and received another $12,850 in scholarships and grants.   However, Plaintiff borrowed $6,557 from JP Morgan Chase (the "Chase Loan") and $9,348 Citibank (the "Citibank Loan").[7] Accordingly, these loans were originated in excess of the published "cost of attendance" and thus were not qualified education loans as that term is defined in section 523(a)(8)(B).   In addition, Plaintiff was not a taxpayer during this year and thus no money lent to her can be construed as a "qualified education loan."

**Plaintiff files for relief under Title 11 and receives a discharge that extinguishes all pre-petition debt not encompassed by section 523(a).**

19.    On February 29, 2016, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.  Debtor listed on Schedule F certain "student loans" owed "AES/Jpmgn ch," "Fm/slfv tru," "AES/NCT" in the aggregate amount of  $21,481 (collectively the "Debts").  On or about August 3, 2016, this Court issued a discharge order in Debtor's bankruptcy proceeding. On or about August 5, 2016, all creditors received notice of discharge. Debtor did not enter into an agreement under section 524(c) of the Bankruptcy Code. The Debts are not non-dischargeable student loans or conditional educational grants under section 523(a)(8).

20.    None of the Defendants filed an adversary proceeding to contest discharge of the Debts, although it was their burden to do so. Instead, Defendants, by and through themselves and

---

[7] The Citibank Loan was subsequently sold to Defendant GoldenTree Asset Management on or about October 24, 2015.

their agents, resumed collection efforts after the discharge entered, and fraudulently informed the debtor that the Debts were not discharged and demanded payment and accepted payment.[8]

## V.

## CAUSES OF ACTION

### COUNT ONE: DECLARATORY JUDGMENT

21.     Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

22.     Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Debts were discharged by operation of law on August 3, 2016 because they were not student loans protected by any subsection of section 523(a)(8).

### COUNT TWO: VIOLATIONS OF THE DISCHARGE ORDER (AGAINST ALL DEFENDANTS)

23.     Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

---

[8] *In re Haroon,* 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("A student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case. The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at that time . . . The parties' rights were fixed at that time and, if the debt was discharged, the creditor was barred from collecting it. The fact that they may not have agreed as to what that status was is immaterial. The status, although perhaps unknown to the parties or disputed by them, was fixed by the discharge order. Neither was obligated to commence a dischargeability action to resolve that issue and the failure to do so did not alter the status of the debt.  There are ramifications from not seeking a dischargeability determination, that is, whether the debt falls within an exception of § 523. One ramification is that a creditor who attempts to collect the debt proceeds at his own peril and accepts the consequences of his own actions. If a creditor wants to avoid the adverse consequences of an erroneous analysis, he can come to this court at any time, even after the case has been closed, and seek an adjudication of the dischargeability issue. 4 Collier on Bankruptcy, ¶ 523.04 (15th ed. revised 2004). If he fails to do that and seeks to collect the debt, the debtor may use a show cause order to have this determination made. If the creditor is wrong and the debt was discharged, he has violated § 524.")

24.     The Debts were discharged pursuant to the Discharge Order entered by this Court on August 3, 2016 because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

25.     Defendants were notified of the Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

26.     Defendants nonetheless sought to collect on the Debts by use of dunning letters, emails, text messages, and phone calls recover the discharged debt in violation of 11 U.S.C § 524.

27.     Plaintiff requests that Defendants be cited for civil contempt and ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

## COUNT THREE: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST FIRSTMARK SERVICES)

28.     Plaintiffs hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

29.     Defendants Firstmark Services is a  "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

30.     The Citibank Loan is a "debt" within the meaning of 15 U.S.C. §1692a(5).

31.     Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

32.     It is unlawful to use "false, deceptive or misleading" representations or to misrepresent the legal status or character of a debt under 15 U.S.C. §1692e(2)(A).

33.     It is unlawful to use any "unfair or unconscionable means" in seeking to collect on a debt under 15 U.S.C. §1692f.

34.    Defendants Firstmark misrepresented the legal status and character of the Citibank Loan as a non-dischargeable student loan in order to induce payment after the entry of discharge by the United States Bankruptcy Court for the Eastern District of New York.

35.    Defendants Firstmark used "deceptive and misleading" representations and "unfair means" in collecting on the Debt by representing to Plaintiff that the Citibank Loan had not been discharged, despite the fact that neither Firstmark (nor any of its agents or principals) had obtained a judicial determination on this question and thus had no way of knowing whether it was a true statement or not.    In so representing the legal status of the Citibank Loan, Defendant discouraged Plaintiff from seeking legal advice concerning the dischargeability of the Debt and falsely led her to believe the non-dischargeabilty of her the Citibank Loan was a fully adjudicated legal conclusion.[9]

36.    Plaintiff has suffered direct and concrete injury to property as a result of these misrepresentations.

37.    Plaintiff requests damages in an amount to be determined at trial for Defendant Firstmark Services' violations of the Fair Debt Collection Practices Act and also request an award of attorneys' fees and costs.

---

[9] *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012) ("Moreover, not only is the Collection Letter's representation in this regard literally false, it is also fundamentally misleading in that it suggests that the debtor has no possible means of discharging her student loans in bankruptcy. We think that, upon reading the Collection Letter, the least sophisticated consumer might very well refrain from seeking the advice of counsel, who could then assist her in pursuing all available means of discharging her debt through bankruptcy. The Collection Letter's capacity to discourage debtors from fully availing themselves of their legal rights renders its misrepresentation exactly the kind of 'abusive debt collection practice [ ]' that the FDCPA was designed to target.").

## VI.

## <u>PRAYER</u>

In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered against Defendants for:

**(1)**    declaratory and injunctive relief;

**(2)**    actual damages, statutory damages, monetary sanctions and punitive damages;

**(3)**    attorneys' fees and costs to the fullest extent permitted under the law;

**(4)**    prepetition and post-judgment interest; and

**(5)**    other such relief as the Court deems just and proper.


Dated: January 18, 2017

Respectfully submitted,


    <u>/s/ Austin C. Smith</u>
Austin C. Smith
SMITH LAW GROUP
3 Mitchell Place
New York, NY 10017
917-992-2121
austin@acsmithlawgroup.com


**ATTORNEY FOR PLAINTIFF**