**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

In re Golden

Debtor.

**Case No. 16-40809 (ESS)**

**Chapter 7**

---

**Adv. Pro. 17-1005 (ESS)**

Tashanna B. Golden
Fka Tashanna B. Pearson on behalf of herself and all others similarly situated

Plaintiffs,

v.

National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-4, GS2 2016-A, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services, Firstmark Services

Defendants.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Tashanna B. Golden ("Golden" or "Plaintiff"), on behalf of herself and those similarly situated, by and through undersigned counsel, files this complaint against Defendants National Collegiate Student Loan Trust 2005-3 ("NCT 2005"), National Collegiate Student Loan Trust 2006-4 ("NCT 2006"), GS2 2016-A ("GS2"), Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("AES") and Firstmark Services LLC ("Firstmark," and collectively as "Defendants") on personal knowledge as to those matters within her capacity, and information and belief as to all other matters, as follows:

## **PRELIMINARY STATEMENT**

1. For at least the last ten years, Defendants and other student lenders and servicers have acted to mislead student debtors and subvert the orderly working of the bankruptcy courts. Specifically, Defendants and other student lenders have originated and serviced dischargeable consumer loans but have disguised them as non-dischargeable student loans in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to collect on those discharged student loans after bankruptcy. In order to effectuate this scheme, Defendants and other student lenders and creditors have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the Bankruptcy Code to cloak their deceptive actions in the color of law. Defendants in this action are willfully and maliciously engaged in a pattern and practice that they know defiles the proper working of the bankruptcy process. Plaintiff brings this action to enforce her rights and the rights of others similarly situated under law.

**JURISDICTION AND VENUE**

2. This Adversary Proceeding is brought under Case Number 16-40809 (ESS).

3. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

4. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 1601 and Federal Rules of Bankruptcy Procedure Rule 7001.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

**PARTIES**

6. Plaintiff Tashana B. Golden is an individual consumer who at all relevant times was and remains a resident of the state of New York and this District.

7. The Class Members are similarly situated individuals who have declared bankruptcy since 2005 in the various districts of the United States with loans originated and/or serviced by Defendants that do not meet the definition of a non-dischargeable qualified education loan in IRC 221(d) and 11 U.S.C. § 523(a)(8)(B).

8. Defendant National Collegiate Trust is a business located in the State of Massachusetts that regularly conducts commercial activity in this District and can be served through its agent, Transworld Systems, Inc., located at PO Box 4275, Norcross, GA, 30091.

9. Defendant Firstmark Services is a business located in Lincoln, Nebraska that regularly conducts commercial activity in this District and can be served at P.O. Box 82522, Lincoln, NE, 68501.

10. Pennsylvania Higher Education Assistance Agency ("PHEAA") d/b/a American Assistance Services, is a Pennsylvania public corporation and government instrumentality that regularly conducts commercial activity in this District and has its principle place of business in Harrisburg, Pennsylvania.

11. Defendant GS2 2016-A is business located in San Diego, California that regularly conducts commercial activity in this District and can be served at 401 W A St, San Diego, CA 92101.

## BACKGROUND

### Section 523(a)(8) Of The Bankruptcy Code

12. In 1978, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship) to address a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation.

13. 11 U.S.C. § 523(a)(8) excluded from bankruptcy discharge government loans that became due more than five years prior to the bankruptcy petition, repayment of which would not cause "undue hardship" on the debtor.

14. Later amendments lengthened and then eliminated the five-year non-dischargeability time frame for loans by the federal government, making it increasingly difficult for debtors to ever attain discharges of student loan debts.

15. In 2005, after extensive lobbying, private education lenders and debt collectors won limited protection in bankruptcy for some of their educational loan products. Specifically, the Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA") expanded the definition of non-dischargeable student debt to include "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 11 U.S.C. §523(a) (8) (B). Thus, Congress limited protection to private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").

16. Qualified Education Loans are defined by Section 221 (d)(1) of the Internal Revenue Code of 1986 (26 U.S. C. §221(d)(1)) as debts incurred by eligible students, at eligible institutions, for eligible education expenses. In turn, a "qualified higher education expense" is one that is used to pay for the cost of attendance at a qualified educational institution. 26 U.S.C. §221(d)(2).

17. Originally, the private lending mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which would then ensure that the funds were used only for qualified expenses. However, commercial lenders were not satisfied with the origination volume of Qualified Education Loans. Thereafter, these lenders initiated new "non-qualified" education loan programs to high school students, students at unaccredited trade schools and colleges, recovering alcoholics and drug addicts in rehab programs, and direct-to-consumer ("DTC") loans to students at eligible schools for more than the "cost of attendance."

