Hearing Date: January 30, 2017
9:30 A.M.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re GOLDEN, | **Case No. 16-40809 (ESS)** |
| Debtor. | **Chapter 7** |
| TASHANNA B. GOLDEN, fka TASHANNA B. PEARSON, on behalf of herself and all others similarly situated, | |
| Plaintiffs, | **Adv. Pro. 17-1005 (ESS)** |
| v. | |
| NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, GS2 2016-A, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY d/b/a AMERICAN EDUCATION SERVICES, and FIRSTMARK SERVICES, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PENNSYLVANIA**
**HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS**

PEPPER HAMILTON LLP
Attorneys for Defendant Pennsylvania
  Higher Education Assistance Agency
620 Eighth Avenue, 37th Floor
New York, NY 10018
Telephone:  (212) 808-2700

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

ARGUMENT ..............................................................................................................................5

POINT I    THE COMPLAINT FAILS TO ALLEGE ANY PLAUSIBLE FACTS AS
AGAINST PHEAA...................................................................................................8

POINT II  AS A MATTER OF LAW, NONE OF MS. GOLDEN's DEBTS ARE
DISCHARGEABLE ..............................................................................................10

A.    As a Matter of Law, the Debts Are Qualified Education Loans........................... 11

B.    As A Matter of Law, the Debts Are "Educational Benefit Loans"....................... 15

POINT III  AS A MATTER OF LAW, MS. GOLDEN FAILS TO ALLEGE ANY
FACTS CONCERNING THE LOAN DOCUMENTS ................................................18

CONCLUSION............................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

5-Star Management, Inc. v. Rogers, 940 F. Supp. 512 (E.D.N.Y. 1996) ........................7

Ashcroft v. Iqbal, 556 U.S. 660 (2009)..............................................................2, 5, 6, 9

*Barber v. Ruzzo*, No. 1:10-cv-1198, 2011 U.S. Dist. LEXIS 120773 (N.D.N.Y.
    Oct. 19, 2011) .........................................................................................................10

Beesley v. Royal Bank of Canada (In re Beesley), No. 12-2444 CMB, 2013
    Bankr. LEXIS 3811 (Bankr. W.D. Pa. Sept 13, 2013) ....................................11, 17

Benson v. Corbin (In re Corbin), 506 B.R. 287 (Bankr. W. D. Wash 2014)...........11, 17

Bigio v. Coca-Cola Co., 675 F.3d 163 (2d Cir. 2012)..................................................6

In re Bohrer, 266 B.R. 200 (Bankr. N.D. Cal. 2001) ....................................................7

Brown v. CitiBank, N.A. (In re Brown), 539 B.R. 853 (Bankr. S.D. Cal. 2015) ..................16, 17

Brown v. Rust (In re Rust), 510 B.R. 562 (Bankr. E.D. Ky. 2014)..............................17

Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49 (Bankr. E.D.N.Y.
    2016) .......................................................................................................................17

Carow v. Chase Loan Service (In re Carow), No. 10-7011, 2011 Bankr. LEXIS
    823 (Bankr. D.N.D. Mar. 2, 2011).................................................11, 15, 16, 19

*Carruthers v. Flaum*, 388 F. Supp. 2d 360 (S.D.N.Y. 2005)........................................7

Cazenova College v. Renshaw (In re Renshaw), 222 F.3d 82 (2d Cir. 2000).............11

First National Insurance Co. of America v. Bartolemi (In re Bartolemi), 303 B.R.
    245 (Bankr. D. Conn. 2004).....................................................................................7

Flores v. Southern Peru Copper Corp., 343 F.3d 140 (2d Cir. 2003) .......................5, 8

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) .......................................................6

Harris v. NYU Langone Medical Center, No. 12-CV-454(RA)(JSC), 2013 U.S.
    Dist. LEXIS 99328 (S.D.N.Y. July 9, 2013) ............................................................8

Holmes v. Allstate Corp., No. 11 Civ. 1543 (LTS) (DF), 2012 U.S. Dist. LEXIS
    24883 (S.D.N.Y. Jan. 27, 2012)............................................................................8, 9

Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581 (2016) ........................17

Institute of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624 (B.A.P. 9th Cir. 2015) ................................................................................................11

L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419 (2d Cir. 2011) ..................................6

Landow v. Wachovia Secs., LLC, 966 F. Supp. 2d 106 (E.D.N.Y. 2013) ......................7

Maas v. Northstar Education Finance, Inc. (In re Maas), 497 B.R. 863 (Bankr. W.D. Mich. 2013) ..............................................................................................18

Mason v. American Tobacco Co., 346 F.3d 36 (2d Cir. 2003), cert. denied, 541 U.S. 1357 (2004) ..................................................................................................8

Micko v. Student Loan Finance Corp. (In re Micko), 356 B.R. 210 (Bankr. D. Ariz. 2006) .........................................................................................................16

Murphy v. Pennsylvania Higher Education Assistance Agency (In re Murphy), 282 F.3d 868 (5th Cir. 2002) ...............................................................................18

Noland v. Iowa Student Loan Liquidity Corp. (In re Noland), No. A09-8048-TJM, 2010 Bankr. LEXIS 1188 (Bankr. D. Neb. March 30, 2010) ................................19

Pandozy v. Robert J. Gumenick, P.C., No. 07 Civ 1242 (NRB), 2008 U.S. Dist. LEXIS 41440 (S.D.N.Y. May 23, 2008) .................................................................7

Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals., Inc., 847 F.3d 92 (2d Cir. 2017)...........................................................................................8

Rizor v. Acapita Educational Finance Corp. (In re Rizor), 553 B.R. 144 (Bankr. D. Alaska 2016) ...........................................................................................15, 18

Roy v. Sallie Mae (In re Roy), No. 08-33318, 2010 Bankr. LEXIS 1218 (Bankr. D.N.J. Apr. 15, 2010).........................................................................................16

Sensient Technologies Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828 (Bankr. E.D. Wis. 2008) .................................................................................................16

*Shaw v. Educap, Inc. (In re Shaw)*, No. 13-3251, 2015 Bankr. LEXIS 658 (Bankr. S.D. Tex. Mar. 3, 2015) .......................................................................................16

Sira v. Morton, 380 F.3d 57 (2d Cir. 2004) ...................................................................6

Skipworth v. Citibank Student Loan Corp. (In re Skipworth), No. 09-80149-JAC7, 2010 Bankr. LEXIS 1201 (Bankr. N.D. Ala. Apr. 1, 2010) ........................17

Ying Li v. City of New York, 246 F. Supp. 3d 578 (E.D.N.Y 2017).............................8

Zurich American Insurance Co. v. Dah Sing Bank, Ltd., No. 03 Civ. 7778 (DLC), 2004 U.S. Dist. LEXIS 10786 (S.D.N.Y. June 15, 2004) ......................................9

Page(s)

**STATUTES AND RULES**

11 U.S.C. § 523............................................................................................. passim

11 U.S.C. § 523(a)(8)...........................................................................2, 5, 11, 16

11 U.S.C. § 523(a)(8)(A)(i) ......................................................................16, 17, 18

11 U.S.C. § 523(a)(8)(B) ....................................................................................19

20 U.S.C. § 1087ll..................................................................................12, 14, 15

26 U.S.C. § 221(d)(1) ...............................................................................14, 15

37 U.S.C. § 403(b) ...........................................................................................12

Rule 7008, Bankruptcy Rules ..............................................................................8

Rule 8, Federal Rules of Civil Procedure ..........................................................2, 8, 9

Rule 12(b)(6) , Federal Rules of Civil Procedure ......................................4, 5, 6, 7, 9

## PRELIMINARY STATEMENT

Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"), submits this memorandum of law in support of its Motion to Dismiss the Complaint of plaintiff Tashanna B. Golden (fka Tashanna B. Pearson), as against PHEAA in its entirety.

Ms. Golden purports to bring this Complaint as a class action, asserting claims that her student loans were discharged in connection with the discharge order issued in her personal Chapter 7 bankruptcy proceeding.   Ms. Golden contends that PHEAA and others violated this discharge order and are in contempt of that order because of alleged efforts to continue to collect on the student loans that Ms. Golden obtained to finance two years of education at the University of Pennsylvania Law School.

This motion is directed at the two claims (Counts I and II) that Ms. Golden asserts as against PHEAA.   It does not address, as it is not necessary to do so at this time, the class allegations that Ms. Golden asserts in her Complaint.[1]

Ms. Golden utterly fails to plead any claims against PHEAA.   Most noteworthy is the paucity of any allegations as against PHEAA to give rise to claims.   In a 16-page Complaint, Ms. Golden devotes almost three full pages to inappropriate allegations regarding the laws with respect to student loans under the Bankruptcy Code.   Yet, in stark contrast, Ms. Golden devotes only five lines of allegations to the conduct of PHEAA, and to the extent that she makes any kind of allegations, it is as a group allegation against all "Defendants," without any differentiation or

---

[1] If this Court grants PHEAA's Motion to Dismiss the Complaint against PHEAA, then the class action allegations are moot.   Further, the issues raised by the class action allegations, including this Court's jurisdiction to entertain such a class and whether such a class may be maintained under Rule 23 of the Federal Rules of Civil Procedure, are not ripe for determination until Ms. Golden makes a motion under Rule 23 for a certification.

specificity as to the individual Defendants.   Ms. Golden's Complaint is quintessentially threadbare.

Ms. Golden seeks the extraordinary remedy of contempt as against PHEAA (as well as the other defendants) with no justification.  Her claim is startling in light of the record. In her Chapter 7 petition, Ms. Golden admitted that the loans at issue in this lawsuit, including the one loan that allegedly touches PHEAA, were "student loans".  The discharge order issued by this Court has the standard disclosures that the discharge does not apply to most student loans. At no time during the bankruptcy proceeding did Ms. Golden ever seek to get relief from this Court with respect to those student loans.  Now, despite her own inaction pre-discharge, and in the face of her own admissions, Ms. Golden insists that PHEAA should be held in contempt of the discharge order.  Given the pleading mandate that the Supreme Court has imposed on all plaintiffs, the complete absence of any factual allegations supporting a claim of contemptuous conduct is fatal.

