**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

Hearing Date: January 30, 2018
Response Deadline: January 8, 2018

In re:

Tashanna B. Golden,

         Debtor.

Case No. 1-16-40809-ess

**Chapter 7**

Tashanna B. Golden, fka Tashanna B. Pearson,

         Plaintiff,

versus

National Collegiate Student Loan Trust 2005-3,
National Collegiate Student Loan Trust 2006-4,
GS2 2016-A, Pennsylvania Higher Education
Assistance Agency d/b/a American Education Services,
Firstmark Services,

         Defendants.

**Adv. Pro. No. 1-17-01005-ess**

**MEMORANDUM OF LAW IN SUPPORT OF TRUST DEFENDANTS'**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**PURSUANT TO FED. R. BANKR. P. 7012 AND FED. R. CIV. P. 12(b)**

Locke Lord LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281

Attorneys For
*National Collegiate Student Loan Trust 2005-3,*
*National Collegiate Student Loan Trust 2006-4 and*
*Goal Structured Solutions Trust 2016-A*

# Table of Contents

Table of Authorities ........................................................................................................... ii

Preliminary Statement ........................................................................................................ 1

Statement Of Facts ............................................................................................................. 3

Argument ............................................................................................................................ 5

      I.     Plaintiff Fails to State a Claim Upon
           Which Relief Can Be Granted. ........................................................................ 5

           A.     The First Amended Complaint Does
                    Not Satisfy Fed. R. Civ. P. 8. ..................................................................... 7

                i.     Plaintiff Does Not Sufficiently
                        Identify The Loans At Issue. ........................................................... 7

                ii.    Plaintiff Fails To Connect The
                        Loans To The Trust Defendants. .................................................... 10

           B.     The First Amended Complaint Sounds In Fraud But
                    Does Not Satisfy The Requirements of Fed. R. Civ. P. 9(b). ................... 13

      II.    Plaintiff's Claim That The Trust Defendants Violated The Discharge
           Fails Because The Discharge Order Is Not Sufficiently Clear and Definite. ....... 15

      III.   Plaintiff Asks This Court To Exceed Its Jurisdiction. .......................................... 18

CONCLUSION ................................................................................................................. 19

# Table of Authorities

## CASES

Acito v. IMCERA Group,
   47 F.3d 47 (2d Cir. 1995) ................................................................................................... 14

Aetna Life Ins. Co. v. Haworth,
   300 U.S. 227 (1937) ............................................................................................................. 6

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ............................................................................................................. 6

Baker v. Gen. Motors Corp.,
   522 U.S. 222 (1998) ........................................................................................................... 18

Barrett v. Avco Fin. Srvs. Mgmt. Co.,
   292 B.R. 1 (D. Mass. 2003) ............................................................................................... 18

Bartfield v. Murphy,
   578 F. Supp. 2d 638 (S.D.N.Y. 2008) ............................................................................... 13

Bell Atlantic v. Twombly,
   550 U.S. 544 (2007) ......................................................................................................... 5, 6

Cox v. Zale Delaware, Inc.,
   239 F.3d 910 (7th Cir. 2001) ............................................................................................. 18

DiVittorio v. Equidyne Extractive Indus., Inc.,
   822 F.2d 1242 (2d Cir. 1987) ............................................................................................ 14

Gillingham v. Geico Direct,
   No. 06–CV–2915 (NGG)(MLO), 2008 WL 189671 (E.D.N.Y. Jan. 18, 2008) ........................ 8

Graham v. Select Portfolio Servicing, Inc.,
   156 F.Supp.3d 491 (S.D.N.Y. 2016) .................................................................................. 14

H.K. Porter Co. v. Nat'l Friction Products Corp.,
   568 F.2d 24 (7th Cir. 1977) ............................................................................................... 15

In re Argo Communications Corp.,
   134 B.R. 776 (Bankr. S.D.N.Y. 1991) ............................................................................... 14

In re Beck,
   283 B.R. 163 (Bankr. E.D.Pa. 2002) ................................................................................. 18

In re Brizinova,
   565 B.R. 488 (Bankr. E.D.N.Y. 2017) ........................................................................... 8, 18

In re Dabrowski,
   257 B.R. 394 (Bankr. S.D.N.Y. 2001) ................................................................................. 7

**Table of Authorities**
**(continued)**

*In re Forson*,
549 B.R. 866 (Bankr. S.D. Ohio 2016)....................................................................... 18

*In re Gervin*,
300 F. App'x 293 (5th Cir. 2008) ............................................................................. 17

*In re Haynes*,
2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) ................................................ 18

*In re Henein*,
257 B.R. 702 (E.D.N.Y. 2001) ........................................................................... 14, 15

*In re Logsdon*,
32 F. App'x 427 (9th Cir. 2002) ............................................................................... 17

*In re McKenzie-Gilyard*,
388 B.R. 474 (Bankr. E.D.N.Y. 2007)................................................................... 6, 13

*In re Nicholas*,
457 B.R. 202 (Bankr. E.D.N.Y. 2011)....................................................................... 7

*In re O'Brien*,
419 F.3d 104 (2d Cir. 2005) ..................................................................................... 9

*In re Prisco*,
No. 07-13408, 2017 WL 3575854 (Bankr. N.D.N.Y. Aug. 14, 2017) ...................... 7

*In re Robinson*,
342 F. App'x 235 (8th Cir. 2009) ............................................................................. 17

