UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

In re:                                                    Chapter 7

TASHANNA B. GOLDEN,                                        Case No. 16-40809-ess
*fka* TASHANNA B PEARSON,

                              Debtor.
------------------------------------------------------------------------x

TASHANNA B. GOLDEN,                                        Adv. Pro. No.: 17-01005-ess

                              Plaintiff,

        -against-

JP MORGAN CHASE BANK, NATIONAL COLLEGIATE
TRUST, FIRSTMARK SERVICES, GOLDEN TREE
ASSET MANAGEMENT LP, GS2 2016-A (GS2),
NATIONAL COLLEGIATE STUDENT LOAN TRUST
2005-3, NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2006-4, PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE AGENCY D/B/A
AMERICAN EDUCATION SERVICES,

                              Defendants.
------------------------------------------------------------------------x

## MEMORANDUM DECISION ON FIRSTMARK SERVICES'
## MOTION TO COMPEL ARBITRATION

*Appearances*:

George F. Carpinello, Esq.
Adam Shaw, Esq.
Boies Schiller Flexner LLP
30 South Pearl Street (11th Floor)
Albany, NY 12207
   *Attorneys for Plaintiff Tashanna B. Golden*

Austin C. Smith, Esq.
Smith Law Group
3 Mitchell Place (Suite 5)
New York, NY 10017
   *Attorneys for Plaintiff Tashanna B. Golden*

Barbara L. Seniawski , Esq.
The Seniawski Law Firm PLLC
1460 Broadway (4th Floor)
New York, NY 10036
   *Attorneys for Defendant Firstmark Services*

Charles F. Kaplan, Esq.
Perry, Guthery, Haase & Gessford P.C.
L.L.O.
233 South 13th Street (Suite 1400)
Lincoln, NE 68508
   *Attorneys for Defendant Firstmark Services*

Jason Walker Burge, Esq.
Fishman Haygood LLP
201 St. Charles Avenue (46th Floor)
New Orleans, LA 70170
  *Attorneys for Plaintiff Tashanna B. Golden*

Gregory T. Casamento, Esq.
Locke Lord LLP
Brookfield Place
200 Vesey Street (20th Floor)
New York, NY 10281
  *Attorneys for Defendant GS2 2016-A*

H. Peter Haveles, Jr.
Pepper Hamilton LLP
620 Eighth Avenue (37th Floor)
New York, NY 10018
  *Attorneys for Defendant Pennsylvania*
  *Higher Education Assistance Agency*

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is a motion to compel arbitration by defendant Firstmark Services ("Firstmark"). Firstmark seeks an order referring the parties to arbitration with respect to the claims set forth in Tashanna Golden's complaint, and argues that the Federal Arbitration Act requires that this Court compel arbitration pursuant to an arbitration agreement between Firstmark and Ms. Golden.[1] Ms. Golden responds that compelling arbitration here would create an inherent conflict with the purposes and policies of the Bankruptcy Code, and for those reasons, the Court should not compel arbitration, and Firstmark's motion should be denied.

## Jurisdiction

This Court has jurisdiction over this proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c) because the parties have stated their consent to this Court entering a final judgment. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

---

[1]  In addition to an order directing this matter to arbitration, Firstmark seeks, as alternative relief, the dismissal of Ms. Golden's Amended Complaint. In this decision, the Court addresses only Firstmark's request to compel arbitration of Ms. Golden's claims.

## Background

### *Ms. Golden's Bankruptcy Case*

On February 29, 2016, Tashanna Golden, *fka* Tashanna B. Pearson, filed a petition for relief under Chapter 7 of the Bankruptcy Code.  Case No. 16-40809.  On July 28, 2016, the Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for distribution from the estate over and above that exempted by law."  Case No. 16-40809, Doc. entry dated July 28, 2016.  On August 3, 2016, the Court entered an order discharging Ms. Golden (the "Discharge Order"), and on that same day, her bankruptcy case was closed.  On December 6, 2016, Ms. Golden filed a motion to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on January 10, 2017, the Court entered an order reopening the case.

### *This Adversary Proceeding*

On January 18, 2017, Ms. Golden commenced this adversary proceeding as a putative class action, on behalf of herself and others similarly situated, by filing a complaint against JP Morgan Chase Bank, Firstmark Services, GoldenTree Asset, and National Collegiate Trust (the "Defendants") seeking a determination that certain debts that she incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and a finding of contempt against the Defendants for civil contempt for willful violations of the bankruptcy discharge injunction.  Compl., Adv. Pro. No. 16-40809, ECF No. 1.

On May 31, 2017, the Court approved a stipulation between Ms. Golden and National Collegiate Student Loan Trust 2005-3 and 2006-4 (the "Trusts"), permitting the Trusts to intervene in this action.  And on July 25, 2017, the Court approved a stipulation of dismissal as to defendant JP Morgan Chase Bank.

