UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:                                                      Chapter 7

TASHANNA B. GOLDEN,                                          Case No. 16-40809-ess
*fka* TASHANNA B PEARSON,

                            Debtor.

------------------------------------------------------------------------x

TASHANNA B. GOLDEN,                                          Adv. Pro. No.: 17-01005-ess

                         Plaintiff,

      -against-

JP MORGAN CHASE BANK, NATIONAL COLLEGIATE
TRUST, FIRSTMARK SERVICES, GOLDEN TREE
ASSET MANAGEMENT LP, GS2 2016-A (GS2),
NATIONAL COLLEGIATE STUDENT LOAN TRUST
2005-3, NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2006-4, PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE AGENCY D/B/A/
AMERICAN EDUCATION SERVICES,

                         Defendants.

------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE DEFENDANTS'
## MOTIONS TO DISMISS THE AMENDED COMPLAINT

*Appearances*:

George F. Carpinello, Esq.          Barbara L. Seniawski, Esq.
Adam Shaw, Esq.                   The Seniawski Law Firm PLLC
Boies Schiller Flexner LLP         1460 Broadway (4th Floor)
30 South Pearl Street (11th Floor)   New York, NY 10036
Albany, NY 12207              *Attorneys for Defendant Firstmark Services*
  *Attorneys for Plaintiff Tashanna B. Golden*

                                Charles F. Kaplan, Esq.
Austin C. Smith, Esq.            Perry, Guthery, Haase & Gessford P.C.
Smith Law Group                  L.L.O.
3 Mitchell Place (Suite 5)        233 South 13th Street (Suite 1400)
New York, NY 10017            Lincoln, NE 68508
  *Attorneys for Plaintiff Tashanna B. Golden*  *Attorneys for Defendant Firstmark Services*

Jason Walker Burge, Esq.
Fishman Haygood LLP
201 St. Charles Avenue (46th Floor)
New Orleans, LA 70170
  *Attorneys for Plaintiff Tashanna B. Golden*

Gregory T. Casamento, Esq.
Locke Lord LLP
Brookfield Place
200 Vesey Street (20th Floor)
New York, NY 10281
  *Attorneys for Defendants National*
  *Collegiate Student Loan Trust 2005-3,*
  *National Collegiate Student Loan Trust*
  *2006-4, and Goal Structured Solutions*
  *Trust 2016-A*

H. Peter Haveles, Jr., Esq.
Pepper Hamilton LLP
620 Eighth Avenue (37th Floor)
New York, NY 10018
  *Attorneys for Defendant Pennsylvania*
  *Higher Education Assistance Agency*

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

### Introduction

Before the Court are the motions to dismiss of defendants Firstmark Services ("Firstmark"), Pennsylvania Higher Education Assistance Agency ("PHEAA"), and jointly, defendants National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-4, and Goal Structure Solutions Trust 2016-A (the "Trusts") (collectively, the "Defendants").

In these motions, each of the Defendants argues that the Amended Complaint must be dismissed because it fails to state a plausible claim for relief for a declaratory judgment that any of them violated the discharge order entered in Tashanna Golden's bankruptcy case, or for damages, attorneys' fees, and costs as a result of a discharge violation. They argue, among other things, that they simply cannot discern what loans are at issue here, or what they have done to violate the discharge entered in Ms. Golden's bankruptcy case. And they argue that Ms. Golden has *not* alleged a plausible claim that her loans are *not* excluded from discharge by Bankruptcy Code Section 523(a)(8)(B), as "qualified education loan[s]." In addition, PHEAA argues that the Amended Complaint must be dismissed because it is blocked by a different obstacle – the nondischargeability provisions of Bankruptcy Code Section 523(a)(8)(A)(ii) – because Ms. Golden's loans are excluded from discharge as "an obligation to repay funds received as an educational benefit, scholarship, or stipend." And the Trusts argue that one of the loans at issue is rendered nondischargeable by Bankruptcy Code Section 523(a)(8)(A)(i), because it was funded, at least in part, by a nonprofit institution.

Ms. Golden responds that she has alleged adequately that her direct-to-consumer student "Tuition Answer Loans" do not come within a category of debt that is excluded from discharge

under *any* subsection of Bankruptcy Code Section 523(a)(8), including Section 523(a)(8)(B), as specifically alleged in the Amended Complaint, or any other subsection of Section 523. She also argues that she has alleged adequately her request for a declaratory judgment that her loans were discharged pursuant to this Court's discharge order in her Chapter 7 bankruptcy case, and also her request for damages, attorneys' fees, and costs, arising from the Defendants' violations of the discharge order entered in her case. For these reasons, she argues, the Court should not dismiss the Amended Complaint, and the Defendants' motions to dismiss should be denied.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b), and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c) because the parties have stated their consent to this Court entering a final judgment. Tr. 6:25-7:15 (May 14, 2018), ECF No. 83. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

## Background

### *Ms. Golden's Bankruptcy Case*

On February 29, 2016, Tashanna Golden, fka Tashanna B. Pearson, filed a petition for relief under Chapter 7 of the Bankruptcy Code, together with her bankruptcy schedules and statements. Case No. 16-40809. On April 22, 2016, she filed amended schedules and

statements.  In her Schedule F, "Creditors Holding Unsecured Nonpriority claims," she listed a "Student Loan" owed to "Aes/Nct" in the amount of $6,758.00 (the "NCT Loan"), a "Student Loan" owed to "Fm/Slfv Tru" in the amount of $8,828.00 (the "Citibank Loan"), and a "Student Loan" owed to "Aes/Jpmg Ch" in the amount of $5,539.00 (the "Chase Loan").  On July 28, 2016, the Chapter 7 Trustee filed a "no-asset" report stating that "there is no property available for distribution from the estate over and above that exempted by law."  Case No. 16-40809, Doc. entry dated July 28, 2016.  On August 3, 2016, the Court entered an order discharging Ms. Golden (the "Discharge Order"), and on that same day, her bankruptcy case was closed.

On December 6, 2016, Ms. Golden filed a motion to reopen her bankruptcy case to obtain a determination of the dischargeability of certain of her student loans, and on January 10, 2017, the Court entered an order reopening the case.

_This Adversary Proceeding_

On January 18, 2017, Ms. Golden commenced this adversary proceeding by filing a complaint against JP Morgan Chase Bank, Firstmark Services, GoldenTree Asset, and National Collegiate Trust.  She seeks a determination that certain debts that she incurred as a student are not nondischargeable student loan debts under Bankruptcy Code Section 523(a)(8)(B), and an award of damages, including attorneys' fees and costs, for the Defendants' willful violations of the bankruptcy discharge injunction.  Compl., Adv. Pro. No. 17-01005, ECF No. 1.

On May 31, 2017, the Court approved a stipulation between Ms. Golden and National Collegiate Student Loan Trust 2005-3 and 2006-4, permitting them to intervene in this action. And on July 25, 2017, the Court approved a stipulation of dismissal as to defendant JP Morgan Chase Bank.

On October 17, 2017, Ms. Golden filed an Amended Complaint to add class action allegations and additional defendants.  Am. Compl., ECF No. 32.  And on November 2, 2017, Ms. Golden voluntarily dismissed defendant GoldenTree Asset Management from this action.

By Memorandum Decision and Order dated July 25, 2018, the Court denied Firstmark's motion to the extent that it sought to compel arbitration of these claims.  *Golden v. JP Morgan Chase Bank (In re Golden)*, 587 B.R. 414 (Bankr. E.D.N.Y. 2018).

<u>The Allegations of the Amended Complaint</u>

Ms. Golden alleges that "[f]or at least the last ten years, Defendants and other student lenders and servicers have acted to mislead student debtors and subvert the orderly working of the bankruptcy courts."  Am. Compl. ¶ 1.  She claims that the "Defendants . . . originated and serviced dischargeable consumer loans but have disguised them as non-dischargeable student loans."  *Id*.  Ms. Golden advances these allegations on behalf of an alleged class of similarly situated "individuals who have declared bankruptcy since 2005 [across the] United States with loans originated and/or serviced by Defendants."  Am. Compl. ¶ 7.  And she alleges that these loans "do not meet the definition of a non-dischargeable qualified education loan" as set forth in Internal Revenue Code Section 221(d) and Bankruptcy Code Section 523(a)(8)(B).  *Id*.

Ms. Golden alleges that Congress enacted Section 523(a)(8) in order to "prohibit the discharge of federal student loans . . . [and] to address a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation."  Am. Compl. ¶ 12.  She claims that as initially adopted in the 1978 Bankruptcy Act, Section 523(a)(8) excluded from discharge government-issued student loans that became due within the five years prior to the bankruptcy petition.  Am. Compl. ¶ 13.  Ms. Golden states that "[l]ater amendments lengthened and then eliminated the

five-year non-dischargeability time frame for loans by the federal government, making it increasingly difficult for debtors to ever attain discharges of those student loans." Am. Compl. ¶ 14.

Ms. Golden also alleges that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") "expanded the definition of non-dischargeable student debt to include 'any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986.'" Am. Compl. ¶ 15 (quoting 11 U.S.C. § 523(a)(8)(B)). The Amended Complaint states that qualified education loans are defined by Internal Revenue Code Section 221(d)(1) "as debts incurred by eligible students, at eligible institutions, for eligible expenses. In turn, a 'qualified higher education expense' is one that issued to pay for the cost of attendance at a qualified educational institution." Am. Compl. ¶ 16 (quoting 26 U.S.C. § 221(d)(2)).

Ms. Golden alleges that "[o]riginally, the private lending mirrored the federal loans in that the loans were paid directly to the qualified educational institution, which would then ensure that the funds were used only for qualified expenses." Am. Compl. ¶ 17. And she claims that "lenders initiated new 'non-qualified' education loan programs . . . [including] direct-to-student ('DTC') loans to students" for more than the school's "cost of attendance." *Id.* These "DTC" loans "do not require school certification, and so can be originated in amounts that far exceed federal borrowing limits" and therefore fall outside the scope of Bankruptcy Code Section 523(a)(8). Am. Compl. ¶ 18. "Moreover, qualified loans must be made solely for qualified education expenses," so if any portion of a "DTC" loan falls outside a school's "Cost of Attendance," even if a portion falls within the "Cost of Attendance," the loan is a "'mixed-use' loan and is not a qualified education loan." *Id.* These loans, Ms. Golden argues, "are simply

another form of unsecured consumer debt." *Id.* Ms. Golden alleges that the Defendants and other creditors represented to her and to similarly situated student debtors "that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose," when they knew that "only private loans that meet the requirements of section 523(a)(8)(B) [are] nondischargeable." Am. Compl. ¶ 22.

The Amended Complaint states that Ms. Golden attended the University of Pennsylvania Law School (the "University of Pennsylvania") during the 2006-07 academic year. Am. Compl. ¶ 27. And she alleges that the University of Pennsylvania's "cost of attendance" for that academic year was $53,500. Ms. Golden received $22,440 in scholarship funds and grants from the University of Pennsylvania, and she borrowed $27,500 in loans from the federal government. She alleges that she borrowed an additional $7,103 in private loans from National Collegiate Trust – the NCT Loan – and that the NCT Loan was serviced by PHEAA. Am. Compl. ¶¶ 30-31. Ms. Golden claims that "the NCT Loan was originated in excess of the published 'cost of attendance' and was not a qualified education loan under section 523(a)(8)(B)." Am. Compl. ¶ 30. And she claims that the NCT Loan "was not 'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or party by' a non-profit[ ] and thus was not non-dischargeable under section 523(a)(8)(A)(i)." Am. Compl. ¶ 32.

Ms. Golden alleges that she attended the University of Pennsylvania during the 2007-08 academic year as well, and during that term, the school's published "cost of attendance" was $56,380. Am. Compl. ¶ 35. For that academic year, Ms. Golden alleges that she received $12,850 in scholarship funds and grants, and that she borrowed $52,347 from the federal government. Am. Compl. ¶ 36. At that point, she already received funds in excess of the University of Pennsylvania's "cost of attendance" for the 2007-08 academic year. *Id.* Ms.

