Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Golden,<br><br>                        Debtor. | **Chapter 7**<br><br>**Case No. 16-40809 (ESS)** |
| Tashanna B. Golden<br>f/k/a Tashanna B. Pearson,<br><br>                        Plaintiff,<br>        v.<br><br>National Collegiate Student Loan Trust 2006-4, GS2 2016-A, Pennsylvania Higher Education Assistance Authority, Firstmark Services,<br><br>                        Defendants. | **Adv. Proc. No. 17-1005 (ESS)** |

**PLAINTIFF TASHANNA B. GOLDEN'S SECOND REQUEST**
**FOR PRODUCTION OF DOCUMENTS TO**
**DEFENDANT NATIONAL COLLEGIATE STUDENT LOAN TRUST 2006-4, et. al.**

Pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26 and 34, which Federal Rules of Bankruptcy Procedure 7026 and 7034 incorporate into this adversary proceeding, Plaintiff Tashanna B. Golden on behalf of herself and all others similarly situated requests that Defendant National Collegiate Student Loan Trust 2006-4 respond to these requests for production of documents (each, a "Request" collectively, "Requests"), separately and fully, subject to the Instructions and Definitions set forth herein, and pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure. Defendant shall serve their responses and produce for inspection and copying, the documents requested herein at the offices of the counsel listed below.

# I.    INSTRUCTIONS

1.      Unless indicated otherwise, the relevant time period for these Requests is from January 1, 2003 to present.

2.      These Requests call for the production of all responsive Documents in your possession, custody or control without regard to the physical location of such documents.

3.      For the purposes of reading, interpreting, or construing the scope of these Requests, the terms used shall be given their most expansive and inclusive interpretation. This includes, without limitation the following:

      a.      Wherever appropriate herein, the singular form of a word shall be interpreted as plural and vice versa.

      b.      "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope hereof any information (as defined herein) which might otherwise be construed to be outside the scope of these discovery Requests.

      c.      "Any" shall be understood to include and encompass "all" and vice versa.

      d.      Wherever appropriate herein, the masculine form of a word shall be interpreted as feminine and vice versa.

      e.      "Including" shall mean "including without limitation."

4.      If you are unable to answer or respond fully to any document Request, answer or respond to the extent possible and specify the reasons for your inability to answer or respond in full. If the recipient has no documents responsive to a particular Request, the recipient shall so state.

5.      Each Request shall be construed independently and not by reference to any other Request for the purpose of limitation.

6.      In producing Documents, if the original of any Document cannot be located, a copy shall be produced in lieu thereof, and shall be legible and bound or stapled in the same manner as the original.

7.      Any copy of a Document that is not identical shall be considered a separate Document.

8.      If any requested Document cannot be produced in full, produce the Document to the extent possible, specifying each reason for your inability to produce the remainder of the Document stating whatever information, knowledge or belief which you have concerning the portion not produced.

9.      If any Document requested was in Defendants' possession or control, but is no longer in its possession or control, state what disposition was made of said Document, the reason for such disposition, and the date of such disposition.

10.     If any Documents requested were at any one time in existence but are no longer in existence, then so state, specifying for each Document (a) the type of document; (b) the types of information contained thereon; (c) the date upon which it ceased to exist; (d) the circumstances under which it ceased to exist; (e) the identity of all person having knowledge of the circumstances under which it ceased to exist; and (f) the identity of all persons having knowledge or who had knowledge of the contents thereof and each individual's address.

11.     All Documents shall be produced in the same order as they are kept or maintained by you in the ordinary course of business.

12.     You are requested to produce all drafts and notes, whether typed, handwritten or otherwise, made or prepared in connection with the requested Documents, whether or not used.

13.     Documents attached to each other shall not be separated.

14.    Documents shall be produced in such fashion as to identify the department, branch or office in whose possession they were located and, where applicable, the natural person in whose possession they were found, and business address of each Document's custodian(s).

15.    If any Document responsive to a Request is withheld, in all or part, based upon a claim of privilege or protection, whether based on statute or otherwise, state separately for each Document, in addition to any other information requested: (a) the specific Request which calls for the production; (b) the nature of the privilege claimed; (c) its date; (d) the name and address of each author; (e) the name and address of each of the addresses and/or individual to whom the Document was distributed, if any; (f) the title (or position) of its author; (g) type of tangible object, e.g., letter, memorandum, telegram, chart, report, recording, disk, etc.; (h) its title and subject matter (without revealing the information as to which the privilege is claimed); and (i) with sufficient specificity to permit the Court to make full determination as to whether the claim of privilege is valid, each and every fact or basis on which you claim such privilege.

