UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>　　　　　　　Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>　　　　　　　Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN and REEHAM YOUSSEF on behalf of themselves and all others similarly situated<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>　　　　　　　Defendants. | Adv. Pro. No. 17-1085 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................................ii-ix

INTRODUCTION ....................................................................................................................1

STATEMENT OF FACTS ........................................................................................................3

ARGUMENT ............................................................................................................................14

I.  THE PROPOSED CLASSES ...........................................................................................14

II.  THE PLAINITFFS SATISFY THE STANDARDS FOR CLASS CERTIFICATION ....15

    A.  Rule 23(a) Standards are Met  ...............................................................................16

    B.  The Proposed Class Satisfies Rule 23(b)(2)  .........................................................27

    C.  The Proposed Class Satisfies Rule 23(b)(3) .........................................................27

    D.  Constitutionally Sound Notice can be Provided to Class Members .....................36

    E.  This Court Has Jurisdiction to Adjudicate a National Class and Should Exercise That Jurisdiction.....................................................................................................37

    F.  The Court Should Appoint Boies Schiller Flexner, LLP; The Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC; and Fishman Haygood, LLP as Class Counsel..........................................................................................................47

CONCLUSION..........................................................................................................................48

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alderwoods Group, Inc. v. Garcia*,
   682 F.3d 958 (11th Cir. 2012) ........................................................................... 45, 46

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   — U.S. —, 133 S. Ct. 1184 (2013) .......................................................................... 16

*Anchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................. 28

*Ass'n Against Discrimination Employment, Inc. v. City of Bridgeport*,
   647 F.2d 256 (2d Cir. 1981) .................................................................................... 26

*Audet v. Fraser*,
   332 F.R.D. 53 (D. Conn. 2019) ............................................................................... 24

*Bank United v. Manley*,
   273 B.R. 229 (N.D. Ala. 2001) ............................................................................... 37

*Bessette v. Avco Financial Services, Inc.*,
   230 F.3d 439 (1st Cir. 2000) ................................................................................... 42

*Bolanos v. Norwegian Cruise Line Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ............................................................................ 20

*Brooklyn Ctr. for Indep. of the Disabled*,
   290 F.R.D. 409 (S.D.N.Y. 2012). ........................................................................... 22

*Brown v. Kelly*,
   609 F.3d 467 (2d Cir. 2010) .................................................................................... 20

*Butto v. Collecto, Inc.*,
   290 F.R.D. 372 (E.D.N.Y. 2013) ................................................................. 18, 26, 31

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) .................................................................................... 23

*Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*,
   729 F.3d 108 (2d Cir. 2013) .................................................................................... 28

*Cazares v. Ava Restaurant Corp.*,
   2017 WL 1229727 (E.D.N.Y. March 31, 2017) ............................................... 25, 31

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .................................................................................... 40

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ............................................................... 15

*Cohen v. Westhaven Bd. of Police Commissioners*,
    638 F.2d 496 (2d Cir. 1980)....................................................................... 26

*Cohens v. State of Virginia*,
    19 U.S. 264 (1821)...................................................................................... 39

*Colorado River Water Conservation Dist. v. U. S.*,
    424 U.S. 800 (1976)..................................................................................... 39

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass.1998) ............................................................... 35, 36

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)........................................................................ 17

*Crocker v. Navient Solutions, LLC (In re Crocker)*,
    941 F.3d 206 (5th Cir. 2019) ............................................... 44, 45, 46, 47

*D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) .............................................................. 30

*Ebin v. Kangadis Food Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) .............................................................. 28

*Erica P. John Fund, Inc. v. Haliburton*,
    — U.S. —, 131 S. Ct. 2179 (2011)........................................................... 16

*Ferrer v. New York City Dept. of Ed.*,
    2019 WL 2511874 (E.D.N.Y. June 12, 2019) ............................. 15, 17, 20

*Flores v. Anjost Corp.*,
    284 F.R.D. 112 (S.D.N.Y. 2012) ......................................................... 23, 30

*Fonseca v. Dircksen & Talleyrand Inc.*,
    No. 13 Civ. 5124, 2015 WL 5813382 (S.D.N.Y. Sept. 28, 2015) ....................... 23, 30

*Fox v. Cheminova*,
    213 F.R.D. 113 (E.D.N.Y. 2003) .............................................................. 30

*Grey v. Petroseed Inc.*,
    985 F. Supp. 625 (D. S.C. 1996)............................................................... 38

*Harte v. Ocwen Fin. Corp.*,
  2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018)...................................................................... 22, 25

*Hasemann v. Gerber Products Co.*,
  2019 WL 2250687 (E.D.N.Y. M.J. Feb. 20, 2019) ................................................................. 28

*In re Agent Orange Prod. Liab. Litig., MDL No. 381*,
  818 F.2d 145 (2d Cir. 1987)................................................................................................ 30

*In re Air Cargo Shipping Services Antitrust Litig.*,
  2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014)........................................................................ 29

*In re Beck*,
  283 B.R. 163 (Bankr. E.D. Pa. 2002) ................................................................................. 43

*In re Brizinova*,
  565 B.R. 488 (E.D.N.Y. 2017) ............................................................................................ 41

*In re Campbell*,
  547 B.R. 49 (Bankr. E.D.N.Y. 2016).................................................................................... 7

*In re Cano*,
  410 B.R. 506 (S.D. Tex. 2009) ........................................................................................... 37

*In re Cline*,
  282 B.R. 686 (W.D. Wash. 2002)........................................................................................ 43

*In re Digital Music Antitrust Litigation*,
  321 F.R.D. 64 (S.D.N.Y. 2017) .......................................................................................... 24

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009).................................................................................................. 21

*In re Haemmerle*,
  529 B.R. 17 (Bankr. E.D.N.Y. 2015).................................................................................... 33

*In re Harris*,
  280 B.R. 876 (Bankr. S.D. Ala. 2001).................................................................................. 37

*In re Haynes*,
  2014 WL 3608891(Bankr. S.D.N.Y. July 22, 2014) ...................................................... passim

*In re Krause*,
  414 B.R. 243 (S.D. Ohio 2009) ........................................................................................... 37

*In re Latanowich*,
  207 B.R. 326 (Bankr. D. Mass. 1997) .................................................................................. 35

*In re Libor*,
  2018 WL 1229761 (S.D.N.Y. Feb. 28, 2018)........................................................ 29

*In re Noletto*,
  244 B.R. 845(S.D. Ala. 2000)............................................................................. 37

*In re Patrick*,
  344 B.R. 56 (Bankr. M.D. Pa. 2005) ................................................................... 37

*In re Petrobras*,
  862 F.3d 250 (2d Cir. 2017)................................................................. 15, 22, 29

*In re Rojas*,
  No. 09-07003, 2009 WL 2496807 (Bankr. S.D. Tex. Aug. 12, 2009) .............. 37, 40

*In re Sheffield*,
  281 B.R. 24 (Bankr. S.D. Ala. 2000)................................................................... 37

*In re Sims*,
  278 B.R. 457 (Bankr. E.D. Tenn. 2002) .............................................................. 37

*In re Szenes*,
  515 B.R. 1 (Bankr. E.D.N.Y. 2014)..................................................................... 33

*In re Visa Check/MastMoney Antitrust Litigation*,
  280 F.3d 124 (2d Cir. 2001)................................................................. 28, 30, 34

*Johnson v. Nextel Cmmc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015)................................................................. 17, 29, 34

*Kalkstein v. Collecto, Inc.*,
  304 F.R.D. 114 (E.D.N.Y. 2015) ........................................................................ 31

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017) ........................................................................ 28

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014)............................................................................................ 39

*Macarz v. Transword Systems, Inc.*,
  193 F.R.D. 46 (D. Conn. 2000)........................................................................... 26

*Maneely v. City of Newburgh*,
  208 F.R.D. 69 (S.D.N.Y. 2002) .......................................................................... 18

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2nd Cir. 1997)............................................................... 18, 19, 20

*McNamee v. Nationstar Mortgage, LLC*,
  2018 WL 1557244 (S.D. Ohio March 30, 2018) ................................................................. 26

*Merino v. Beverage Plus America Corp.*,
  No. 10 civ. 0706, 2011 WL 3739030 (S.D.N.Y. Apr. 12, 2011)............................................ 16

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................................................... 36

*New Orleans Public Service, Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989)............................................................................................................... 39

*Nicholson v. Williams*,
  205 F.R.D. 92 (E.D.N.Y. Aug. 16, 2001). ............................................................................. 20

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996)............................................................................................................... 39

*Renshaw v. Renshaw*,
  223 F.3d 82 (2d Cir. 2000)..................................................................................................... 23

*Roach v. T.L. Cannon Corp.*,
  778 F.3d 401 (2d Cir. 2015)..................................................................................... 15, 27, 33

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993)................................................................................................... 17

*Roseman v. Bloomberg L.P.*,
  No. 14-CV-2657 (DLC), 2017 WL 4217150 (S.D.N.Y. Sept. 21, 2017)............................... 28

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
  2019 WL 652841 (S.D.N.Y. Feb. 15, 2019)........................................................................... 29

*Sadler v. Midland Credit Mgmt., Inc., No. 06 C 5045*,
  2008 WL 2692274 (N.D. Ill. July 3, 2008)............................................................................ 24

*Schear v. Food Scope America, Inc.*,
  297 F.R.D. 114 (S.D.N.Y. Jan. 10, 2014)........................................................................ 31-32

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
  323 F.3d 32 (1st Cir. 2003).............................................................................................. 24, 31

*State Farm Mutual Auto. Insurance Co. v. Campbell*,
  538 U.S. 408 (2003)............................................................................................................... 33

*Suchanek v. Sturm Foods, Inc.*,
  764 F.3d 750 (7th Cir. 2014) ................................................................................................. 17

*Sykes v. Mel S. Harris and Assoc., LLC*,
    780 F.3d 70 (2d Cir. 2015) ............................................................................. 15, 33

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    546 F.3d 196 (2d Cir. 2008) ................................................................................. 16

*Tropical Sails Corp v. Yext, Inc.*,
    No. 14 Civ. 7582, 2017 WL 1048086 (S.D.N.Y. Mar. 17, 2017) ......................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ......................................................................................... 29

*U.S. Dep't of Health and Human Serv. v. Smith*,
    807 F.2d 122 (8th Cir. 1986) .................................................................................. 6

*U.S. Food Serv. Inc. Pricing Litig.*,
    2011 WL 6013551 (D. Conn. Nov. 29, 2011) ....................................................... 32

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) ................................................................................. 28

*Vick v. NCO Financial Systems, Inc.*,
    2010 WL 1330637 (E.D. Tex. M.J., March, 15, 2010) .......................................... 40

*Walls v. Wells Fargo Bank, NA.*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001) ................................................................. 42

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ....................................................................... 16, 17, 20, 27

*Westchester Ind. Living Ctr., Inc. v. State Univ. of New York*,
    331 F.R.D. 279 (S.D.N.Y. Jun. 12, 2019) ................................................. 19, 20, 22

*Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*,
    609 F.3d 748 (5th Cir. 2010) ............................................................................... 46

**Statutes**

11 U.S.C. § 105 ............................................................................................. 37, 41, 42

11 U.S.C. § 362 ......................................................................................................... 42

11 U.S.C. § 523 ................................................................................................... passim

11 U.S.C. § 524 ................................................................................................... passim

