

The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY  10018-1405
212.808.2700
Fax 212.286.9806

H. Peter Haveles, Jr.
direct dial:  212.808.2755
direct fax:  866.422.3988
havelesp@pepperlaw.com

August 26, 2019

**VIA ECF**

Honorable Elizabeth S. Stong
United States Bankruptcy Court
Conrad B. Duberstein United States Courthouse
271-C Cadman Plaza East
Suite 1595
Brooklyn, New York 11201

    Re:    <u>Golden v. National Collegiate Student Loan Trust 2005-3, et al.</u> –
                Adversary Proceeding No. 17-1005 (ESS)

Dear Judge Stong:

        We are attorneys for defendant Pennsylvania Higher Education Assistance Agency ("PHEAA").  We write in response to the August 15, 2019 letter filed by Adam Shaw, one of the attorneys for plaintiff Tashanna B. Golden (Dkt. No. 163).

        In the August 15 letter, Ms. Golden seeks unlimited access to PHEAA's servicing guidelines and agreements.  As set forth below, such discovery is inappropriate and seeks to probe into issues that are not relevant to this proceeding.

**I.**    **<u>Background</u>**

        In the letter, Ms. Golden misrepresents not only the nature of the discovery dispute between the parties, but also the very nature of this adversary proceeding.  Ms. Golden's claims against PHEAA do not concern PHEAA's servicing of student loans in general.  Rather, this action expressly concerns only what actions PHEAA took with respect to Ms. Golden or other borrowers after there has been the entry of a general discharge order in those borrowers' bankruptcy proceedings.

        This adversary proceeding is brought pursuant to 11 U.S.C. § 523(a)(8), 15 U.S.C. § 1601 and Bankruptcy 7001.  Amended Complaint ¶ 4 (Dkt. No. 32).  Ms. Golden

| Philadelphia | Boston | Washington, D.C. | Los Angeles | New York | Pittsburgh |
| Detroit | Berwyn | Harrisburg | Orange County | Princeton | Silicon Valley | Wilmington |

www.pepperlaw.com

**Pepper Hamilton LLP**
*Attorneys at Law*

Honorable Elizabeth S. Stong
August 26, 2019
Page | 2

amended her initial complaint on October 17, 2017 to add class action allegations, but class certification has not been sought despite Rule 23's clarion direction to do so promptly.

In her Amended Complaint, Ms. Golden alleges that, during the 2006-2007 academic year, while attending University of Pennsylvania Law School, she borrowed $27,500 in federal loans, received another $22,440 in scholarships and grants and borrowed an additional $7,103 in private loans from National Collegiate Trust ("NCT"), which private loans were serviced by PHEAA. Amended Complaint ¶¶ 27-30. Ms. Golden also alleges that during the 2007-2008 academic year, while still in law school, she borrowed $52,347 in federal loans, received another $12,580 in scholarships and grants and borrowed an additional $6,557 and $9,348 in private loans from JP Morgan Chase and Citibank, respectively. *Id.* ¶¶ 34, 36-37. Ms. Golden alleges that she filed for Chapter 7 bankruptcy protection on February 29, 2016, that she listed the private student loans on her Schedule F and that she obtained a discharge order on August 3, 2016. *Id.* ¶¶ 39-40, 42.

Ms. Golden alleges that her loans were discharged by the Court's general discharge order because: (1) the aggregate amounts of federal loans, scholarships/grants, and private loans Ms. Golden borrowed for the 2006-2007 and 2007-2008 academic years exceeded the respective costs of attendance during those years, which Plaintiff alleges to mean that her private loans are not "qualified education loans" within the meaning of 11 U.S.C. § 523(a)(8)(B); and (2) the "NCT Loan was not 'made, insured, or guaranteed by a governmental unit' or made under a 'program funded in whole or part by' a non-profit".[1]

Ms. Golden alleges that "[n]one of the Defendants filed an adversary proceeding to contest discharge" of the loans, but that defendants nonetheless resumed collection efforts by informing Ms. Golden that her loans were not discharged and by demanding and accepting payment.[2] *Id.* ¶¶ 43-44. Ms. Golden alleges that, in resuming collection efforts for her private loans, defendants violated this Court's discharge order and engaged in abusive, deceptive and illegal collection efforts. *Id.* ¶ 45. Ms. Golden alleges that, by resuming collection efforts, defendants violated 11 U.S.C. § 524.

