**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | |
| | ) | **Chapter 11** |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) | **Case No. 08-12540 (HJB)** |
| | ) | |
| Debtor. | ) | |
| | ) | |

**NOTICE OF FILING THE MODIFIED FOURTH AMENDED**
**JOINT PLAN OF REORGANIZATION OF**
**THE EDUCATION RESOURCES INSTITUTE, INC. AND THE**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF AUGUST 26, 2010**

Please take notice that attached hereto is the Modified Fourth Amended Joint Plan of Reorganization of The Education Resources Institute, Inc. (the "Debtor") and the Official Committee of Unsecured Creditors (the "Creditors Committee" and, together with the Debtor, the "Plan Proponents") as of August 26, 2010 (the "August 2010 Plan") and accompanying Supplemental Disclosure.[1]

Dated:  August 30, 2010

Respectfully submitted,

THE EDUCATION RESOURCES
INSTITUTE, INC.

By their attorneys,

 s/Gina Lynn Martin
Gina Lynn Martin, Esq. (BBO# 643801)
Daniel M. Glosband, P.C. (BBO# 195620)
Goodwin Procter  LLP
Exchange Place
Boston, Massachusetts  02109
(617) 570-1000

---

[1]    On August 26, 2010, the Plan Proponents filed the Second Joint Motion to Modify Fourth Amended Joint Plan of Reorganization Pursuant to 11 U.S.C. §1127 and Plan Section 14.4 and for Relief From July 12, 2010 Rulings (the "Second Modification Motion"); the August 2010 Plan was attached to the Second Modification Motion as its Exhibit B and the Supplemental Disclosure was attached as its Exhibit F. The August 2010 Plan and Supplemental Disclosure filed herewith are identical to those filed as exhibits to the Second Modification Motion.

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| THE EDUCATION RESOURCES INSTITUTE, INC., | Case No. 08-12540 (HJB) |
| Debtor. | |

## MODIFIED FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF AUGUST 26, 2010

Dated: August 26, 2010

GOODWIN PROCTER LLP
Daniel M. Glosband
Gina Lynn Martin
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

DUANE MORRIS LLP
Jeffrey D. Sternklar
470 Atlantic Avenue
Boston, MA 02210
(857) 488-4216

LIBC/3875117.2

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINITIONS AND INTERPRETATION** ..............................................................1

| | | |
|---|---|---|
| 1.1 | **Accepting KeyCorp Trust** | 1 |
| 1.2 | **Accepting Make and Hold Lender** | 2 |
| 1.3 | **Accepting Make and Wait Lender** | 2 |
| 1.4 | **Accepting Securitization Trust** | 2 |
| 1.5 | **Additional Share** | 2 |
| 1.6 | **Administrative Expense Claim** | 2 |
| 1.7 | **Allowed** | 2 |
| 1.8 | **Approval Orders** | 2 |
| 1.9 | **Approved Make and Wait Settlement** | 2 |
| 1.10 | **Assumed Agreements** | 3 |
| 1.11 | **Available Cash** | 3 |
| 1.12 | **Ballot** | 3 |
| 1.13 | **Bankruptcy Code** | 3 |
| 1.14 | **Bankruptcy Court** | 3 |
| 1.15 | **Bankruptcy Rules** | 3 |
| 1.16 | **Business Day** | 3 |
| 1.17 | **Cash** | 3 |
| 1.18 | **Causes of Action** | 3 |
| 1.19 | **Chapter 11 Case** | 3 |
| 1.20 | **Claim** | 4 |
| 1.21 | **Claims Agent** | 4 |
| 1.22 | **Class** | 4 |
| 1.23 | **Collateral** | 4 |
| 1.24 | **Collateral Account** | 4 |
| 1.25 | **Collection Contract** | 4 |
| 1.26 | **Commencement Date** | 4 |
| 1.27 | **Confirmation Date** | 4 |
| 1.28 | **Confirmation Hearing** | 4 |
| 1.29 | **Confirmation Order** | 4 |
| 1.30 | **Convenience Class Claim** | 4 |
| 1.31 | **Creditor** | 4 |
| 1.32 | **Creditors' Committee** | 5 |
| 1.33 | **Cure Amount** | 5 |
| 1.34 | **Data** | 5 |
| 1.35 | **Debtor** | 5 |
| 1.36 | **Debtor Releasors** | 5 |
| 1.37 | **Decoder** | 5 |
| 1.38 | **Deficiency Claim** | 5 |
| 1.39 | **Disclosure Statement** | 5 |
| 1.40 | **Disputed** | 5 |

i

| 1.41 | Disputed Claims Reserve | 6 |
|------|------------------------|---|
| 1.42 | Effective Date | 6 |
| 1.43 | Effective Date Anniversary | 6 |
| 1.44 | Entity | 6 |
| 1.45 | ERISA | 6 |
| 1.46 | Estate | 6 |
| 1.47 | February 2010 Plan | 6 |
| 1.48 | Final Order | 6 |
| 1.49 | First Year Eligible Collections | 6 |
| 1.50 | General Unsecured Claim | 7 |
| 1.51 | General Unsecured Claim Distribution | 7 |
| 1.52 | Guaranty Fee | 7 |
| 1.53 | Impaired | 7 |
| 1.54 | IRC | 7 |
| 1.55 | IRS | 7 |
| 1.56 | Joint Pool Account | 7 |
| 1.57 | Joint Pool Account Lenders | 7 |
| 1.58 | Key Access Program Election | 7 |
| 1.59 | Key Access Program Settlement | 7 |
| 1.60 | Key Access Program Deficiency Claim | 7 |
| 1.61 | Key Corp Trust | 8 |
| 1.62 | Litigating Creditor | 8 |
| 1.63 | Litigation Claims Costs | 8 |
| 1.64 | Make and Hold Base Case | 8 |
| 1.65 | Make and Hold Claim | 8 |
| 1.66 | Make and Hold Lender | 8 |
| 1.67 | Make and Hold Settlement | 8 |
| 1.68 | Make and Wait Claim | 8 |
| 1.69 | Make and Wait Lender | 8 |
| 1.70 | Make and Wait Lender Settlement | 8 |
| 1.71 | Make and Wait Lien Dispute | 8 |
| 1.72 | Master Trust | 8 |
| 1.73 | Nellie Mae Adversary Proceeding | 8 |
| 1.74 | Other General Unsecured Claim | 8 |
| 1.75 | Other Trusts | 8 |
| 1.76 | Pension Plan | 9 |
| 1.77 | Person | 9 |
| 1.78 | Pipeline Loans | 9 |
| 1.79 | Plan | 9 |
| 1.80 | Plan Proponents | 9 |
| 1.81 | Plan Supplement | 9 |
| 1.82 | Plan Trust | 9 |
| 1.83 | Plan Trust Agreement | 9 |
| 1.84 | Plan Trust Assets | 9 |
| 1.85 | Plan Trustee | 9 |
| 1.86 | Plan Trustee Advisory Committee | 9 |

LIBC/3875117.2

| | | |
|---|---|---|
| 1.87 | Pledged Account | 10 |
| 1.88 | Pool Account | 10 |
| 1.89 | Postpetition Purchased Loans | 10 |
| 1.90 | Prepetition Recoveries Dispute | 10 |
| 1.91 | Prepetition Recoveries/Rehabs | 10 |
| 1.92 | Priority Claim | 10 |
| 1.93 | Priority Non-Tax Claim | 10 |
| 1.94 | Priority Tax Claim | 10 |
| 1.95 | Pro Rata | 10 |
| 1.96 | Pro Rata Distribution | 10 |
| 1.97 | Record Date | 10 |
| 1.98 | Rejection Bar Date | 10 |
| 1.99 | Released Party | 11 |
| 1.100 | Remaining Plan Trust Assets | 11 |
| 1.101 | Reorganized Articles of Incorporation | 11 |
| 1.102 | Reorganized By-laws | 11 |
| 1.103 | Reorganized TERI | 11 |
| 1.104 | Reorganized TERI Assets | 11 |
| 1.105 | Residual | 11 |
| 1.106 | Restricted Charitable Funds | 11 |
| 1.107 | Restricted Charitable Funds Carve-Out | 11 |
| 1.108 | Restricted Grant Funds | 12 |
| 1.109 | Revised Calculation | 12 |
| 1.110 | Retained Cash | 12 |
| 1.111 | Retained Contracts | 12 |
| 1.112 | Schedules | 12 |
| 1.113 | Second Modification Motion | 12 |
| 1.114 | Second Year Eligible Collections | 12 |
| 1.115 | Secured Claim | 12 |
| 1.116 | Secured Creditor | 12 |
| 1.117 | Securitization Trust | 12 |
| 1.118 | Securitization Trust Deficiency Claim | 12 |
| 1.119 | Securitization Trust Settlement | 12 |
| 1.120 | Securitization Trust Settlement Claim | 13 |
| 1.121 | Securitization Trust Settlement Claim Reduction | 13 |
| 1.122 | Segregated Recoveries Account | 13 |
| 1.123 | Solicitations Procedure Orders | 13 |
| 1.124 | Tax Claim | 13 |
| 1.125 | TERI First Year Share | 13 |
| 1.126 | TERI Loan Net Proceeds | 13 |
| 1.127 | TERI Loan Proceeds | 13 |
| 1.128 | TERI Net Recovery | 13 |
| 1.129 | TERI Owned Loan | 13 |
| 1.130 | TERI Second Year Share | 14 |
| 1.131 | Term | 14 |
| 1.132 | Transfer Taxes | 14 |

LIBC/3875117.2

1.133   Treasury Regulations...................................................................... 14
1.134   Trust Adversary Proceeding ............................................................ 14
1.135   Trusts Order .................................................................................... 14
1.136   Unencumbered Loans Dispute .......................................................... 14
1.137   Unencumbered Trust Loan ............................................................... 14
1.138   Unimpaired ..................................................................................... 14
1.139   United States Trustee ....................................................................... 14
1.140   Unrestricted Cash ........................................................................... 14
1.141   Victory Fund .................................................................................... 15
1.142   Voting Agent .................................................................................... 15
1.143   Voting Record Date .......................................................................... 15
1.144   Other Terms .................................................................................... 15
1.145   Construction Of Certain Terms. ........................................................ 15

