UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>HILAL K. HOMAIDAN fka Helal K. Homaidan<br><br>               Debtor, | Chapter 7<br><br>Case No. 08-48275 (ESS) |
| In re:<br><br>REEHAM YOUSSEF aka Reeham Navarro Youssef aka Reeham N. Youssef<br><br>               Debtor, | Chapter 7<br><br>Case No. 13-46495 (ESS) |
| HILAL K. HOMAIDAN and REEHAM YOUSSEF on behalf of themselves and all others similarly situated<br><br>               Plaintiffs,<br><br>  v.<br><br>SALLIE MAE, INC, NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION<br><br>               Defendants. | Adv. Pro. No. 17-1085 |

## DECLARATION OF MARK KANTROWITZ

I, Mark Kantrowitz, declare under penalties or perjuries as follows:

1.      I have been retained to provide expert opinion to Plaintiffs in the above-entitled matter and my expert report is attached hereto along with my curriculum vitae.

2.      I declare that the statements are true to the best of my knowledge and I would so testify if called as a witness at trial.


Dated:  December 19, 2019

*Mark Kantrowitz*
Mark Kantrowitz

# Expert Report by Mark Kantrowitz

**Table of Contents**

Preface ............................................................................................................................ 2

Background on Student Loans ........................................................................................ 2

    Types of Education Loans.......................................................................................... 2

    Definition of Qualified Education Loans ................................................................... 2

    Definition of Cost of Attendance ............................................................................. 4

    School-Certified Loans .............................................................................................. 5

    Direct-to-Consumer Loans ........................................................................................ 5

    Federal Education Loans ........................................................................................... 7

    COA – Aid Caps on Federal Education Loans ............................................................ 7

    Comparison of Direct-to-Consumer Loans and Federal Education Loans ............... 10

    How to Determine the Cost of Attendance .............................................................. 10

    Cost of Attendance Data from IPEDS ....................................................................... 12

    Cost of Attendance Data on the FAFSA .................................................................... 13

    Data from Credit Reporting Agencies ....................................................................... 15

    Review of Navient Database ...................................................................................... 15

Qualifications ................................................................................................................. 16

## Preface

This report summarizes my findings and opinions formed to date concerning class certification in the matter of Homaidan v. Sallie Mae, Inc. et al., Case No. 1-17-01085-ess in the United States Bankruptcy Court for the Eastern District of New York.  My review and analysis of the facts and circumstances of the case continues.  I reserve the right to supplement and amend my opinions to take into account information learned up to and throughout the trial.  I am being paid on an hourly basis for this engagement, and my billing rate is $500 per hour.

My expertise concerning student loans is detailed in the section titled "Qualifications."

This report concerns a class action lawsuit on behalf of all borrowers who borrowed direct-to-consumer (DTC) private student loans from Navient that are dischargeable because they exceed the cost of attendance (COA).

## Background on Student Loans

### Types of Education Loans

There are several different types of loans that may be used to pay for a college education. These included federal education loans, private student loans, credit cards, personal loans and home equity loans. Private student loans can include school-certified (SC) loans and direct-to-consumer (DTC) loans. Some of these are considered qualified education loans and some are not.

The amount a student may receive in federal education loans is limited by the annual and aggregate loan limits of the loan program. In addition, the amount a student may receive in federal education loans is limited by the cost of attendance and other aid known to the college's financial aid office. Thus, if a college knows about a private student loan that exceeds the cost of attendance, the college will be required to reduce the amount of federal education loans a student can obtain.

### Definition of Qualified Education Loans

The U.S. Bankruptcy Code at 11 USC 523(a)(8) provides an exception to bankruptcy discharge of qualified education loans unless the exception would impose an undue hardship on the borrower and the borrower's dependents. This provision was added by the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005 [P.L. 109-8].

The definition of a qualified education loan was added by the Taxpayer Relief Act of 1997 [P.L. 105-34], which established the student loan interest deduction for qualified education loans.

Thus, the definition of qualified education loans is used both for determining eligibility for the student loan interest deduction and for determining whether a student loan is excepted from bankruptcy discharge.

Qualified education loans are defined in 26 USC 221(d)(1) as "indebtedness incurred by the taxpayer solely to pay for qualified higher education expenses." Qualified higher education expenses are defined as the cost of attendance, as defined in 20 USC 1087ll (as in effect prior to passage of the Taxpayer Relief Act of 1997 on August 5, 1997). By law, the cost of attendance is determined by each institution. The total amount of qualified higher educational expenses may be reduced by certain specified items, such as education savings bonds.

The requirement for qualified education loans to have been incurred *solely* to pay for qualified higher education expenses precludes mixed-use loans (i.e., loans used for purposes in addition to qualified higher education expenses), per the regulations at 26 CFR 1.221-1(e)(4) example 6. If a loan is obtained to pay for qualified higher education expenses and for other purposes, the loan is not a qualified education loan. The use of the word "solely" is an indication that Congress intended the indebtedness to be an indivisible whole. Generally, if Congress had wanted to allow qualified education loans to be partially qualified and partially not qualified, it would have used language like "in whole or in part" or "to the extent" as it does elsewhere in the Internal Revenue Code of 1986, Higher Education Act of 1965 and the U.S. Bankruptcy Code, and it would not have used the word "solely."

Qualified education loans include all federal education loans, such as Federal Stafford loans, Federal Perkins loans, Federal PLUS loans and Federal Consolidation loans. Qualified education loans also include many private student loans, but not all private student loans.

