UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Golden,<br>Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>Debtor, | Chapter 7<br><br>Case No. 16-40809 (ESS) |
| Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>Plaintiff,<br><br>v.<br><br>National Collegiate Student Loan Trust 2006-4, Goal Structured Solutions Trust 2016-A, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services and Firstmark Services,<br><br>Defendants. | Adv. Proc. No. 17-1005 (ESS) |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

ARGUMENT .......................................................................................................................... 6

I.      THE PROPOSED CLASS ........................................................................................... 6

II.     PLAINTIFF AND THE PROPOSED CLASS SATISFY THE STANDARDS FOR
        CLASS CERTIFICATION .......................................................................................... 7

        A.      Rule 23(a) Standards Are Met ......................................................................... 9

        B.      The Proposed Class Satisfied Rule 23(b)(1)(A) ................................................ 21

        C.      The Proposed Class Satisfies Rule 23(b)(2) ...................................................... 23

        D.      The Proposed Class Satisfies Rule 23(b)(3) ...................................................... 23

        E.      Constitutionally Sound Notice Can Be Provided to Class Members .................... 33

        F.      This Court Has Jurisdiction to Adjudicate a National Class and Should
                Exercise That Jurisdiction .................................................................................. 33

        G.      The Court Should Appoint Boies Schiller Flexner, LLP; The Smith Law Group;
                Jones, Swanson, Huddell & Garrison, LLC; Fishman Haygood, LLP; and Law
                Offices of Josh Kons as Class Counsel .............................................................. 45

CONCLUSION ....................................................................................................................... 46

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alderwoods Group, Inc. v. Garcia*,
   682 F.3d 958 (11th Cir. 2012) ............................................................................. 42, 43

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..................................................................................................... 24

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*,
   568 U.S. 455, 133 S. Ct. 1184 (2013) ........................................................................... 8

*Anderson v. Credit One Bank, N.A. ("In re Anderson")*,
   884 F.3d 382 (2d Cir.) .......................................................................................... 44, 45

*Anderson v. Mt. Clemens Pottery, Co.*,
   328 U.S. 680 (1946) ..................................................................................................... 18

*Ass'n Against Discrimination in  Emp't, Inc. v. City of Bridgeport*,
   647 F.2d 256 (2d Cir. 1981) ........................................................................................ 18

*Audet v. Fraser*,
   332 F.R.D. 53 (D. Conn. 2019) ................................................................................... 16

*Bank United v. Manley*,
   273 B.R. 229 (N.D. Ala. 2001) ................................................................................... 34

*Belton v. GE Capital Retail Bank ("In re Belton")*,
   961 F.3d 612 (2d Cir. June 16, 2020) ......................................................................... 44

*Bessette v. Avco Financial Services, Inc.*,
   230 F.3d 439 (1st Cir. 2000) ....................................................................................... 39

*Bias v. Wells Fargo*,
   312 F.R.D. 528 (N.D. Cal. 2015) ................................................................................ 15

*Bolanos v. Norwegian Cruise Lines Ltd.*,
   212 F.R.D. 144 (S.D.N.Y. 2002) ................................................................................. 12

*Brecher v. Republic of Argentina*,
   806 F.3d 22 (2d Cir. 2017) ............................................................................................ 7

*Brooklyn Ctr. for Indep. of the Disabled*,
    290 F.R.D. 409 (S.D.N.Y. 2012) ........................................................................ 14

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ............................................................................. 12

*Butto v. Collecto Inc.*,
    290 F.R.D. 372 (E.D.N.Y. 2013) ........................................................... 10, 18, 27

*Catholic Healthcare W. v. U.S. Foodservice Inc. (In re U.S. Foodservice Inc. Pricing Litig.)*,
    729 F.3d 108 (2d Cir. 2013) ............................................................................. 24

*Cazares v. AVA Restaurant Corp.*,
    2017 WL 1229727 (E.D.N.Y. March 31, 2017) .............................................. 17, 27

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .......................................................................................... 37

*Chicot Cty. v. Sherwood*,
    148 U.S. 529 (1893) ........................................................................................ 36

*Cohen v. Westhaven Bd. of Police Comm'r*,
    638 F.2d 496 (2d Cir. 1980) ............................................................................. 18

*Cohens v. State of Virginia*,
    19 U.S. 264 (1821) .......................................................................................... 36

*Colorado River Water Conservation Dist. v. U.S.*,
    424 U.S. 800 (1976) ........................................................................................ 35

*Conley v. Sears, Roebuck & Co.*,
    222 B.R. 181 (D. Mass. 1998) ..................................................................... 32, 33

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................. 9

*Crocker v. Navient Solutions, LLC (In re Crocker)*,
    941 F.3d 206 (5th Cir. 2019) ......................................................................... 41-45

*D'Alauro v. GC Servs. Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ...................................................................... 26

*Dietrich v. C.H. Robinson Worldwide, Inc.*,
    2020 WL 635972 (N.D. Ill. Feb. 11, 2020) ..................................................... 20, 21

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................................ 24

*Erica P. John Fund, Inc. v. Haliburton*,
563 U.S. 804, 131 S. Ct. 2179 (2011) ...................................................................... 8

*Ferrer v. New York City Dep't of Educ.*,
2019 WL 2511874 (E.D.N.Y. June 12, 2019) ................................................ 7, 9, 12

*Flores v. Anjost Corp.*,
284 F.R.D. 112 (S.D.N.Y. 2012) ........................................................................ 15, 26

*Fonseca v. Dircksen & Talleyrand Inc.*,
2015 WL 5813382 (S.D.N.Y. Sept. 28, 2015) .................................................... 15, 26

*Fox v. Cheminova*,
213 F.R.D. 113 (E.D.N.Y. 2003) ............................................................................ 26

*Gray v. Petoseed Co., Inc.*,
985 F. Supp. 625 (D. S.C. 1996) ............................................................................ 35

*Harte v. Ocwen Fin. Corp.*,
2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018) *adopted in part and reversed in part on other grounds*, 2018 WL 1559766 (E.D.N.Y. March 30, 2018) .............................................. 15, 17

*Hasemann v. Gerber Prod. Co.*,
2019 WL 2250687 (E.D.N.Y. M.J. Feb. 20, 2019) ................................................ 24

*Hilton v. Wright*,
235 F.R.D. 40 (N.D.N.Y. 2006) .............................................................................. 22

*In re Agent Orange Prod. Liab. Litig., MDL No. 381*,
818 F.2d 145 (2d Cir. 1987) .................................................................................... 26

*In re Air Cargo Shipping Services Antitrust Litig.*,
06-MD-1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014) *report rec. adopted*,
2015 WL 5093503 (E.D.N.Y. July 10, 2015) ........................................................ 25

*In re Beck*,
283 B.R. 163 (Bankr. E.D. Pa. 2002) .................................................................... 40

*In re Brizinova*,
565 B.R. 488 (E.D.N.Y. 2017) ........................................................................ 38, 39

*In re Cano*,
410 B.R. 506 (Bankr. S.D. Tex. 2009) .................................................................. 34

*In re Cline*,
  282 B.R. 686 (W.D. Wash. 2002) ......................................................................... 40

*In re Digital Music Antitrust Litig.*,
  321 F.R.D. 64 (S.D.N.Y. 2017)............................................................................ 16

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................... 13

*In re Golden*,
  596 B.R. (Bankr. E.D.N.Y. 2019) ...................................................................38, 45

*In re Haemmerle*,
  529 B.R. 17 (Bankr. E.D.N.Y. 2015) ................................................................... 30

*In re Harris*,
  280 B.R. 876 (Bankr. S.D. Ala. 2001).................................................................. 34

*In re Haynes*,
  2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) ............................. 35, 37, 40, 43

*In re Krause*,
  414 B.R. 243 (Bankr. S.D. Ohio 2009) ................................................................ 34

*In re Latanowich*,
  207 B.R. 326 (Bankr. D. Mass. 1997) .................................................................. 32

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
  11 MD 2262, 2018 WL 1229761 (S.D.N.Y. Feb. 28, 2018) .................................. 25

*In re Nicholas*,
  457 B.R. 202 (Bankr. E.D.N.Y. 2011) ................................................................. 30

*In re Noletto*,
  244 B.R. 845 (S.D. Ala. 2000)............................................................................. 34

*In re Patrick*,
  344 B.R. 56 (Bankr. M.D. Pa. 2005).................................................................... 34

*In re Petrobras*,
  862 F.3d 250 (2d Cir. 2017)................................................................... 7, 14, 15, 25

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006)...........................................................................8, 22

*In re Rojas*,
    2009 WL 2496807 (Bankr. S.D. Tex. Aug. 12, 2009) ......................................34, 37

*In re Sheffield*,
    281 B.R. 24 (Bankr. S.D. Ala. 2000)...................................................................... 34

*In re Sims*,
    278 B.R. 457 (Bankr. E.D. Tenn. 2002) ............................................................... 34

*In re Szenes*,
    515 B.R. 1 (Bankr. E.D.N.Y. 2014) ...................................................................... 30

*In re U.S. Food Serv. Inc. Pricing Litig., No. 3:07-md-1894*,
    2011 WL 6013551 (D. Conn. Nov. 29, 2011) ...................................................... 28

*In re Visa Check/MasterMoney Antitrust Litigation*,
    280 F.3d 124 (2d Cir. 2001)......................................................................24, 26, 31

*Johnson v. Nextel Cmmc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)..........................................................................9, 25, 30

*Kalkstein v. Collecto, Inc.*,
    304 F.R.D. 114 (E.D.N.Y. 2015) .......................................................................... 27

*Kindle v. Dejana*,
    315 F.R.D. 7 (E.D.N.Y. 2016) ...........................................................................8, 22

*Kivett v. Flagstar Bank, FSB*,
    333 F.R.D. 500 (N.D. Cal. 2019) ......................................................................... 19

*Kopaleishvili v. Uzbek Logistics, Inc.*,
    2019 WL 6609212 (S.D. Ohio Dec. 5, 2019) .................................................19, 20

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) .......................................................................... 24

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) .............................................................................................. 36

*Macarz v. Transword Systems, Inc.*,
    193 F.R.D. 46 (D. Conn. 2000).............................................................................. 18

*Maneely v. City of Newburgh*,
    208 F.R.D. 69 (S.D.N.Y. 2002).............................................................................. 10

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2nd Cir. 1997) .......................................................................................... 10, 12

*McNamee v. Nationstar Mortgage, LLC*,
   2018 WL 1557244 (S.D. Ohio March 30, 2018) ................................................................ 19

*Merino v. Beverage Plus America Corp.*,
   2011 WL 3739030 (S.D.N.Y. Apr. 12, 2011) ...................................................................... 7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ........................................................................................................ 33

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ........................................................................................................ 36

*Nicholson v. Williams*,
   205 F.R.D. 92 (E.D.N.Y. 2001) ...................................................................................... 12

*Quackenbush v. Allstate Ins. Co.*,
   517 U.S. 706 (1996) ........................................................................................................ 36

*Renshaw v. Renshaw*,
   222 F.3d 82 (2d Cir. 2000) ............................................................................................. 15

*Rikos v. Proctor & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) .......................................................................................... 20

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) .................................................................................. 7, 23, 29

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) ............................................................................................. 9

*Robinson v. Metro-North Commuter R.R.*,
   267 F.3d 147 (2d Cir. 2001) ........................................................................................... 10

*Roseman v. Bloomberg L.P.*,
   2017 WL 4217150 (S.D.N.Y. Sept. 21, 2017) ................................................................. 24

