**mwe.com**

H. Peter Haveles, Jr.
Attorney at Law
phaveles@mwe.com
+1 212 547 5650

August 4, 2020

**VIA ECF**

Honorable Elizabeth C. Stong
United States Bankruptcy Court
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East
Brooklyn, New York 11201

    Re:    Golden v. JP Morgan Chase Bank, et al.,
               Adversary Proceeding No.: 1-17-ap-01005-ess

Dear Judge Stong:

       We are attorneys for defendant Pennsylvania Higher Education Assistance Agency ("PHEAA"). We write on behalf of all defendants to address the objections of plaintiff Tashanna Golden to certain discovery that defendants seek with respect to plaintiff's motions for class certification, summary judgment and a preliminary injunction.

       1.    Defendants seek the written communications between Ms. Golden and her co-borrower as well as the deposition of her co-borrower. This discovery is relevant to Ms. Golden's credibility, her adequacy as a representative of the putative class, the typicality of her claims and the issue of whether individual facts predominate.

       As an initial matter, Ms. Golden submitted a declaration that states:

> After my bankruptcy, I continued to receive bills from Defendants for the payment on the subject loans described above indicating that the loans were still due and owing and the Defendants demanded and accepted payments on the subject loans. It was my understanding based upon these bills that the loans that are the subject of this action were not discharged in bankruptcy.

Golden Decl. ¶ 10 (citation omitted). The actions of Ms. Golden and her co-borrower, however, are not consistent with Ms. Golden's sworn statements. After the discharge order was entered, as to the TERI-guaranteed loan serviced by PHEAA, the co-borrower (who received bills directly), and not Ms. Golden, immediately began to repay the loan. Ms. Golden began to repay the loan several months later, only after she unsuccessfully attempted (on her own initiative) to persuade PHEAA to cancel the co-borrower's obligation to repay the loan. It would appear that Ms. Golden began to pay only because of an understanding that she reached with her co-borrower. Thus, the communications between Ms. Golden and her co-borrower are relevant to Ms. Golden's



**340 Madison Avenue   New York NY 10173-1922   Tel +1 212 547 5400   Fax +1 212 547 5444**

*US practice conducted through McDermott Will & Emery LLP.*

Honorable Elizabeth C. Stong
August 4, 2020
Page 2

credibility, the reasons why the loan payments began months after the entry of the discharge order and the typicality of Ms. Golden's claims.

Ms. Golden asserts two claims in this action, including a claim seeking to hold defendants in contempt of the discharge order and disgorgement. Discovery regarding Ms. Golden's communications and the relationship that Ms. Golden had with her co-borrower regarding the loan are also relevant to the contempt claim and the relief subject.

The reason why Ms. Golden began to repay for a loan after her co–borrower repaid the loans is it relevant for several issues. If Ms. Golden voluntarily assumed her responsibilities to repay the loan, she is not entitled to disgorgement. Further, the Court needs to examine Ms. Golden's state of mind to determine whether her conduct was voluntary when deciding whether PHEAA can be held in contempt of the discharge order.[1] Finally, these communications are also relevant to disgorgement because the amounts paid by the co-borrower (who has independent repayment obligations not altered by Ms. Golden's bankruptcy or this action) cannot be recovered. Indeed, who paid what could be an issue that predominates for all co-signed loans, and defendants are entitled to explore that conduct through discovery.

It is necessary to examine the reasons why the co-borrower and Ms. Golden made loan payments. The inquiry does not end with an examination of PHEAA's conduct, but requires an examination of the communications between, and the state of mind of, these two individuals. Therefore, the written communications as well as the testimony of the co-borrower, are relevant.

2.  Defendants seek depositions of four putative class members, as such discovery bears on whether individual issues predominate. The governing guidelines indicate that "[c]ourts consider whether discovery of absent class members (1) is needed for the purposes of trial or the issues common to the class, (2) is narrowly tailored, (3) will impose undue burden on the absent class members, and (4) is not available from representative plaintiffs." *In re Warner Chilcott Ltd. Securities Litigation*, No. 06 Civ. 11515 (WHP), 2008 WL 344715, at *2 (S.D.N.Y. Feb. 4, 2008). *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (JPO), 2015 WL 7736533, at *1 (S.D.N.Y. Nov. 30, 2015), *objections overruled*, 2016 WL 236248 (S.D.N.Y. Jan. 20, 2016); 4 Manual for Complex Litigation § 21.41 at 302-03 (4th ed. 2004). That last factor is the most important one.

