

November 24, 2020

**<u>VIA ECF</u>**
Hon. Elizabeth S. Stong
U.S. Bankruptcy Court, EDNY
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

   Re: *Tashanna B. Golden, et al. v. JP Morgan Chase, et al.*
      Adv. Pro. No. 1-17-01005 (ESS)

Dear Judge Stong:

  We write this letter to bring to the Court's attention what we believe to be the failure of Firstmark's counsel to abide by the clear direction of the Court.

  Your Honor will recall that a subpoena was served by counsel for Firstmark on the University of Pennsylvania Law School seeking certain documents. The subpoena became the subject of discussion before the Court on September 3, 2020, and again on September 11, 2020. At the hearing held on September 3, there was a discussion as to whether counsel for Firstmark would be producing any emails between defense counsel and the University of Pennsylvania. This Court made it clear that any emails of any substantive nature should be produced. *See* Exhibit A hereto (September 3, 2020 Hearing Tr.) at 19:16-27:2. The Court made it clear that, as soon as counsel for Firstmark obtained documents from University of Pennsylvania, they should turn them over, "as promptly as possible." *Id.* at 22:6-24.

  Also during that hearing, counsel for Firstmark advised the Court that he would be obtaining a custodian declaration: "we propose that the University provide us with a kind of a standard records custodian declaration in lieu of a deposition, because we'd anticipated getting a full set of documents that we'd requested because we haven't gotten everything that we thought we would get. Our analysis may be different. We may need live testimony, but that kind of remains outstanding." *Id*. at 21:22-22:4.

  At the hearing held on September 11, counsel for Firstmark confirmed to the Court that he had received everything that he had expected to receive from the University of Pennsylvania and that he was awaiting a "declaration back from either someone in their financial aid office or a record custodian." Exhibit B hereto (September 11, 2020 Hearing Tr.) at 69:18-70:5. Counsel for the Plaintiff asked specifically if the declaration was going to be one of substance or simply declaring that the documents were authentic. The following colloquy occurred:



> The Court: Is it a substantive declaration or is it a document custodial type of declaration? I think that's the question you can answer.
>
> Firstmark's Counsel: Your Honor I think the latter. I haven't sent them anything yet or they haven't—they're asking me to re-submit it. I sent them a draft along with the original subpoena but I guess they want a new one. I think—I don't think it will contain anything of deep substance. I don't—
>
> The Court: Substance is often in the eye of the beholder, so you'll take the appropriate steps if it turns out to be necessary, I'm sure but that should be some general framework as to what to expect I think. Does that make sense?
>
> Firstmark's Counsel: It makes sense to me, Your Honor.

Exhibit B at 70:11-71:25.

On September 14 counsel for Firstmark produced to Plaintiff's counsel nine emails between Firstmark's counsel and University of Pennsylvania's counsel. The last email is dated September 4.

But there were numerous other emails, both before and after September 4, between Firstmark and U Penn counsel that were not produced. Plaintiff only received these documents in response to her subpoena to the University of Pennsylvania.

- For example, on August 18, attorney Jerome Smalls, Administrator of Real Estate Services at UPenn, sent Firstmark's counsel documents along with a verification of the authenticity of the records. Firstmark's counsel responded as follows:

  Jerome, thanks for sharing this document with me. Would you have five minutes for a phone call to discuss the status of Penn's response to the subpoena? Please let me know, thanks.

  *See* Exhibit C hereto.

- That email was followed up by yet another request for a conference call on August 25. *See* Exhibit D hereto.

- On August 26, Firstmark's counsel sent yet another email to Mr. Smalls, recounting that their conversation had gotten disconnected but asking about the "availability of someone from the Bursar's office/financial aid office/law school for a general discussion. Again, I hope to make things as simple and efficient for the University as possible and I'm hopeful we can agree to a straightforward declaration in lieu of deposition testimony." *See* Exhibit E hereto.



- Again, on August 31, Firstmark's counsel wrote to Mr. Smalls asking again for an "informal phone call." *See* Exhibit F hereto. Significantly, Firstmark produced to Plaintiff Mr. Smalls's response to this email but redacted out Firstmark's counsel's email on August 31 which requested the informal phone call. *See* Exhibit G hereto.

- On September 9, Firstmark's counsel wrote to Mr. Smalls stating, in part, "also I'm still waiting to hear whether Mr. Henry (or someone else at the University) would be available for a quick informal call to confirm my understanding of the documents produced we've received already." *See* Exhibit H hereto.

- Apparently, there were further discussions because on September 22, Mr. Smalls wrote to Firstmark's counsel "I never received an email from you with the sentence you want to add to our verification." *See* Exhibit I hereto.

- On September 22, Firstmark's counsel wrote to Mr. Smalls and said, "Jerome, I tried calling you earlier to touch base on this if at all possible I'd really like to get no more than two or three minutes of Mr. Henry's time to confirm the language is acceptable. My colleagues are concerned about having unfinished drafts, edits, and revisions floating around, so I'd like to make sure that when I do send you a declaration for execution by Mr. Henry, it contains the final language as approved by Mr. Henry." *See* Exhibit J hereto.

