STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tashanna B. Golden f/k/a Tashanna B. Pearson,<br><br>        Debtor. | **Chapter 7**<br><br>**Case No. 16-40809 (ESS)** |
| Tashanna B. Golden f/k/a Tashanna B. Pearson, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-4, GS2 2016-A, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services, Firstmark Services,<br><br>        Defendants. | **Adv. Proc. No. 17-1005 (ESS)** |

**TRUST DEFENDANTS' AND FIRSTMARK'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL <u>SUMMARY JUDGMENT</u>**

                 **LOCKE LORD LLP**
                 *Attorneys for Defendants Goal Structured Solutions Trust 2016-A and National Collegiate Student Loan Trust 2006-4*

                 **PERRY, GUTHERY, HAASE & GESSFORD, PC LLO**
                 *Attorneys for Defendant Nelnet Servicing, LLC, d/b/a Firstmark Services*

Table of Contents

Background ........................................................................................................................... 1

Supplemental Argument ...................................................................................................... 2

        I.       Plaintiff's Own Cost Of Attendance Is A Disputed
               Issue Of Material Fact............................................................................... 2

        II.      Cost Of Attendance Is A Student-Specific Number. ............................................. 5

        III.     IPEDS Does Not Mean What Plaintiff Asserts It Means. ..................................... 7

Conclusion ........................................................................................................................... 9

Defendants Goal Structured Solutions Trust 2016-A, incorrectly sued herein as GS2 2016-A and National Collegiate Student Loan Trust 2006-4 (collectively, the "Trust Defendants"), and Nelnet Servicing, LLC, d/b/a Firstmark Services ("Firstmark") submit this supplemental memorandum in opposition to Plaintiff Tashanna B. Golden's motion for partial summary judgment. This supplement is based on information discovered from the deposition of Elaine Varas.

## BACKGROUND

Discovery in this case has continued since all three defendants filed their oppositions to Plaintiff's motion for partial summary judgment. (The Trust Defendants' opposition is filed at Dkt. Nos. 335-338 and Firstmark's Opposition is filed at Dkt. Nos. 329-332). As part of that discovery, the parties took the deposition of Elaine Varas, the Senior University Director of Financial Aid at the University of Pennsylvania. Ms. Varas has more than thirty-six years' experience administering financial aid at four different institutions: the University of Pennsylvania ("Penn"), Drexel University, Rutgers University Biomedical Health Sciences, and the University of Medicine and Dentistry of New Jersey. (Trust Defendants' and Firstmark's Supplemental Rule 7056-1(c) Statement of Additional Facts ("Supp. Add'l F."), ¶ 1.). She is a seasoned financial aid professional and is a member of various national organizations whose mission relates to financial aid, including the National Association of Student Financial Aid Administrators ("NASFAA") and the College Board. (*Id.*)

Ms. Varas testified extensively about cost of attendance in general and at Penn and University of Pennsylvania Law School ("Penn Law"). Her testimony is materially relevant to Plaintiff's motion for partial summary judgment, which seeks rulings dependent on cost of attendance. Specifically, Ms. Varas' testimony further demonstrates that Plaintiff has not carried

1

her burden on her motion for summary judgement. There are disputed issues of material fact regarding both Plaintiff's cost of attendance at Penn Law and the benchmarks from which a student's individual cost of attendance is calculated. Plaintiff provides nothing to resolve these issues. Instead, Ms. Varas' testimony shows that Plaintiff's linchpin assertion—that her loans exceeded Penn Law's cost of attendance during the years she attended—has no basis in fact or law and that her motion for partial summary judgment must be denied.

## SUPPLEMENTAL ARGUMENT

### I.     Plaintiff's Own Cost Of Attendance Is A Disputed Issue Of Material Fact.

The parties do not dispute that Plaintiff's theory of liability rests on students' costs of attendance at educational institutions. The parties do dispute, however, what exactly a students' cost of attendance is and how it is calculated. On the present motion, the defendants dispute the Penn Law costs of attendance that Ms. Golden claims her loans exceed. Her particular cost of attendance is important because Ms. Golden is the only plaintiff in the case. Accordingly, because she cannot demonstrate what her cost of attendance was, she is not entitled to summary judgement. There are material issues of fact surrounding a critical fact.

