# Ballard Spahr LLP

1675 Broadway, 19th Floor
New York, NY 10019-5820
TEL 212.223.0200
FAX 212.223.1942
www.ballardspahr.com

Marjorie J. Peerce
Tel: 646.346.8039
Fax: 212.223.1942
peercem@ballardspahr.com

January 22, 2021

*By Electronic Filing*

Hon. Elizabeth S. Stong
Conrad B. Duberstein Courthouse
271-C Cadman Plaza East - Suite 1595
Brooklyn, NY 11201-1800

Re:   Tashanna B. Golden, et al. v National Collegiate Student Loan Trust 2005-3, et al.
      Adv. Pro. No. 1-17-01005-ESS

Dear Judge Stong:

I write on behalf of non-party, Citibank, N.A., in accordance with the Court's order at the December 17, 2020 hearing and in advance of the February 4, 2021 hearing, to advise the Court regarding open discovery issues between the Plaintiff and Citibank.

Despite Citibank's continued efforts to provide relevant and proportional discovery in the least disruptive manner on a non-party, Citibank and Plaintiff have not reached any manner of agreement. As briefly summarized below, the disputes raise complex and important legal issues. Accordingly, Citibank requests that the parties discuss and set a briefing schedule at the February 4 hearing to resolve this discovery dispute.

Citibank spent considerable time and effort preparing the Responses to Plaintiff's Written Questions ("Responses"), and, contrary to Plaintiff's accusation in her January 21, 2021 letter that Citibank was engaging in "obstruction" [ECF 361], Citibank offered to supplement its Responses where Plaintiff had open questions, as has been Citibank's consistent position. [Ex. A (Citibank's January 19, 2021 letter)]. Citibank made Plaintiff and this Court very aware of Citibank's position and the Court ordered this meet and confer process, so to accuse Citibank of obstruction under these circumstances is frankly, uncalled for, and baffling. [See ECF 282-4 (Citibank's February 28, 2020 letter) at 2 (Citibank will also be amendable to consideration of a reasonable request for follow up clarification of statements in the response); ECF 294 at 2; Ex. B (11/5/20 Tr.) at 20:21-21:6, 29:3-30:7, 36:1-3].

Citibank further offered to continue to discuss whether a deposition is necessary after the determination of the Motion for Class Certification. Plaintiff has flatly refused Citibank's

Hon. Elizabeth S. Stong
January 22, 2021
Page 2

proposals.  Instead, after the exchange of letters [see Exhs. A & C (Plaintiff's January 6, 2020 letter] and three meet and confer calls (on December 18, 2020 and January 8 & 20, 2021), Plaintiff has stubbornly insisted that it should be entitled to take Citibank's deposition, without considering ways to alleviate the heavy burden on Citibank to testify on matters that occurred 10-15 years ago, before Citibank sold its student loan business in 2010, and for which some of the requested information is uniquely in the possession of people who are no longer employed by Citibank.

Of great concern, and contrary to Plaintiff's clear and repeatedly stated position at the December 17 hearing that Citibank's Responses "narrowed" the issues,[1] Plaintiff has taken an abrupt about-face from that position.  Plaintiff is now unwilling to narrow the issues, and, as touched on below, actually seeks to depose Citibank on issues that are broader than those contained in the January 2020 Subpoenas or Plaintiff's Written Questions, including on matters that relate to another case.

Unfortunately, Plaintiff's counsel's reversal is consistent with Citibank's experience in attempting to work with them in this case.  As described in Citibank's September 18, 2020 letter, Plaintiff reversed her position regarding a willingness to narrow the discovery she was seeking, and then waited over a half of a year from a March 4, 2020 meet and confer call, until September 2, 2020, when much to Citibank's surprise, Plaintiff filed a letter with the Court, misleadingly indicating that meet and conferrals had been ongoing when there had been no communications for months.  [See ECF 282, 283, 294, 296, 301].