18. DTC loans do not require school certification, and so can be originated in amounts that far exceed federal borrowing limits. Moreover, qualified loans must be made

solely for qualified education expenses, so even if some portion of at DTC loans may fall within the "Cost of Attendance," if any of the DTC loan is outside of the "Cost of Attendance" it is a "mixed-use" loan and is not a qualified education loan. Such non-qualified DTC loans are simply another form of unsecured consumer debt, like student credit card debt, and are discharged automatically upon entry of a discharge injunction.

**Student lenders discover a way to enrich themselves at the expense of the integrity of the bankruptcy system.**

19. Prior to the 2005 amendment, section 523(a)(8) was easy to apply because essentially all student loans were made by the federal government under the guidelines for non-dischargeability. Thus, if a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable.

20. However, as discussed above, the 2005 amendments to section 523(a)(8) allowed for private loans that did not necessarily fall within the scope of non-dischargeability under section 523(a)(8).

21. Nevertheless, the assumption that all student debt was non-dischargeable continued and Defendants and other creditors used that common but inaccurate belief to deceive debtors into making payments on discharged debts.

22. To effectuate this scheme, Defendants and other creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose when, in fact, only private loans that met the requirements of section 523(a)(8)(B) were non-dischargeable.

23. Defendants also failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of

section 523(a)(8)(B), and in particular, that debtors' non-qualified loans were, in fact, discharged in bankruptcy.

24. Thus, a law that was originally designed to prevent students from taking advantage of the bankruptcy system by borrowing and then discharging debt that was incurred in attending an accredited school, instead enabled unscrupulous creditors to defraud vulnerable and unsophisticated student borrowers. The loans at issue here are disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between loans that are or are not dischargeable or to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking.

**Student lenders reveal their bad faith by relaying different information to unsophisticated debtors and sophisticated investors.**

25. During the same time that lenders were telling consumers that their loans were non-dischargeable, Defendants and other lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations. Defendants and other major lenders and underwriters (including Citibank, who originated two of the loans at issue in this action) thereafter included in student loan asset-backed securities' prospectuses language expressly warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge. For example, a National Collegiate Student Loan Trust 2007-4 dated September 17, 2007, specifically stated:

> Under current law, private student loans that are guaranteed by non-profit entities **or that do not exceed the borrower's cost of attendance**, less other financial aid, are generally not dischargeable

> by a borrower in bankruptcy under the U.S. Bankruptcy Code; however, they can become dischargeable if the borrower proves that keeping the loans non-dischargeable would impose an undue hardship on the debtor and the debtor's dependents. (emphasis added)

26. Thus, Defendants were aware of the confusion that could exist even for sophisticated parties with regard to the dischargeability of private student loans and made affirmative disclosures in that area, but made no such disclosures to debtors who were being pursued in an attempt to collect discharged debt.

**Plaintiff Golden borrowed Non-Qualified Education Loans that Were Discharged In Bankruptcy**

27. During the 2006-2007 academic term, Golden attended the University of Pennsylvania Law School ("Penn").

28. The published "Cost of Attendance" at Penn during that term was $53,500.

29. During this academic year, Golden borrowed $27,500 from the federal government in student loans and received another $22,440 in scholarships and grants. Thus, Golden was entitled to borrow an additional $3,560 in qualified education loans (the sum of the two loans was $3,560 less than the Cost of Attendance at Penn).

30. Golden borrowed an additional $7,103 on September 28, 2006 in private loans from National Collegiate Trust (the "NCT Loan"). Thus, the NCT Loan was originated in excess of the published "cost of attendance" and was not a qualified education loan under section 523(a)(8)(B).

31. The NCT Loan was serviced by AES.

32. Moreover, the NCT Loan was not "made, insured, or guaranteed by a governmental unit" or made under a "program funded in whole or part by" a non-profit" and thus was not non-dischargeable under section 523(a)(8)(A)(i).

33. Upon information and belief, Plaintiff was never issued a 1098-E tax form to deduct the interest payments made on the NCT loan.

34. During the 2007-2008 academic term, Golden also attended Penn for the 2007-2008 academic term.

35. The published "Cost of Attendance" at Penn during that term was $56,380.

36. During this academic year, Golden borrowed $52,347 from the federal government in student loans and received another $12,850 in scholarships and grants. Thus, Golden already had exceeded the Cost of Attendance in loans and scholarship/grants.