Ms. Golden's Complaint as against PHEAA is deficient for two principal reasons. First, despite the clear obligations imposed under Rule 8 of the Federal Rules of Civil Procedure since the United States Supreme Court decision in <u>Ashcroft v. Iqbal</u>, 556 U.S. 660 (2009), Ms. Golden alleges no plausible fact to support any claims against PHEAA with respect to whether the loan allegedly serviced by PHEAA has been discharged, as she contends, and whether PHEAA has acted in contempt of the discharge order.  Second, by virtue of Ms. Golden's judicial admissions in Schedule F to her Chapter 7 Petition, as well as the other allegations in the Complaint, as a matter of law, the one student loan for which PHEAA is allegedly responsible as a servicer has not been discharged.  That loan is either a qualified education loan or an education benefit that is exempted from discharge under Section 523(a)(8) of the Bankruptcy Code.

Indeed, as noted in the moving papers submitted concurrently with this motion by defendants National Collegiate Student Loan Trust 2005-3 and National Collegiate Student Loan Trust 2006-4, Ms. Golden specifically represented in the promissory notes that she signed for her various loans that the loans were to be used for educational purposes.

Ms. Golden's admissions all establish, as a matter of law, that the student loan as to which Ms. Golden points a finger at PHEAA is exempt from discharge under Section 523.

For the reasons set forth below, this Court should grant PHEAA's Motion to Dismiss and should do so with prejudice. Ms. Golden has already amended her Complaint once, and it is clear that she is unable to set forth allegations as against PHEAA. There would be no purpose to allow her to amend once again.

## STATEMENT OF FACTS

The following is based on the allegations in the Complaint and publicly available documents that the Complaint incorporates, and these facts are viewed in the light most favorable for Ms. Golden for the purpose of this motion only:

Ms. Golden resides in the Eastern District of New York. Complaint ¶ 6. On February 29, 2016, Ms. Golden filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. Id. ¶ 39; see No. 16-40809, Dkt. 1. On or about August 3, 2016, this Court issued a discharge order in Ms. Golden's bankruptcy proceeding. Complaint ¶ 42; No. 16-40809, Dkt. 17. The Order of Discharge and Final Decree states, in pertinent part: "A discharge under 11 U.S.C. § 727 is granted to Tashanna B. Golden fka Tashanna B. Pearson." No. 16-40809, Dkt. 17 at 1.[2]

---

[2] Attached to the Order of Discharge and Final Decree was the standard statement entitled "Explanation of Bankruptcy Discharge in a Chapter 7 case." No. 16-40809, Dkt. 17 at 2. That explanation sets forth a series of debt categories that are "not discharged", including "most student loans". Id.

Some 10 years earlier, Ms. Golden enrolled as a student at the University of Pennsylvania Law School ("Penn") for the 2006-2007 academic term.  Complaint ¶ 27.  The published cost of attendance at Penn was $53,500.  Id. ¶ 28.

Ms. Golden enrolled for a second year at Penn, for the 2007-2008 academic term. Id. ¶ 34.  The published cost of attendance at Penn for that academic year was $56,380.  Id. ¶ 35.

Ms. Golden alleges that she borrowed substantial funds to finance "student loan" expenses.[3]  Complaint ¶¶ 29-30, 36-37.  Specifically, she alleges:

- For the first year of attendance at Penn, Ms. Golden received $22,440 in scholarships and grants.  Complaint ¶ 29.  In addition, she borrowed $27,500 from the federal government and an additional $3,560 in what she describes as "qualified education loans".  Id.  In addition, in September 2006, Ms. Golden borrowed $7,103 from NCT.[4]  Id. ¶ 30.

- For her second year at Penn, Ms. Golden received $12,850 in scholarships and grants.  She also borrowed $52,347 from the federal government.  Complaint ¶ 36.  In addition, Ms. Golden borrowed $6,557 from JPMorgan Chase and $9,348 from Citibank.  Id. ¶ 37.

- Ms. Golden contends that the loans made by NCT, as well as JPMorgan Chase and Citibank (collectively, the "Debts"), are not "qualified education loans" and therefore are not non-dischargeable.  Complaint ¶¶ 30, 37 & 41.  Those allegations, however, are conclusions of law, and therefore are not entitled to the presumption under Rule 12(b)(6) that such allegations must be viewed in the light most favorable to Ms. Golden.  See this Memo at 7-8, infra.

---

[3] The Complaint cites to Ms. Golden's filings in her bankruptcy proceeding, in which Ms. Golden admitted in Schedule F to her petition that all of the loans at issue in this action were "student loans".  No. 16-40809, Dkt. 1 (Ex.F at 1-5); see Complaint ¶ 40.  Ms. Golden is bound by this admission, notwithstanding any allegations to the contrary.  See this Memo at 7, infra.

[4] Ms. Golden defines the $7,103 loan from NCT as the "NCT Loan."  Complaint ¶ 30.

- PHEAA is named as a defendant in this adversary proceeding. Complaint ¶ 10. Nowhere in the Complaint, however, are there any specific allegations regarding PHEAA's role in connection with the claims that Ms. Golden asserts, other than stating that PHEAA serviced the NCT Loan made in 2006. Id. ¶ 31. PHEAA is not identified as one of the lenders of the various loans (including the NCT Loan) that are at issue in this adversary proceeding. See id. ¶¶ 29, 30, 36-37.

Ms. Golden asserts three claims for relief, two of which are against all defendants (including PHEAA). Complaint ¶¶ 70-76. The third claim for relief is asserted against only defendant Firstmark Services LLC, and makes no allegations as against PHEAA. Id. ¶ 77-86.