*In re Rosen*,
151 B.R. 648 (Bankr. E.D.N.Y. 1993)...................................................................... 14

*In re Torres*,
367 B.R. 478 (Bankr. S.D.N.Y. 2007)................................................................... 6, 16

*In re Walker*,
No. 13-10297, 2013 WL 5524999 (Bankr. M.D.N.C. Oct. 3, 2013)......................... 6

*Int'l Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*,
389 U.S. 64 (1967)................................................................................................... 17

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
512 U.S. 821 (1994)................................................................................................. 18

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
925 F.2d 556 (2d Cir. 1991) ..................................................................................... 6

*King v. Allied Vision, Ltd.*,
65 F.3d 1051 (2d Cir. 1995)..................................................................................... 15

**Table of Authorities**
**(continued)**

*L–7 Designs Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ................................................................ 6

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*,
    312 U.S. 270 (1941) ................................................................ 6, 12

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993) ................................................................ 14, 15

*Ouaknine v. MacFarlane*,
    897 F.2d 75 (2d Cir. 1990) ................................................................ 14

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir.2007) ................................................................ 8

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ................................................................ 8

*Techno-Comp, Inc. v. Arcabascio*,
    130 F.Supp.3d 734 (E.D.N.Y. 2015) ................................................................ 14

*U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*,
    789 F.3d 29 (2d Cir. 2015) ................................................................ 15

*Williams v. Time Warner, Inc.*,
    440 Fed. Appx. 7, 2011 WL 4470015 (2d Cir. September 28, 2011) ................................................................ 8

*Williams v. United States*,
    402 F.2d 47 (10th Cir. 1967) ................................................................ 16


**S**TATUTES

28 U.S.C. § 2201 ................................................................ 6, 10


**R**ULES

Fed. R. Bankr. P. 7008 ................................................................ 5

Fed. R. Bankr. P. 7009 ................................................................ 14

Fed. R. Bankr. P. 7012 (b) ................................................................ 1

Fed. R. Civ. P. 12 (b)(6) ................................................................ 1

Fed. R. Civ. P. 8 ................................................................ *passim*

Fed. R. Civ. P. 9(b) ................................................................ 2, 13

iv

Defendants National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-4 and Goal Structured Solutions Trust 2016-A, incorrectly sued herein as GS2 2016-A, submit this memorandum in support of their motion to dismiss Plaintiff Tashanna B. Golden's First Amended Complaint pursuant to Fed. R. Bankr. P. 7012 (b) and Fed. R. Civ. P. 12 (b)(6).

## PRELIMINARY STATEMENT

Plaintiff, who purports to represent a nationwide class, is asking this Court to reach into an untold number of completed bankruptcies across the United States, retroactively declare a certain body of student loans to be discharged and then hold the defendants in this case in contempt for allegedly seeking to collect, or collecting, on those loans. It is an attempt to rewrite the Bankruptcy Code. Plaintiff's First Amended Complaint, however, fails to sufficiently plead any of the causes of action she purports to bring against the defendants and this matter should be dismissed.

Plaintiff asserts two causes of action against all defendants.[1] Plaintiff seeks a declaratory judgment that the relevant loans, though scheduled as student loans, exceeded the published cost of attendance for the institution she attended and are therefore discharged "by operation of law … because they were not student loans protected by any subsection of section 523(a)(8)." She has also requested a finding that defendants are in contempt of the discharge order entered in her bankruptcy because they sought to collect on these particular student loans after Plaintiff emerged from bankruptcy. Plaintiff further states that the damages she purportedly suffered were the result of a scheme to "fraudulently inform[ ]" her that the loans were not discharged.

---

[1] Plaintiff also asserts a claim that Firstmark Services violated the Fair Debt Collection Practices Act by seeking to collect on one of the Loans.

Case 1-17-01005-ess    Doc 45    Filed 12/08/17    Entered 12/08/17 19:33:51

Plaintiff fails to allege even the most basic facts necessary to satisfy the pleading requirements of this Court. Plaintiff fails to sufficiently identify any of the loans that she bases her claims upon and fails to allege a link between the relevant loans and any of the various defendants. These pleading gaps mean that Plaintiff has not alleged a controversy so as to allow for her declaratory judgment claim. It also means that Plaintiff has not alleged any behavior on defendants' part that plausibly demonstrates a violation of any discharge order by any defendant.[2] Plaintiff's allegations do not satisfy the requirements of Fed. R. Civ. P. 8, let alone the heightened pleading standards of Fed. R. Civ. P. 9(b) she is required to meet because she claims that defendants' activity was part of a fraudulent scheme to mislead her and others.

Beyond her pleading failures, Plaintiff has admitted that the discharge order is silent regarding the loans at issue. As such, her pleading affirmatively demonstrates that there is not an unequivocal order that allows for the finding of contempt she seeks. Her contempt claim is further undercut by the fact that Plaintiff scheduled every one of the loans at issue as a student loan and did nothing to demonstrate that they were dischargeable in bankruptcy.

Finally, on the face of the pleadings, Plaintiff is asking this Court to exceed its jurisdiction. In order to do what Plaintiff requests, this Court will need to reach into various jurisdictions across the United States, re-open numerous completed bankruptcies, and issue declaratory judgments that depend on the specific facts of each matter. The Trust Defendants have not found a single instance where a bankruptcy court has exercised jurisdiction to allow a class like the one Plaintiff proposes.

This Court should dismiss Plaintiff's First Amended Complaint.