On October 17, 2017, Ms. Golden filed a First Amended Complaint (the "Amended Complaint") to add class action allegations and additional defendants.  Am. Compl., ECF No. 32. And on November 2, 2017, Ms. Golden voluntarily dismissed defendant GoldenTree Asset Management from this action.

*The Amended Complaint*

Ms. Golden alleges that the Defendants have knowingly "appropriated a legal presumption for a class of debt" – including certain loans that she took out while she was a student at the University of Pennsylvania Law School – that they know is not entitled to a presumption of nondischargeability.  Am. Compl. ¶ 1.  She claims that the Defendants here knowingly misled her and other student debtors about the nature of these obligations.  Ms. Golden advances these allegations on behalf of an alleged class of similarly situated individuals who have declared bankruptcy since 2005 across the United States, with loans originated or serviced by the Defendants.  And Ms. Golden alleges that certain of the debts that she incurred in connection with her law school education are not nondischargeable student loans under Bankruptcy Code Section 523, and that the Defendants, including Firstmark, violated the discharge injunction entered in her bankruptcy case by seeking to collect on these debts after she received her bankruptcy discharge.

In her bankruptcy petition, Ms. Golden listed on her Schedule F certain "student loans" that she owes, including the loans described in the Amended Complaint, that the Defendants made to her in excess of the University of Pennsylvania Law School's published cost of attendance for the 2006-07 and 2007-08 academic years.  Am. Compl. ¶ 40.  She alleges that these loans are not nondischargeable student loans or conditional educational grants under

Bankruptcy Code Section 523(a)(8). She alleges that she received a discharge on or about August 5, 2016, and that her creditors likewise "received notice of discharge." Am. Compl. ¶ 43.

Ms. Golden alleges that rather than treat these debts as discharged, as required by the bankruptcy law, the Defendants resumed their collection efforts after she received a discharge. She argues that they "fraudulently informed [her] that the [d]ebts were not discharged and demanded . . . and accepted payment." Am. Compl. ¶ 44. Ms. Golden alleges that the "Defendants' abusive, deceptive and illegal collection efforts after Golden's Debts were discharged were made knowingly and willfully in violation of this Court's discharge orders." Am. Compl. ¶ 45.

Ms. Golden alleges that the Defendants and other creditors represented to her and to similarly situated student debtors that the Bankruptcy Code prohibited discharge of "*any* loan made to any person for any educational purpose," when they knew that "only private loans that meet the requirements of section 523(a)(8)(B) [are] nondischargeable." Am. Compl. ¶ 22. She claims that while the Defendants and other lenders informed borrowers such as herself that their loans were nondischargeable, these lenders securitized these same obligations for sale on the secondary market. And she asserts that the prospectuses for these asset-backed securities cautioned investors that, pursuant to Bankruptcy Code Section 523(a)(8), "only private loans made for qualified expenses were excepted from discharge." Am. Compl. ¶ 25.

Ms. Golden requests a declaratory judgment, pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9), that her debts were discharged by operation of law on August 3, 2016, the date of her bankruptcy discharge, because they are not student loans excluded from discharge under Section 523(a)(8). Ms. Golden claims that since the Defendants were notified of the Discharge Order pursuant to Bankruptcy Rule 4004(g) and still sought to collect on her debts

by use of dunning letters, e-mails, text messages, and telephone calls, the Court should cite the

Defendants for civil contempt and order them to pay damages in an amount to be determined at

trial for willful violations of the Discharge Order and Bankruptcy Code Section 524, and also to

pay her attorneys' fees and costs.

_This Motion To Compel Arbitration, or in the Alternative, To Dismiss this Case_

On December 8, 2017, Firstmark moved to compel arbitration of Ms. Golden's claims, or

in the alternative, to dismiss this case (the "Motion to Compel Arbitration"), and filed a

memorandum of law in support (the "Def's Mem."). Firstmark argues that Ms. Golden

contractually agreed to arbitrate each of the claims that she asserts here, and that her agreement

to arbitrate is "valid, irrevocable, and enforceable." Def's Mem. at 4, ECF No. 42. Firstmark

argues that the promissory note that established the terms of the loan at issue, referred to as the

"Citibank Loan," contains a "sweeping" arbitration provision, which states:

> EITHER YOU OR I CAN REQUIRE THAT ANY CONTROVERSY OR
> DISPUTE BE RESOLVED BY BINDING ARBITRATION. . . .
> ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING
> THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS
> ACTION OR SIMILAR PROCEEDING.

Def's Mem. at 6.

Firstmark also argues that Ms. Golden's promissory note signed states that either party

may require that any claims be submitted to mandatory and binding arbitration, which shall be

governed by, and enforceable under, the Federal Arbitration Act (the "FAA"). Firstmark notes

that the FAA "'reflects the overarching principle that arbitration is a matter of contract' and

'courts must rigorously enforce arbitration agreements according to their terms.'" Def's Mem. at

7 (quoting _Am. Express Co. v. Italian Colors Rest._, 570 U.S. 228, 233 (2013)).