Golden borrowed an additional $6,557 from JP Morgan Chase – the Chase Loan – and $9,348 from Citibank – the Citibank Loan.  Am. Compl. ¶ 37.  She alleges that "[t]he Citibank Loan was subsequently sold to Defendant GoldenTree Asset Management on or about October 24, 2015, which was later securitized into the GS2 Trust."  Am. Compl. ¶ 37 n.1.  And on February 29, 2016, Ms. Golden filed for Chapter 7 bankruptcy.  Am. Compl. ¶ 39.

Ms. Golden claims that she "properly listed on Schedule F certain 'student loans' owed, including 'AES/Jpmg ch,' 'Fm/slfv tru,' 'AES/NCT', which represented the loans that were made in excess of [the University of Pennsylvania's] Cost of Attendance for the two relevant academic years."  Am. Compl. ¶ 40.  She claims that the Defendants "fraudulently informed [her] that the [d]ebts were not discharged and demanded . . . and accepted payment."  Am. Compl. ¶ 44.  She also alleges that she was "never issued a 1098-E tax form to deduct the interest payments made" on the Tuition Answer Loans.  Am. Compl. ¶¶ 33, 38.

Ms. Golden alleges that the "Defendants and other creditors represented to student debtors that the Bankruptcy Code prohibited discharge of *any* loan made to any person for any educational purpose."  Am. Compl. ¶ 22.  She claims that the Defendants utilized bankruptcy laws "to defraud vulnerable and unsophisticated student borrowers."  Am. Compl. ¶ 24.  Ms. Golden states that the "Defendants failed to disclose facts and information that would inform debtors of the fact that private loans were only non-dischargeable if they met the requirements of section 523(a)(8)(B), and in particular, that debtors' non-qualified loans were, in fact, discharged in bankruptcy."  Am. Compl. ¶ 23.  And she alleges that such loans are "disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between loans that are or are not dischargeable or to seek relief in an adversary proceeding."  Am. Compl. ¶ 24.

She alleges that while the Defendants and other lenders informed consumers that their loans were nondischargeable, these lenders securitized the same obligations for sale on the secondary market.  Am. Compl. ¶ 25.  And she asserts that the prospectuses for these asset-backed securities cautioned investors that, pursuant to Bankruptcy Code Section 523(a)(8), "only private loans made for qualified expenses were excepted from discharge."  *Id.*  She alleges that instead of then treating these debts as discharged, the Defendants, "by and through themselves and their agents, resumed collection efforts after the discharge [was] entered."  Am. Compl. ¶ 44.  The Discharge Order was entered on August 3, 2016, and "[o]n or about August 5, 2016, all creditors received notice" of the Discharge Order.  Am. Compl. ¶¶ 42-43.

Ms. Golden states that she did not "enter into an agreement [with respect to dischargeability of the Tuition Answer Loans] under section 524(c) of the Bankruptcy Code" and that "[n]one of the Defendants filed an adversary proceeding" to contest the dischargeability of the Tuition Answer Loans.  Am. Compl. ¶ 43.  Yet, Ms. Golden contends, the Defendants "fraudulently informed [her] that the Debts were not discharged and demanded payment and accepted payment."  Am. Compl. ¶ 44.  Specifically, she states, the Defendants sought to collect on the allegedly discharged debts "by use of dunning letters, emails, text messages, and phone calls."  Am. Compl. ¶ 75.  Ms. Golden alleges that the "Defendants' abusive, deceptive and illegal collection efforts after [the debts at issue] were discharged were made knowingly and willfully in violation of this Court's discharge orders."  Am. Compl. ¶ 45.

Ms. Golden requests a declaratory judgment pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9) that these debts were discharged by operation of law on August 3, 2016, the date of entry of the Discharge Order in her bankruptcy case, because they are not student loans excluded from discharge under Section 523(a)(8).  Am. Compl. ¶ 71.  Ms. Golden

also asserts that since the Defendants were notified of the Discharge Order pursuant to

Bankruptcy Rule 4004(g), and still sought to collect on her debts by "use of dunning letters, e-

mails, text messages, and [telephone] calls," the Court should cite the Defendants for civil

contempt, for their willful violations of the Discharge Order, and order them to pay damages in

an amount to be determined at trial pursuant to Bankruptcy Code Sections 524 and 105, and also

to pay her attorneys' fees and costs.  Am. Compl. ¶¶ 74-76.

*The Motions To Compel Arbitration, or in the Alternative, To Dismiss this Case*

On December 8, 2017, Firstmark moved to compel arbitration of Ms. Golden's claims, or

in the alternative, to dismiss the Amended Complaint (the "Firstmark Motion to Dismiss"), and

filed a supporting memorandum of law (the "Firstmark Mem.").  ECF No. 42.  That same day,

PHEAA and the Trusts also moved to dismiss the Amended Complaint (the "PHEAA Motion to

Dismiss" and "Trusts Motion to Dismiss"), and filed memoranda of law in support (the "PHEAA

Mem." and "Trusts Mem.").  ECF Nos. 40, 45.  Ms. Golden opposes all of the relief sought by

the Defendants, and on January 8, 2018, she filed a combined memorandum of law in opposition

to each Motion to Dismiss (the "Plf's Opp.").  ECF No. 57.  On January 23, 2018, PHEAA,

Firstmark, and the Trusts each filed a reply memorandum in further support of their Motions to

Dismiss (the "PHEAA Reply," "Firstmark Reply," and "Trusts Reply").  ECF Nos. 59, 60, 61.

On July 25, 2018, the Court issued a memorandum decision on that portion of the

Firstmark Motion to Dismiss which seeks to compel arbitration, and declined to compel

arbitration of Ms. Golden's claims.  *Golden v. JP Morgan Chase Bank (In re Golden)*, 587 B.R.

414 (Bankr. E.D.N.Y. 2018).

And on August 6, 2018, the Court approved a stipulation of dismissal as to the defendant

National Collegiate Student Loan Trust 2005-3.  ECF No. 92.

*PHEAA's Arguments in Support of Dismissal*

PHEAA relies on Bankruptcy Code Sections 523(a)(8)(A)(ii) and 523(a)(8)(B), among other grounds, in support of its arguments for dismissal.  It argues that Ms. Golden's Tuition Answer Loans are exempted from discharge under Section 523(a)(8)(A)(ii) as "funds received as an educational benefit" and Section 523(a)(8)(B) as "qualified education loan[s], as defined in section 221(d)(1) of the Internal Revenue Code of 1986."

PHEAA argues that "Ms. Golden utterly fails to plead any claims against PHEAA." PHEAA Mem. at 1.  It urges that the Amended Complaint "is deficient for two principal reasons."  PHEAA Mem. at 2.  First, PHEAA argues that applying the pleading standard of Federal Rule of Civil Procedure 8, Ms. Golden fails to allege any plausible facts to support any claims against PHEAA "with respect to whether the loan allegedly serviced by PHEAA has been discharged."  *Id*.  Second, PHEAA argues that the loan for which it "is allegedly responsible" for as a servicer is a nondischargeable loan, because it "is either a qualified education loan or education benefit that is exempted from discharge under Section 523(a)(8)."  *Id*.

PHEAA also argues that the Amended Complaint does not allege adequately "plausible facts" against PHEAA to sustain a claim for relief, and that instead, Ms. Golden makes "group allegations against all defendants, without specific reference to PHEAA."  PHEAA Mem. at 8.  It argues that because she names multiple defendants in her pleading, Ms. Golden "is required to 'indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants.'"  PHEAA Reply at 4 (quoting *Harris v. NYU Langone Medical Center*, 2013 WL 3487032, at *7 (S.D.N.Y. July 9, 2013)).  And PHEAA asserts that in the Amended Complaint, Ms. Golden does not make any specific allegations against PHEAA as a lender in the context of her request for a declaratory judgment.

10

In addition, PHEAA argues that "Ms. Golden has a duty to plead sufficient plausible facts directed specifically at PHEAA especially in light of her assertion that PHEAA is in contempt of an order that did not, by its terms, discharge repayment of the student loan that PHEAA serviced."  PHEAA Reply at 3.  PHEAA states that the Amended Complaint is "devoid in all respects of any allegations as against PHEAA, other than identifying PHEAA's place of business, stating that it conducts business in the Eastern District of New York and stating that PHEAA is the servicer for the [National Collegiate Trust] Loan."  PHEAA Mem. at 9.  It argues that Ms. Golden does not identify PHEAA's role in connection with her allegations of violations of the Discharge Order in 2016.  And PHEAA asserts that "there are no allegations that PHEAA is a lender," and, for this reason, Ms. Golden cannot allege that the debts are dischargeable as against PHEAA.  PHEAA Mem. at 10.

At the same time, PHEAA argues that Ms. Golden's loans are qualified education loans, and therefore, nondischargeable under Bankruptcy Code Section 523(a)(8)(B).  PHEAA states that Ms. Golden argues, in substance, that "any loans that exceed a school's published cost of attendance are not qualified education loans," but that is not correct.  PHEAA Mem. at 10. PHEAA argues that Ms. Golden's assertion that the "cost of attendance" is limited to the University of Pennsylvania's published cost of attendance "is insufficient as a matter of law." PHEAA Mem. at 14.  It states that there are many considerations with respect to determining cost of attendance, and Ms. Golden does not "allege any plausible facts establishing that her loan proceeds were used for non-education expenses."  *Id.*  And it argues that an educational institution's public cost of attendance may not include all the considerations listed in Higher Education Act Section 1087ll.  For these reasons, PHEAA asserts, a court should consult the enumerated list used in determining "cost of attendance" under Higher Education Act Section

1087ll, rather than the institution's published cost of attendance. And PHEAA argues that "Ms. Golden has failed to identify any expenses that fall outside the enumerated list used in determining 'cost of attendance' under Section 1087ll." PHEAA Mem. at 15.

PHEAA notes that any allegations that Ms. Golden now makes are "overridden by [her] judicial admission in Schedule F that all of the Debts are 'student loans' for the purposes of her bankruptcy proceedings in this Court." PHEAA Mem. at 15. PHEAA argues that Ms. Golden's admissions on Schedule F "give rise to a judicial estoppel," because "'[s]tatements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.'" PHEAA Mem. at 7 (quoting *In re Bohrer*, 266 B.R. 200, 201 (Bankr. N.D. Cal. 2001)). And PHEAA states that Ms. Golden may not now argue that her Tuition Answer Loans are not student loans, as her admissions that they are student loans in Schedule F "must be considered and override her allegations." PHEAA Mem. at 7.

PHEAA also argues that Ms. Golden's arguments are "inconsistent with the holding in *Carow v. Chase Loan Service (In re Carow)*, 2011 Bankr. LEXIS 823 (Bankr. D.N.D. Mar. 2, 2011)." PHEAA Reply at 6. PHEAA argues that in *In re Carow*, the "court rejected the argument that, because the lender did not follow a prescribed formula in determining loan eligibility, the loans were not 'qualified education loans.'" *Id*.

And PHEAA argues that other courts have similarly held that loans like the ones at issue here are not dischargeable, because they come within the category of "funds used for an educational benefit" under Section 523(a)(8)(A)(ii). PHEAA Mem. at 15-16. PHEAA argues that "[a]s long as the loans relate in some way to education, they are non-dischargeable." PHEAA Mem. at 16. It notes that based on Ms. Golden's admissions in her Schedule F that her

loans were student loans, they are related to her education and nondischargeable.  PHEAA Mem. at 16.

PHEAA acknowledges that in *Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49 (Bankr. E.D.N.Y. 2016), the court found that "funds used for an educational benefit" is more narrowly construed, but PHEAA states that this decision is "wrongly decided and should be given no precedential weight."  PHEAA Mem. at 17.  It argues that "[t]he language of that sub-provision of [Bankruptcy Code] Section 523 is plain in its meaning, and applies to repayment of all funds advanced for educational benefits without exception."  *Id*.  PHEAA also states that "the *Campbell* court, at the end of its decision, avoided making any final determination as to the scope of the exemption, and decided the matter on other grounds."  PHEAA Reply at 12.