16.    If any Document requested herein is withheld, in all or part, based on a claim that such Document constitutes attorney work product, provide all of the information described in Instruction No. 15 and also identify the litigation in connection with which the Document and the information it contains was obtained and/or prepared.

17.    Plaintiff does not seek and does not require the production of multiple copies of identical Documents.

18.    This Request is deemed to be continuing. If, after producing these Documents, you obtain or become aware of any further information, Documents, things, or information responsive to this Request, you are required to so state by supplementing your responses and producing such additional Documents to Plaintiff.

## II.    DEFINITIONS

1.    All words defined in **Local Rule 26** and any applicable **Bankruptcy Court rules** shall have their defined meaning.

2.    The term "**Action**" refers to the above entitled and numbered cause.

3.    The term "**Bankruptcy**" shall mean any proceeding initiated under Title 11 of the United States Code.

4.    The terms "**communication**," "**communicate**," and "**communicated**" shall mean any oral, written, or recorded utterance, notation, or statement of any nature whatsoever, by and to whomsoever made, including, but not limited to, correspondence, e-mails, text messages, conversations, facsimiles, letters, telegrams, cables, telexes, dialogues, discussions, negotiations, interviews, consultations, telephone calls, agreements, and other understandings, among two or more persons. The term "**communication**" includes written summaries of any of the foregoing communications.

5.    The term **"document"** shall mean all writings of any sort and should be construed in its broadest sense to include, but not be limited to, all original and non-identical copies, whether by reason of marginalia or other notes or alterations, and all preliminary or subsequent drafts (each draft, non-identical copy, or marked version being a separate document) of the following items, whether printed or recorded or reproduced by any other mechanical or electronic process, or written or produced by hand: agreements, communications, including intercompany and intracompany communications, correspondence, emails, facsimiles, letters, telegrams, cables, telexes, memoranda, records, books, journals, summaries of records or papers, graphs, charts, maps, sketches, plans, drawings, blueprints, diagrams, tables, indices, pictures, recordings, tapes, accounts, analytical records, memoranda of telephone calls, minutes or records of meetings or conferences, reports, notes, minutes or summaries of interviews, conversations,

telephone calls, conferences, negotiations, meetings, investigations, opinions or reports of consultants, appraisals, reports or summaries of negotiations, brochures, bulletins, pamphlets, circulars, advertising literature, trade letters, press releases, contracts, notes, codes as well as other devices to decipher abbreviations or other notations, computer printouts, analytical records, diaries, forecasts, photographs, photocopies, recordings, tape recordings, motion picture films, graphs, note charts, notebooks, Documents generated for or as a result of meetings, lists of persons attending meetings, newspaper articles, mailing lists, contracts, drafts, notes, marginal comments appearing on or affixed to any Document, calendars, day timers, date books, messages, letters of credit, financial statements, invoices, statements of account, receipts, promissory notes, security agreements, deeds of trust, instruments purporting to grant or evidencing any security interest or lien, loan agreements, credit and debit memoranda, drafts, projections, working papers, securities ledgers, canceled checks and drafts (front and back), check stubs, receipts, and other Documents, papers or writings of whatever description including, but not limited to, any information contained in any computer or information retrieval device.

If any such Document was, but no longer is, in your possession or subject to your control, state:

      a.      the disposition made of the Document, including the identity of the person who received the Document;

      b.      the reasons for the disposition; and

      c.      the date thereof.

6.      The term "**Complaint**" means Plaintiff's Complaint filed in this Action on January 8, 2017.

7.      The term "**Cost of Attendance**" shall have the same meaning as found in IRC 221(d) and 20 U.S.C. 1087*ll.*

8.      The term "**Direct-to-Consumer**" means any loan program that lends or lent money directly to students.

9.      The term "**First Marblehead**" shall mean the Massachusetts corporate entity that bore that name between 2000 and 2008.

10.      The term "**Investor Presentation**" shall mean any Document provided by You to potential, existing or former investors, stockholders, purchasers or investors in SLABS Trusts sponsored by You.

11.      The term "**Loans**" shall mean the Private Education Loans identified in the Complaint as the subject of this lawsuit.