11 U.S.C. § 727 ................................................................................................... 37, 40

18 U.S.C. § 1341 ...................................................................................................... 36

18 U.S.C. § 1345 ................................................................................................ 36

26 U.S.C. § 221 ............................................................................... 2, 11, 12, 14

28 U.S.C. § 157 ................................................................................................ 37

28 U.S.C. § 1334 ................................................................................. 37, 38, 46

**Rules**

Fed. R. Bankr. P. 7023 .................................................................... 37, 44, 48

Fed. R. Civ. P. 23 .................................................................................... passim

Fed. R. Civ. P. 65 ............................................................................................ 41

**Other Authorities**

*2 William B. Rubenstein*, *Newberg on Class Actions § 4:50,*
  (5th ed. 2012) ............................................................................................ 29

*Closing Consumer Bankruptcy's Enforcement Gap,*
  69 Baylor Law Review (2017) .................................................................. 43

*H.R.Rep. No. 595,*
  95th Cong., 2d Sess. 133 .............................................................................. 6

Catherine M. Sharkey, *The Future of Classwide Punitive Damages*,
  46 U. Mich. J. K. Reform (2013) .............................................................. 34

Kara Bruce, *The Debtor Class*,
  88 Tul. L. Rev. 21 (2013) .......................................................................... 41

Elizabeth Warren & Jay L. Westbrook, Class Actions for Post-Petition Wrongs: National
  Relief Against National Creditors, Am. Bankr. Inst. J.,
  (March 2003) .............................................................................................. 41

Pursuant to Bankruptcy Rule 7023 and Federal Rule of Civil Procedure 23, Plaintiffs Hilal Homaidan, and Reeham Youssef (collectively "Plaintiffs"), submit this memorandum of law in support of their motion for class certification against Defendants Navient Solutions LLC and Navient Credit Finance Corporation ("Defendants" or "Navient"). Plaintiffs seeks the certification of both an injunctive relief class under Rule 23(b)(2) and a damages class under Rule 23(b)(3).

## INTRODUCTION

This case is straightforward: Defendants collected on student loans that were discharged in bankruptcy. There is no dispute that Plaintiffs borrowed student loans, that Plaintiffs discharged their debts in bankruptcy and that Defendants collected on Plaintiffs' student loans after discharge. The only dispute is whether the student loans were discharged. More specifically, the only dispute is whether the student loans were exempted from discharge under 11 U.S.C. §523(a)(8)(B).

Defendants lend money directly to students under its direct to consumer loan programs. When doing so, Defendants do not limit the loan amounts to the student's cost to attend school. Defendants often loan money in excess of the cost of attendance. If a student later obtains a bankruptcy discharge, Defendants do not check to see if the loan amount was within the student's cost of attendance before trying to collect on that loan after the date of discharge. Defendants are wrongfully collecting on those student loans that exceed the cost of attendance because those loans were discharged in bankruptcy.

It is elemental that completion of the bankruptcy process discharges all debts except for those debts that are specifically exempted from discharge under 11 U.S.C. § 523. A private student loan (*i.e.* non-governmental loan) is specifically exempted from discharge only if it is a "qualified education loan." 11 U.S.C. § 523(a)(8)(B). A student loan is only a "qualified education loan" if

the amount of money borrowed under the loan amount was within the student's cost of attendance at school. 11. U.S.C. § 523(a)(8)(B) and 26 U.S.C. § 221(d). Loans that exceed the cost of attendance are not qualified and are discharged.

The Court should certify an injunctive and damage class because:

- There are thousands of borrowers with loans that exceed the cost of attendance who have been subject to Defendants' collection efforts such that joinder is impracticable;

- The determination of whether the student loans were discharged under 11 U.S.C. § 523(a)(8)(B) and whether Defendants' policy and actions violate the discharge injunction of the Bankruptcy Code, 11 U.S.C. § 524, are common to the class and would drive resolution of the claims of the entire class;

- Plaintiffs' claims are typical of the class's claims because Defendants' actions toward them in collecting on discharged loans are the same as Defendants' actions toward everyone in the class and Plaintiffs make the same arguments as to liability as the class;

- Plaintiffs are fair representatives of the class because they allege the same violation of the law as the class and have no antagonistic interests to the class;

- Plaintiffs' counsel are fair representatives because they are qualified, experienced counsel who are able to conduct the litigation;

- Defendants have continued to treat all its private loans to students who attended Title IV schools as non-dischargeable without regard to the cost of attendance such that a declaration and injunctive relief would benefit the class as a whole;

- Defendants have continued to collect on discharged debts and will continue to do so unless they are enjoined by an injunction that applies to the entire class;

- The factual and legal determination of whether Defendants have a policy of lending and collecting after discharge without regard to the cost of attendance and whether the loans were discharged can be resolved on a class-wide basis; and

- Managing the case in one forum on a class-wide basis is more efficient and easier than managing each class member's case individually.

## STATEMENT OF FACTS

Plaintiffs have brought this adversary proceeding, on behalf of themselves and others similarly situated alleging that Defendants willfully sought to collect and were collecting discharged debts in violation of the discharge injunction found in 11 U.S.C. § 524, and the discharge orders entered in their respective bankruptcy proceedings.

Plaintiffs are among thousands of persons in the United States who have filed bankruptcy pursuant to Chapters 7 and 13 of the U.S. Bankruptcy Code who have been granted orders of discharge by a U.S. Bankruptcy court on previously owed debts to Defendants.  Under federal bankruptcy laws, such an order fully and completely discharges all statutorily dischargeable debts incurred prior to the filing of bankruptcy, except for those that have been:  (1) reaffirmed by the debtor in a reaffirmation agreement; or (2) held by a court to be non-dischargeable in a related proceeding.  Neither of these two exceptions apply to Plaintiffs or the Class Members, whose debts were discharged through bankruptcy.

### Plaintiff Hilal Homaidan

Plaintiff Hilal Homaidan enrolled in Emerson College in the Fall of 2006, but dropped out in the first few weeks.  Nonetheless, on September 12, 2006, Navient gave him a "Tuition Answer loan: in the amount of $6,177 and a second loan for $6,390 on October 6, 2006.  Declaration of Hilal Homaidan, dated December 9, 2019, (thereafter "Homaidan Decl.") at ¶¶ 3 to 7.  Both loans were made outside the financial aid office of Emerson and were not made for qualified educational expenses.  Defendants made no effort to obtain certification from Emerson that either loan was within the cost of attendance or even that Mr. Homaidan was a full-time or part-time student attending a qualified university.  Thus, Defendants did not determine that either loan was a "qualified education loan" as that term is defined in 11 U.S.C. § 523(a)(8)(B).

On December 4, 2008, Mr. Homaidan sought relief under Title 11 in this Court in Case No. 08-48275, *In re Hilal K. Homaidan*. Dkt. No. 1. Mr. Homaidan scheduled the Tuition Answer Loans on Schedule F of his petition. Dkt. No. 11 at Schedule F. On April 9, 2009, this Court ordered discharge of all Mr. Homaidan's properly pre-petition debt. Dkt. No. 21. Defendants were duly notified of the discharge of all of Mr. Homaidan's pre-petition debts. Dkt. No. 22.

Despite the discharge of Mr. Homaidan's Tuition Answer Loans, Defendants advised Mr. Homaidan that his Tuition Answer Loans were not discharged and thereafter engaged the services of various collection firms to attempt to collect on this discharged debt in violation of this Court's discharge order and the Bankruptcy Code. Mr. Homaidan Decl. at ¶ 12. In particular, Defendants sent correspondence and notices to Homaidan demanding repayment of the Tuition Answer Loans on at least August 3, 2010, September 6, 2010, September 8, 2010 and July 5, 2011. *Id*. at ¶ 13. Believing that his debts were not discharged in bankruptcy, Mr. Homaidan paid on his Tuition Answer Loans until they were paid in full in July 2011. *Id*. at ¶ 14.

On April 14, 2017, Mr. Homaidan moved to reopen his bankruptcy case to obtain a determination of the dischargeability of his Tuition Answer Loans (Dkt. Nos. 28 and 30) and on May 26, 2017, the Court entered an order reopening the case. Dkt. No. 31. On June 23, 2017, Mr. Homaidan commenced this adversary proceeding as a putative class action on behalf of himself and others similarly situated seeking a determination that Defendants' loans that are not certified as being within the cost of attendance under § 523(a)(8)(B) are, therefore, dischargeable student loans. Mr. Homaidan also seeks an award of damages including attorney's fees and costs and restitution of all funds obtained by Defendants from collecting on his discharged debts.

**Plaintiff Reeham Youssef**

From 2005 to 2008 Plaintiff Reeham Youssef was a student at Queens College of the City University of New York. The cost of attendance for an in-state student living off campus at Queens College was $16,816 for the academic year of 2005 to 2006; $17,293 for the academic year of 2006 to 2007; and $17,725 for the academic year of 2007 to 2008. Declaration of Reeham Youssef, dated December 9, 2019, (thereafter "Youssef Decl.") at ¶ 3.

During the 2005 to 2006 academic year, Ms. Youssef received a school certified loan of $4,800. During the 2006 to 2007 academic year, Ms. Youssef received a school certified loan of $6,000 and four Tuition Answer Loans from Sallie Mae totaling $31,850. During the 2007 to 2008 academic year, Ms. Youssef received two Tuition Answer Loans totaling $24,150. *Id*. at ¶ 4-6.

Most or all the Tuition Answer Loans Ms. Youssef received exceeded the cost of attendance and, therefore, were not qualified education loans as that term is used as defined in 11 U.S.C. § 523(a)(8)(B). *Id*. at ¶ 7.

On October 29, 2013, Ms. Youssef sought relief under Title 11 in this Court in Case No. 1-13-46495 (ESS) (*In re Reeham Youssef*). Ms. Youssef properly scheduled the Tuition Answer Loans on Schedule F of her petition. Dkt. No. 1.

On February 6, 2014, this Court entered an order discharging all of Ms. Youssef's properly scheduled pre-petitioned debts. Dkt. No. 9.

Also on February 6, 2014, Defendants were duly notified of the discharge of Ms. Youssef's pre-petition debts. Dkt. No. 10. Nonetheless, instead of treating Ms. Youssef's Tuition Answer Loans as discharged, Defendants advised Ms. Youssef that her Tuition Answer Loans were not discharged, demanded repayment from Ms. Youssef on those loans and resumed collection on the loans even though they had been discharged. Youssef Decl. at ¶¶ 11-13.

On October 1, 2019, Ms. Youssef moved to re-open her bankruptcy proceeding (Dkt. No. 11) and to amend the complaint in the above-entitled adversary proceeding. Adv. Pro. Dkt. No. 156. The Court granted the motion to re-open and to amend the complaint herein from the bench on October 16, 2019, *see* Exhibit A to Declaration of George F. Carpinello dated December 11, 2019 (hereinafter "Carpinello Decl."). On December 4, 2019, the Court entered an order re-opening Ms. Youssef's bankruptcy proceeding. *See* Exhibit B to Carpinello Decl. On December 17, 2019, the Court entered an order amending the complaint to add Ms. Youssef as a Plaintiff. *See* Exhibit C to Carpinello Decl.

Like Mr. Homaidan, Ms. Youssef seeks a declaration that the loans were discharged, on injunction prohibiting the collection of the loans and an award of damages including attorney's fees and costs and a restitution of all funds obtained by Defendants from their collections on her discharged debts.