---

[1] Defendants dispute Ms. Golden's allegations that the loans were not non-dischargeable under 11 U.S.C. § 523(a)(8). PHEAA contends that the loan serviced by PHEAA: (1) is "made under [a] program funded in whole or in part by a governmental unit or nonprofit institution" and therefore excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(i); (2) is "an obligation to repay funds received as an educational benefit" and therefore excepted from discharge under 11 U.S.C. § 523(a)(8)(A)(ii); and (3) is a "qualified education" loan and therefore excepted from discharge under 11 U.S.C. § 523(a)(8)(B). PHEAA's Answer ¶¶ 88-90 (Dkt. 124).

[2] Ms. Golden fails to identify which defendants engaged in those activities and what activities in which each such defendant engaged. Ms. Golden has only vaguely asserted that such conduct occurred, and neither PHEAA nor the other defendants are able to identify of what they are accused.

**Pepper Hamilton LLP**
— Attorneys at Law —

Honorable Elizabeth S. Stong
August 26, 2019
Page | 3

## II. The Scope of Discovery

PHEAA is a loan servicer. In other words, pursuant to agreements, PHEAA collects and processes loan payments on behalf of loan owners and deals with the borrowers for the loans that PHEAA services. PHEAA does not originate any of the loans, and origination of the loans occurred prior to the loans being transferred to PHEAA for servicing. Consequently, the issues in this case, as it relates to PHEAA, concern only what steps and actions PHEAA takes after receiving a general discharge order in a borrower's bankruptcy proceeding. None of PHEAA's other servicing responsibilities and activities are the subject of or are implicated by any of the allegations in Ms. Golden's Complaint.

### A. This Case Is Not about the Servicing of Loans

This entire action turns on two issues. The first issue is whether Ms. Golden's loans were discharged by the Court's general discharge order. The second issue is whether, assuming that Ms. Golden's student loans at issue in this proceeding were discharged, what did PHEAA do and did any of PHEAA actions violate the discharge order.[3]

Consequently, the scope of discovery in this case as it relates to PHEAA concerns all of PHEAA's activities with respect to conduct subsequent to the issuance of the general discharge order and nothing else. Ms. Golden is not entitled to have general discovery about all of PHEAA's servicing activities on behalf of loan owners because they have nothing to do with the issues in this case. Indeed, not only would such discovery be irrelevant, but it would also be burdensome and not proportionate to the needs of the case, because Ms. Golden does not need to explore and understand what PHEAA does in terms of any of its other servicing activities to determine whether PHEAA's actions after issuance of the discharge order are contemptuous. In other words, PHEAA has to provide discovery only with respect to how PHEAA deals with loans of bankrupt borrowers after there has been the entry of a general discharge order. *See Sibley v. Choice Hotels International*, CV 14-634 (JS)(AYS), 2015 U.S. Dist. LEXIS 170734, at *6 (E.D.N.Y. Dec. 22, 2015) ("The December 2015 amendment to Rule 26 now defines the scope of discovery to consist of information that is relevant to the parties' 'claims and defenses.' Thus, the discretionary authority to allow discovery of 'any matter relevant to the subject matter involved in the action' has been eliminated.");[4] *see also Grabis v. Navient Solutions, LLC (In re*

---

[3] As to Ms. Golden, Ms. Golden had a co-borrower who remained obligated to repay the loan regardless of whether Ms. Golden's obligations to repay are deemed to be discharged. Consequently, the issues regarding Ms. Golden (as well as the issues relating to other putative class members) implicate numerous other facts beyond just the discharge order, all of which will have to be assessed to determine whether PHEAA engaged in any contemptuous conduct.