**ARTICLE II** TREATMENT OF UNCLASSIFIED CLAIMS -- ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............................................15

2.1     Administrative Expense Claims........................................................... 15
2.2     Pre-Effective Date Professional Fees and Expenses. ........................... 16
2.3     United States Trustee Quarterly Fees and Other Statutory Fees.................. 16
2.4     Priority Tax Claims ......................................................................... 16

**ARTICLE III** CLASSIFICATION OF CLAIMS .................................................16

3.1     Class 1 – Priority Non-Tax Claims.................................................... 17
3.2     Classes 2a – 2p – Secured Claims of Make and Wait Lenders ...................... 17
3.3     Classes 3a – 3q – Secured Claims of Securitization Trusts...................... 19
3.4     Classes 4a – 4k – Secured Claims of the Keycorp Trusts and KeyBank
National Association (other than in its capacity as a Make and Wait
Lender ........................................................................................... 20
3.5     Class 5 – General Unsecured Claims. ............................................... 21
3.6     Class 6 – Convenience Class Claims................................................ 22

**ARTICLE IV** TREATMENT OF CLASSES 2 - 5 .................................................22

4.1     Treatment of Class 2 Claims (Make and Wait Lender Claims)...................... 22
4.2     Treatment of Class 3 Claims (Securitization Trusts). ........................... 22
4.3     Classes 4a – 4k................................................................................ 24
4.4     Class 5. ........................................................................................... 24

**ARTICLE V** VOTING AND DISTRIBUTION .................................................25

5.1     Voting of Claims............................................................................. 25
5.2     Acceptance by Impaired Class.......................................................... 25
5.3     Presumed Acceptances of Plan. ....................................................... 26
5.4     Nonconsensual Confirmation............................................................ 26
5.5     Method of Distributions Under this Plan............................................ 26

iv

**ARTICLE VI** MEANS FOR IMPLEMENTATION AND EXECUTION OF THE
PLAN .................................................................................................................29

    **6.1**    **Reorganized TERI.** ................................................................. 29
    **6.2**    **Compromise and Settlement.** ................................................. 29
    **6.3**    **Plan Trust.** ........................................................................... 36
    **6.4**    **Calculation of TERI Net Recovery.** ....................................... 41
    **6.5**    **Distribution to Secured Creditors.** ........................................ 41
    **6.6**    **Restricted Funds.** ................................................................. 41
    **6.7**    **Operations of Reorganized TERI.** ......................................... 42
    **6.8**    **Closing of the Chapter 11 Case.** ............................................ 42
    **6.9**    **Section 1123(b)(3).** ............................................................... 42
    **6.10**    **Establishment and Implementation of a Most Favored Nations**
        **Clause.** ................................................................................. 42
    **6.11**    **Disposition of Affected Property Pending Resolution of Nellie Mae**
        **Adversary Proceeding.** .......................................................... 43

**ARTICLE VII** PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS .............................................................................................................43

    **7.1**    **No Distribution Pending Allowance.** ..................................... 43
    **7.2**    **Resolution of Disputed Claims.** ............................................ 44
    **7.3**    **Estimation.** .......................................................................... 44
    **7.4**    **Allowance of Disputed Claims.** ............................................. 44
    **7.5**    **Disallowance of Claims Without Further Order of the Bankruptcy**
        **Court.** ................................................................................... 44
    **7.6**    **No Distribution in Respect of Disallowed Claims.** .................. 44

**ARTICLE VIII** TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ..............................................................................................................44

    **8.1**    **Assumption or Rejection of Executory Contracts and Unexpired**
        **Leases.** ................................................................................. 44
    **8.2**    **Approval of Assumption or Rejection of Executory Contracts and**
        **Unexpired Leases.** ................................................................ 45
    **8.3**    **Inclusiveness.** ....................................................................... 45
    **8.4**    **Return of Guaranty Fees.** ..................................................... 46
    **8.5**    **Bar Date for Filing Proofs of Claim Relating to Executory Contracts**
        **and Unexpired Leases Rejected Pursuant to this Plan.** ............. 46
    **8.6**    **Insurance Policies.** ............................................................... 46
    **8.7**    **Compensation and Benefit Programs.** ................................... 46
    **8.8**    **Retiree Benefits.** .................................................................. 46

**ARTICLE IX** CONDITIONS PRECEDENT TO ENTRY OF THE CONFIRMATION
ORDER ...............................................................................................................47

    **9.1**    **Conditions Precedent to entry of the Confirmation Order.** ....... 47

v

| | | |
|---|---|---|
| **9.2** | **Waiver of Conditions**. | 47 |
| **9.3** | **Effect of Failure of Condition to Entry of Confirmation Order**. | 47 |

**ARTICLE X** EFFECTIVENESS OF THE PLAN ................................................................47

| | | |
|---|---|---|
| **10.1** | **Conditions Precedent to the Effective Date**. | 47 |
| **10.2** | **Waiver of Conditions**. | 48 |
| **10.3** | **Effect of Failure of Condition to Entry of Confirmation Order**. | 48 |

**ARTICLE XI** CONSEQUENCES OF A FAILURE OF A CONDITION IN ARTICLES
IX AND X ...........................................................................................................48

**ARTICLE XII** EFFECTS OF CONFIRMATION ...........................................................49

| | | |
|---|---|---|
| **12.1** | **Vesting of Assets**. | 49 |
| **12.2** | **Binding Effect**. | 49 |
| **12.3** | **Discharge**. | 49 |
| **12.4** | **Releases, Injunctions and Exculpation**. | 50 |
| **12.5** | **Release of Assets**. | 51 |
| **12.6** | **Claims Preserved**. | 51 |
| **12.7** | **Residual**. | 52 |
| **12.8** | **ERISA**. | 52 |

**ARTICLE XIII** RETENTION OF JURISDICTION ..........................................................52

| | | |
|---|---|---|
| **13.1** | **Jurisdiction of Bankruptcy Court**. | 52 |

**ARTICLE XIV** MISCELLANEOUS PROVISIONS ..........................................................53

| | | |
|---|---|---|
| **14.1** | **Effectuating Documents and Further Transactions**. | 53 |
| **14.2** | **Exemption from Transfer Taxes**. | 54 |
| **14.3** | **Post-Confirmation Date Fees and Expenses**. | 54 |
| **14.4** | **Modification of Plan**. | 54 |
| **14.5** | **Withdrawal or Revocation**. | 54 |
| **14.6** | **Courts of Competent Jurisdiction**. | 55 |
| **14.7** | **Notices**. | 55 |
| **14.8** | **Severability**. | 56 |
| **14.9** | **Governing Law**. | 56 |
| **14.10** | **Headings**. | 56 |
| **14.11** | **Exhibits**. | 56 |
| **14.12** | **Successors and Assigns**. | 56 |
| **14.13** | **Dissolution of the Creditors' Committee**. | 56 |
| **14.14** | **Courts of Competent Jurisdiction**. | 57 |
| **14.15** | **Plan Supplement**. | 57 |
| **14.16** | **Plan Controls Disclosure Statement; Confirmation Order Controls Plan**. | 57 |
| **14.17** | **Filing of Additional Documents**. | 57 |

LIBC/3875117.2

**14.18** **Tax-Exempt Status**.............................................................................................. 57

**14.19** **Consent to Transfer of Residual**....................................................................... 57

LIBC/3875117.2

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| THE EDUCATION RESOURCES INSTITUTE, INC., | ) Case No. 08-12540 (HJB) |
|  | ) |
| Debtor. | ) |
|  | ) |

## MODIFIED FOURTH AMENDED JOINT PLAN OF REORGANIZATION OF THE EDUCATION RESOURCES INSTITUTE, INC. AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AS OF AUGUST 26, 2010

The Education Resources Institute, Inc., debtor and debtor in possession in the above-captioned Chapter 11 Case, and the Official Committee of Unsecured Creditors, as Plan Proponents, jointly propose the following Modified Fourth Amended Joint Amended Plan of Reorganization of the Education Resources Institute, Inc. and the Official Committee of Unsecured Creditors as of August 26, 2010 pursuant to section 1121(a) of the Bankruptcy Code. The Plan[1] contemplates the reorganization of the Debtor and the resolution of all outstanding claims against the Debtor.

If any Impaired Class of Claims against the Debtor entitled to vote on the Plan does not accept the Plan by the requisite statutory majority required by section 1126(c) of the Bankruptcy Code or as provided for in the Solicitations Procedures Order, then the Plan Proponents may take any of the actions specified herein, including proceeding to confirm the Plan under section 1129(b) of the Bankruptcy Code.

### ARTICLE I

### DEFINITIONS AND INTERPRETATION

**Definitions**. As used in the Plan, the following terms have the respective meanings specified below, unless the context otherwise requires:

    **1.1**    **Accepting KeyCorp Trust** means a KeyCorp Trust that has accepted the Plan and thus has not elected the Key Access Program Election.

---

[1] Capitalized terms used and not otherwise defined herein have the meanings ascribed to them in Article I of this Plan.

*(i)* **Class 3i – The National Collegiate Trust 2006-3**. Class 3i consists of all claims of The National Collegiate Student Loan Trust 2006-3 that are Secured Claims. Class 3i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(j)* **Class 3j – The National Collegiate Trust 2006-4**. Class 3j consists of all claims of The National Collegiate Student Loan Trust 2006-4 that are Secured Claims. Class 3j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(k)* **Class 3k – The National Collegiate Trust 2007-1**. Class 3k consists of all claims of The National Collegiate Student Loan Trust 2007-1 that are Secured Claims. Class 3k is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(l)* **Class 3l – The National Collegiate Trust 2007-2**. Class 3l consists of all claims of The National Collegiate Student Loan Trust 2007-2 that are Secured Claims. Class 3l is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(m)* **Class 3m – The National Collegiate Trust 2001-CP1**. Class 3m consists of all claims of The National Collegiate Trust 2001-CP1 that are Secured Claims. Class 3m is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(n)* **Class 3n – The National Collegiate Trust 2002-CP1**. Class 3n consists of all claims of The National Collegiate Trust 2002-CP1 that are Secured Claims. Class 3n is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

*(o)* **Class 3o – The National Collegiate Master Student Loan Trust I**. Class 3o consists of all claims of The National Collegiate Master Student Loan Trust I. Class 3o is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

*(p)* **Class 3p – The National Collegiate Student Loan Trust 2007-3**. Class 3p consists of all claims of The National Collegiate Student Loan Trust 2007-3. Class 3p is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

*(q)* **Class 3q – The National Collegiate Student Loan Trust 2007-4**. Class 3q consists of all claims of The National Collegiate Student Loan Trust 2007-4. Class 3q is Impaired by this Plan and is entitled to vote to accept or reject the Plan.