If a private student loan exceeds the cost of attendance, it is not a qualified education loan. That is because only loans that pay for qualified higher education expenses, like the cost of attendance, meet the statutory definition. The cost of attendance is a specific amount that is determined by the college or university, not by the lender.

Clearly, if a private student loan is made in an amount that exceeds the cost of attendance, it is not a qualified education loan. But also, if the private student loan, in combination with other financial aid, exceeds the cost of attendance, it too is not a qualified education loan because it was not used "solely to pay for qualified higher education expenses."

If a private student loan is school-certified, as discussed below, the college financial aid office ensures that the private student loan does not, alone or in combination with other aid, exceed the cost of attendance. If the private student loan amount is too high, the college will certify the loan for a lower amount.

In effect, school-certification provides a safe harbor for the lender because the college financial aid office ensures that the loan amounts in combination with other financial aid do not exceed the cost of attendance, i.e., the requirements for the loans to be a qualified education loan. When a lender bypasses school certification, it assumes a risk that the loans in combination with other financial aid exceed the cost of attendance and thus are not qualified education loans.

## Definition of Cost of Attendance

The cost of attendance is defined by the Higher Education Act of 1965 [20 USC 1087ll] as of August 5, 1997[1] as including certain charges and fees as determined by the institution, not the lender.[2] It represents the cost of attendance normally assessed a student carrying the same academic workload. By law, the institution must publicly report their cost of attendance to the U.S. Department of Education. The cost of attendance (also called a "student budget") always includes

- Tuition and fees as determined by the institution, which may depend on state residency
- Equipment, materials and supplies that are required by the institution for all students in the same course of study
- An allowance for textbooks, supplies and equipment, as determined by the institution
- An allowance for transportation, as determined by the institution
- An allowance for miscellaneous personal expenses, as determined by the institution
- An allowance for room and board, with three different allowances, one for students who live in institutionally owned or operated housing, one for students who live at home with their parents and one for students who live in an off-campus apartment

Again, the final cost of attendance is an amount determined by the school.

Thus, the cost of attendance for a student may depend on the student's state of residence (in-state or out-of-state) and housing status (on campus, off campus or with parents). The applicable cost of attendance may be calculated in a deterministic manner based on the student's state of residence and housing status as reported on the FAFSA and on loan application forms.

Specifically, the student's state of residence is compared with the college's location to determine whether the student is in-state or out-of-state, thereby determining the applicable tuition and fees charges. The student's housing status determines the applicable room and board charges. These figures are summed with the other allowances to yield the cost of attendance.

The college's official cost of attendance figures are published in the college's catalog and on the college's web site, as mandated by 20 USC 1092(a)(1)(E). The colleges also report the cost of attendance to the U.S. Department of Education, which makes this information available to the public through the Integrated Postsecondary Education Data System (IPEDS) and the CollegeNavigator.gov web site.

---

[1] 26 USC 221(d)(2) defines "qualified higher education expenses" in terms of the definition of "cost of attendance" as in effect on the day before the date of enactment of the Taxpayer Relief Act of 1997. Subsequent amendments are excluded.

[2] The regulations at 26 CFR 1.221-1(e)(4) state "Consistent with section 472 of the Higher Education Act of 1965, a student's cost of attendance is determined by the eligible educational institution and includes tuition and fees normally assessed a student carrying the same academic workload as the student, an allowance for room and board, and an allowance for books, supplies, transportation, and miscellaneous expenses of the student."

For the purpose of the definition of a qualified education loan, an "eligible educational institution" is defined at 26 USC 221(d)(3) as one of two types of institutions:

- Eligible educational institutions, as defined by 26 USC 25A(f)(2). These are institutions of higher education that are eligible for Title IV federal student aid.
- Institutions that conduct "an internship or residency program leading to a degree or certificate awarded by an institution of higher education, a hospital, or a health care facility which offers postgraduate training." These include medical, veterinary, pharmacy and dental internships and residency programs, which generally do not have published cost of attendance.

## School-Certified Loans

All federal education loans are school-certified. Private student loans generally fall into two groups: school-certified loans and direct-to-consumer loans.

Volume 3 (Calculating Awards & Packaging) of the Federal Student Aid Handbook, a source of subregulatory guidance from the U.S. Department of Education, states the requirement for federal loans to be school-certified, mirroring the statutory and regulatory requirements:

> "To request Direct Subsidized or Direct Unsubsidized Loan funds for a student, a school must certify that the borrower is eligible for the loan award, and must provide specific amounts and dates for each disbursement of the loan award." (emphasis added)

The college not only certifies that the student is eligible for the loan and the student's enrollment status, but also for the specific loan amount. This certification is subject to the annual and aggregate loan limits, as well as maximum loan amounts, such as the limitation of federal education loans to the cost of attendance minus other aid (COA – Aid). Other aid includes all private student loans known to the college.

Schools certify private student loans in the same way. When seeking school certification for a private student loan, the lender provides the college financial aid office with the name and other identification for the student and the private student loan amount(s) sought by the student. If the student is enrolled at the college, the college responds with approval of the specified loan amount or approval of a lower loan amount. A lower loan amount will be specified if the private student loan, alone or in combination with the student's federal loans and other financial aid, exceeds the student's cost of attendance at the college. The lender then originates the loan in the amount certified by the college.

School-certified private student loans are also disbursed directly to the college to ensure that they are applied first to institutional charges, such as tuition, fees, room and board. In other words, they are disbursed to the school to ensure that they pay for qualified higher education expenses.

## Direct-to-Consumer Loans

Direct-to-consumer (DTC) private student loans circumvent the limits on federal student loans based on cost of attendance by not seeking school certification of the private student loans.