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
   2019 WL 652841 (S.D.N.Y. Feb. 15, 2019) .................................................................... 25

*Schear v. Food Scope America, Inc.*,
   297 F.R.D. 114 (S.D.N.Y. 2014) .................................................................................... 27

*Smilow v. Southwestern Bell Mobile Systems, Inc.*,
    323 F.3d 32 (1st Cir. 2003) ........................................................................................17, 27

*Starter Corp. v. Converse*,
    170 F.3d 286 (2d Cir. 1999) ............................................................................. 38

*State Farm Mutual Auto. Insurance Co. v. Campbell*,
    538 U.S. 408 (2003) ......................................................................................... 30

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014).............................................................................. 9

*Sykes v. Mel S. Harris and Assoc., LLC*,
    780 F.3d 70 (2d Cir. 2015)...........................................................................7, 29

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)............................................................................... 8

*Tropical Sails Corp v. Yext, Inc.*,
    2017 WL 1048086 (S.D.N.Y. Mar. 17, 2017) .................................................. 12

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016).................................................................................18, 25

*U.S. v. Specialty Ins. Co. v. Liberty Partners, L.P.*,
    2011 WL 5428971 (S.D.N.Y. Nov. 8, 2011) .................................................... 38

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010)............................................................................. 24

*United Steel, Paper and Forestry, Int'l Union v. Kelsey-Hayes Co.*,
    290 F.R.D. 77 (E.D. Mich. 2013)..................................................................... 22

*Vick v. NCO Fin. Sys., Inc.*,
    2010 WL 1330637 (E.D. Tex. M.J., March, 15, 2010) ..................................... 37

*Walls v. Wells Fargo Bank, NA.*,
    262 B.R. 519 (Bankr. E.D. Cal. 2001).............................................................. 39

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...............................................................................8, 9, 12, 23

*Westchester Ind. Living Ctr., Inc. v. State Univ. of New York*,
    331 F.R.D. 279 (S.D.N.Y.  2019).............................................................11, 12, 14

*Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*,
  609 F.3d 748 (5th Cir. 2010) ............................................................................43, 44

*Willix v. Healthfirst, Inc.*,
  2009 WL 6490087 (E.D.N.Y. Dec. 3, 2009) ........................................................ 11

*Young v. Nationwide Mutual Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ................................................................................ 20

Statutes

11 U.S.C. § 105 ...........................................................................................37, 38, 39

11 U.S.C. § 362 ..................................................................................................... 39

11 U.S.C. § 523 ...............................................................................................1, 2, 4

11 U.S.C. § 524 ............................................................................................. Passim

11 U.S.C §§ 727, 524 and 105 .........................................................................34, 37

18 U.S.C. § 1341 and 1345 ................................................................................... 32

26 U.S.C. § 221 ...............................................................................................2, 4, 6

28 U.S.C. § 157 ..................................................................................................... 34

28 U.S.C. § 1334(b) .............................................................................................. 33

28 U.S.C. § 1334(e) .............................................................................................. 35

Rules

Fed. R. Bank. P. 7023 ........................................................................................34, 46

Fed. R. Civ. P. 23 .............................................................................................passim

Fed. R. Civ. P. 65 ................................................................................................. 37

11 U.S.C. § 7023 ................................................................................................... 41

Other Authorities

2 William B. Rubenstein, Newberg on Class Actions § 4:50 (5th ed. 2012) .............................. 25

*Closing Consumer Bankruptcy's Enforcement Gap*,
  69 Baylor L. Rev. 480 (2017) ............................................................................... 41

*The Debtor Class*,
  88 Tul. L. Rev. 21 (2013) ...................................................................................... 38

*The Future of Classwide Punitive Damages*,
  46 U. Mich. J.L. Reform 1127 (2013) ............................................................. 30, 31

Pursuant to Bankruptcy Rule 7023 and Federal Rule of Civil Procedure 23, Plaintiff Tashanna Golden submits this Memorandum of Law in Support of her Motion for Class Certification against Defendants National Collegiate Student Loan Trust 2006-4 ("NCT"), Goal Structured Solutions Trust 2016 ("Goal"), Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("PHEAA"), and Firstmark Services ("Firstmark").  Plaintiff seeks certification under Rules 23(b)(1), 23(b)(2), and 23(b)(3).

## PRELIMINARY STATEMENT

This case, like *Homaidan v. Sallie Mae*, 13-464-95 (ESS) is straightforward: Defendants collected on student loans that had been discharged in bankruptcy.  There is no dispute that Plaintiff took out student loans, that Plaintiff obtained a discharge in bankruptcy, and that Defendants collected on Plaintiff's student loans after discharge.  The same is true for all members of the class.  The only dispute is whether the student loans at issue were discharged.  More specifically, the only dispute is whether these loans were exempted from discharge under 11 U.S.C. § 523(a)(8).

Defendants hold or service student loans.  If a student obtains a bankruptcy discharge and Defendants receive notice of discharge, Defendants do not check to see if the loan is nondischargeable within the terms of § 523(a)(8) before resuming collection on that loan. Defendants knew, when they made or serviced the loans, that many of their loans were dischargeable either because they exceeded the cost of attendance or were made to individuals that did not attend Title IV schools.  By knowingly collecting on such loans after notice of discharge, Defendants are willfully violating § 524 and the discharge orders of the class.

It is elemental that completion of the bankruptcy process discharges all debts except for those debts that are specifically exempted from discharge under 11 U.S.C. § 523.  A private student

1

loan (*i.e.* non-governmental loan) is specifically exempted from discharge if it is a "qualified education loan." 11 U.S.C. § 523(a)(8)(B). A student loan is a "qualified education loan" if the amount of money borrowed under the loan amount was within the student's cost of attendance at a Title IV school. 11. U.S.C. § 523(a)(8)(B) and 26 U.S.C. § 221(d). Private loans that do not meet those conditions are not exempt from discharge under § 523(a)(8).

Loans that are "made under any program funded in whole or in part by a governmental unit or nonprofit institution" are also exempt from discharge under § 523(a)(8)(A)(i). Defendants NCT and PHEAA assert as an affirmative defense that some of the loans that they hold or service are non-dischargeable because they were guaranteed by The Education Resources Institute ("TERI"). As is more fully set forth in Plaintiff's Motion for Partial Summary Judgment, that affirmative defense is without merit because TERI is not a nonprofit institution; it did not fund any of the subject loans; it did not guarantee loans that are not qualified education loans (which encompasses the entire class); and it rejected its guarantee obligations as part of its proceeding in bankruptcy.

The Court should certify this class because:

- There are thousands of borrowers with loans that either exceed the cost of attendance or were issued to students who did not attend Title IV schools who have been subject to Defendants' collection efforts such that joinder is impracticable;

- The determination of whether the student loans were discharged under 11 U.S.C. § 523(a)(8) and whether Defendants' policy and actions violate the discharge injunction of the Bankruptcy Code, 11 U.S.C. § 524, will becommon to the class and would drive resolution of the claims of the entire class;

- Plaintiff's claims are typical of the class's claims because Defendants' actions toward her in collecting on discharged loans are the same as Defendants' actions toward everyone in the class and Plaintiff makes the same arguments as to liability as the class;

- Plaintiff is a fair and adequate representative of the class because she alleges the same violation of the law as the class and has no antagonistic interests to the class;

- Plaintiff's counsel are fair and adequate representatives because they are qualified, experienced counsel who are able to proficiently conduct the litigation;

- Defendants have continued to treat all class members' loans as non-dischargeable without regard to the cost of attendance or to Title IV status of the schools class members attended such that declaratory and injunctive relief would benefit the class as a whole;

- Defendants have continued to collect on discharged debts and will continue to do so unless they are enjoined by an injunction that applies to the entire class;

- The factual and legal determination of whether Defendants have a policy of collecting after discharge without regard to whether the loans were discharged can be resolved on a class-wide basis; and

- Managing the case in one forum on a class-wide basis is more efficient and practicable than managing each class member's case individually.

## STATEMENT OF FACTS

**Plaintiff Tashanna Golden**

Plaintiff Tashanna Golden attended the University of Pennsylvania Law School from 2005 to 2008. *See* Declaration of Tashanna Golden (hereinafter "Golden Decl.") at ¶ 2. During the 2006-2007 academic year, the published Cost of Attendance at Penn was $48,464. *Id.* at ¶ 3, Ex. A. During this academic year, Ms. Golden borrowed $27,500 in federal guaranteed loans and received another $21,640 in scholarships and grants. *Id.* at ¶ 4. Ms. Golden also borrowed an additional $7,103 from BankOne on or about September 28, 2006. *Id.* The BankOne loan was later securitized into the NCT Trust. This loan was in excess of Ms. Golden's cost of attendance after taking into account federal loans, scholarships and grants and is therefore nondischargeable. The loan has been serviced by PHEAA which continues to demand payment from Plaintiff Golden.

Plaintiff Golden graduated from Penn Law School in May 2008. On or about February 26, 2008, Citibank extended an $11,000 "bar loan" to Plaintiff Golden to cover her living expenses while she studied for the Pennsylvania Bar Exam. *Id.* at ¶ 5. This loan was not a qualified education loan as defined in § 221(d)(1) of the Internal Revenue Code because it was not issued to pay the cost of attendance at a Title IV institution. It, therefore, does not come within the terms of § 523 and is fully dischargeable. The Citibank loan was sold to Goldentree Asset Management on or about October 24, 2015, and was then placed into the Goal Trust. The loan is serviced by Firstmark. *See* Declaration of George F. Carpinello (hereinafter "Carpinello Decl.") at ¶ 2, Ex. A ("Letter from CitiBank").

On February 29, 2016, Plaintiff Golden filed a voluntary petition for relief under the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York. Golden Decl. at ¶ 6. Ms. Golden properly listed on Schedule F certain "student loans" owed, including the loans that are the subject of this action. Golden Decl. at ¶ 7, Ex. B. On or about August 3, 2016, this Court issued a discharge order in Ms. Golden's bankruptcy proceeding (Golden Decl. at ¶ 8, Ex. C) and, on or about August 5, 2016, all creditors received notice of discharge. Golden Decl. at ¶ 8, Ex. D. Ms. Golden did not enter into an agreement under § 524(c) of the Bankruptcy Code and none of the Defendants filed an adversary proceeding to contest discharge of the subject loans. Golden Decl. at ¶ 9.

However, instead of treating the loans as discharged, Defendants continued to demand, and accepted, payment from Ms. Golden on the discharged loans. Golden Decl. at ¶ 10.

**Defendants' Collection of Discharged Debts**

Defendants' treatment of Plaintiff Golden's loans is reflective of how they treated all class members' loans. It is undisputed that none of the Defendants makes any effort to determine whether the subject loans are qualified education loans after receiving notice of discharge in

bankruptcy.  Rather, they simply resume collection on such loans, as if discharge never occurred. *See* Carpinello Decl. at ¶ 3, Ex. B ("Deposition of Peter Sadowski") at 39:3-20; 40:1-41:6; 66:24-67:12; Carpinello Decl. at ¶ 4, Ex. C ("Deposition of Katelynn Bias") at 49:18-50:40; 53:16-60:19; 162:13-163:12; Carpinello Decl. at ¶ 5, Ex. D ("Goal's Responses to Plaintiff's Second Set of Interrogatories") at Response to Interrogatory No. 4; Carpinello Decl. at ¶ 6, Ex. E ("NCT's Responses to Plaintiff's Second Set of Interrogatories") at Response to Interrogatory No. 4.

Defendants assert that they are under no obligation to make any determination as to dischargeability of these loans because of the "certifications" they receive from the school or the borrower.