Defendants are requesting four depositions that would focus on the limited scope of those individual's loans, individual's interaction with the schools and lenders at the time of their loans and those individual's experiences and dealings with defendants. Such discovery, relating to those individuals' own experiences and knowledge, is not burdensome. *See Kress v. Price Waterhouse*

---

[1] PHEAA disputes that Ms. Golden's TERI-guaranteed loan was discharged and that PHEAA's mailing of bills to the co-borrower with a duplicate to Ms. Golden was a violation of Section 524(f) of the Bankruptcy Code. Even if plaintiff can persuade the Court to refuse to abide by controlling authority from the Second Circuit as well as precedent from numerous other courts that TERI-guaranteed loans fall within the not for profit provision in Section 523(a)(8)(A)(1) of the Bankruptcy Code, PHEAA still did not violate Section 524(f). *See Taggart v. Lorenzen*, 587 U.S. __, 139 S. Ct. 1795, 1802, 1804 (2019).



*Coopers*, No. CIV S-08-0965 (LKK), 2012 WL 4465556, at *4 (E.D. Cal. Sept. 25, 2012) (25 depositions of absent class members out of 1,709 is not "unduly burdensome").

Defendants will oppose class certification on the ground, among others, that individual issues of fact predominate, as to both the discharge and contempt claims. As such, defendants must be given the opportunity to acquire the evidence to sustain this contention. Defendants seek to depose four putative class members in order to discover their loans and their dealings with defendants. It is beyond peradventure that Ms. Golden does not know the facts concerning the loans to which the putative class members agreed, the amounts of their loans, the purpose of the loans and the communications that they had with lenders and servicers concerning the loans.

The individual facts that defendants seek to establish are known only by the putative class members. Thus, "absent Class members are in the best position to testify as to discovery concerning their individual circumstances." *Indergit*, 2015 WL 7736533, at *2; *see also, Krueger v. New York Telephone Co.*, 163 F.R.D. 446, 451 (S.D.N.Y. 1995); *Bruhl v. Price Waterhouse Coopers International*, No. 03-23044-Civ., 2010 WL 5090207, at *2 (S.D. Fla. Dec. 8, 2010); *In re National Western Life Insurance Deferred Annuities Litigation*, No. 05-CV-1018 (JLS), 2010 WL 4809330, at *3 (S.D. Cal. Nov. 19, 2010) (allowing 16 depositions and stating "[w]hether Defendants' strategy will ultimately be successful is uncertain. However, the Court is unwilling to deny Defendants the opportunity to meaningfully defend themselves."), *sustained in relevant part*, No. 05-CV-1018 (LS), 2011 WL 3438186, at *1 (S.D. Cal. Jan. 19, 2011); *In re Warner Chilcott*, 2008 WL 344715, at *2.

As to both requests, the broad policies underlying Rule 26 apply to a motion for class certification. The issue is not whether defendants are right, but whether they should have the opportunity to discover the facts that they may be able to utilize when opposing class certification. This same broad standard was applied in connection with motions that the Court heard with respect to discovery requests by Ms. Golden, *e.g.*, the ruling that PHEAA had to produce its servicing agreements/guidelines in their entirety. This principle applies with equal force, and defendants are entitled to the same opportunities for discovery. Otherwise, they will be unduly prejudiced.

Finally, defendants should be given a reasonable amount of time to conduct class discovery and, more importantly, to prepare their papers in opposition to the motion. Ms. Golden took almost three years to submit her class certification motion. There is no justification or urgency to deny defendants a reasonable amount of time to do the work necessary to oppose all three motions.

Thank you for Your Honor's consideration.

Respectfully,

/s/ H. Peter Haveles, Jr.

H. Peter Haveles, Jr.

cc: All Counsel of Record