- Then, on September 23, Firstmark's counsel sent a draft declaration to Mr. Henry which contained language that was clearly beyond the scope of any verification of the authenticity of the records. Indeed, the declaration drafted by Firstmark's counsel not only identified certain budget documents but stated "Penn Law uses the term budget as a synonym for the cost of attendance." In the cover email Firstmark's counsel made the following statement: "Paragraphs five and six of the declaration summarize the information Mr. Henry conveyed during our brief phone call during the week of September 7. I will look forward to receiving an executed declaration." *See* Exhibit K hereto.

- On October 5, Mr. Smalls sent an email to Firstmark's counsel attaching the declaration, signed on October 2, that Firstmark's counsel had drafted but with an additional sentence stating that "[t]he cost of attendance was not used by Penn Law to calculate loan eligibility for graduating students who received bar loans." In the cover email, Mr. Smalls told Firstmark's counsel, "Here's the declaration Anthony was willing to sign. He wanted to make it clear the [sic] Penn's student cost of attendance did was not [sic] used to calculate eligibility for the Bar Law Loan." *See* Exhibit L hereto.



Hon. Elizabeth S. Stong
November 24, 2020
Page 4

- On October 7, Firstmark's counsel produced to Plaintiff the executed Henry declaration, but no further emails. *See* Exhibit M hereto.

None of the emails set forth in this recitation were produced by Firstmark's counsel to Plaintiff. This is significant because it was clear that Firstmark's counsel was engaging in substantive conversations with counsel for UPenn and with Mr. Henry to induce them to make statements concerning cost of attendance, a central issue in this case. Obviously, these emails are relevant to any weight to be given to Mr. Henry's signed declaration, which Defendants undoubtedly intend to present to the Court[1].

This letter is not the proper place to address the cost of attendance issue.[2] Rather, we wish only to point out that we were denied access to significant emails that are clearly relevant to the weight to be given to the Henry declaration. Moreover, it is clear that the declaration that was obtained is much more than a "standard records custodian declaration in lieu of a deposition," as Firstmark's counsel represented to the Court on September 3, 2020 (Exhibit A at 21:22-22:5). Firstmark's counsel was being less than forthright with the Court because he reinforced the impression at the September 11 hearing that the declaration would be merely custodial. Yet, it is now clear that Firstmark's counsel had discussions with Mr. Henry with the goal of making substantive insertions in his declaration the same week as (and likely immediately prior to) the September 11 hearing. *See* Exhibit K hereto (referencing phone call with Mr. Henry "during the week of September 7").

We acknowledge that our request for copies of emails literally refers to emails *from* UPenn. But some of the documents withheld were from UPenn, including an email specifically discussing the fact that the Citibank loan certification was not based on cost of attendance. *See* Exhibit L. Moreover, we believe that also withholding Firstmark's counsel's emails created a distorted picture of the sequence of events. We note that Firstmark's counsel produced *some* of his emails but chose to withhold others. We believe that Firstmark's counsel should have been more forthcoming given that both the declaration and the emails were the specific topic of discussion at two separate hearings of the Court.

---

[1] In their memorandum in opposition to Plaintiff's motion for a preliminary injunction, Defendants assert (falsely) that Plaintiff Golden's private loans held by Defendants do not exceed the cost of attendance, obviously intending to rely on the Henry declaration. Dkt. 306 at 15, n.6.

[2] We only note here that Mr. Henry was not the official at UPenn who either determined cost of attendance or reported it to IPEDS. That role was performed by the central financial aid office. Mr. Henry stated in his deposition that *he* used the term cost of attendance to refer to the entire student budget, but that he was unaware of what components of cost of attendance are specified in the Higher Education Act or the Internal Revenue Code. *See* § 513(a)(8)(B), I.R.C. § 221(d) and 20 U.S.C. § 1087ll. *See* excerpt of Henry's deposition taken on November 13, 2020, at 24:7-26:23; 28:24-41:12; 42:10-45:1; 48:11-15; 173:5-178:13, attached hereto as Exhibit N.



Hon. Elizabeth S. Stong
November 24, 2020
Page 5

      We do not know why counsel for Firstmark failed to produce all of these emails since they clearly are of a substantive nature. However, the failure could not have been inadvertent because so many of the withheld emails pre-date Firstmark's September 14 production and all the withheld emails pre-date Firstmark's production on October 7 of the Henry declaration. Moreover, any suggestion that these emails were not sufficiently "substantive" to be produced is belied by the fact that they are far more substantive than the emails that Firstmark actually produced.

                                                               Respectfully submitted,

                                                               */s/ George F. Carpinello*
                                                               George F. Carpinello

GFC/slb

cc via ECF:    Counsel of Record