As set forth in Defendants' main opposition to summary judgment, there are at least three competing costs of attendance for Penn Law School academic year 2006-07. Plaintiff herself has put forth two contradictory numbers. For academic year 2006-07, she alleged in her complaint a cost of attendance of $53,500. (Dkt. No. 32, ¶¶ 29-30). In the sworn declaration she submitted in support of her motion, she claimed that it is $48,464; this is a number taken from IPEDS. (Golden Decl., Dkt. No. 247, ¶ 3). And, Penn Law has published a third amount: its published estimated

student budget for academic year 2006-07 was $56,380.[1] (Trust Defendants' Combined Responses to Plaintiff's Local Rule 7056-1 Statement of Facts and Rule 7056-1(c) Statement of Additional Facts, Statement of Additional Facts ("Add'l F."), ¶ 5; Supp. Add'l F., ¶ 2.).

Of these three numbers, Penn Law's number is the most accurate expression of what Penn Law estimates its cost of attendance to be. (*Id*. at ¶ 2). It comes from Penn Law itself. It is an estimate because, as demonstrated below, a student's cost of attendance can vary significantly based on that student's individual facts and circumstances.

The Plaintiff, however, denies that Penn Law's own number is correct. She challenges the evidence provided by Anthony Henry, Penn Law's Assistant Dean for Financial Aid. (December 9, 2020 Trans., Dkt. No. 346, pp. 10-18; Plaintiff's November 2, 2020 Letter, Dkt. No. 321; Plaintiff's December 8, 2020 Letter, Dkt. No. 341). Mr. Henry submitted a declaration which states that Penn Law's 2006-07 estimated student budget was $56,380 and that this "estimated student budget" is the estimated cost of attendance. (Add'l F., ¶ 1). Mr. Henry then testified at his deposition that the estimated student budget is Penn Law's estimated cost of attendance and that for academic year 2006-07 this amount was $56,380. *Id*. And, Mr. Henry testified that Penn Law forwarded its estimated cost of attendance for 2006-07 of $56,380 to Penn's Student Financial Aid Office, published that amount on the Penn Law website, and that this amount was, he expected, the estimate the Financial Aid Office would use as the starting point to determine eligibility for financial aid at Penn Law. (Trust Defendants' Combined Response to Plaintiff's Local Rule 7056-1 Statement of Facts and Rule 7056-1(c) Statement of Additional Facts, Response to Plaintiff's Statement of Facts ("Res. F."), ¶ 2). In response, Plaintiff simply asserts that the estimated student

---

[1] There are conflicting numbers for academic year 2007-08 as well. For brevity's sake, this supplement focuses on academic year 2006-07. All of the arguments made with respect to 2006-07 apply with equal force to 2007-08. (Trust Defendants' Mem. of Law in Opp., Dkt. No. 336, § II(B)(2), p. 18).

budget is not Penn Law's cost of attendance because it differs from a number she found on IPEDS. (December 9, 2020 Trans., Dkt. No. 346, pp. 10-18).

Ms. Varas' testimony puts Plaintiff's unfounded objections to rest. Ms. Varas completely supports Mr. Henry's testimony. According to her, cost of attendance and budget are synonymous:

> They are used interchangeably. Budget and cost of attendance are the same. You'll see that language on the school's website. You'll see it in the [Higher Education Opportunity Act] regulations. You'll see it in [National Association of Student Financial Aid Administrators'] guidance, and they're interchangeable words, but they basically mean it is the total eligibility for a student to receive funding, …

(Supp. Add'l F., ¶ 3).[2] When asked, she unequivocally agreed with Mr. Henry's declaration and testimony that the estimated student budgets he provided for 2006-07 and 2007-08 were equivalent to the estimated costs of attendance for those years. (*Id*.). And, she testified that Mr. Henry is responsible for setting several of the components of the estimated student budget, *i.e.* estimated cost of attendance, for Penn Law, refuting Plaintiff's attempt to attack his knowledge of the process. (*Id*. at ¶ 4).

Ms. Varas also testified that the budget information provided by Mr. Henry for the 2006-07 and 2007-08 academic years is consistent with what Penn and Penn Law currently include in their estimated student budgets; if anything, there are more categories of expenses included now than in 2006. (*Id*. at ¶ 5). Ms. Varas confirmed that one of the components was and is health insurance. (*Id*.). The way Penn calculates its cost of attendance, including the component costs it uses, has been audited and approved by the Department of Education as recently as 2018. (*Id*. at ¶ 6).