These issues have only become worse and more concerning.  At the November 5, 2020 hearing, the Court ordered Plaintiff to meet and confer with Citibank prior to the December 17, 2020 hearing regarding whether Plaintiff believed it needed additional discovery from Citibank after receiving Citibank's Responses. [Ex. B (11/5/20 Tr.) at 36:1-3].  Plaintiff did not meet and confer with Citibank about the Responses but, instead, Plaintiff filed a letter with the Court stating "Plaintiff intends to seek a deposition of a representative of Citibank." [ECF 345].  The letter was also written in a manner to suggest that the Defendants agreed

---

[1] Plaintiff was very clear at the December 17, 2020 hearing that a deposition would be narrower than the Written Questions, due to the content of the Responses.  As Mr. Shaw stated:  "We appreciate that we got back responses to written questions.  We think that helps narrow down the issues . . . .  In fact, their written questions help narrow it down and helped alleviate a lot of the burden.  We think it could be a narrow deposition."  [Ex. E (12/17/20 Tr.) at 15; see also 16 ("And to everybody's credit, I think we tried to narrow down the issues")].

Hon. Elizabeth S. Stong
January 22, 2021
Page 3

with Plaintiff's desire to depose Citibank, which Citibank understands from counsel for Defendants, Firstmark and the Trust, was not the case.

Moreover, in Plaintiff's December 16, 2020 letter to the Court, Plaintiff asserted: "contrary to the impression that Citibank sought to create, Citibank now concedes that Firstmark currently services thousands of Citibank loans." [ECF 348 at 1]. Plaintiff repeated this assertion in the January 6 letter. [Ex. C]. A quick review of the record shows that Citibank has consistently acknowledged that Firstmark services loans on its behalf. Citibank specifically stated in its August 23, 2019 letter to the Court and the October 10, 2019 Motion For Protective Order that Firstmark services loans for Citibank for other borrowers. [ECF 169 at 2; 187 at 1-2]. The important distinction set forth in the letter and motion is that Firstmark does not service Plaintiff's loans at issue in this case for Citibank because Citibank sold those loans to GoldenTree.

Making matters more difficult, counsel for Plaintiff has also been unreasonably aggressive in their approach. This was best exemplified regarding the dispute relating to Plaintiff's December 16, 2020 filing of a public letter containing content from Citibank's Responses that were designated as Confidential under the Amended Protective Order. [ECF 348]. While Mr. Carpinello initially agreed to take steps to seal the letter by December 17, [Ex. D], he reversed course from his commitment and refused to seal the letter (claiming it did not contain confidential information), leading the Court to direct us to meet and confer on the issue. Only after a highly contentious phone call with Mr. Carpinello did Plaintiff ultimately agree to move to seal a portion of the letter. Based on Mr. Carpinello's comments (which we can describe to the Court if it wishes) and cavalier attitude about the Protective Order during that call, Citibank counsel came away from the December 18, 2020 meet and confer call with understandably serious concerns regarding Plaintiff's counsel's commitment to complying with the Amended Protective Order. [See also ECF 301 (addressing Plaintiff's false accusations against Citibank counsel)].[2]

Plaintiff violated the Amended Protective Order again, just yesterday. Knowing that Citibank's Responses are designated as Confidential under the Amended Protective Order

---

[2] Plaintiff also taken inconsistent positions regarding what discovery should be allowed at this stage of the case, recently objecting to additional discovery sought by the Defendants from Golden's school because that subpoena was past the Court's September 30, 2019 deadline to serve discovery. [See ECF 341]. While that deposition ultimately occurred, Plaintiff's arguments against discovery of the school apply equally to the further discovery it seeks to take against Citibank, which was served in January 2020 and for which Plaintiff did not seek Court intervention until September 2020 – after Plaintiff filed the Motion for Class Certification.

and on the heels of the back and forth about filing the December 16 letter under seal, Plaintiff unbelievably filed the entirety of the Responses on the public docket yesterday as an exhibit to her letter. [ECF 361-2]. Plaintiff's assertion that this blatant violation of the Protective Order was "inadvertent" [ECF 362] rings hollow in light of Citibank's statements at the December 17 hearing and the meet and confer regarding the improper filing of confidential information in the December 16 letter described above, where Citibank made clear its position that the Responses are Confidential under the Amended Protective Order. Plaintiff's decision on January 21 to file the Responses on the public record is further baffling because the letter did not require them as an exhibit. Citibank is gravely concerned about Plaintiff's conduct as it relates to compliance with a Court ordered Amended Protective Order.