37. However, Golden borrowed an additional $6,557 from JP Morgan Chase and $9,348 Citibank.[1] Thus, these loans were originated in excess of the published "cost of attendance" and were not qualified education loans as that term is defined in section 523(a)(8)(B).

38. Upon information and belief, Plaintiff was never issued a 1098-E tax form to deduct the interest payments made on the Chase Loan or Citibank Loan.

39. On February 29, 2016, Golden filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York.

40. Golden properly listed on Schedule F certain "student loans" owed, including "AES/Jpmgn ch," "Fm/slfv tru," "AES/NCT", which represented the loans that were made in

[1] The Citibank Loan was subsequently sold to Defendant GoldenTree Asset Management on or about October 24, 2015, which was later securitized into the GS2 Trust.

excess of Penn's Cost of Attendance for the two relevant academic years. The aggregate amount of those loans was $21,481 (collectively the "Debts").

41. The Debts are not non-dischargeable student loans or conditional educational grants under section 523(a)(8).

42. On or about August 3, 2016, this Court issued a discharge order in Golden's bankruptcy proceeding.

43. On or about August 5, 2016, all creditors received notice of discharge. Golden did not enter into an agreement under section 524(c) of the Bankruptcy Code. None of the Defendants filed an adversary proceeding to contest discharge of the Debts, although it was their legal burden to do so.

44. However, instead of treating the Debts as discharged (because they were unsecured debt that was discharged in bankruptcy and not properly contested), Defendants, by and through themselves and their agents, resumed collection efforts after the discharge entered, and fraudulently informed the debtor that the Debts were not discharged and demanded payment and accepted payment.

45. Defendants' abusive, deceptive and illegal collection efforts after Golden's Debts were discharged were made knowingly and willfully in violation of this Court's discharge orders.

***All Class Members Share A Similar Narrative.***

46. All Class Members share a similar factual narrative.

47. All Class Members received loans from Defendants in amounts that exceeded the "Cost of Attendance" of their respective schools and thus were not qualified educational expenses that were exempted from discharge by 11 U.S.C. §523(a)(8).

48. No Class Members were issued a 1098 on their respective debts

49. All Class Members filed for bankruptcy protection in various district courts of the United States.

50. At the conclusion of these bankruptcy cases, all Class Members were issued discharge orders.

51. These Discharge Orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

52. Notwithstanding the discharge of these debts, Defendants employed processes, practices and acts designed to mislead Class Members into believing that their debts were not discharged and inducing them to make payments on the extinguished debts.

53. Defendants have misled Class Members and sought to collect on discharged debts through various means, including but not restricted to, the use of dunning letters, emails and phone calls demanding repayment. In addition, Defendants have continued to report these debts as delinquent to the major credit bureaus to compel payment.

54. Defendants have also commenced or continued legal actions against Class Members to induce payment on discharged debts.

## **CLASS ACTION ALLEGATIONS**

55. Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Golden brings this action on behalf of herself and all other persons similarly situated, as a representative of the following class:

56. Citizens of the various states who filed for bankruptcy in any of district courts of the United States and were issued Discharge Orders since April 20, 2005 (the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act), who:

a) Obtained non-qualified education loans in amounts that exceeded the "Cost of Attendance" and were not excepted from discharge under any provision of section 523(a)(8);

b) have never reaffirmed any pre-petition loans that exceeded the Cost of Attendance;

c) have nonetheless been subjected to Defendants' attempts to induce payment on discharged debts and have or have not repaid these loans since bankruptcy.

57. Class Members reserve the right to amend the definition of the class and/or add subclasses to include or exclude members.

58. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

**A. Numerosity**

59. The persons in the class of plaintiffs are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through class action.

60. Upon information and belief, plaintiff Class Members have been through the bankruptcy process during the last decade and the number of plaintiffs will likely exceed 10,000. The quantity, identity, and location of class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

61. Upon information and belief, the individual members of the class of plaintiffs, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

**B. Commonality**

62. There are common questions of law/fact affecting the entirety of the class. Specifically, predominant common questions include without limitation: (i) whether the Class Members' loans were discharged at the conclusion of their bankruptcy cases; and (ii) whether

Defendants violated the applicable Discharge Orders by seeking to collect on discharged private education debt.

63. Answers to these common questions will drive the resolution of the injuries shared by each member of the class.

**C. <u>Typicality</u>**

64. Class Members' claims against Defendants are representative of those of all Class Members. Specifically, Golden's loans are identical in nature to the Class Members' loans originated and serviced by Defendants.