In the first claim for relief, Count One, Ms. Golden seeks a declaratory judgment that the Debts were discharged by operation of law at the time of her August 2016 discharge order on the ground that they were not student loans protected by Section 523(a)(8) of the Bankruptcy Code. Complaint ¶ 71. In the second claim for relief, Count Two, Ms. Golden alleges that all defendants are in contempt of the August 2016 discharge order because the defendants sent Ms. Golden "dunning letters, emails, text messages, and phone calls [to] recover the discharged debt …." Id. ¶ 75. The allegations in Count Two do not identify any actions taken specifically by PHEAA.

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in Ms. Golden's Complaint are to be accepted as true and viewed in the light most favorable to Ms. Golden. See Flores v. Southern Peru Copper Corp., 343 F.3d 140, 148 (2d Cir. 2003).

However, under the pleading requirements set forth by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), a plaintiff must plead sufficient plausible facts, and bare bones allegations are not acceptable. Id. at 678 ("The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." (citation omitted)); accord L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430

(2d Cir. 2011) ("Plausibility thus depends on a host of considerations: the full factual picture

presented by the complaint, the particular cause of action and its elements, and the existence of

alternative explanations so obvious that they render plaintiff's inferences unreasonable."); Bigio

v. Coca-Cola Co., 675 F.3d 163, 173-174 (2d Cir. 2012).

In its Coca-Cola decision, the Second Circuit applied great rigor when enforcing

the pleading standards established under Iqbal.  In that case, the plaintiffs had alleged, among

numerous things, that (i) Coca-Cola had exercised control over [CCE's] operations; (ii) the

defendants had conspired with and aided and abetted their subsidiaries and affiliates in order to

benefit themselves and with knowledge of the alleged unlawful acts; and (iii) the defendants had

knowingly and substantially assisted the principal violations committed by their subsidiaries,

affiliates and co-conspirators.  Coca-Cola, 675 F.3d at 173.  The Second Circuit rejected all of

those allegations as insufficient as a matter of law.  It stated: "These are just the sort of

'[t]hreadbare recitals of the elements of a cause of action' and 'conclusory statement,' that do not

suffice to state a claim."  Id. at 173-74 (citation omitted).  Here, when the Second Circuit's strict

enforcement of Iqbal is applied to Ms. Golden's Complaint, it too must be rejected as palpably

insufficient to satisfy Rule 12(b)(6).

Additionally, when evaluating the sufficiency of the allegations in a complaint, a

court must also take into consideration any documents that are incorporated into the complaint.

See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004); Goldman v. Belden, 754 F.2d 1059, 1065-66

(2d Cir. 1985).  Here, Ms. Golden explicitly incorporates Schedule F to her Chapter 7 petition

filed in 2016.  See Complaint ¶ 40.  She also incorporates this Court's discharge order.  Id. ¶ 42.

As noted above, Ms. Golden made certain admissions in Schedule F that give rise to a judicial estoppel.  See First National Insurance Co. of America v. Bartolemi (In re Bartolemi), 303 B.R. 245, 265 (Bankr. D. Conn. 2004)  (statements in a debtors schedule are judicial admissions as they are made under oath and are controlling); In re Bohrer, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001) ("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions."). On this motion, Ms. Golden's admissions in Schedule F must be considered and override her allegations.  See Carruthers v. Flaum, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (on a motion under Rule 12(b)(6), "a court 'may take judicial notice of admissions in pleadings and other documents in the public record filed by a party in other judicial proceedings that contradict the party's factual assertions in a subsequent action.'" (citation omitted)); accord Pandozy v. Robert J. Gumenick, P.C., No. 07 Civ. 1242 (NRB), 2008 U.S. Dist. LEXIS 41440, at *5-6 (S.D.N.Y. May 23, 2008); Landow v. Wachovia Secs., LLC, 966 F. Supp. 2d 106, 120, (E.D.N.Y. 2013) (a court may consider "the plaintiff's principal's admission in a prior state court action for the truth of the matter asserted, without converting the motion to dismiss into a motion for summary judgment, because (1) the plaintiff had made a critical admission that bore substantially upon the legal sufficiency of his complaint, (2) the plaintiff had sufficient notice of the defendant's intention to ask the Court to take judicial notice of the admission and of the factual significance that the defendants sought to attach to the admission, (3) the plaintiff failed to object to consideration of the admission and (4) the plaintiff failed to disavow the admission." (citing 5-Star Management, Inc. v. Rogers, 940 F. Supp. 512, 519 (E.D.N.Y. 1996)).

Moreover, although courts must accept the well-pleaded factual allegations of a complaint as true, "legal conclusions, deductions or opinions couched as factual allegations are

not given a presumption of truthfulness." <u>Mason v. American Tobacco Co.</u>, 346 F.3d 36, 39 (2d Cir. 2003) (brackets in original), <u>cert. denied</u>, 541 U.S. 1357 (2004). Ms. Golden's Complaint suffers from this critical flaw as well, most especially paragraphs 12 through 24, 36, 37 and 41.

Under the standards, a court should dismiss a complaint when it appears "beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." <u>Flores</u>, 343 F.3d at 148 (citations omitted); <u>see accord Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 847 F.3d 92, 94 (2d Cir. 2017) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (internal citations omitted).

<u>POINT I</u>

**THE COMPLAINT FAILS TO ALLEGE
<u>ANY PLAUSIBLE FACTS AS AGAINST PHEAA</u>**

As noted above, Ms. Golden is required to allege plausible facts as against PHEAA in order to sustain a claim for relief. Further, in making any attempt to satisfy that requirement, Ms. Golden cannot make group allegations against all defendants, without specific reference to PHEAA, to satisfy her pleading obligation.