---

[2] This memorandum does not address Plaintiff's claim under the Fair Debt Collection Practices Act, which is not directed at the trusts who are making this submission. Suffice it to say, Plaintiff's failure to connect any of the defendants to the loans at issue requires dismissing this claim as well.

## STATEMENT OF FACTS

Defendants National Collegiate Student Loan Trust 2005-3 ("NCSLT 2005-3"), National Collegiate Student Loan Trust 2006-4 ("NCSLT 2006-4") and Goal Structured Solutions Trust 2016-A ("GS2 2016-A")(collectively the "Trust Defendants") are business trusts that acquire and hold student loan debt and issue debt securities. Each one is an independent entity organized and registered under the laws of Delaware that can sue and be sued in its own name.

Plaintiff, Tashanna B. Golden, is a lawyer who graduated from the University of Pennsylvania Law School ("Penn Law") in 2008 and was admitted to practice in New York in 2009. To fund her education, she took out numerous student loans from many different lenders. (*In re Golden,* 1-16-40809-ess ("Bankr."), Dkt. No. 13, Schedule F).

On February 29, 2016, Plaintiff filed a voluntary Chapter 7 bankruptcy in this Court. (Bankr. Dkt. No. 1). In connection with that bankruptcy she filed an amended Schedule F that listed eighteen student loans she had taken out between academic year 2005-2006 and 2007-2008. (Bankr. Dkt. No. 13). On August 3, 2016, the Court issued a discharge order in Plaintiff's bankruptcy (the "Discharge Order"). (Bankr. Dkt. No. 17).

On December 2, 2016, Plaintiff moved to reopen her bankruptcy to file the instant adversary proceeding. (Bankr. Dkt. No. 19). That motion was granted. (Bankr. Dkt. No. 21). Plaintiff filed her complaint in this adversary proceeding on January 18, 2017. (Adv. Dkt. No. 1). Plaintiff then moved to amend her complaint. (Adv. Dkt. No. 15). And, on October 17, 2017, Plaintiff filed the operative First Amended Complaint ("FAC") which named the Trust Defendants, as well as Pennsylvania Higher Education Assistance Agency d/b/a American Education Service and Firstmark Services, as defendants. (Adv. Dkt. No. 32).

The FAC makes generalized statements about the history of the Bankruptcy Code and the market for student loans. (FAC ¶¶ 12-26). This includes unsupported allegations that lenders

3

have engaged in a scheme to misrepresent to debtors whether their loans were dischargeable under the Bankruptcy Code. (FAC ¶ 22). And, it includes an uncorroborated claim that "unscrupulous creditors [defrauded] vulnerable and unsophisticated student borrowers." (FAC ¶ 24).

Plaintiff alleges that she attended Penn Law during the 2006-2007 academic term and its "cost of attendance" for that year was $53,500. (FAC ¶¶ 27-8). She asserts that for 2006-2007 she received $22,440 in scholarships and borrowed an additional $27,500 from the federal government, for a total of $49,940. (FAC ¶ 29). She then claims she "borrowed an additional $7,103 on September 28, 2006 in private loans from National Collegiate Trust (the 'NCT Loan'). Thus, the NCT Loan was originated in excess of the published 'cost of attendance' and was not a qualified education loan under section 523(a)(8)(B)." (FAC ¶ 30). She further alleges that this loan was "not 'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or part by a non-profit' and thus was not non-dischargeable under section 523(a)(8)(A)(i)." (FAC ¶ 32).

Plaintiff next alleges that she attended Penn Law for academic term 2007-2008 and that the cost of attendance for that year was $56,380. (FAC ¶¶ 34-5). She claims that for 2007-2008 she received $12,850 in scholarships and borrowed $52,347 from the federal government, but then "borrowed an additional $6,557 from JP Morgan Chase and $9,348 Citibank [sic]." (FAC ¶ 37). Plaintiff states "[t]he Citibank Loan was subsequently sold to Defendant Golden Tree Asset Management … which was later securitized into the GS2 Trust" (FAC ¶ 27, n.1). Plaintiff does not indicate whether the "GS2 Trust" owned the loan when she filed for bankruptcy, when the Discharge Order was entered, when any collection on the loan took place, or whether it still holds an interest today.

The three loans alleged for the 2006-2007 and 2007-2008 academic terms are collectively referred to as the "Loans" throughout this memorandum.

After individually defining the Trust Defendants in the FAC's opening paragraph, Plaintiff never makes another allegation that references the Trust Defendants or connects any Loan at issue to a specific trust. Nonetheless, Plaintiff asserts three causes of action. The first cause of action seeks a declaratory judgment that the Loans were discharged "by operation of law on August 3, 2016 because they were not student loans protected by any subsection of section 523(a)(8)." (FAC ¶ 71). The second claims contempt for violations of the Discharge Order because defendants sought to collect on the Loans which should have been discharged "because they were unsecured consumer loans and not non-dischargeable student loans." (FAC ¶¶ 72-76). These are the only claims asserted against the Trust Defendants. Plaintiff also asserts a claim that Firstmark Services, a separate defendant, violated the Fair Debt Collection Practices Act ("FDCPA") by seeking to collect on one of the Loans. (FAC ¶¶ 77-86).

## ARGUMENT[3]

### I.      Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

Fed. R. Civ. P. 8, made applicable here by Fed. R. Bankr. P. 7008, requires Plaintiff to articulate the grounds for her entitlement to relief with more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555-56. The allegations must "state a claim to relief that is plausible on its face," which means there must be "more than a sheer possibility that a defendant has acted unlawfully."