Firstmark argues that Ms. Golden's claims here fall squarely within the scope of the arbitration provision that governs the Citibank Loan, and that it has elected to resolve those claims through arbitration.  It also argues that the FAA dictates that, under these circumstances, the Court should compel arbitration of these claims and dismiss this lawsuit, or alternatively, stay these proceedings until these claims have been arbitrated in accordance with the terms of the parties' agreement.  Firstmark further argues that "the presumptive validity, irrevocability, and enforceability" of the parties' arbitration agreement "extends to any 'claims that allege a violation of a federal statute, unless the [FAA's] mandate has been overridden by a contrary congressional command.'"  Def's Mem. at 8 (quoting *Italian Colors*, 233 U.S. at 1309). Firstmark argues that absent a clear statutory directive disfavoring arbitration of a particular statutory claim, courts must enforce an arbitration agreement as written, and that neither the text nor the legislative history of the Bankruptcy Code evince any intent to preclude arbitration.

In addition, Firstmark argues that the "inherent conflict" doctrine does not require a different result, for at least two reasons.  Def's Mem. at 10.  That doctrine provides that despite the strong command of the FAA, arbitration will not be compelled where it would create an inherent conflict with a statute's underlying purpose.  First, it argues that the Supreme Court no longer conducts the inherent conflict inquiry, and that this inquiry has never been used as a basis for refusing to enforce an arbitration agreement.  Firstmark points to the Supreme Court's decision in *CompuCredit Corp. v. Greenwood,* 565 U.S. 95 (2012), where the Court looked to the statute's language and legislative history to discern whether a clear congressional command was present, and did not conduct an inherent conflict inquiry.

And second, Firstmark argues that even if this Court does engage in an inherent conflict analysis, the outcome should be the same because Ms. Golden's ability to achieve a "fresh start"

is not impaired by arbitration, the Amended Complaint lacks a direct connection to her own bankruptcy case that would justify refusing to compel arbitration, and the standard, uniform discharge order upon which Ms. Golden's claim is based does not require any unique or special interpretation by the issuing court.

Ms. Golden opposes the arbitration of her claims.  On January 8, 2018, Ms. Golden filed a memorandum of law in opposition (the "Plf's Opp.") to the arguments raised in the Motion to Compel Arbitration, as well as the Motion to Dismiss.

Ms. Golden responds that the nature of this proceeding places it outside the scope of the parties' arbitration agreement.  She argues that an arbitration clause between a debtor and a creditor is not invoked when a debtor raises allegations that a creditor has violated a bankruptcy court's discharge injunction.  Here, Ms. Golden states, her claims invoke the Court's contempt powers, not private contract rights and obligations between herself and Firstmark.  And Ms. Golden responds that inasmuch as the Defendants may have violated the Court's discharge injunction, the Court's equitable powers under Bankruptcy Code Section 105 provide the only means through which that violation can be addressed.

In addition, Ms. Golden responds that under the Supreme Court's decision in *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220 (1987), her claims are not subject to arbitration.  She argues that following *McMahon*:

> [A] party can demonstrate that a contrary congressional command exists by making a showing of Congress' express or inherent intent "to limit or prohibit a waiver of a judicial forum for a particular claim . . . deducible from the statute's text or legislative history, or from an inherent conflict between arbitration and the statute's underlying purpose."

Plf's Opp. at 12 (quoting *McMahon*, 482 U.S. at 227).  And she notes that under *McMahon*, a party may rely on a statute's text, its legislative history, or an inherent conflict between

7

arbitration and the statute's underlying purposes, to show that Congress did not intend that a particular claim be subject to arbitration.

Ms. Golden also argues that "the legislative history of the Bankruptcy Code demonstrates Congress's intent to have [Section] 524 claims adjudicated in bankruptcy court."  Plf's Opp. at 12.  She argues that Congress instituted the discharge injunction "to prevent creditors from filing state court actions . . . to collect on . . . discharged debts," and to make certain that bankruptcy courts enforce the bankruptcy discharge.  *Id.*  Ms. Golden states that the legislative history of Bankruptcy Act Section 14(f), the predecessor to Bankruptcy Code Section 524, supports her position.  According to Ms. Golden, "[t]he House Committee on the Judiciary stated that 'the major purpose of the proposed legislation is to effectuate, more fully, the discharge in bankruptcy by rendering it less subject to abuse by harassing creditors.'"  Plf's Opp. at 12-13 (quoting 4 *Collier on Bankruptcy* ¶ 524.LH (16th ed. 2018)).  She argues that this demonstrates that Congress did not intend for violations of a bankruptcy court's discharge injunction to be adjudicated "in any other forum, including in arbitration."  Plf's Opp. at 13.