PHEAA also argues that in the Amended Complaint, Ms. Golden does not reference the underlying loan documents and agreements.  It argues that this omission is "fatal because courts have held that the stated purpose of the loan (rather than its use) determines whether it is a qualified education loan or an educational benefit."  PHEAA Mem. at 18.  PHEAA argues that how Ms. Golden actually used the loans is not dispositive, "what she represented to the lenders in the promissory note for the [loan] is the key fact."  PHEAA Mem. at 19.  And PHEAA states that "[it is] determinative . . . how the loans were intended to be used, as opposed to what was the actual use of the loan proceeds."  PHEAA Reply at 6-7.

And PHEAA argues that Ms. Golden's arguments that her loans are not nondischargeable are inconsistent with the purposes of BAPCPA.  PHEAA claims that "[i]t is oxymoronic to suggest that Congress specifically included private lenders within the ambit of the statute's protection but simultaneously wanted to restrict those lenders' ability to lend to consumers in this manner."  PHEAA Reply at 16.

*Firstmark's Arguments in Support of Dismissal*

Firstmark relies generally on the terms of Federal Rule of Civil Procedure 8 and Bankruptcy Code Section 523, among other grounds, in support of its request to dismiss the Amended Complaint.

Firstmark argues that the Amended Complaint "does not provide Firstmark with the basic information needed to investigate or respond to [Ms.] Golden's claims, as required by [Federal Rule of Civil Procedure] 8(a)." Firstmark Mem. at 16. It argues that Ms. Golden makes certain "conclusory allegations," but "does *not* allege that Firstmark originated or serviced any of the loans at issue in this action." *Id.* Firstmark also asserts that Ms. Golden "fails to adequately identify the underlying loans," and that it "cannot ascertain which of the many student loans listed in Schedule F of [Ms.] Golden's bankruptcy petition constitutes the so-called Citibank Loan, which, apparently, is the only loan in this action that implicates Firstmark." Firstmark Mem. at 17. And Firstmark states that while Ms. Golden's Schedule F lists two student loans owed to "Fm/Slfv Tru" and lists Firstmark's address in connection with both, but "she leaves Firstmark to guess which one, if either, is the mysterious Citibank Loan." *Id.*

Firstmark also argues that Ms. Golden's characterization of her student loans as "direct-to-consumer loans" is not accurate, and points out that her loan documents include "language . . . specifying that [Ms.] Golden's loan proceeds would be disbursed directly to her school." Firstmark Reply at 1. Firstmark also argues that while Ms. Golden states that one of the loans at issue is the "Citibank Loan," according to its records, "Citibank never originated a loan to [Ms.] Golden in the amount of $9,348. However, Firstmark's records only reflect one loan from 2007. That loan is identified in Firstmark's system by the number 1218101 . . . Firstmark must now assume that loan number 1218101 is the Citibank Loan." Firstmark Reply at 2.

In addition, Firstmark asserts that Ms. Golden cannot assert her Bankruptcy Code Section 524 claims in an adversary proceeding, and that such claims must be brought under Bankruptcy Code Sections 524 and 105 in the form of a proceeding for a finding of contempt.

It also argues that the Discharge Order entered in Ms. Golden's bankruptcy case is not clear and unambiguous, as required in a contempt proceeding.  Rather, Firstmark states that an order is clear and unambiguous when "it 'enables the enjoined party to ascertain from the four corners of the order precisely what acts are forbidden.'"  Firstmark Mem. at 23 (quoting *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995)).  And it argues that "[a]ny doubts about whether an order is sufficiently 'clear and unambiguous' must be 'resolved in favor of the alleged contemnor.'"  Firstmark Mem. at 23 (quoting *In re CPW Acquisition Corp.*, 2010 WL 423101, at *2 (Bankr. S.D.N.Y. Feb. 4, 2010)).

Firstmark states that it is "axiomatic" that student loans are nondischargeable, and for this reason "[c]larity as to whether a debt has been discharged is especially necessary to support a finding of contempt against a student loan servicer such as Firstmark."  Firstmark Mem. at 23.  And here, Firstmark argues, the Discharge Order was not clear and unambiguous.  "Instead of containing the type of clear, unambiguous, and unequivocal language ordinarily needed to sustain a finding of contempt, the discharge order in [Ms.] Golden's case was imprecise and equivocal, as it relied heavily on the use of caveats and qualifiers."  Firstmark Mem. at 24.

Firstmark argues that Ms. Golden suggests that the Court should establish a "bright-line rule" that all discharge orders are sufficiently clear and unambiguous to alert creditors as to which debts were discharged, but the cases she "relies upon do not articulate such a rule."  Firstmark Reply at 10-11.  Firstmark argues that in *McKenzie-Gilyard v. HSBC (In re McKenzie-Gilyard)*, 388 B.R. 474 (Bankr. E.D.N.Y. 2007), "this Court engaged in a protracted analysis that

considered . . . whether the creditor knew that the debtor disputed that status of the debt." Firstmark Reply at 11 (citing *In re McKenzie-Gilyard*, 388 B.R. at 483).  And there, Firstmark states, the Court "focused on whether the creditor had awareness that the credit information it was furnishing about the debtor was inaccurate, and treated this inquiry as separate from the issue of whether the creditor generally knew a discharge injunction had [been] issued." *Id.* Firstmark states that it does not argue that the standard discharge order is "always insufficiently 'clear and unambiguous'" to support a finding of contempt "regardless of the circumstance," but rather contends that the standard discharge order is insufficiently clear and unambiguous in the narrow circumstances presented here, "especially in light of the novel legal theory advanced by [Ms.] Golden."  Firstmark Mem. at 25 n.13.

And Firstmark also argues that Ms. Golden waived her right to participate in class action proceedings.  It quotes the Master Student Promissory Note associated with the Citibank Loan, which states that "no class action, private attorney general action or other representative action may be pursued in arbitration, *nor may such action be pursued if any party has elected arbitration*."  Firstmark Mem. at 18 (citing Exhibit A at 2).  Here, as Firstmark elected arbitration, it argues that Ms. Golden may not adjudicate her claims on a class-wide basis, and the Court should "dismiss and/or strike all class allegations" in the Amended Complaint. Firstmark Mem. at 18-19.[1]

In addition, Firstmark argues that this Court does not have jurisdiction over the claims of the alleged nationwide class, because, "as a procedural matter, injunctions must be enforced by

---

[1] As noted above, this Court has denied Firstmark's motion to the extent that it sought to compel arbitration of these claims.  *Golden v. JP Morgan Chase Bank (In re Golden)*, 587 B.R. 414 (Bankr. E.D.N.Y. 2018).  And the question of class certification is not presently before the Court for decision.

the issuing court." Firstmark Mem. at 19. Firstmark argues that the fact that discharge orders are authorized by statute and routinely entered in a standardized form "does not exempt [discharge orders] from this rule." Firstmark Mem. at 20. And Firstmark states that the discharge of the debtor's debts in bankruptcy only occurs "upon the entry of a court-ordered injunction," and therefore each discharge order is "unique to the issuing court." Firstmark Mem. at 20.

*The Trusts' Arguments in Support of Dismissal*

The Trusts rely on Bankruptcy Code Section 523(a)(8)(A)(i), and the pleading standards of Federal Rules of Civil Procedure 8(a), 12(b)(6), and 9(b), among other grounds, in support of their arguments that the Amended Complaint should be dismissed.

The Trusts argue that the Amended Complaint does not meet the pleading standards of Federal Rule of Civil Procedure 8(a). They state that Ms. Golden does not adequately identify the loans at issue, and does not adequately connect those loans to the Trusts. They argue that "[a]fter individually defining the Trust Defendants in the [Amended Complaint's] opening paragraph, [Ms. Golden] never makes another allegation that references the Trust Defendants or connects any loan at issue to a specific trust." Trusts Mem. at 5. The Trusts argue that Ms. Golden "proceeds as if there are connections between the Loans and the Trust Defendants, but she never sets forth any plausible allegations that actually tie any of the Loans to any of the Trust Defendants." Trusts Mem. at 11. For these reasons, the Trusts argue that Ms. Golden does not allege "plausible allegations" of a claim against the Trusts. Trusts Mem. at 12.

The Trusts also argue that Ms. Golden fails plausibly to allege that the loans at issue here were covered by the Discharge Order, that the Trusts collected on the loans, or that a violation of the Discharge Order actually occurred. They claim that Ms. Golden makes "conclusory

assertions [that] do not even address, much less explain away, the numerous deficiencies in the [Amended Complaint]." Trusts Reply at 2. And they state that while they stipulated to be substituted in as a party in this adversary proceeding, "[t]he fact that the Trust Defendants may, as [Ms. Golden] argues, have stipulated that they held loans made to [Ms. Golden] does not mean that they held *the* Loans at issue in the lawsuit . . . it is simply impossible to tell which loans on the Schedule F are the Loans [at issue here]." Trusts Reply at 3.

In addition, the Trusts note that Ms. Golden alleges that her loans are dischargeable because, in substance, they exceed the University of Pennsylvania's cost of attendance, but that "[a]ccording to her Schedule F, each academic year Plaintiff took out numerous student loans that were each individually less than the alleged 'Cost of Attendance' but in aggregate are alleged to have surpassed it." Trusts Mem. at 10.

The Trusts argue that while Ms. Golden alleges that the NCT Loan is not excluded from discharge by Bankruptcy Code Section 523(a)(8)(A)(i) because it was not "'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or part by a non-profit,'" the documentation for that loan "says the exact opposite." Trusts Mem. at 9. Rather, the Trusts state, "the check made out to [Ms. Golden] that funded this loan" came from The Education Resources Institute Inc. ("TERI"). Trusts Mem. at 9 (citing Am. Compl., Ex. 1 at 11). And "where TERI has funded a student loan, that 'student loan was made under a program that was funded in whole or in part by a nonprofit institution,'" and is therefore nondischargeable under Section 523(a)(8)(A)(i). Trusts Mem. at 9 (quoting *In re O'Brien*, 419 F. 3d 104, 106 (2d Cir. 2005)). As a consequence, the Trusts state, either the NCT Loan is within the scope of Section 523(a)(8)(A)(i), "or it is an entirely unidentifiable loan." Trusts Mem. at 9-10.

The Trusts also argue that the Amended Complaint "sounds in fraud," but does not satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b).  Trusts Mem. at 13. The Trusts argue that Ms. Golden "lump[s] all the [D]efendants together and does not 'inform each defendant of the nature of his alleged participation in the fraud.'"  Trusts Mem. at 15 (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

The Trusts also assert that the Discharge Order is not clear and unambiguous, and for this reason as well, Ms. Golden's claims for violations of the Discharge Order should be dismissed. The Trusts note that "the Discharge Order and the accompanying Official Form B18 stated that '[d]ebts for most student loans' and '[s]ome debts which were not properly listed by the debtor' were not dischargeable."  Trusts Mem. at 16.  And they claim that this means that the Amended Complaint "demonstrates that the 'four corners of the order' do not forbid collection of the Loans so as to support a finding of contempt."  *Id*.

And the Trusts argue that Ms. Golden's scheduling of the loans as "student loans" precludes her from arguing that these loans are discharged by operation of law because they were not student loans.  By describing her loans in this way, the Trusts note, Ms. Golden "undercuts her assertion that [they] engaged in willful behavior by hiding the fact that the 'Debts were discharged pursuant to the Discharge Order . . . because they were unsecured consumer loans and not non-dischargeable student loans' and then misled her into repaying the Loans."  Trusts Mem. at 17.  The Trusts argue that Ms. Golden represented to the Court and her creditors that the loans were used for educational purposes, and were likely nondischargeable.  They add that for this same reason, "she has already admitted that the Discharge Order did not discharge the Loans. The Trust Defendants cannot be in contempt for willfully violating an order by collecting on the Loans, when that order did not explicitly prohibit them from doing so."  *Id*.

Finally, the Trusts argue that Ms. Golden asks the Court to exceed its jurisdiction by alleging her claims on behalf of a putative nationwide class.  The Trusts argue that generally only a court that issued an order has subject matter jurisdiction to adjudicate a contempt claim with respect to that order.  They state that there is "no authority which supports this Court having the ability to exercise jurisdiction to make individual, retroactive determinations" with respect to whether certain student loans were discharged, and then whether the Trusts violated the discharge orders where the loans were found to be discharged, in bankruptcies completed in other jurisdictions.  Trusts Mem. at 19.[2]

_Ms. Golden's Opposition_

Ms. Golden opposes the dismissal of her Amended Complaint, and on January 8, 2018, she filed a combined memorandum of law in opposition to each Motion to Dismiss, addressing the arguments made both to dismiss the Amended Complaint and to compel arbitration of her claims.