12.      The term "**NCSLTs**" shall mean each and every National Collegiate Student Loan Trust, including without limitation: National Collegiate Student Loan Master Trust, National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2, National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-1, National Collegiate Student Loan Trust 2006-2, National Collegiate Student Loan Trust 2006-3, National Collegiate Student Loan Trust 2006-4, National Collegiate Student Loan Trust 2007-1, National Collegiate Student Loan Trust 2007-2, National Collegiate Student Loan Trust 2007-3, National Collegiate Student Loan Trust 2007-4.

13.      The term "**Originating Bank**" shall mean any and all of the financial institutions who originated the Loans that were securitized into the NCSLTs.

14.      The term "**Private Loan**" shall mean any loan product held by You that is not insured or guaranteed by the federal government, and that was made to any natural person ostensibly for educational purposes.

15.     The term "**Plaintiff**" means Tashanna Golden.

16.     The term "**PHEAA**" shall mean Defendant the Pennsylvania Higher Education Assistance Authority.

17.     The term "**Qualified Education Loan**" shall have the same meaning as found in Internal Revenue Code 221(d), as incorporated into the Bankruptcy Code in 11 U.S.C. 523(A)(8)(B).

18.     The term "**Servicing Guideline Agreements**" shall mean any written agreement set by the Loan owners and held by You related to how to service the Loan owners' loan products, and/or provide information to a customer, and/or communicate with a customer, and/or collect money on Loans.

19.      The term "**TERI**" shall mean The Educational Resources Institute, Inc.

20.     The term "**Transworld**" shall mean the Georgia corporate entity Transworld Systems Inc.

21.     The term "**Truth In Lending Disclosure Statement**" shall mean those forms required to be provided to consumers pursuant to the Truth In Lending Act, 15 U.S.C. § 1631 *et. al.*

22.     The term "**Trust Related Agreements**'" shall mean all the documents— including documents redacted or withheld from public disclosure as confidential—assembled and presented to investors and any government regulators at the time of the closing of an NCSLT, including but not limited to trust agreements, administration agreements, servicing agreements, and indentures, which provide a structure that includes but is not limited to an Owner Trustee, Administrator, Indenture Trustee, Primary Servicer, Special Servicer and Sub-servicers.

23.      The terms "**You**," "**Your**," or "**Defendant**" shall mean any and all of the NCSLTs in this action including all subsidiaries, or parent corporations, affiliates, present and former agents, employees, representatives, servants, officers, task force officers, attorneys, consultants, investigators, individuals, and entities acting on behalf or pursuant to your direction.

24.      The term "**Write-off**" shall mean the process by which a financial institution removes an asset from its ledger after determining that it is valueless or uncollectable.

### III.      PRIVILEGED OR PROPRIETARY DOCUMENTS

If any document requested is withheld on the basis of any claim of privilege or work product, or otherwise, you are requested to submit a description of the withheld material or information pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure which Federal Rule of Bankruptcy Procedure 7026 incorporates into this adversary proceeding.

### IV.      LOST OR DESTROYED DOCUMENTS

If any document requested has been lost, discarded, or destroyed, you are requested to submit a written statement no later than the date of the commencement of the document production, identifying as completely as possible each such document so lost, discarded, or destroyed. Identification of each such document shall include the date of disposal, manner of disposal, reason for disposal, persons authorizing the disposal, persons having knowledge of the disposal, and persons disposing of the document.

### V.      RELEVANT TIME PERIOD

Unless otherwise indicated, the relevant time period for all requests is from January 1, 2003 to the present (the "Relevant Period"). Documents created prior to January 1, 2003 that are otherwise responsive and that have been examined, consulted, or used in any way in relation to the subject matter of this Action shall be deemed responsive to these Requests and shall be produced.

## VI.    DOCUMENTS REQUESTED

**REQUEST FOR PRODUCTION NO. 1:**

Trust Related Agreements for each and every one of the NCSLTs.

**REQUEST FOR PRODUCTION NO. 2:**

Documents related to TERI's bankruptcy, and any effect of TERI's bankruptcy on the NCSLTs, including without limitation the voiding of any TERI guarantee, and any money refunded by TERI to First Marblehead, the NCSLTs, or any Originating Bank during TERI's bankruptcy proceedings in the District of Massachusetts.

**REQUEST FOR PRODUCTION NO. 3:**

Servicing Guideline Agreements for Private Loans that You provide to PHEAA, Transworld, or any other servicing or collections entity.