## Defendants' Direct-to-Consumer Loans

For a number of years, Defendants made loans both through institutions of higher education ("School Certified Loans") and directly to consumers who were students at institutions of higher education ("direct-to-consumer loans"). Defendants' primary direct-to-consumer product was called the Tuition Answer Loan. The Tuition Answer Loan required a credit check, most often a cosigner, had interest rates as high as 16%, and most tellingly, bypassed the financial aid process and lent money directly to students.[1] In these ways, the Tuition Answer Loan was more similar to an ordinary consumer loan than an educational loan as that term was used by Congress. "[E]ducational loans are different from most loans. They are made without business considerations, without security, without cosigners, and relying for repayment solely on the debtor's future increased income resulting from the education." *U.S. Dep't of Health and Human*

---

[1] Carpinello Decl., Exhibit D.

*Serv. v. Smith*, 807 F.2d 122, 125 (8th Cir. 1986) (citing H.R.Rep. No. 595, 95th Cong., 2d Sess. 133.); *see also In re Campbell*, 547 B.R. 49, 60 (Bankr. E.D.N.Y. 2016) ("These considerations [as identified in H.R. No. 595] are simply not relevant when the loan at issue is a consumer loan extended by a for-profit actor. Defendants' Bar Loan application describes itself as a 'consumer credit application' and states that 'applications are evaluated through a credit-scoring model' . . . [i]n this way, the Bar Loan differs significantly from government guaranteed loans and conditional grants, which are often made available to students without regard to their credit scores or other underwriting considerations.").

Notably, Navient voluntarily discontinued the Tuition Answer Loan program in the wake of both a New York State and Congressional investigation into illegal kickbacks and deceptive marketing tactics associated with the lending program.[2]  More recently, Navient has been sued by several state attorneys general related to its scheme to use subprime loans—such as the Tuition Answer Loan—as a bait-and-switch to lure students into using Sallie Mae and thereby gobble up a larger share of the federal student loan market.[3]  Furthermore, Sallie Mae and Navient both seem to recognize that the Tuition Answer Loan was not really an "educational loan" at all.  First, Navient's own advertisement stated that it could be used for "fraternity/sorority or club dues"[4] and the commercial demonstrated how a student could use a Tuition Answer Loan to purchase a bean

---

[2] Sallie Mae Gets Subpoena from New York State, available at: https://www.nytimes.com/2008/03/01/business/01sallie.html.  *See also* Sallie Mae 10-K, 2008 ("During 2008, as a result of funding pressures, we curtailed the issuance of new Tuition Answer» loans.")

[3] States Say Navient Preyed On Students, *available at:* https://www.nytimes.com/2017/04/09/business/dealbook/states-say-navient-preyed-on-students.html

[4] *See* Exhibit D to Carpinello Decl.

bag, lava lamp, a refrigerator, bike, wall artwork, and other non-essential college supplies.[5]  These are perfectly fine things for a college student to purchase, but they are not qualified higher education expenses.   Second, Navient's predecessor-in-interest, Sallie Mae, testified before Congress that they did not include direct-to-consumer loan originations within their estimate of total outstanding private student loan amounts.  Instead, Sallie Mae grouped direct-to-consumer loans with "home equity loans and other forms of unsecured consumer credit."[6]  Third, Salle Mae's current website notes that a major difference between student loans and personal loans is that personal loans *are made directly to students*.[7]

## Defendant's Direct-to-Consumer Loans Were Not Certified as Being Within the Cost of Attendance.

Because Defendants' personal loans were made directly to the student, and not through the school, they did not involve any certification from the school that the loans were within the cost of attendance.  Nor did they involve any inquiry to the school about other loans, scholarships or financial assistance the student received.  Patricia Peterson, the designated Rule 30(b)(6) witness for Defendants, repeatedly testified that Defendants made no effort to determine whether these loans were within the cost of attendance:

---

[5] *See* Youtube, Sallie Mae Tuition Answer Loan, *available at:* https://www.youtube.com/watch?v=DHp45y332IA

[6] *See* Testimony of Barry W. Goulding, Senior Vice President, Sallie Mae, before the Committee on Banking, Housing, and Urban Affairs, at 12-13, (Jun. 6 2007) ("According to the College Board, five years ago students across the country took out $4.3 billion in private education loans in a single academic year. Last year, that number had grown to nearly $17 billion. **Direct-to-consumer loans, home equity loans and other forms of unsecured consumer credit used for higher education likely make the total amount of non-guaranteed borrowing significantly higher than the College Board estimate**.")(emphasis added) (Exhibit E to Carpinello Decl.).

[7] *See* Sallie Mae, "Compare federal vs. private loans." (Exhibit F to Carpinello Decl.).

Q:    Does Navient look at the cost of qualified higher education expense at each school?  When it originates a loan?

A:    No.

Q:    Does Navient look at other loans that the borrower has requested during the school year to determine whether or not expenses are qualified higher education expenses?

A:    No.

Transcript of Deposition of Patricia Peterson, July 9, 2019 ("Peterson III") attached hereto as Exhibit G to Carpinello Decl., at 79:14-79:24.

Q:    Does Navient track anywhere in its system anywhere, the cost of attendance?

MR. FARRELL:        Objection.  Asked an answer.

THE WITNESS:        There are – I have seen on some accounts or on applications themselves that cost of attendance is listed but as a normal course of business that's not something that we capture, it's up to the school or the customer themselves to make sure that the expenses is part of the qualified expense.

*Id.* at 81:15-82:5.

Q:    Would you agree that there's no analysis in this procedure as to the cost of attendance?

MR. FARRELL:        Object to the form.

THE WITNESS:        There's no -- that is correct, there is no analysis on cost of attendance.

BY MRS. SWANSON:

Q:    And there's also no analysis of whether or not the borrower is a full or part-time student?

A:    Correct.

*Id.* at 111:19-112:7.

Q:    Okay. So let me ask you another question about if the school type is A or B, meaning that it is a Title IV school, whether or not it's profit or nonprofit, would Navient perform any analysis of qualified higher education expenses?

> A:    Not independently, no.

*Id*. at 121:14-121:21.

> Q:    Okay.  There's no analysis of cost of attendance of a full- or part-time student in that analysis, is there?
>
> A:    No.

*Id*. at 144:20-144:24.

> Q:    Is it your testimony that Navient does not -- well, let me just ask you, does Navient track cost of attendance for any of its loans?
>
> A:    We may have instances where we have cost of attendance in our records, but other than that, a normal course of business it's not something that we would always keep or even have access to.

*Id*. at 153:12-153:21.

> Q:    So the Tuition Answer Loan doesn't require a school certification at all?
>
> A:    It does not, no.

*Id*. at 161:22-162:1.

Defendants had the ability to determine the cost of attendance for each individual who received a direct-to-consumer loan and to enter such data into their records for each loan made. *See* Deposition of Patrick Theurer, Exhibit H to Carpinello Decl., at 76:19-78:10; 79:22-79:25. Defendants also had the ability to determine what other loans, such as school-certified loans or federal loans they may have made to anyone who applied for a direct-to-consumer loan.  *Id*. at 83:7-83:22.  Indeed, Defendants routinely advised loan applicants where they could learn the cost of attendance for their school.  *See* Exhibit I to Carpinello Decl.:  "To find the COA of a college, visit the school's website, look at its brochures, or use College Answer's School Search Tool."

Instead of seeking certification from the schools that their direct-to-consumer loans were within the cost of attendance, after taking account of other loans, scholarships or other financial

aid, Defendants relied entirely upon the boilerplate statement in their promissory note to the effect

that the loan is a qualified education loan:

> Q:    But Navient doesn't ask for the estimated cost of attendance; is that correct?
>
> A:    No, we asked the borrower to certify that it's not above the cost of attendance.
>
> Q:    Where is that certification found?
>
> A:    There's information -- well, obviously this is part of what they're filling out, so when they sign it they're certifying that everything is true to the best of their knowledge, and then there's some reference in, I believe it's in Q?  I saw it just a minute ago. . . . I was looking at Q.2.  That's where they're saying they're using it for a qualified education loan.

Peterson III, Exhibit G at 168:15-169:15.

That boilerplate language reads as follows:

> Q.2.    I certify that this loan is a qualified education loan as described in § 221(d)(1) of the Internal Revenue Code of 1986, 26 U.S.C. § 221(d)(1), and that therefore this loan is not dischargeable in bankruptcy except pursuant to 11 U.S.C. § 523(a)(8).  I understand that I must immediately repay any funds that I receive which cannot reasonably be attributed to meeting the student's qualified higher education expenses related to attendance at the School.

Instructions for completing the Tuition Answer Loan application.  Exhibit J to Carpinello Decl. at

Bates No. NAVHOM01085323 and Exhibit K to Carpinello Decl. at NAVHOM02000038.[8]

---

[8] Navient's loan application also asked the borrower the amount they wished to borrow and asked them to allocate the loan proceeds between tuition fees, room and board, that Navient stated in its loan application would be "paid directly to the school" and "Other Expenses" which the document states were "educational expenses not paid directly to the institution."  The promissory note also stated that the amount sought "may not exceed the estimated cost of attendance."  This does not constitute a representation or certificate from the borrower that the amount requested does not exceed the cost of attendance.  Moreover, Navient could not rely on this boilerplate language because it did not advise the borrower that the subject loan could not exceed the cost of attendance *less* other loans or scholarships or financial aid.  *See* Exhibit K to Carpinello Decl. at NAVHOM02000033.

Significantly, the boilerplate certification *does not* state that the borrower is certifying that the loan does not exceed the cost of attendance, but only that the loan is a "qualified education loan as described in § 221(d)(1) Internal Revenue Code," something a lay person would have no knowledge of.

Peterson also conceded that when Defendants receive notice of discharge, to determine dischargeability, they look at only two factors: whether the borrower had certified in the promissory note that the debt was a qualified education loan and whether the institution was a Title IV qualified institution under the Internal Revenue Code:

> Q:    And I think we've gone over this, but is there any analysis done after a borrower declares bankruptcy to determine whether the loan is a qualified education loan other than the 1098-E categorization?
>
> A:    No.

Peterson III, Exhibit G at 175:8-14.

> Q:    And is there any analysis done after a borrower declares bankruptcy to determine whether the loan was within the cost of attendance?  Other than the 1098-E eligibility field.
>
> A:    No.

*Id*. at 176:11-15; *see also id*. at 42:8-42:23.[9]

---

[9] In her third deposition, Peterson explained that they look at two "flags": a "1098-E eligible flag" and whether the institution was a Title IV authorized institution.  Peterson III, Exhibit G to Carpinello Decl., at 42:18-42:23; 68:13-70:11.  In an earlier deposition, Ms. Peterson explained that Defendants place a "1098-E eligible flag" on any loan that was made to students at a Title IV-authorized institution and in which the borrower, through the boilerplate in the promissory note, or otherwise, certified that the loan was a qualified education loan. Deposition of Patricia Peterson in *Haas v. Navient*, 16-03175 (DRJ) (S.D. Tex. Sept. 19, 2017) ("Peterson I"), Exhibit L to Carpinello Decl., at 191:20-192:9; 323:7-16; 326:1-16; 344:2-23.