[4] *Sibley* traces the legislative history of Rule 26(b)(1) and the amendments made to strike a balance in the obligation to provide discovery. Further, the court observed that the December 1, 2015 amendment to Rule 26(b)(1) eliminated the courts discretionary authority to allow discovery "of any

**Pepper Hamilton LLP**
*Attorneys at Law*

Honorable Elizabeth S. Stong
August 26, 2019
Page | 4

*Grabis)*, Adv. Pro. No. 15-01420-JLG, 2018 Bankr. LEXIS 3665, at *29 (Bankr. S.D.N.Y. Nov. 20, 2018) (Garrity, J.) (sustaining defendant's objections to the production of documents concerning Sallie Mae's general loan servicing operations, finding that such documents would not provide evidence relevant to whether the debtor's student loans were "qualified education loans" or whether the debtor was entitled to a hardship discharge).[5]

PHEAA should not be obligated to produce information concerning its general loan servicing procedures because such information simply is not relevant to any of the claims or defenses in this case.

### B. PHEAA Has Produced All the Relevant Portions of the Servicing Guidelines for Each Loan Owner

Ms. Golden claims that PHEAA is "refusing to produce service agreements." Letter at 1. This assertion is false. PHEAA has produced all documents concerning what PHEAA does with respect to borrowers who have filed bankruptcy, including with respect to what PHEAA does with respect to discharge orders (be they general discharge or specific discharge orders).

In the document request that Ms. Golden propounded to PHEAA, Ms. Golden made a boundless request for servicing agreements. In a December 21, 2018, letter that I sent to Ms. Golden's counsel, PHEAA specifically objected to the scope of those requests, on the ground that they did not relate to the claims set forth in the Complaint. On January 11, 2019, the

---

matter relevant to the subject matter involved in the action[.]" 2015 U.S. Dist. LEXIS 170734 at *5-6. The Court also noted that absent from amended Rule 26 is "the all too familiar, but never correct, iteration of the permissible scope of discovery as including all matter that is 'reasonably calculated to lead to' the discovery of admissible evidence.'" *Id.* at *7.

[5] In *In re Grabis*, the debtor filed for Chapter 7 bankruptcy and received a standard discharge order, 2018 Bankr. LEXIS 3665 at *2, and thereafter reopened his case and initiated an adversary proceeding. *Id.* at *3-4. Among other things, the debtor alleged that Sallie Mae conspired with its servicers to tell student loan borrowers (including the debtor) that they had no rights to relief of those loans in bankruptcy. *See* Third Adversary Complaint, *In re Grabis*, Adv. Proc. No. 15-0142 at 4-5 (Dkt. No. 34). During the course of discovery, the debtor sought documents from Navient concerning any "[i]nstructions, including internal memoranda, directives and other training materials relating to Sallie Mae's advice to borrowers generally, relating to bankruptcy and Sallie Mae's collection of forbearance fees from borrowers." *In re Grabis*, 2018 Bankr. LEXIS 3665 at *29 (emphasis added). Navient objected to this request, and the Court sustained Navient's objection. *Id.* The court held that the documents debtor was seeking "relate[d] to Sallie Mae's loan servicing operations generally," and that such discovery did not satisfy the relevancy requirement of Rule 26(b)(1) because "they will not provide evidence relating to either whether the Private Loans are 'qualified education loans' or whether the Debtor is entitled to a hardship discharge." *Id.* at *29-30.

**Pepper Hamilton LLP**
*Attorneys at Law*

Honorable Elizabeth S. Stong
August 26, 2019
Page | 5

parties had a meet and confer conference to address the issues raised in my December 21 letter, and the parties reached an agreement to narrow those requests. (Ms. Golden has contended that there was never any such agreement, but that contention is incorrect.) Subsequent to the meet and confer, after the first wave of document production and databases were provided in accordance with the agreements reached during the conference, PHEAA served its response to the document request specifically stating objections that were consistent with the agreement reached by the parties on January 11. After the service of that response, Ms. Golden never challenged or sought relief with respect to PHEAA's objections and the limitations under which PHEAA operated when producing documents.