**3.4    Classes 4a – 4k – Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender**. Class 4 consists of the Secured Claims of the Keycorp Trusts and KeyBank National Association (other than in its capacity as a Make and Wait Lender). Each Allowed Secured Claim in Class 4 shall be considered to be a separate subclass within Class 4, and each such subclass shall be deemed to be a separate class for purposes of this Plan and of Bankruptcy Code Sections 1122, 1123, 1126, and 1129. Each subclass in Class 4 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

LIBC/3875117.2

(a) **Class 4a – KSLT 1999-A**. Class 4a consists of all claims of KSLT 1999-A that are Secured Claims.  Class 4a is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(b) **Class 4b – KSLT 1999-B**. Class 4b consists of all claims of KSLT 1999-B that are Secured Claims.  Class 4b is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(c) **Class 4c – KSLT 2000-A**. Class 4c consists of all claims of KSLT 2000-A that are Secured Claims.  Class 4c is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(d) **Class 4d – KSLT 2000-B**. Class 4d consists of all claims of KSLT 2000-B that are Secured Claims.  Class 4d is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(e) **Class 4e – KSLT 2001-A**. Class 4e consists of all claims of KSLT 2001-A that are Secured Claims.  Class 4e is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(f) **Class 4f – KSLT 2002-A**. Class 4f consists of all claims of KSLT 2002-A that are Secured Claims.  Class 4f is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(g) **Class 4g – KSLT 2003-A**. Class 4g consists of all claims of KSLT 2003-A that are Secured Claims.  Class 4g is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(h) **Class 4h – KSLT 2004-A**. Class 4h consists of all claims of KSLT 2004-A that are Secured Claims.  Class 4h is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(i) **Class 4i – KSLT 2005-A**. Class 4i consists of all claims of KSLT 2005-A that are Secured Claims.  Class 4i is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(j) **Class 4j – KSLT 2006-A**. Class 4j consists of all claims of KSLT 2006-A that are Secured Claims.  Class 4j is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

(k) **Class 4k – KeyBank National Association.**  Class 4k consists of all Claims of KeyBank, National Association (other than in its capacity as a Make and Wait Lender).  Class 4k is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

3.5    **Class 5 – General Unsecured Claims**.  Class 5 consists of all General Unsecured Claims.  Class 5 is Impaired by this Plan and is entitled to vote to accept or reject this Plan.

LIBC/3875117.2

**3.6    Class 6 – Convenience Class Claims.** Class 6 consists of Convenience Class Claims.

*(a)* **Impairment and Voting.** Class 6 is Unimpaired by this Plan. Each holder of an Allowed Claim in Class 6 is deemed to have accepted this Plan.

*(b)* **Distributions.** In full and complete satisfaction, settlement and release of and in exchange for the Convenience Class Claims, each holder of an Allowed Convenience Class Claim will be paid in full from Available Cash, except to the extent such holder of an Allowed Convenience Class Claim agrees to less favorable treatment, on the later of the Effective Date and the date such Convenience Class Claim becomes an Allowed Convenience Class Claim.

## ARTICLE IV

## TREATMENT OF CLASSES 2 - 5

**4.1    Treatment of Class 2 Claims (Make and Wait Lender Claims)**

*(a)* **Classes 2a – 2p that accept the Plan.** The holder of a Claim in each of classes 2a – 2p that accepts the Plan or that is deemed to accept the Plan shall be deemed to have accepted the Make and Wait Lender Settlement, and shall receive the distribution provided for and otherwise be treated in accordance with in the Make and Wait Lender Settlement, as described in Section 6.2(a) of this Plan.

*(b)* **Classes 2a – 2p that reject the Plan.** The holder of a Claim in each of classes 2a – 2p that rejects the Plan or is deemed to reject the Plan shall be deemed to opt out of and reject the Make and Wait Lender Settlement, and as to Claims in such rejecting Classes (A) the Allowed amount of the Secured Claim (if any) in such rejecting Classes will be determined by the Bankruptcy Court pursuant to 11 U.S.C. §502, and the Plan Trustee will seek to have such Secured Claim, if any, determined on any appropriate basis as determined by the Plan Trustee, (B) the Collateral Accounts allegedly securing the Claims in such rejecting Classes will not be released to the applicable Make and Wait Lender in such rejecting Class unless the Court determines pursuant to one or more Final Orders that such holders hold Allowed Secured Claims, in which event such holder's Collateral Account, if any, shall be released to such holder to the extent of available funds and to the extent necessary to satisfy such Allowed Secured Claim, with the excess, if any, released to the Plan Trustee.

*(c)* **Disposition of Collateral Accounts Pending Resolution for Classes 2a – 2p that reject the Plan.** On the Effective Date (or as soon thereafter as reasonably practicable) with respect to a Make and Wait Lender that rejects or is deemed to reject this Plan and is thereby deemed to opt out of the Make and Wait Lender Settlement, the funds in the Pledged Account (whether earned or accrued) as of the Effective Date shall be transferred to the Plan Trustee or its designee(s) in escrow pursuant to the terms of one or more escrow agreements.

**4.2    Treatment of Class 3 Claims (Securitization Trusts).**

22

(a) **Classes 3a –3q that accept the Plan**.  The holder of a Claim in each of classes 3a – 3q that accepts the Plan or that is deemed to accept the Plan pursuant to the Solicitations Procedure Order shall be deemed to have accepted the Securitization Trust Settlement, and shall receive the distribution provided for and otherwise be treated in accordance with in the Securitization Trust Settlement, as described in Section 6.2(c) of this Plan.

(b) **Classes 3a – 3q that reject the Plan**.  The holder of a Claim in each of classes 3a – 3q that rejects the Plan or is deemed to reject the Plan (including, without limitation, pursuant to the Solicitations Procedure Order) shall be deemed to opt out of and reject the Securitization Trust Settlement, and as to Claims in such rejecting Classes (A) the Allowed amount of the Secured Claim (if any) of the Claims in such rejecting Classes will be determined by the Bankruptcy Court pursuant to 11 U.S.C. §502, and the Plan Trustee will seek to have such Secured Claim, if any, determined on any appropriate basis as determined by the Plan Trustee, (B) the Trust Adversary Proceeding against the holders of Claims in such rejecting Classes will proceed in the Bankruptcy Court, (C) the Collateral Accounts allegedly securing the Claims in such rejecting Classes will not be released to the Indenture Trustee (or its servicer or any other representative) on behalf of the holder of such Claim in such rejecting Class (or such other party as the Indenture Trustee may designate) unless the Court determines pursuant to one or more Final Orders that such holders hold Allowed Secured Claims, in which event such holder's Collateral Account, if any, shall be released to such holder to the extent of available funds and to the extent necessary to satisfy such Allowed Secured Claim, with the excess, if any, released to the Plan Trustee, and (D) such Securitization Trust shall reserve the right in the Trust Adversary Proceeding to contest the Debtor's assertion that it acquired title to defaulted loans sold or transferred to the Debtor or its agent as a result of such sale or transfer.

(c) **Disposition of Affected Property Pending Resolution of Trust Adversary Proceeding for Classes 3a – 3q that reject the Plan**.  On the Effective Date (or as soon thereafter as reasonably practicable) with respect to a Securitization Trust that rejects or is deemed to reject this Plan and is thereby deemed to opt out of the Securitization Trust Settlement, all property of the Estate or any Securitization Trust which is the subject of the Trust Adversary Proceeding as designated in writing to the Plan Proponents by such rejecting Securitization Trust prior to the Confirmation Hearing (with any dispute concerning such designation to be addressed at the Confirmation Hearing) and all property allocable to such rejecting Securitization Trust on Schedule B, the Cash, any Unencumbered Trust Loans in which such Securitization Trust claims a security interest or other interest and any prepetition recoveries subject to the Prepetition Recoveries Dispute (to the extent that such Cash exceeds the amount set forth on Schedule B) and all the defaulted loans that were purchased prior to or after the Commencement Date, by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable Securitization Trust and paid for by the Debtor with funds in the applicable Pledged Account shall, (i) in the case of Cash, be transferred to U.S. Bank National Association ("U.S. Bank") and held by U.S. Bank in escrow pursuant to the terms of one or more escrow agreements among U.S. Bank in its capacity as escrow agent for the applicable Securitization Trust, the administrator of the Securitization Trust and the Plan Trustee and (ii) in the case of defaulted loans that were purchased by the Debtor, be held by the Reorganized Debtor or the Plan Trustee subject to the Claim and rights asserted by such rejecting Securitization Trust, with any recoveries (net of costs of collection) on such defaulted loans received after the Effective

23

Date to be transferred to U.S. Bank as escrow agent to be held in escrow on the same terms as Cash transferred on the Effective Date. The escrow agreement(s) shall be mutually acceptable to U.S. Bank, the administrator of the Securitization Trust and the Plan Trustee. Such escrowed funds and defaulted loans  (i) shall be held in the applicable escrow account, in the case of Cash, or by the Reorganized Debtor or the Plan Trustee, in the case of defaulted loans, to be released upon the earlier of (1) one or more Final Orders of the Bankruptcy Court (as applicable to such Trust), or (2) pursuant to joint written instruction of the Plan Trustee, the applicable Securitization Trust and/or indenture trustee for such Trust, (ii) shall, as to the funds, be invested by U.S. Bank as escrow agent in accordance with the written instructions of the Plan Trustee and the administrator of the Securitization Trusts, and investment earnings on such funds shall be added to the fund and released as provided above, and (iii) shall be subject to such other matters as shall be agreed to by the parties to such escrow agreement (including payment of customary fees and other bank charges). Notwithstanding such transfer of funds to the escrow account or accounts, or the retention of such defaulted loans subject to the rights and claims of the rejecting Securitization Trust, each of the Plan Trustee, rejecting Securitization Trust and indenture trustee of such rejecting Securitization Trust reserve all rights, and such transfer(s) to the escrow account or accounts are subject to the rights of the Plan Trustee, rejecting Securitization Trust and indenture trustee, with respect to recoveries and other funds transferred by the Debtor to the applicable Pledged Account on or after the Commencement Date, together with any interest or other earnings thereon, and with respect to such defaulted loans, including, without limitation, the rights of the parties with respect to the extent, priority, validity or existence of any alleged security interest in such defaulted loans, recoveries and funds.