In addition, the proceeds of a direct-to-consumer loan are paid directly to the family, not to the college. This has the effect of preventing the college from being aware of the private student loan amount.

If the college is not aware of a private student loan, it is not able to consider it when awarding federal student aid. However, if the college knows about the private student loan or subsequently learns about it, the college is required to reduce federal student aid funds. The college cannot knowingly award the student financial aid funds, including private student loans, in excess of the cost of attendance, even after the fact.

Some lenders of direct-to-consumer loans obtain published cost-of-attendance information from the college. These lenders are aware of these limitations and of the cost of attendance.

According to the 2012 *Private Student Loans*[3] report to Congress by Consumer Financial Protection Bureau (CFPB), direct-to-consumer loans "created an opportunity for the student to borrow more than the EFC." The CFPB report also quoted from a 2009 Moody's Investors Service report, *Direct-To-Consumer Student Loans: Higher Risk,* which stated "DTC loans typically do not have the safeguards inherent in school channel loans that mitigate the risks borrowed funds will not be used for education or that students will take on excessive or unnecessarily expensive debt."

If a college became aware of a direct-to-consumer loan after the fact, it can result in the student being overawarded. An overaward occurs because the total financial aid, including the direct-to-consumer loan, exceeded the college's cost of attendance.

When a student is overawarded, the college financial aid office must eliminate the overaward by reducing financial aid funds. In most cases, the college will first ask the student to return some or all of the direct-to-consumer loan to the lender.  If the borrower is unable or unwilling to do so, the college will reduce the student's financial aid package. Depending on the timing, the college financial aid office might not be able to eliminate the overaward by reducing future disbursements. In that case, the college financial aid office will require the student to repay the other aid until the overaward was eliminated. Colleges can withhold diplomas and official transcripts to enforce repayment of excess financial aid.

Direct-to-consumer loans were discontinued by most lenders because they had a much higher default rate and lower credit quality than school-certified loans.

Some lenders tried to reduce the default rate by limiting the loans to students who said that they were enrolled at colleges with a low federal cohort default rate (CDR), but this approach demonstrated limited success.

Other lenders required borrowers to complete a self-certification form that included the student's cost of attendance for the period of enrollment covered by the loan, the student's estimated financial assistance for the period of enrollment covered by the loan, and the difference between the two figures.

---

[3] files.consumerfinance.gov/f/201207_cfpb_Reports_Private-Student-Loans.pdf

Navient's Tuition Answer Loan is an example of a direct-to-consumer loan that is not school certified.

## Federal Education Loans

There are two main types of federal education loans, the Federal Stafford Loans and the Federal PLUS Loans. (A third type of federal education loan, the Federal Perkins Loan, ended on September 30, 2017, with disbursements allowed for existing borrowers through June 30, 2018.) These loans differ according to loan limits, eligible borrowers, interest rates and fees, subsidized interest benefits and repayment plans.

The federal education loans differentiate between undergraduate and graduate student borrowers, dependent and independent student borrowers, and parent borrowers. The loan terms may also differ according to the borrower's year in school. For example, the annual loan limits for dependent student undergraduate borrowers of the Federal Stafford Loan are $5,500 for freshmen, $6,500 for sophomores, $7,500 for juniors and $7,500 for seniors.

In contrast to DTC loans, eligibility for Federal Stafford Loans does not depend on the borrower's credit history, credit scores, income, debt-to-income ratios or other forms of credit underwriting.

Eligibility for Federal PLUS Loans requires the borrower to not have an adverse credit history. An adverse credit history evaluates whether the borrower previously experienced certain derogatory credit events, such as (1) a serious delinquency, collections or charge-off on more than $2,085 in debt in the last two years or (2) a bankruptcy discharge, foreclosure, repossession, tax lien, wage garnishment or default determination within the last five years. It does not consider credit scores, minimum income thresholds, debt-to-income ratios or other metrics that evaluate the borrower's future ability to repay the debt.

Eligibility for all federal education loans includes requirements that the student be enrolled on at least a half-time basis per 20 USC 1077(a)(2).

When a student has reached the annual and aggregate loan limits and maximum loan amounts for federal education loans, or otherwise have their eligibility for federal education loans limited, they may seek private student loans, such as school-certified and direct-to-consumer loans. School-certified loans include controls to prevent students from borrowing in excess of the cost of attendance; direct-to-consumer loans lack these controls.

## COA – Aid Caps on Federal Education Loans

The amount of a federal education loan may not exceed the cost of attendance, as defined in 20 USC 1087LL, minus other aid received. DTC loans are considered part of "other aid received" and will result in reductions in federal education loan amounts if the DTC loan amounts were known to the college.

For example, the statutory language at 20 USC 1078-8(c) specifies that the amount of a Federal Stafford Loan "shall be calculated by subtracting from the estimated cost of attendance at the eligible institution any estimated financial assistance reasonably available to such student" and prohibits colleges from certifying a student's eligibility for a Federal Stafford Loan in excess of this amount.

The statutory language at 20 USC 1078-2(b) specifies that Federal PLUS Loans cannot be made in excess of the student's estimated cost of attendance, minus other financial aid as certified by the eligible institution. The term "other financial aid" includes the financial aid specified in 20 USC 1078(a)(2)(C), namely, the Federal Pell Grant, the Federal Supplemental Educational Opportunity Grant, Federal Work-Study, Federal Perkins Loans, and other scholarship, grant or loan assistance, but excludes National Service education awards (e.g., AmeriCorps) and veterans education benefits.