With regard to Golden's bar loan and similar loans, Defendant Goal asserts that any such loan "required a certification from the educational institution that they attended certifying that the borrower had expenses associated with the bar examination during the period for which the loan was requested  (*see e.g.,* Citi-Golden_00007), or additional documentation evidencing that the borrower was registered for a board review course or was graduating in pursuing a medical or dental residency or internship."  Carpinello Decl., Ex. D at Response to Interrogatory No. 1; *see also* Carpinello Decl. ¶ 9, Ex. H ("2016A_Golden_000007")[1].

Defendant NCT, for its part, asserts that it relies upon a certification by the student borrower that it claims Plaintiff Golden (and other borrowers) have made on their loan application that her loan "was and is a qualified education loan."  Carpinello Decl., Ex. E at Response to Interrogatory No. 1.

---

[1] It should be noted that not even this meaningless certification has actually been provided since the document that the Trust references, in fact, does not contain the certification of the school.  *See* Carpinello Decl., Ex. G.

NCT also relies on its contracts with National Collegiate Funding LLC ("NCF") in which NCF made representations and warranties that the sellers of the loans *i.e.*, the original lending institutions, in which the sellers represented and warranted that every loan they were selling was guaranteed by TERI and further that TERI stated that it would only guarantee education loans that were "qualified education loans" under the tax code. *Id.*

For the reasons set forth in Plaintiff's Motion for Partial Summary Judgment, none of those "certifications" or contracts render any of Plaintiff's loans or any of the class members' loans nondischargeable. Indeed, TERI's contractual disclaimer that it would not guarantee any loans that were not qualified education loans, by definition, removes all the loans at issue from any TERI guarantee program. *See* Carpinello Decl., Ex. E at Response to Interrogatory No. 1: "TERI will only guarantee an education loan if it satisfies TERI's program guideline standards. The TERI program guidelines, and therefore the loan originators' program guidelines, require that each TERI-guaranteed loan is a 'qualified education loan' under the tax code."; Carpinello Decl. at ¶ 34, Ex. GG ("Guarantee Agreement") at ¶ 2.2(b).

## ARGUMENT

## I.    THE PROPOSED CLASS

Plaintiff seeks to certify the following class:

> Individuals who received private loans owned, held, or serviced by Defendants which were not within the cost of attendance at Title IV institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after October 17, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

Excluded from the class are any debtors who have validly reaffirmed their debts to Defendants or whose debts were expressly held to be non-dischargeable. Also excluded are Defendants, any entity in which any Defendant has a controlling interest or that has a controlling

interest in any of Defendants, Defendants' legal representatives, assignees, and successors, the attorneys for Plaintiff and the class, and any member of the attorneys' immediate families. Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

## II.   PLAINTIFF AND THE PROPOSED CLASS SATISFY THE STANDARDS FOR CLASS CERTIFICATION.

To achieve certification, a proposed class must meet the four threshold requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015); *Ferrer v. New York City Dep't of Educ.*, No. 18 Civ. 6109, 2019 WL 2511874, at *4 (E.D.N.Y. June 12, 2019). The Second Circuit also recognizes an "implied requirement of ascertainability" when evaluating Rule 23(a). *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017). Ascertainability is found when the class can be "defined by objective criteria that are administratively feasible" and when "identifying its members would not require a mini-hearing on the merits of each case." *Id.* at 24-25 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2017)).

In addition, the district court must find that certification is appropriate under Rule 23(b). *Roach*, 778 F.3d at 405. Here, Plaintiff seeks certification under Rules 23(b)(1)(A), 23(b)(2), and 23(b)(3). It is well-established that an action may be certified under more than one of Rule 23(b)'s provisions. *See, e.g., Sykes v. Mel S. Harris and Assoc., LLC*, 780 F.3d 70, 99 (2d Cir. 2015) (upholding certification of two classes: one under Rule 23(b)(2) and the other under Rule 23(b)(3)); *Merino v. Beverage Plus America Corp.*, No. 10 civ. 0706, 2011 WL 3739030, at *2 (S.D.N.Y. Apr. 12, 2011) (same).

Certification of a class under Rule 23(b)(1)(A) is appropriate where there is a legitimate risk that individual plaintiffs, who should be treated the same, "could obtain inconsistent dispositions resulting in incompatible standards of conduct for defendants," which are "'precisely the problems Rule 23(b)(1) was intended to avoid.'" *Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) (quoting *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006)).

Certification of a declaratory or injunctive relief class under Rule 23(b)(2) is appropriate where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345-46 (2011).

Certification of a class for damages is warranted where "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Haliburton*, 563 U.S. 804, 809, 131 S. Ct. 2179, 2184 (2011). Although in some cases the court may have to "probe behind the pleadings" to determine whether the plaintiffs have met the requirements of Rule 23, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95 (2013) (citations omitted).

Class certification is appropriate where the plaintiff establishes by a preponderance of the evidence that each of the requirements of Rule 23 has been met. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-03 (2d Cir. 2008).

### A.    Rule 23(a) Standards Are Met

#### 1.    *The Numerosity Standard Is Met*

The numerosity requirement is met when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  In the Second Circuit, courts presume numerosity when a proposed class contains forty or more members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Ferrer*, 2019 WL 2511874, at *3.  A plaintiff need not prove the exact size nor the identity of class members to satisfy the numerosity requirement. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Ferrer*, 2019 WL 2511874, at *3.  Here, Defendants' own records suggest that the number of people who meet the class definition are in the thousands.  *See* Declaration of John DeBois.   Accordingly, numerosity is easily satisfied.

#### 2.    *The Commonality Standard Is Met*

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  To satisfy this element, a plaintiff must allege a "common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc.*, 564 U.S. at 350.  The Rule does not require all questions of law or fact to be common—in fact, "even a single common question" will suffice. *Id.* at 359.  "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." *Id.* at 350 (internal marks and citation omitted, emphasis in original).  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Cmmc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th

Cir. 2014)). "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 155 (2d Cir. 2001). Rule 23(a)(2) does not mandate that the plaintiff demonstrate that all class members' claims are identical. *Maneely v. City of Newburgh*, 208 F.R.D. 69, 74 (S.D.N.Y. 2002). Further, factual differences in the claims of the class do not automatically preclude a finding of commonality. *See, e.g., Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2nd Cir. 1997) (finding commonality among proposed class of children who were exposed to a "unitary course of conduct" by department of children's services); *Butto v. Collecto Inc*., 290 F.R.D. 372, 392 (E.D.N.Y. 2013) ("individual circumstances of the class may differ without precluding class certification."); 5 *Moore's Federal Practice* § 23.23[2] (Matthew Bender 3d ed.). In fact, a plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377.

In the present case, commonality is easily satisfied because Plaintiff's and the class members' claims can be resolved by answering the same common question as to whether the loans are discharged and all arise from Defendants' uniform course of conduct. Every member of the class has a loan held or serviced by Defendants as to which Defendants made no effort to determine whether the loans were qualified education loans before they resumed collection after receiving notice of discharge. In every case where Defendants cannot otherwise establish that the loan was within the cost of attendance at a Title IV institution, the loans were discharged and Defendants have violated § 524 and the discharge orders by collecting on these discharged debts. *See* Plaintiff's Motion for Summary Judgment submitted herewith.

While Defendants are different entities—two trusts and the two servicers—they all bear the same liability. It also does not matter that the class members had different loan amounts or

went to different schools with different costs of attendance. The Court's inquiry is not to determine if there are any non-common issues, it is to determine if there is a common issue—a "'unifying thread' among the claims to warrant class certification." *Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2009 WL 6490087, at *2 (E.D.N.Y. Dec. 3, 2009). Moreover, when a (b)(2) class seeks to declare rights regarding a common legal question like dischargeability or a uniform policy and seeks to enjoin that policy, as opposed to obtaining individualized relief, commonality is assumed. *Westchester Ind. Living Ctr., Inc. v. State Univ. of New York*, 331 F.R.D. 279, 292 (S.D.N.Y. 2019). In any event, any minor factual differences can be determined by the same simple objective criteria and do not create uncommon facts or issues. In each case, the Class Member is entitled to restitution of all funds paid on such discharged debts.

Defendants will also likely raise a common defense, namely, that they were entitled to rely on a boilerplate statement in their loan applications in which the debtor purports to certify that the loan is a "qualified education loan." As explained more fully in Plaintiff's Motion for Partial Summary Judgment, that defense is without merit. Waivers of dischargeability violate public policy. But that too is an issue that applies to the entire class. Also common to much of the class is the defense raised by NCT and PHEAA that their loans are exempt from discharge because they were purportedly guaranteed by TERI. As explained in Plaintiff's Motion for Partial Summary Judgement, this defense is also without merit.

Finally, a common question will also determine Defendants' liability for additional damages, punitive damages, and attorney's fees; *i.e.*, whether Defendants acted willfully when collecting on debts without making a determination as to whether the loans exceeded the cost of attendance and were therefore dischargeable.

3.      *The Typicality Standard Is Met*

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The purpose of the typicality requirement is to ensure that the named plaintiff's claim and the claims of the class "are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Marisol A.*, 126 F.3d at 376.  The requirements for commonality and typicality "tend to merge" because they both "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5.  However, these requirements are distinct insofar as typicality focuses on "claims or defenses," while, as previously discussed, commonality focuses on "questions of law or fact."  *Tropical Sails Corp v. Yext, Inc.*, No. 14 Civ. 7582, 2017 WL 1048086, at *10 (S.D.N.Y. Mar. 17, 2017). "As long as plaintiffs assert … that defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality."  *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 154-155 (S.D.N.Y. 2002).  Minor variations in fact patterns do not undermine a finding of typicality.  *Ferrer*, 2019 WL 2511874, at *4.

In a case such as this, where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability," typicality is satisfied.  *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (quoting *Marisol A.*, 126 F.3d at 376).

Where the plaintiff seeks declaratory and injunctive relief, typicality can be assumed. *Westchester Ind. Living Ctr., Inc.*, 331 F.R.D. at 293; *Nicholson v. Williams*, 205 F.R.D. 92, 99

(E.D.N.Y. 2001).  In the present case, Plaintiff's claim is premised on precisely the same conduct as the claims of the other class members.  Plaintiff instituted this action after discovering that her debts to Defendants were, in fact, discharged in bankruptcy, even though Defendants continued to collect those debts after discharge.  Defendants' practice of collecting on such debts, knowing that these debts had been discharged in bankruptcy and did not meet the requirements of § 523(a)(8), uniformly applies to every member of the class, and each member of the class has suffered exactly the same type of harm as Plaintiff.

*4*     *The Class Is Adequately Represented*

Rule 23(a)(4) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This factor has two components.  First, the named representative must be able to prosecute the action vigorously through qualified counsel, and second, the representative must not have antagonistic or conflicting interests with the unnamed members of the class.  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009).  To defeat a motion for class certification, the conflict must be fundamental.  *Id.*  Here, there are no conflicts between Plaintiff and the proposed class members.  Plaintiff has been harmed by the identical conduct of Defendants as that inflicted on the other class members and shares the common interest of obtaining a judicial resolution regarding the unlawfulness of Defendants' policies, an order enjoining Defendants' wrongful conduct, restitution of funds paid on discharged debts, and an order setting damages based on the common harm to the class.  Further, Plaintiff is informed about the litigation, has participated in the proceedings to date and stands ready to fulfill her remaining obligations as named representative.  *See* Golden Decl. at ¶¶ 11-12.