---

[2] *See* Higher Education Opportunity Act, 20 U.S.C. § 1001, *et seq*. *See also, e.g.*, Cost of Attendance: Published in April 2020 for the 2020-21 program year, NASFAA (last visited January 15, 2021), http://www.nasfaa.org/ssg_cost_of_attendance.

4

All of this demonstrates that the estimated cost of attendance during the time that Plaintiff attended Penn Law is what Mr. Henry stated it was, $56,380, not either of the lesser numbers that Plaintiff has posited.

## II.     Cost Of Attendance Is A Student-Specific Number.

The above discussion focuses on estimated costs of attendance and averages. The arguments made in opposition to Plaintiff's motion for partial summary judgment do the same. That is a direct outgrowth of the way Plaintiff has constructed her case. Plaintiff attempts to standardize the cost of attendance analysis in order to downplay the individualized issues that plague her putative class. In reality, though, there is no standardized cost of attendance. While there may be some commonalities across an institution's entire student body, each student's cost of attendance at a particular institution during a particular time is unique to him or her. (Supp. Add'l F., ¶ 7). Determining "financial aid is not easy and not a simple yes or no answer." (*Id.*).

A student's cost of attendance is the amount that a student is determined to be eligible to receive funds for to pay for his or her education. (*Id.*). A student's cost of attendance includes:

> components such as tuition, required fees, room and board, which is housing and dining, and then miscellaneous expenses, which include things like personal allowances and transportation.

(*Id.* at ¶ 8). It can include health insurance. (*Id.*). It can include medical expenses not covered by insurance. (*Id.*). It can include childcare expenses. (*Id.*). A student's cost of attendance can vary based on significant, external financial events that affect a student's family; the Covid crisis is an example of such an event, as was the 2008 financial crisis, which began while Golden attended Penn Law. (*Id.*).

Implicit in each of these components that make up a student's cost of attendance is some level of variability from one student to the next. Students in different colleges at a university, and even students in different degree programs within the same college, might have different tuitions

depending on what they are studying. Students may have different fees depending on class year or program; a design student may have different required fees than a law student. (*Id*. at ¶ 9). Room charges will vary depending on whether a student lives on campus, off campus or at home; the charges can vary even within the same category. (*Id*.). Dining charges will differ; at Penn, there is a variation of up to $9,000 between meal plans. (*Id*.). A student without health insurance will be required to purchase it, whereas a student still on a parent's plan will not; Ms. Golden did purchase health insurance through Penn, as she was required to do. (*Id*. at ¶ 10). Students with medical expenses receive a cost of attendance increase, while students without those expenses do not. (*Id*.). The same goes for a student with childcare needs. (*Id*.).

Ms. Varas testified about the uniqueness of costs of attendance for individual students. She noted that each student is assigned his or her own specific cost of attendance, and when determining the cost of attendance for a particular student the financial aid office needed to make sure that it assessed the correct amounts to that student when determining a student's eligibility for financial aid. (*Id*. at ¶ 11). That involves ensuring that actual charges for the various components of an individual's cost of attendance are properly accounted for. (*Id*.). If there were a one-size-fits-all cost of attendance, like Plaintiff claims, none of this would be necessary. Again, determining "financial aid is not easy and not a simple yes or no answer." (*Id*.).

In practical terms, a student with childcare needs who lives off campus and is required to purchase health insurance through their university will have a different cost of attendance than a student without a child who lives at home and is on their parents' health insurance. Both of those students will have different costs of attendance from a student that lives on campus and purchased a full meal plan. These individual differences are not subject to ready standardization. An average

or estimated cost of attendance will not accurately reflect the costs of attendance these students actually have.

Here, Plaintiff has not provided any evidence which shows what her actual, unique cost of attendance at Penn Law was. Without such evidence, for the reasons set forth in defendants' main opposition to partial summary judgment, Plaintiff's motion cannot leave the starting gate.

### III. IPEDS Does Not Mean What Plaintiff Asserts It Means.

What Plaintiff does do is assert that the number found in the IPEDS Data Center is the only relevant cost of attendance number a school may use to determine financial aid. This idea is implicit in Plaintiff's reliance on this number in her Declaration (Golden Decl., Dkt. No. 247, Ex. A); it was made explicit when, in opposing (without standing to do so) defendant's subpoena to Penn (which resulted in Ms. Varas' deposition), Plaintiff's counsel stated to the Court that the Penn Law's cost of attendance is "what's on IPEDS for the cost of attendance for someone attending the University of Pennsylvania Law School." (December 9, 2020 Trans., Dkt. No. 346, pp. 15:22-16:3).