Beyond Plaintiff's false accusation of "obstruction" in the January 21 letter, Citibank is also concerned that the letter represents that Citibank somehow "concedes" that the Responses did not answer Plaintiff's questions. Citibank's willingness to engage in meet and conferrals with Plaintiff is no such concession. To be clear, Citibank's position is that the Responses and accompanying documents provided Plaintiff more than she needed, but Citibank made it clear that if Plaintiff felt she needed more information Citibank was willing to consider supplementing, and agreed to do so in certain instances, consistent with the objective of meeting and conferring on discovery issues.

As the result of these experiences with Plaintiff, Citibank believes that it is imperative that there is clear direction and limits regarding what, if any, further discovery Plaintiff is allowed to conduct against Citibank. Moreover, the question of whether Plaintiff is entitled to further discovery from Citibank is not a simple one and raises numerous issues that require full briefing.

For example, a deposition is not appropriate at this posture of the case. Rather, Citibank submits that any decision regarding a Citibank deposition should only be decided after the Court rules on the Plaintiff's Motion for Class Certification. Plaintiff filed this motion in July without a deposition of Citibank and knowing that Citibank objected to any such deposition. Plaintiff's demand for an immediate deposition rings hollow when it did not take any action on the January 2020 subpoenas until September 2020 – after Plaintiff filed the Motion for Class Certification in July without this discovery. The ultimate resolution of the certification question will provide clarity of what, if any, discovery from Citibank is relevant and proportional.

Further showing that a deposition is not appropriate at this time, it has become clear during the meet and confer process that Plaintiff seeks information regarding Plaintiff's loans that were sold to Discover Bank and that are the subject of a separate Adversary Proceeding, Adv. Pro. No. 20-01051. Plaintiff's argument that it is not seeking to obtain information for

Hon. Elizabeth S. Stong
January 22, 2021
Page 5

the Discover Bank case [ECF 361 at 2, No. 5] is contradicted by Plaintiff's January 6 letter where she claims she needs testimony regarding:

> 10. With regard to reporting of loans sold to other parties such as **Discover**, what steps did Citibank take to ensure that reporting was transferred to that entity and, with regard to such sold accounts, was the tradeline still in the name of Citibank or the purchasing party?
>
> 11. We request testimony from the appropriate Citibank representative as to why Plaintiff Golden's Citibank loan, which was **transferred to Discover**, exceeds the cost of attendance despite Citibank's assertion that all such loans were certified as within the "cost of education."

(Emphasis added).

Not only are these questions beyond the January 2020 subpoenas and Written Questions, Discover Bank is not a party to this case and Golden's loans with Discover Bank are not serviced by the defendants in this case. Thus, with respect to No. 10, any steps Citibank made with respect to credit reporting on loans transferred to Discover Bank have absolutely no relevance to this dispute.[3] Likewise, the question of whether Golden's Citibank-originated loan transferred to Discover Bank was within the cost of attendance is strictly an issue for the other Adversary Proceeding.

Citibank objects to duplicating its discovery efforts by the possibility of having to sit for a deposition twice and does not believe it is appropriate to provide Plaintiff with discovery for the Discover Bank case without the participation of Discover Bank's counsel. To the extent that Plaintiff seeks discovery from Citibank about matters in the Discover Bank case, Citibank believes, at the very least, that the Discover Bank case will need to get past the pleadings stage and initial discovery between the parties so that the Plaintiff will not burden Citibank with information she can obtain directly from Discover Bank. Further, there will need to be an adequate and acceptable Protective Order in place in the Discover Bank case, and counsel for Plaintiff and Discover Bank will need to agree that it is the appropriate time to take discovery from Citibank. At that point, the parties (including Discover Bank's counsel) and Citibank can discuss the most efficient manner to obtain discovery from Citibank and how to obtain that discovery efficiently and in accordance with Rule 1 and 26.

---

[3] In fact, because Citibank is not a party to either of these cases, Citibank's credit reporting is not relevant to either action. This area of inquiry appears to be a fishing expedition for a new claim against Citibank.