**D. <u>Predominance and Superiority</u>**

65. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. The questions include, but are not limited to:

> (i) whether the Class Members' loans were discharged at the conclusion of their bankruptcy cases; and
>
> (ii) whether Defendants violated the applicable discharge orders by seeking to collect on discharged loans.

66. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications for individual members which would establish conflicting standards of conduct for the parties opposing the Class. Such identical actions would also, as well as a practical matter, be dispositive of interests of other members not parties to the adjudications and would substantially impair or impede their ability to protect their interests.

67. Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunction relief or corresponding declaratory relief with respect to the Class as a whole.

68. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

**E. Adequacy of Representation**

69. Golden will fairly and adequately represent and protect the interests of the members of the class of plaintiffs. Golden's interests are squarely aligned with those of individual members of the class. Plaintiff's counsel, Smith Law Group and Boies Schiller Flexner LLP, are experienced in class actions lawsuits, complex commercial litigation, bankruptcy law and procedure, and student loan litigation.

## CAUSES OF ACTION

**Count One: Declaratory Judgment**

70. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

71. Plaintiff requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that the Debts were discharged by operation of law on August 3, 2016 because they were not student loans protected by any subsection of section 523(a)(8).

**Count Two: Violations Of The Discharge Order (Against All Defendants)**

72. Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

73. The Debts were discharged pursuant to the Discharge Order entered by this Court on August 3, 2016 because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8).

74. Defendants were notified of the Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

75. Defendants nonetheless sought to collect on the Debts by use of dunning letters, emails, text messages, and phone calls recover the discharged debt in violation of 11 U.S.C § 524.

76. Plaintiff requests that Defendants be cited for civil contempt and ordered to pay damages in an amount to be determined at trial for the willful violations of the discharge injunctions pursuant to 11 U.S.C § 105 and also request an award of attorneys' fees and costs.

**Count Three: Violations Of The Fair Debt Collection Practices Act (Against Firstmark Services)**

77. Plaintiffs hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

78. Defendants Firstmark Services is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

79. The Citibank Loan is a "debt" within the meaning of 15 U.S.C. §1692a(5).

80. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1692a(3).

81. It is unlawful to use "false, deceptive or misleading" representations or to misrepresent the legal status or character of a debt under 15 U.S.C. §1692e(2)(A).

82. It is unlawful to use any "unfair or unconscionable means" in seeking to collect on a debt under 15 U.S.C. §1692f.

83. Defendants Firstmark misrepresented the legal status and character of the Citibank Loan as a non-dischargeable student loan in order to induce payment after the entry of discharge by the United States Bankruptcy Court for the Eastern District of New York.

84. Defendant Firstmark also used "deceptive and misleading" representations and "unfair means" in collecting on the Debt by representing to Plaintiff that the Citibank Loan had not been discharged, despite the fact that neither Firstmark (nor any of its agents or principals) had obtained a judicial determination on this question and thus had no way of knowing whether it was a true statement or not. In so representing the legal status of the Citibank Loan, Defendant discouraged Plaintiff from seeking legal advice concerning the dischargeability of the Debt and falsely led her to believe the non-dischargeabilty of her the Citibank Loan was a fully adjudicated legal conclusion.

85. Plaintiff has suffered direct and concrete injury to property as a result of these misrepresentations.

86. Plaintiff requests damages in an amount to be determined at trial for Defendant Firstmark Services' violations of the Fair Debt Collection Practices Act and also request an award of attorneys' fees and costs.

**PRAYER**

In light of the foregoing, Plaintiff requests that Defendants be cited to appear and judgment be entered against Defendants for:

(1) declaratory and injunctive relief;

(2) actual damages, statutory damages, monetary sanctions and punitive damages;

(3) Disgorgement

(4) attorneys' fees and costs to the fullest extent permitted under the law;

(5) prepetition and post-judgment interest; and

(6) other such relief as the Court deems just and proper.

Dated: October 17, 2017

Respectfully submitted,

/s/ Austin C. Smith

Austin C. Smith
SMITH LAW GROUP
3 Mitchell Place
New York, NY 10017
917-992-2121
austin@acsmithlawgroup.com

**BOIES SCHILLER FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
Robert C. Tietjen
30 South Pearl St., 11th Floor
Albany, NY 12207
(518) 434-0600

**ATTORNEYS FOR PLAINTIFF AND CLASS**