Rule 8(a) of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Bankruptcy Rules, "is violated where a plaintiff, by engaging in 'group pleading,' fails to give each defendant fair notice of the claims against it." <u>Holmes v. Allstate Corp.</u>, No. 11 Civ. 1543 (LTS) (DF), 2012 U.S. Dist. LEXIS 24883, at *69 (S.D.N.Y. Jan. 27, 2012) (citations omitted); <u>accord Ying Li v. City of New York</u>, 246 F. Supp. 3d 578, 598 (E.D.N.Y 2017); <u>Harris v. NYU Langone Medical Center</u>, No. 12-CV-454(RA)(JSC), 2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. July 9, 2013) ("[C]omplaint should offer 'specification' as to the 'particular activities by any particular defendant'" and "Rule 8(a) also requires that a complaint against

multiple defendants indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants" (citations omitted)).

The Complaint is devoid in all respects of any allegation as against PHEAA, other than identifying PHEAA's place of business, stating that it conducts business in the Eastern District of New York and stating that PHEAA is the servicer for the NCT Loan. Complaint ¶¶ 10, 31. Nowhere in the Complaint does it state what PHEAA's role was with respect to the making of any of the loans underlying the Debts (including the NCT Loan), or PHEAA's role in connection with reported violations of the discharge order subsequent to the order's issuance in August 2016.[5] A total of only five lines in a 16-page complaint specifically addressing PHEAA's conduct is palpably insufficient under Rule 12(b)(6) and the standards under Rule 8 as articulated by the Supreme Court in Iqbal.

As a result, the absence of any specific allegations as against PHEAA requires dismissal of both Counts One and Two. See Holmes, 2012 U.S. Dist. LEXIS 24883, at *78 ("Plaintiffs' failure to differentiate among the Harris Entities, so as to allege the nature of each particular defendant's misconduct, has resulted in a failure by Plaintiffs to give each defendant 'fair notice' of Plaintiffs' claims and 'the grounds upon which [they] rest[],'" (brackets in original; citation omitted)); Zurich American Insurance Co. v. Dah Sing Bank, Ltd., No. 03 Civ. 7778 (DLC), 2004 U.S. Dist. LEXIS 10786, at *19 (S.D.N.Y. June 15, 2004) (group pleading is "inadequate to state a claim" when the amended complaint "does not include a single factual allegation against Union Bank in support of any of [its] claims. Instead, it lumps the three bank

---

[5] For instance, in paragraph 45 of the Complaint, Ms. Golden asserts: "Defendants' abusive, deceptive and illegal collection efforts after Golden's Debts were discharged were made knowingly and willfully in violation of this Court's discharge orders." (Emphasis added.) Yet, nowhere in the Complaint does Ms. Golden once state what abusive, deceptive and illegal collection efforts were made by PHEAA. Nor does she ever set forth any allegations regarding the factual basis, let alone a plausible basis, that PHEAA knowingly and willfully violated the discharge order in Ms. Golden's bankruptcy.

defendants together . . ."); <u>Barber v. Ruzzo</u>, No. 1:10-cv-1198 (GLS/DRH), 2011 U.S. Dist. LEXIS 120773, at *7 (N.D.N.Y. Oct. 19, 2011) ("Simply stating that [defendants] were 'personally and actively involved in the continuation of criminal proceedings against him,' is grossly insufficient to establish personal involvement in the actual prosecution.").

        In addition, there are no allegations that PHEAA is a lender. Hence, the assertion in Count One as against PHEAA that the Debts are dischargeable cannot be asserted against PHEAA. Because Ms. Golden does not allege that PHEAA made a loan, PHEAA cannot be subject to this Count.

        Further, with respect to Count Two, there is no allegation that PHEAA itself did anything wrong or how it acted in contempt of the discharge order. Accordingly, even assuming that the NCT Loans were dischargeable, Ms. Golden has failed to allege any claims as against PHEAA in Count Two.

## POINT II

### AS A MATTER OF LAW, NONE OF MS. GOLDEN'S DEBTS ARE DISCHARGEABLE

        Ms. Golden's contention that the Debts are not "qualified education loans" is premised on the assertion that her admitted "student loans" fall outside the definition of "qualified Education Loans." She reasons that such loans "must be made solely for qualified education expenses", which means "the cost of attendance at a qualified educational institution." Complaint ¶¶ 16, 18. Moreover, if some portion of the loan falls outside the "Cost of Attendance," Ms. Golden contends that the entirety of the loan is not a qualified education loan. Id. ¶ 18. Ms. Golden therefore alleges that any loans that exceed a school's published cost of attendance are not qualified education loans. Id. ¶¶ 30, 37.

For almost the last 40 years, Congress has increasingly expanded the exemption granted for student loans that provides that such loans may not be discharged in bankruptcy.  See Cazenova College v. Renshaw (In re Renshaw), 222 F.3d 82, 87-88 (2d Cir. 2000); Benson v. Corbin (In re Corbin), 506 B.R. 287, 296-98 (Bankr. W. D. Wash 2014); Beesley v. Royal Bank of Canada (In re Beesley), No. 12-2444 CMB, 2013 Bankr. LEXIS 3811, at *10 (Bankr. W.D. Pa. Sept 13, 2013); Carow v. Chase Loan Service (In re Carow), No. 10-7011, 2011 Bankr. LEXIS 823, at *10 (Bankr. D.N.D. Mar. 2, 2011).