---

[3] The Trust Defendants also join in the motions and arguments made by co-defendants Pennsylvania Higher Education Assistance Agency and Firstmark Services to the extent those arguments are consistent with the Trust Defendants' position.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Twombly*, 550 U.S. at 570). There must be enough factual content to allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also L–7 Designs Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011); *In re Walker*, No. 13-10297, 2013 WL 5524999, at \*1 (Bankr. M.D.N.C. Oct. 3, 2013).

<u>Requirements For A Declaratory Judgment.</u>

In order to bring a claim under 28 U.S.C. § 2201 seeking a declaratory judgment, a plaintiff must allege "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991), cert. denied, 501 U.S. 1218 (1991). The controversy must be "real and substantial ... admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937). "Whether a real and immediate controversy exists in a particular case is a matter of degree and must be determined on a case-by-case basis." *Kidder, Peabody & Co.*, 925 F.2d at 562.

<u>Requirements For A Finding Of Contempt.</u>

To succeed on a claim for a violation of discharge under Section 524 of the Bankruptcy Code the plaintiff bears the burden of plausibly alleging a link between the defendant's behavior and a violation of the discharge order. *In re McKenzie-Gilyard*, 388 B.R. 474, 481 (Bankr. E.D.N.Y. 2007)(citing *In re Torres*, 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007)). To be awarded relief for contempt of a discharge injunction a plaintiff must plausibly allege a defendant "willfully violated the discharge injunction," which means establishing that "the [defendant] had notice of the [debtor's] discharge and 'intentionally took action which violated the injunction.'"

*In re Prisco*, No. 07-13408, 2017 WL 3575854, at *3 (Bankr. N.D.N.Y. Aug. 14, 2017); *In re Nicholas*, 457 B.R. 202, 226 (Bankr. E.D.N.Y. 2011); *In re Dabrowski*, 257 B.R. 394, 404 (Bankr. S.D.N.Y. 2001).

Plaintiff fails to meet these pleading requirements and the Court should dismiss the FAC.

**A.      The First Amended Complaint Does Not Satisfy Fed. R. Civ. P. 8.**

At its heart, Plaintiff's theory of liability depends on the Trust Defendants having violated the Discharge Order by attempting to collect, or having collected, on the Loans which Plaintiff claims should have been discharged. However, Plaintiff fails to plausibly allege: 1) that the loans at issue were covered by the Discharge Order; 2) that any of the Trust Defendants collected on the Loans such that she is entitled to the declaration that she seeks; or 3) that any violation of the Discharge Order has taken place. The FAC is so sketchy as to the details of what it is alleging that it does not describe the Loans so as to allow defendants to definitively identify them. And, it does not connect any of the Loans to the Trust Defendants. These failures mean that Plaintiff has not alleged any plausible cause of action against the Trust Defendants.

**i.      Plaintiff Does Not Sufficiently Identify The Loans At Issue.**

Based on the allegations of the FAC, Plaintiff appears to base her claims on three loans. The first is alleged to have been in the amount of $7,103, dated September 28, 2006, from "National Collegiate Trust." (FAC ¶ 30). The other two loans were taken out in the 2007-2008 academic year, "$6,557 from JP Morgan Chase and $9,348 Citibank [sic]." (FAC ¶ 37). These sparse allegations do not sufficiently identify the Loans to satisfy the requirements of *Iqbal* and *Twombley*.

Two of the Loans - "$6,557 from JP Morgan Chase and $9,348 Citibank [sic]" for the 2007-2008 academic year (FAC ¶ 37) - are barely identified in the pleading. No dates or other identifying information concerning these loans is provided in the FAC. Plaintiff's Schedule F

does not list loans in the amount of "$6,557 from JP Morgan Chase and $9,348 Citibank [sic]." There is a $5,539 loan that lists the creditor as "AES/Jpmgn Ch," but there is nothing in the amount of $6,557.[4] (Bankr. Dkt. No. 13, Schedule F, 4.3). For the academic year 2007-2008 there are four loans listed in amounts between $8,000 and $10,000, taken out on different dates, but none of these loans are in the amount of $9,348 and none of them can be discerned to have been made by Citibank. (Bankr. Dkt. No. 13, Schedule F, 4.2, 4.21, 4.27, 4.30).

The allegations relating to the remaining loan are insufficient as well. While, Schedule F 4.4 lists a loan dated September 28, 2006, with a creditor named AES/NCT, it is in the amount of $6,758. (Bankr. Dkt. No. 13, Schedule F, 4.4). There is nothing in the FAC that ties this amount to the "NCT Loan," which resulted from Plaintiff "borrow[ing] an additional $7,103 on September 28, 2006." (Compare FAC ¶ 30 with Bankr. Dkt. No. 13, Schedule F, 4.4). Plaintiff simply fails to plausibly allege that the amount alleged to have been borrowed ($7,103) is the loan listed in the Schedule F ($6,758).