And Ms. Golden responds that there is an inherent conflict between the relief that she seeks in her claims here and arbitration, for several reasons.  First, she argues that "bankruptcy courts have the undisputed power to interpret and enforce their own orders and delegating that power to private arbitrators would jeopardize the underlying purpose of the Bankruptcy Code."  Plf's Opp. at 14.  Second, she argues that since "providing and protecting [a debtor's] financial fresh start is a fundamental, if not *the* fundamental, purpose of the Bankruptcy Code and the discharge injunction is the mechanism through which the fresh start is achieved . . . the central purpose of the [Bankruptcy] Code would be frustrated by leaving enforcement of that purpose in the hands of privately-chosen arbitrators."  *Id.*  And finally, she argues that "uniform application

8

of bankruptcy law would be jeopardized by arbitration," rather than adjudication, of discharge violations.  *Id.*

Ms. Golden also responds that Firstmark may not rely on *CompuCredit* in support of its argument that the Supreme Court has somehow abandoned the inherent conflict inquiry, because *CompuCredit* does not stand for that rule.  Rather, she argues, *CompuCredit* "addressed only the issue of whether the text of a statute exempts a claim from arbitration," but "did not address situations in which Congress's intent to exempt a claim from arbitration is evident from the legislative history of the statute or, as here, from an inherent conflict between arbitration and underlying purposes of the statute."  Plf's Opp. at 22-23.

On January 23, 2018, Firstmark filed a reply (the "Reply") in further support of its Motion to Compel Arbitration.  Firstmark characterizes Ms. Golden's arguments as an attempt to assert claims on the Court's behalf, and states that "the Court is not a party to and therefore cannot be bound by the parties' agreement to arbitrate."  Reply at 3, ECF No. 61.  Firstmark argues that "[t]he Court does not stand to gain anything by allowing the parties to arbitrate Golden's claims, nor does the Court waive any of its rights or cede any authority by doing so." *Id.*

Firstmark also replies that on the one hand, Ms. Golden argues that it is "elemental" to the "integrity" of the bankruptcy process that the Court retain the exclusive power to interpret and enforce its own orders, and any deviation from this rule would be "repugnant to our judicial system."  Reply at 5.  But at the same time, Firstmark notes, she presses for a contradictory result in asking this Court to certify a nationwide class action, and enforce discharge injunctions entered in other cases, courts, and districts.  Firstmark states that Ms. Golden refutes her own argument against arbitration, when elsewhere she argues for a class action.  Firstmark argues that

her "dueling theories are incompatible," and that "she inadvertently advances several compelling rationales for permitting arbitration of Section 524 claims." *Id.*

**Discussion**

In order to determine whether the Court should compel arbitration of Ms. Golden's claims, the Court must answer two questions:  first, whether this proceeding is core or non-core; and second, whether arbitration of these claims would present a severe, inherent conflict with, or necessarily jeopardize the objectives of, the Bankruptcy Code.

*Whether this Proceeding Is Core or Non-Core*

One key piece of the picture in determining whether Ms. Golden's claims should be referred to arbitration is the scope of and boundary between core and non-core proceedings. Congress has outlined a non-exhaustive list of many of the matters that are considered "core" proceedings under the bankruptcy law.  28 U.S.C. § 157.  These include matters concerning the administration of the estate, determinations as to the dischargeability of particular debts, and objections to a debtor's discharge, among others.  As the Supreme Court has observed, Bankruptcy Code Section 157 is a "nonexclusive list . . . in which . . . bankruptcy courts could constitutionally enter judgment."  *Wellness Int'l Network,* 135 S. Ct. at 1940.

To similar effect, courts have outlined three categories of proceedings that bankruptcy courts may exercise jurisdiction over:  proceedings arising under the Bankruptcy Code, proceedings arising in a case under the Bankruptcy Code, and those related to a case under the Bankruptcy Code.  "Proceedings 'arising under title 11, or arising in a case under title 11,' are deemed 'core proceedings.'"  *Elliott v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 153 (2d Cir. 2016), *cert. denied sub nom. Gen. Motors LLC v. Elliott*, 137 S. Ct. 1813 (2017) (quoting *Stern v. Marshall,* 564 U.S. 462, 476 (2011)).  And as the Second Circuit

10

recently observed, "[p]roceedings that are 'core' are those that involve 'more pressing bankruptcy concerns.'" *Anderson v. Credit One Bank, N.A. (In re Anderson)*, 884 F.3d 382, 388 (2d Cir. 2018) (quoting *United States Lines, Inc. v. Am. Steamship Owners (In re United States Lines, Inc.)*, 197 F.3d 631, 640 (2d Cir. 1999)).   "It is clear and undisputed that the dischargeability of debt is a matter that arises only under a federal statute [and] dischargeability of debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I)." *Trinity Christian Ctr. v. Koper (In re Koper)*, 516 B.R. 707, 719 (Bankr. E.D.N.Y. 2014).  *See Spencer v. Spencer (In re Spencer)*, 168 B.R. 142, 145 (Bankr. N.D. Tex. 1994) (observing that "[i]t is clear from [28 U.S.C. § 157(b)(2)(I)] that bankruptcy courts are to hear and determine the dischargeability of particular debts."); *Haden v. Edwards (In re Edwards)*, 104 B.R. 890, 895 (Bankr. E.D. Tenn. 1989) (asserting that "[p]roceedings to determine the dischargeability of debts or in opposition to the debtor's discharge . . . are clearly core proceedings.").