Ms. Golden responds that the Defendants have not shown that she does not state plausible claims for relief.  She argues that "[a]lthough Defendants have done their utmost to obfuscate the contents of the [Amended Complaint], Defendants know what two loans are at issue in this proceeding and what they are alleged to have done."  Plf's Opp. at 7.  She states that the first loan at issue is the "NCT Loan, which was originated by Bank One, N.A. on September 26, 2006, in the amount of $7,103 and thereafter was transferred to either Defendants National Collegiate Student Loan Trust 2005-3 or 2006-4 or both."  _Id_.  She notes that those entities were subsequently substituted as defendants in this action by in place of National Collegiate Trust, by

---

[2]  As noted above, the question of class certification is not presently before the Court for decision.

stipulation of the parties that was so-ordered by the Court.  *Id*.  Ms. Golden argues that PHEAA services the NCT Loan.  And Ms. Golden states that the second loan at issue is the "Citibank Loan, which was originated by Citibank in 2007, in the amount of $9,348, and is now owned by Defendant Goal Structured Solutions Trust 2016-A, sued as GS2 2016-A Trust."  Plf's Opp. at 8.

Ms. Golden also responds that the Amended Complaint "clearly alleges what conduct the Defendants committed."  *Id*.  Ms. Golden asserts that the Amended Complaint "clearly alleges" that the loans at issue were in excess of the cost of attendance at the University of Pennsylvania, and therefore are not nondischargeable loans under Bankruptcy Code Section 523(a)(8)(B).  *Id*. She points to allegations in the Amended Complaint that "Defendants, lenders and servicers of the two subject loans have nonetheless continued to collect on the loans and have demanded payment from [her], as they have from other class members."  *Id*.  And she notes that the Amended Complaint "alleges that Defendants were aware that these loans were not exempted by § 523(a)(8) and were therefore discharged, but they continued to collect on them after discharge."  *Id*.

And she responds that PHEAA's argument that she fails to allege any plausible facts that her loans were used for non-education expenses, and therefore, the Amended Complaint should be dismissed, is also unpersuasive, for two reasons.  The first is that "how [she] used the proceeds does not make the loan non-dischargeable if it otherwise does not meet the express criteria of [Section] 523(a)(8)(B)," and that "PHEAA itself concedes this fact."  Plf's Opp. at 26. And she asserts that, in substance, "Defendants are coming into court demanding that the exception to discharge [in Bankruptcy Code Section 523(a)(8)(B)] be limitless.  It is not."  Plf's Opp. at 27.  And the second is that "even if it were relevant how [Ms. Golden] used the proceeds" of the loans at issue, that is a question of fact, and such questions "cannot be

determined on a motion to dismiss." Plf's Opp. at 28. She also notes that the label "student loan," the language in the loan documents, and her own description of these loans on her Schedule F cannot "convert an unqualified loan[] into a qualified one[]." Plf's Opp. at 31.

Ms. Golden further responds that the Amended Complaint also expressly alleges that the loans do not constitute "an obligation to repay funds received as an educational benefit." Plf's Opp. at 28. And she states that "PHEAA's argument was recently considered and rejected – twice – by bankruptcy judges in this very District in *In re Campbell*, 547 B.R. at 49 (Bankr. E.D.N.Y. 2016) (Craig, C.B.J.) and in *In re Decena*, 549 B.R. at 11 (Bankr. E.D.N.Y.) (Grossman, B.J.), *rev'd in part on other grounds*, 562 B.R. 202 (E.D.N.Y. 2016)." *Id.*

She also responds that the Amended Complaint states that her loans are not qualified educational loans, but instead, are direct-to-consumer loans that are dischargeable under the Bankruptcy Code. Ms. Golden states that "[t]he subject loans lack the traditional characteristics of 'educational loans.'" Plf's Opp. at 29. Rather, she notes, "courts have repeatedly held that educational loans differ from consumer loans because they are made [] directly to schools on the student's behalf, without credit or collateral considerations, to further a public good." *Id.* And here, the Amended Complaint states, the loans at issue were made pursuant to a direct-to-consumer program, not through any financial aid office of an eligible school.

Ms. Golden similarly disputes Firstmark's argument that she "cannot seek a remedy for discharge violations through an adversary proceeding because there is no private right of action for violation of a discharge injunction," and responds that there "is no question that bankruptcy courts have the power to enforce discharge injunctions regardless of any specified private right of action." Plf's Opp. at 32. She states that "an action to enforce a discharge injunction may be maintained in an adversary proceeding." Plf's Opp. at 33.

As to whether the Discharge Order is "too vague to support a contempt finding," Ms. Golden responds that "the only questions a court must ask are whether the defendant (1) knew of the discharge violation; and (2) intended the action that violated the discharge." Plf's Opp. at 33 (citing *In re DiGeronimo*, 354 B.R. 625, 642 (Bankr. E.D.N.Y. 2006)). She argues that in the Amended Complaint, she has alleged adequately those two elements. Ms. Golden also responds that "[b]ecause all discharge injunctions are the same, Defendants' argument here would strip the Court's power to enforce its own discharge orders through contempt proceedings." Plf's Opp. at 34. And Ms. Golden states that it is the creditor's burden, not the debtor's, to establish the discharge status of a debts after the discharge is entered.

### The Applicable Legal Standards

#### *The Pleading Requirements of Federal Rule of Civil Procedure 8(a)*

As this Court has noted, Federal Rule of Civil Procedure 8(a) requires that a pleading contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *In re Brizinova*, 554 B.R. at 74 (quoting Fed. R. Civ. P. 8(a)(2)). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that under this rule, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Thereafter, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court set forth a two-step approach for courts to follow when deciding a motion to dismiss. First, a court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to seek dismissal of a claim at the pleading stage if it does not state a claim upon which relief may be granted. In *Twombly*, the Supreme Court held that for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court explained that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). But a court is not required to accept as true those allegations that amount to no more than legal conclusions. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it

by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).  *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (stating that when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may look to the complaint, its exhibits, and documents incorporated by reference in the complaint).

*The Pleading Requirements of Federal Rule of Civil Procedure 9(b)*

Federal Rule of Civil Procedure 9(b), as incorporated by Bankruptcy Rule 7009(b), adopts a special pleading standard with respect to allegations of fraud.

To allege a claim for fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  As the Second Circuit has found, "in order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993)).  "A fraud claim must additionally express and spell out with reasonable clarity the specific factual misconduct relied on – not encased in a thicket of words or legalistic concepts – and should express the basis for the assertion of such charges."  *Spiegler v. Wills*, 60 F.R.D. 681, 682 (S.D.N.Y. 1973).

*The Categories of Nondischargeable Debt Under Bankruptcy Code Section 523(a)(8)*

Bankruptcy Code Section 523(a)(8) outlines several categories of student debt that may be excluded from discharge.  It states that a debtor is not discharged from any debt that constitutes:

> (A)(i)   an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

(ii)    an obligation to repay funds received as an educational benefit, scholarship or stipend; or

(B)    any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.

11 U.S.C. §§ 523(a)(8)(A)(i), 523(a)(8)(A)(ii), 523(a)(8)(B).  Stated otherwise, Bankruptcy Code Section 523(a)(8) "protects four categories of educational loans from discharge."  *Rumer v. American Educational Servs. (In re Rumer)*, 469 B.R. 553, 561 (Bankr. M.D. Pa. 2012).

The first and second categories of debt excluded from discharge are described in Bankruptcy Code Section 523(a)(8)(A)(i).  These are "two types of educational claims: (1) educational benefit overpayments or loans made, insured, or guaranteed by a governmental unit; and (2) educational benefit overpayments or loans made under any program partially or fully funded by a governmental unit or nonprofit institution."  *In re Decena*, 549 B.R. at 18.  The Trusts argue that the second category applies here to exempt Ms. Golden's NCT Loan from discharge, and seek dismissal on that grounds.

A third category of student debt that is excluded from discharge is described in Bankruptcy Code Section 523(a)(8)(A)(ii).  This category encompasses "funds received as an educational benefit, scholarship or stipend."  PHEAA argues that Ms. Golden's debt arises from "funds received as an educational benefit," and for this reason, that the Amended Complaint should be dismissed.

And finally, Bankruptcy Code Section 523(a)(8)(B) excludes from discharge any "qualified education loan as defined in section 221(d)(1) of the Internal Revenue Code of 1986." This Section is at the core of Ms. Golden's Amended Complaint, and is addressed by the Defendants as an additional grounds upon which her claims should be dismissed.

*The Elements of a Discharge Injunction Violation Claim*

Bankruptcy Code Section 524 describes the effect of a discharge. It states that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524. In order adequately to allege a claim for violations of a discharge injunction, a plaintiff-debtor must allege that the debtor received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). Of course, for a discharge injunction claim to lie, the debt at issue must be within the scope of the debtor's dischargeable debt. *See In re Eppolito*, 583 B.R. 822, 826 (Bankr. S.D.N.Y. 2018) (stating that "[t]he discharge injunction survives the closure of a bankruptcy case and applies permanently to every debt *that is discharged*" (emphasis added)); *In re Azevedo*, 506 B.R. 277, 283 (Bankr. E.D. Cal. 2014) (observing that "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised") (citing 11 U.S.C. § 524(a)(1)-(2)); *Otten v. Majesty Used Cars, Inc. (In re Otten)*, 2013 WL 1881736, at \*6-8 (Bankr. E.D.N.Y. May 3, 2013) (analyzing the scope of a discharge injunction issued in the plaintiff's bankruptcy case in the context of determining whether the defendants' actions violated the discharge injunction).

## Discussion

As the summary of the parties' arguments makes clear, Ms. Golden's claims and the Defendants' arguments in support of dismissal arise in a larger context of questions about the dischargeability of student loans, the history of the student loan market and the conduct of

lenders and borrowers in that market, the words used by Congress and Congress's intent in crafting exceptions to discharge, and more.

But the question presented by each of the Defendants in their Motions to Dismiss is limited to whether Ms. Golden's Amended Complaint states plausible claims for relief. Two claims are at issue: first, Ms. Golden's claim for a declaratory judgment that her Tuition Answer Loans were discharged by operation of law by the Discharge Order entered by this Court in her bankruptcy case; and second, her claim for a finding of civil contempt, and an award of damages, attorneys' fees, and costs, for the Defendants' violations of that Discharge Order in attempting to collect on those loans.

That is, the question to be answered by the Court is neither more nor less than whether these claims and each of their elements has been plausibly alleged in the Amended Complaint. And the Court must do so by applying the standard set forth in Rule 8(a) and 12(b)(6), and the guidance established by the Supreme Court, to determine whether Ms. Golden has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In doing so, the Court must accept the well-pleaded factual allegations of the Amended Complaint as true, and must draw all reasonable inferences in favor of Ms. Golden as the non-moving party.

*Whether the Defendants Have Shown that Ms. Golden's First Claim for Relief Should Be Dismissed*

Ms. Golden's first claim for relief seeks a declaratory judgment, pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9), that certain of her debts were discharged by operation of law on August 3, 2016, because they were not student loans excluded from discharge by any subsection of Bankruptcy Code Section 523(a)(8). And in this Motion to

Dismiss, the Defendants argue that, for a panoply of reasons, she does not state a plausible claim for this relief.

In order to address the question of whether Ms. Golden's First Claim for Relief states a plausible claim, the Court first considers the question whether the allegations of the Amended Complaint set forth a plausible basis to conclude that the threshold requirements for a declaratory judgment are met.  Next, the Court considers whether the Defendants have shown that Bankruptcy Code Section 523(a)(8)(A)(ii) excludes Ms. Golden's Tuition Answer Loans from discharge as a matter of law.  Then, the Court considers whether the Defendants have shown that Bankruptcy Code Section 523(a)(8)(A)(i) applies to exclude one of those loans, the NCT Loan, from discharge as a matter of law.  And finally, the Court considers whether, under the standards set forth in Federal Rules of Civil Procedure 8(a), 12(b)(6), and 9(b), the Amended Complaint states each of the elements of a plausible claim for relief.