**REQUEST FOR PRODUCTION NO. 4:**

For each of the NCSLTs, contracts or agreements related to Private Loans, including but not limited to contracts and agreements between:

i.   The Private Loan originator and any depositor or sponsor of the loans, including but not limited to National Collegiate Funding LLC;

ii.  the Private Loan sponsor or depositor – including but not limited to National Collegiate Funding LLC – and You of any other NCSLT;

iii.  You or any other NCSLT and any servicer of the Private Loans, including but not limited to PHEAA or Firstmark LLC;

iv.  You or any other NCSLT and any investor who was being offered or purchased an interest in any trust containing the Private Loans or any person who a note or bond from the trust;

v.  You or any other NCSLT and any guarantor of the Private Loans, including but not limited to TERI;

vi.  You or any other NCSLT and any trustee of a trust containing Private Loans, including but not limited to Wilmington Trust Company;

vii.  any indentured trustee and any other party related to the Private Loans;

viii.  You or any other NCSLT and any trust administrator, including but not limited to GSS Data Services and First Marblehead Data Services;

viv.  any servicer and any other entity regarding the Private Loans, including any assignments of interests in those agreements to any other entity.

## REQUEST FOR PRODUCTION NO. 5:

A list of customers with Private Loans who have sought bankruptcy relief under Title 11 since April 20, 2005, including information sufficient to identify:

i.  The name, address, and contact information for each customer;

ii.  The loan number for each and every Federal Education Loan and Private Loan associated with that customer;

iii.  the name of the Loan owner of each and every Federal Education Loan and Private Loan associated with that customer;

iv.  the total disbursement amount for each Federal Education Loan and Private Loan;

v.     the disbursement date for each Federal Education Loan and Private Loan;

vi.    the total outstanding balance of each Federal Education Loan and Private Loan;

vii.   the total outstanding interest of each Federal Education Loan and Private Loan;

viii.  the total outstanding fees and penalties related to each Federal Education Loan and Private Loan;

ix.    the date of the customer's bankruptcy filing;

x.     the date of the customer's discharge;

xi.    the chapter of Title 11 under which the customer sought relief;

xii.   the amount of money collected on each Federal Education Loan and Private Loan since the date of discharge;

xiii.  the total number of all collection attempts made against the customer since the date of his or her discharge, including phone calls, letters, text messages; e-mails.

## REQUEST FOR PRODUCTION NO. 6:

Documents relating to the origination process for the Private Loans, including whether the Originating Bank made any determination as to the Cost of Attendance prior to approving a Private Loan application.

## REQUEST FOR PRODUCTION NO. 7:

Documents related to the process by which Private Loans are certified by any Title IV school, including but not limited to:

i.     how such school certification is obtained;

ii.    the significance of such school certification, including in relation to borrowing amounts or any other decisions related to the Private Loans;

iii.   any audits or other confirmation done by You in relation to school certifications;

   iv.  any communication between You and any school regarding certification of a Private Loan.

**REQUEST FOR PRODUCTION NO. 8:**

  Contracts or agreements related to Your and any other NCSLT's relationship with TERI, including but not limited to the guarantee agreement and any related or incorporated guidelines, including the Underwriting Origination and Loan Term Guidelines and any related appendices or schedules.

**REQUEST FOR PRODUCTION NO. 9:**

  Documents related to the process of issuing tax form 1099s to any borrower, including but not limited to the determination of which borrowers should receive those forms.

**REQUEST FOR PRODUCTION NO. 10:**

  Documents related to any report, presentation, disclosure or other communication with any investor or potential investor in any trust containing Private Loans, including but not limited to any documents that address possible discharge of the Private Loan in bankruptcy, Private Loan certification or Cost of Attendance.

**REQUEST FOR PRODUCTION NO. 11:**

  Documents related to TERI's relationship with First Marblehead, including any contracts, agreements or other documents related to any profits realized by TERI in connection with the Private Loans and any monetary transfer related to the Private Loans between TERI and First Marblehead.

Dated this 15th day of November, 2018

<div style="margin-left: 40%;">

Respectfully submitted,

By:    /s/ Adam R. Shaw           
**BOIES SCHILLER FLEXNER LLP**
George F. Carpinello
Adam R. Shaw
Robert C. Tietjen
30 South Pearl Street
Albany, New York 12207
(518) 434-0600

Austin C. Smith
**SMITH LAW GROUP**
3 Mitchell Place
New York, NY 10017
917-992-2121

Lynn Swanson
**JONES SWANSON HUDDELL
& GARRISON LLC**
Pan-American Life Center
601 Poydras Street
New Orleans, Louisiana 70130
(504) 523-2500

**ATTORNEYS FOR PLAINTIFF**

</div>