**Defendants Routinely Collect on Discharged Debts.**

If, according to Defendants' records, the loan is to a student at a Title IV authorized institution and the borrower has signed a promissory note certifying that the loan was a "qualified education loan," Defendants resume collection on that note even after discharge and advise credit reporting agencies of any delinquency on the payment of the loan. Defendants also advise borrowers of the delinquent notation on the borrower's credit report to induce the borrower to make payment. Peterson I, Exhibit L to Carpinello Decl., at 210:7-11; 216:2-17; 217:10-220:5; 233:11-234:17; 236:14-238:3; Exhibit M and Exhibit N to Carpinello Decl. Defendants also send a letter expressly advising borrowers that their loan is not discharged in bankruptcy. *See* Exhibit O to Carpinello Decl.; Exhibit L at 234.

Obviously, Defendants have thousands of loans that exceed the cost of attendance because they made no effort to obtain certification of the cost of attendance from the school, and they continue to collect on those loans even though they have been discharged in bankruptcy. For example, in Plaintiff Youssef's case, her cost of attendance for 2006-2007 academic year was $17,293. Yet, Defendants gave her $31,810 in Tuition Answer Loans on top of a $6,000 school certified loan. Youssef Decl. at ¶¶ 3-6. Yet, Defendants notified Youssef, after her discharge, that she was required to continue paying on those loans. *Id*. at ¶¶ 11-13.

Another example is student R.P. who attended the Empire State College of the State University of New York during the academic year 2006-2007. Based on data collected by the federal government in its Integrated Postsecondary Education Data System ("IPEDS"), the maximum possible cost of attendance for an in-state student such as R.P. during that academic

year was $20,975.  *See* Exhibit P to Carpinello Decl.[10]  Yet, RP received a Tuition Answer Loan of $32,787 on February 23, 2006.  *Id*.  *See* Exhibit Q to Carpinello Decl.  Despite the fact that R.P.'s Tuition Answer loan exceeded the cost of attendance and that R.P. received a discharge in bankruptcy, Defendants are still listing her loan as active and in default.  *Id*.

Thus, without any independent determination of whether the loans meet the conditions of §523(a)(8)(B), either at the time of origination or at the time of the filing of a bankruptcy petition, to determine the dischargeability of the loans, Defendants continue to collect on their loans after bankruptcy discharge *solely* based upon the boilerplate representation contained in their loan documents that the loan was a qualified education loan.

Defendants know that they are collecting on a number of loans that had been discharged because they advised investors of this very fact.  Thus, an offering memorandum circulated in 2009 stated to investors:

> Private credit student loans made for qualified education expenses are generally not dischargeable by a borrower in bankruptcy . . . .  In addition, direct-to-consumer loans are dispersed directly to the borrowers based upon certification and warranties contained in their promissory notes, including their certification of the cost of attendance for their education.  This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that the loans are not used for qualified educational expenses.  If you own any notes in a related issuing entity, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the issuing entities credit enhancement.

Exhibit R to Carpinello Decl., at NAVHOM01105668.

Of course, even this advice to investors was inaccurate because the loan documents did not provide certifications by the borrower of the cost of attendance nor would dischargeability turn on whether or not the loans were "used for qualified educational expenses."  Rather, dischargeability

---

[10] To determine the cost of attendance, one would add the in-state tuition of $4,575, the books and supplies of $1,400, the maximum amount of off-campus room and board at $10,600, and other expenses of $4,400 for a total of $20,975.

depends upon whether the loans exceeded the cost of attendance at a Title IV institution. Nonetheless, Defendants make no effort to determine whether the thousands of direct-to-consumer loans are, in fact, nondischargeable before it collects on those loans.

As is more fully set forth in Plaintiffs' motion for summary judgment, those loans are fully dischargeable unless Defendants' can show that such loans did not exceed the cost of attendance at a Title IV eligible institution.  But Defendants made these loans and continue to collect on those loans after discharge, without making any determination that the loans are, in fact, within the cost of attendance.  Because Defendants have the burden of showing non-dischargeability, all of Defendants' loans are presumptively discharged and for each such loan that Defendants do not make such a showing, Defendants must return all funds received after discharge.  Plaintiffs' proposed class of all borrowers who have received or will receive a discharge and as to whom Defendants cannot make this showing is a discrete and ascertainable subset of the student debtor population.

## ARGUMENT

### I.    THE PROPOSED CLASSES

Plaintiffs seek to certify two classes:  an injunctive class and a damages class, both of which would consist of all:

> Individuals who attended or intended to attend Title IV institutions and who received private loans owned or serviced by Defendants which exceeded the cost of attendance at such institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after January 1, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Excluded from the classes are any debtors who have validly reaffirmed their debts to Defendants or whose debts were expressly held to the non-dischargeable.  Also excluded are Defendants, any entity in which any Defendant has a controlling interest or that has a controlling

interest in any of Defendants, Defendants' legal representatives, assignees, and successors, the attorneys for Plaintiffs and the class and any member of the attorneys' immediate families.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

## II.    THE PLAINTIFFS SATISFY THE STANDARDS FOR CLASS CERTIFICATION.

To achieve certification, a proposed class must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Ferrer v. New York City Dept. of Ed.*, 2019 WL 2511874, at *4 (E.D.N.Y. June 12, 2019). The Second Circuit also recognizes an "implied requirement of ascertainability" when evaluating Rule 23(a).  *In re Petrobras*, 862 F.3d 250, 260 (2d Cir. 2017).  Ascertainability is found when the class can be "defined by objective criteria that are administratively feasible" and when "identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25 (quoting *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010)).

In addition, the district court must find that certification is appropriate under Rule 23(b). *Roach*, 778 F.3d at 405.  Here, Plaintiffs seek certification of both an injunctive relief class pursuant to Rule 23(b)(2) and a damages class pursuant to Rule 23(b)(3).  It is well-established that an action may be certified under more than one of Rule 23(b)'s provisions.  *See, e.g., Sykes v. Mel S. Harris and Assoc., LLC*, 780 F.3d 70, 99 (2d Cir. 2015) (upholding certification of two classes: one under Rule 23(b)(2) and the other under Rule 23(b)(3)); *Merino v. Beverage Plus America Corp.*, No. 10 civ. 0706, 2011 WL 3739030, at *2 (S.D.N.Y. Apr. 12, 2011) (same). Certification of an injunctive relief class under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that

final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011).

Certification of a class for damages is warranted where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Haliburton*, — U.S. —, 131 S. Ct. 2179, 2184 (2011). Although in some cases the court may have to "probe behind the pleadings" to determine whether the plaintiffs have met the requirements of Rule 23, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, — U.S. —, 133 S. Ct. 1184, 1194-95 (2013) (citations omitted).

Class certification is appropriate where the Plaintiff establishes by a preponderance of the evidence that each of the requirements of Rule 23 has been met. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201-03 (2d Cir. 2008).

### A.  Rule 23(a) Standards Are Met

#### 1.  *The Numerosity Standard Is Met*

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, courts presume numerosity when a proposed class comprises forty or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ferrer,* 2019 WL 2511874, at *3. Plaintiffs need not prove the exact size nor the identity of class members to satisfy the numerosity requirement.

*Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Ferrer*, 2019 WL 2511874, at *3. Here, the number of people who received direct-to-consumer loans for which Defendants did not receive certification that such loans were within the cost of attendance exceed 31,000.  Carpinello Decl. at ¶ 20; Report of Mark Kantrowitz, dated December 19, 2019 at __.   Accordingly, numerosity is easily satisfied.

### 2.    *The Commonality Standard Is Met*

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this element, the plaintiffs must allege a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  The Rule does not require all questions of law or fact to be common—in fact, "even a single common question" will suffice. *Id.* at 359.  "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." *Id.* at 350 (internal marks and citation omitted, emphasis in original).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Cmmc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."  Rule 23(a)(2) does not mandate that the plaintiff or plaintiffs demonstrate that all class members' claims are identical. *Maneely v. City of Newburgh,* 208 F.R.D. 69, 74 (S.D.N.Y. 2002). Further, factual differences in the claims of the class do not automatically preclude a finding of commonality. *See Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2nd Cir.

1997); *Butto v. Collecto, Inc*., 290 F.R.D. 372, 392 (E.D.N.Y. 2013) ("individual circumstances of the class may differ without precluding class certification."); 5 *Moore's Federal Practice,* § 23.23[2] (Matthew Bender 3d ed.). In fact, plaintiffs may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Id.*

In the present case, commonality is easily satisfied because Plaintiffs and the class members' claims all arise from Defendants' uniform course of conduct.   Every member of the class received a loan from Defendants as to which Defendants did not obtain certification from the educational institution that the debtor attended that such loan did not exceed the cost of attendance.  Similarly, after entry of the Class Members' discharge orders, Defendants made no effort to determine whether the loans were within the cost of attendance before they resumed collection.  In every case where Defendants cannot otherwise establish that the loan did not exceed the cost of attendance, Defendants have violated § 524 and the discharge orders by collecting on discharged debts.  *See* Plaintiff's Motion for Summary Judgment submitted herewith.

The facts about Defendants' policy and actions to determine dischargeability of the class's loans and the answer of whether those actions are wrongful is the same for the whole class.  It does not matter that the class members had different loan amounts or went to different schools with different costs of attendance.  The Court's inquiry is not to determine if there are any non-common issues, it is to determine if there are some common issues such that a class can be maintained. Indeed, when the class seeks to declare rights regarding policy and to enjoin that or as opposed to individualized relief, commonality is assumed. *Westchester Ind. Living Ctr., Inc*. *v. State Univ. of New York*, 331 F.R.D. 279, 292 (S.D.N.Y. Jun. 12, 2019).   In any event, any minor factual differences can be determined by the same simple objective criteria and do not create uncommon

facts or issues.  In each case, the Class Member is entitled to restitution of all funds paid on such discharged debts.

Defendants will also likely raise a common defense, namely, that they were entitled to rely on a boilerplate statement in their loan applicants in which the debtor purports to certify that the loan is a "qualified education loan."  As explained more fully in Plaintiffs' Motion for Summary Judgment, that defense is without merit.  Waivers of dischargeability violate public policy.  But that too is an issue that applies to the entire class.

Finally, a common question will also determine Defendants' liability for additional damages, putative damages and attorney's fee; i.e., whether Defendants acted willfully when collecting on debts without making a determination as to whether the loans exceeded the cost of attendance and were therefore dischargeable.

### 3.    The Typicality Standard Is Met

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of the typicality requirement is to ensure that the named plaintiffs' claim and the claims of the class "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Marisol A. ex rel. Forbes v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  The requirements for commonality and typicality "tend to merge" because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5.  However, these requirements are distinct insofar as typicality focuses on "claims or defenses," while, as previously discussed, commonality

focuses on "questions of law or fact." *Tropical Sails Corp v. Yext, Inc.,* No. 14 Civ. 7582, 2017 WL 1048086, at *10 (S.D.N.Y. Mar. 17, 2017). "As long as plaintiffs assert … that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality." *Bolanos v. Norwegian Cruise Line Ltd.*, 212 F.R.D. 144, 154-155 (S.D.N.Y. 2002).  Minor variations in fact patterns do not undermine a finding of typicality. *Ferrer*, 2019 WL 2511874, at *4.

In a case such as this, where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," typicality is satisfied.  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol*, 126 F.3d at 376).