Consistent with its response, after PHEAA produced its database of 126,000 loans of individuals who filed for bankruptcy, PHEAA identified the owners for which it serviced those loans. PHEAA then produced an excerpted copy of PHEAA's servicing guidelines for each owner that set forth PHEAA's bankruptcy servicing procedures for that owner. Subsequent to that production, Ms. Golden's counsel requested that there be a meet and confer conference regarding the excerpted servicing agreement. At that conference, counsel stated that they believe that the excerpts were incomplete and demanded production of the entirety of the servicing guidelines. When I asked during that conference for the reasons why, counsel provided two reasons. First, they contended that they were entitled to see all servicing guidelines on the ground that they were relevant to the case, but could not articulate the nexus to the allegations in the Complaint. Second, they asserted that there were defined terms used in the bankruptcy sections for which they needed definitions.

PHEAA disagreed with the first ground articulated by Ms. Golden's counsel and so advised counsel (both orally and in writing). As to the second ground, PHEAA agreed that supplementation was necessary to address the need for definitions. Accordingly, PHEAA supplemented its production by re-reviewing all of the servicing guidelines, identifying the defined terms used in each and then producing revised excerpts that included pages with the definitions. Ms. Golden now has in its possession a copy of all PHEAA's relevant bankruptcy servicing procedures.

The remainder of PHEAA's servicing agreements and guidelines do not have anything to do with this case. The sections that have been excluded from the excerpted copies address: the general duties of the parties under the agreement; the term (*i.e.*, effective duration) of the agreement; the servicer's affirmative covenants to the owner, including covenants relating to custody of credit agreements, insurance, governmental approvals and compliance with the law; the servicer's obligations concerning the use of confidential information; servicing fees, charges and payments; representations and warranties concerning the servicer's legal status and right to act; servicer and lender liability for noncompliance and losses arising from acts or omissions under the agreement; dispute resolution procedures for disagreements between the servicer and owner; owners' rights to audit/inspect the servicer; rights with respect to terminating the agreement; rights relating to assignment of the servicing agreement; the exclusivity

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Elizabeth S. Stong
August 26, 2019
Page | 6

arrangement between the parties; what loan information the parties must provide to each other; survival of representations after execution, delivery and termination of the servicing agreement; the right to amend the agreement; waiver of the parties' rights under the agreement; enforceability of the agreement; governing law for disputes arising under the agreement; liability in the event of force majeure; right-to-know laws; the parties' obligations to the States or Commonwealths; handling of borrower correspondence; borrower benefits in general, including benefits under the Servicemembers Civil Relief Act; state-by-state servicemembers civil relief laws; loan program interest rates; loan program interest notices; capitalization of loan program interest; loan program origination fees; repayment terms (*i.e.*, timing and frequency of repayment); deferral of interest while a student is still enrolled in school at least half-time; all forms of deferments, including economic hardship deferment, in-school deferment and armed forces deferment; due diligence and early awareness procedures for notifying the servicer that a loan is entering repayment status; various types of forbearances, including administrative forbearance, natural disaster forbearance and death forbearance; alternative repayment options/plans that the servicer may offer; modified repayment schedules; procedures in the event of fraud, forgery and identity theft; skip tracing in the event that the servicer receives notice that a borrower or co-borrower's address or telephone number is invalid; application of payments to the principal amount of the loan; write-offs, write-ups and charge-offs; credit bureau reporting; processes in the event a borrower dies (*i.e.*, death processing); rehabilitation of defaulted loans; procedures in the event of all forms of delinquency; procedures in the event of default; charges for late payments; loan application processing; servicer telephone and internet support; repayment disclosures; processes for combining multiple loans; procedures in the event that a borrower becomes disabled; owner and servicer's diversity efforts; and loan pay-off procedures.