### 4.3    Classes 4a – 4k.

(a) **Classes 4a – 4k that do not make the Key Access Program Election**. Each Accepting KeyCorp Trust within Classes 4a – 4j and (if it accepts the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall receive the distribution provided for in the Key Access Program Settlement, as described in Section 6.2(d) of this Plan, and shall have an Allowed Deficiency Claim in the amount listed in the "Key Access Program Decoder Settlement Claim" column of the attached Schedule C.

(b) **Classes 4a – 4k that make the Key Access Program Election**. Each of Classes 4a  - 4k in which the holders of Claims in such Class reject the Plan, and thereby make the Key Access Program Election, shall be deemed to opt out of the Key Access Program Settlement. The Allowance or disallowance amounts of the Claims in such rejecting Classes shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

### 4.4    Class 5.

(a) **Make and Hold Claims**. Each Accepting Make and Hold Lender shall receive the treatment described in section 6.2(b). The Allowance or disallowance of a Class 5 Claim of a Make and Hold Lender that rejects the Plan shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

LIBC/3875117.2

*(b)* **Make and Wait Deficiency Claims**. Each Accepting Make and Wait Lender shall receive the treatment described in section 6.2(a). The Allowance or disallowance of a Class 5 Deficiency Claim of a Make and Wait Lender that rejects the Plan, if any, shall have its Deficiency Claim (if any) determined in accordance with Section 4.1 of this Plan.

*(c)* **Securitization Trust Deficiency Claims**. Each Securitization Trust that accepts this Plan and, thereby, the Securitization Trust Settlement shall receive the treatment described in Section 6.2(c). The Allowance or disallowance of a Class 5 Deficiency Claim (if any) of a Securitization Trust that rejects the Plan, and thereby, the Securitization Trust Settlement, shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

*(d)* **Key Access Deficiency Claims**. Each Accepting KeyCorp Trust within Classes 4a – 4j and (if it accepts the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall receive the treatment described in section 6.2(d). The Allowance or disallowance of a Class 5 Deficiency Claim (if any) of a KeyCorp Trust within Classes 4a – 4j that rejects the Plan and (if it rejects the Plan) KeyBank National Association (other than in its capacity as a Make and Wait Lender), shall be determined by the Bankruptcy Court after the Effective Date in accordance with 11 U.S.C. §502.

*(e)* **Other General Unsecured Claims**. Unless otherwise provided in this Plan, the Allowed amount of Other General Unsecured Claims will be determined by the Bankruptcy Court in accordance with section 502 of the Bankruptcy Code.

## ARTICLE V

## VOTING AND DISTRIBUTION

**5.1    Voting of Claims**. Each holder of an Allowed Claim as of the Voting Record Date in Classes 2a – 2p, Classes 3a – 3q, Class 4a-4k, Class 5 or the holder of a Claim that has been temporarily allowed for voting purposes only under Bankruptcy Rule 3018(a) pursuant to the Approval Order, the Solicitation Procedures Order or any subsequently entered order will be entitled to vote to accept or reject this Plan, which vote may be amended prior to the deadline for submitting votes. For voting purposes, and consistent with the provisions of the Solicitations Procedure Order, the amount of Claim that a holder of a Claim in Classes 2a-2p, Classes 3a-3q and Classes 4a-4k that is entitled to vote, may vote in respect of its General Unsecured Claim in Class 5 (if any) will be the amount asserted by such holder in its proof of Claim, or such amount as may be agreed upon pursuant to a stipulated order entered by the Court or as otherwise determined by the Court, less the amount held in the Collateral Account as of July 31, 2009. For voting purposes, and consistent with the provisions of the Approval Order or the Solicitations Procedure Order, the amount of Make and Hold Claims in Class 5 will be temporarily allowed and permitted to vote in the amount asserted by such Creditor in such Creditor's Proof of Claim, or such amount as may be agreed upon pursuant to a stipulated order entered by the Court or as otherwise determined by the Court,.

**5.2    Acceptance by Impaired Class**. Consistent with section 1126(c) of the Bankruptcy Code, and except as provided for in section 1126(e) of the Bankruptcy Code, a Class

25

of creditors will have accepted this Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Allowed Claims of such Class or holders of Claims permitted to vote pursuant to the provisions of the Solicitations Procedure Order that have timely and properly voted to accept or reject this Plan. The Solicitations Procedure Order, to the extent and as applicable, shall govern the voting by the Securitization Trusts, the Other Trusts and the KeyCorp Trusts.

    **5.3**    **Presumed Acceptances of Plan**. Classes 1 and 6 are not Impaired under this Plan and, therefore, are conclusively presumed to have accepted this Plan.

    **5.4**    **Nonconsensual Confirmation**. If any Impaired Class of Claims entitled to vote will not accept this Plan by the requisite statutory majority provided in sections 1126(c) and (d) of the Bankruptcy Code, the Plan Proponents may request that the Bankruptcy Court confirm this Plan pursuant to section 1129(b) of the Bankruptcy Code.

    **5.5**    **Method of Distributions Under this Plan**.

    *(a)* **Distributions Generally**.

        (i)    Reorganized TERI will make all distributions required by this Plan other than those to be made by the Plan Trustee.

        (ii)    The Plan Trustee will make all other distributions from the Plan Trust to holders of Claims in accordance with this Plan and the terms and conditions set forth in the Plan Trust Agreement.

    *(b)* **Distributions of Cash**. Any payment of Cash made by Reorganized TERI or the Plan Trustee pursuant to this Plan may be made at the option of such party either by check drawn on a domestic bank or by wire transfer from a domestic bank. Any Cash to be distributed from a Collateral Account or from the Segregated Recoveries Account pursuant to the Plan will be adjusted for recoveries, earnings net of losses, interest and bank fees or charges (including without limitation costs and fees arising out of liquidation of any investment) accrued to the date of distribution, and provisions of the Plan (including Schedules to the Plan) specifying the amount, nature or source of a distribution of Cash shall be deemed subject to any such adjustments.

    *(c)* **Distributions Free and Clear**. Except as otherwise provided herein, any distributions or transfers by or on behalf of the Debtor under this Plan, including, but not limited to, distributions to any holder of an Allowed Claim, will be free and clear of any liens, claims, and encumbrances, and no other entity will have any interest – legal, beneficial, or otherwise – in assets transferred pursuant to this Plan. Notwithstanding the foregoing, all obligors of student loans transferred to the Plan Trustee may assert defenses (but not counterclaims or claims for affirmative relief) thereunder to the same extent, and with the same validity, as such defenses may be asserted against the Debtor as of the Effective Date.

    *(d)* **Timing of Performance**. In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such

LIBC/3875117.2

payment or the performance of such act may be completed on the next succeeding Business Day, but will be deemed to have been completed as of the required date. To the extent that there are receipts, accruals or adjustments to Cash in a Collateral Account or the Segregated Recoveries Account or other assets to be distributed pursuant to the Plan that occur subsequent to the date specified for a distribution, then the Debtor, Reorganized Debtor or the Plan Trustee, as appropriate, will make subsequent distributions of such Cash or other assets, if any, as soon as practicable after receipt by the Debtor, Reorganized Debtor or Plan Trustee, as applicable.

(e) **Delivery of Distributions**. Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim will be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor. The holder must notify Reorganized TERI or the Plan Trustee, as applicable, in writing of a change of address, in the case of holders of transferred Claims only, by the filing of a proof of claim or statement pursuant to Bankruptcy Rule 3001(e) by such holder or transferee that contains an address for such holder different from the address of such holder as set forth in the Schedules. Neither Reorganized TERI nor the Plan Trustee will be liable for any distribution sent to the address of record of a holder in the absence of the written change thereof as provided herein. Notwithstanding the foregoing, with respect to each Securitization Trust, Other Trusts and the KeyCorp Trusts, distributions in respect of an Allowed Claim of such Trust including defaulted loans (if any), shall be made to the Trust, subject to the lien and security interest of the applicable indenture trustee for such Trust, and shall be delivered to the trustee or indenture trustee for such Trust (as appropriate) or to such other person as may be designated by the indenture trustee or trustee in writing delivered to Reorganized TERI or the Plan Trustee, as applicable, provided that loan documents, including the related student loan note in respect of a defaulted loan, shall be delivered by the entity that has possession of such loan documents, to the applicable servicer as custodian and agent for the indenture trustee or trustee , to be held under the applicable custody agreement among such servicer as custodian for the indenture trustee or trustee and the Trust.

(f) **Distributions to Holders as of Record Date**. As of the close of business on the Record Date, the claims register for the Debtor will be closed and there will be no further changes made to the identity of the record holder of any Claim. Neither Reorganized TERI nor the Plan Trustee will have any obligation to recognize any transfer of any Claim occurring after the Record Date. Reorganized TERI and the Plan Trustee will instead be authorized and entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the applicable claims register at the close of business on the Record Date.