These requirements apply to both the Federal Family Education Loan Program (FFELP) and the William D. Ford Federal Direct Loan Program (DL), per the requirement at 20 USC 1087e(a)(1) that the same terms, conditions and benefits apply to both loan programs. In particular, the statutory language requires that loans made to borrowers in the Direct Loan program be available in the same amounts as loans made to borrowers under the FFEL program.

The statutory language at 20 USC 1087vv(j) defines "estimated financial assistance not received under this subchapter" (subchapter referring to Title IV federal student aid) as including "all scholarships, grants, loans, or other assistance known to the institution at the time the determination of the student's need is made, including national service educational awards or post-service benefits under title I of the National and Community Service Act of 1990 (42 U.S.C. 12511 et seq.), but excluding veterans' education benefits."

The regulations likewise cap the amount of federal education loans for a period of enrollment at the cost of attendance minus the student's estimated financial assistance for that period.

Estimated financial assistance is defined at 34 CFR 682.200 and 34 CFR 685.102 as the "estimated amount of assistance for a period of enrollment that a student (or a parent on behalf of a student) will receive from Federal, State, institutional, or other sources." Estimated financial assistance is identified as including loans in addition to scholarships, grants, work-study and other forms of student financial aid. In addition to a specific reference to loans, estimated financial assistance also includes "any educational benefits paid because of enrollment in a postsecondary education institution, or to cover postsecondary education expenses." Loans are not necessarily limited to federal education loans.

Certain types of financial aid, such as unsubsidized Federal Stafford Loans, Federal PLUS loans and non-federal non-need-based loans, are used to replace the expected family contribution (EFC). However, if the sum of the amounts received that are being used to replace the student's EFC exceed the EFC, the excess amount must be treated as estimated financial assistance.

Thus, if a private student loan exceeds the EFC (or, equivalently, the cost of attendance reduced by need-based financial aid), the excess will reduce the student's eligibility for need-based financial aid, forcing the college financial aid office to reduce the amount of need-based financial aid. The use of DTC loans enables the lender to bypass these restrictions on need-based aid because information about the DTC loan amounts are not shared with the college financial aid office.

If a student has inadvertently received federal education loans in excess of the annual or aggregate loan limits or the maximum loan amount (e.g., COA – Aid), the student is ineligible to receive any federal

student aid funds until the overborrowing is resolved. The overborrowing can be resolved by repaying the excess loan amounts or by making satisfactory arrangements with the loan servicer to repay the excess amount. (See the regulations at 34 CFR 668.35(d) and Dear Colleague Letter GEN-13-02.)

The regulations at 34 CFR 682.204(j), 34 CFR 685.203(j) and 34 CFR 685.301(a)(4) limit Stafford, PLUS and SLS loans to the student's estimated cost of attendance for the period of enrollment for which the loan is intended, minus the student's estimated financial assistance for the period. The maximum loan amount is further reduced by the student's expected family contribution for the period in the case of a subsidized Federal Stafford Loan (a need-based loan). The regulations at 34 CFR 682.603(e) prohibit a college from certifying a Federal Stafford Loan, Federal PLUS Loan, or a combination of loans, for a loan amount that exceeds this amount.

The regulations at 34 CFR 685.203(f) set an annual limit for the Federal PLUS Loan based on the academic year. The total amount that can be borrowed by a graduate or professional student or by a parent for the benefit of each dependent student, may not exceed the cost of attendance minus other estimated financial assistance for the student.

The effect of all these regulations is to cap the amount of federal education loans for a student at cost of attendance minus other aid. If a college later learns that a student received a private student loan not previously known to the college, the college must reduce the amount of federal student loans to compensate.

If a college knowingly originates federal loans in excess of the loan limits, the college can be subject to administrative sanctions including fines, limitations, suspensions and termination of the college's participation in federal student loan and federal student aid programs.

Colleges have the authority to refuse to originate a federal education loan or to originate the loan for less than the borrower's maximum eligibility on a case-by-case basis, per 20 USC 1087tt(c). However, guidance from the U.S. Department of Education has limited this authority, stating:

> "Also note that your school may not have a policy of limiting Direct Loan borrowing on an across-the-board or categorical basis. For example, you may not have a policy of limiting borrowing to the amount needed to cover the school charges, or not allowing otherwise eligible students to receive the "additional" Direct Unsubsidized Loan amounts that are available under the annual loan limits." Volume 3, Federal Student Aid Handbook

Many colleges do not exercise their authority to reduce loan limits except when a student's loans exceed the annual limits, aggregate limits and maximum loan amounts, where the college is required by law to refuse to certify loan amounts in excess of the limitations. Some colleges would like to reduce loan limits based on degree level (e.g., Certificate and Associate's degrees vs. Bachelor's degrees) and academic major, but are precluded from doing so because of this guidance and the case-by-case restriction on the exercise of their statutory authority.

## Comparison of Direct-to-Consumer Loans and Federal Education Loans

This chart highlights some of the key differences between Direct-to-Consumer loans and Federal education loans.

| Characteristic | Direct-to-Consumer Loans | Federal Education Loans |
|---|---|---|
| Loan Proceeds Paid To | Consumer | College |
| Loan Amount Certified by College | No | Yes |
| College Aware of Loan Amount | No | Yes |
| College Can Prevent Overawards | No | Yes |
| College Can Enforce COA-Aid Limits | No | Yes |
| Credit Underwritten | Yes | No |
| Requires Cosigner | Most | None |
| Income-Driven Repayment Available | No | Yes |
| Loan Forgiveness Options Available | No | Yes |

Thus, a direct-to-consumer loan looks more similar to credit card debt or a personal loan from a bank than an education loan. While the stated purpose is to pay for education, there are no restrictions to enforce this as a requirement.