Furthermore, as evidenced by each of the declarations attached hereto, Plaintiff's counsel have the skill, knowledge, and experience to prosecute this action effectively and expeditiously. Plaintiff's counsel have spent years investigating the types of claims at issue in this litigation and have a thorough understanding of the applicable law. Plaintiff's counsel are experienced in litigating significant bankruptcy and consumer issues and have represented, and continue to represent, hundreds of thousands of individuals who have experienced similar harm to that caused by Defendants and other financial institutions that fail to comply with § 524(a)(2). Moreover, Plaintiff and her counsel have already shown a willingness in this litigation to vigorously pursue the claims at issue. Finally, all law firms have substantial resources to dedicate to the prosecution of this case. Carpinello Decl. at ¶¶ 42-47; Declaration of Austin Smith; Declaration of Lynn Swanson; Declaration of Jason Burge; and Declaration of Joshua Kons.

### 5.    *Ascertainability*

As a threshold matter, "[i]t is not clear that the ascertainability requirement applies to Rule 23(b)(2) class actions . . . as notice is not obligatory and the relief sought is injunctive rather than compensatory." *Brooklyn Ctr. for Indep. of the Disabled*, 290 F.R.D. 409, 419 n.3 (S.D.N.Y. 2012); *Westchester Ind. Living Ctr., Inc.*, 331 F.R.D. at 299. Even if ascertainability is required, it is met here. The Second Circuit has explained that the ascertainability requirement is a "modest threshold" that only requires the plaintiff to show that the class is not "indeterminate in some fundamental way." *In re Petrobras*, 862 F.3d at 269. "Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition, an issue that is already accounted for in Rule 23." *Id.* (emphasis in the original). Thus, all that is required under the ascertainability standard is ensuring that the class is "defined using objective criteria that establish a membership with definite boundaries." *Id.* It does not require a plaintiff

to prove at the certification stage that it is "administratively feasible" to determine the class. *Id.* at 264. Moreover, the Eastern District has held that review of individual class members' factual situation cannot defeat ascertainability. *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2018 WL 1830811, at *32 (E.D.N.Y. Feb. 8, 2018) ("At this juncture, all that matters is whether there is a *possible* method to ascertain the class, not that there is necessarily an easy one.") *adopted in part and reversed in part on other grounds*, 2018 WL 1559766 (E.D.N.Y. March 30, 2018); *Bias v. Wells Fargo*, 312 F.R.D. 528, 538-39 (N.D. Cal. 2015) ("[e]ven if a file-by-file review were required to identify borrowers who paid a BPO charge, the Paid Class would still be ascertainable.").

Ascertainability is readily met in this case, as the proposed class can be ascertained through objective criteria. *Flores v. Anjost Corp.*, 284 F.R.D. 112, 123 (S.D.N.Y. 2012) (finding class ascertainable through objective criteria that included the defendant's own payroll records and "no subjective criteria is required to determine the class' contours."); *Fonseca v. Dircksen & Talleyrand Inc.*, No. 13 Civ. 5124, 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015) (same). First, every loan that was subject to discharge is presumptively discharged unless Defendants prove that the loan was exempt from discharge. *See Renshaw v. Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) (holding that creditor has the burden of establishing non-dischargeability). Second, Defendants may argue that they should be able to demonstrate that any particular loan was, nonetheless, within the cost of attendance at a Title IV institution. Defendants are certainly free to present such evidence with regard to particular loans and, if they do so, the debtors on those loans may be excluded from the class. However, Defendants' ability to come forward with that proof does not undermine the ascertainability of the class. Defendants have detailed information about each borrower, including the amount of their loan and school attendance status. In addition,

the cost of attendance at each institution, the other loans and financial aid each borrower received and the school's Title IV status can be ascertained from the relevant schools and publicly available records.  The cost of attendance for each student who has applied for federally-guaranteed financial aid is in a database maintained by the federal government known as the Federal Student Financial Application File.  Defendants have access to this file as lenders and servicers of federally-guaranteed student loans.  The cost of attendance for each school, for every year, is also maintained by the National Center for Education Services at its Integrated Post-Secondary Education Data System ("IPEDS").  *See* Carpinello Decl. at ¶ 35, Ex. HH ("Kantrowitz Declaration").  Defendants can compare those numbers with their own data showing the amount of each class member's loans to determine if they are within the cost of attendance at a Title IV school.

Case-by-case review of the borrowers' records to determine which loans are within or in excess of the cost of attendance will not defeat certification.  It is not fatal for a class definition to require some inquiry into individual records, so long as the information is available through a "ministerial review" rather than "arduous individual inquiry." *Audet v. Fraser*, 332 F.R.D. 53, 72-73 (D. Conn. 2019) (predominance found where class membership was proposed to be shown through various records such as emails, public bitcoin block chain wallets, and credit card data related to plaintiffs' "purchases, activities and subsequent losses [uploaded] to a website" because "membership may be established by reference to more than one type of document, and as long as proposed class members can show proof of purchase by submitting such documentation during the claims stage, individual inquiries will not predominate."); *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 90 (S.D.N.Y. 2017) (predominance found because Plaintiff could show membership in class through "credit card payments, confirmatory emails, records kept by digital retailers, and the Digital Music product itself" such that individual inquiries did not overwhelm common ones);

*Smilow v. Southwestern Bell Mobile Systems, Inc*., 323 F.3d 32, 39-40 (1st Cir. 2003) (stating that courts are reluctant to deny class status based on the fact that certain affirmative defenses may be available to individual members.).

Here, the status of each loan can be determined by comparing two objective numbers:  the amount of the loan and the student's cost of attendance.  Moreover, to the extent that there is any uncertainty as to whether a particular loan exceeds the cost of attendance, that uncertainty was created by Defendants' own conduct.  Defendants accepted the loans into trust and agreed to service them without any independent inquiry into whether they were qualified education loans. They also declined to exercise any of their rights at the time of the bankruptcy filing to determine whether the loans met the conditions of the statute or to contest the dischargeability of the loans. For Defendants to argue that they could not possibly uncover this information now because it does not suit their purposes is "at best, a treacherous defense." *Harte v. Ocwen Fin. Corp*., 2018 WL 1830811, at *32.  They cannot avoid class-wide liability based upon uncertainties created by their own conduct.  In *Cazares v. AVA Restaurant Corp*., No. 15-CV-0477, 2017 WL 1229727, at *7 (E.D.N.Y. March 31, 2017), the court found that the class of employees was easily identifiable from defendants' own records but also noted that:

> [t]o the extent that plaintiffs may not know the exact function of each Class Member during different days of the Class Period, that is largely attributable to defendants' failure to preserve their payroll records after the commencement of this litigation. Thus, the court will not permit defendants to benefit from their conduct by finding that plaintiffs' are unable to carry their burden of showing ascertainability.

Similarly, in *Harte v. Ocwen Financial Corp*., 2018 WL 1830811, at *32, the court noted that the fact:

> [t]hat Ocwen may have created a system that it can readily maneuver when *it* needs to find a borrower against whom to file foreclosure—but not when the government, a court, an auditor, or a regulator seeks accounting of how many and which Borrowers it has sent correspondence to regarding foreclosure filings—is, at best, a treacherous defense.  To the degree that Ocwen belabors the arduous steps it will

17

have to undertake to identify members of each class by deciphering code entries, viewing attached images, reviewing comment logs, and the likes, Ocwen's system is a Frankenstein of its own creation.

The fact that Defendants are in this position because of their own conduct is critical.  In *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), the Supreme Court allowed certification of a class of employees working at a meatpacking plant who were denied overtime for the time they spent putting on and taking off protective gear.  Because the defendant had failed to record the time as it was required to by law, the Court allowed an expert to present a representative sample that estimated the time it took employees to dress themselves in the protective gear.  Citing its earlier decision in *Anderson v. Mt. Clemens Pottery, Co.*, 328 U.S. 680 (1946) the Court said this:

> The court in *Mt. Clemens* held that when employers violate their statutory duty to keep proper records, and employees thereby have no way to establish the time spent doing uncompensated work, the "remedial nature of [the FLSA] and the great public policy which it embodies…militate against making" the burden of proving uncompensated work "an impossible hurdle for the employee."

136 S. Ct. at 1047; *see also Butto v. Collecto Inc.*, 290 F.R.D. 372, 383 (E.D.N.Y. 2013) ("Should a debt collection company as large and as sophisticated as [Collecto] be able to avoid class action liability by mere fact of inadequate record-keeping, the Congressional purpose behind the statute would indeed be thwarted.") (quoting *Macarz v. Transword Systems, Inc.*, 193 F.R.D. 46, 57 (D. Conn. 2000));  *Ass'n Against Discrimination in  Emp't, Inc. v. City of Bridgeport*, 647 F.2d 256, 289 (2d Cir. 1981) ("[t]o the extent that it is uncertain whether a candidate would have met the City's nondiscriminatory requirements, any certainty should be resolved against the defendant, the party responsible for the lack of certainty") (quoting *Cohen v. Westhaven Bd. of Police Comm'r*, 638 F.2d 496, 502 (2d Cir. 1980)) ("when the defendant has attempted to prove the existence of a nondiscriminatory reason for the failure to hire but it remains uncertain whether the plaintiffs would have been hired in the absence of the discriminatory practice, and the uncertainty flows from that practice, the issue should be resolved against the defendant, the party responsible for the

lack of certainty."); *McNamee v. Nationstar Mortgage, LLC*, No. 2:14-CV-1948, 2018 WL 1557244, at *4 (S.D. Ohio March 30, 2018) ("The Court need not deny class certification due to the need to review individual files.  Otherwise, defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their business or the manner in which their business records were maintained.") (internal citations and quotation marks omitted).

In *Kivett v. Flagstar Bank*, *FSB*, 333 F.R.D. 500 (N.D. Cal. 2019), the court certified a class of individuals who had been denied interest on their escrow accounts despite the fact that the bank argued that variances among the borrowers required examination of individual loan accounts and that it had affirmative defenses that applied to some borrowers but not others.  The court rejected these arguments and held that, despite such individual inquiries, common questions clearly predominated over the individualized issues.  The court concluded by noting the following which is equally applicable here:

> In sum, this is a classic and textbook issue of the class action device.  The law required interest to be paid but the savings association did not do so to its borrowers, all allegedly cheated by the savings association.  These borrowers now join together to vindicate their right to interest under the law.  The miscellaneous differences thrown out by the savings association are just that—miscellaneous—and cannot obfuscate the main point that the savings association allegedly *cheated* thousands of borrowers out of the interest due to them and pocketed the money for itself.  It is hard to imagine a case more worthy of class treatment.

333 F.R.D. at 507.

In *Kopaleishvili v. Uzbek Logistics, Inc.*, No. 1:14-cv-702, 2019 WL 6609212 (S.D. Ohio Dec. 5, 2019), the plaintiff sought to certify a class of drivers who were paid by the mile based upon MapQuest rather than the actual miles traveled.  Defendants argued that the class could not be certified because of the difficulty in reconstructing the actual miles driven for each driver and that defendants had affirmative defenses that applied to some class members.  The court held that

this presented an evidentiary issue, not a class certification issue and that the necessary factual determinations could be overcome in a variety of ways even though they may entail individual inquiry for each driver. 2019 WL 6609212 at *11-12. Moreover, the court noted that "poor record keeping on the part of a defendant generally does not excuse him from potential liability [and] [t]o allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies." 2019 WL 6609212, at *4 (citing *Rikos v. Proctor & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015)) (internal quotations omitted).