In fact, Plaintiff is demonstrably wrong about IPEDS. The data reported to IPEDS is not specific, it is at best an average. (*Id*. at ¶ 12). As such, the information reported by IPEDS is not detailed enough so as to be able to ascertain an individual student's cost of attendance. (*Id*.). This makes sense because accumulating that data is not one of IPEDS' purposes. Instead, IPEDS is an annual report that is:

> provided by each educational institution to provide general average information on funding received by students, need available to students, type of students that are receiving funding, cost of education on an average, trends, number of students who've received federal versus institutional funding. So it really provides a general snapshot so that organizations can then create trends based on similar types of institutions.

(*Id*. at ¶ 13).

The information IPEDS requests is generalized. The forms requesting that information demonstrate as much, using the words "'typical' and 'average' … throughout the document." (*Id*. at ¶ 14). Thus, while IPEDS might ask for tuition charges by school and program, it does not ask by class. (*Id*.). This means that a university's office of institutional research

> will have to take an average of required fees to put it on the listing of by school and by program. IPEDS does not ask by school, by program, by class; housing, living information. So in that regard, institutional research again has to provide averages based on housing for both undergraduate and graduate students.

(*Id*.). The university ends up providing to IPEDS "a general number that is not unique to a profession or a student." (*Id*. at ¶ 15).

Ultimately, Ms. Varas–a financial aid administrator with "[p]robably 30 some-odd years" experience using IPEDS (*Id*. at ¶ 1)–unequivocally rejected the way Plaintiff is trying to use IPEDS' data. Ms. Varas testified that the IPEDS numbers are not a resource to ascertain a student's cost of attendance. Specifically:

> Q.    Well, would you ever use cost of attendance numbers for IPEDS in performing a student eligibility analysis for borrowing a private student loan?
>
> A.    No.
>
> Q.    Why not?
>
> …
>
> A.    … It's too much of an average. It's too generic. We need – our analysis is much more specific and closer to the reality.

(*Id*. at ¶ 16). IPEDS does not reflect the reality of an individual's cost of attendance.

Plaintiff's apparent reliance on IPEDS for her cost of attendance is misguided. It does not mean what she says it means. Accordingly, Plaintiff provides nothing which shows her actual cost of attendance and as demonstrated in the Trust Defendants' memorandum in opposition to summary judgment she is not entitled to summary judgment.

8

## CONCLUSION

For the reasons stated above, and in the defendants' memoranda in opposition (Dkt. Nos. 327, 329, 336), Plaintiff's motion for partial summary judgment should be denied.

Dated: New York, New York
       January 15, 2021

>                    LOCKE LORD LLP
>
>                    By: *s/ Gregory T. Casamento*
>                        Gregory T. Casamento
>                        R. James DeRose, III
>                        Brookfield Place
>                        200 Vesey Street, 20th Floor
>                        New York, NY 10281
>                        (212) 415-8600
>                        gcasamento@lockelord.com
>                        rderose@lockelord.com
>
>                        J. Matthew Goodin
>                        111 South Wacker Drive, Suite 4100
>                        Chicago, IL 60606
>                        (312) 443-0700
>                        jmgoodin@lockelord.com
>
>                        *Attorneys for Defendants Goal Structured Solutions Trust 2016-A, incorrectly sued herein as GS2 2016-A, and National Collegiate Student Loan Trust 2006-4*
>
>                    PERRY, GUTHERY, HAASE & GESSFORD, PC LLO
>
>                    By: *s/ Charles Kaplan*
>                        Charles Kaplan
>                        233 South 13th Street, Suite 1400
>                        Lincoln, NE 68508
>                        (402) 6-9200
>                        ckaplan@perrylawfirm.com
>
>                        *Attorneys for Defendant Nelnet Servicing, LLC, d/b/a Firstmark Services*

## **CERTIFICATE OF SERVICE**

       I hereby certify that on the 15th day of January, 2021, I caused a true and correct copy of the foregoing document to be served via e-mail upon all parties entitled to notice, the ECF system being unavailable because it was being upgraded.

                                            */s/ Gregory T. Casamento*
                                            Gregory T. Casamento