Hon. Elizabeth S. Stong
January 22, 2021
Page 6

On the January 20 meet and confer call, Plaintiff would not agree to consolidate the discovery.[4]

In addition to the timing issues, there are significant legal issues related to the relevance and proportionality of the discovery Plaintiff seeks against a non-party that require full briefing. For example, and while Plaintiff has not provided updated Rule 30(b)(6) topics, Plaintiff seeks discovery on matters for which Plaintiff does not have standing to represent a class because Firstmark does not service Golden's loans for Citibank and Golden's loans are subject to different instructions than loans Firstmark services for Citibank. Plaintiff's argument [ECF 361 at 2, No. 3] that Citibank does not have the "standing" to argue against discovery because a class has not been certified has no legal support and Citibank is entitled, under Rule 45(d)(1), to brief this issue.

Similarly, Plaintiff seeks discovery (beyond the discovery about Discover Bank) that does not have any relevance to Plaintiff's claims and appears to be an attempt to gather information for a potential separate lawsuit against Citibank. These important issues require full briefing. While there have been numerous letters to the Court, these issues have not been fully briefed or fleshed out with the Court and Citibank, a non-party, seeks invoke the protections afforded to it under Rules 26 and 45.

Further, Plaintiff seeks testimony from Citibank that Plaintiff can obtain directly from parties to the lawsuit, such as Firstmark, or where Plaintiff has already had the opportunity to obtain the information directly from Plaintiff's school. [See ECF 358 (Trust Defendants' And Firstmark's Supplemental Memorandum of Law)]. For example, Firstmark has already produced Citibank's instructions and, while Citibank believes such information is irrelevant, Plaintiff can inquire about those instructions with Firstmark. Further, Plaintiff seeks discovery regarding the meaning of certifications schools provided to Citibank. A school's understanding and intent of the certifications are matters that Plaintiff should address with the school. Plaintiff has now had the opportunity to depose, twice, the financial aid officers from Golden's school who provided certifications, and presumably these issues should have come up. [See ECF 359 (deposition testimony of financial aid officer regarding the meaning of cost of attendance)]. If Plaintiff neglected to ask the school officials its understanding and intent in providing Citibank a certification,[5] that does not mean Plaintiff should be able to

---

[4] Because these issues directly involve Discover Bank, Citibank has served its counsel with a copy of this letter.

[5] As Citibank will fully brief after the February 4, 2021 hearing, the recent decision from the Sixth Circuit, Conti v. Arrowood Indem. Co. (In re Conti), dealing with a Citibank originated student loan, further calls into question whether further discovery against Citibank is relevant or proportional. See In re Conti, 982 F.3d 445 (6th Cir. 2020) (holding Citibank

then seek disruptive discovery from non-party, Citibank, particularly where Citibank provided the detailed and thorough Responses on these matters.

In order to accomplish full briefing, Citbank believes, at the very least, that Plaintiff will need to provide updated Rule 30(b)(6) topics and counsel for Discover Bank will need to have an opportunity to raise any concerns it may have regarding the deposition. With those matters in mind, Citibank intends to ask the Court to set a briefing schedule at the February 4 hearing. While Citibank has touched on some of the Plaintiff's 10 arguments from the January 21 letter filing, this letter is not a full briefing. In regards to Plaintiff's attempts to argue that no briefing is necessary in the January 21 letter, Citibank submits that this argument should be swiftly discarded. At the December 17 hearing this Court already stated Citibank had the right to file a motion. [See Ex. E (12/17/20 Tr.) at 30:7-23].

Thank you for your consideration and we look forward to discussing these issues more fully at the February 4 hearing.

Respectfully,

*/s/ Marjorie J. Peerce*
Marjorie J. Peerce

MJP/mm
Attachments

---

originated loans were qualified education loans and not dischargeable based on the plain language of the loan documents; noting "we see no reason why the 'cost of education' and 'specific educational expenses' referenced in the Citibank loans indicate anything beyond the university's 'cost of attendance' and its enumerated educational expenses detailed in 20 U.S.C. § 1087ll.").