In other words, Congress has consistently expanded the scope of the exemption in Section 523 of the Bankruptcy Code, making clear the express policy and statutory objective of exempting student loans and not permitting an individual to evade repayment of those loans by filing a petition under the Bankruptcy Code.  Despite that fact, Ms. Golden and her Complaint ignore the wide breadth of this exemption from dischargeability, and instead attempt to rely on a legally untenable constriction of the exemption.

### A.    As a Matter of Law, the Debts Are Qualified Education Loans

Section 523(a)(8) of the Bankruptcy Code sets forth exceptions to the general rule that debts are dischargeable in bankruptcy.  This section explicitly exempts four categories of educational claims from discharge:

> (1) loans made, insured, or guaranteed by a governmental unit; (2) loans made under any program partially or fully funded by a governmental unit or nonprofit institution; (3) claims for funds received as an educational benefit, scholarship, or stipend; and (4) any 'qualified education[] loan' as that term is defined in the Internal Revenue Code.

Institute of Imaginal Studies v. Christoff (In re Christoff), 527 B.R. 624, 632 (B.A.P. 9th Cir. 2015).

Ms. Golden's allegations regarding what constitutes a "qualified education loan," all of which are legal conclusions that are entitled no deference, are erroneous.  In fact, loans for expenses incurred in connection with the attendance at school, such as books, room and board and living expenses, fall within the definition of that term.

Section 1087ll of the Higher Education Act, 20 U.S.C. § 1087ll, defines the "cost of attendance" as:

(1)  tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study;

(2)  an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a half-time basis, as determined by the institution;

(3)  an allowance (as determined by the institution) for room and board costs incurred by the student which—

(A)  shall be an allowance determined by the institution for a student without dependents residing at home with parents;

(B)  for students without dependents residing in institutionally owned or operated housing, shall be a standard allowance determined by the institution based on the amount normally assessed most of its residents for room and board;

(C)  for students who live in housing located on a military base or for which a basic allowance is provided under section 403(b) of title 37, United States Code, shall be an allowance based on the expenses reasonably incurred by such students for board but not for room; and

(D)  for all other students shall be an allowance based on the expenses reasonably incurred by such students for room and board;

(4)  for less than half-time students (as determined by the institution), tuition and fees and an allowance for only—

(A)  books, supplies, and transportation (as determined by the institution);

(B)  dependent care expenses (determined in accordance with paragraph (8)); and

(C)  room and board costs (determined in accordance with paragraph (3)), except that a student may receive an allowance for such costs under this subparagraph for not more than 3 semesters or the equivalent, of which not more than 2 semesters or the equivalent may be consecutive;

(5)  for a student engaged in a program of study by correspondence, only tuition and fees and, if required, books and supplies, travel, and room and board costs incurred specifically in fulfilling a required period of residential training;

(6)  for incarcerated students only tuition and fees and, if required, books and supplies;

(7)  for a student enrolled in an academic program in a program of study abroad approved for credit by the student's home institution, reasonable costs associated with such study (as determined by the institution at which such student is enrolled);

(8)  for a student with one or more dependents, an allowance based on the estimated actual expenses incurred for such dependent care, based on the number and age of such dependents, except that—

(A)  such allowance shall not exceed the reasonable cost in the community in which such student resides for the kind of care provided; and

(B)  the period for which dependent care is required includes, but is not limited to, class-time, study-time, field work, internships, and commuting time;

(9)  for a student with a disability, an allowance (as determined by the institution) for those expenses related to the student's disability, including special services, personal assistance, transportation, equipment, and supplies that are reasonably incurred and not provided for by other assisting agencies;

(10)  for a student receiving all or part of the student's instruction by means of telecommunications technology, no distinction shall be made with respect to the mode of instruction in determining costs;

(11)   for a student engaged in a work experience under a cooperative education program, an allowance for reasonable costs associated with such employment (as determined by the institution);

(12)   for a student who receives a loan under this or any other Federal law, or, at the option of the institution, a conventional student loan incurred by the student to cover a student's cost of attendance at the institution, an allowance for the actual cost of any loan fee, origination fee, or insurance premium charged to such student or such parent on such loan, or the average cost of any such fee or premium charged by the Secretary, lender, or guaranty agency making or insuring such loan, as the case may be; and

(13)   at the option of the institution, for a student in a program requiring professional licensure or certification, the one-time cost of obtaining the first professional credentials (as determined by the institution).

Ms. Golden asserts in her Complaint that the "cost of attendance" as to her is limited to the costs published by Penn for each of the two academic years.  See Complaint ¶¶ 28, 35.  That allegation, however, is insufficient as a matter of law.

The term, "qualified education loans" is defined in the Internal Revenue Code, 26 U.S.C. § 221(d)(1), as "any indebtedness incurred by the taxpayer solely to pay qualified higher education expenses . . . ."  The term "qualified higher education expense" is defined, under Section 221(d)(2)  as "the cost of attendance" as that term is defined in Section 1087ll of the Higher Education Act.