Defendant NCSLT 2006-4 does have documentation that shows Plaintiff (under her maiden name) borrowed $7,103 on September 28, 2006.[5] (*See* Declaration of Gregory T. Casamento, dated December 8, 2017 ("Casamento Decl."), Ex. 1). However, while the date and amount of this loan correspond to the date and amount set forth in Paragraph 30 of the FAC

---

[4] The amounts listed in Plaintiff's Schedule F are presumably the balances due on the loans at or about the time she filed bankruptcy. While that perhaps explains the differences, it does not assist the Trust Defendants in identifying the otherwise unspecified loans. And in any event, a defendant should not be required to look beyond the four corners of the complaint to divine what it is being accused of having done. *Williams v. Time Warner, Inc.*, 440 Fed. Appx. 7, 2011 WL 4470015, * 1 (2d Cir. Sept. 28, 2011)(citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

[5] In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it by reference." *In re Brizinova*, 554 B.R. 64, 75 (Bankr. E.D.N.Y. 2017)(Stong, J.)(quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.2007); citing *Gillingham v. Geico Direct*, No. 06–CV–2915 (NGG)(MLO), 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008)).

(FAC ¶ 30), this loan was not made by "National Collegiate Trust" as Plaintiff alleges but by

Bank One (JP Morgan Chase Bank, N.A.). (*See* Casamento Decl., Ex. 1).

Furthermore, Plaintiff alleges that the $7,103 September 28, 2006 loan was not "'made,

insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or

part by a non-profit' and thus was not non-dischargeable under section 523(a)(8)(A)(i)." (FAC ¶

30). The documentation for the $7,103 September 28, 2006 loan says exactly the opposite,

however. Section L. 12 of the September 28, 2006 Credit Agreement between Bank One and

Plaintiff states:

> **I understand and agree that this loan is an education loan and certify that it
> will be used only for costs of attendance at the School. I acknowledge that the
> requested loan is subject to the limitations on dischargeability in bankruptcy
> contained in Section 523(a)(8) of the United State Bankruptcy Code because
> either or both of the following apply: (a) this loan was made pursuant to a
> program funded in whole or in part by The Education Resources Institute,
> Inc. ("TERI"), a non-profit institution, or (b) this is a qualified education
> loan as defined in the Internal Revenue Code. This means that if, in the event
> of bankruptcy, my other debts are discharged, I will probably still have to
> pay this loan in full.**

(*Id.* at Ex. 1, pp. 7-8)(bold in the original). And, in fact, the check made out to Plaintiff that

funded this loan came from TERI. (*Id.* at Ex. 1, p. 11).

Whether or not this loan was made under a program funded by TERI, a non-profit, goes

directly to the question of dischargeability under Section 523(a)(8); Plaintiff's claim that this

loan is dischargeable explicitly depends on it not being "made under a 'program funded in whole

or part by a non-profit'…." (FAC ¶ 30). But, the Second Circuit has specifically held that where

TERI has funded a student loan, that "student loan was made under a program that was funded in

whole or in part by a nonprofit institution" such that the loan was non-dischargeable under

section 523(a)(8). *In re O'Brien*, 419 F.3d 104, 106 (2d Cir. 2005). The confusion surrounding

the "NCT Loan" is therefore profoundly problematic; the "NCT Loan" is either a loan that is

firmly within the ambit of Section 523(a)(8) because it was funded by TERI or it is an entirely unidentifiable loan.

Given the filings in this bankruptcy to date, the loan documents that do exist and the contents of the FAC, Plaintiff has not plausibly alleged a claim here. This is not simply a matter of semantics. The causes of action Plaintiff alleges depend on certain loans allegedly being dischargeable because they exceed the "Cost of Attendance" for Penn Law. According to her Schedule F, each academic year Plaintiff took out numerous student loans that were each individually less than the alleged "Cost of Attendance" but in aggregate are alleged to have surpassed it. Plaintiff's theory of her case depends on certain loans exceeding the "Cost of Attendance" and therefore being or becoming dischargeable, while others do not. The FAC is silent with respect to what criteria Plaintiff is using to make the determination that a certain loan is the one that exceeds the Cost of Attendance and therefore dischargeable, while the others are not. By refusing to allege information which sufficiently identifies which loans are at issue, Plaintiff fails to meet the requirements of Fed. R. Civ. P. 8.

### ii.    Plaintiff Fails To Connect The Loans To The Trust Defendants.

The FAC also fails to sufficiently alleged that the Loans are sufficiently linked to any of the Trust Defendants. In fact, Plaintiff does not even identify which trust is supposed to have an interest in which Loan. Plaintiff's failure to link the Loans to the Trust Defendants means that she has failed to plausibly plead a cause of action against the Trust Defendants for a declaratory judgment under 28 U.S.C. § 2201 or for violating the Discharge Order.

The caption and first paragraph of the FAC identify each of the Trust Defendants as the defendant parties in this action. (FAC p. 1). That, however, is the last allegation contained in the

FAC regarding these specific entities.[6] To be sure, Plaintiff proceeds as if there are connections between the Loans and the Trust Defendants, but she never sets forth any plausible allegations that actually tie any of the Loans to any of the Trust Defendants.

The first loan Plaintiff premises her claims against the Trust Defendants upon is described as "$7,103 [she borrowed]… from National Collegiate Trust (the 'NCT Loan')." (FAC ¶ 30). But, Plaintiff makes no allegations that connect the "NCT Loan" to either NCSLT 2005-3 or NCSLT 2006-4, let alone GS2 2016-A. The FAC does not identify who "National Collegiate Trust" is and does not allege that it has any relationship to any of the Trust Defendants. Instead, the pleading appears to infer that because the name "National Collegiate Trust" is similar to the names of two of the Trust Defendants (National Collegiate Student Loan Trust 2005-3 and National Collegiate Student Loan Trust 2006-4), there must be some relationship between them. In fact, there is none; as noted above, NCSLT 2005-3 and NCSLT 2006-4 are independent and distinct corporate entities. The FAC does not plausibly allege anything that permits the Trust Defendants to determine which one of them, if any, is supposed to have had a relevant interest in the "NCT Loan."