In the Amended Complaint, Ms. Golden alleges, among other things, that certain of her student loans "are not non-dischargeable student loans or conditional educational grants under section 523(a)(8)," and that Firstmark violated the Court's discharge injunction imposed by Bankruptcy Code Section 524 by seeking to collect on these obligations.  Am. Compl. ¶ 41.  In particular, Ms. Golden alleges that certain "student loans" made to her in excess of the University of Pennsylvania Law School's cost of attendance for the two relevant academic years are outside the scope of Bankruptcy Code Section 523(a)(8)'s discharge exception.  And she alleges that the Defendants "resumed their collection efforts after [the Court entered a discharge injunction], and fraudulently informed the debtor that the [d]ebts were not discharged."  Am. Compl. ¶ 45.

Firstmark acknowledges that the allegations in the Complaint are core matters.  Still, Firstmark argues that arbitration is nevertheless appropriate because this dispute is, in substance, a contract dispute.  And Firstmark argues that the FAA stands for the proposition that arbitration is a matter of contract, Ms. Golden's allegations fall squarely within their arbitration agreement, and that contract term should be enforced by sending this matter to arbitration.

Ms. Golden responds, in substance, that viewing these claims strictly as a contract dispute within the scope of the parties' arbitration agreement, and compelling arbitration of this matter, fundamentally mischaracterizes the core bankruptcy nature of her claims, and threatens to impair this Court's power to enforce its own injunction.

Here, a review of the allegations and claims for relief set forth in the Amended Complaint makes plain that Ms. Golden's allegations are grounded in the determination of whether the debts at issue were discharged in her bankruptcy case, and if so, whether the bankruptcy court's discharge order has been violated.  They are not contract claims, and they do not arise solely from the violation of a statutory right.  Rather, they address the alleged knowing violation of a court order.  For example, she alleges that her debts were discharged pursuant to the Court's Discharge Order "because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8)," and that the "Defendants nonetheless sought to collect on the Debts by use of dunning letters, e-mails, text messages, and phone calls . . . in violation of 11 U.S.C. § 524."  Am. Compl. ¶¶ 73, 75.  That is, the claims here concern, and seek the enforcement of, a court order – which is fundamentally different from a contract dispute.

And a review of the applicable law makes it equally plain that the questions of the dischargeability of a debt, and whether the bankruptcy discharge has been violated, are core proceedings.  As a starting point for this analysis, Judiciary Code Section 157(b)(2)(I) states that

"determinations as to the dischargeability of particular debts" are core proceedings.  In addition,

courts have consistently held that the dischargeability of debt is a matter that arises only under a

federal statute.  *In re Koper*, 516 B.R. at 719.  Similarly, Ms. Golden's request to hold Firstmark

and the other Defendants in contempt for violations of the discharge injunction is a matter that

arises under the Bankruptcy Code, and is therefore a core proceeding.  And again, the asserted

violations are not violations of a contract term, but of a court order.

For these reasons, the Court finds that Ms. Golden's claims for a determination that

certain of her debts were discharged by operation of law because they are not student loans

excluded from discharge under Bankruptcy Code Section 523(a)(8), and that the Defendants

violated the Discharge Order, are core matters.

*Whether Arbitration Would Present a Severe or Inherent Conflict with, or Necessarily
Jeopardize the Objectives of, the Bankruptcy Code*

Another key consideration in determining whether Ms. Golden should be compelled to

arbitrate her claims is the important and well-established federal policy in support of arbitration,

as reflected in the enforcement of pre-dispute arbitration clauses.  The FAA "establishes a

'federal policy favoring arbitration.'"  *McMahon*, 482 U.S. at 226 (1987) (quoting *Moses H.

Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  It "reflects the

overarching principle that arbitration is a matter of contract."  *Italian Colors*, 570 U.S. at 233.

The FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract or
> transaction, or the refusal to perform the whole or any part thereof, or an
> agreement in writing to submit to arbitration an existing controversy arising out of
> such a contract, transaction, or refusal, shall be valid, irrevocable, and
> enforceable, save upon such grounds as exist at law or in equity for the revocation
> of any contract.