<u>Whether the Threshold Requirements for a Declaratory Judgment Are Met</u>

First, the Court considers whether, in light of the allegations of the Amended Complaint and the arguments advanced by the Defendants, the threshold requirements for a declaratory judgment claim are met.  Judiciary Code Section 2201 states that "in any case of actual controversy," a court may, "upon the filing of an appropriate pleading . . . declare the rights and other legal relations of any interested party seeking such declaration," and such declaration "shall have the force and effect of a final judgment or decree."  28 U.S.C. § 2201.

According to the Second Circuit, "[a] declaratory judgment action presents an actual controversy if 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Dicola v. Am. S.S. Owners Mut. Prot. &*

*Indem. Ass'n (In re Prudential Lines Inc.)*, 158 F.3d 65, 70 (2d Cir. 1998) (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, it is plain from the Amended Complaint that Ms. Golden has alleged a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance" of relief. At the outset, the dispute is substantial. The Amended Complaint states that the Defendants knowingly undertook collection efforts on debts that – she alleges – come within the Discharge Order entered in her bankruptcy case. Ms. Golden alleges that she has been damaged, in a tangible way, by those efforts. And she alleges that the Defendants' collection efforts violated this Court's Discharge Order, warranting a finding of civil contempt.

For these same reasons, the allegations of the Amended Complaint show that the parties have "adverse legal interests," in light of these claims. It is in Ms. Golden's interests that her Tuition Answer Loans be discharged under the applicable bankruptcy law, and it is in the Defendants' interests that this Court reach the opposite conclusion. It is also in Ms. Golden's interests that her allegations of contempt be sustained, and just as much, in the Defendants' interests that they be rejected.

Finally, there is nothing speculative about the relief that Ms. Golden seeks or, for that matter, the dismissal that the Defendants urge. The debts have been incurred, the Discharge Order has been entered, and the collection efforts have been undertaken. The controversy presented has the necessary "immediacy and reality to warrant" consideration of declaratory relief. The circumstances as alleged are immediate and real. For these reasons, the Court concludes that the threshold requirements for a declaratory judgment claim are met.

<u>Whether the Defendants Have Shown that Bankruptcy Code Section 523(a)(8)(A)(ii) Applies To
Exclude the Loans at Issue from Discharge as a Matter of Law</u>

Next, the Court considers whether the Defendants have shown that one of the exceptions
to discharge set forth in Section 523(a)(8) applies to exclude Ms. Golden's Tuition Answer
Loans from the scope of her bankruptcy discharge as a matter of law.  In particular, the Court
considers whether the Defendants – specifically, PHEAA – have shown that the loans at issue
here are excluded from discharge because they are "an obligation to repay funds used for an
educational benefit, scholarship, or stipend" within the scope of Bankruptcy Code Section
523(a)(8)(A)(ii).

The starting point for the analysis of exceptions to discharge is the rule, as stated by the
Supreme Court, that "exceptions to discharge 'should be confined to those plainly expressed,'
and construed narrowly against the creditor."  *In re Campbell*, 547 B.R. at 54 (quoting
*Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998)).  And equally important is, of course, the plain
text of the statute.  But that does not mean that a court must read the words with blinders on.
Rather, as the Supreme Court has observed, it is a "fundamental canon of statutory construction
that the words of a statute must be read in their context and with a view to their place in the
overall statutory scheme."  *Davis v. Michigan Dep't of Treasury,* 489 U.S. 803, 809 (1989).

Bankruptcy Code Section 523(a)(8)(A)(ii) excepts from discharge any "obligation to
repay funds received as an educational benefit, scholarship, or stipend."  11 U.S.C.
§ 523(a)(8)(A)(ii).  But Section 523(a)(8) does not define "student loans."  Nor does it define
"educational benefit."  Rather, it describes certain categories of debt that are not dischargeable in
bankruptcy unless the debtor establishes that excepting the debt from discharge would impose an
undue hardship on the debtor and his or her family, and those descriptions are particular and
detailed.

In this light, the text of Section 523(a)(8)(A)(ii) merits attention. It describes "funds received as an educational benefit." This would be an unconventional way to discuss a loan. And the neighboring terms to "benefit" are "scholarship or stipend." 11 U.S.C. § 523(a)(8)(A)(ii). These, plainly, do not describe a loan. The prior and following subsections refer to "loan made," "educational loan," and "qualified education loan." 11 U.S.C. §§ 523(a)(8)(A)(i), 523(a)(8)(B). That is, the term "loan" was part of the drafting process of Section 523(a)(8), and it seems reasonable to assume that if Congress intended this subsection to include loans, it would have said so.

Bankruptcy Code Section 523(a)(8)(A)(ii), both by its terms and read in context, does not sweep in all education-related debt, or all loans that support a student's efforts to gain the benefits of an education. If this Section had the breadth for which the Defendants advocate, it is hard to see where it would end – conceivably, it could encompass credit card debt that was incurred to purchase textbooks, personal loans that were used to pay for tuition and school fees, and any other debt that, in one way or another, facilitated a student's efforts to gain the "benefits" of an "education." And plainly, this is not what Section 523(a)(8)(A)(ii) encompasses, or what the Bankruptcy Code permits, or what Congress intended.

In addition, this Court also agrees with those other courts, including courts within and outside this District, that have concluded that "an obligation to repay funds received as an educational benefit" must mean something other than a loan. As one bankruptcy court observed, this conclusion is necessary because another subsection, Section 523(a)(8)(B), excludes from discharge "qualified education loans." *In re Decena*, 549 B.R. at 19. Interpreting Section 523(a)(8)(A)(ii) to encompass a loan would result "in subsection 523(a)(8)(B) being subsumed by subsection 523(a)(8)(A)(ii), and [would] render[] subsection 523(a)(8)(B) superfluous." *Id*.

To similar effect, as the bankruptcy court concluded in *In re Campbell*, "funds received as an educational benefit" refers to certain kinds of education-related conditional grants, and not to *all* student loans. *In re Campbell*, 547 B.R. at 55. There, the court undertook a careful and thorough review of the case law and the legislative history of this exception to discharge, and held that "in the absence of plain meaning to the contrary, or compelling legislative history, 'educational benefit' must be understood to refer to something other than a loan, especially given that Congress uses the word 'loan' elsewhere in [Bankruptcy Code Section] 523(a)(8)." *Id.*

As the court reasoned:

> If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(i) and § 523(a)(8)(B), particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions.

*Id.* And the court observed that "[t]he concept which unites the three separate terms in the list in [Bankruptcy Code Section] 523(a)(8)(A)(ii) is that they all refer to types of conditional grants." *Id.*

More recently, in *McDaniel v. Navient Solutions, LLC (In re McDaniel)*, 590 B.R. 537 (Bankr. D. Colo. 2018), the court considered whether the debtors' Tuition Answer Loans were excluded from discharge under Bankruptcy Code 523(a)(8)(A)(ii) as "an obligation to repay funds received as an educational benefit, scholarship or stipend." *In re McDaniel*, 590 B.R. at 546. In denying Navient Solutions' motion to dismiss, the court concluded that "[t]he language of the statute sets an educational benefit apart from a loan, and excepts from discharge a category of obligations in Section 523(a)(8)(A)(ii) that does not include loans but rather, 'educational benefit[s]', 'scholarship[s]', and 'stipend[s].'" *In re McDaniel*, 590 B.R. at 548.

And the court observed:

> If Navient's interpretation of Section 523(a)(8)(A)(ii) is correct – i.e., obligations that confer educational benefits are excepted from discharge – there would be no need for a separate provision excepting from discharge benefit overpayments or loans made, insured, or guaranteed by governmental units or non-profit institutions (Section 523(a)(8)(A)(i)).  Nor would there be any need for a separate provision excepting from discharge "qualified education loans" (Section 523(a)(8)(B)).  Navient's interpretation offends a "cardinal principle" of statutory construction, that courts have a "duty to give effect, if possible, to every clause and word of a statute."  *United States v. Smith*, 756 F.3d 1179, 1187 (10th Cir. 2014) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (internal quotation marks and brackets omitted)).

*Id*.  As the court concluded, "based upon the plain language of the statute, this Court embraces the trending narrower view of Section 523(a)(8)(A)(ii) espoused in *Campbell*."  *In re McDaniel*, 590 B.R. at 549 (citing cases).

Recent decisions of other courts are in accord.  For example, in *Nypaver v. Nypaver (In re Nypaver)*, 581 B.R. 431 (Bankr. W.D. Pa. 2018), the court considered whether a loan from the debtor's father to the debtor to pay for her undergraduate education was excluded from discharge as an "educational benefit."  There, the respondent – the debtor's father -- obtained federal "Parent PLUS" loans to fund the debtor's undergraduate education.  And the debtor agreed in a promissory note – which the parties agreed was to be interpreted as a loan – to repay her father for the Parent PLUS loans.  The respondent father obtained a state court judgment against the debtor after she defaulted under the terms of the note.  During the pendency of the state court action, the debtor filed for bankruptcy, a discharge was entered, and the case was closed.  The debtor successfully moved to reopen her bankruptcy case to determine the dischargeability of the note.  Both parties moved for summary judgment, and the respondent argued that the note constituted an "educational benefit" that was excepted from discharge pursuant to Bankruptcy Code Section 523(a)(8)(a)(ii).

The *Nypaver* court undertook a close analysis of the text of Section 523(a)(8)(a)(ii), adopted the more narrowly crafted view, and found that the promissory note did not come within the scope of this section, for several reasons.  First, the court noted the discrepancy between the subjects of Section 523(a)(8)(a)(i) – "an educational benefit overpayment or loan" – and Section 523(a)(8)(a)(ii) – "an obligation to repay funds."  It found that "[a]lthough common usage of the word 'funds' could include the proceeds of a loan, the structure of *Section 523(a)(8)* suggests a more limited and tailored definition."  *In re Nypaver*, 581 B.R. at 437.  Second, the court observed that the word "as" in the phrase "an obligation to repay funds received as an educational benefit, scholarship, or stipend" in Section 523(a)(8)(a)(ii), suggests that the predicate of that subsection – "educational benefit, scholarship, or stipend" – informs the "character" of the funds owed, rather than the "purpose" of those funds.  *Id.*  The court also stated that the use of the word "as" casts doubt upon the "purpose of the loan" analysis employed by courts that give a broad meaning to the term "educational benefit."  *Nypaver*, 581 B.R. at 438. Finally, the court found that Section 523(a)(8)(a)(ii), interpreted broadly, would render other subsections of Section 523(a)(8) "largely meaningless," "unnecessary," and "surplusage."  *Id.*

And in *Crocker v. Navient Solutions, LLC (In re Crocker)*, 585 B.R. 830 (Bankr. S.D. Tex. 2018), the court similarly found the reasoning of *Nypaver*, among other cases, to be persuasive, and adopted the narrower interpretation of Section 523(a)(8)(A)(ii).  It found Section 523(a)(8)(A)(ii) to be "unambiguous," and stated that it excepts from discharge a "specifically tailored" category of debts.  *In re Crocker*, 585 B.R at 836.