Also, where the Plaintiff seeks injunctive and declaratory relief, typicality can be assumed. *Westchester Ind. Living Ctr., Inc.,* 331 F.R.D. at 293; *Nicholson v. Williams*, 205 F.R.D. 92 at 99 (E.D.N.Y. Aug. 16, 2001).  In the present case, Plaintiffs' claim is premised on precisely the same conduct as the claims of the other class members.  Plaintiffs Homaidan and Youssef instituted this action after discovering that their debt to Defendants was, in fact, discharged in bankruptcy, even though Defendants continued to collect that debt after discharge.  Defendants' practice of collecting on such debts, knowing that they did not meet the terms of §523(a)(8)(B), uniformly applies to every member of the class, and each member of the class has suffered exactly the same type of harm as Plaintiffs.

### 4.    *The Class Is Adequately Represented*

Rule 23(a)(4) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor has two components.  First, the named representative must be able to prosecute the action vigorously

through qualified counsel, and second, the representative must not have antagonistic or conflicting interests with the unnamed members of the class. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). To defeat a motion for class certification, the conflict must be fundamental. *Id.* Here, there are no conflicts between Plaintiffs and the proposed class members. Plaintiffs have been harmed by the identical conduct of Defendants as that inflicted on the other class members and share the common interest of obtaining a judicial resolution regarding the unlawfulness of Defendants' policies, an order enjoining Defendants' wrongful conduct, restitution of funds paid on discharged debts and an order setting damages based upon the common harm to class members. Further, Plaintiffs are informed about the litigation, have participated in the proceedings to date and stand ready to fulfill their remaining obligations as named representatives.

Furthermore, as evidenced by each of the declarations attached hereto, Plaintiffs' counsel have the skill and knowledge and background that will enable them to prosecute this action effectively and expeditiously. The law firms have spent years investigating the types of claims at issue in this litigation, and have great understanding of the applicable law. Plaintiffs' counsel also are experienced in litigating significant bankruptcy and consumer issues. Plaintiffs' counsel have represented, and continue to represent, hundreds of thousands of individuals who have experienced similar harm to that caused by Defendants and other financial institutions that fail to comply with § 524(a)(2). Moreover, Plaintiffs and their counsel have already shown a willingness in this litigation to vigorously pursue the claims at issue. Finally, all firms have substantial resources to dedicate to the prosecution of this case. Carpinello Decl. at ¶ ¶ 21-24; Declaration of Austin Smith dated December 10, 2019; Declaration of Lynn Swanson dated December 9, 2019; and Declaration of Jason Burge dated December 10, 2019.

5.      *Ascertainability*

As a threshold matter, "[i]t is not clear that the ascertainability requirement applies to Rule 23 (b)(2) class actions . . . as notice is not obligatory and the relief sought is injunctive rather than compensatory." *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. 409, 419 n.3 (S.D.N.Y. Nov. 16, 2012); *Westchester Ind. Living Ctr., Inc.*, 331 F.R.D. at 299. Even if required it is met here. The Second Circuit has explained that the ascertainability requirement is a "modest threshold" that only requires the plaintiffs to show that the class is not "indeterminate in some fundamental way." *In re Petrobras*, 862 F.3d at 269. "Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23." *Id.* (emphasis in the original). Thus, all a court needs to do under the ascertainability standard is to ensure that the class is "defined using objective criteria that establish a membership with definite boundaries." *Id.* It does not require a plaintiffs to prove at the certification stage that it is "administratively feasible" to determine the class. *Id.* at 264. Moreover, Eastern District has held that review of individual class members' factual situation cannot defeat ascertainability. *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *32 (E.D.N.Y. Feb. 8, 2018) ("At this juncture, all that matters is whether there is a possible method to ascertain the class, not that there is necessarily an easy one . . . "[e]ven if a file-by-file review were required to identify borrowers who paid a BPO charge, the Paid Class would still be ascertainable."), *adopted in part and reserved in part on other grounds*, 2018 WL 1559766 (E.D.N.Y. March 30, 2018).

At the class certification stage, the court need only be satisfied that "prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members. The court may proceed with certification so long as this mechanism will be

"administratively feasible." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013). Here, objective records provide that mechanism.

Ascertainability is readily met in this case, as the presumptive Class can be ascertained through objective criteria in the form of Defendants' own records. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012) (finding class ascertainable through objective criteria that included the defendant's own payroll records and "no subjective criteria is required to determine the class' contours."); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124, 2015 WL 5813382 (S.D.N.Y. Sept. 28, 2015) (same). Defendants have a record of every loan made to every debtor, the amount of the loan and data indicating whether the loan was certified by the educational institution as being within the cost of attendance or not. Every direct-to-consumer loan that was subject to discharge was presumptively discharged because Defendants never proved the loans were exempt from discharge. *See Renshaw v. Renshaw*, 223 F.3d 82, 86 (2d Cir. 2000) (creditor has the burden of establishing non-dischargeability).

Defendants may argue that they should be able to demonstrate that any particular loan was, nonetheless, within the cost of attendance. Defendants are certainly free to present such evidence with regard to particular loans and, if they do so, the debtors on those loans may be excluded from the class. However, Defendants' ability to come forward with that proof does not undermine the ascertainability of the class. The cost of attendance at each institution and the certified loans and financial aid each borrower received can be ascertained from the relevant schools. Indeed, Defendants have sent subpoenas to Plaintiffs' colleges seeking information about the cost of attendance at each of their colleges. *See* Exhibit T to Carpinello Decl. Moreover, Defendants themselves have a record of all loans any particular borrower as received from Defendants, including federal loans. *See* Exhibit L to Carpinello Decl. at 250-51. Moreover, the cost of

attendance for each student who has applied for federally-guaranteed financial aid is in a database maintained by the federal government known as the Federal Student Financial Application File. Defendants have access to this file as lenders and servicers of federally-guaranteed student loans. The cost of attendance for each school, for every year, is also maintained by the National Center for Education Services at its Integrated Post-Secondary Education Data System ("IPEDS"). *See* Report of Mark Kantrowitz, dated December 19, 2019, submitted herewith.

Case-by-case review of the borrowers' records to determine which loans are within or in excess of the cost of attendance will not defeat certification. It is not fatal for a class definition to require some inquiry into individual records, so long as the information is available through a "ministerial review" rather than "arduous individual inquiry." *Audet v. Fraser*, 332 F.R.D. 53, 72-73 (D. Conn. 2019) (predominance found where class membership was proposed to be shown through various records such as emails, public bitcoin block chain wallets, and credit card data related to Plaintiffs' "purchases, activities and subsequent losses [uploaded] to a website" because "membership may be established by reference to more than one type of document, and as long as proposed class members can show proof of purchase by submitting such documentation during the claims stage, individual inquiries will not predominate."); *In re Digital Music Antitrust Litigation*, 321 F.R.D. 64, 90 (S.D.N.Y. 2017) (predominance found because Plaintiff could show membership in class through "credit card payments, confirmatory emails, records kept by digital retailers, and the Digital Music product itself" such that individual inquiries did not overwhelm common ones); *Sadler v. Midland Credit Mgmt., Inc*., No. 06 C 5045, 2008 WL 2692274, at *3 (N.D. Ill. July 3, 2008); and *see Smilow v. Southwestern Bell Mobile Systems, Inc*., 323 F.3d 32, 39-40 (1st Cir. 2003) (courts are reluctant to deny class status based on the fact that certain affirmative defenses may be available to individual members.).

Here, the status of each loan can be determined by comparing two objective numbers:  the amount of loan and to student's cost of attendance.  Moreover, to the extent that there is any uncertainty as to whether a particular loan exceeds the cost of attendance, that uncertainty was created by Defendants' own conduct.  Defendants purposefully made the direct-to-consumer loans without determining whether the loan would meet the conditions of § 523(a)(8)(B).  They also declined to exercise any of their rights at the time of the bankruptcy filing to determine whether the loans met the conditions of the statute or to contest the dischargeability of the loans.  For Defendants to argue that they could not possibly uncover this information now because it does not suit their purposes is "at best, a treacherous defense."  *Harte v. Ocwen Fin. Corp*., 2018 WL 1830811, at *32.  They cannot avoid class-wide liability based upon uncertainties created by their own conduct.  In *Cazares v. Ava Restaurant Corp*., 2017 WL 1229727, at *7 (E.D.N.Y. March 31, 2017) the court found that the class of employees was easily identifiable from defendants' own records but also noted that:

> to the extent that plaintiffs may not know the exact function of each class member during relevant days of the Class Period, that is largely attributable to defendants' failure to preserve the payroll records after the commencement of this litigation. Thus, the court will not permit defendants to benefit from their conduct by finding that plaintiffs' are unable to carry their burden of showing ascertainability.

Similarly, in *Harte v. Ocwen Financial Corp*., 2018 WL 1830811, at *32, the court noted that the fact:

> That Ocwen may have created a system that it can readily maneuver when *it* needs to find a borrower against whom to file foreclosure—but not when the government, a court, an auditor, or a regulator seeks accounting of how many and which Borrowers it has sent correspondence to regarding foreclosure filings—is, at best, a treacherous defense.  To the degree that Ocwen belabors the arduous steps it will have to undertake to identify members of each class by deciphering code entries, viewing attached images, reviewing comment logs, and the likes, Ocwen's system is a Frankenstein of its own creation.

*See also Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("Should a debt collection company as large and as sophisticated as [Collecto] be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted."), *quoting Macarz v. Transword Systems, Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000); *Ass'n Against Discrimination Employment, Inc*. v. City of Bridgeport, 647 F.2d 256, 289 (2d Cir. 1981) ("[t]o the extent that it is uncertain whether a candidate would have met the City's nondiscriminatory requirements, any certainty should be resolved against the defendant, the party responsible for the lack of certainty") *quoting Cohen v. Westhaven Bd. of Police Commissioners*, 638 F.2d 496, 502 (2d Cir. 1980) ("when the defendant has attempted to prove the existence of a nondiscriminatory reason for the failure to hire but it remains uncertain whether the plaintiffs would have been hired in the absence of the discriminatory practice, and the uncertainty flows from that practice, the issue should be resolved against the defendant, the party responsible for the lack of certainty."). *And see McNamee v. Nationstar Mortgage, LLC*, 2018 WL 1557244, at *4 (S.D. Ohio March 30, 2018) ("The Court need not deny class certification due to the need to review individual files. Otherwise, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their business or the manner in which their business records were maintained.") (internal citations and quotation marks omitted).

In addition, any asserted inability now to make a determination as to whether a particular loan is within the cost of attendance does not make the status of that loan uncertain. Rather, it makes Defendants liable because the burden of establishing non-dischargeability is always on the creditor. *See* Pltfs' Memorandum of Law in Support of their Motion for Partial Summary Judgment. In choosing to collect on debts after discharge without determining dischargeability, Defendants assumed the risk that they would be in contempt of the discharge order.

Accordingly, all the elements of Rule 23(a) are met.

**B.      The Proposed Class Satisfies Rule 23(b)(2).**

Plaintiffs seek to certify a class for injunctive and declaratory relief pursuant to Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole."   Fed. R. Civ. P. 23(b)(2). Certification of an injunctive or declaratory judgment class is appropriate where a single injunction or declaratory judgment provides relief to each member of the class.  *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Here, it is undisputed that Defendants have engaged in exactly the same conduct with regard to every class member, *i.e.*, continuing to collect, or attempting to collect, on loans that were discharged in bankruptcy, even though such loans do not come within the terms of § 523(a)(8)(B).  Defendants should be permanently enjoined from collecting on such loans and should be enjoined from collecting on any debt that exceeds the cost of attendance that is discharged in the future.