Ms. Golden is effectively requesting to have unfettered access to PHEAA's highly confidential and proprietary servicing information on the mere basis that it may lead to the discovery of relevant information. This concept concerning the scope for discovery under the Federal Rules of Civil Procedure no longer exists, and has been deliberately stricken from Rule 26. As amended in 2015, Rule 26(b)(1) limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." PHEAA should not be compelled to produce its highly confidential and proprietary information on the mere basis of Ms. Golden vague and unsupported assertion that "relevance is a broad and liberal concept."

Ms. Golden has received everything that PHEAA has regarding procedures and practices that PHEAA employs with a borrower once PHEAA is advised that a borrower has a filed a petition under the Bankruptcy Code and what PHEAA does after it has received any orders regarding the disposition of that bankruptcy proceeding or any discharge orders. Thus, PHEAA has produced, subject to its appropriate objection about the scope of discovery, all

**Pepper Hamilton LLP**
Attorneys at Law

Honorable Elizabeth S. Stong
August 26, 2019
Page | 7

documents in its custody, possession or control bearing on the issues raised by Ms. Golden's Complaint.

None of the topics of the sections of the servicing guidelines and agreements that have not been produced are relevant to the issue of what PHEAA does after receiving a general discharge order for a borrower who has filed bankruptcy. Ms. Golden, other than making conclusory assertions, is unable to establish a nexus with non-bankruptcy related provisions of the guidelines and agreements. Consequently, both because the non-produced sections are not relevant and because production of them would be burdensome and open up the door to discovery regarding all of PHEAA's servicing activities, Ms. Golden is not entitled to obtain those materials.

Finally, Ms. Golden's letter misstates and misrepresents PHEAA's position on this discovery dispute. Ms. Golden wrongly asserts that PHEAA has "taken the position that unless the service agreements specifically use the words 'bankruptcy' the agreements are irrelevant to this case." Letter at 1. Ms. Golden also wrongly asserts that PHEAA has refused to produce servicing agreements that do not reference bankruptcy and that such agreements are relevant because PHEAA still follows them even if they do not use the word "bankruptcy." *Id.* at 1-2.

PHEAA and we have conducted a diligent review of PHEAA's servicing guidelines and agreements. In conducting that review, PHEAA did not limit the production of documents to those documents that only use the word "bankruptcy". Rather, PHEAA ensured that it produced all documents that address how PHEAA responds to situations concerning a borrower who has filed bankruptcy. Because bankruptcy is a unique experience, and has special servicing needs that are not triggered by normal servicing requirements, it is not surprising that the excerpts that PHEAA identified for production contain the word "bankruptcy". Nevertheless, PHEAA made sure that nothing was overlooked. Accordingly, PHEAA has produced the excerpts of all of its servicing guidelines relevant to what PHEAA does to service a loan for a borrower who has filed bankruptcy. PHEAA is not aware of any servicing guidelines that are relevant to the claims and defenses in this case that have not been produced.[6]

\*        \*        \*

In sum, it is important to underscore that this case is not about how PHEAA services student loans. This case is not about an attack on the student loan industry generally. This case concerns only whether PHEAA violated the discharge order issued in Ms. Golden's

---

[6] We note that Ms. Golden's suggestion that PHEAA has servicing guidelines that do not contain sections regarding bankruptcy is incorrect. *See* Letter at 1. The guidelines that PHEAA has with all owners contain a section addressing bankruptcy.

**Pepper Hamilton LLP**
*Attorneys at Law*

Honorable Elizabeth S. Stong
August 26, 2019
Page | 8

bankruptcy (and perhaps if certification is ever sought and granted, whether such is the case for other borrowers as well). Accordingly, PHEAA is obligated to provide discovery only with respect to those activities. Ms. Golden does not have a right to use her Complaint as a crowbar to obtain wholesale discovery regarding PHEAA's servicing practices, guidelines, relationships and business activities. In order to go beyond what PHEAA has produced, Ms. Golden must demonstrate a nexus to her claims, and she is unable to do so.

Therefore, Ms. Golden's complaint about PHEAA's production of documents and her demand for relief are unjustified and have no basis.

Thank you for Your Honor's consideration.

Respectfully,

H. Peter Haveles, Jr.

cc:     All Counsel of Record