(g) **Undeliverable and Unclaimed Distributions**. If any Claim holder's distribution is returned as undeliverable, no further distributions to such holder will be made unless and until the holder notifies Reorganized TERI or the Plan Trustee, as appropriate, in writing of such holder's then-current address, at which time all missed distributions will, subject to the last sentence of this paragraph, be made as soon as is practicable to such holder, without interest. Checks issued by Reorganized TERI or the Plan Trustee in respect of Allowed Claims will be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Requests for re-issuance of any check will be made in accordance with the notice provisions of this Plan to Reorganized TERI or the Plan Trustee, as appropriate, by the holder of the Allowed Claim to whom such check originally was issued. All claims for

LIBC/3875117.2

undeliverable distributions or voided checks will be made on or before one hundred and twenty (120) days after the date such undeliverable distribution was initially made. After such dates, all such distributions will be deemed unclaimed property under section 347(b) of the Bankruptcy Code and will become unencumbered Cash of Reorganized TERI, or the Plan Trust, as appropriate pursuant to this Plan. The holder of any Claim for which any undeliverable distribution has been deemed unclaimed property under section 347(b) of the Bankruptcy Code will not be entitled to any other or further distribution under this Plan on account of such Claim.

(h) **Setoffs**. Except with respect to an Allowed Claim that is Allowed as part of a compromise and settlement approved pursuant to a Final Order (including the settlements set forth in Section 6.2 hereof), to the extent permitted under the Bankruptcy Code or other applicable law, Reorganized TERI, or the Plan Trustee, as applicable, may set off against or recoup from any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), the claims, rights and Causes of Action of any nature that the Debtor has against the holder of such Allowed Claim.

(i) **Application of Distributions**. Distributions to any holder of an Allowed Claim will be applied first to the satisfaction of the principal portion (as determined for federal income tax purposes) of any such Allowed Claim and thereafter to the remaining portion of such Allowed Claim, if any, unless the application is governed by an indenture or other governing document in which case the terms of such documents shall govern. No provision of this Plan or Confirmation Order shall modify any charging lien or other right of the indenture trustee, trustee or other entity in another representative capacity to reimburse itself for fees, expenses and disbursements against any distribution.

(j) **Withholding and Reporting Requirements**. In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Debtor or the Plan Trustee, as applicable, will comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan will be subject to any such withholding or reporting requirements. ***The Debtor and the Plan Trustee will have the right to withhold distributions to any holder of a Claim, and any such Claim shall not become an Allowed Claim, notwithstanding any other provision of this Plan, unless and until such holder of a Claim executes and delivers to the Plan Trustee an Internal Revenue Service Form W-9.*** Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under this Plan will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit on account of such distribution, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under this Plan has the right, but not the obligation, to refrain from making a distribution until the holder of the Allowed Claim has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(k) **Distribution**. In full and complete satisfaction, settlement and release of and in exchange for the General Unsecured Claims, each holder of an Allowed General Unsecured Claim will receive the General Unsecured Claim Distribution.

28

## ARTICLE VI

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

### 6.1    Reorganized TERI.

*(a) Reorganized Articles of Incorporation and Reorganized By-laws*. Reorganized TERI will adopt Reorganized Articles of Incorporation and Reorganized By-laws prior to, but effective as of, the Effective Date, which will be included in this Plan Supplement. Prior to the closing of TERI's Chapter 11 Case, any amendments to Reorganized TERI's Articles of Incorporation and Reorganized By-laws will be filed with the Bankruptcy Court.

*(b) Boards of Directors and Officers*. The identities of the members of the initial Board of Directors and the initial officers of Reorganized TERI will be disclosed in the Plan Supplement and will be in effect as of the Effective Date.

*(c) Reorganized TERI (Not-For-Profit)*. Reorganized TERI will, as of the Effective Date, remain a not-for-profit corporation.

*(d) Retention of Reorganized TERI Assets*. On and after the Effective Date, Reorganized TERI will retain all rights, title, and interests in the Reorganized TERI Assets.

### 6.2    Compromise and Settlement.

*(a) Make and Wait Lender Settlement*. Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting Make and Wait Lender will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and such Accepting Make and Wait Lender, including the amounts, allowance, relative priority and treatment of the Secured Claim and the Deficiency Claim (if any) of such Accepting Make and Wait Lender.

(i)    **Claims of An Accepting Make and Wait Lender**.  Each Make and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed to accept the Plan, and, thereby, the Make and Wait Lender Settlement (1) will have an Allowed Secured Claim in the applicable subclass of Class 2 in the amount set forth in the column labeled "Payment to Accepting Make and Wait Lender from Collateral Account" on attached Schedule A, and will have an Allowed Unsecured Claim that will be treated as a Class 5 Claim in the amount, if any, set forth in the "Make and Wait Lender Decoder Deficiency Claim (If Any)" column of the attached Schedule A.

(ii)    **Release of Make and Wait Lender Equity and Make and Wait Lien Dispute Amount to Plan Trustee by Accepting Make and Wait Lender**. Each Make and Wait Lender in Classes 2a – 2p that accepts this Plan or is deemed to accept the Plan, and, thereby, the Make and Wait Lender Settlement, will release its interest in the amount, if any and as applicable, in the column labeled "Make and Wait Lender Payment Amount (If Any)" in the attached Schedule A

29

and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii)    **Disbursement of Remainder of Collateral Account to Accepting Make and Wait Lender.**  On the Effective Date, and subject to section 5.5 above, the Debtor shall be deemed to release from the applicable Collateral Account, and such amount shall be remitted, to each Accepting Make and Wait Lender, in full satisfaction of such Accepting Make and Wait Lender's Allowed Secured Class 2 Claim, the applicable amount for such Accepting Make and Wait Lender in the column labeled "Payment to Accepting Make and Wait Lender from Collateral Account" on attached Schedule A, as adjusted pursuant to section 5.5 above..

(iv)    **Retention by Accepting Make and Wait Lender of Loans Not Purchased by the Debtor**.  Each Accepting Make and Wait Lender will retain all loans that were not purchased by the Debtor as of the Effective Date.

(vi)    **Bankruptcy Court Approval of Make and Wait Lender Settlement**. For each Accepting Make and Wait Lender, entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make and Wait Lender Settlement and the Bankruptcy Court's finding that such settlement is fair, equitable and reasonable and in the best interests of the Debtor, this Plan, Reorganized TERI and all Creditors.

(vii)    **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of each Accepting Make and Wait Lender receiving the treatment provided by the Make and Wait Lender Settlement, subject to and upon implementation of the Make and Wait Lender Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(viii)    **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Make and Wait Lenders and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Accepting Make and Wait Lenders, all Debtor's claims or rights to set off any Guaranty Fees, basis point fees and other interests in loans held by such Make and Wait Lenders will be deemed waived.

*(b)* **Make and Hold Settlement**.  Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by an Accepting Make and Hold Lender will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and such Accepting Make and Hold Lender, including the amounts, allowance, relative priority and treatment of the Make and Hold Claims of such Accepting Make and Hold Lender.

LIBC/3875117.2

     (i)    **Claims of An Accepting Make and Hold Lender**. An Accepting Make and Hold Lender shall have an Allowed Claim calculated as the larger of the Claim calculated by the Decoder and the Claim calculated by the Debtor's Base Case, as set forth in the column labeled "Make and Hold Lender Settlement Claim" on attached <u>Schedule D</u>. All such claims will be treated as Allowed Class 5 Claims.

     (ii)    **Distributions to Accepting Make and Hold Lenders and Effectiveness of Make and Hold Settlement**. All distributions to Accepting Make and Hold Lenders pursuant to this Plan will be made on account of and in consideration of the Make and Hold Lender Settlement, which, upon the Effective Date, will be binding on all Accepting Make and Hold Lenders, the Plan Proponents, and Reorganized TERI. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the Make and Hold Lender Settlement and the Bankruptcy Court's finding that such Make and Hold Lender Settlement is fair, reasonable, equitable and in the best interests of the Accepting Make and Hold Lenders, the Plan Proponents and Reorganized TERI.

     (iii)    **Rejection of Make and Hold Guaranty Agreements**. On the Effective Date, all Guaranty Agreements executed in favor of the Make and Hold Lenders and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Accepting Make and Hold Lenders, all Debtor's claims or rights to set off any Guaranty Fees, basis point fees and other interests in loans held by such Make and Hold Lenders will be deemed waived.

     *(c)* **Securitization Trust Settlement.** Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 the acceptance of this Plan by a Securitization Trust will constitute a good faith compromise and settlement of all Claims, Causes of Action and controversies between the Debtor and each Securitization Trust receiving the treatment provided by the Securitization Trust Settlement, including, without limitation, the amounts, allowance, relative priority and treatment of the Secured Claim and Deficiency Claim of each Securitization Trust and any other claim, whether a general unsecured claim, priority claim or administrative expenses claim that each such Securitization Trust, the Indenture Trustee under the Indenture for such Securitization Trust, or the administrator for such Securitization Trust (in such capacity) has asserted or might assert against the Debtor or its estate. The Securitization Trust Settlement includes the Ambac Compromise and the Securitization Trust Modifications as defined and described in the Second Modification Motion. Notwithstanding the foregoing, nothing in this Plan shall bar any entity from seeking Allowance of an Administrative Expense Claim arising under 11 U.S.C. §503(b)(3)(D) and (4) ("Substantial Contribution Claim"), and as to any such Substantial Contribution Claim, the parties reserve all their respective rights, claims and defenses.

31

(i)    **Claims of An Accepting Securitization Trust**.  Each Accepting Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement  (A) will have an Allowed Secured Claim in (a) the amount set forth in the column captioned "Total Cash," as specified for each applicable subclass of Class 3, on attached Schedule B, all as adjusted pursuant section 5.5 above, and (b) the value of all defaulted loans that were purchased prior to the Commencement Date, by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable Securitization Trust and paid for by the Debtor with funds in the applicable Pledged Account, (B) will have an Allowed Unsecured Claim that will be treated as a Class 5 Claim in the amount set forth in the column captioned "Adjusted Securitization Trust Settlement Claim," as specified for each applicable subclass of Class 3, on the attached Schedule B.[2]

(ii)    **Release of Securitization Trust Equity by Accepting Securitization Trust**.  Each Securitization Trust in Classes 3a – 3q that accepts this Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust Settlement, will release its interest in the amount, if any and as applicable, in the column labeled "Securitization Trust Decoder Equity (Rounded)" in the attached Schedule B and shall be deemed to have authorized and instructed the Debtor to transfer such amount to the Plan Trustee on the Effective Date free and clear of any and all claims, interests, liens and encumbrances.