## How to Determine the Cost of Attendance

Cost of attendance information is published by colleges in their catalog and on their web sites, as mandated by the Higher Education Act of 1965 at 20 USC 1092(a)(1)(E).

In addition, Navient could have determined the student's cost of attendance by contacting the student's college when they made the direct-to-consumer loan. The student loan application and promissory note included fields for the applicant to provide the college's name, city and state. Navient also required the student to provide documentation of enrollment, which would have identified the college. Navient could have contacted the colleges to obtain the cost of attendance.

There are also several other sources of information available to determine cost of attendance information:

- The Integrated Postsecondary Education Data System (IPEDS)[4] is a publicly-accessible U.S. Department of Education database that provides the cost of attendance for every school. Every school is required by law to provide its cost of attendance information to IPEDS. The data found there includes charges for tuition, fees, books and supplies, room and board, and other expenses for all Title IV institutions for every year from 1984 to the present. The data is indexed by UNITID, which is also known as the IPEDS ID. College Scorecard[5] is built on top of IPEDS and includes an expanded set of data, such as average income and average debt after graduation.

---

[4] nces.ed.gov/ipeds
[5] collegescorecard.ed.gov/data/

- The National Student Loan Data System (NSLDS)[6] is a U.S. Department of Education database that includes information about federal student loans and grant amounts for every student who received Title IV federal student aid, including the amount of the grants and loans that were disbursed
- The National Student Clearinghouse[7] is a nonprofit student data reporting and exchange that houses financial aid and enrollment data for 99% of students enrolled in postsecondary institutions since 1993
- The Federal Student Financial Aid Application File[8] is a U.S. Department of Education database that contains records supplied by applicants for Title IV federal student aid, state aid and institutional financial aid using the Free Application for Federal Student Aid (FAFSA), including the colleges to which the student is applying for financial aid. Students can list up to 10 colleges on the FAFSA at a time.

IPEDS has institution-specific data, but not student-specific data.

NSLDS, the National Student Clearinghouse and the Federal Student Aid Application File contain student-specific data that includes amounts of financial aid received by the student, as well as cost of attendance information for the colleges attended by the student.

The Electronic Data Exchange (EDE) Technical Reference provides record layout information for the Federal Student Aid Application File.[9] The record layout information indicates the data elements that are stored in the database. This includes the data from the Institutional Student Information Records (ISIRs), which is the FAFSA data reported to the colleges for each student who listed the college's Federal School Code on their FAFSA. It also includes some derived information, such as Federal Pell Grant eligibility. (The amount of a Federal Pell Grant for which a student is eligible can be calculated based on the EFC.) The ISIR, however, no longer includes the list of colleges to which the student has applied; the U.S. Department of Education stopped sharing this information starting with the 2016-2017 FAFSA.

Although some of these databases are not accessible by the general public, Navient has access to all of these sources as a former FFELP lender and as a Direct Loan servicer.

In addition, each college generally maintains historical institution-specific information concerning the college's cost of attendance.

Even though Navient chose to not consider the cost of attendance of the borrower's college at the time Navient approved Tuition Answer loans, it is possible for Navient to determine now whether the loan amounts exceeded the cost of attendance. This involves creating a table based on IPEDS data for the cost of attendance for each college for each year, indexed by the UNITID, OPE ID and/or Federal School Code of the college. This table could then be joined with Navient's borrower-level loan data to compare

---

[6] nslds.ed.gov
[7] studentclearinghouse.org
[8] ifap.ed.gov/fregisters/FR080311PrivacyActSystemofRecords.html
[9] ifap.ed.gov/edetechref/attachments/1819EDETechRef3RecordLayouts201710.pdf

total loan amounts for each year with the applicable cost of attendance figures. The other sources of data could also be used to further support or as alternative sources for the determination of the cost of attendance.

To the extent that there is data about the amount of other financial aid received by the borrowers, such as federal loans, the cost of attendance figures could be reduced by the amount of that financial aid received by the borrowers. Borrowers could also be asked to self-certify concerning the amount of financial aid they received each year, just as they might have done when applying for a direct-to-consumer loan. The student's state of residence and housing status could also be obtained from FAFSA data for the student.

## Cost of Attendance Data from IPEDS

IPEDS data files are publicly available for all years from 1984 to 2018.[10] The cost of attendance figures are gathered by the Institutional Characteristics survey. In particular, student charges for academic year programs are stored in the IC####_AY data file, substituting the year for ####. For example, the IC2017_AY data file contains 2017 data.

The following IPEDS variables from the Institutional Characteristics data file provide the published information about key components of the cost of attendance for each college for the academic year that begins in the year of the data file.

- UNITID – The college or university's unique identification number
- CHG2AY3 – Published in-state tuition and fees for full-time, first-time undergraduate students
- CHG3AY3 – Published out-of-state tuition and fees for full-time, first-time undergraduate students
- CHG4AY3 – Books and supplies
- CHG5AY3 – Room and board (on campus)
- CHG6AY3 – Other expenses (on campus)
- CHG7AY3 – Room and board (off campus)
- CHG8AY3 – Other expenses (off campus)
- CHG9AY3 – Other expenses (with family)

The published tuition and fees charges vary only based on in-state vs. out-of-state residency status. The published room and board charges vary only based on on-campus, off-campus and with-family housing status.

The cost of attendance is the sum of the applicable tuition and fees, books and supplies, room and board, and other expenses.