*Rikos* relied on an earlier Sixth Circuit case, *Young v. Nationwide Mutual Ins. Co.*, 693 F.3d 532, 540 (6th Cir. 2012), which held that "[T]he need to manually review files is not dispositive [of the class certification issue]. If it were, defendants against whom claims of wrongful conduct had been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records are maintained," quoting from lower court opinion. In *Young*, the court affirmed the certification of a class of policyholders, all of whom were charged local government taxes on their premiums. The fact that the taxes differed, depending on where the policyholders lived, was not a basis to deny certification. Defendants argued that certain geocoding software proposed by plaintiffs to identify local tax jurisdictions would be inaccurate. The court held that that was defendants' problem: "it is difficult to understand why Defendants should be able to avoid a class suit even if Plaintiffs did not offer a means to escape the burden of identifying class members." *Young*, 693 F.3d at 541.

Finally, in *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, at *5 (N.D. Ill. Feb. 11, 2020), the court certified a class of individuals who did not receive overtime pay. The employees had different job titles and descriptions. The court noted that the common question, *i.e.*, whether an administrative exemption applied to all members of the class,

was an issue common to the entire class that predominated over the issue of the individual determinations of each person's job title and how much each class member might be owed. "While damages may differ across class members, not every issue must be amenable to common resolutions; individual inquiries may be required after the class phase. It has long been recognized that the need for individual damages determinations at a later stage of a litigation does not itself justify the denial of certification." *Id.* (internal citations and quotations omitted).

In addition, any asserted inability now to make a determination as to whether a particular loan is within the cost of attendance does not make the status of that loan uncertain. Rather, it makes Defendants liable because the burden of establishing non-dischargeability is always on the creditor. *See* Plaintiff's Memorandum of Law in Support of Her Motion for Partial Summary Judgment. In choosing to collect on debts after discharge without determining dischargeability, Defendants assumed the risk that they would be acting in contempt of the discharge order.

Accordingly, all the elements of Rule 23(a) are met.

**B.    The Proposed Class Satisfied Rule 23(b)(1)(A).**

Plaintiff seeks to certify a class under Rule 23(b)(1)(A) because individual cases could result in inconsistent adjudications with respect to individual members of the class and would create incompatible standards of conduct for how Defendants should treat similarly-situated class members. The issues before the Court are common legal questions that are the same for the entire class. They should be answered the same for everyone in the class. It makes no sense to ask hundreds of judges in 94 separate districts to answer the very same questions. Separate adjudications could result in some loans being declared discharged and other loans, under virtually identical facts, and under the same Bankruptcy Code provisions, being declared nondischargeable. Some courts may hold that the exact same loans are discharged and others may not, or that debtors

are entitled to restitution and others may not. Defendants would have no clear guidance as to how to treat their remaining portfolio.

Courts routinely certify classes where a defendant is obligated to treat similarly-situated individuals in the same manner. *See Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) (certifying class under Rule 23(b)(1)(A) where individual participants in a stock ownership plan challenged investments made by the trustee: "absent class certification, there is a legitimate risk that individual plaintiffs could obtain inconsistent dispositions resulting in incompatible standards of conduct for defendants, 'precisely the problems Rule 23(b)(1) was intended to avoid.'" (quoting *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 78 (S.D.N.Y. 2006) (internal quotations and citations omitted)); *see also United Steel, Paper and Forestry, Int'l Union v. Kelsey-Hayes Co.*, 290 F.R.D. 77, 82 (E.D. Mich. 2013) (holding that union members and former employees could bring a class action challenging the employer's obligation under a collective bargaining agreement to provide lifetime health benefits to plaintiffs: "defendants could be subject to incompatible standards of conduct—paying the full cost of benefits for some plaintiffs but not for others.") (internal citations omitted); *Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) (certifying class of prisoners challenging medical treatment by the Department of Corrections, noting that the class members are scattered throughout New York and "individual cases would inevitably be brought in a variety of state and federal courts, where there is a definite possibility of inconsistent results.").

In each of these cases, the class members all shared the exact same legal status vis-à-vis the defendant, and it would be incongruous to allow the possibility of separate courts coming to different conclusions with regard to people in identical factual situations. The same is true here.

While Plaintiff also seeks certification under Rules 23(b)(2) and (b)(3), courts have certified classes under 23(b)(1)(A) even where certification is appropriate under another provision of Rule 23. *See United Steel*, 290 F.R.D. at 82 (certifying class under both 23(b)(1)(A) and (b)(2)).

### C.    The Proposed Class Satisfies Rule 23(b)(2).

Plaintiff seeks to certify a class for injunctive and declaratory relief pursuant to Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as whole."  Fed. R. Civ. P. 23(b)(2). Certification of an injunctive or declaratory judgment class is appropriate where a single injunction or declaratory judgment provides relief to each member of the class. *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Here, it is undisputed that Defendants have engaged in exactly the same conduct with regard to every class member, *i.e.*, continuing to collect, or attempting to collect, on loans that were discharged in bankruptcy, even though such loans do not come within the terms of § 523(a)(8)(B).  The class's loans should be declared discharged and Defendants should be permanently enjoined from collecting on such loans.

### D.    The Proposed Class Satisfies Rule 23(b)(3).

Plaintiffs also seek to certify a damages class under Rule 23(b)(3).  Class certification is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any question affecting only individual members, and . . . a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3); *see also Roach*, 778 F.3d at 405.  For the reasons set forth below, the proposed class satisfies these requirements.

### 1.    *Common Issues Predominate*

Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Catholic Healthcare W. v. U.S. Foodservice Inc.* (*In re U.S. Foodservice Inc. Pricing Litig.*), 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)) (internal quotation marks omitted).  Commonality exists despite differing individual circumstances of class members where "injuries derive from a unitary course of conduct by a single system." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017) (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014)); *Hasemann v. Gerber Prod. Co.*, Nos. 15-CV-2995, 16-CV-1153, 17-CV-93, 2019 WL 2250687, at *4 (E.D.N.Y. M.J. Feb. 20, 2019), *adopted as modified*, 331 F.R.D. 239 (E.D.N.Y. 2019). "Common issues may predominate when liability can be determined on a class-wide basis, even where there are some issues as to individualized damages." *In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001).  "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of [a defense] will not automatically foreclose class certification under Rule 23(b)(3)." *Id.* at 138.  The "'predominance' requirement 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Roseman v. Bloomberg L.P.*, No. 14-CV-2657, 2017 WL 4217150, at *5 (S.D.N.Y. Sept. 21, 2017) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  This "requirement is satisfied if: (1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these common issues are more

substantial than the issues subject only to individualized proof." *In re Petrobras*, 862 F.3d at 270 (alterations adopted) (citation and quotation marks omitted).

"An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (alteration adopted) (quoting *2 William B. Rubenstein, Newberg on Class Actions § 4:50*, at 196-97 (5th ed. 2012)).

The predominance analysis "requires more than simply counting the number of common and individualized issues; the [c]ourt must consider the relative complexity of those issues." *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 1:14-cv-6502, 2019 WL 652841, at *5 (S.D.N.Y. Feb. 15, 2019) (citing *In re Petrobras*, 862 F.3d at 271).   The Court asks "whether issues susceptible to generalized proof outweigh individual issues." *Johnson v. Nextel Comms., Inc*., 780 F.3d 128, 138 (2d Cir. 2015).

The assessment is "more qualitative than quantitative, and must account for the nature and significance of the material common and individual issues in the case." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, 2018 WL 1229761, at *5 (S.D.N.Y. Feb. 28, 2018). Predominance is met where the individualized issues do not overwhelm the other common issues in the case.  *In re Air Cargo Shipping Services Antitrust Litig*., No. 06-MD-1175, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report rec. adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

The focus of this case is on common legal and factual questions regarding the unlawfulness of Defendants' uniform practice of collecting on discharged debts, *i.e.*, their private loans that

exceed the cost of attendance or that were made to students who have not attended Title IV schools. Thus, Defendants' persistent course of conduct raises questions that are common to the class and that predominate over any questions affecting only individual members, making certification under Rule 23(b)(3) appropriate. *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."). "[T]he mere fact that a defense may arise and affect different class members differently does not compel a finding that individual issues predominate over common ones." *Fonseca*, 2015 WL 5813382 at *6 (quoting *Flores*, 284 F.R.D. at 130); *see also D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) ("Rule 23(b)(3) is normally satisfied where there is an essential common factual link, such as standardized documents and practices, even though the nature and amount of damages may differ among class members.").

Moreover, Defendants are likely to assert a common defense; namely, that they were entitled to rely on their standard boilerplate in their loan applications to the effect that the loans were qualified education loans. This Circuit has found class certification justified in a suit by servicemen and their relatives against the manufacturers of dioxin (Agent Orange), even given the individualized nature of the plaintiffs' causation and damages claims, due in part to the centrality of the defense proffered by the defendants. *In re Agent Orange Prod. Liab. Litig.*, MDL No. 381, 818 F.2d 145, 166–167 (2d Cir. 1987) ("This defense is common to all of the plaintiffs' cases, and thus satisfies the commonality requirement of Rule 23(a)(2)."); *see also Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. 2003).

Similarly, Defendants NCT and PHEAA have asserted the common defense that all their loans are non-dischargeable pursuant to § 523(a)(8)(A)(i) because the loans were allegedly

guaranteed by TERI.  This defense is common to all class members whose loans are held by NCT and many of whose loans are serviced by PHEAA.  This is yet another reason why class treatment is superior to individualized treatment.  Certainly this issue should be decided the same way with regard to all members of the class.

Defendants' assertion that the cost of attendance is an individualized inquiry will not defeat predominance.  As noted above, should Defendants choose to introduce individual evidence that particular loans do not exceed the cost of attendance, the Court would resolve this issue by evaluating objective criteria: the actual cost of attendance at a particular institution and all the financial aid the student received can be determined by objective facts residing at the relevant schools.  *Smilow*, 323 F.3d at 40 (stating that "common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria—thus rendering unnecessary an evidentiary hearing on each claim."); *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 120 (E.D.N.Y. 2015) (holding the fact that there were individualized considerations with relating to each student loan did not defeat class certification in an FDCPA case.); *Butto*, 290 F.R.D. at 382-83 (finding that individualized inquiries into the nature of each class member's debt in an FDCPA case does not prevent class certification); *Cazares v. AVA Rest. Corp.*, No. 15-CV-0477, 2017 WL 1229727, at *8 (E.D.N.Y. Mar. 31, 2017) (finding that the fact that each class member's damages may vary is not relevant to the predominance inquiry, because damages calculations merely entail the application of simple mathematical computations that are consistent with the theories of liability.); *Schear v. Food Scope America, Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (finding that determining each class member's damages was a "straight forward, mechanical process" and stating that "it is a rare case where computation of each individuals' damages is so complex, fact-specific, and difficult that the burden on the court

is intolerable.") (quoting *In re U.S. Food Serv. Inc. Pricing Litig.*, No. 3:07-md-1894, 2011 WL

6013551, at *16 (D. Conn. Nov. 29, 2011), *aff'd*, 729 F.3d at 108 (2d Cir. 2013)).

In similar cases pending before Bankruptcy Judge Drain in the Southern District of New

York, restitution of payments made on discharged debts was easily ascertained from Defendants'

records.  *See* H*aynes v. Chase Bank USA, N.A.* (*In re Haynes*), Adv. Proc. 13-08370 (RDD),

*Echevarria v. Bank of America, et al*., (*In re Echevarria*), Adv. Proc. 14-08216 (RDD), and

*Anderson v. Capital One* (*In re Anderson*), Adv. Proc. 15-8342 (RDD).  In these cases, the

defendants, as part of class wide-settlements, relied on their own records to determine which class

members paid on discharged debts and the amount of such payments.  In addition, class members

were allowed to submit evidence of payments made on discharged debts that may not have been

evidenced in the defendants' records.  The process did not require any formal adjudication of any

kind and did not present predominance issues.