There are multiple considerations in determining "cost of attendance," under the Higher Education Act, 20 U.S.C. § 1087ll, and Ms. Golden fails to allege any plausible facts establishing that her loan proceeds were used for non-education expenses.  Pursuant to Section 1087ll, "cost of attendance" encompasses a laundry list of items such as: tuition and fees; equipment and materials; "books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal

computer[;]" room and board; additional allowances for students with dependents and those with disabilities; costs for work study and study abroad programs; and professional credentialing fees. While some of these expenses are captured in the published "cost of attendance," not all such expenses are necessarily encompassed within the designation.

For this reason, courts consult the list, rather than any formula, in determining "cost of attendance." See Carow, 2011 Bankr. LEXIS 823, at *9. In Carow, the court rejected the contention that, because the lender did not follow a prescribed formula in determining eligibility, the loans were not "qualified education loans." Id. Such an argument, the court explained, "ignores the detailed definitions provided for making this determination." Id. ("the 'cost of attendance' means the amount determined by the institution for tuition and fees plus an allowance for books, supplies, transportation, room and board, and miscellaneous personal expenses." (citing 20 U.S.C. § 1087ll)); accord Rizor v. Acapita Educational Finance Corp. (In re Rizor), 553 B.R. 144, 151 (Bankr. D. Alaska 2016).

Here, Ms. Golden has failed to identify any expenses that fall outside the enumerated list used in determining "cost of attendance" under Section 1087ll. She alleges only that the NCT Loan serviced by PHEAA exceeded the published cost of attendance at Penn. See Complaint ¶ 30. This allegation is insufficient as a matter of law. Further, this allegation is overridden by Ms. Golden's judicial admission in Schedule F that all of the Debts are "student loans" for the purposes of her bankruptcy proceedings in this Court. See this Memo at 7, supra.

**B.    As A Matter of Law, the Debts Are "Educational Benefit Loans"**

Courts have also held that the type of loans Ms. Golden alleges in the Complaint fall under a different category distinct from a "qualified education loan," and that category is also exempt from discharge under the Bankruptcy Code. See Carow, 2011 Bankr. LEXIS 823, at *10 ("even if the loans were not a qualified educational loan as defined in 26 U.S.C. § 221(d)(1) for

purposes of section 523(a)(8), subsection (a)(8)(A)(ii) provides that it is enough that the debt at issue be 'an obligation to repay funds received as an educational benefit'").

Under Section 523(a)(8) of the Bankruptcy Code, "an obligation to repay funds received as an educational benefit, scholarship, or stipend" is non-dischargeable. These so-called "educational benefit" loans have been given wide berth by courts, such that any education-related expense falls under this category of non-dischargeable student loans. See, e.g., Roy v. Sallie Mae (In re Roy), No. 08-33318, 2010 Bankr. LEXIS 1218, at *3 (Bankr. D.N.J. Apr. 15, 2010) ("The term 'educational benefit' is not defined in the Bankruptcy Code, but Congress through successive amendments to § 523(a)(8) has expanded the scope of the section"); Sensient Technologies Corp. v. Baiocchi (In re Baiocchi), 389 B.R. 828, 831 (Bankr. E.D. Wis. 2008) ("fact that Sensient's program serves a purpose beyond the debtor's education does not necessarily mean that the funds received by the Debtor did not constitute an 'educational benefit.'"); Micko v. Student Loan Finance Corp. (In re Micko), 356 B.R. 210, 216 (Bankr. D. Ariz. 2006) ("[T]he statute provides a broad description of obligations to repay money modified only by the words 'received as an educational benefit.'").

Here, the Complaint's allegations establish that the Debts (including specifically the NCT Loan) would still fall under the broad category of an obligation to repay an "educational benefit." As long as the loans relate in some way to education they are non-dischargeable. Ms. Golden admitted in Schedule F that her loans were "student loans," and those loans therefore relate to education and are non-dischargeable. See this Memo at 4 n.3, supra. There, as a matter of law, Ms. Golden's loans are dischargeable under the "educational benefit" exception set forth in Section 523(a). See Carow, 2011 Bankr. LEXIS 823 at *10; Shaw v. Educap, Inc. (In re Shaw), No. 13-3251, 2015 Bankr. LEXIS 658, at *9-10 (Bankr. S.D. Tex. Mar. 3, 2015); Brown

v. CitiBank, N.A. (In re Brown), 539 B.R. 853, 858-859 (Bankr. S.D. Cal. 2015); Brown v. Rust (In re Rust), 510 B.R. 562, 567, 571-72 (Bankr. E.D. Ky. 2014); Beesley, 2013 Bankr. LEXIS 384, at *10-12; Skipworth v. Citibank Student Loan Corp. (In re Skipworth), No. 09-80149-JAC7, 2010 Bankr. LEXIS 1201 at *3-5 (Bankr. N.D. Ala. Apr. 1, 2010).

One court in this District has endorsed the ruling by a small number of other courts, and has narrowly construed the meaning of the educational loan exception in Section 523(a)(8)(A)(ii).[6] See Campbell v. Citibank, N.A. (In re Campbell), 547 B.R. 49, 54-55 (Bankr. E.D.N.Y. 2016). PHEAA respectfully submits that the Campbell decision is wrongly decided and should be no given no precedential weight. The language of that sub-provision of Section 523 is plain in its meaning, and applies to repayment of all funds advanced for educational benefits without exception. Further, the fact that the subsection may overlap with a "qualified educational loan" exception in Section 523 does not render that exception superfluous. Rather, the two provisions reinforce each other and make the exception for non-dischargeability all encompassing (so that nothing falls through the cracks, as Ms. Golden in attempting to do here.). See Corbin, 506 B.R. at 296; Rust, 510 B.R. at 571-572; Brown, 539 B.R. at 858; see also Husky International Electronics, Inc. v. Ritz, 136 S. Ct. 1581, 1588-89 (2016).[7]

---

[6] At the end of the decision, the court in Campbell avoids making any final determination as to the scope of the exemption, and decided the matter on other grounds. 547 B.R. at 59-60.