The FAC does no better with the $9,348 alleged to have been borrowed from Citibank. (FAC ¶ 37). The sole allegation which apparently seeks to tie this loan to any of the Trust Defendants is a footnote, which states "The Citibank Loan was subsequently sold to Defendant Golden Tree Asset Management on or about October 24, 2015, which was later securitized into the GS2 Trust." (FAC ¶ 37, n.1). Plaintiff is silent, however, as to whether "the GS2 Trust"

---

[6] In the section of the FAC that identifies the "Parties," Plaintiff refers to "Defendant National Collegiate Trust," which is neither a defendant or, to the best of the Trust Defendants' knowledge, an actual legal entity. This also makes Plaintiff's allegation that obtained at least one of the loans purportedly at issue from National Collegiate Trust (the purported "NCT Loan") perplexing.

owned the loan when she filed for bankruptcy in February 2016, whether it had an interest when the Discharge Order was entered in August 2016, or whether it now holds an interest.

And, the FAC does even less with the "$6,557 [borrowed] from JP Morgan Chase." (FAC ¶ 37). Besides the single reference to this loan in Paragraph 37 of the FAC, it is never mentioned again. There is nothing that even attempts to allege any connection between this loan and any of the Trust Defendants.

At the end of the day, there are no plausible allegations that any of the Trust Defendants have any interest in, or connection to, any of the Loans. The Trust Defendants are not alleged to have originated any of the loans at issue. They are not alleged to own any of the loans at issue. None of the activity alleged anywhere in the FAC is alleged to have been undertaken by any of the Trust Defendants.

*                    *                    *

The FAC's failures to connect the Loans to the Trust Defendants and to sufficiently identify the Loans, mean that Plaintiff has failed to allege any cause of action against the Trust Defendants based on the Loans.

Plaintiff cannot demonstrate that she is entitled to a declaratory judgment without alleging "a substantial controversy, between parties having adverse legal interests." *Maryland Casualty Co.*, 312 U.S. at 273. According to the FAC, the controversy at issue depends on the Trust Defendants having an interest in, and collecting on, the Loans. By not making any plausible allegations that the Trust Defendants have any connection to the Loans, or even what debt constitutes the Loans, Plaintiff fails to allege a controversy between her and the Trust Defendants so as to justify a claim for a declaratory judgment regarding the Loans.[7]

---

[7] Plaintiff's failure to identify the Loans and connect them to the Trust Defendants also raises issues regarding whether she has named all of the necessary parties necessary for the Court to issue a declaratory judgment. A

Because she is not entitled to a declaratory judgment that the Loans were discharged, and Plaintiff's request for a finding of contempt depends on a declaration that the Loans were discharged, Plaintiff's second claim fails as well. Independent of the failure of her declaratory judgment claim, Plaintiff's claim for violations of the Discharge Order further fails because it does not plausibly allege that the Trust Defendants have any interest in the Loans which means that Plaintiff did not meet her "burden of linking a creditor's behavior with a violation of the Section 524 discharge injunction." *In re McKenzie-Gilyard*, 388 B.R. at 481.

The FAC does not allege anything against the Trust Defendants regarding the Loans and should be dismissed for this reason.[8]

### B. The First Amended Complaint Sounds In Fraud But Does Not Satisfy The Requirements of Fed. R. Civ. P. 9(b).

There is a second, distinct pleading failure in the FAC. Plaintiff's causes of action sound in fraud, but her allegations do not satisfy the requirements of Fed. R. Civ. P. 9(b).

In Plaintiff's own words: "the Defendants employed processes, practices and acts designed to mislead [debtors] into believing that their debts were not discharged and inducing them to make payments on the extinguished debts" (FAC ¶ 52); they "represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose" (FAC ¶ 22); and, they "fraudulently informed the debtor that the Debts were not discharged." (FAC ¶ 44). As such, Plaintiff's claims depend on a fraud having taken place.

---

plaintiff's claim for declaratory judgment cannot be properly adjudicated without all necessary and proper parties. *See Bartfield v. Murphy*, 578 F. Supp. 2d 638, 650 (S.D.N.Y. 2008). Since, Plaintiff has not alleged who owns the Loans, and who is a creditor as a result of the Loans, she has not named the necessary parties required for the declaratory judgment she seeks.

[8] This memorandum focuses on the Trust Defendants. However, the failings of the FAC that warrant dismissal of the claims against the Trust Defendants also warrant dismissal of the claims brought against the other defendants as well. Plaintiff does not allege anything to connect any of the defendants to any of the Loans in any way.