9 U.S.C. § 2.

The Supreme Court recently confirmed the importance of this policy in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018). There, the Court stated that "we have often observed that the [FAA] requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'" *Epic Systems*, 138 S. Ct. at 1621 (quoting *Italian Colors*, 570 U.S. at 233 (2013)). The Court also observed that attempts to avoid the FAA's directive in favor of arbitration based on an argument that arbitration would displace a significant statutory objective face "a stout uphill climb" and that courts are "not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both." *Epic Systems*, 138 S. Ct. at 1616-17 (internal quotations and citation omitted).

The Supreme Court next turned to a close analysis of the statutes at issue, the Fair Labor Standards Act and the National Labor Relations Act (the "NLRA"), to determine whether those statutes, and in particular, Section 7 of the NLRA, "displace the [FAA] and outlaw [arbitration] agreements like" the one at issue. *Epic Systems*, 138 S. Ct. at 1624. The Court concluded that "[a] close look at the employees' best evidence of a potential conflict turns out to reveal no conflict at all." *Epic Systems*, 138 S. Ct. at 1625. Both the particular language of the NLRA's Section 7 and the "NLRA's broader structure" supported the conclusion that Congress did not address "what rules should govern the adjudication of class or collective actions in court or arbitration," or "what procedures Section 7 might protect." *Id*.

Consistent with this policy, the party opposing arbitration has the burden to demonstrate that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Epic Systems*, 138 S. Ct. at 1624; *see McMahon*, 482 U.S. at 227 (stating that "[t]he burden is on the party opposing arbitration, however, to show that Congress intended to preclude a waiver of

judicial remedies for the statutory rights at issue."). Congressional intent may be discerned

through the "'text or legislative history . . . or from an inherent conflict between arbitration and

the statute's underlying purposes.'" *Id*. (quoting *Mitsubishi Motors Corp.*, *v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 632 (1985)). Only those proceedings that are "premised on

provisions of the [Bankruptcy] Code that 'inherently conflict'" with the FAA, and proceedings

where arbitration would "necessarily jeopardize the objectives of the Bankruptcy Code," present

the type of severe and inherent conflict necessary to demonstrate congressional intent to preclude

a waiver of judicial remedies. *Ins. Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims*

*Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1067 (5th Cir. 1997). That is, just as

arbitration clauses require the arbitration of claims within their scope, they do not – and cannot –

reach claims that are outside those bounds.

Courts recognize that not every dispute between parties that have entered into a pre-

dispute arbitration agreement necessarily comes within the scope of that agreement, and also

recognize that additional considerations may arise within the context of a bankruptcy proceeding.

In a recent decision that has particular resonance here, the Second Circuit found that a

bankruptcy court did not abuse its discretion in denying to compel arbitration of violations of a

bankruptcy court's discharge order. In *In re Anderson*, the Second Circuit held that in order to

determine whether enforcement of an arbitration agreement would present an inherent conflict

with the Bankruptcy Code, a bankruptcy court must first determine whether the issue involves a

core or non-core proceeding. *In re Anderson*, 884 F.3d at 387. The Second Circuit observed that

"'[b]ankruptcy courts are more likely to have discretion to refuse to compel arbitration of core

bankruptcy matters.'" *In re Anderson*, 884 F.3d at 388 (quoting *MBNA Am. Bank, N.A. v. Hill*,

436 F.3d 104, 108 (2d Cir. 2006)).

As the Second Circuit explained, if the court determines that the issues are core, then in order to determine whether an inherent conflict exists, "the bankruptcy court is tasked with engaging in a 'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.'" *In re Anderson,* 884 F.3d at 389 (quoting *Hill*, 436 F.3d at 108). "'The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.'" *Id.* And as the Second Circuit concluded, if the bankruptcy court determines that arbitration would create a "severe" or "inherent" conflict with the purposes of the Bankruptcy Code, "it has discretion to conclude that 'Congress intended to override the [FAA's] general policy favoring the enforcement of arbitration agreements.'" *In re Anderson*, 884 F.3d at 387 (quoting *Hill*, 436 F.3d at 108).

The Second Circuit concluded in *In re Anderson* that arbitration of a claim based on an alleged violation of the Bankruptcy Code's discharge injunction would "'seriously jeopardize a particular core bankruptcy proceeding.'" *In re Anderson*, 884 F.3d at 389-90 (quoting *In re U.S. Lines*, 197 F.3d at 641). The Second Circuit arrived at this conclusion for several reasons. First, it found that "the discharge injunction is integral to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the [Bankruptcy] Code." *In re Anderson*, 884 F.3d at 390. Second, the debtor's claim in that case was with respect to an "ongoing bankruptcy matter that requires continuing court supervision." *Id.* And finally, "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the Code." *Id.* The Second Circuit observed that the fact that the claim stemmed from a putative class action did not alter their conclusion.