The court found it instructive that Section 523(a)(8)(A)(ii) begins with the phrase "obligation to repay" and excludes the word "loan," noting that Congress employed the word "loan" elsewhere in Section 523(a)(8), and presumably made an intentional decision with respect

to "when to use [the word 'loan'] and when to choose something different." *Id.* It found that Section 523(a)(8)(A)(ii) "must be read against the context of the entire language" of Section 523(a)(8), and therefore, that the phrase "obligation to repay" must be read to refer to something other than loans. *Id.* In addition, the court echoed the reasoning of the *Nypaver* court with respect to the use of the word "as" in the phrase "obligation to repay funds received as an educational benefit." *Id.* And the court looked to Black's Law Dictionary, defining "as" to mean "in the character or under the name of." *In re Crocker*, 585 B.R at 836 (quoting BLACK'S LAW DICTIONARY 113 (6th ed. 1990)). The court found that Congress's choice of language described a particular category of debts, and "did not include all loans that were in some way used by a debtor for education." *In re Crocker*, 585 B.R at 836. If it were otherwise, the court noted, "would not a loan for a car used by a commuter student to travel to and from school every day be nondischargeable under § 523(a)(8)(A)(ii)? The answer is obvious." *Id.*

Finally, in *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1 (Bankr. D. Me. 2017), the court also adopted the narrow view of "educational benefit." As in *Nypayer* and *Crocker*, the court carefully analyzed the statutory text, and was persuaded by the difference in language between "obligation to repay" in Section 523(a)(8)(A)(ii), and "any other educational loan" and "educational benefit overpayment or loan" in Sections 523(a)(8)(B) and 523(a)(8)(A)(i) respectively. *In re Wiley*, 579 B.R. at 8. The court also cited "the principle that an interpretation yielding statutory surplusage should be avoided if a competing interpretation would give effect 'to every clause and word of a statute.'" *Id.* (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013)). And the court asked:

> Why would Congress exclude qualified education loans from discharge under section 523(a)(8)(B) if all educational loans were excepted from discharge under section 523(a)(8)(A)(ii)? And, why would Congress exclude government-backed loans from discharge under section 523(a)(8)(A)(i) if all educational loans were

excepted under section 523(a)(8)(A)(ii)?  [The creditor] has no compelling answers for these questions.

*Id.*

To be sure, some courts have assumed or decided, without significant explanation or analysis, that "educational benefit" in this context means any loan which relates in some way to education.  For example, in *In re Desormes*, 569 F. App'x 42 (2d Cir. 2014), an unpublished summary order, the Second Circuit observed, without significant discussion, that "[s]tudent loans are presumptively nondischargeable in bankruptcy," and concluded that "[c]ontrary to [the debtor's] argument, if a transfer of funds directly to the debtor is not necessary for the creation of a loan, there is little reason to think such a transfer is necessary for the loan to be received within the meaning of the statute."  *In re Desormes*, 569 F. App'x at 42.  That is, the court neither considered nor addressed the issues that are presented here.

And several decisions of bankruptcy courts outside this Circuit reach conclusions consistent with the Defendants' broad interpretation of Section 523(a)(8)(A)(ii), though few considered and addressed the arguments that are made here.  Some courts state that it is undisputed that the debt at issue is within the scope of Section 523(a)(8)(A)(ii).  Here, by contrast, the issues are contested and have been presented for this Court's consideration.  *See, e.g.*, *In re Edwards*, 561 B.R. at 855 n.11 (observing in a footnote that "[t]here is no dispute that the Navient loans fall within th[e] definition" of educational loans under Section 523(a)(8)(A)); *Micko v. Student Loan Fin. Corp. (In re Micko)*, 356 B.R. 210, 216 (Bankr. D. Ariz. 2006) (noting that "[i]t is undisputed that the Plaintiff committed himself to repay the money extended to him by the Defendant, as evidenced by the GOAL notes [and] it is undisputed that the loans at issue conferred an educational benefit on the Plaintiff.  Thus, on the plain language reading of the statute . . . the Plaintiff's loans are nondischargeable").

Other courts conclude, in substance, that if the loans supported or aided the debtor in his or her pursuit of the benefits of an education, including in meeting the costs of tuition, room and board, textbooks, tutoring, and a bar review course, then they are within the scope of the nondischargeability terms of Section 523(a)(8)(A)(ii).  Again, for the reasons stated above, this Court does not concur in this broad interpretation of this Section.  *See, e.g.*, *Brown v. Citibank, N.A. (In re Brown)*, 539 B.R. 853, 859 (Bankr. S.D. Cal. 2015) (finding that "[Section] 523(a)(8)(A)(ii) should be interpreted broadly to include a bar examination loan under the definition of 'educational benefit'"); *Beesley v. Royal Bank of Canada (In re Beesley)*, 2013 WL 5134404, at *5 (Bankr. W.D. Pa. Sept. 13, 2013) (stating that "[i]t is undisputed that the Debtor entered into the Royal Credit Line Agreement for Students (by its title, a loan for students), and consistent therewith, the proceeds were used for tuition, room and board, and books by the Debtor.  Accordingly, this Court finds that the funds provided the Debtor with an educational benefit"); *Roy v. Sallie Mae (In re Roy)*, 2010 WL 1523996, at *1 (Bankr. D.N.J. Apr. 15, 2010) (finding that loans to pay for tutoring provided an "educational benefit" within the meaning of Section 523(a)(8) because, among other reasons, the statute "'must be read as encompassing a broader range of educational benefit obligations'" (quoting *In re Baiocchi*, 389 B.R. 828 (Bankr. E.D. Wis. 2008)); *Skipworth v. Citibank Student Loan Corp.* (*In re Skipworth)*, 2010 WL 1417964, at *2 (Bankr. N.D. Ala. Apr. 1, 2010) (concluding that "the debtor's obligation . . . is clearly 'an obligation to repay funds received as an educational benefit' for purposes of § 523(a)(8)(A)(ii) in that Citibank loaned funds to the debtor to assist the debtor with his educational expenses i.e. the debtor's bar review course").

And still other courts simply conclude that Section 523(a)(8)(A)(ii) merits a broad interpretation.  *See, e.g.*, *Shaw v. EduCap, Inc. (In re Shaw)*, 2015 WL 1000213, at *3 (Bankr.

S.D. Tex. Mar. 3, 2015) (stating generally that "unless the debtor affirmatively secured a

hardship determination, the discharge order will not include a student loan debt"); *Brown v. Rust*

*(In re Rust)*, 510 B.R. 562, 568, 571-72 (Bankr. E.D. Ky. 2014) (observing that "[u]nder the

plain language of § 523(a)(8)(A)(ii), the debt herein is an 'obligation to repay funds received as

an educational benefit'"); *Carow v. Chase Student Loan Serv. (In re Carow)*, 2011 WL 802847,

at *4 (Bankr. D.N.D. Mar. 2, 2011) (concluding that "[g]iven the breadth afforded to the phrase

'educational benefit,' these facts clearly establish that the Chase loans were used to provide

Debtor an educational benefit").

> But, as the court concluded in *In re Campbell*:

> This broad interpretation of the exception to discharge in § 523(a)(8)(A)(ii) would render superfluous most of the other provisions of § 523(a)(8). If the term "educational benefit" includes any student loan, there would be no need to specifically identify, as Congress did in § 523(a)(8)(A)(i) and § 523(a)(8)(B), particular loans, extended by particular lenders, which are excepted from discharge, since § 523(a)(8)(A)(ii), if interpreted to extend to all education-related loans, would swallow both provisions. The cases which have failed to address this issue . . . are for this reason unpersuasive.

*In re Campbell*, 547 B.R. at 54-55. This Court, too, finds those cases to be unpersuasive.

And this Court, as well, joins that "trending narrower view" of the scope of Section

523(a)(8)(A)(ii). That is, both the text and the context of Section 523(a)(8)(A)(ii) indicate that it

encompasses "alternatives to the typical debtor-creditor relationship in the education context.

These alternatives encompass cash benefit programs, such as veteran educational benefits,

stipends for teaching assignments, conditional grants, cash scholarships and other obligations

that are distinct from traditional student loans." *In re Decena*, 549 B.R. at 20. This Court

concludes that, in substance, an "obligation to repay funds received as an educational benefit"

refers to the wide range of benefits that aid a student in meeting the costs of his or her education,

often with conditions and prospective obligations attached. But it does not include *all* debt that

confers the benefits of an education on the borrower.  *See Homaidan v. SLM Corp. (In re Homaidan)*, Adv. Pro. No. 17-01085, slip op. (Bankr. E.D.N.Y. January 31, 2019) (denying defendants' motion to dismiss).

Here, the record shows that Ms. Golden alleges that the Tuition Answer Loans were "direct-to-consumer" loans, and not conditional grants.  That is, her allegations show that the debt at issue is not "an obligation to repay funds received as an educational benefit, scholarship, or stipend."  11 U.S.C. § 523(a)(8)(A)(ii).  The record also shows that Ms. Golden seeks a declaratory judgment that the Tuition Answer Loans were discharged in her bankruptcy case, upon the entry of the Discharge Order, and by implication, that they were not excluded from discharge by Section 523, including Bankruptcy Code Section 523(a)(8)(A)(ii).

While it is far from clear whether Ms. Golden can prove her allegations, that question is not before the Court on these Motions to Dismiss.  Rather, the Defendants argue that Ms. Golden's claims are rendered implausible by the nondischargeability terms of Bankruptcy Code Section 523(a)(8)(A)(ii).  And here, at this stage in these proceedings, the Court concludes that the Defendants have not established that these claims are implausible on these grounds.

<u>Whether the Defendants Have Shown that Bankruptcy Code Section 523(a)(8)(A)(i) Applies To Exclude the NCT Loan from Discharge as a Matter of Law</u>

Next, the Court considers whether the Defendants have shown that a different exception to discharge set forth in Section 523(a)(8) applies to exclude certain of Ms. Golden's Tuition Answer Loans from the scope of her bankruptcy discharge as a matter of law.  In particular, the Court considers whether the Defendants – specifically, the Trusts – have shown that the NCT Loan is excluded from discharge under Bankruptcy Code Section 523(a)(8)(A)(i).

Bankruptcy Code Section 523(a)(8)(A)(i) excludes from discharge a loan that is "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in

part by a governmental unit or nonprofit institution." This gives effect to one of the key

purposes of Section 523(a)(8), that student loans that are funded or guaranteed by a government

or nonprofit entity may not generally be discharged in bankruptcy. As the court observed in *In*

*re Campbell*:

> The original impetus for including an exception to discharge for education loans
> made by the government was the concern that if debtors were allowed to
> discharge such loans, the solvency of government education loan programs would
> be undermined, in effect "discriminating against future students, because there
> will be no funds available for them to get an education."

*In re Campbell*, 547 B.R. at 59-60 (quoting *In re Pelkowsky*, 990 F.2d 737, 742 (3d Cir. 1993)).

Citing the Second Circuit's decision in *In re O'Brien*, 419 F.3d 104 (2d Cir. 2005), the

Trusts suggest that Ms. Golden's NCT Loan should accordingly be excluded from discharge, and

her claims against them dismissed, because "where TERI has funded a student loan, that 'student

loan was made under a program that was funded in whole or in part by a non-profit institution.'"

Trusts Mem. at 9 (quoting *In re O'Brien*, 419 F.3d at 107).

In *O'Brien*, the Second Circuit's conclusion was based on the "undisputed" and

"uncontested" fact, as noted by the district court, that the loan at issue was made by a program

funded at least in part by TERI, and the loan at issue was exempt from discharge pursuant to

Bankruptcy Code Section 523(a)(8)(A)(i). *In re O'Brien*, 419 F.3d at 106-07. The Second

Circuit did not address, or need to consider, whether the particular loan at issue was, in fact,

funded by TERI. Courts have interpreted *O'Brien* to hold that a loan may be exempt from

discharge under Bankruptcy Code Section 523(a)(8)(A)(i) where "the nonprofit entity played any

meaningful part in procurement of the loans under the program." *In re Page*, 592 B.R. 334, 337

(B.A.P. 8th Cir. 2018).

The Trusts point to language in the loan documentation to the effect that Ms. Golden's loan is "'subject to the limitations on dischargeability in bankruptcy contained in [Bankruptcy Code] Section 523(a)(8)'" because "'either or both'" of certain grounds for discharge exceptions apply. Trusts Mem. at 9 (quoting Credit Agreement). And the Trusts note that "in fact, the check made out to [Ms. Golden] that funded this loan came from TERI." Trusts Mem. at 9.

Ms. Golden disputes these assertions. She responds that TERI "is a guarantor, not a funder, and whether or not these funds were issued under a program guaranteed in whole or in part by TERI is, of course, a question of fact." Plf's Opp. at 9 n.1. And she states that the language relied upon by TERI is simply insufficient to change Ms. Golden's dischargeable debt into a nondischargeable student loan, because "a loan that does not come within the terms of the § 523(a)(8) exemption. . . cannot become nondischargeable by a pre-bankruptcy acknowledgement or waiver by the debtor." Plf's Opp. at 2.