**C.      The Proposed Class Satisfies Rule 23(b)(3).**

Plaintiffs also seek to certify a damages class under Rule 23(b)(3).  Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Roach*, 778 F.3d at 405.  For the reasons set forth below, the proposed class satisfies these requirements.

### 1.    *Common Issues Predominate*

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Catholic Healthcare W. v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*), 729 F.3d 108, 118 (2d Cir. 2013), *quoting UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010) (internal quotation marks omitted).  Commonality exists despite differing individual circumstances of class members, where "injuries derive from a unitary course of conduct by a single system." *Kurtz v. Kimberly-Clark Corp.,* 321 F.R.D. 482, 530 (E.D.N.Y. 2017), *quoting Ebin v. Kangadis Food Inc.,* 297 F.R.D. 561, 565 (S.D.N.Y. 2014); *Hasemann v. Gerber Products Co.,* 2019 WL 2250687, at *4 (E.D.N.Y. M.J. Feb. 20, 2019), *adopted as modified*, 331 F.R.D. 239 (E.D.N.Y. 2019).  "Common issues may predominate when liability can be determined on a class-wide basis, even where there are some issues as to individualized damages." *In re Visa Check/MastMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001).  "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." *Id*. at 138.  The "'predominance' requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' " *Roseman v. Bloomberg L.P.*, No. 14-CV-2657 (DLC), 2017 WL 4217150, at *5 (S.D.N.Y. Sept. 21, 2017) (quoting *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This "requirement is satisfied if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more substantial than the issues subject only

to individualized proof." *In re Petrobras*, 862 F.3d at 270 (alterations adopted) (citation and quotation marks omitted).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration adopted) (quoting *2 William B. Rubenstein, Newberg on Class Actions § 4:50*, at 196-97 (5th ed. 2012)).

The predominance analysis "requires more than simply counting the number of common and individualized issues; the [c]ourt must consider the relative complexity of those issues." *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2019 WL 652841, at *5 (S.D.N.Y. Feb. 15, 2019) (citing *In re Petrobras*, 862 F.3d at 271). The Court asks "whether issues susceptible to generalized proof outweigh individual issues." *Johnson v. Nextel Comms., Inc.*, 780 F.3d 128, 138 (2d Cir. 2015).

The assessment is "more qualitative than quantitative, and must account for the nature and significance of the material common and individual issues in the case." *In re Libor*, 2018 WL 1229761, at *5 (S.D.N.Y. Feb. 28, 2018). Predominance is met where the individualized issues do not overwhelm the other common issues in the case. *In re Air Cargo Shipping Services Antitrust Litig.*, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), report rec. approved, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

The focus of this case is on common legal and factual questions regarding the unlawfulness of Defendants' uniform practice of collecting on discharged debts, *i.e.*, their private, direct-to-consumer loans that exceed the cost of attendance. Thus, Defendants' persistent course of conduct raises questions that are common to the Class and that predominate over any questions affecting

only individual members, making certification under Rule 23(b)(3) appropriate.   *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").   "[T]he mere fact that a defense may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *Fonseca*, 2015 WL 5813382 at *6, *quoting*, *Flores*, 284 F.R.D. at 130; *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices, even though the nature and amount of damages may differ among class members.").

Moreover, Defendants are likely to assert a common defense; namely, that they were entitled to rely on their standard boilerplate in their loan applicants to the effect that the loans were qualified education loans. This Circuit has found class certification justified, pursuant to both Rule 23(a)(3) and 23(b)(3), in a suit by servicemen and their relatives against the manufacturers of dioxin (Agent Orange), even given the individualized nature of the plaintiffs' causation and damages claims, due in part to the centrality of the defense proffered by the defendants. *In re Agent Orange Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 166–167 (2d Cir. 1987); Fed. R. Civ. P. 23(a)(3) ("A class action may be maintained where the claims *or defenses* of the representative parties are typical of the claims of defenses of the class") (emphasis added). "[t]his defense is common to all of the plaintiffs' cases, and thus satisfies the commonality requirement of Rule 23(a)(2)." *Id.*; *see also, Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. 2003).

Defendants' assertion that the cost of attendance is an individualized inquiry will not defeat predominance.   As noted above, should Defendants choose to introduce individual evidence that particular loans do not exceed the cost of attendance they may do so by objective criteria: the actual

cost of attendance at a particular institution and all the financial aid the student received can be determined by objective facts residing at the relevant schools. *Smilow*, 323 F.3d, at 40 ("common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria – thus rendering unnecessary and evidentiary hearing on each claim."); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. 2015) (holding the fact that there were individualized considerations with relating to each student loan did not defeat class certification in this FDCPA case.); *Butto*, 290 F.R.D. at 382-83 (finding that individualized inquiries into the nature of each class member's debt in a FDCPA case does not prevent class certification).

Once Defendants' liability is established, determining the amount that needs to be returned to each class member is a mechanical process based on Defendants' own records. Defendants concede that all the loan information is contained in their own records. *See* Defendants' Objections and Responses to Plaintiff's Second Set of Interrogatories, Response to Int. No. 1 (Sept. 10, 2019 (objecting to a request for principal, interest and fees paid post-discharge for each loan on the grounds that it "cannot be obtained without individual review of each file loan," but agreeing to provide such data "to the extent technically feasible."), attached as Exhibit U to Carpinello Decl. *See Cazares v. AVA Restaurant Corp.*, 2017 WL 1229727, at *8 (E.D.N.Y. March 31, 2017) (the fact that each class member's damages may vary is not relevant to the predominance inquiry, because damages calculations merely entail the application of simple mathematical computations that are consistent with the theories of liability.); *Schear v. Food Scope America, Inc.*, 297 F.R.D. 114 at 126 (S.D.N.Y. Jan. 10, 2014) (determining each class member's damages was a "straight forward, mechanical process"; "it is a rare case where computation of each individual's damages is so complex, fact-specific, and difficult that the burden on the court is intolerable."), *quoting U.S.*

*Food Serv. Inc. Pricing Litig.*, 2011 WL 6013551, at *16 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d at 108 (2d Cir. 2013).

In similar cases pending before Bankruptcy Judge Drain in the Southern District of New York, restitution of payments made on discharged debts was easily ascertained from Defendants' records. *See* H*aynes v. Chase Bank USA, N.A.* (*In re Haynes*) Adv. Proc. 13-08370 (RDD), *Echevarria v. Bank of America, et al.*, (*In re Echevarria*) Adv. Proc. 14-08216 (RDD), and *Anderson v. Capital One (In re Anderson)* Adv. Proc. 15-8342 (RDD). Defendants, as part of class wide-settlements, relied on their own records to determine which class members paid on discharged debts and the amount of such payments. In addition, class members were allowed to submit evidence of payments on discharged debts that may not have been evidenced in Defendants' records. The process did not require any formal adjudication of any kind and did not present predominance issues.

This Court suggested, in an earlier oral argument in this matter, that the factual determination of whether each individual class member's loan is within the cost of attendance would not preclude a class action status:

> Mr. Farrell: Another key issue, Your Honor, would be this whole cost of attendance. The whole premise of the Plaintiff's case here is that these loans exceed the cost of attendance; and, therefore, don't fit within the statutory scheme. And whether or not a particular loan at a particular school for a particular borrower exceeded the cost of attendance is a highly individualized question.

> The Court: Aren't there lots of class actions that are resolved through the process, whether it's a settlement or a decision, where in a second step, the individual unnamed class members need to show their entitlement to relief and how much the relief should be from a common fund? It's not an unusual procedure, I don't think.

April 9, 2018, Tr. at19-20. Exhibit V to Carpinello Decl.

Whether Defendants should be assessed damages in addition to restitution need not be determined at this time. Certification of a (b)(3) class need not await an actual determination of

damages. *Roach*, 778 F.3d at 407. Moreover, "proponents of class certification [need not] rely upon a class wide damages model to demonstrate predominance." *Id.* And, as the Second Circuit has held, the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification. *See, e.g., Sykes v. Mel S. Harris and Assoc., LLC*, 780 F.3d 70, 81-82 (2d Cir. 2015). In any event, Plaintiffs and the Class Members here will not be seeking any individualized consequential damages. Individuals who feel that they may have incurred such damages would be free to opt out of the class to seek such relief on an individual basis.

The Court may also award punitive damages for violation of the discharge injunction. *In re Haemmerle*, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015); *In re Szenes*, 515 B.R. 1, 7 (Bankr. E.D.N.Y. 2014). Punitive sanctions in the bankruptcy context are appropriate where a defendant has acted with "either malevolent intent or a clear disregard and disrespect of the bankruptcy laws." *Szenes*, 515 B.R. at 7-8. Here, there is no question that Defendants acted willfully to collect on discharged debts. Even if Defendants could argue that they had some reasonable basis to believe that these loans were non-dischargeable under §528(a)(8)(A)(ii) (and the evidence from both their internal and public documents shows that they never relied on that provision), they had no good faith basis to rely on that provision after this Court's decision on January 31, 2019, expressly holding that §523(a)(8)(A)(ii) did not apply to these loans. Nonetheless, Defendants continue to collect on these discharged debts.

There is no formulaic approach to punitive sanctions; rather, courts have broad discretion to choose an award that is appropriate and reasonable. *See In re Haemmerle*, 529 B.R. at 30-31. Recent Second Circuit precedent suggests that as long as a class-wide punitive award is in some way tethered to the class's compensatory damages, such an award would not run afoul of *State Farm Mutual Auto. Insurance Co. v. Campbell*, 538 U.S. 408 (2003). *See Johnson v. Nextel*

*Commc'n*, 780 F.3d 128, 149 (2d Cir. 2015). Where, as here, the class's injury arises from Defendants' uniform conduct as to all debtors, the ratio of punitive to compensatory damages can easily be determined on a class-wide basis. *See id.*; *see also* Catherine M. Sharkey, *The Future of Classwide Punitive Damages*, 46 U. Mich. J. K. Reform 1127, 1139-40 (2013).

Thus, common issues predominate with respect to damages and this aspect of Rule 23(b)(3) is satisfied.

### 2. A Class Action Is Superior

The Court should certify the Class under Rule 23(b)(3) if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Among the factors to consider at this stage are the class members' interest in individually controlling their case; the extent of any prior litigation covering the same controversy; the desirability of concentrating the litigation of the claims in a particular forum; and difficulty of managing the class action. *Id.*

Not only are common issues likely to be dispositive of this case, but the high costs of litigation relative to each class member's damages and the economic status of class members, who have all gone through personal bankruptcy, make it unlikely that many class members will pursue individual legal actions.

Moreover, there are no manageability issues because the common dischargeability question can easily be determined on behalf of the entire class. The class members can be identified through objective criteria and the amount of restitution that should be paid can be determined from Defendants' own records. As the Second Circuit has emphasized, a class action will be denied on the grounds of unmanageability "only when it is found that efficient management is *nearly impossible*." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d at 140 (emphasis

original).  This case does not present any material difficulties with respect to its management as a class action.