(iii)    **Disbursement of Cash and Transfer of Defaulted Loans to Accepting Securitization Trust.**  On the Effective Date, or as soon thereafter as is practicable, and except with respect to Classes 3m and 3n, the Debtor shall (a) distribute the Total Cash in the amount described in section 6.2(c)(i) above and (b) shall transfer all of the Debtor's right, title and interest in the defaulted loans that were purchased prior to the Commencement Date, by or on behalf of the Debtor or its agent (acting in such capacity) from the applicable

---

[2] Total Cash is the sum of the amounts listed in Columns C through G of Schedule B, which include the amounts in each Pledged Account (less any equity), each Securitization Trust's share of the Segregated Recoveries Account and Prepetition Recoveries/Rehabs amounts and the amounts to be paid in settlement of the Prepetition Recoveries Dispute and the Unencumbered Loans Dispute discussed in the Second Modification Motion. The Adjusted Securitization Trust Settlement Claim is the sum of the amounts  listed in Columns I through K of Schedule B and includes the Securitization Trust Settlement Claim and additional claim amounts to be Allowed in settlement of the Prepetition Recoveries Dispute and the Unencumbered Loans Dispute.  For the avoidance of doubt, the settlement of the Unencumbered Loans Dispute and Prepetition Recoveries Dispute with the Master Trust and NCSLT 2003-1 and NCSLT 2004-1 is reflected on Schedule B as follows:  the cash portion is in Column G, captioned "Unencumbered Loan Settlement (Cash)," the claim portion is Column J, captioned "Prepetition Recoveries Dispute Settlement" and in Column K, captioned "Unencumbered Loan Settlement (Claims)."  The settlement of the Prepetition Recoveries Dispute with the other Securitization Trusts is reflected on Schedule B in Column F, captioned "Prepetition Recoveries Dispute Settlement."

LIBC/3875117.2

Securitization Trust and paid for by the Debtor with funds in the applicable
Pledged Account to each Securitization Trust in Classes 3a – 3q that accepts this
Plan or is deemed to accept the Plan, and, thereby, the Securitization Trust
Settlement, in full satisfaction of the Allowed Secured Claim of such Accepting
Securitization Trust.

(ii)    **Securitization Trusts Release With Respect to Postpetition
Defaulted Loans and Unencumbered Trust Loans**.  In full and final settlement
of the Trust Adversary Proceeding with respect to each Securitization Trust that
accepts this Plan or is deemed to accept this Plan, and, thereby, the Securitization
Trust Settlement, (A) each such Accepting Securitization Trust will have no claim
to Postpetition Purchased Loans or Unencumbered Trust Loans or to any
recoveries on such loans, including recoveries received prior to the date hereof,
(B), all such Unencumbered Trust Loans and Postpetition Purchased Loans and
postpetition recoveries on such loans shall be transferred by the Debtor free and
clear of all liens, claims, interests and encumbrances to the Plan Trust as soon as
practicable after the Effective Date, and (C) neither the applicable Securitization
Trusts nor their indenture trustees shall have any security interest in, or Claim to,
such defaulted loans or recoveries obtained in respect thereof (but otherwise
reserving rights under this Plan as the holder of a Claim in Class 5).  Any such
postpetition defaulted loan on account of which (i) the Debtor made payment , (ii)
payment was made from funds in a Pledged Account, or (iii) a Securitization
Trust received payment, shall be considered a defaulted loan purchased by the
Debtor, regardless of the source of funds for such purchase.

(iii)    **Retention by Accepting Securitization Trust of Loans Not
Purchased by the Debtor**.  Each Accepting Securitization Trust will retain all
loans that were not purchased by the Debtor as of the Effective Date.

(iv)    **Bankruptcy Court Approval of Securitization Trust
Settlement**.  For each Securitization Trust that accepts the Plan, and thereby the
Securitization Trust Settlement, entry of the Confirmation Order will constitute
the Bankruptcy Court's approval, as of the Effective Date, of the Securitization
Trust Settlement and the Bankruptcy Court's finding that such settlement is fair,
equitable and reasonable and in the best interests of the Debtor, this Plan,
Reorganized TERI and each Accepting Securitization Trust (including the
Indenture Trustee and other secured parties under the related Indenture pursuant
to which such Trust issued its notes), receiving the treatment provided by the
Securitization Trust Settlement.

(v)    **Dismissal of Trust Adversary Proceeding**.  On the Effective
Date, the Trust Adversary Proceeding will be deemed dismissed with prejudice,
and judgment of dismissal may enter pursuant to Fed.R.Civ.P. 54, made
applicable to the Trust Adversary Proceeding pursuant to Fed.R.Bankr.P. 7054, as
to (a) each Securitization Trust that accepts or is deemed to accept the Plan,
thereby receiving the treatment provided by the Securitization Trust Settlement,

33

(b) the administrator, in any capacity in which it was named as a defendant in the Trust Adversary Proceeding with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (c) the owner trustee of each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, (d) U.S. Bank, National Association, in any capacity in which it was named as a defendant in the Trust Adversary Proceeding with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, and (e) the indenture trustee under any indenture pursuant to which such Securitization Trust issued notes and accepted this Plan and Securitization Trust Settlement with respect to each such Securitization Trust accepting this Plan and the Securitization Trust Settlement, each of the foregoing administrators, owner trustees and indenture trustees, in their respective capacities, and not individually.

(vi)    **Release of Claims against the Debtor and The Estate**. On the Effective Date, the Claims against the Debtor and the Estate of the Securitization Trusts, the Indenture Trustees under the Indenture for such Securitization Trusts and the administrators for such Securitization Trust (in such capacity) receiving the treatment provided by the Securitization Trust Settlement, subject to and upon implementation of the Securitization Trusts Settlement, will be deemed satisfied and no further recovery shall be permitted in respect of such Claims.

(vii)    **Rejection of Executory Contracts**. On the Effective Date, all Guaranty Agreements executed in favor of the Securitization Trusts and the related Deposit and Security Agreements and other related documents entered into by the Debtor prior to the Commencement Date will be deemed rejected, and with respect to Claims asserted by Securitization Trusts accepting the Plan or that are deemed to accept the Plan, thereby receiving the treatment provided by the Securitization Trust Settlement, all Debtor's claims or rights to set off any Guaranty fees, basis point fees and other interests in loans held by such Securitization Trusts will be deemed waived.

(viii)    **Estate's Retention of Rights With Respect to Residuals**. Nothing herein shall be deemed a waiver or release of the rights, if any, that the Debtor or any other party may have to receive a portion (if any) of the Residual with respect to any and all of the Securitization Trusts.

(ix)    **Special Provisions Regarding Classes 3m and 3n**. Notwithstanding anything to the contrary herein, the terms of the "Stipulation Regarding the Modification of the Fourth Amended Plan of Reorganization With Respect to Claims of Class 3m and 3n" shall control and supersede any and all inconsistent provisions of this Plan.

*(d)* **KeyBank National Association and KeyCorp Trusts Settlement**

(i)    Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019, the acceptance of this Plan by KeyBank National Association (excluding in its capacity as a Make and Wait Lender) and acceptance

34

of this Plan by each KeyCorp Trust will constitute a good faith compromise and settlement of all Claims and controversies between the Debtor and KeyBank National Association and each Accepting KeyCorp Trust, including the amounts, allowance, relative priority and treatment of the Claims of KeyBank National Association and each Accepting KeyCorp Trust.

(ii)    Unless KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) or a KeyCorp Trust rejects this Plan, KeyBank National Association and each KeyCorp Trust, as applicable, shall receive the following treatment on the Effective Date of this Plan or as soon thereafter as is practicable:  (a) it shall be paid its allocable share in the Victory Fund as of the Commencement Date (as appears in column in Schedule C labeled "Allocation of Victory Fund"), (b) it shall have an Allowed Key Access Program Deficiency Claim as set forth in the column labeled "Key Access Program Decoder Settlement Claim" on Schedule C pursuant to Section 4.4 of this Plan; and (c) it shall cause to be paid to the Plan Trustee free and clear of all interests, liens, claims and encumbrances, its allocable share of all recoveries or other funds transferred by the Debtor to the Victory Fund on or after the Commencement Date, together with any interest or other earnings thereon not previously transferred to the Debtor.

(iii)    Notwithstanding the preceding paragraph, if KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) or a KeyCorp Trust rejects this Plan and is thereby deemed to opt out of the Key Access Program Settlement, the following treatment shall be applied: (a) each KeyCorp Trust that rejects this Plan, and KeyBank National Association if it rejects this Plan, shall have the Allowed amount of its Claim determined by the Bankruptcy Court by Final Order, following appropriate notice and an opportunity to be heard, in accordance with the Key Access Program Election; (b) the funds in the Victory Fund as of the Commencement Date shall be paid to KeyBank National Association and held in escrow until the Bankruptcy Court has determined by Final Order, following appropriate notice and an opportunity to be heard, the proper method for distributing such funds; and (c) the parties reserve all rights with respect to recoveries and other funds transferred by the Debtor to the Victory Fund on or after the Commencement Date, together with any interest or other earnings thereon, including, without limitation, the rights of the parties with respect to the extent, priority, validity or existence of any alleged security interest in such recoveries and funds.

(iv)    Any distributions to KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender), if it accepts this Plan, or to an Accepting KeyCorp Trust pursuant to this Plan will be made on account and in consideration of the Key Access Program Settlement, which, upon the Effective Date, will be binding on KeyBank National Association, the Accepting KeyCorp Trusts, the Debtor, and Reorganized TERI. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval,

35

as of the Effective Date, of the Key Access Program Settlement and the Bankruptcy Court's finding that such Key Access Program Settlement is in the best interests of KeyBank National Association, the Accepting KeyCorp Trusts, the Debtor, and Reorganized TERI, and is fair, equitable and reasonable.

(v)    On the Effective Date, all Guaranty Agreements and the related Deposit and Security Agreements and other related documents executed in favor of KeyBank National Association (excluding KeyBank National Association in its capacity as a Make and Wait Lender) and the KeyCorp Trusts receiving the treatment provided in the Key Access Program Settlement will be deemed rejected.