Schools have their own cost of attendance data and are the source of the data that appears in IPEDS. Schools use the cost of attendance for assembling student financial aid packages and preparing financial

---

[10] nces.ed.gov/ipeds/datacenter/DataFiles.aspx

aid award letters. Navient could have obtained the cost of attendance information directly from the colleges or from IPEDS when originating their DTC loans.

**Cost of Attendance Data on the FAFSA**

When a student completes the FAFSA, they may list up to 10 colleges at a time using the online version of the FAFSA. The student specifies the colleges using each college's Federal School Code.[11] They also specify their housing plans for each college (e.g., on campus, with parent, off campus).

This screen snapshot shows the School Selection step of the FAFSA, after two colleges have been selected.



---

[11] The FAFSA provides a tool that can be used to search for a college's Federal School Code at fafsa.ed.gov/spa/fsc/#/SEARCH?locale=en_US

If one clicks on the VIEW SELECTED SCHOOL INFORMATION button, it shows a comparison table with information drawn from the College Scorecard database.

## Compare School Information

The following information is a subset of data that has been obtained from the *College Scorecard* Web site, developed by the National Center for Education Statistics. Complete information for each college can be accessed by visiting College Scorecard.

| School Name: | NORTHWESTERN UNIV | UNIV OF MASSACHUSETTS-AMHERST |
|---|---|---|
| Address: | 1801 HINMAN AVE 2ND FLOOR | FINANCIAL AID SERVICES |
| City: | EVANSTON | AMHERST |
| Federal School Code: | 001739 | 002221 |
| Web site: | www.northwestern.edu | www.umass.edu |
| School Type: | 4-year, Nonprofit | 4-year, Public |
| Tuition and Fees: In-State Out-of-State | $52,678 $52,678 | $15,411 $33,477 |
| Net Price Average: | $24,047 | $20,926 |
| Graduation Rate: | 94% | 77% |
| Retention Rate: | 98% | 91% |
| Transfer Rate: | 0% | 17% |
| Additional Information from *College Scorecard*: | NA | NA |

- The information provided above is updated quarterly and may not reflect recent changes.
- If you are attending a branch campus, the information provided here may be for the main campus. *College Scorecard* may have more specific information.
- The amounts for tuition and fees apply to full-time, first-time degree/certificate-seeking students.
- **Net Price Average** is the average yearly price charged to full-time, first-time undergraduate students receiving student aid at an institution of higher education after deducting any grant and scholarship aid received. Average Net Price provides students and families with an idea of how much a first-time, full-time undergraduate student who receives grant/scholarship aid pays to attend a particular institution after subtracting out that grant/scholarship aid.
- **Graduation rate** is the percentage of a school's first-time, first-year undergraduate students who complete their program within 150% of the published time for the program.
- **Retention rate** is the percentage of a school's first-time, first-year undergraduate students who continue at that school the next year.
- **Transfer rate** is the percentage of a school's first-time, first-year undergraduate students who transfer to another college within 150% of the published time for the program.
- NA indicates that information is not available from *College Scorecard*.

CLOSE   PRINT THIS PAGE

Colleges are identified on the FAFSA by a Federal School Code, which is a six-character identifier beginning with a 0 (zero), G, B or E and followed by a five-digit number.[12] The Federal School Code is the first six characters of the OPE ID.[13]

The Federal School Codes are used to index into the U.S. Department of Education's College Scorecard database,[14] which is built on top of IPEDS, to obtain in-state and out-of-state published tuition and fees information for the colleges to which the student is applying. The published tuition and fees information

---

[12] fafsa.ed.gov/spa/fsc/#/SEARCH?locale=en_US

[13] There are crosswalks that map between the UNIT ID and OPE ID.

[14] collegescorecard.ed.gov/data/

is not stored in the FAFSA application records, but rather is obtained by using each college's Federal School Code to look up the data from the College Scorecard database.

Specifically, the in-state and out-of-state tuition and fees figures displayed by the FAFSA come from the TUITIONFEE_IN and TUITIONFEE_OUT columns in the College Scorecard data. These columns, in turn, come from the CHG2AY3 and CHG3AY3 columns of IPEDS, which are the published in-state and out-of-state tuition and fee charges for the most recent year listed in the IPEDS data file.

Students can access their own FAFSA data using the MyStudentData Download[15] function on FAFSA.gov and StudentAid.gov. The MyStudentData Download includes the student's expected family contribution (EFC), as calculated by the FAFSA processor, as well as the student's information from the FAFSA (but not information provided by the student's parents or spouse). This includes the Federal School Codes for up to 10 colleges.

## Data from Credit Reporting Agencies

The Fair Credit Reporting Act (FCRA) [15 USC 1681 et seq.] requires all debts, including private student loans, to be reported on the borrower's credit history. The FCRA does not apply to federal education loans.

The Higher Education Act of 1965 [20 USC 1080a] requires federal education loans to be reported to each national consumer reporting agency, including Equifax, Experian and TransUnion.

Thus, a lender can obtain information about other student loans received by a borrower, including private student loans, by checking with one of the national consumer reporting agencies. Most lenders do so before originating a private student loan.

## Review of Navient Database

I received a subset of student loan data that was produced by Navient. It is a 25.6 gb file on December 9, 2019 in a password-protected Zip file on an encrypted USB flash drive. This contained a file named navient_backup.sql, which contained SQL code for recreating a relational database. It consists of a series of SQL code statements to

- Delete a specified table if it already exists
- Create a new table of the same name, specifying the structure of the table, specifically the names and data types of each column
- Insert rows into the table corresponding to the contents of the table, with each row containing a record

Thus, I was able to inspect the table structure for all tables included in the database, as well as all the rows of data that populated the database's tables. It is my understanding that this database file was based on a randomly selected subset of borrowers.