This Court suggested, in an earlier oral argument in *Homaidan*, that the factual

determination of whether each individual class member's loan is within the cost of attendance

would not preclude class certification:

> MR. FARRELL: Another key issue, Your Honor, would be this whole cost of
> attendance.  The whole premise of the Plaintiff's case here is that these loans exceed
> the cost of attendance; and, therefore, don't fit within the statutory scheme.  And
> whether or not a particular loan at a particular school for a particular borrower
> exceeded the cost of attendance is a highly individualized question.
>
> THE COURT:  Aren't there lots of class actions that are resolved through the
> process, whether it's a settlement or a decision, where in a second step, the
> individual unnamed class members need to show their entitlement to relief and how
> much the relief should be from a common fund?  It's not an unusual procedure, I
> don't think.

Carpinello Decl. at ¶ 36, Ex. II ("April 9, 2018 *Homaidan* Tr.")  at 19-20.

More recently, in the oral argument on class certification in *Homaidan*, the Court made the

following observations that are equally relevant here:

THE COURT:  I don't—those are lots of consequences, but I don't—it seems to me that the predominant—and I don't mean to be—I'm not invoking a term of art here.  I'm trying to use an adjective.  That a big question here is whether these loans are or are not within the applicable subdivision 523(a)(8).

And that seems to me to be, at least potentially, a significant disagreement between the parties, a significant common question of law.  Certification, as I understand the law, does not mean that every member of the class must be a clone of every other member of the class.  It simply means that there needs to be a sufficient common—there needs to be a common question of law or fact that are usefully addressed through a collective tool through a certified class action.

. . . .

THE COURT:  . . . . And precisely that seems to me to be one of the central questions here.  What it means for Jane or Joe or Hilal or Reeham or anyone else who's an alleged or turns out to be, in fact, a member of this class if this class is certified different.  But until the Defendants are prepared to say, well, that legal issue is not disputed, it seems to me there is at least quite potentially a significant common question of law that unites the individual—and, yes, unique, not clone--members of the alleged class as defined by the factual parameters, not the legal conclusions in the alleged complaint.  That's what I'm struggling with.

. . . .

THE COURT:  And every time you move to the individual issues, it seems to me that you're leapfrogging a couple of big predicate issues that are common and could well be better addressed once than 38,000 or even 30,000 times in the, you know, 94 bankruptcy courts with 300—and—some—odd judges around the country.

Carpinello Decl. at ¶ 37, Ex. JJ ("May 7, 2020 *Homaidan* Tr.") at 62-64.

Whether Defendants should be assessed damages in addition to restitution need not be determined at this time.  Certification of a 23(b)(3) class need not await an actual determination of damages.  *Roach*, 778 F.3d at 407.  Moreover, "proponents of class certification [need not] rely upon a class wide damages model to demonstrate predominance."  *Id.*  And, as the Second Circuit has held, the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.  *See, e.g., Sykes v. Mel S. Harris and Assoc., LLC*, 780 F.3d 70, 81-82 (2d Cir. 2015).  In any event, Plaintiff and the class members here will not be seeking any

individualized consequential damages. Individuals who feel that they may have incurred such damages would be free to opt out of the class to seek such relief on an individual basis.

The Court may also award punitive damages for violation of the discharge injunction. *In re Haemmerle*, 529 B.R. 17, 30 (Bankr. E.D.N.Y. 2015); *In re Szenes*, 515 B.R. 1, 7 (Bankr. E.D.N.Y. 2014). Punitive sanctions in the bankruptcy context are appropriate where a defendant has acted with "either malevolent intent or a clear disregard and disrespect of the bankruptcy laws." *Szenes*, 515 B.R. at 7-8 (quoting *In re Nicholas*, 457 B.R. 202, 225 (Bankr. E.D.N.Y. 2011)). Here, there is no question that Defendants acted willfully to collect on discharged debts. Even if Defendants could argue that they had some reasonable basis to believe that these loans were non-dischargeable under §523(a)(8)(A)(ii) (and the evidence from both their internal and public documents shows that they never relied on that provision), they had no good faith basis to rely on that provision after this Court's decision on January 31, 2019, expressly holding that §523(a)(8)(A)(ii) did not apply to these loans. Nonetheless, Defendants continue to collect on these discharged debts.

There is no formulaic approach to punitive sanctions; rather, courts have broad discretion to choose an award that is appropriate and reasonable. *See In re Haemmerle*, 529 B.R. at 30-31. Recent Second Circuit precedent suggests that as long as a class-wide punitive award is in some way tethered to the class's compensatory damages, such an award would not run afoul of *State Farm Mutual Auto. Insurance Co. v. Campbell*, 538 U.S. 408 (2003). *See Johnson v. Nextel Commc'n*, 780 F.3d 128, 149 (2d Cir. 2015). Where, as here, the class's injury arises from Defendants' uniform conduct as to all debtors, the ratio of punitive to compensatory damages can easily be determined on a class-wide basis. *See id.*; *see also* Catherine M. Sharkey, *The Future of Classwide Punitive Damages*, 46 U. Mich. J.L. Reform 1127, 1139-40 (2013).

Thus, common issues predominate with respect to damages and this aspect of Rule 23(b)(3) is satisfied.

2. *A Class Action Is Superior*

The Court should certify the Class under Rule 23(b)(3) if it finds that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Among the factors to consider at this stage are the class members' interest in individually controlling their case; the extent of any prior litigation covering the same controversy; the desirability of concentrating the litigation of the claims in a particular forum; and difficulty of managing the class action.  *Id.*

Not only are common issues likely to be dispositive of this case, but the high costs of litigation relative to each class member's damages and the economic status of class members, who have all gone through personal bankruptcy, make it unlikely that many class members will pursue individual legal actions.

Moreover, there are no manageability issues because the common dischargeability question can easily be determined on behalf of the entire class.  The class members can be identified through objective criteria and the amount of restitution that should be paid can be determined from Defendants' own records.  As the Second Circuit has emphasized, a class action will be denied on the grounds of unmanageability "only when it is found that efficient management is *nearly impossible*."  *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d at 140 (emphasis in original).  This case does not present any material difficulties with respect to its management as a class action.

This action is both procedurally and substantively reminiscent of the Sears litigation in the 1990s.  In those cases, Sears was accused of coercing debtors into reaffirming discharged debts

without following the procedures in section 524(c).   Upon discovery of these practices, the

Bankruptcy Court for the District of Massachusetts excoriated Sears for its illegal conduct.

> The consequential damages in this case do not begin to reflect the magnitude of
> Sears's offense against Mr. Latanowich and against the bankruptcy law. Sears here
> made a conscious decision to disregard the clear requirements of the law because it
> was more expeditious and profitable to do so. Its conduct toward the Debtor was
> predatory: Sears preyed on the Debtor when he was financially most vulnerable and
> powerless; and in doing so it deprived him of the fresh start that Congress intended
> that he should have.

*In re Latanowich*, 207 B.R. 326, 337 (Bankr. D. Mass. 1997).   Ultimately, a nationwide class

action was certified for discharge violations of § 524 that, *inter alia*, required Sears to comb its

records to determine individual membership in the class.   *Conley v. Sears, Roebuck & Co*., 222

B.R. 181, 185 (D. Mass. 1998) ("Sears shall complete its ongoing national review to identify

debtors from January 1, 1992 to April 1, 1997, in accordance with the stipulated order in the *United

States* Action.").   Although the court had sent a "strong message" that punitive damages were

warranted for Sears' unconscionable conduct, Sears avoided trial by agreeing to full restitution,

full injunctive relief, and $25 million in extra damages to be paid pro-rata to the class.

Notwithstanding its full *mea culpa*, the Justice Department pursued criminal mail fraud charges.

*Conley*, 222 B.R. at 183 ("On April 17, 1997, the government filed *United States of America v.

Sears, Roebuck and Co.,* 97–10839–JLT (D. Mass.) . . . asserting not only violations of the

Bankruptcy Code but also mail fraud violations pursuant to 18 U.S.C. § 1341 and 1345.").

      With all due respect to the debtors in *Sears*, Defendants' conduct in this action is worse.

The debtors in Sears were told their debts were discharged, and were told they did not need to

reaffirm the debts.   They were not sued in state court or harassed on a daily basis to repay

discharged debts.   Nor had Sears cynically warned its investors that it was playing fast-and-loose

with the Bankruptcy Laws.   Furthermore, upon discovery by the courts, Sears accepted full

responsibility, apologized to the court and the debtors, and acknowledged that its actions were legally unjustified. *Conley*, 222 B.R. at 185 ("Sears threw in the towel within two weeks" and submitted a "written *mea culpa* memorandum."). In this case, Defendants have been willfully misleading class members for 14 years, and have now spent more than two years aggressively litigating the allegations in order to continue their illegal conduct.

### E.    Constitutionally Sound Notice Can Be Provided to Class Members.

To protect the rights of absent class members, the Court must provide them with the best notice practicable when it certifies a class under Rule 23(b)(3). Fed. R. Civ. P. 23(c)(2). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, Defendants' own records contain the last known contact information for all class members. As a result, notice may be sent directly via First Class mail or e-mail to the class. Notice can also be published on a website maintained and updated by Plaintiff's counsel. Class members will be able to use the site to stay apprised of important dates and to access the notice form and other key documents. Together, these approaches will provide the best practicable notice to the class members. After certification is granted, Plaintiff will submit a detailed notice plan and form to the Court for approval.

### F.    This Court Has Jurisdiction to Adjudicate a National Class and Should Exercise That Jurisdiction.

Defendants will likely argue that this Court does not have subject matter jurisdiction to adjudicate a nationwide class. That contention is without merit. Subject matter jurisdiction here is provided by 28 U.S.C. § 1334(b) which gives the district court jurisdiction over all civil proceedings arising under Title 11. The enforcement of the discharge injunction here is a core

bankruptcy matter that arises under 11 U.S.C §§ 727, 524 and 105.  Once federal subject matter jurisdiction is proper in the district court as to a core bankruptcy matter arising under the Bankruptcy Code, subject matter jurisdiction is proper in the bankruptcy court to which the matter is referred under 28 U.S.C. § 157.

Moreover, subject matter jurisdiction is not lost or limited merely because the action is brought as a class action.  Class action proceedings are expressly allowed in the Federal Rules of Bankruptcy Procedure.  *See* Fed. R. Bankr. P. 7023 ("Rule 23 F. R. Civ. P. applies in adversary proceedings"); *see also In re Rojas*, No. 09-07003, 2009 WL 2496807, at *1 (Bankr. S.D. Tex. Aug. 12, 2009) ("Nothing in the jurisdictional statute limits the District Court's subject matter jurisdiction (and, by extension, the matters that can be referred to the bankruptcy judges) to claims filed by debtors with bankruptcy cases pending in this District.").[2]  Exercising class action jurisdiction is especially appropriate here where individual actions could lead to the very inconsistent results that Rule 23(b)(1)(A) is designed to prevent.