[7] The Supreme Court issued its reaffirmation of the broad construction to be given to Section 523 subsequent to the court's decision in Campbell, as it was issued some three months later. Consequently, the Campbell court did not have the benefit of the Supreme Court's guidance, and consequently issued a ruling construing Section 523 that is inconsistent with the principles that the Supreme Court applied.

**POINT III**

**AS A MATTER OF LAW, MS. GOLDEN FAILS TO
ALLEGE ANY FACTS CONCERNING THE LOAN DOCUMENTS**

Also absent from the Complaint are references to the loan documents and agreements underlying the Debts.  This omission is fatal because courts have held that the stated purpose of the loan (rather than its use) determines whether it is a qualified education loan or an educational benefit loan.  See Murphy v. Pennsylvania Higher Education Assistance Agency (In re Murphy), 282 F.3d 868 (5th Cir. 2002).  The Fifth Circuit explained:

> Some courts have held that when the lender makes the loan available for educational purposes, no part of the loan can be discharged in bankruptcy, regardless of the actual use.  Other courts have held that when the student spends the money on noneducational items and services, that portion can be discharged.  We conclude that the text of the Bankruptcy Code, the Federal Family Education Loan Program ("FFELP") and Murphy's promissory notes support nondischargeability.  In other words, it is the purpose, not the use, of the loan that controls. Treating FFELP guaranteed loans uniformly, regardless of actual use, is true to the text and will prevent recent graduates from reneging on manageable debts and will preserve the solvency of the student loan system.

Id. at 869-70; see Maas v. Northstar Education Finance, Inc. (In re Maas), 497 B.R. 863, 869 (Bankr. W.D. Mich. 2013) ("Sections 523(a)(8)(A)(i) and (ii) both apply to 'educational benefit' loans, a term that is not defined in the Bankruptcy Code. Although the breadth of this term has been the subject of some debate, a majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on the stated purpose for the loan when it was obtained, rather than on how the loan proceeds were actually used."); Rizor, 553 B.R. at 149 (explaining that, with respect to educational benefit loans under § 523(a)(8)(A)(i), "[m]ost courts say the question of whether a loan is for an educational benefit depends not how the funds were actually 'used,' but on the 'stated purpose for the loan when it was obtained'").

In <u>Carow</u>, 2011 Bankr. LEXIS 823, at *9-10, the court reached the same conclusion with respect to a qualified education loan.  The court explained that:  the debtor had "certified on each promissory note that she would use the proceeds for qualified higher education expenses or for costs associated with her attendance at school.  She stipulated and testified that she obtained the Chase loans . . . to fund her 'cost of attendance.'  As such, the Chase loans were used for 'qualified higher education expenses' and are 'qualified education loans' as contemplated by section 523(a)(8)(B)." <u>Id.</u>

Thus, how ever Ms. Golden actually used the loan proceeds from the NCT Loan is of no moment – what she represented to the lenders in the promissory note for the NCT Loan is the key fact.  <u>See</u> <u>Noland v. Iowa Student Loan Liquidity Corp. (In re Noland)</u>, No. A09-8048-TJM, 2010 Bankr. LEXIS 1188, at *8 (Bankr. D. Neb. March 30, 2010) (rejecting the contention that, "because some of the funds were used for dining out, purchasing gifts, paying for expenses including travel, car insurance, and gas, and for mental health treatment and medication, the loans were not 'qualified education loans.'").

Here, not only has Ms. Golden admitted to this Court that the Debts were "student loans", but the Complaint is also devoid of any reference to (i) the promissory notes, (ii) the disclosed purpose of the loans or (iii) for what the loans were to be used.[8]  Absent allegations to the effect that Ms. Golden obtained a loan expressly for non-educational purposes, Ms. Golden may not maintain a claim that her Debts are dischargeable.

---

[8] As a servicer, PHEAA does not have a copy of the promissory note for the NCT Loan. However, in their motion papers, defendants National Collegiate Student Loan Trust 2005-3 and National Collegiate Student Loan Trust 2006-4 specifically advise the Court that the various promissory notes that they hold contain an explicit representation from Ms. Golden that the loans were being used for educational expenses.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendant Pennsylvania Higher Education Assistance

Agency's motion to dismiss the Complaint and against it should be granted in its entirety.

Dated: New York, New York               PEPPER HAMILTON LLP
       December 8, 2017


                                        By:  /s/ H. Peter Haveles, Jr._____
                                             H. Peter Haveles, Jr.
                                             Francis J. Lawall
                                        Attorneys for Defendant Pennsylvania Higher
                                        Education Assistance Agency

                                        620 Eighth Avenue, 37th Floor
                                        New York, NY  10018-1405
                                        (212) 808-2700
                                        havelesp@pepperlaw.com
                                        lawallf@pepperlaw.com