Because Plaintiff's claims sound in fraud, Fed. R. Civ. P. 9(b), made applicable here by Fed. R. Bankr. P. 7009, applies. *See* Fed. R. Civ. P. 9(b); *see In re Henein*, 257 B.R. 702, 706 (E.D.N.Y. 2001). Rule 9(b) requires that an allegation of fraud be pled with "particularity," which means an acceptable pleading must include specific facts regarding "the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation." *In re Henein,* 257 B.R. at 706 (citing *Acito v. IMCERA Group*, 47 F.3d 47, 51–52 (2d Cir. 1995)); *see also Techno-Comp, Inc. v. Arcabascio*, 130 F.Supp.3d 734, 741 (E.D.N.Y. 2015)(quoting *Ouaknine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990)); *In re Rosen*, 151 B.R. 648, 655 (Bankr. E.D.N.Y. 1993)(quoting *In re Argo Communications Corp.*, 134 B.R. 776 (Bankr. S.D.N.Y. 1991)); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). In a case like the present one, where multiple defendants are accused of participating in the same fraud, a plaintiff must "specify with particularity which misrepresentations were made by which defendant." *Graham v. Select Portfolio Servicing, Inc.*, 156 F.Supp.3d 491, 512 (S.D.N.Y. 2016)(citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

While Plaintiff's claims depend on the Trust Defendants having made some misrepresentation to Plaintiff, the FAC does not make any plausible allegation that the Trust Defendants did make a misrepresentation to the Plaintiff. The FAC simply posits that the Trust Defendants have misled debtors by using "dunning letters, emails, text messages and phone calls recover [sic] the discharged debt in violation of 11 U.S.C. § 524." (FAC ¶ 75; *see also* FAC ¶ 53). Nothing in the FAC demonstrates, however, that these "dunning letters, emails, text messages and phone calls" contain any misrepresentations or even what that misrepresentation is claimed to be. *See*, *e.g.*, *Techno-Comp, Inc.*, 130 F.Supp.3d at 741. The FAC certainly does not

14

set forth "the alleged fraudulent statements, identity of the speaker, time and place of the statements, and nature of the misrepresentation" as required by Rule 9(b). *In re Henein,* 257 B.R. at 706; *see also Mills*, 12 F.3d at 1175.[9]

Finally, Plaintiff's allegations lump all the defendants together and does not "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio*, 822 F.2d at 1247. There is no distinction drawn between the various named entities so as to allow those entities to be clear as to what is being alleged against whom.

Plaintiff's failures to allege the contours of the purported fraud with any specificity is a separate pleading failure that warrants dismissal.

## II.    Plaintiff's Claim That The Trust Defendants Violated The Discharge Fails Because The Discharge Order Is Not Sufficiently Clear and Definite.

Plaintiff requests a finding that the Trust Defendants willfully violated the Discharge Order and are therefore in contempt of court. However, the Discharge Order, especially in light of Plaintiff's theory of liability, does not support Plaintiff's request. In fact, Plaintiff admits that the Discharge Order cannot support her claim for contempt.

To be enforceable in a contempt proceeding, a discharge order must be clear and unambiguous so that it sets forth "'in specific detail an unequivocal command.'" *See U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 789 F.3d 29, 33 (2d Cir. 2015)(quoting *H.K. Porter Co. v. Nat'l Friction Products Corp.*, 568 F.2d 24, 27 (7th Cir. 1977)). There must be "no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)(quotation marks and internal citations omitted). Otherwise, a party is left "open to the hazard

---

[9] The FAC's failure to allege any misrepresentation is particularly egregious because if Plaintiff had been receiving "dunning letters" or any other communication that made misrepresentations about the Loans, one would expect that she would be able to quote from those communications and articulate what the misrepresentations contained in those communications were.

of conducting business in the mistaken belief that it is not prohibited by the injunction and thus [be] vulnerable to prosecution for contempt." *Williams v. United States*, 402 F.2d 47, 48–49 (10th Cir. 1967). Within these parameters, "'the burden rests with the movant to show [by clear and convincing evidence] that the offending ... entity had knowledge of the discharge and willfully violated it by continuing with the activity complained of.'" *In re Torres*, 367 B.R. at 490.

The FAC does not do satisfy these requirements. In her FDCPA claim, Plaintiff asserts that Firstmark violated the FDCPA because it represented that one of the Loans "had not been discharged, despite the fact that [no one] had obtained a judicial determination on the question." (FAC ¶ 84). This is an unvarnished admission that the Discharge Order does not contain an "unequivocal command" that Plaintiff's obligation to repay the Loans was discharged and that the Trust Defendants could not collect on them. (Bankr. Dkt. No. 17). In fact, the Discharge Order and the accompanying Official Form B18 stated that "[d]ebts for most student loans" and "[s]ome debts which were not properly listed by the debtor" were not dischargeable. (*Id.*). Ultimately, the FAC demonstrates that the "four corners of the order" do not forbid collection of the Loans so as to support a finding of contempt, which means this claim must be dismissed. *King*, 65 F.3d at 1058.

The Discharge Order's inability to support Plaintiff's request for a contempt finding is further demonstrated when the Court considers Plaintiff's request for a declaration that the Loans "were discharged by operation of law … because they were *not* student loans" in light of her allegation that she scheduled each of the Loans as student loans. (FAC ¶¶ 40, 71)(emphasis added). Plaintiff's case depends upon a declaratory judgment that the debts she scheduled as student loans were not student loans. This semiotic transformation would not be necessary if the Discharge Order expressed "an operative command capable of 'enforcement'" regarding the Loans. *Int'l*

*Longshoreman's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74, 76 (1967); *see also In re Robinson*, 342 F. App'x 235, 236 (8th Cir. 2009); *In re Gervin*, 300 F. App'x 293, 300–01 (5th Cir. 2008); *In re Logsdon*, 32 F. App'x 427, 428–29 (9th Cir. 2002). Unsurprisingly, the FAC is silent regarding how the Trust Defendants could have willfully violated the Discharge Order by taking Plaintiff's bankruptcy filings at face value.