16

These considerations are consistent with the Supreme Court's recent guidance in *Epic Systems*. There, the Court cautioned that it was not the role of a court to rewrite statutes in order to find a bar to arbitration of a claim, and that "[a]llowing judges to pick and choose between statutes risks transforming them from expounders of what the law *is* into policymakers choosing what the law *should be*." *Epic Systems*, 138 S. Ct. at 1624. And here, the Second Circuit's analysis in *In re Anderson* looks to the "objectives of the Bankruptcy Code" and the overall structure of the bankruptcy system, including the question of whether an issue is core or non-core, and a "'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy,'" as well as "'the undisputed power of a bankruptcy court to enforce its own orders.'"[2] *In re Anderson,* 884 F.3d at 389 (quoting *Hill*, 436 F.3d at 108). This is akin to the "close look" at the statute and claim undertaken by the Supreme Court in *Epic Systems*. *Epic Systems*, 138 S. Ct. at 1625. In undertaking these tasks, a court does no more and no less than interpreting and applying the law in the context of a particular case.

As the Second Circuit has held, to determine whether an inherent conflict exists, this Court must engage in a particularized inquiry into the nature of Ms. Golden's claims and the facts of this specific bankruptcy case. Courts may refuse to compel arbitration where "resolution of the . . . [disputed] claims directly implicated matters central to the purposes and policies of the Bankruptcy Code." *Hill*, 436 F.3d at 110. Courts have considered policies including the discharge as a tool to provide a fresh start, and a bankruptcy court's ability to enforce its own injunctions, among others. As the Second Circuit observed, "the discharge injunction is integral

---

[2] The Court in *In re Anderson* did not look to the history and statutory text because "arguments regarding legislative history and text were not raised below. Accordingly, [the court] need only inquire whether arbitration of Anderson's claim presents the sort of inherent conflict with the Bankruptcy Code that would overcome the strong congressional preference for arbitration." *In re Anderson*, 884 F.3d at 386.

to the bankruptcy court's ability to provide debtors with the fresh start that is the very purpose of the [Bankruptcy] Code," and "the equitable powers of the bankruptcy court to enforce its own injunctions are central to the structure of the [Bankruptcy] Code." *In re Anderson,* 884 F.3d at 389.

Here, the Court considers whether compelling arbitration of this dispute would interfere with Ms. Golden's ability to receive a fresh start, and whether compelling arbitration infringes upon the Court's ability to enforce its own injunctions, including the discharge injunction.

<u>The discharge as a tool to provide a fresh start.</u>  One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables the "'honest but unfortunate debtor'" to receive a fresh start.  *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286, 287 (1991)).  *See McKenzie-Gilyard v. HSBC (In re McKenzie-Gilyard)*, 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007) (observing that a debtor's ability to receive a fresh start is one of the fundamental principles of bankruptcy).  The "discharge is the paramount tool used to effectuate the central goal of bankruptcy:  providing debtors a fresh financial start." *In re Anderson*, 884 F.3d at 390.  It protects not only the debtor, but also those creditors whose debts were incurred after the debtor filed her bankruptcy case, as well as those creditors whose debts are nondischargeable.  And it takes the form of a court order.  11 U.S.C. § 524.

Firstmark argues that Ms. Golden's ability to achieve a fresh start would not be impeded by arbitration of her discharge violation claims.  Firstmark contends that the Second Circuit's decision in *Hill* supports their position.  Firstmark argues that in *Hill*, the Second Circuit noted that arbitration may be inappropriate where it would interfere with or affect the distribution of

the estate or an ongoing reorganization in the midst of bankruptcy proceedings, and here, there is

no distribution or ongoing reorganization effort. *Hill*, 436 F.3d at 110.

Ms. Golden responds that providing and protecting the financial fresh start is a

fundamental, if not *the* fundamental, purpose of the Bankruptcy Code, and the discharge

injunction is the mechanism through which the fresh start is achieved. Additionally, Ms. Golden

responds that the facts in *Hill* differ significantly from the facts in this case. Here, Ms. Golden

responds, the claims arise from a pattern of continuing violations of the discharge injunction,

whereas in *Hill*, the claims arose from violations of the automatic stay. Thus, Ms. Golden

responds, the purposes and objectives of the Bankruptcy Code, including the debtor's

opportunity for a fresh start, would be frustrated by leaving enforcement of the discharge in the

hands of privately-chosen arbitrators and arbitration proceedings. That is, the automatic stay is

temporary, and ends no later than the entry of discharge and the close of the debtor's case –

while the discharge injunction continues indefinitely into the future.

In *Hill*, the Second Circuit held that the court had discretion to compel arbitration of an

automatic stay violation, and found that compelling arbitration of such claims would not

inherently conflict with the Bankruptcy Code because the violation was not an ongoing one, the

bankruptcy case was closed, the debtor was discharged, and resolution of the claim would not

affect an ongoing reorganization or any party's future conduct. *Hill*, 436 F.3d at 110.