Ms. Golden also responds that TERI funds only those loans that do not exceed the cost of attendance, and therefore it is unlikely that TERI funded the NCT Loan, which "clearly exceed[s] the cost of attendance." Plf's Opp. at 9 n.1. And she disputes whether TERI is "in fact, a bonafide nonprofit institution," or if it is a division of the for-profit entity First Marblehead Corporation created "for the sole purpose of taking advantage of [the] non-profit exemption of § 523(a)(8)(A)(i). *Id*. That is, here, unlike the situation in *O'Brien*, the parties dispute whether TERI had a role in funding the NCT Loan.

At the outset, in deciding a motion to dismiss, the court does not determine whether a plaintiff's factual allegations are true – rather, all factual allegations must be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. Disputed facts can be addressed in the context of dispositive motion practice, including a motion for summary

judgment, but there too, the standard is high, and summary judgment – which is not the question

before the Court here – may be granted only where there is no genuine dispute as to a material

fact, so that the movant is entitled to judgment as a matter of law.  As one court observed in

response to similar arguments, summary judgment would be denied where the movant did "not

identify the program under which the Loans were extended, address the relationship between

[another party] and TERI, or otherwise show that TERI funded the program under which the

Loans were made."  *In re Wiley*, 579 B.R. at 6.  The court concluded, "on summary judgment,

these indications are not enough to carry the day."  *In re Wiley*, 579 B.R. at 7.

Here, a review of the Amended Complaint shows that Ms. Golden alleges that she

borrowed "an additional $7,103 on September 28, 2006 in private loans from National Collegiate

Trust" and that this loan "was originated in excess of the published 'cost of attendance' and was

not a qualified education loan under section 523(a)(8)(B)."  Am. Compl. ¶ 30.  She also alleges

that "the NCT Loan was not 'made, insured, or guaranteed by a governmental unit' or made

under a 'program funded in whole or in part by a non-profit.'"  Am. Compl. ¶ 32.

In addition, more is required to satisfy the requirements of Section 523(a)(8) than a

statement in a loan document that "either or both" of certain exceptions from discharge may

apply.  If that language alone were sufficient, then it is hard to see what role would be left for

Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy

Code.  At the most, the Trusts have identified a disputed issue of fact that is not ripe for

resolution at this stage of these proceedings.

That is, and here again, while it is far from clear whether Ms. Golden can prove her

allegations, that question is not before the Court on these Motions to Dismiss.  Rather, the

Defendants argue that Ms. Golden's claims are rendered implausible by the nondischargeability

terms of Bankruptcy Code Section 523(a)(8)(A)(i).  And here, at this stage in these proceedings,

the Court concludes that the Defendants have not established that these claims are implausible on

these grounds.

<u>Whether the Defendants Have Shown that the Amended Complaint Does Not State a Plausible</u>
<u>Claim that the Loans at Issue Are Outside the Scope of Bankruptcy Code Section 523(a)(8)(B)</u>

Finally, the Court considers whether the Defendants have shown that the allegations of

the Amended Complaint do not set forth a plausible claim that Ms. Golden's Tuition Answer

Loans are outside the scope of Bankruptcy Code Section 523(a)(8)'s exclusions from discharge,

including in particular, Section 523(a)(8)(B).

The Defendants urge that the Amended Complaint falls short of the pleading standards

required by the Federal Rules because, in substance, it does not establish a plausible basis to

conclude that Ms. Golden's Tuition Answer Loans are outside the scope of the

nondischargeability provisions of Section 523(a)(8)(B).  They also argue, in substance, that the

Amended Complaint falls short of these standards because it does not give each Defendant notice

as to what loans are at issue, what each of their individual roles was in connection with the loan,

or what activities they each individually undertook to violate the discharge injunction.  PHEAA

states that the Amended Complaint names multiple defendants, but does not "'indicate clearly

the defendants against whom relief is sought and the basis upon which the relief is sought against

the particular defendants.'"  PHEAA Reply at 4 (quoting *Harris*, 2014 WL 3487032, at *7).  And

Firstmark asserts that it is left "to guess which" loan is at issue.  Firstmark Mem. at 17.  To

similar effect, the Trusts note that "it is simply impossible to tell which loans on the Schedule F

are the Loans [at issue here]."  Trusts Reply at 3.

Ms. Golden responds that the Amended Complaint sets forth a plausible claim that the

loans at issue do not come within the nondischargeability provisions of Bankruptcy Code Section

44

523(a)(8)(B).  The Amended Complaint states that qualified education loans are defined by Internal Revenue Code Section 221(d)(1) "as debts incurred by eligible students, at eligible institutions, for eligible expenses.  In turn, a 'qualified higher education expense' is one that issued to pay for the cost of attendance at a qualified educational institution."  Am. Compl. ¶ 16 (quoting 26 U.S.C. § 221(d)(2)).  She argues that the Amended Complaint sets forth allegations sufficient to show that her Tuition Answer Loans were for amounts that clearly exceeded the stated "cost of attendance" at the University of Pennsylvania, and for those reasons, her loans are not "qualified education loans."  And she points to allegations in the Amended Complaint that show that these loans "lack the traditional characteristics of 'educational loans'" because they "were made under Defendants' direct-to-consumer lending programs" and "[were] not conducted through the financial aid offices of eligible schools."  Plf's Opp. at 29.  Ms. Golden's loans "[were] not limited as to the amount of money that could be lent above and beyond the published cost of attendance," and "were assigned an adjustable interest rate at the time of origination, the same as any commercial loan."  *Id.*

Ms. Golden also responds that the Amended Complaint provides each of the Defendants with sufficient notice as to "what two loans are at issue in this proceeding and what they are alleged to have done."  Plf's Opp. at 7.  She identifies the first loan as the NCT Loan, now owned by one or more of the Trust Defendants.  And she notes that two of the Trust Defendants, National Collegiate Student Loan Trust 2005-3 and National Collegiate Student Loan Trust 2006-4, were substituted in as defendants in this action by a stipulation that was so-ordered by the Court.  She states that the NCT Loan is serviced by PHEAA.

Ms. Golden identifies the second loan as the Citibank Loan, now owned by Defendant Goal Structured Trust 2016-A.  That defendant, too, was brought into this action as a defendant

by a stipulation that was so-ordered by the Court.  And she states that the Citibank Loan is serviced by Firstmark.

And Ms. Golden states that the Amended Complaint clearly identifies the conduct that is alleged to have violated the Discharge Order entered in her bankruptcy case.  She points to allegations that the loans at issue exceeded her cost of attendance at the University of Pennsylvania, and that as a result, these loans are dischargeable debts.  And she points to allegations that the Defendants, and the lenders and servicers of the loans at issue, have continued to demand payment and collect on these discharged debts.

The Court first considers whether the Defendants have shown that Amended Complaint does not state plausible claims because the loans at issue are excluded from discharge by Section 523(a)(8) as a matter of law.

At the outset, it is plain that not every debt that is incurred by a student in pursuit of an education is, without more, a nondischargeable "student loan."  This Court also notes that Section 523 must be applied in a way that provides discernable boundaries between a dischargeable and a nondischargeable debt.  To be sure, that boundary may require a factual determination – such as whether a debt is obtained by "false pretenses, a false representation, or actual fraud," as provided by Bankruptcy Code Section 523(a)(2)(A).  But borrowers and lenders, debtors and creditors, and courts and parties should be able to discern whether a loan or debt is within or outside a debtor's discharge by reference to objective criteria.  Where statutes – including, as here, the Bankruptcy Code and the Internal Revenue Code – provide definition, those definitions should be the starting point, and likely the concluding point, for the analysis.

Here, a review of the Amended Complaint shows that Ms. Golden alleges that she attended the University of Pennsylvania during the 2006-07 and 2007-08 academic years.  Am.

Compl. ¶¶ 27, 35.  She also alleges that in each of those years, she received scholarship funds and borrowed significant sums in loans from the federal government.  Am. Compl. ¶¶ 29, 36.  And she alleges that she borrowed additional sums in the form of private Tuition Answer Loans – the NCT Loan and the Citibank Loan – which are the loans at issue here.  Am. Compl. ¶¶ 30, 37.

A review of the Amended Complaint also shows that Ms. Golden alleges that during the 2006-07 academic year, in light of her federal student loans, scholarships, and grants, "the NCT Loan was originated in excess of the published 'cost of attendance,'" and for that reason, "was not a qualified education loan under section 523(a)(8)(B)."  Am. Compl. ¶ 30.  And she claims that the NCT Loan "was not 'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or party by' a non-profit[ ] and thus was not non-dischargeable under section 523(a)(8)(A)(i)."  Am. Compl. ¶ 34.

And Ms. Golden alleges that during the 2007-08 academic year, at the time the Citibank Loan was originated, she "already had exceeded the Cost of Attendance in loans and scholarship/grants."  Am. Compl. ¶ 36.  As a result, she alleges, the Citibank Loan was "originated in excess of the published 'cost of attendance' and [was] not [a] qualified education loan[] as that term is defined in section 523(a)(8)(B)."  Am. Compl. ¶ 37.

For these reasons, based on the allegations of the Amended Complaint, accepting all of the factual allegations as true, and drawing all reasonable inferences in Ms. Golden's favor, the Court finds that the Defendants have not shown that Bankruptcy Code Section 523(a)(8)(B) applies to exclude the loans at issue from the scope of the Discharge Order as a matter of law.

The Court next considers whether the Defendants have shown that Amended Complaint does not state plausible claims because it does not adequately identify the loans at issue, or the role that each of them played in connection with efforts to collect on those loans.

It is fundamental that a defendant is entitled to know the nature of the claim that is asserted against it. It is likewise fundamental that a defendant is entitled to the dismissal of a claim that is implausible on its face. But a complaint is not the same as a closing argument, and at the pleading stage of an action, a plaintiff must plead, but not yet prove, its claims.

Here, a review of the Amended Complaint shows that Ms. Golden's allegations identify the loans at issue – the NCT Loan and the Citibank Loan – with sufficient specificity for the Defendants to discern their identity. As to the NCT Loan, the Amended Complaint states that she "borrowed an additional $7,103 on September 28, 2006 in private loans from National Collegiate Trust." Am. Compl. ¶ 30. That is, she identifies the amount of the loan, the date that the loan was made, and the lender.

Similarly, as to the Citibank Loan, the Amended Complaint states that during the 2007-08 academic year, Ms. Golden "borrowed an additional . . . $9,348 [from] Citibank." Am. Compl. ¶ 37. It further states that "[t]he Citibank Loan was subsequently sold to Defendant GoldenTree Asset Management on or about October 24, 2015, which was later securitized into the GS2 Trust." Am. Compl. ¶ 37 n.1. That is, she identifies the amount of the loan, the time period in which the loan was made, and the lender.

In addition, Ms. Golden alleges that the loans at issue are "properly listed on Schedule F." Am. Compl. ¶ 40. Specifically, the Amended Complaint states "[Ms.] Golden properly listed on Schedule F certain 'student loans' owed, including 'AES/Jpmgn ch,' 'FM/slfv tru,'

'AES/NCT', which represented the loans that were made in excess of Penn's Cost of Attendance for the two relevant academic years." *Id*.

And as to collection efforts, a review of the Amended Complaint shows that Ms. Golden's allegations identify the actions of the Defendants that violated the Discharge Order entered in her case with sufficient specificity for the Defendants to know the nature of their asserted actionable conduct. The Amended Complaint states that "[o]n or about August 3, 2016, this Court issued a discharge order in [Ms.] Golden's bankruptcy proceeding," and two days later, "[o]n or about August 5, 2016, all creditors received notice of discharge." Am. Compl. ¶¶ 42-43. And Ms. Golden alleges "instead of treating the Debts as discharged (because they were unsecured debt that was discharged in bankruptcy and not properly contested), Defendants, by and through themselves and their agents, resumed collection efforts after the discharge entered, and fraudulent informed the debtor that the Debts were not discharged and demanded payment and accepted payment." Am. Compl. ¶ 44. She also alleges that despite the entry of the Discharge Order, "Defendants nonetheless sought to collect on the Debts by use of dunning letters, emails, text messages, and phone calls [to] recover the discharged debt." Am. Compl. ¶ 75.