This action is both procedurally and substantively reminiscent of the Sears litigation in the 1990s.  In those cases, Sears was accused of coercing debtors into reaffirming discharged debts without following the procedures in section 524(c).  Upon discovery of these practices, the Bankruptcy Court for the District of Massachusetts excoriated Sears for its illegal conduct.  *In re Latanowich,* 207 B.R. 326, 337 (Bankr. D. Mass. 1997) ("The consequential damages in this case do not begin to reflect the magnitude of Sears's offense against Mr. Latanowich and against the bankruptcy law. Sears here made a conscious decision to disregard the clear requirements of the law because it was more expeditious and profitable to do so. Its conduct toward the Debtor was predatory: Sears preyed on the Debtor when he was financially most vulnerable and powerless; and in doing so it deprived him of the fresh start that Congress intended that he should have.").  Ultimately a nationwide class action was certified for discharge violations of section 524 that, *inter alia*, required Sears to comb its records to determine individual membership in the class.  *Conley v. Sears, Roebuck & Co*., 222 B.R. 181, 185 (D. Mass.1998) ("Sears shall complete its ongoing national review to identify debtors from January 1, 1992 to April 1, 1997, in accordance with the stipulated order in the *United States* Action.").  Although the court had sent a "strong message" that punitive damages were warranted for Sears' unconscionable conduct, Sears avoided trial by agreeing to full restitution, full injunctive relief, and $25 million in extra damages to be paid pro-rata to the class.  Notwithstanding its full *mea culpa*, the Justice Department pursued criminal mail fraud charges.  *Conley*, 222 B.R. at 183 ("On April 17, 1997, the government filed *United States of America v. Sears, Roebuck and Co.,* 97–10839–JLT (D. Mass.) . . . asserting not only violations of the Bankruptcy Code but also mail fraud violations pursuant to 18 U.S.C. § 1341 and 1345.").

With all due respect to the debtors in *Sears*, Defendants' conduct in this action is worse. The debtors in Sears were told their debts were discharged, and were told they did not need to reaffirm the debts. They were not sued in state court, or harassed on a daily basis to repay discharged debts. Nor had Sears cynically warned investors that it was playing fast-and-loose with the Bankruptcy Laws. Furthermore, upon discovery by the courts, Sears accepted full responsibility, apologized to the court and the debtors, and acknowledged that its actions were legally unjustified. *Conley*, 222 B.R. at 185 ("Sears threw in the towel within two weeks" and submitted a "written *mea culpa* memorandum."). In this case, Defendants have been willfully misleading class members for 14 years, and have now spent more than two years aggressively litigating the allegations in order to continue their illegal conduct.

**D.      Constitutionally Sound Notice Can Be Provided to Class Members.**

To protect the rights of absent class members, the Court must provide them with the best notice practicable when it certifies a class under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Defendants' own records contain the last known contact information for all class members. As a result, notice may be sent directly via First Class mail or e-mail to the class members. Notice can also be published on a website maintained and updated by Plaintiffs' counsel. Class members will be able to use the site to stay apprised of important dates and to access the notice form and other key documents. Together, these approaches will provide the best practicable notice to the class members. After certification is granted, Plaintiffs will submit a detailed notice plan and form to the Court for approval.

**E.** **This Court Has Jurisdiction to Adjudicate a National Class and Should Exercise That Jurisdiction.**

Defendants will likely argue that this Court does not have subject matter jurisdiction to adjudicate a nationwide class. That contention is without merit. Subject matter jurisdiction here is provided by 28 U.S.C. § 1334(b) which gives the district court's jurisdiction over all civil proceedings arising under Title 11. The enforcement of the discharge injunction here is a core bankruptcy matter that arises under 11 U.S.C §§ 727, 524 and 105. Once federal subject matter jurisdiction is proper in the district court as to a core bankruptcy matter arising under the Bankruptcy Code, subject matter jurisdiction is proper in the bankruptcy court to which the matter is referred under 28 U.S.C. § 157.

Moreover, subject matter jurisdiction is not lost or limited merely because the action is brought as a class action. Class action proceedings are expressly allowed in the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Bankr. P. 7023 ("Rule 23 F. R. Civ. P. applies in adversary proceedings"). *See In re Rojas,* No. 09-07003, 2009 WL 2496807, at *1 (Bankr. S.D. Tex. Aug. 12, 2009) ("[N]othing in the jurisdictional statute limits the District Court's subject matter jurisdiction (and by extension, the matters that can be referred to the bankruptcy judges) to claims filed by debtors with bankruptcy cases pending in this District.").[11]

Such subject matter jurisdiction is confirmed by the fact that both the bankruptcy court and the district court in two of the seven nationwide class actions has already approved of nationwide settlements. *See Haynes v. Chase*, 7:18-cv-03307-VB (Bankr. S.D.N.Y. Sept. 27, 2018), at Dkt.

---

[11] Numerous courts have approved national class actions in bankruptcy court. *See, e.g., In re Jones*, 16-03235 (Dkt. 44) (S.D. Tex. May 19, 2017), attached hereto as Ex. B; *In re Cano*, 410 B.R. 506, 543-55 (S.D. Tex. 2009); *In re Krause,* 414 B.R. 243, 252-56 (S.D. Ohio 2009); *In re Patrick,* 344 B.R. 56, 60 (Bankr. M.D. Pa. 2005); *In re Sims,* 278 B.R. 457, 485-89 (Bankr. E.D. Tenn. 2002); *Bank United v. Manley,* 273 B.R. 229 (N.D. Ala. 2001); *In re Harris,* 280 B.R. 876 (Bankr. S.D. Ala. 2001); *In re Noletto,* 244 B.R. 845(S.D. Ala. 2000); *In re Sheffield,* 281 B.R. 24 (Bankr. S.D. Ala. 2000).

9-1; 13-cv-08370-RDD (Bankr. S.D.N.Y. Sept. 27, 2018), at Dkt. 133 and *Echevarria v. Bank of America*, 7:17-cv-08026-VB (Bankr. S.D.N.Y. March 14, 2018) at Dkt. 23; 14-08216-RDD, at Dkt. 121. These settlements could not be approved if the bankruptcy court did not have nationwide jurisdiction.

While bankruptcy court jurisdiction is often founded on "related to" jurisdiction over the *in rem* debtor's estate, and only one court should administer that *in rem* estate, that is not the only basis for jurisdiction. As Judge Drain explained in *In re Haynes*, actions under 11 U.S.C. §§ 524 and 727 are concerned with prohibiting the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction. *In re Haynes*, 2014 WL 3608891(Bankr. S.D.N.Y. July 22, 2014), at *6-7.

Similarly, bankruptcy jurisdiction founded on 28 U.S.C. § 1334(e), which states that the court where a case is commenced has exclusive jurisdiction over the "debtor's property" and "estate", is not implicated here. "Again, however, the present class action does not involve a debtor's interests in property or property of the estate. . . . It is an action to enforce the discharge, that is, to protect a statutory right prohibiting collection of *in personam* claims against the members of the debtor class that arose pre-bankruptcy." *In re Haynes*, 2014 WL 3608891, at *7.

The question of whether this Court should entertain a nationwide class and thereby enforce the discharge orders of other courts is not a question of jurisdiction. *See Grey v. Petroseed Inc.*, 985 F. Supp. 625, 632-34 (D. S.C. 1996) (question of whether contempt of a court order can be adjudicated by another court is a question of comity, not subject matter jurisdiction.). Once there is jurisdiction, federal courts have a "virtually unflagging obligation to exercise it." *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976). A refusal to exercise subject matter jurisdiction has been described as violation of the separation of powers, an usurpation of

legislative authority, and characterized by the Supreme Court as "treason to the Constitution." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution."). In short, "the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them [in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989).

The Supreme Court has explicitly prohibited limiting the exercise of subject matter jurisdiction on prudential grounds. *Lexmark Intern., Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 128 (2014) ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates.").

As the law stands today, lower courts can avoid issues of subject matter jurisdiction in only two instances: where a case can be disposed of on non-merits, threshold grounds, such as personal jurisdiction or *forum non conveniens*, or under one of the Supreme Court's "carefully defined" abstention doctrines. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716–17 (1996) (discussing the various abstention doctrines available where parallel state court proceedings create problems of federalism). Otherwise the federal court must exercise its subject matter jurisdiction. *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989) ("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . .[t]he right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.").

Judge Drain carefully analyzed and rejected the argument that only the judge who issued the discharge order can enforce it.  Judge Drain concluded that statutory injunctions are fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them.  *In re Haynes*, 2014 WL 3608891 at *6-9; *see also Vick v. NCO Financial Systems, Inc*., 2010 WL 1330637, at *3 (E.D. Tex. M.J., March, 15, 2010) (allowing nationwide class to enforce § 524 injunction), *report and recommendation affirmed*, 2010 WL 1328830 (E.D. Tex. March 30, 2010); *In re Rojas*, 2009 WL 2496807 at *10 (allowing nationwide class in contempt proceedings).  Judge Drain also denied a motion to dismiss class allegations in *Echevarria v. Bank of America Corp*., Case No. 14-08216 (RDD) (April 14, 2015) (Dkt. 83).

While it is true that judges have inherent power to control their cases and proceedings and to sanction behavior that interferes with their lawful orders, *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991), this case is not seeking contempt for violation of a judge-crafted order.  This case seeks contempt for violation of statutory injunction, an important distinction that was explained by Judge Drain in *Haynes*:

> There is, however, a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge under § 727 of the Bankruptcy Code.

*In re Haynes*, 2014 WL 3608891, at *8.

The discharge orders in this case are not unique to any particular judge and the power to enforce them comes from § 105.  Moreover, the discharge orders at issue are made on identical standardized forms that are used for all debtors nationwide.  *Id*. at *8 ("It is not a handcrafted order").  And because the discharge orders are statutorily created, a debtor seeking to enforce them need not establish the factors ordinarily required under for an injunction under Rule 65.  *Id.* ("By

statute, in 524(a)(2), it operates as an injunction.  For the discharge injunction to be granted, the debtor does not have to prove the factors required for an injunction under Federal Rule of Civil Procedure 65.").[12]  All that is required is to show that the debt was subject to discharge and not specifically declared to be non-dischargeable.  *Id.*

Indeed, in *In re Brizinova,* 565 B.R. 488 (E.D.N.Y. 2017), this Court specifically recognized the important distinction between individually-crafted court orders and "purely statutory" orders.  In *Brizinova,* a claim for sanctions arose from statements made in a motion to dismiss that arguably violated an order issued in a different court.  This Court noted the general rule that judge-specific orders be enforced by the issuing judge (and ultimately ruled that the judge-specific order in *Brizinova* follow that rule), but contrasted other situations in which more general enforcement would be acceptable.  Specifically, this Court stated:

> That is not to say that it is never appropriate for one judge to enforce an order that was entered by another judge in a different case.  For example, in the bankruptcy context, courts may distinguish between whether they are asked to enforce a "purely statutory order" such as the automatic stay contained in Bankruptcy Code § 362 or the discharge injunction set forth in Bankruptcy Code § 524, on the one hand, and an injunction individually crafted by the bankruptcy judge, on the other.

*Id.* at 503 (citations omitted).