**6.3    Plan Trust.**

*(a)* **General**. On or before the Effective Date, the Plan Trust Agreement, in a form reasonably acceptable to the Plan Proponents, will be executed and all other necessary steps will be taken to establish the Plan Trust and the beneficial interests therein, which will be for the benefit of the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date. In the event of any conflict or inconsistency between the terms of this Plan and the terms of the Plan Trust Agreement, then the terms of the Plan Trust Agreement will govern. The Plan Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of the Plan Trust as a liquidating trust for United States federal income tax purposes, or otherwise have material adverse effect on the recovery of holders of Allowed General Unsecured Claims. This Section 6.3 is qualified in its entirety by the terms of and is subject to the terms of the Plan Trust Agreement.

*(b)* **Purpose of Plan Trust**. The Plan Trust will be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to achieve, and consistent with, the liquidating purpose of the Plan Trust.

*(c)* **Costs and Expenses of Plan Trust**. The costs and expenses of the Plan Trust, including the fees and expenses of the Plan Trustee and its retained professionals, will be paid out of the Plan Trust Assets, and Reorganized TERI will not be responsible for any fees, expenses or costs of the Plan Trust. The Litigation Claims Costs incurred by the Plan Trustee and the fees and expenses incurred in connection with the prosecution and settlement of any Claims are costs and expenses of the Plan Trust.

*(d)* **Plan Trust Assets**. As of and as soon as practicable after the Effective Date, Debtor will assign and transfer to the Plan Trust all of its rights, title and interests in and to the Plan Trust Assets for the benefit of the holders of Allowed General Unsecured Claims, whether such Claims are Allowed on or after the Effective Date. Such transfers will be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax and, subject to clause (c) of section 6.2(d)(iii) of the Plan, and except as otherwise may be set forth specifically herein, will be free and clear of any liens, claims and encumbrances and no other entity (other

36

than Creditors receiving rights under this plan), including the Debtor or Reorganized TERI, will have any interest, legal, beneficial, or otherwise, in the Plan Trust or the Plan Trust Assets upon their assignment and transfer to the Plan Trust (other than as provided herein or in the Plan Trust Agreement). Upon delivery of the Plan Trust Assets to the Plan Trust, Reorganized TERI will be released of all liability with respect to the delivery of distributions to holders of Allowed General Unsecured Claims, and, except as provided in the Collection Contract, will have no further monetary obligations to the Plan Trust or the Plan Trustee.

(e) **Governance of Plan Trust**. The Plan Trust will be governed by the Plan Trust Agreement and administered by the Plan Trustee.

(f) **Appointment of a Plan Trustee**. Prior to the Effective Date, the Creditors' Committee will select the Plan Trustee. The salient terms of the Plan Trustee's employment, including the Plan Trustee's duties and compensation, will be set forth in the Plan Trust Agreement. The Plan Trust Agreement will specify the procedures for replacing the Plan Trustee. The Plan Trustee will not be the Debtor, an affiliate of the Debtor or former agent of the Debtor. The Plan Trustee, in the reasonable discretion of the Creditors' Committee will have the qualifications and experience necessary to satisfy the responsibilities and obligations of the Plan Trustee as outlined in the Plan and the Plan Trust Agreement.

(g) **The Plan Trustee Advisory Committee**. The Plan Trustee Advisory Committee will advise the Plan Trustee with respect to the liquidation and distribution of Plan Trust Assets in accordance with the Plan Trust Agreement. The Plan Trust Agreement will specify the procedures for replacing any member of the Plan Trustee Advisory Committee.

(h) **Transferability of Plan Trust Interests**. The beneficial interests of the Plan Trust shall not be transferable, unless otherwise provided for in the Plan Trust Agreement. To the extent such beneficial interests are deemed securities under applicable non-bankruptcy law, then such securities shall be exempt from the requirements of applicable non-bankruptcy law to the maximum extent permitted by 11 U.S.C. §1145.

(i) **Investment of Cash**. The Plan Trustee may invest Cash (including any earnings thereon or proceeds there from) as permitted by section 345 of the Bankruptcy Code; *provided, however*, that such investments are investments permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities. The Plan Trustee shall be authorized to manage any transferred Collateral Accounts pending resolution of the disposition of such Collateral Account pursuant to the terms of the Plan or a Final Order.

(j) **Receipt or Retention of Cash**. The Plan Trust shall not be permitted to receive or retain Cash or Cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the Plan Trust Assets during liquidation and distribution.

(k) **Retention of Professionals by the Plan Trustee**. The Plan Trustee may retain and reasonably compensate counsel and other professionals, as applicable, to assist in its

LIBC/3875117.2

duties as Plan Trustee on such terms as the Plan Trustee deems appropriate, without Bankruptcy Court approval; provided, however, that such counsel and other professionals shall be subject to the prior approval of the Plan Trustee Advisory Committee or, if such approval is not obtained, then such counsel and other professionals may be retained only upon Bankruptcy Court approval. All costs of compensation and expenses of professionals retained by the Plan Trustee are costs and expenses of the Plan Trust and will be paid out of the Plan Trust Assets.

*(l)* **Compensation of the Plan Trustee**. The Plan Trustee will be entitled to reasonable compensation (which will be negotiated by the Plan Trustee with the Creditors' Committee) in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.

*(m)* **Cooperation of Reorganized TERI**. Reorganized TERI will provide information, including, Data needed for Claim administration and asset monetization, to the Plan Trustee. Such information will include, but will not be limited to, information regarding the status and amount of General Unsecured Claims to enable the Plan Trustee to perform its duties. Reorganized TERI will cooperate with the reasonable requests of the Plan Trustee and its professionals in the administration of the Plan Trust, including, in providing Data, documentation, witness testimony, and other evidence in support of the prosecution of the Litigation Claims. The Plan Trust will reasonably reimburse Reorganized TERI , pursuant to the terms of a reimbursement agreement to be negotiated, for any extraordinary costs incurred to comply with requests for cooperation made by the Plan Trustee.

*(n)* **Distribution of Plan Trust Assets**. Plan Trust Assets shall be distributed in accordance with the Plan Trust Agreement without the need for further order of the Bankruptcy Court or notice to any entities. The aggregate of all distributions made on account of each beneficial interest in the Plan Trust shall be Pro Rata Distributions. Each separate distribution made by the Plan Trustee shall, to the extent reasonably practicable, be Pro Rata Distributions, except the Plan Trustee may alter any particular distributions so that the aggregate of all distributions are Pro Rata Distributions.

*(o)* **(Intentionally deleted)**.

*(p)* **Federal Income Tax Treatment of Plan Trust**.

(i)     **Plan Trust Assets Treated as Owned by Creditors**. For all federal income tax purposes, all parties (including, without limitation, the Debtor, Reorganized TERI, the Plan Trustee, and the holders of Allowed General Unsecured Claims) will treat the transfer of this Plan Trust Assets to the Plan Trust including any amounts or other assets subsequently transferred to the Plan Trust (but only at such time as actually transferred) for the benefit of the holders of General Unsecured Claims, whether Allowed on or after the Effective Date, as (A) a transfer of the Plan Trust Assets directly to the holders of Allowed General Unsecured Claims, followed by (B) the transfer by such Persons to this Plan Trust of such Plan Trust Assets in exchange for beneficial interests in the Plan Trust. Accordingly, the holders of Allowed General Unsecured Claims will be treated

38

for federal income tax purposes as the grantors and owners of their respective shares of the applicable Plan Trust Assets.

    (ii)    **Tax Reporting**.

        (A)    Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Trustee), all parties will treat the Plan Trust as a "liquidating trust" in accordance with Treasury Regulation section 301.7701-4(d), of which the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, are the grantors and beneficiaries. In the event an alternative treatment of the Plan Trust is required for federal income tax purposes, the Plan Trustee will promptly notify in writing (or by comparable means) all holders of beneficial interests in the Plan Trust, and anyone who subsequently becomes a holder, of such alternative treatment. The Plan Trustee will file returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Section 6.3(p). The Plan Trustee also may send annually to each record holder of a beneficial interest in the Plan Trust a separate statement setting forth such holder's share of items of income, gain, loss, deduction, or credit and will instruct all such holders to report such items on their federal income tax returns or to forward the appropriate information to the beneficial holders with instructions to report such items on their federal income tax returns. The Plan Trustee will also file (or cause to be filed) any other statements, returns, or disclosures relating to the Plan Trust that are required by any governmental unit.  Except as may otherwise be provided, the Plan Trust's taxable income, gain, loss, deduction or credit will be allocated by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (without regard to any restrictions on distribution described in the Plan) if, immediately prior to the deemed distribution, the Plan Trust had distributed all of its other assets (valued at their tax book value) in accordance with the provisions of the Plan and the Plan Trust Agreement, up to the tax book value of the Plan Trust Assets treated as contributed by the holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, adjusted for prior taxable income and loss, and taking into account all prior and concurrent distributions from the Plan Trust. Similarly, taxable loss of the Plan Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining assets.

        (B)    As soon as possible after the Effective Date, the Plan Trustee will make a good faith valuation of the value of the Plan Trust

LIBC/3875117.2

Assets. Such valuation will be made available from time to time, to the extent relevant, and used consistently by all parties for all federal income tax purposes.

(C)    Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the receipt by the Plan Trustee of a private letter ruling if the Plan Trustee requests one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Plan Trustee), the Plan Trustee will (1) make an election pursuant to Treasury Regulation section 1.468B-9 to treat the Disputed Claims Reserve as a "disputed ownership fund" within the meaning of that section; (2) treat as taxable income or loss of the Disputed Claims Reserve, with respect to any given taxable year, the portion of the taxable income or loss of the Plan Trust that would have been allocated to the holders of Disputed General Unsecured Claims had such Claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such Claims are unresolved), (3) treat as a distribution from the Disputed Claims Reserve any assets previously allocated to or retained on account of Disputed General Unsecured Claims as and when, and to the extent, such claims are subsequently resolved (following which time such assets will no longer be held in the Disputed Claims Reserve) and (4) to the extent permitted by applicable law, report consistent with the foregoing for state and local income tax purposes (including making any appropriate elections). The holders of Allowed General Unsecured Claims, whether Allowed on or after the Effective Date, will report, for tax purposes, consistent with the foregoing.