---

[15] ifap.ed.gov/eannouncements/attachments/AY20-21FAFSAMyStudentDataDownload.pdf

I also separately received a data dictionary on December 10, 2019 that described the tables and columns in a compressed and password-protected RAR archive file.

The Navient database includes tables that are indexed by college identifiers that appear to be the Federal School Code or the UNITID. There are also columns that appear to be the academic year for which the loans were borrowed. So, it should be possible to join the Navient database with the IPEDS databases to determine the applicable cost of attendance for each year's loans and whether the total loans exceeded the cost of attendance.

For example, one of the CLASS tables in the Navient database, CLA_LSAPP, contains loan application information. It includes a column APP_SCL_COST_AMT that is described in the data dictionary as "The school attendance cost for the loan period." This column appears to have cost of attendance information for very few borrowers and the data was not consistently equal to the college's published cost of attendance information. The data does not seem to have been provided by the colleges.

This table also includes columns APP_FNCL_AID_AMT for "The amount of financial aid that is to be received from other sources for the loan period" and APP_EXPD_FAM_AMT for "The amount the student's family is expected to contribute toward the cost of education for the requested loan period".

Navient does not appear to have used this cost of attendance, financial aid and EFC information to limit loan amounts provided to each borrower.

The Navient database also includes, for every borrower, the borrower's name, Social Security Number (SSN) and the amount(s) borrowed through the direct-to-consumer loans each year. The Navient database also includes tables that provide loan billing statements for each borrower, including the start and end dates of the billing period and the amount of the payment since the previous billing statement. When combined with tables that specify the date each borrower's loans were discharged, it should be possible to easily identify payments made by the borrower after the loans were discharged.

Specifically, one could write SQL code to determine how much each borrower paid after loan discharge based on this algorithm:

1. For each borrower, determine the date of bankruptcy discharge
2. Select the subset of billing statements for this borrower for which the date of payment occurs on or after the date of bankruptcy discharge
3. Calculate the sum of the payment amounts for this subset

An experienced database administrator (DBA) could implement this algorithm in about a page of SQL code.

## Qualifications

I am President of Cerebly, Inc. (formerly MK Consulting, Inc.), a consulting firm focused on computer science, artificial intelligence and statistical and policy analysis. Cerebly's clients have included the Advisory Committee on Student Financial Assistance (ACSFA), a committee established by Congress to

advise it on student financial aid policy. Cerebly, Inc. also publishes the web site PrivateStudentLoans.guru, among several other web sites.

I am also Publisher and Vice President of Research of Saving for College LLC. Saving for College LLC publishes Savingforcollege.com, the most popular guide to planning, saving and paying for college.

Before serving as Publisher and VP of Research for Savingforcollege.com, I was Publisher and Vice President of Strategy for Cappex.com LLC from 2016 to 2017. Cappex.com is a free consumer-facing web site about college admissions and financial aid.

Before serving as Publisher and VP of Strategy for Cappex.com, I was Senior Vice President and Publisher of Edvisors Network, Inc. from 2013 to 2015. Edvisors Network, Inc. publishes several consumer-facing web sites, including Edvisors.com, ScholarshipPoints.com and PrivateStudentLoans.com.

Before serving as Senior Vice President and Publisher of Edvisors Network, Inc., I was VP of Advanced Projects for Monster Worldwide and Publisher of FinAid, Fastweb and other consumer-facing web sites owned by Monster Worldwide, from 2001 to 2013. I founded FinAid in 1994. FinAid and Fastweb merged in 2009 and were acquired by Monster Worldwide in 2001. I designed and implemented all of the calculators on the FinAid web site, including two dozen loan calculators. (Subsequent to my leaving FinAid in 2013, they removed all of the income-driven repayment calculators because they are difficult to update without the requisite expertise.) I also wrote more than 100,000 lines of SQL code for analyzing Fastweb traffic and revenue data for the purpose of optimizing advertising revenue.

I have also previously worked as a Research Scientist for Just Research, a Software Engineer for the MIT AI Laboratory, a Software and Digital Typography Consultant in the Advanced Development Group of Bitstream Inc., and an Assistant Programmer Analyst for the Planning Research Corporation.

I have served on the editorial board of the Journal of Student Financial Aid from 2011 to the present. I served on the editorial board of the Council on Law in Higher Education from 2004 to 2011. I was a member of the board of directors of the National Scholarship Providers Association from 2009 to 2015 and am still a member of the research and advocacy committees.

I discovered the early repayment status loophole, which allowed millions of students to consolidate their federal student loans while they were still in school in May 2005, saving them billions of dollars of interest over the life of their loans.

I was involved in the design of income-based repayment (IBR) and public service loan forgiveness, which were enacted by Congress as part of the College Cost Reduction and Access Act of 2007 [P.L. 110-84]. In particular, I developed a parametrized calculator that allowed policymakers to explore various options in the design of these repayment plans. I was nominated for the Above & Beyond Citizen Honors of the Congressional Medal of Honor Society for this work in 2008, and named the Pennsylvania Finalist.

I reported on the possibility of a contagion effect from the subprime mortgage credit crisis to student loans in early 2007, long before most people recognized the existence of the subprime mortgage credit crisis. I began tracking lenders leaving federal and non-federal student loan programs in July 2007 and started publishing a list of loan program exits and lender layoffs in August 2007.[16] I published a white paper, *Solving the Student Loan Credit Crunch*, in March 2008 and testified before the Senate Banking

---

[16] http://www.finaid.org/loans/lenderlayoffs.phtml

Committee in April 2008, leading to passage of the Ensuring Continued Access to Student Loans Act of 2008 [P.L. 110-227]. This helped avert a complete meltdown of the student loan industry.