Such subject matter jurisdiction is confirmed by the fact that both the bankruptcy court and the district court in three of seven nationwide class actions brought by Plaintiff's counsel have already approved of nationwide settlements.  *See Haynes v. Chase*, 7:18-cv-03307-VB (S.D.N.Y. Sept. 27, 2018) at Dkt. 9-1; Adv. Pro. No. 13-08370-RDD (Bankr. S.D.N.Y. Sept. 27, 2018) at Dkt. 133; and *Echevarria v. Bank of America*, 7:17-cv-08026-VB (S.D.N.Y. March 14, 2018) at Dkt. 23; Adv. Pro. No. 14-08216-RDD (Bankr. S.D.N.Y. Mar. 15, 2018) at Dkt. 121; and *Anderson*

---

[2] Numerous courts have approved national class actions in bankruptcy court.  *See, e.g., In re Jones*, 16-03235 (Dkt. No. 44) (Bankr. S.D. Tex. May 19, 2017), attached as Ex. LL to Carpinello Decl.; *In re Cano*, 410 B.R. 506, 543-55 (Bankr. S.D. Tex. 2009); *In re Krause*, 414 B.R. 243, 252-56 (Bankr. S.D. Ohio 2009); *In re Patrick*, 344 B.R. 56, 60 (Bankr. M.D. Pa. 2005); *In re Sims*, 278 B.R. 457, 485-89 (Bankr. E.D. Tenn. 2002); *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001); *In re Harris*, 280 B.R. 876 (Bankr. S.D. Ala. 2001); *In re Noletto*, 244 B.R. 845 (S.D. Ala. 2000); *In re Sheffield*, 281 B.R. 24 (Bankr. S.D. Ala. 2000).

*v. Capital One*, 19-cv-3981-NSR (S.D.N.Y. Sept. 11, 2019) at Dkt. 20; Adv. Pro. No. 15-8342-RDD (Bankr. S.D.N.Y. April 25, 2019) at Dkt. 95.  These settlements could not be approved if the bankruptcy court did not have nationwide jurisdiction.

While bankruptcy court jurisdiction is often founded on "related to" jurisdiction over the *in rem* debtor's estate, and only one court should administer that *in rem* estate, that is not the only basis for jurisdiction.  As Judge Drain explained in *In re Haynes*, actions under 11 U.S.C. §§ 524 and 727 are concerned with prohibiting the collection of *in personam* debts and have nothing to do with the debtor's estate or *in rem* jurisdiction.  *In re Haynes*, Adv. Pro. No. 13-08370, 2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014), at *6-7.

Similarly, bankruptcy jurisdiction founded on 28 U.S.C. § 1334(e), which states that the court where a case is commenced has exclusive jurisdiction over the "debtor's property" and "estate", is not implicated here.  "Again, however, the present class action does not involve a debtor's interests in property or property of the estate. . . . It is an action to enforce the discharge, that is, to protect a statutory right prohibiting collection of *in personam* claims against the members of the debtor class that arose pre-bankruptcy."  *In re Haynes*, 2014 WL 3608891, at *7.

The question of whether this Court should entertain a nationwide class and thereby enforce the discharge orders of other courts is not a question of jurisdiction.  *See Gray v. Petoseed Co., Inc.*, 985 F. Supp. 625, 632-34 (D. S.C. 1996) (holding that question of whether contempt of a court order can be adjudicated by another court is a question of comity, not subject matter jurisdiction.).  Once there is jurisdiction, federal courts have a "virtually unflagging obligation" to exercise it. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976).  A refusal to exercise subject matter jurisdiction has been described as violation of the separation of powers, usurpation of legislative authority, and characterized by the Supreme Court as "treason to the

Constitution." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution."). In short, "the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358–59 (1989) (quoting *Chicot Cty. v. Sherwood*, 148 U.S. 529, 534 (1893)).

The Supreme Court has explicitly prohibited limiting the exercise of subject matter jurisdiction on prudential grounds. *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) ("Just as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates.") (internal citation omitted).

As the law stands today, lower courts can avoid issues of subject matter jurisdiction in only two instances: where a case can be disposed of on non-merits, threshold grounds, such as personal jurisdiction or *forum non conveniens*, or under one of the Supreme Court's "carefully defined" abstention doctrines. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996) (discussing the various abstention doctrines available where parallel state court proceedings create problems of federalism). Otherwise a federal court must exercise its subject matter jurisdiction. *New Orleans Pub. Serv., Inc.*, 491 U.S. at 358–59 ("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . .[t]he right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.").

Judge Drain carefully analyzed and rejected the argument that only the judge who issued the discharge order can enforce it. Judge Drain concluded that statutory injunctions are

fundamentally different from other specific, judge-crafted injunctions or orders and bankruptcy courts do not lack subject matter jurisdiction to enforce them.  *In re Haynes*, 2014 WL 3608891 at *6-9; *see also Vick v. NCO Fin. Sys., Inc*., No. 2:09-CV-114, 2010 WL 1330637, at *3 (E.D. Tex. M.J., March, 15, 2010) (allowing nationwide class to enforce § 524 injunction), *report and recommendation affirmed*, 2010 WL 1328830 (E.D. Tex. March 30, 2010); *In re Rojas*, 2009 WL 2496807 at *10 (allowing nationwide class in contempt proceedings).  Judge Drain also denied a motion to dismiss class allegations in *Echevarria v. Bank of America Corp*., Adv. Pro. No. 14-08216 (RDD) (April 14, 2015) (Dkt. 83).

While it is true that judges have inherent power to control their cases and proceedings and to sanction behavior that interferes with their lawful orders, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), this case is not seeking contempt for violation of a judge-crafted order.  This case seeks contempt for violation of statutory injunction, an important distinction that was explained by Judge Drain in *Haynes*:

> There is, however, a fundamental difference between the normal injunction issued by a court after considering the factors required to be applied in issuing an injunction order and the injunction created by Congress in § 524(a) to support the discharge under § 727 of the Bankruptcy Code.

*In re Haynes*, 2014 WL 3608891, at *8.

The discharge orders in this case are not unique to any particular judge and the power to enforce them comes from § 105.  Moreover, the discharge orders at issue are made on identical standardized forms that are used for all debtors nationwide.  *Id*. at *8 ("It is not a handcrafted order").  And because the discharge orders are statutorily created, debtors seeking to enforce them need not establish the factors ordinarily required for an injunction under Rule 65.  *Id.* ("By statute, in 524(a)(2), it operates as an injunction.  For the discharge injunction to be granted, the debtor does not have to prove the factors required for an injunction under Federal Rule of Civil Procedure

65.").[3]  All that is required is to show that the debt was subject to discharge and not specifically declared to be non-dischargeable.  *Id.*

Indeed, because the legal issues to be decided in the case—whether loans that exceed the cost of attendance or are not intended for use at non-Title IV schools are nondischargeable, and whether Defendants' boilerplates make them nondischargeable—are common to the class, it makes no sense to resolve them on any basis other than through a national class action.  *See* Rule 23(b)(1)(A).  And, as this Court has already held, it is not necessary for each judge who entered a discharge order to enter a finding of contempt, since this Court can issue a declaratory judgment (*In re Golden*, 596 B.R. 239, 259-60 (Bankr. E.D.N.Y. 2019) and the Court can order restitution as an ancillary remedy to that declaration.  *Starter Corp. v. Converse*, 170 F.3d 286, 298 (2d Cir. 1999); *U.S. v. Specialty Ins. Co. v. Liberty Partners, L.P.*, 2011 WL 5428971, at *5 (S.D.N.Y. Nov. 8, 2011).  Accordingly, this Court can issue nationwide declaratory relief without involving the law of contempt at all.

In *In re Brizinova*, 565 B.R. 488 (E.D.N.Y. 2017), this Court specifically recognized the important distinction between individually-crafted court orders and "purely statutory" orders.  In

---

[3] This reasoning is consistent with scholarly analysis on the issue.  For example, then-professor Elizabeth Warren and Jay L. Westbrook also take the position that contempt of a statutory injunction must be treated differently than contempt of a local court order when considering the jurisdiction to enforce such orders.  They criticize cases that limit redress for statutory injunctions to the "issuing court" because, in effect, there is no issuing court.  Elizabeth Warren & Jay L. Westbrook, Class Actions for Post-Petition Wrongs: National Relief Against National Creditors, Am. Bankr. Inst. J. March 2003, at 14, 46-47.  *See also* Kara Bruce, The Debtor Class, 88 Tul. L. Rev. 21, 25,71-74 (2013) (surveying the law and concluding that "courts generally should not hesitate, on jurisdictional grounds, to certify nationwide classes of consumer debtors asserting violations of bankruptcy law" and that rather than limiting § 524 contempt cases to the issuing court, a "court may instead (1) interpret § 524 to provide an implied right of action to enforce its violation, (2) interpret § 105 to permit nationwide class relief for discharge-injunction violations, or (3) find that the limitations on judicial contempt power do not apply with equal force for statutory injunctions.").

*Brizinova,* a claim for sanctions arose from statements made in a motion to dismiss that arguably violated an order issued in a different court. This Court noted the general rule that judge-specific orders be enforced by the issuing judge (and ultimately ruled that the judge-specific order in *Brizinova* follow that rule), but contrasted other situations in which more general enforcement would be acceptable. Specifically, this Court stated:

> That is not to say that it is never appropriate for one judge to enforce an order that was entered by another judge in a different case. For example, in the bankruptcy context, courts may distinguish between whether they are asked to enforce a "purely statutory order" such as the automatic stay contained in Bankruptcy Code § 362 or the discharge injunction set forth in Bankruptcy Code § 524, on the one hand, and an injunction individually crafted by the bankruptcy judge, on the other.

*Id.* at 503 (citations omitted).

The First Circuit followed the same reasoning in *Bessette v. Avco Financial Services, Inc.,* 230 F.3d 439 (1st Cir. 2000), when it ruled claims for violations of discharge injunctions under § 524 could be brought as a nationwide class. *Bessette* found that § 105 empowered the district court to exercise its equitable powers to facilitate the implementation of other Bankruptcy Code provisions and noted the important distinction between statutory and inherent powers. *Id.* at 445 ("§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have" including the power to sanction for contempt.) *Bessette* rejected the argument that only the issuing judge could enforce a discharge injunction. According to the Court:

> Appellant seeks enforcement of the statutory injunction set forth in §524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance. Thus, few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.

*Id.* at 446; *see also id.* at 445 (noting the significance of "dealing, as here, with violation of a purely statutory order."); *Walls* v. *Wells Fargo Bank, NA.*, 262 B.R. 519, 528 (Bankr. E.D. Cal. 2001) ("The [automatic stay and discharge] injunctions . . . are Code created, statutory injunctions . . . .

Their extent does not depend on individual judges for injunctive relief fashioned by individual bankruptcy judges.").

As Judge Drain noted, the position that discharge injunctions can be enforced by other judges within a particular district, but not judges from a different district, is logically inconsistent. If the rationale for restricting jurisdiction to a district-wide class is that only the judge who issued the order can adjudicate contempt of it, then it makes no sense to allow judges in the same district to enforce discharge injunctions issued by other judges within the district. In other words, why would a district-wide class be permissible to adjudicate § 524 claims, but a nationwide class be impermissible? Both seemingly run afoul of the rationale that only the judge who issued the order can adjudicate contempt of it. *See In re Haynes*, 2014 WL 3608891 at *9 (rejecting the district-wide approach and finding nationwide jurisdiction for enforcement of discharge injunctions).[4] Moreover, as this Court recently suggested at a hearing in another proceeding for contempt under § 524, requiring 94 separate class actions in 94 districts is hardly an appropriate way to expedite litigation. *See* Carpinello Decl. at ¶ 39, Ex. LL ("Feb. 28, 2019 Ajasa Tr.") at 52.