Finally, Plaintiff's classification of the Loans as student loans undercuts her assertion that the Trust Defendants engaged in willful behavior by hiding the fact that the "Debts were discharged pursuant to the Discharge Order … because they were unsecured consumer loans and not non-dischargeable student loans" and then misled her into repaying the Loans. (FAC ¶ 73). Plaintiff classified each loan in her bankruptcy filings as a student loan. (Bankr. Dkt. No. 13). This is important: Plaintiff on her own, before there could be any purportedly "misleading" post-bankruptcy communications, represented to the bankruptcy court and her creditors that each one of the loans at issue was a loan that had been taken out to pay for her education and was likely non-dischargeable. Subsequent to this representation, she did not bring any proceedings in her bankruptcy to determine whether these student loans were dischargeable or not and the Discharge Order is silent on the point. Ultimately, Plaintiff is seeking to hold the Trust Defendants responsible for agreeing with the way she pled her own bankruptcy.

The foregoing demonstrates that not only has Plaintiff failed to allege that the Court should find that the Trust Defendants violated the Discharge Order, but that she cannot do so. Even if Plaintiff were to identify the Loans and link them to the Trust Defendants, she has already admitted that the Discharge Order did not discharge the Loans. The Trust Defendants cannot be in contempt for willfully violating an order by collecting on the Loans, when that order did not explicitly prohibit them from doing so.

### III.    Plaintiff Asks This Court To Exceed Its Jurisdiction.

The failures of the FAC extend to its "Class Action Allegations." (FAC ¶¶ 55-69). Plaintiff seeks to bring litigation on behalf of a putative class beyond this Court's jurisdiction.

Plaintiff alleges that the class she purports to represent includes "[c]itizens of the various states who filed for bankruptcy in any of the district courts of the United States" (FAC ¶ 56) and "[t]here are common questions of law/fact" including "(i) whether the Class Members' loans were discharged at the conclusion of their bankruptcy cases; and (ii) whether Defendants violated the applicable Discharge Orders by seeking to collect on discharged private educational debt" so as to be subject to a finding of contempt. (FAC ¶ 62).

In the context of Plaintiff's causes of action, which attempt to assert a nationwide class claiming the Trust Defendants are in contempt of various discharge orders, bankruptcy courts have found they lack subject matter jurisdiction. *See In re Beck*, 283 B.R. 163, 173 (Bankr. E.D.Pa. 2002)(collecting cases); *see also Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 916 (7th Cir. 2001); *Barrett v. Avco Fin. Srvs. Mgmt. Co.*, 292 B.R. 1, 8 (D. Mass. 2003); *In re Forson*, 549 B.R. 866 (Bankr. S.D. Ohio 2016); *but cf In re Haynes*, 2014 WL 3608891, * 8 (Bankr. S.D.N.Y. July 22, 2014). Generally, only the court that issued an order has subject matter jurisdiction to hold a violator of that order in contempt. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 236 (1998); *see also Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). "This rule makes sense, for several reasons. It promotes clarity and predictability. This is because an order, unlike a statute, arises in the context of a particular case and is best interpreted and applied by the judge him or herself, within the context of that case." *In re Brizinova*, 565 B.R. 488, 503 (Bankr. E.D.N.Y. 2017)(Stong, J.)(citing *In re Beck*, 283 B.R. at 169).

What Plaintiff seeks goes well beyond even the broadest conception of a bankruptcy court's ability to exercise jurisdiction over a national class. If Plaintiff's claims truly are

representative of a nationwide class, Plaintiff is asking this court to reach into potentially every district in the United States and make findings about what occurred in individual, completed bankruptcies across the country. At a minimum, on the face of the FAC, Plaintiff is asking this Court to issue individual retroactive declarations on a nationwide basis as to whether a particular student debtor's loans should have been discharged because they exceeded the cost of attendance for whatever institution the debtor attended. Plaintiff is then asking the Court to determine if those debts were discharged, then to determine if the Trust Defendants violated the discharge order in each class member's bankruptcy in light of the retroactive declaration. There is no authority which supports this Court having the ability to exercise jurisdiction to make individual, retroactive determinations in bankruptcies that have been completed in other jurisdictions.

Given what Plaintiff is alleging, this Court lacks jurisdiction to hear and determine claims for violations of discharge orders entered by courts in other jurisdictions and should dismiss any nationwide class allegations pertaining to the same.

## **CONCLUSION**

For the reasons stated above, Plaintiff's First Amended Complaint should be dismissed.

Dated:  New York, New York
        December 8, 2017

LOCKE LORD LLP


By:   _s/ Gregory T. Casamento_____
        Gregory T. Casamento
        R. James DeRose, III
        Brookfield Place, 20th Floor
        200 Vesey Street
        New York, NY 10281
        (212) 415-8600
        gcasamento@locklord.com
        rderose@lockelord.com
AND
        J. Matthew Goodin
        111 South Wacker Drive
        Suite 4100
        Chicago, IL 60606
        (312) 443-0700
        jmgoodin@lockelord.com

*Attorneys for Defendants*
*National Collegiate Student Loan Trust 2005-3,*
*National Collegiate Student Loan Trust 2006-4 and*
*Goal Structured Solutions Trust 2016-A*