Some twelve years later, in *In re Anderson*, the Second Circuit distinguished its

conclusion in *Hill* and recognized that while arbitration of automatic stay violations under the

circumstances present in that case might not pose an inherent conflict with the Bankruptcy Code,

there would be such a conflict if a discharge violation claim was sent to arbitration "[b]ecause

there is no matter more 'central to the purposes and policies of the Bankruptcy Code' than the

fresh start provided by discharge." *In re Anderson*, 884 F.3d at 389.  As a result, the court concluded, arbitration of Anderson's [discharge violation] claim presents an inherent conflict with the Bankruptcy Code." *Id*.

Here, as in *In re Anderson*, compelling arbitration of Ms. Golden's claims for violations of the discharge injunction would create an inherent conflict with the Bankruptcy Code. Discharge violations inherently impede a debtor's ability to achieve a fresh start, and therefore, compelling parties to arbitrate an alleged discharge violation is inappropriate.  The resolution of Ms. Golden's claims directly implicates a central purpose of the Bankruptcy Code, namely her ability to achieve a fresh start.  For these reasons, the Court finds that arbitration of Ms. Golden's claims would inherently conflict with the Bankruptcy Code's objectives of providing a fresh start, and therefore, that this consideration weighs against compelling arbitration of these claims.

The enforcement of the discharge injunction.  Part of "the particularized inquiry into the nature of the claim and the facts of a specific bankruptcy" is the "undisputed power of a bankruptcy court to enforce its own orders." *Hill*, 436 F.3d at 108.  The Second Circuit has recognized that the "enforcement of injunctions is a crucial pillar of the powers of the bankruptcy courts and central to the statutory scheme." *In re Anderson*, 884 F.3d at 390.

To the same effect, bankruptcy courts have significant familiarity and expertise in the interpretation and application of the law surrounding alleged discharge violations.  As the Second Circuit observed, "[t]hough the discharge injunction itself is statutory and thus a standard part of every bankruptcy proceeding, the bankruptcy court retains a unique expertise in interpreting its own injunctions and determining when they have been violated." *In re Anderson*, 884 F.3d at 390-91.  The Second Circuit further recognized that the fact that the discharge injunction is statutorily based and that it is similar, and often uniform, across bankruptcy cases

does not change "the simple fact that the discharge injunction is an order issued by the bankruptcy court and that the bankruptcy court alone possesses the power and unique expertise to enforce it," and that violations of the discharge injunction "are enforceable only by the bankruptcy court and only by a contempt citation." *In re Anderson*, 884 F.3d at 391.

This is consistent with the power generally accorded to courts, rather than arbitrators, to attend to the question of compliance with court orders, and more broadly, the significance of respect for courts and the judicial process. As the Second Circuit noted:

> The power to enforce an injunction is complementary to the duty to obey the injunction, which the Supreme Court has described as a duty borne out of 'respect for judicial process.' . . . That same respect for judicial process requires us to hold that the bankruptcy court alone has the power to enforce the discharge injunction in Section 524.

*Id*. (citation omitted).

In the Amended Complaint, Ms. Golden alleges that certain of her debts were discharged pursuant to the Court's Discharge Order on August 3, 2016, that the Defendants were notified of the Discharge Order pursuant to Bankruptcy Rule 4004(g), and that the Defendants nevertheless sought to collect on those debts by use of dunning letters, e-mails, text messages, and phone calls to recover the discharged debt in knowing violation of Section 524. That is, Ms. Golden alleges that the Defendants knowingly violated a court order and are in contempt of the discharge injunction contained in the Court's Discharge Order.

Here, Ms. Golden's allegations and claims for relief seek the enforcement of a court order – the discharge injunction – that is central to the statutory scheme and purpose of the Bankruptcy Code. Courts – not arbitration proceedings – are the appropriate forums to address alleged violations of court orders. And the resolution of Ms. Golden's claims directly implicates goals and objectives that are central to the purposes of the Bankruptcy Code, including the goal of

providing a debtor with a fresh start.  For these reasons, the Court finds that arbitration of Ms. Golden's claims would inherently conflict with the Bankruptcy Code's objectives, and that therefore, this consideration too weighs against compelling arbitration of these claims.

*          *          *

For these reasons, the Court finds that arbitration of Ms. Golden's claims would present a severe and inherent conflict with the Bankruptcy Code, and additionally, that it would necessarily jeopardize the objectives of the Bankruptcy Code.  As a result, the Court declines to compel arbitration of Ms. Golden's claims.

<u>Conclusion</u>

Based on the entire record, and for the reasons set forth herein, the Court concludes that Firstmark Services has not established that the Court should compel arbitration of the claims in this adversary proceeding, and Firstmark Services' Motion to Compel Arbitration is denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**July 25, 2018**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**