For these reasons, based on the allegations of the Amended Complaint, accepting all of the factual allegations as true, and drawing all reasonable inferences in Ms. Golden's favor, the Court finds that the Defendants have not shown that the Amended Complaint does not state plausible claims because it does not adequately identify the loans at issue, or the role that each of them played in connection with efforts to collect on those loans.

Finally, the Court considers whether the Defendants have shown that the Amended Complaint does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b).

Rule 9(b) establishes a heightened pleading standard for claims that sound in fraud. Rule 9(b) provides that in order to allege a claim for fraud, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To allege with particularity a claim for fraud, the Second Circuit has held that "'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, a review of the Amended Complaint shows that Ms. Golden asserts claims for a declaratory judgment for violations of the Discharge Order, and for related relief. In describing the context of these claims, she alleges that "unscrupulous creditors" took steps "to defraud vulnerable and unsophisticated student borrowers." Am. Compl. ¶ 24. The Amended Complaint also states that "[t]he loans at issue here are disproportionately issued to low-income students who lack the resources and knowledge to understand the differences between loans that are or not dischargeable or to seek relief in an adversary proceeding." *Id.* And Ms. Golden contrasts the Defendants' communications with consumers such as herself with statements made by "Defendants and other major lenders and underwriters . . . in student loan asset-backed securities' prospectuses . . . expressly warning investors that pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge." Am. Compl. ¶ 25.

But Ms. Golden's claims asserted in the Amended Complaint are claims for a declaratory judgment that her Tuition Answer Loans are not excluded from discharge under any subsection of Bankruptcy Code Section 523(a)(8), including Section 523(a)(8)(B), and for violations of the

Discharge Order entered in her bankruptcy case.  They are not claims for fraud, and they do not invoke the heightened pleading standard of Rule 9(b).

For these reasons, the Court finds that the Defendants have not shown that Ms. Golden states claims that invoke Rule 9(b)'s heightened pleading standard for fraud, or that Rule 9(b) requires the dismissal of these claims.

In sum, while it is far from clear whether Ms. Golden can prove her allegations, that question is not before the Court on these Motions to Dismiss.  Rather, the question posed by these motions is whether Ms. Golden's claim for a declaratory judgment that her Tuition Answer Loans were discharged in her bankruptcy case is rendered implausible by any of the grounds advanced by the Defendants.  And here, at this stage in these proceedings, the Court concludes that the Defendants have not established that this claim is implausible.  For these reasons, the Motions to Dismiss the First Claim for Relief are denied.

## *Whether the Defendants Have Shown that Ms. Golden's Second Claim for Relief Should Be Dismissed*

Ms. Golden's second claim for relief seeks an award of damages and attorneys' fees and costs for the Defendants' willful violations of the discharge injunction pursuant to Bankruptcy Code Sections 524 and 105.  Am. Compl. ¶ 76.

Bankruptcy Code Section 524(a)(2) states that "[a] discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  As one court recently observed, "[b]ankruptcy without the discharge is like a car without an engine; a useful tool rendered ineffective."  *Roth v. Butler University (In re Roth)*, 594 B.R. 672, 677 (Bankr. S.D. Ind. 2018).  In order to state a claim that a creditor violated Bankruptcy Code Section 524(a)(2),

51

a plaintiff must allege that the debtor received a discharge, the defendant received a notice of the discharge, and the defendant intended the acts that violated the discharge.

The Defendants argue that Ms. Golden's claim that they violated the Discharge Order should be dismissed for several reasons, including for the same reason that her first claim for relief should be dismissed – namely, that her Tuition Answer Loans were not discharged in her bankruptcy case. The Defendants also argue that Ms. Golden can recover damages for discharge injunction violations only through a claim for contempt of court, not the claim that she has brought here. And the Defendants argue that for a contempt claim to lie, the order at issue must be clear and unambiguous, and here, the Discharge Order is not. For these reasons, the Defendants argue that Ms. Golden's allegations cannot support a claim for what amount to contempt sanctions against the Defendants.

Ms. Golden responds that the argument that there is no private right of action to address a discharge violation through an adversary proceeding is "a red herring." Plf's Opp. at 32. Additionally, she states that the Defendants argue that the Court's Discharge Order is "too vague to support a contempt finding," but if the Defendants are correct in this assertion, then "there could never be a contempt of a discharge order because every discharge order is vague." Plf's Opp. at 33-34.

Ms. Golden also responds that bankruptcy courts have the power to enforce discharge injunctions through adversary proceedings such as this. She argues that "[t]here is no question that bankruptcy courts have the power to enforce discharge injunctions regardless of any specified private right of action," and "there is no question that this is a proper action to address the alleged discharge injunction violations." Plf's Opp. at 32-33. And she states that the argument that the Court's Discharge Order is too vague to support a contempt finding is simply

incorrect and would, in substance, strip the Court's power to enforce its own discharge orders. She also responds that the Defendants knew that her Tuition Answer Loans would be discharged, as indicated by, among other things, their statements to investors.

At the outset, the Court considers whether an adversary proceeding is a permissible means to seek redress for a claimed violation of the discharge order entered in a debtor's bankruptcy case. Here, the Court is persuaded that an adversary proceeding is a permissible path to seek this relief, for several reasons.

First, a bankruptcy court may "issue any order, process, or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105. Accordingly, a bankruptcy court may issue a judgment, which is "a form of relief that is the result of an adversary proceeding, not the result of a motion," to enforce its statutory contempt powers and effectuate compliance with 11 U.S.C. § 524(a). *In re Anderson*, 550 B.R. 228, 240 (S.D.N.Y. 2016) (concluding that "an adversary proceeding is an appropriate vehicle to enforce a discharge injunction").

Second, and as another bankruptcy court has reasoned, to dismiss this case because the debtor seeks relief through an adversary proceeding rather than by motion would "elevate form over substance [as] an adversary proceeding provides [the Defendants] with more, not less, procedural protection" than would a motion for contempt. *West v. Home Sav. & Loan (In re West)*, 2015 WL 3962569, at *3 (Bankr. N.D. Ohio June 29, 2015).

Notably, this Court's decision in *In re McKenzie-Gilyard*, 388 B.R. 474 (Bankr. E.D.N.Y. 2007), cited by the Defendants, is consistent with this conclusion. There, the plaintiff made claims for violation and contempt of the discharge injunction, and the Court noted that "[a]

plaintiff may bring a claim for a violation of the discharge injunction in the form of an action for a sanction for civil contempt." *In re McKenzie-Gilyard*, 388 B.R. at 481.

But that is not the same as a finding that a claim for a discharge injunction violation may *only* be brought as a motion for contempt. Many courts have considered requests for damages for discharge injunction violations in the form of adversary proceedings, including courts in this District and Circuit. *See, e.g.*, *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *9 (Bankr. S.D.N.Y. July 22, 2014) (denying to dismiss an adversary proceeding alleging discharge violation on behalf of the plaintiff and alleged nationwide class); *Torres v. Chase Bank USA, N.A.* (*In re Torres*), 367 B.R. 478, 491 (Bankr. S.D.N.Y. 2007) (denying the defendant's motions to dismiss adversary proceedings alleging discharge violations). And whether the claim is styled as one for violation of the Discharge Order – as it is in the Amended Complaint – or as one for contempt for violation of the Discharge Order, Ms. Golden will be required first to plead, and then to prove, the grounds for her entitlement to relief.

Next, the Court considers whether the Court's Discharge Order is too vague to support a claim for relief. Here again, the Court is persuaded that the Discharge Order is not too vague to provide a basis for Ms. Golden's claim for relief, for several reasons. Such orders, and the Discharge Order here, are plain and unambiguous. To be sure, a proceeding arising from an alleged discharge violation may well raise a host of issues. As one noted commentator observes, "[a] proceeding to enforce the discharge injunction is a core proceeding . . . and courts should readily reopen a closed bankruptcy case to ensure that the essential purposes of the discharge are not undermined." 4 *Collier on Bankruptcy* ¶ 524.02[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2018). And in such proceedings, "[o]ften, a major issue . . . is whether the debt is

one that was discharged." *Id.* But that does not mean that the discharge injunction generally, or the Discharge Order here, is somehow vague.

And finally, the Court considers whether the elements of a discharge violation have been adequately set forth in the Amended Complaint. In order adequately to allege a claim for violations of the discharge injunction, the plaintiff must allege that he or she received a discharge, the defendant received notice of the discharge, and the defendant intended the acts that violated the discharge. *In re Motichko*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008). And the debt at issue must be within the scope of the debtor's discharge. As one court noted, "[s]howing a violation of a discharge order by definition requires showing specifically that the order applies to the debt on which the violation is premised." *In re Azevedo*, 506 B.R. at 283. *See In re Eppolito*, 583 B.R. at 826; *In re Otten*, 2013 WL 1881736, at \*6-8.

Here, the record shows that Ms. Golden alleges that she received a discharge. In particular, the Amended Complaint states that on February 29, 2016, Ms. Golden filed a Chapter 7 bankruptcy case and "properly listed on Schedule F certain 'student loans' owed". Am. Compl. ¶¶ 39, 40. The Amended Complaint also states that "[o]n or about August 3, 2016, this Court issued a discharge order in Golden's bankruptcy proceeding," and that "[t]he Debts were discharged pursuant to the Discharge Order entered by this Court on August 3, 2016 because they were unsecured consumer loans and not non-dischargeable student loans under section 523(a)(8)." Am. Compl. ¶¶ 42, 73. And as the Court has already concluded, Ms. Golden has described facts that establish a plausible basis to conclude that her Tuition Answer Loans are not excluded from discharge by operation of Bankruptcy Code Section 523(a)(8).

The record also shows that Ms. Golden alleges that the Defendants received notice of the discharge in her case. Specifically, she alleges that "[o]n or about August 5, 2016, all creditors

received notice of discharge," and "Defendants were notified of the Discharge Order pursuant to Federal Rule of Bankruptcy Procedure 4004(g)."  Am. Compl. ¶¶ 43, 74.  And the Amended Complaint states that "[n]one of the Defendants filed an adversary proceeding to contest discharge of the Debts, although it was their legal burden to do so."  Am. Compl. ¶ 43.

And finally, the record shows that Ms. Golden alleges that the Defendants intended the acts that violated the discharge.  In particular, Ms. Golden alleges:

> instead of treating the Debts as discharged (because they were unsecured debt that was discharged in bankruptcy and not properly contested), Defendants, by and through themselves and their agents, resumed collection efforts after the discharge entered, and fraudulently informed [Ms. Golden] that the Debts were not discharged and demanded payment and accepted payment.

Am. Compl. ¶ 44.  And she alleges that "Defendants nonetheless sought to collect on the Debts by use of dunning letters, emails, text messages, and phone calls [to] recover the discharged debt in violation of 11 U.S.C. § 524."  Am. Compl. ¶ 75.

Ms. Golden alleges that "[d]uring the same time that lenders were telling consumers that their loans were non-dischargeable, Defendants and other lenders were securitizing these debts for sale on the secondary market," and making very different statements to investors.  Am. Compl. ¶ 25.  The Amended Complaint states:

> Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations. Defendants and other major lenders and underwriters . . . thereafter included in student loan asset-backed securities' prospectuses language expressly warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.

Am. Compl. ¶ 25.

In sum, and as with Ms. Golden's first claim for relief, the question posed by these motions is whether Ms. Golden has stated a plausible claim that the Defendants violated the

Discharge Order entered in her case.  And here again, at this stage in these proceedings, the Court concludes that the Defendants have not established that this claim is implausible.  For these reasons, the Motions to Dismiss the Second Claim for Relief are denied.

**<u>Conclusion</u>**

Based on the entire record and for the reasons stated herein, the Court finds that the Defendants have not shown that the Plaintiff, Tashanna Golden, has not stated plausible claims for relief.  For these reasons, the Defendants' Motions to Dismiss are denied.

An order in accordance with this Memorandum Decision will be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**January 31, 2019**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**