---

[12] This reasoning is consistent with scholarly analysis on the issue.  For example, then-professor Elizabeth Warren and Jay L. Westbrook also take the position that contempt of a statutory injunction must be treated differently than contempt of a local court order when considering the jurisdiction to enforce such orders.  They criticize cases that limit redress for statutory injunctions to the "issuing court" because, in effect, there is no issuing court.  Elizabeth Warren & Jay L. Westbrook, Class Actions for Post-Petition Wrongs: National Relief Against National Creditors, Am. Bankr. Inst. J. March 2003, at 14, 46-47.  *See also* Kara Bruce, The Debtor Class, 88 Tul. L. Rev. 21, 25,71-74 (2013) (surveying the law and concluding that "courts generally should not hesitate, on jurisdictional grounds, to certify nationwide classes of consumer debtors asserting violations of bankruptcy law" and that rather than limiting § 524 contempt cases to the issuing court, a "court may instead (1) interpret § 524 to provide an implied right of action to enforce its violation, (2) interpret § 105 to permit nationwide class relief for discharge-injunction violations, or (3) find that the limitations on judicial contempt power do not apply with equal force for statutory injunctions.").

The First Circuit followed the same reasoning in *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir. 2000), when it ruled claims for violations of discharge injunctions under § 524 could be brought as a nationwide class. *Bessette* found that § 105 empowered the district court to exercise its equitable powers to facilitate the implementation of other Bankruptcy Code provisions and noted the important distinction between statutory and inherent powers. *Id.* at 445 ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have" including the power to sanction for contempt.) *Bessette* rejected the argument that only the issuing judge could enforce a discharge injunction. According to the Court:

> Appellant seeks enforcement of the statutory injunction set forth in §524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.

*Id.* at 446. *See also id.* at 445 (noting the significance of "dealing, as here, with violation of a purely statutory order."); *Walls* v. *Wells Fargo Bank, NA., 262 B.R. 519, 528 (Bankr. E.D. Cal. 2001)* ("The [automatic stay and discharge] injunctions . . . are Code created, statutory injunctions . . . . Their extent does not depend on individual judges for injunctive relief fashioned by individual bankruptcy judges.").

As Judge Drain also noted, the position that discharge injunctions can be enforced by other judges within a particular district, but not judges from a different district, is logically inconsistent. If the rationale for restricting jurisdiction to a district-wide class is that only the judge who issued the order can adjudicate contempt of it, then it makes no sense to allow judges in the same district to enforce discharge injunctions issued by other judges within the district. In other words, why would a district-wide class be permissible to adjudicate § 524 claims, but a nationwide class be impermissible? Both seemingly run afoul of the rationale that only the judge who issued the order

can adjudicate contempt of it. *See In re Haynes,* 2014 WL 3608891, at *9 (rejecting the district-wide approach and finding nationwide jurisdiction for enforcement of discharge injunctions).[13]

Moreover, as this Court recently suggested at a hearing in another proceeding for contempt under § 524, requiring 94 separate class actions in 94 districts is hardly an appropriate way to expedite litigation. *Ajasa v. Wells Fargo Bank* (*In re Ajasa and Lopez*), Case No. 1-18-01122 (ESS), Tr. of Feb. 28, 2019 hearing, attached as Exhibit U to Carpinello Decl., at 52.

As one commentator noted, class actions are a critical component of ensuring that creditors do not abuse the bankruptcy laws on a widespread basis:

> For large institutional lenders and servicers – classic repeat players in the consumer bankruptcy sphere – it can be both convenient and lucrative to bend consumer bankruptcy's statutory provisions and procedural rules. These violations often pass through bankruptcy without redress, either because the parties of the bankruptcy case do not notice that they have occurred, or because the cost to address the problem overshadows the harm it caused.

Bruce, Closing Consumer Bankruptcy's Enforcement Gap, 69 Baylor Law Review, 480, 482 (2017). Professor Bruce notes that class actions provide debtors with the ability to challenge system-wide abusers like Defendants here. *Id.* at 511-14.

And in a related argument in the companion case of *Golden v. National Collegiate Trust* (*In re Golden*) Case No. 1-17-01005 (ESS) the Court had this to say:

> So what about this problem now? Remember that at the pleading stage you take the allegations as true. You think you're going to disprove them but I have to take them as true. And you're saying that we can't do better than piecemeal litigation? That even with a Federal class action tool that the best we can do, assuming that these allegations are true and that lenders were talking out of both sides of their mouths, assuming the allegations are true - - I'll say it once every 15 seconds for the avoidance of doubt. Maybe.
>
> And I guess this isn't about whether it feels like the equitable result for the Lenders or the Debtors but I - - I really wonder if that's how the Federal Court process works. I'm not sure that it is.

---

[13] Some of the cases that take this logically inconsistent position include: *In re Cline*, 282 B.R. 686 (W.D. Wash. 2002); *In re Beck*, 283 B.R. 163 (Bankr. E.D. Pa. 2002).

April 9, 2018, Tr. at 121, attached as Exhibit W to Carpinello Decl.

Defendants will undoubtedly rely on the recent Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019) where the Fifth Circuit had before it the question of whether one of two plaintiffs who received a discharge in Virginia could bring a contempt proceeding in the Southern District of Texas, where he now lives, to enforce the discharge order and the injunction of § 524.  The court said he could not, and then also stated that its ruling would make a class action seeking to enforce discharges entered in other bankruptcy courts "highly dubious."  941 F.3d at 217.

Respectfully, this Court should not follow *Crocker* for several reasons:

First, the court did not undertake any analysis of the purpose or role of § 7023 of the Bankruptcy Code which expressly allows class actions and, in fact, did not discuss class actions hardly at all in its opinion.

Second, the court relied upon a change in the bankruptcy law in 1978 which omitted language in a section of the Bankruptcy Act that was the predecessor to Bankruptcy Rule 4004(f). That previous language specifically allowed an order of discharge to be registered in any other district and provided that such order "may be enforced in like manner as it would be enforced in the original district."  The court said that the omission of this language in the new Code showed a Congressional intent not to allow bankruptcy courts to enforce discharge orders from other districts.  The court cited no legislative history at all that indicated that such was the Congressional intent.

Third, the effect of the *Crocker* decision is to invalidate Bankruptcy Rule 4004(f) which specifically allow a party to register a discharge order in another district and seek enforcement of

that order as one of the plaintiffs actually did in *Crocker*.  No other court has gone so far as to suggest that Rule 4004(f) is inconsistent with the Bankruptcy Code.

Fourth, the *Crocker* Court relied heavily on the Second Circuit's language in *In re Anderson* to the effect that the Second Circuit "has limited enforcement of discharge injunctions through contempt proceedings to the originating court."  2019 WL 5304619, at *7.  Respectfully, nothing could be further from the truth.  *Anderson* dealt with the question of whether a contempt proceeding brought for violation of discharge orders and § 524 needed to be arbitrated.  In the course of that opinion, the Second Circuit expressly held that the fact that *Anderson* sought to bring a class action did not change the Court's conclusion that arbitration was inappropriate and the Court went on to note that the fresh start to which Anderson and the class members were entitled to was threatened by the Defendants' alleged conduct.

Fifth, the *Crocker* Court relied on the Eleventh Circuit holding in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) which also did not involve a class of debtors seeking to enforce  § 524.  In that case, owners of a cemetery that was faced with a state court class action in Florida for failure to keep proper records of the location of the deceased relatives of the plaintiffs, brought a proceeding in bankruptcy court in Florida to obtain a declaration that the Florida state court claims had been discharged in its Delaware bankruptcy.  The Eleventh Circuit held that the Florida bankruptcy court did not have jurisdiction and that the matter should be brought in Delaware.  The court had no occasion to examine the Congressional intent behind the specific grant of class actions in bankruptcy court, and relied upon § 1334(c) to state that only one court could administer the "property of the estate." The court failed to distinguish between § 1334(c), dealing with property of the estate, and § 1334(b), which gives jurisdiction of  "all civil proceedings arising under Title 11, or arising and/or related to cases under Title 11." *See Haynes*,

2014 WL 3608891, at *7.  The *Alderwoods* Court also stated that "it would wreak havoc on the federal courts to leave enforcement of the injunction order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district."  682 F.3d at 970.  As a general proposition, that is certainly true, but that concern does not speak at all to the issue of whether a class action should be allowed under Bankruptcy Rule 7023 where all the members of the class allege the exact same violation of the statutory injunction of § 524 and violation of the standard discharge order.

Sixth, the *Crocker* decision is clearly in tension with an earlier Fifth Circuit decision, *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748 (5th Cir. 2010).  In that case, the lower court granted only a district-wide class because that is all the plaintiff sought.  On appeal, the court held that the proposed class did not meet the conditions of Rule 23 but, nonetheless, strongly affirmed the power of the bankruptcy court to entertain a class action involving debtors who filed bankruptcy petitions before other judges.  609 F.3d at 754:  "If bankruptcy court jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules."  Nonetheless, the *Crocker* court gave *Wilborn* short shrift because it held that the only issue that was before the court was a district-wide class rather than a national class, ignoring the underlying logic of the *Wilborn* decision.  2019 WL 5304619, at *3.

Finally, the result in *Crocker*, as a policy matter, is utterly unsupportable.  In effect, the Fifth Circuit is saying that individuals who emerge from bankruptcy with limited means and who move to a new jurisdiction, such as one of the plaintiffs in *Crocker*, must return to the jurisdiction of discharge, and retain counsel in order to bring a proceeding to enjoin a discharge violation— even if the violation occurs in the plaintiff's new place of residence. Thus, in *Crocker*, the court held that Navient could not rely on § 523(a)(8)(A)(ii) to justify the collection on thousands of

discharged debts, yet, held that all these thousands of individuals must bring their own individual actions to force Navient to cease its illegal conduct.  And if any of the debtors has moved, they must make a pilgrimage to the original bankruptcy court, even if it is thousands of miles away. That result in unconscionable.

This Court should decline to follow *Crocker* and should instead follow the logic of *Bessette* and *In re Haynes* and certify a national class in this proceeding.

F. **The Court Should Appoint Boies Schiller Flexner, LLP; The Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC; and Fishman Haygood, LLP as Class Counsel.**

Under Rule 23, "a court that certifies a class must also appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Boies Schiller Flexner, LLP; The Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC; and Fishman Haygood, LLP have diligently investigated Plaintiff's claims and those of the Class Members and have devoted, and will continue to devote, ample time and resources to this litigation. As discussed above, all proposed class counsel have considerable experience with class action litigation, especially class actions brought in bankruptcy court and involving violation of § 524.  *See* Capinello Decl. at ¶¶ 21-24; Swanson Decl.; Smith Decl; and Burge Decl.  Accordingly, the Court should appoint George Carpinello and Adam Shaw of Boies Schiller Flexner LLP; Austin Smith of The Smith Law Group; Lynn E. Swanson and Peter N. Freiberg of Jones, Swanson, Huddell & Garrison, LLC; and Jason W. Burge of Fishman Haygood, LLP to serve as class counsel for the proposed Class pursuant to Rule 23(g).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court (1) certify an injunctive relief class pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23(b)(2); and (2) certify a class for monetary relief pursuant to Fed. R. Bankr. P. 7023 and Fed. R. Civ. P. 23(b)(3); and (3) appoint the undersigned as class counsel.

Dated:  December 19, 2019                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:      */s/George F. Carpinello*
         George F. Carpinello
         Adam R. Shaw
         30 South Pearl Street
         Albany, NY  12207
         (518) 434-0600

**SMITH LAW GROUP**
Austin C. Smith, Esq.
3 Mitchell Place, Suite 5
New York, NY  10017

**JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

*Counsel for Plaintiffs*