(D)    The Plan Trustee will be responsible for payments, out of and to the extent of available Plan Trust Assets, of any taxes imposed on the Plan Trust or the Plan Trust Assets, including the Disputed Claims Reserve.

(E)    The Plan Trustee may request an expedited determination of taxes of the Plan Trust, including the Disputed Claims Reserve, under section 505(b) of the Bankruptcy Code, for all returns filed for, or on behalf of, the Plan Trust for all taxable periods through the dissolution of the Plan Trust (including the Disputed Claims Reserve).

(q) **Dissolution of Plan Trust**. The Plan Trustee and the Plan Trust will be discharged or dissolved, as the case may be, as set forth in the Plan Trust Agreement.

(r) **Transition of Servicing and Collections of Defaulted Loans.** For a period of at least 30 days following the Effective Date, the Plan Trustee and First Marblehead Education Resources, Inc. ("FMER") shall attempt in good faith to negotiate the terms of a mutually acceptable transition agreement with respect to the servicing and collection of defaulted loans subject to the Trust Adversary Proceeding or otherwise subject to any Securitization Trust

40

Settlement. For a period of no less than 90 days following the Effective Date, FMER shall continue to perform the services it has been providing during the Chapter 11 Case with respect to servicing and collecting defaulted loans subject to the Trust Adversary Proceeding pursuant to the Trusts Order, and FMER shall be entitled to payment from the Plan Trustee pursuant to such order; provided, however, FMER shall have no obligation to provide such services after the 90th day following the Effective Date.

**6.4** **Calculation of TERI Net Recovery**. The TERI Net Recovery will be calculated as follows:

*(a)* For the first year of the Term, the first $1,250,000 of TERI Loan Net Proceeds collected will be payable to the Plan Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets. For the first year of the Term, the TERI First Year Share will comprise 20% of each dollar of TERI Loan Net Proceeds collected in excess of $1,250,000, but the TERI First Year Share will not exceed $750,000.

*(b)* For the second year of the Term, the first $1,125,000 of TERI Loan Net Proceeds collected will be payable to the Plan Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets. For the Second Year of the Term, the TERI Second Year Share will comprise 20% of each dollar of TERI Loan Net Proceeds collected in excess of $1,125,000 but the TERI Second Year Share will not exceed $875,000.

*(c)* If, and only if, as of the end of the Term: (a) the Collection Contract has not been terminated for cause; (b) the sum of (i) the TERI First Year Share plus (ii) the TERI Second Year Share is less than $1,625,000; (c) the sum of (i) the First Year Eligible Collections plus (ii) the Second Year Eligible Collections is at least $10,500,000 and (d) the Plan Trust has received $2,375,000 of TERI Loan Net Proceeds Trust to fund the Plan Trust's administrative expenses, and after satisfaction of such administrative expenses, for inclusion in the Plan Trust Assets during the Term, Reorganized TERI will be entitled to the Additional Share.

**6.5** **Distribution to Secured Creditors**. Secured Creditors will reasonably cooperate with Reorganized TERI or the Plan Trustee in connection with distribution of the funds in the Collateral Accounts, including executing any necessary documents or forms, including but not limited to a Form W-9.

**6.6** **Restricted Funds**. In TERI's sole discretion, the Restricted Charitable Funds may be applied to the payment of any Administrative Expense Claim or to the payment of any amount by which the Creditors Committee elects to reduce Retained Cash pursuant to section 10.3 of the Plan. Notwithstanding anything to the contrary herein, (i) the Restricted Charitable Funds and the Restricted Grant Funds will not be applied to satisfy any Allowed Claim (other than, in TERI's discretion, an Administrative Expense Claim) or distribution under the Plan; (ii) the Restricted Charitable Funds shall be administered from and after the Effective Date in accordance with all applicable deeds of gift and related stipulations; (iii) the Restricted Charitable Funds shall be used from and after the Effective Date solely for purposes of furthering higher education; (iv) the Restricted Charitable Funds subject to the Deed of Gift dated

41

September 30, 1986 in favor of the Debtor from Massachusetts Higher Education Assistance Corporation (the "Financial Aid Gift") shall be used from and after the Effective Date solely for paying the costs of, and general overhead expenses reasonably attributable to, Reorganized TERI's "College Access" outreach programs; and (v) the Financial Aid Gift shall not be used from and after the Effective Date for paying any costs of, or general overhead expenses attributable to, Reorganized TERI's portfolio management or collection management operations. The Debtor's Board of Directors has agreed to, and Reorganized TERI's board of directors will agree to, the restrictions set forth in the foregoing clauses (iv) and (v) of this Section 6.6.

6.7    **Operations of Reorganized TERI**.  On and after the Effective Date, Reorganized TERI may operate its business, may use, acquire and dispose of property other than Plan Trust Assets, may retain, compensate and pay any professionals or advisors, and compromise or settle any causes of action, claims or interests, other than Causes of Action that are Plan Trust Assets, without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code and the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order or other Orders of the Bankruptcy Court.

6.8    **Closing of the Chapter 11 Case**.  The Plan Trustee will seek authority from the Bankruptcy Court to close the Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.9    **Section 1123(b)(3)**.  From and after the Effective Date, the Plan Trustee shall have the exclusive right and standing to take all actions identified in section 1123(b)(3) of the Bankruptcy Code, except as to any claims or interests that are retained by Reorganized TERI pursuant to this Plan.  For the avoidance of doubt, the Plan Trustee is authorized to pursue the Causes of Action (including the Trust Adversary Proceeding).

6.10    **Establishment and Implementation of a Most Favored Nations Clause**.  In the event that a Make and Wait Lender or make and Hold Lender rejects the Plan, or a representative of a Securitization Trust rejects this Plan and thereby the Securitization Trust Settlement, or KeyBank National Association (other than in its capacity as a Make and Wait Lender) or a Key Corp Trust rejects this Plan and thereby the Key Access Program Settlement (any of which is referred to herein as a "Litigating Creditor") and such Litigating Creditor, pursuant to a Final Order of the Bankruptcy Court, is found to have an Allowed Deficiency Claim or General Unsecured Claim that exceeds such Litigating Creditor's Class 5 Claim, by at least 10%, then the Plan Trustee shall be obligated to re-calculate the amount of the Deficiency Claims of all Creditors using the findings of the Bankruptcy Court regarding the proper calculation of such Claim (the "Revised Calculation").  The Plan Trustee may seek further or other orders of the Bankruptcy Court as the Plan Trustee desires to facilitate the proper determination of the Revised Calculation with respect to any and all Claims.  To the extent that there are multiple evidentiary hearings to determine the amount of Allowed Class 5 Claims, the Revised Calculation shall be completed using the Final Order of the Bankruptcy Court that would yield the greatest Claim amounts.  Notwithstanding anything in this section 6.10, however, (i) no Allowed Claim shall be reduced as a result of any Revised Calculation, and (ii) the Plan Trustee shall not use any

42

Revised Calculation as set forth in this section 6.10 without prior approval of the Bankruptcy Court after notice and a hearing within the meaning of 11 U.S.C. §102(1).

**6.11    Disposition of Affected Property Pending Resolution of Nellie Mae Adversary Proceeding**.  On the Effective Date (or as soon thereafter as reasonably practicable) all property of the Estate that the Nellie Mae Foundation, Inc. ("Nellie Mae") claims in the Nellie Mae Adversary Proceeding, comprised of certain defaulted loans that were transferred to the Debtor prior to the Commencement Date and identified by Nellie Mae in an exhibit to its complaint and certain recoveries on those loans received by the Debtor both before and after the Commencement Date, shall, (i) in the case of Cash, be transferred to U.S. Bank National Association ("U.S. Bank") and held by U.S. Bank in escrow pursuant to the terms of one or more escrow agreements among U.S. Bank in its capacity as escrow agent for Nellie Mae and the Plan Trustee and (ii) in the case of defaulted loans, be held by the Reorganized Debtor or the Plan Trustee subject to the Claims and rights asserted by Nellie Mae, with any recoveries (net of costs of collection) on such defaulted loans received after the Effective Date to be transferred to U.S. Bank as escrow agent to be held in escrow on the same terms as Cash transferred on the Effective Date.  The escrow agreement shall be mutually acceptable to U.S. Bank, Nellie Mae and the Plan Trustee.  Such escrowed funds and defaulted loans  (i) shall be held in the applicable escrow account, in the case of Cash, or by the Reorganized Debtor or the Plan Trustee, in the case of defaulted loans, to be released upon the earlier of (1) one or more Final Orders of the Bankruptcy Court or (2) pursuant to joint written instruction of the Plan Trustee and Nellie Mae; (ii) shall be invested by U.S. Bank as escrow agent in accordance with the written instructions of the Plan Trustee and Nellie Mae, and investment earnings on such funds shall be added to the fund and released as provided above, and (iii) shall be subject to such other matters as shall be agreed to by the parties to such escrow agreement (including payment of customary fees and other bank charges).  Notwithstanding such transfer of funds to the escrow account or accounts, or the retention of such defaulted loans subject to the rights and claims of Nellie Mae, each of the Plan Trustee and Nellie reserve all rights, and such transfer(s) to the escrow account or accounts are subject to the rights of the Plan Trustee and Nellie Mae including, without limitation, the rights of the parties with respect to the extent, priority, validity or existence of any alleged security interest in or ownership of such defaulted loans, recoveries and funds.

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**7.1    No Distribution Pending Allowance**.  Notwithstanding any other provision of this Plan the Plan Trustee will not be compelled or required to distribute any Cash or other property on account of any Disputed Claim or any portion thereof, unless and until such Claim becomes an Allowed Claim, and distribution on account of such Allowed Claim is required pursuant to the terms of the Plan.  In the event that a Make and Wait Lender or Make and Hold Lender purchased or sold loans guaranteed by the Debtor on the secondary market and the Debtor's records do not reflect such purchase or sale, the Plan Trustee shall be entitled to withhold distributions to such Creditors pending determination of the rightful owner of such loans.

LIBC/3875117.2