I was the first to report that student loan debt outstanding had exceeded credit card debt for the first time in 2010, auto loan debt in 2011 and reached the $1 trillion mark in 2012.

I have been quoted in more than 10,000 newspaper and magazine articles and have written for the *New York Times, Wall Street Journal, Washington Post, Reuters, Huffington Post, U.S. News & World Report, Money Magazine, Bottom Line/Personal, Forbes, Newsweek* and *Time Magazine*. I was named a Money Hero by *Money Magazine* in 2012. I served as the curator for the Student Loans Topics Page for the *New York Times* from 2009 to 2010. I served as the Student Loan Guru for FiLife.com, a Dow Jones/IAC property, from 2008 to 2010. I have served on the editorial advisory board of various Boardroom Inc. publications, such as Bottom Line/Personal and Bottom Line/Wealth, from 2008 to the present. I am a Quora Top Writer with more than 1 million answer views on Quora.

I am the author of five bestselling books about student financial aid, including *How to Appeal for More College Financial Aid, Twisdoms about Paying for College*, *Filing the FAFSA* and *Secrets to Winning a Scholarship*. Two of these books won Excellence in Financial Literacy Education (EIFLE) Awards from the Institute for Financial Literacy. I have written for numerous puzzle magazines, including *Games Magazine*, and have written two books of word puzzles, *Laddergrams Galore* and *More Laddergrams*.

I hold seven patents involving novel statistical methods and their applications, including patents for spelling and grammar correction, affect analysis, language identification, plagiarism detection, statistical text summarization and optimizing the scheduling of diagnostic tests for cancer screening and post-treatment follow-up. A patent application about improving the effectiveness of investment glide paths is still pending.

I have testified before Congress, federal/state agencies and national professional organizations about student loan debt on several occasions, including:

- *Trends in Student Loan Debt*, Keynote Address, NAGTRI/SABA Bankruptcy Seminar, National Association of Attorneys General (NAAG), November 14, 2017.
- *Pay Me Now or Pay Me Later*, College Savings Plan Network Conference, National Association of State Treasurers (NAST), May 13, 2015.
- *The Challenge of Rising Student Loan Debt*, California Student Aid Commission, Symposium on Student Debt, November 14, 2014.
- U.S. Senate Committee on Banking, Housing and Urban Affairs, hearing entitled *Turmoil in U.S. Credit Markets: Impact on the Cost and Availability of Student Loans*, April 15, 2008. My testimony and white paper lead to passage of the Ensuring Continued Access to Student Loans Act of 2008 (P.L. 110-227 and 110-359).

I have written more than 100 student aid policy analysis papers (available at www.studentaidpolicy.com), including several about student loans, such as:

- *Student Loan Debt Causes Delays in Achieving Major Financial Goals*, June 28, 2019.
- *Growth in student loan debt at graduation slows as borrowers hit loan limits*, June 29, 2018.
- *Who Graduates College with Six-Figure Student Loan Debt?*, August 1, 2012.
- *Characteristics of College Students Who Graduate with No Debt*, August 24, 2011.

- *Improving Borrower Satisfaction and Compliance by Adopting a Better Communication Strategy*, December 23, 2010.
- *Relationship of Default Rates to Debt and Income*, August 17, 2010.
- *Calculating the Contribution of Demographic Differences to Default Rates*, April 5, 2010.
- *Parent PLUS Loan Denial Rates in the FFEL and Direct Loan Programs*, August 31, 2009.
- *Characteristics of Private Student Loan Borrowers Who Do Not Use Federal Education Loans*, June 7, 2009.
- *Analysis and Evaluation of Iowa Student Loan Practices*, September 19, 2008. (Report prepared at the request of the Iowa Attorney General, Thomas J. Miller.)
- *Solving the Student Loan Credit Crunch*, March 10, 2008.
- *Impact of the Bankruptcy Exception for Private Student Loans on Private Student Loan Availability*, August 14, 2007.

I have won numerous awards, including Distinguished Speaker from the National Scholarship Providers Association (NSPA), College Financing Ace from *Investment Advisor Magazine*, Excellence in Financial Literacy Education (EIFLE) from the Institute for Financial Literacy, Money Hero from *Money Magazine*, Creative Leadership Award from the California Association of Student Financial Aid Administrators (CASFAA),  Special Award from the College Board, the Jefferson Medal from the American Institute for Public Service and a Meritorious Achievement Award from the National Association of Student Financial Aid Administrators (NASFAA).

Profiles of me written by journalists include:

- Bernice Napach, [Mark Kantrowitz: College Financing Ace — The 2016 IA 25](#), Investment Advisor Magazine, May 24, 2016.
- Steve Rosen, [Expert discusses the rising cost of college and student loan debt](#), Kansas City Star, May 29, 2015.
- Beckie Supiano, [Everybody's Go-To Methodical Mind](#), Chronicle of Higher Education, July 15, 2013.
- Jane J. Kim, [Student-Loan Gadfly Gets a Starring Role as the U.S. Pushes Out the Private Lenders](#), Wall Street Journal, July 3, 2010.

I earned two Bachelor of Science degrees from the Massachusetts Institute of Technology in 1989, one in mathematics and one in philosophy, and a Master of Science degree in computer science from Carnegie Mellon University in 1991. I am an alumnus of the Rickover Science Institute (RSI) in 1984.

_____
Signature (Mark Kantrowitz, President, Cerebly Inc.)