As one commentator noted, class actions are a critical component of ensuring that creditors do not abuse the bankruptcy laws on a widespread basis:

> For large institutional lenders and servicers – classic repeat players in the consumer bankruptcy sphere – it can be both convenient and lucrative to bend consumer bankruptcy's statutory provisions and procedural rules. These violations often pass through bankruptcy without redress, either because the parties of the bankruptcy case do not notice that they have occurred, or because the cost to address the problem overshadows the harm it caused.

---

[4] Some of the cases that take this logically inconsistent position include: *In re Cline*, 282 B.R. 686 (W.D. Wash. 2002); *In re Beck*, 283 B.R. 163 (Bankr. E.D. Pa. 2002).

Bruce, *Closing Consumer Bankruptcy's Enforcement Gap*, 69 Baylor L. Rev. 480, 482 (2017). Professor Bruce notes that class actions provide debtors with the ability to challenge system-wide abusers like Defendants here.  *Id*. at 511-14.

> As this Court has previously noted in this proceeding:
>
> So what about this problem now?  Remember that at the pleading stage you take the allegations as true.  You think you're going to disprove them but I have to take them as true.  And you're saying that we can't do better than piecemeal litigation?  That even with a Federal class action tool that the best we can do, assuming that these allegations are true and that lenders were talking out of both sides of their mouths, assuming the allegations are true - - I'll say it once every 15 seconds for the avoidance of doubt.  Maybe.
>
> And I guess this isn't about whether it feels like the equitable result for the Lenders or the Debtors but I - - I really wonder if that's how the Federal Court process works.  I'm not sure that it is.

Carpinello Decl. at ¶ 36, Ex. II ("April 9, 2018 Tr.") at 121.

Defendants will undoubtedly rely on the recent Fifth Circuit's decision in *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206 (5th Cir. 2019) where the Fifth Circuit had before it the question of whether one of two plaintiffs who received a discharge in Virginia could bring a contempt proceeding in the Southern District of Texas, where he now lives, to enforce the discharge order and the injunction of § 524.  The court said he could not, and then also stated that its ruling would make a class action seeking to enforce discharges entered in other bankruptcy courts "highly dubious."  941 F.3d at 217.

Respectfully, this Court should not follow *Crocker* for several reasons:

<u>First</u>, the court did not undertake any analysis of the purpose or role of § 7023 of the Bankruptcy Code which expressly allows class actions and, in fact, barely addressed class actions at all in its opinion.

<u>Second</u>, the court relied upon a change in the bankruptcy law in 1978 which omitted language in a section of the Bankruptcy Act that was the predecessor to Bankruptcy Rule 4004(f). That previous language specifically allowed an order of discharge to be registered in any other district and provided that such order "may be enforced in like manner as it would be enforced in the original district."  The court said that the omission of this language in the new Code showed a Congressional intent not to allow bankruptcy courts to enforce discharge orders from other districts.  The court cited no legislative history at all that indicated that such was the Congressional intent.

<u>Third</u>, the effect of the *Crocker* decision is to invalidate Bankruptcy Rule 4004(f) which specifically allow a party to register a discharge order in another district and seek enforcement of that order as one of the plaintiffs actually did in *Crocker*.  No other court has gone so far as to suggest that Rule 4004(f) is inconsistent with the Bankruptcy Code.

<u>Fourth</u>, the *Crocker* Court relied heavily on the Second Circuit's language in *In re Anderson* to the effect that the Second Circuit "has limited enforcement of discharge injunctions through contempt proceedings to the originating court."  2019 WL 5304619 at *7.  Respectfully, nothing could be further from the truth.  *Anderson* dealt with the question of whether a contempt proceeding brought for violation of discharge orders and § 524 needed to be arbitrated.  In the course of that opinion, the Second Circuit expressly held that the fact that *Anderson* sought to bring a class action did not change the Court's conclusion that arbitration was inappropriate and the Court went on to note that the fresh start to which Anderson and the class members were entitled to was threatened by the Defendants' alleged conduct.

<u>Fifth</u>, the *Crocker* Court relied on the Eleventh Circuit holding in *Alderwoods Group, Inc. v. Garcia*, 682 F.3d 958 (11th Cir. 2012) which also did not involve a class of debtors seeking to

enforce § 524. In that case, owners of a cemetery that was faced with a state court class action in Florida for failure to keep proper records of the location of the deceased relatives of the plaintiffs, brought a proceeding in bankruptcy court in Florida to obtain a declaration that the Florida state court claims had been discharged in its Delaware bankruptcy. The Eleventh Circuit held that the Florida bankruptcy court did not have jurisdiction and that the matter should be brought in Delaware. The court had no occasion to examine the Congressional intent behind the specific grant of class actions in bankruptcy court, and relied upon § 1334(c) to state that only one court could administer the "property of the estate." The court failed to distinguish between § 1334(c), dealing with property of the estate, and § 1334(b), which gives jurisdiction of "all civil proceedings arising under Title 11, or arising and/or related to cases under Title 11." *See Haynes*, 2014 WL 3608891 at *7. The *Alderwoods* Court also stated that "it would wreak havoc on the federal courts to leave enforcement of the injunction order of a bankruptcy court in one district to the interpretive whims of a bankruptcy court in another district." 682 F.3d at 970. As a general proposition, that is certainly true, but that concern does not speak at all to the issue of whether a class action should be allowed under Bankruptcy Rule 7023 where all the members of the class allege the exact same violation of the statutory injunction of § 524 and violation of the standard discharge order.

Sixth, the *Crocker* decision is clearly in tension with an earlier Fifth Circuit decision, *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748 (5th Cir. 2010). In that case, the lower court granted only a district-wide class because that is all the plaintiff sought. On appeal, the court held that the proposed class did not meet the conditions of Rule 23 but, nonetheless, strongly affirmed the power of the bankruptcy court to entertain a class action involving debtors who filed bankruptcy petitions before other judges. 609 F.3d at 754: "If bankruptcy court

43

jurisdiction is not permitted over a class action of debtors, Rule 7023 is virtually read out of the rules." Nonetheless, the *Crocker* court gave *Wilborn* short shrift because it held that the only issue that was before the court was a district-wide class rather than a national class, ignoring the underlying logic of the *Wilborn* decision. 2019 WL 5304619, at *3.

Finally, the result in *Crocker*, as a policy matter, is utterly unsupportable. In effect, the Fifth Circuit is saying that individuals who emerge from bankruptcy with limited means and who move to a new jurisdiction, such as one of the plaintiffs in *Crocker*, must return to the jurisdiction of discharge, and retain counsel in order to bring a proceeding to enjoin a discharge violation—even if the violation occurs in the plaintiff's new place of residence. Thus, in *Crocker*, the court held that Navient could not rely on § 523(a)(8)(A)(ii) to justify the collection on thousands of discharged debts, yet, held that all these thousands of individuals must bring their own individual actions to force Navient to cease its illegal conduct. And if any of the debtors have moved, they must make a pilgrimage to the original bankruptcy court, even if it is thousands of miles away. That result in unconscionable.

This Court should decline to follow *Crocker* and should instead follow the logic of *Bessette* and *In re Haynes* and certify a national class in this proceeding.

Finally, the recent decision of the Second Circuit in *Belton v. GE Capital Retail Bank* ("*In re Belton*"), 961 F.3d 612 (2d Cir. June 16, 2020) should not change the result. In that case, the Court had before it only the question of whether a proceeding to hold defendants in contempt for violation of the discharge injunction of § 524 and of the discharge order needed to be sent to arbitration. The Court reaffirmed its holding in *Anderson v. Credit One Bank, N.A.* ("*In re Anderson*"), 884 F.3d 382 (2d Cir.), *cert. denied*, 139 S. Ct. 144 (2018) that arbitration was not appropriate. Although the Court in dicta raised questions about the class action status of the case,

the Court twice stated that the class action issue was not before the Court and, indeed, the issued was not briefed by the parties.  The Court, therefore, had no occasion to analyze the strength of the reasoning in cases such as *Crocker*; the inappropriateness of having hundreds of judges decide the exact same legal issues; the basis of the bankruptcy court's subject matter jurisdiction over national class; and the Supreme Court's admonition that federal courts with such jurisdiction are required to exercise it.  If the court had briefing on the issues, it would likely not have made the unsupported comment questioning whether a bankruptcy court would have "jurisdiction to hold a creditor in contempt of another court's order." *Id.* at 617.  As explained above, there is no question this Court has such "jurisdiction."  Moreover, the Court did not consider the fact that contempt is not the only remedy this Court can provide:  it also has jurisdiction to award declaratory relief as to whether these identical loans have, in fact, been discharged. *In re Golden*, 596 B.R. at 259-60. Finally, the Court's statement in dicta that permitting a bankruptcy court to adjudicate compliance with another court's order "appears to be in severe contention with *Anderson's* reasoning," Slip. Op. at 12, is itself inconsistent with *Anderson*, where the Court found absolutely no such tension. *In re Anderson*, 884 F.3d at 391.  Thus, this dicta provides no indication as to how the Second Circuit would actually rule on the class action issue when the issue is properly presented.

### G.    The Court Should Appoint Boies Schiller Flexner, LLP; The Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC; Fishman Haygood, LLP; and Law Offices of Josh Kons as Class Counsel.

Under Rule 23, "a court that certifies a class must also appoint class counsel … [who] must fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(B).  In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Boies Schiller Flexner, LLP; The Smith Law Group; Jones, Swanson, Huddell & Garrison, LLC; Fishman Haygood, LLP; and Law Offices of Josh Kons have diligently investigated Plaintiff's claims and those of the Class Members and have devoted, and will continue to devote, ample time and resources to this litigation. As discussed above, all proposed class counsel have considerable experience with class action litigation, especially class actions brought in bankruptcy court and involving violation of § 524. *See* Carpinello Decl. at ¶¶ 42-47; Swanson Decl.; Smith Decl; and Burge Decl. Accordingly, the Court should appoint George Carpinello and Adam Shaw of Boies Schiller Flexner LLP; Austin Smith of The Smith Law Group; Lynn E. Swanson and Peter N. Freiberg of Jones, Swanson, Huddell & Garrison, LLC; Jason W. Burge of Fishman Haygood, LLP; and Law Offices of Josh Kons to serve as class counsel for the proposed Class pursuant to Rule 23(g).

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court certify this proceeding as a class action under Fed. R. Bank. P. 7023(b)(1)(A), (b)(2); and (b)(3) and appoint the undersigned as class counsel.

Dated: July 13, 2020　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　**BOIES SCHILLER FLEXNER LLP**

　　　　　　　　By:　　*/s/ George F. Carpinello*
　　　　　　　　　　　　George F. Carpinello
　　　　　　　　　　　　Adam R. Shaw
　　　　　　　　　　　　30 South Pearl Street
　　　　　　　　　　　　Albany, NY  12207

　　　　　　　　　　　　**SMITH LAW GROUP**
　　　　　　　　　　　　Austin C. Smith, Esq.
　　　　　　　　　　　　3 Mitchell Place, Suite 5
　　　　　　　　　　　　New York, NY  10017

**JONES, SWANSON, HUDDELL &
GARRISON, L.L.C.**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua B. Kons (Ct. Bar No. 29159)
50 Albany Turnpike, Suite 4024
Canton, Connecticut 06019


*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, George F. Carpinello, hereby certify that on the 13th day of July, 2020, I served the

forgoing document on all counsel of record via ECF and electronic mail.

*/s/ George F. Carpinello*
George F. Carpinello