UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br>Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>                       Debtor, | Chapter 7<br><br><br><br>Case No. 16-40809 (ESS) |
| Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>                    Plaintiff,<br><br>       v.<br><br>National Collegiate Student Loan Trust 2006-4, Goal Structured Solutions Trust 2016-A, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services and Firstmark Services,<br><br>                   Defendants. | Adv. Pro. No. 1-17-01005(ESS) |

---

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT

---

Dated:  February 5, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .................................................................................................................5

I.     THERE IS NO QUESTION THAT MS. GOLDEN'S LOANS EXCEED THE
       COST OF ATTENDANCE ...................................................................................5

II.    DEFENDANTS HAVE NOT ESTABLISHED THAT ANY EXCEPTION TO
       DISCHARGE APPLIES ........................................................................................9

       A.     Defendants Misconstrue the Parties' Respective Burdens........................9

       B.     Firstmark's Unsupported Allegations That § 523(a)(8)(A)(i) Applies
              Are Insufficient ......................................................................................11

       C.     Defendants' TERI Defense is Without Merit .........................................12

III.   BOILERPLATE LANGUAGE CONTAINED IN A PROMISSORY NOTE
       CANNOT BOOTSTRAP A LOAN INTO § 523(A)(8)......................................15

       A.     Parties Cannot Stipulate, Pre-Bankruptcy, That a Loan is Within § 523(a)(8) .....15

       B.     The "Purpose" Test Does Not Make These Loans NonDischargeable..................15

IV.    THE MOTION DOES NOT SEEK AN ADVISORY OPINION ....................................19

V.     THE ABSENT LOAN OWNERS ARE NOT NECESSARY PARTIES ........................21

VI.    RESTITUTION IS AVAILABLE TO PLAINTIFF AND THE CLASS.........................26

       A.     Awarding Restitution is Not Predicated on a Finding of Contempt .....................26

       B.     Any Payments Made by Plaintiff and the Class Were Not "Voluntary" ...............28

CONCLUSION.............................................................................................................30

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Adamo v. Adamo* (*In re Adamo*),
    560 B.R. 642 (Bankr. E.D.N.Y. 2016) ................................................................. 10

*Am. Campaign Acad. v. Comm'r*,
    92 T.C. 1053 (1989) ........................................................................................... 14

*American Council of Blind v. City of New York*,
    2020 WL 6151251 (S.D.N.Y. Oct. 20, 2020)...................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ..................................................................................... 12, 13

*Ashcroft v. Mattis*,
    431 U.S. 171 (1977) ........................................................................................... 20

*Better Bus. Bureau of Washington D.C., Inc. v. United States*,
    326 U.S. 279 (1945) ........................................................................................... 14

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
    331 F.R.D. 427 (W.D. Wash. 2019)................................................................... 22

*Borthwick v. First Georgetown Sec., Inc.*,
    892 F.2d 178 (2d Cir.1989) ............................................................................... 11

*Bronsdon v. Educ. Credit Mgmt. Ass'n* (*In re Bronsdon*),
    435 B.R. 791 (B.A.P. 1st Cir.  2010)................................................................... 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ....................................................................................... 9, 10

*Chowdhury v. Hansmeier*,
    597 B.R. 89 (D. Minn. 2019).............................................................................. 27

*College Standard Magazine v. Student Ass'n of State Univ. of New York at Albany*,
    610 F.3d 33 (2d Cir. 2010) ................................................................................. 20

*Creeger v. Creeger* (*In re Creeger*), No. 14-34053,
    2016 WL 3049972 (Bankr. N.D. Ohio May 20, 2016) ...................................... 18

*Crocker v. Navient Solutions, LLC* (*In re Crocker*),
   941 F.3d 206 (5th Cir. 2019) ................................................................ 16

*CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co., Inc.*,
   935 F. Supp. 184 (E.D.N.Y. 1996) ......................................................... 11

*Delgado v. Plaza Las Americas, Inc.*,
   139 F.3d 1 (1st Cir. 1998) ...................................................................... 25

*Dufrane v. Navient Solutions, LLC* (*In re Dufrane*),
   566 B.R. 28 (Bankr. C.D. Cal. 2017) ................................................... 16

*E&T Skyline Constr., LLC v. Talisman*,
   2020 WL 6531108 (S.D.N.Y. July 30, 2020) ....................................... 22

*Fed. Ins. Co. v. SafeNet, Inc.*,
   758 F. Supp. 2d 251 (S.D.N.Y. 2010) ................................................... 25

*Griffin v. U.S.* (*In re Griffin*),
   108 B.R. 717 (Bankr. W.D. Ma. 1989) ................................................ 26

*Grogan v. Garner*,
   498 U.S. 279 (1991) ................................................................................ 9

*Harrison Baking Co. v. Bakery and Confectionary Workers Local No. 3*,
   777 F. Supp. 306 (S.D.N.Y. 1991) ....................................................... 28

*Haynes v. Chase Bank USA, N.A.* (*In re Haynes*),
   2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) ........................... 24

*Hewitt v. Helms*,
   482 U.S. 755 (1987) .............................................................................. 20

*In re Golden*,
   596 B.R. 239 (Bankr. E.D.N.Y. 2019) ....................................... 15, 21, 27

*In re Haroon*,
   313 B.R. 686 (Bankr. E.D. Va. 2004) ................................................... 10

*In re Lafferty*,
   229 B.R. 707 (Bankr. N.D. Ohio 1998) ................................................ 24

*In re Nassoko*,
   405 B.R. 515 (Bankr. S.D.N.Y. 2009) .............................................. 24, 28

*In Re Oliver*,
   499 B.R. 617 (Bankr. S.D. Ind. 2013) .................................................. 28

*In re Risk Mgmt. Alt., Inc.*,
  208 F.R.D. 493 (S.D.N.Y. 2002) ............................................................................................ 10

*Liu v. Sec. and Exch. Comm'n*,
  140 S. Ct. 1936 (2020) .......................................................................................................... 27

*Lorber v. Beebe*,
  407 F. Supp. 279 (S.D.N.Y. 1976) ........................................................................................ 10

*Malone v. Norwest Financial California, Inc.*,
  245 B.R. 389 (Bankr. E.D. Cal. 2000) .................................................................................. 26

*Mastercard Int'l Inc. v. Visa Intern. Serv. Ass'n, Inc.*,
  471 F.3d 377 (2d Cir. 2006) .................................................................................................. 24

*McDaniel v. Navient Solutions, LLC* (*In re McDaniel*),
  590 B.R. 537 (Bankr. D. Col. 2018) ...................................................................................... 17

*McNamee v. Nationstar Mortgage LLC*,
  2021 WL 201189 (S.D. Ohio Jan. 20, 2021) ........................................................................ 21

*Nationalist Movement v. Comm'r*,
  102 T.C. 558 (1994) .............................................................................................................. 14

*Orellana v. One if By Land Restaurant LLC*,
  2020 WL 5768433 (S.D.N.Y. Sep. 27, 2020) ....................................................................... 21

*Peregrine Myan. Ltd. v. Segal*,
  89 F.3d 41 (2d Cir. 1996) ...................................................................................................... 22

*Redlands Surgical Servs. v. Comm'r*,
  113 T.C. 47 (1999) ................................................................................................................ 14

*Renshaw v. Renshaw* (*In re Renshaw*),
  222 F.3d 82 (2d Cir. 2000) ...................................................................................................... 9

*Rogers v. Key Bank* (*In re Rogers*),
  374 B.R. 510 (Bankr. E.D.N.Y. 2007) .................................................................................. 17

*Schweizer v. Trans Union Corp.*,
  136 F.3d 233 (2d Cir. 1998) .................................................................................................. 10

*Stevens Inst. of Tech. v. Joyner* (*In re Joyner*),
  171 B.R. 762 (Bankr. E.D. Pa. 1994) .................................................................................... 17

*Sucre v. MIC Leasing Corp.* (*In re Sucre*),
    226 B.R. 340 (Bankr. S.D.N.Y. 1998) ................................................................................ 26

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019) ....................................................................................................... 4, 27

*United Healthcare Workers v. Borsos* (*In re Borsos*),
    544 B.R. 201 (Bankr. E.D. Cal. 2016) .............................................................................. 26

*United States v. Bowen*,
    172 F.3d 682 (9th Cir. 1999) ............................................................................................. 22

*Vega v. Credit Bureau Enter.*,
    2005 WL 711657 (E.D.N.Y. 2005) ................................................................................... 10

*Venture Bank v. Lapides*,
    800 F.3d 442 (8th Cir. 2015) ............................................................................................. 28

*Wang v. Guo* (*In re Guo*),
    548 B.R. 396 (Bankr. E.D.N.Y. 2016) .............................................................................. 10

*Watkins v. Guardian Loan of Massapequa* (*In re Watkins*),
    240 B.R. 668 (Bankr. E.D.N.Y. 1999) .............................................................................. 28

*Western World Ins. Co. v. Stack Oil, Inc.*,
    922 F.2d 118 (2d Cir. 1990) .............................................................................................. 11

*Wiley v. Wells Fargo Bank, N.A.* (*In re Wiley*),
    579 B.R. 1 (Bankr. D. Me. 2017) ...................................................................................... 17

Statutes

Internal Revenue Code § 221(d) ................................................................................................ 8

Internal Revenue Code § 221(d)(1) ............................................................................... 6, 7, 8, 18

Internal Revenue Code § 501(c)(3) .......................................................................................... 12

11 U.S. Code § 523(a)(8) ....................................................................................................... 2, 3

11 U.S. Code § 523(a)(8)(A)(i) ................................................................................. 2, 11, 12, 14

11 U.S. Code § 523(a)(8)(B) .......................................................................................... 6, 16, 17

Regulations

26 C.F.R. § 1.221-1(e)(4) ......................................................................................................... 19

26 CFR § 1.501(c)(3)-501(c)(1) ................................................................................... 14

Other Authorities

*Deduction for Interest of Qualified Education Loans,*
    64 F.R. 3257-01 (January 21, 1999) ...................................................................... 18

IRS Publication 970 ................................................................................................. 19

Senate Report 96-320................................................................................................ 14

*Supplementary Information to Proposed Rules,*
    64 F.R. 3257 (January 21, 1999) ............................................................................ 18

Plaintiff Tashanna Golden ("Plaintiff"), on behalf of herself and the proposed class, submits this Reply Memorandum of Law in Further Support of her Motion for Partial Summary Judgment.

## PRELIMINARY STATEMENT

Defendants misconstrue the nature of Plaintiff's Motion.  The Motion before the Court is a motion for partial summary judgment as to liability and restitution.  The Motion seeks a judgment that all loans held or serviced by Defendants that are not within the cost of attendance at a Title IV institution are not qualified education loans and are, therefore, dischargeable in bankruptcy.  For all such loans, Defendants must make restitution of all funds collected after the debts were discharged in bankruptcy.  The defenses to dischargeability raised by Defendants are without merit.  Plaintiff has not raised hypothetical questions, nor is the pending Motion a request for an advisory opinion.  Evidence already produced in this action shows that there are thousands of loans that, on their face, either exceed the cost of attendance or were issued for attendance at a non-Title IV institution.

What Plaintiff seeks is no different than what any class representative seeks in a class action: Plaintiff seeks a determination as to class-wide liability.  Plaintiff seeks a determination that every loan held or serviced by Defendants that is not within the cost of attendance at a Title-IV school is discharged.  Which specific loans fall within the class will be determined later.

By focusing solely on Tashanna Golden's loans, Defendants miss the point.  The Motion does not seek a determination that any particular absent class members' loans are dischargeable, but instead seeks a ruling that is applicable to the entire class.  Nonetheless, Plaintiff has proven that Ms. Golden's BankOne loan, held by the NCT Trust and serviced by PHEAA, clearly exceeds the cost of attendance.  Further, Defendants concede that Ms. Golden's Citibank bar loan, held by the GOAL Trust and serviced by Firstmark, does not come within the cost of attendance because

it was not even intended to cover such costs and was issued after she had graduated from the University of Pennsylvania Law School.  There is simply no basis for either of these loans to come within 11 U.S.C. § 523(a)(8).

As to the Motion before the Court, Defendants make the following arguments, none of which are valid:

First, Defendants assert that a motion for summary judgment is inappropriate prior to class certification.  Yet, as has been stated on numerous occasions, Plaintiff is not seeking a determination on the motion for summary judgment before class certification.  The order in which the motions are to be ultimately decided is entirely within the discretion of the Court.  This Court may decide the Motion for partial summary judgment either before or after the class certification motion.

Second, Firstmark suggests, without offering any support or evidence, that some of the loans it is servicing (although it does not know which ones) are exempt under § 523(a)(8)(A)(i) because they either were issued by governmental entities or funded by a nonprofit institution.  On a motion for summary judgment, it is the nonmoving party's burden to establish that there is a material question of fact.  When faced with such a motion, a party cannot simply state that there are facts within its knowledge or within the knowledge of its contracting party and refuse to lay those facts before the Court.  That is especially so where the creditor bears the burden of establishing that a loan is exempt from discharge as well as the burden of proving the specific exemption that applies.  Other than Defendants' reliance on TERI's involvement (which applies to some, but not all, of the loans at issue), Defendants have not pointed to any facts showing that any of the loans at issue were funded or guaranteed by a nonprofit institution or governmental entity.

As far as TERI is concerned, Defendants rely on the fact that TERI had nonprofit status with the Commonwealth of Massachusetts and was registered as a § 501(c)(3) with the I.R.S. But neither status is determinative. What matters is the fact that TERI did not *operate* as a nonprofit institution. TERI unequivocally operated as a commercial enterprise for the benefit of First Marblehead and the National Collegiate Trusts that First Marblehead created to hold the securitized student loans.

Third, Firstmark argues that loans that exceed the cost of attendance are, nonetheless, dischargeable because of the boilerplate language in the loan documents, *i.e.*, the purported certifications by the borrower that the loans are educational loans. The case law, including this Court's prior order on the motion to dismiss, is firmly to the contrary. Boilerplate language in a promissory note cannot bootstrap a loan that exceeds the cost of attendance into the terms of § 523(a)(8). A loan either exceeds the cost of attendance or it does not.

Fourth, PHEAA asserts that Plaintiff's motion for partial summary judgment asks for nothing more than a statement that the law "says what it says." But it is more than that; it seeks a determination that Defendants have no legal or factual grounds to show that the loans are exempt from discharge. If Defendants want to concede that the loans held by Plaintiff and the class are dischargeable, then we have nothing to argue about. But instead, they raise several grounds for asserting nondischargeability. Plaintiff's motion shows that Defendants fail to create a material question of fact as to any such grounds. This is precisely what a motion for summary judgment as to liability addresses.

Fifth, Defendants reprise their argument that this Court cannot award relief because not all of the loan owners are before the Court. In making this argument, Defendants rely upon case law to the effect that a court determination of the rights of parties to a contract cannot be adjudicated

without all the contracting parties present before the Court.  That, however, is not this situation. Plaintiff is not asking for a determination as to any of the class members' contractual rights vis-à-vis their lenders.  Rather, Plaintiff is seeking a determination that Defendants should be ordered to cease collecting on loans that were discharged in bankruptcy.  A party violating § 524 by collecting on discharged debts cannot evade liability, either for contempt or restitution, merely because it is acting on behalf of another.  The Court can provide meaningful relief by ordering these Defendants to cease collection and return funds already collected on discharged debts.  To the extent that Defendants are fearful of inconsistent determinations, they have a remedy:  impleading the owners that hold the loans so that they will bound by any court determination.  Yet, Defendants have neither moved to join the absent owners nor to implead them.

Defendants Firstmark and PHEAA attempt to avoid liability on the basis that they are not loan owners, but rather servicers.  Firstmark and PHEAA argue, without offering any support, that they cannot be held accountable for collecting on discharged debts because they do not own the debts.  To accept this argument would create an enormous loophole that would undermine the very purpose of the Bankruptcy Code.  The discharge injunction serves to prevent illegal attempts to collect on loans that have been discharged in bankruptcy.  By its terms, it applies to "any act to collect."  Whether the offending party owns the debt or is an agent of the debt owner does not matter.

Finally, Firstmark suggests that the Supreme Court's decision in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019) bars any restitution to the class.  That argument is without merit for the obvious reason that the Court can order restitution of funds improperly obtained whether or not the Court finds that Defendants' actions justify a contempt citation.  The case law is clear that a party that

obtains funds in violation of an order of discharge must return the funds even if the funds were collected in good faith.

## **ARGUMENT**

### I.    **THERE IS NO QUESTION THAT MS. GOLDEN'S LOANS EXCEED THE COST OF ATTENDANCE.**

The Motion before the Court does not seek a determination that any particular absent class member's loans were discharged.  Rather, the Motion seeks a determination that all loans that are, in fact, not within the cost of attendance at a Title IV institution are not qualified education loans and are, therefore, dischargeable in bankruptcy.  There are no defenses applicable to the class that Defendants assert would make their loans dischargeable.

Defendants focus on Ms. Golden's loans.  However, *even using Defendants' own numbers*, Ms. Golden's loans undisputedly exceed the cost of attendance.  Defendants claim Ms. Golden's cost of attendance was established by the University of Pennsylvania ("UPenn") at $56,380.  Dkt. No. 327 at 24.  Ms. Golden's own financial record as explained by Elaine Varas, the Director of Financial Aid at University of Pennsylvania, shows that during the 2006 - 2007 academic year, Ms. Golden received the following financial aid:

- $6,000 in Perkin Loans ($3,000 per semester)
- A grant of $19,440 ($9,720 per semester)
- A Stafford Subsidized Loan of $8,500 ($4,250 per semester)
- An unsubsidized Stafford Loan of $10,000 ($5,000 per semester)
- A private loan from Citibank in the amount of $11,340 ($5,670 per semester)[1]

---

[1] The Citibank loan was approved and at least half of the loan was dispersed to UPenn and recorded in the University's records on August 26, 2006 before the Bank One loan was even applied for on September 21, 2006.  *See* Declaration of George F. Carpinello (hereinafter "Carpinello Reply Decl.") at ¶ 4, Ex. C; Carpinello Reply Decl. at ¶ 3, Ex. B ("Bank One Loan application").

These grants and loans total $55,280.  *See* Varas Dep. Tr. at 141:21-151:24; 154:14-155:24; Carpinello Reply Decl. at ¶ 4; Ex. C (PENN_GOLDEN000001-000007).  This would leave a balance of $1,100 that a creditor could lend to Ms. Golden and still be within the cost of attendance (as defined by Defendants).[2]  Thus, it is clear that the Bank One Loan for $7,300 exceeds the cost of attendance by over $6,000.

Of course, the cost of attendance for purposes of Internal Revenue Code § 221(d)(1) is not $56,380; it is $48,640, which is the amount UPenn reported to IPEDS.  Defendants fundamentally confuse the nature of the term "cost of attendance."  They rely upon the statements of UPenn officials about how they determine cost of attendance for purposes of a student's eligibility to receive financial aid.  Varas Dep. Tr. at 24:05-23.  That is not the issue before the Court.  The issue before the Court is the definition of cost of attendance for determining whether particular loans are "qualified education loans" within the meaning of § 523(a)(8)(B) and Internal Revenue Code § 221(d)(1). Those are two different determinations.  *See* Kantrowitz Report at 2-8.

As is more fully set forth in the expert report of Mark Kantrowitz, the cost of attendance that is relevant to this case is that defined in the I.R.C. § 221(d)(1) and the Higher Education Act § 1087ll, as adopted in 1997.  That is the number that was reported by UPenn to IPEDS.  Carpinello Reply Decl. at ¶ 5, Ex. D (PENN_GOLDEN000150-PENN_GOLDEN000173); Kantrowitz Report at 3-4.  That number exactly corresponds with what is reported on the IPEDS database.  *See* Dkt. No. 247-1 ("Ex. A to Golden Decl." dated July 6, 2020).  Neither of the UPenn deponents were involved in reporting that number to IPEDS and were entirely unaware of how cost of attendance is determined with regard to I.R.C. § 221(d)(1).  Carpinello Reply Decl. at ¶ 6, Ex. E

---

[2] Firstmark's suggestion that other loans, scholarships, and grants need not be deducted from the cost of attendance to determine whether a loan is a qualified education loan is completely unsupportable.  *See* Kantrowitz Report at 14-15.

("Deposition Transcript of Anthony Henry") at 129:11-130:12; Varas Dep. Tr. at 106:03-06 (Q: "Okay. Are you familiar with the conditions under which a private loan may constitute a qualified education loan under either § 523(a)(8) or section 221D of the Internal Revenue Code? A. No, I am not."); 106:08-24. The fact that the IPEDS number is an average for students does not affect the validity of the IPEDS number because Section 221(d)(1) clearly contemplates that average numbers will be used to determine whether any particular loan is within the cost of attendance for purposes of determining whether the loan is a qualified education loan.[3]

In any event, the cost of attendance is a knowable, objective number that the lender could have ascertained at the time it made the direct-to-consumer loan. But Bank One, Ms. Golden's lender, chose not to certify the loan through the college and instead distributed the funds directly to Ms. Golden. *See* Kantrowitz Report at 5, 7.

Ms. Varas explained that a lender could contact UPenn and receive a certification by UPenn that a loan is within the cost of attendance as determined by UPenn for the purpose of student eligibility for financial aid. Varas Dep. Tr. at 83:11-21. As is more fully set forth in the Kantrowitz

---

[3] The discrepancy between the $56,380 number and the $48,640 number reported in IPEDS can be explained by the inclusion in the former number of certain additional fees that were not reported to IPEDS. *See* Varas Dep. Tr. at 24: 05- 31:20. Universities are required to report all fees that are required of students. Ms. Varas could not testify whether the fees that were included in the $56,380 student budget number were required fees because she was not present at the time these numbers were calculated, nor was she the person who filled out the IPEDS form for UPenn. One of the largest of those additional fees listed in the $56,380 student budget number is the fee for medical insurance. Medical insurance is not included as a cost of attendance under the Higher Education Act § 1087ll as of 1997, which is the applicable definition for I.R.C. § 221(d)(1). *See* Kantrowitz Report at 2. Ms. Varas testified that health insurance was not a required fee if students had their own health insurance. Varas Dep. Tr. at 28:14-29:16. That may explain why UPenn did not designate health insurance as a component of cost of attendance on IPEDS for 2006 - 2007. In any event, Ms. Varas had no personal knowledge of why health insurance or any of the other additional fees were included in the figure for the student budget but not in the IPEDS report. Finally, it should be noted that UPenn was cited by the Department of Education for errors in its reporting of cost of attendance. Kantrowitz Report at 6.

Report at 7-8, this is not a legal safe harbor because student eligibility for loans is not the same as the determination under I.R.C. § 221(d)(1) whether a loan is a qualified education loan. However, it can provide the lender with some indication whether the loan is within the cost of attendance. Bank One did not choose that course. When a lender chooses not to go through the financial aid office and instead lends money to a student directly, it is clearly taking the risk that the loan is not a qualified education loan and is, therefore, dischargeable. Indeed, Ms. Varas did not consider such direct-to-consumer loans to be "education loans" at all. Varas Dep. Tr. at 158:09-159:22. In fact, Ms. Varas used "bar loans" as an example of private loans, saying bar loans "are not educational loans because that piece does not happen during their education." *Id.* at 159:08-09.

The Citibank bar loan, which is held by Defendant GOAL and serviced by Firstmark, is clearly dischargeable because the loan was made for living expenses received *after* Ms. Golden attended a Title IV institution. The testimony of UPenn employee Anthony Henry, his declaration, the testimony of Ms. Varas and Citibank's and Firstmark's own records all make it clear that UPenn never certified the bar loan as within the "cost of attendance." Henry Dep. Tr. at 65:17-66:13; Dkt. No. 331-9 ("Henry Decl.") at ¶ 7; Varas Dep. Tr. at 157:13-158:19; Carpinello Reply Decl. at ¶ 7, Ex. F ("Citibank's Responses to Written Questions") at ███████████████

███████████████████████████████████████████████████

Carpinello Reply Decl. at ¶ 8, Ex. G ("Citibank Loan Form, FM20"); Kantrowitz Report at 9-13.

Nonetheless, Firstmark argues that Plaintiff's bar loan is a qualified education loan because it was used to "finance the costs necessary to obtain her professional license." Dkt. No. 329 at 3. Firstmark is wrong for two reasons. First, the language Firstmark quotes was added to the Higher Education Act after 1997, so it is irrelevant to determining whether a loan is a qualified education loan under I.R.C. § 221(d). Kantrowitz Report at 9-10. Second, even if this language were

relevant, it applies only to the actual cost of obtaining a professional license, and does not apply to living expenses while studying for the bar exam.  *Id.* at 10.

Thus, it is clear that the two loans at issue here are not qualified education loans and were, therefore, discharged in Ms. Golden's bankruptcy.

## II.    DEFENDANTS HAVE NOT ESTABLISHED THAT ANY EXCEPTION TO DISCHARGE APPLIES.

### A.    Defendants Misconstrue the Parties' Respective Burdens.

As an initial matter, Defendants attempt to create confusion, or perhaps merely project their own confusion, about the parties' respective burdens and accuse Plaintiff of "flip[ping] her heavy burden of proof with a bit of misdirection."  Dkt. No. 336.  This unwarranted criticism has no justification.

Plaintiff, as the party moving for summary judgment, bears the burden of showing that there is no genuine issue of material fact as to Defendants' liability.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  As *Celotex* explains, a party may move for summary judgment on the basis that the party with the burden of proof does not have enough evidence to create a genuine issue of material fact.  *Id.* at 322.  Plaintiff has met her respective burden by showing that the corpus of loans that are not within the cost of attendance at a Title IV institution are not qualified education loans, and that the defenses raised by Defendants are legally and factually without merit. There is no genuine issue of material fact as to any of these defenses.

The aspect that Defendants seem to struggle with the most is the fact that it is not Plaintiff's burden to show that the loans are exempt from discharge.  It is theirs.  The law is clear that the creditor bears the burden of proving that a debt is exempt from discharge.  *See Grogan v. Garner*, 498 U.S. 279, 283 (1991); *Renshaw v. Renshaw* (*In re Renshaw*), 222 F.3d 82, 86 (2d Cir. 2000); *Bronsdon v. Educ. Credit Mgmt. Ass'n* (*In re Bronsdon*), 435 B.R. 791, 796 (B.A.P. 1st Cir.  2010);

*In re Haroon*, 313 B.R. 686, 688 (Bankr. E.D. Va. 2004); *Adamo v. Adamo* (*In re Adamo*), 560 B.R. 642, 648 (Bankr. E.D.N.Y. 2016); *Wang v. Guo* (*In re Guo*), 548 B.R. 396, 401 (Bankr. E.D.N.Y. 2016).

Where, as here, Defendants rely on an affirmative defense or a showing that one of § 523(a)(8)'s narrow exceptions applies, summary judgment is properly awarded when the party bearing the burden of proof with regard to a critical element or defense fails to make a sufficient evidentiary showing as to that element.    *Celotex*, 477 U.S. at 322.    Defendants fail to make a sufficient showing that any of § 523's exceptions apply.

Defendants' argument that Plaintiff's Motion for Summary Judgment is "premature" and somehow violates the rule against one-way intervention reflects a similar misunderstanding of the law and fails to acknowledge the parties' discussion during the September 3, 2020 pretrial conference.    *See* Carpinello Reply Decl. ¶ 9, Ex. H ("September 3, 2020 Tr.") at 66-69.    As this Court noted during the September 3 pre-trial conference, it is well within the Court's sound discretion to decide the class certification motion and the summary judgment motion in the order that the Court deems appropriate.    *Id.*; *see also Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (holding that the decision to grant "summary judgment before acting on class certification was well within the discretion of the district court."; *Vega v. Credit Bureau Enter.*, No. 02-CV-1550, 2005 WL 711657, at *10 (E.D.N.Y. 2005) (granting plaintiff's motion for class certification and for judgment on the pleadings and denying defendant's motion for summary judgment simultaneously.); *In re Risk Mgmt. Alt., Inc.*, 208 F.R.D. 493, 507 (S.D.N.Y. 2002) (granting plaintiff's motion for class certification but denying plaintiff's motion for summary judgment and granting defendant's motion for summary judgment in part simultaneously); *Lorber v. Beebe*, 407 F. Supp. 279, 291 n.11 (S.D.N.Y. 1976) (rejecting the argument that the plaintiff

should not be allowed to file his motion for class certification simultaneously with his motion for summary judgment, holding "[t]here is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion is made returnable on the same day as a [Rule] 23 class action motion.")

Accordingly, there is nothing "premature" or inappropriate about moving for summary judgment prior to obtaining class certification.

### B. Firstmark's Unsupported Allegations That § 523(a)(8)(A)(i) Applies Are Insufficient.

Firstmark asserts, without offering any support or evidence, that some of the loans it is servicing, without explaining which ones, are exempt under § 523(a)(8)(A)(i) because they were issued by governmental entities or funded by a nonprofit institution.  *See* Dkt. No. 329 at 28-29. Firstmark claims that it invoked § 523(a)(8)(A)(i) as an affirmative defense, but does not specify which loans it believes fall under this exception, nor does it identify the governmental entity or nonprofit institution involved.  Rather, it attempts to avoid summary judgment by faulting Plaintiff for failing to take discovery about a defense that Plaintiff knows is without merit, and for which Firstmark has provided no information.

"It is well-settled that a party cannot avoid summary judgment simply by raising conclusory allegations or unfounded opinions." *CrossLand Fed. Sav. Bank by F.D.I.C. v. A. Suna & Co., Inc.*, 935 F. Supp. 184, 191 (E.D.N.Y. 1996); *see also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (holding that summary judgment cannot be defeated through "mere speculation or conjecture"); *Borthwick v. First Georgetown Sec., Inc.*, 892 F.2d 178, 181 (2d Cir.1989) (holding that opposing party cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts").  A party raising an

affirmative defense when opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51. Firstmark's unsupported argument that § 523(a)(8)(A)(i) might apply to some of its loans is completely unsupportable.

### C.    Defendants' TERI Defense is Without Merit.

As Plaintiff pointed out in her opening brief, TERI is not an "institution" as the term is used in § 523(a)(8). *See* Dkt. No. 244 at 19-22. As the Higher Education Act and § 523(a)(8)'s extensive legislative history demonstrate, when Congress used the term "institution" in the Higher Education Act and in § 523(a)(8), it was referring to institutions of higher education. TERI is not an institution of higher education.

Further, as Plaintiff pointed out in her moving papers, TERI does not qualify as a nonprofit institution as that term is used in § 523(a)(8)(A)(i). *Id.* at 22-31. Defendants fall back on the fact that TERI is registered as a nonprofit institution pursuant to § 501(c)(3) of the Internal Revenue Code and under Massachusetts law. But neither registration is determinative of whether TERI qualifies as a nonprofit under § 523(a)(A)(8)(i). As noted in Plaintiff's moving brief, in order to maintain nonprofit status, an entity must not only be organized as a nonprofit but also *operate* as a nonprofit. TERI clearly did not do that. Overwhelmingly, TERI's activities after 2001 were almost entirely devoted to providing critical and integral assistance to First Marblehead in what was unequivocally a commercial enterprise to securitize student loans and sell debt securities against those securitized loans. Dkt. No. 244 at 7-12. Defendants do not dispute any of those facts and merely fall back on TERI's registrations.

If there were any doubt that TERI was engaged almost exclusively in a commercial enterprise, one need look no further than FMC's SEC filings. For example, in FMC's Form 10-K

for the fiscal year ending June 30, 2004, First Marblehead acknowledged that TERI was integral to FMC's continued success.   Carpinello Reply Decl. at ¶ 10, Ex. I ("FMC Form 10-K"). Specifically, FMC stated that if their relationship with TERI were to end:

- • FMC might not be able to offer guarantee services;

- • FMC's access to loans would be threatened;

- • FMC's ability to securitize loans would be threatened;

- • Securitization would be much more costly;

- • Demand for FMC's services would decline and FMC's entire business would be threatened;

- • The value of FMC's loan pools and the value of its residual interest would decline.

*Id.*

FMC also explained that maintaining TERI's nonprofit status was critical to its business:

> TERI is a not-for-profit organization and, as a result, borrowers have been deemed unable to discharge in bankruptcy proceedings loans that TERI guarantees. *If TERI loses its not-for-profit status, and TERI-guaranteed student loans become dischargeable in bankruptcy, recovery rates on these loans could decline. In such event, our business could be adversely affected for the following reasons…*

*Id.* (emphasis added).   Thus, FMC acknowledged that it was using TERI's nonprofit status as a device to increase the value of its portfolio and that such status gave TERI a "competitive advantage" over other private lenders.  Loss of that status would likely "harm [FMC's] business and results of operations."   *Id.*   Indeed, both FMC and the NCTs benefitted from TERI's role in the securitization process—the TERI guarantee made the securities offered by the NCTs more valuable; and FMC, the entity that created the NCTs, had a direct and material interest in the NCTs becoming more valuable.

As noted in Plaintiff's moving brief, the presence of a single non-exempt purpose, if substantial, precludes exempt status regardless of the number or importance of the truly exempt purposes. *See Better Bus. Bureau of Washington D.C., Inc. v. United States*, 326 U.S. 279, 283 (1945); *Redlands Surgical Servs. v. Comm'r*, 113 T.C. 47, 71–72 (1999), *aff'd*, 242 F.3d 904 (9th Cir. 2001); *Nationalist Movement v. Comm'r*, 102 T.C. 558, 576 (1994); *Am. Campaign Acad. v. Comm'r*, 92 T.C. 1053, 1065 (1989); 26 CFR § 1.501(c)(3)-501(c)(1), Income Tax Regs. ("An organization will not be so regarded [as operated exclusively for one or more exempt purposes] if more than an insubstantial part of its activities is not in furtherance of an exempt purpose."). Because TERI's primary purpose was overwhelmingly commercial, TERI fails the nonprofit test.

Further, as set forth in Plaintiff's moving brief (Dkt. No. 244 at 32-35), a loan that is merely guaranteed by a nonprofit institution does not come within the terms of § 523(a)(8)(A)(i), as is clear from the legislative history of that section.[4]  In addition, as noted in Plaintiff's moving brief, TERI clearly did not guarantee the loans at issue in this proceeding because TERI declined to guarantee any loans that were not qualified education loans, a point Defendants do not dispute.[5] *Id.* at 38.   None of the loans at issue here was a qualified education loan.   Finally, TERI's

---

[4] Defendant NCT argues that Senate Report 96-320 (July 11, 1979, 1979 WL10297, actually supports their position because it confirms that "a loan insured by a private, non-profit guarantee agency would be nondischargeable." It clearly does not. The report confirms that the 1979 change was designed to expand nondischargeability to all loans "administered by the Department of Health, Education, and Welfare," i.e. government-guaranteed or funded loans, or nonprofit loans *guaranteed by the federal government*. It does not speak to private loans guaranteed by private entities at all. The reference to "a private, nonprofit guarantee agency," was made in the context of GSL loans, which are federally-subsidized loans. *See* Pls.' Br. (Dkt. No. 244) at 33.

[5] Defendant NCT argues that Plaintiff lacks "standing" to raise this issue because she was not a party to the contract between TERI and Bank One. Dkt. No. 336 at 37-38. But Plaintiff is not alleging breach of contract; she is claiming that TERI, by its own agreement, disclaimed any obligation to guarantee loans, like Plaintiff's, that were not qualified education loans.

bankruptcy eliminates any basis to assert that TERI funded or guaranteed any of the subject loans.

*Id.* at 36-37.  Accordingly, Defendants' TERI defense fails as a matter of law.

## III.    BOILERPLATE LANGUAGE CONTAINED IN A PROMISSORY NOTE CANNOT BOOTSTRAP A LOAN INTO § 523(a)(8).

### A.  Parties Cannot Stipulate, Pre-Bankruptcy, That a Loan is Within § 523(a)(8).

Firstmark contends that Plaintiff's CitiAssist Bar Loan is somehow a qualified education loan because of boilerplate language included in the promissory note that the loan would be used for "specific education expenses."  Dkt. No. 329 at 18.  It argues that this boilerplate constitutes "stipulated facts" about the nature of the loan, and that this pre-petition waiver of dischargeability is somehow enforceable.  *Id.*  Defendants try to avoid the well-settled body of case law that clearly establishes that it is against public policy for creditors to bootstrap themselves into § 523(a)(8) by putting language in loan documents that purports to make the loans nondischargeable.  Otherwise, all lenders would rely on magic words inserted into the promissory notes to obviate the strict requirements a loan must meet to be nondischargeable.  Whether you refer to this boilerplate language as "stipulated facts" rather than a waiver of dischargeability, it makes no difference.  A loan is either within the cost of attendance at a Title IV institution or it is not.  Relying on this boilerplate language cannot change that.

This argument has already been rejected by this Court.  As this Court has aptly stated, if boilerplate could be placed in promissory notes that could bootstrap loans into § 523(a)(8) "it is hard to see what role would be left for Congress or the courts in drafting, interpreting, and applying these sections of the Bankruptcy Code."  *In re Golden*, 596 B.R. 239, 267 (Bankr. E.D.N.Y. 2019).

### B.  The "Purpose" Test Does Not Make These Loans NonDischargeable.

Firstmark also relies on the "purpose test," arguing that all that is needed to show that a loan meets one of the narrow exceptions to discharge enumerated in § 523(a)(8) is boilerplate

language in the promissory note stating that the loan will be used for educational purposes.  Dkt. No. 329 at 19-22.  Under this interpretation, a loan that clearly exceeds the cost of attendance or a loan that was issued for attendance at a non-Title IV institution would be nondischargeable. Neither of these scenarios are supportable.

No purported "agreement" between the lender and the borrower as to how the proceeds of a loan would be used can bootstrap a loan that was not within the cost of attendance at a Title IV institution into § 523(a)(8).  It is not reasonable for Defendants, the parties with the burden of showing that a loan is nondischargeable, as well as the knowledge about the cost of attendance and financial aid each borrower is receiving, to rely on the boilerplate language included in their loan documents as to the use of the funds.

None of the cases cited supports Defendants' argument.  Rather, they stand for the unsurprising proposition that a borrower's *use* of funds cannot transform an otherwise nondischargeable loan into a dischargeable one.  None of the cases stands for the proposition that a loan that exceeds the cost of attendance can, nonetheless, come within the terms of § 523(a)(8)(B) if the loan documents evidence a "purpose" that they be used for education.  *Dufrane v. Navient Solutions, LLC* (*In re Dufrane*), 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017) ("[T]he court agrees with Dufrane that "[t]he 'Purpose Test' restricts a federally-subsidized or qualified educational loan from degenerating into a non-qualified loan' [but] 'it cannot be used to elevate a non-qualified educational loan into a qualified educational loan.'"); *Crocker v. Navient Solutions, LLC* (*In re Crocker*), 941 F.3d 206, 221 (5th Cir. 2019) (stating that Navient's argument that any loan whose purpose is to fund education is therefore within § 523(a)(8) is "[p]retty bold. . . and errant in our view.").

Contrary to Defendants' argument, the purpose test has never been a sufficient condition of nondischargeability. The purpose test was created by the lower courts as an analytical framework to avoid the argument made by some debtors that their loans were dischargeable solely because they used the proceeds for non-educational purposes. The courts properly held that it was the lenders' stated purpose, not the borrower's use, that governed. *See Stevens Inst. of Tech. v. Joyner* (*In re Joyner*), 171 B.R. 762, 764 (Bankr. E.D. Pa. 1994). But showing that the parties' purpose was to make and receive an education loan does not mean that loan is a "qualified education loan" under § 523(a)(8)(B) unless it is within the cost of attendance at a Title IV institution. No evidence of "purpose" can make a loan nondischargeable unless it meets § 523's criteria. *See Rogers v. Key Bank* (*In re Rogers*), 374 B.R. 510, 515 (Bankr. E.D.N.Y. 2007) (holding that whether loan was within § 523(a)(8)(B) was dependent upon what the institution had established as cost of attendance; student's admission that she used the proceeds to pay the cost of tuition and living expenses did not establish cost of attendance); *Wiley v. Wells Fargo Bank, N.A.* (*In re Wiley*), 579 B.R. 1, 10 (Bankr. D. Me. 2017) (holding that creditor was not entitled to summary judgment declaring that loan is within § 523(a)(8)(B) without showing that loan was within the cost of attendance as determined by the institution.); *McDaniel v. Navient Solutions, LLC* (*In re McDaniel*), 590 B.R. 537, 545 (Bankr. D. Col. 2018) ("'Educational' loans or 'student loans' loans, are not nondischargeable simply because they are labeled as such; they must meet one of the criteria set forth in Section 523(a)(8).").

Firstmark's argument that the IRS endorses the "purpose" test is unavailing. Dkt. No. 329 at 23-24. Under Firstmark's interpretation, a student attending community college with a cost of attendance of $5,000 could receive $50,000 in loans merely by placing boilerplate language in the

17

promissory note that the purpose of the loan is to pay for educational expenses.  IRS regulations simply do not support such a position.

Section 221(d) of the Internal Revenue Code requires the loan to be incurred *solely* to pay for higher education expenses.  If a loan is not entirely within the cost of attendance, it is not a qualified education expense under IRC § 221(d)(1).  The IRC regulations define loans that are not incurred solely to pay for qualified education expenses as mixed use loans.  And the law is clear that mixed use loans are not qualified education loans.  *See* Deduction for Interest of Qualified Education Loans, 64 F.R. 3257-01, 3258 (January 21, 1999).

For the same reason, loans incurred on revolving lines of credit or credit cards "are not qualified education loans unless the borrower uses the line of credit solely to pay qualified higher education expenses." *Id.*  Revolving lines of credit or credit cards that allow for borrowing in excess of qualified expenses are essentially the same as Defendants' loans that exceed the cost of attendance.  Both are mixed use loans if they are not incurred solely to pay for qualified education expenses.  *See, e.g.*, *Creeger v. Creeger* (*In re Creeger*), No. 14-34053*, 2016 WL 3049972, at *13-14 (Bankr. N.D. Ohio May 20, 2016); Supplementary Information to Proposed Rules, 64 F.R. 3257, 3258 (January 21, 1999); Supplementary Information to Treasury Department Ruling 9125, ¶ 5 (Internal Revenue Bulletin: 2004-23, June 7, 2004); Instructions to IRS Form W-9S, Part # Request for Student's or Borrower's Taxpayer Identification Number and Certification. (Revised 12.2017) ("Do not sign the certification for a mixed use loan because such a loan is not used solely for qualified higher education expenses. However, you may sign the certification for a revolving line of credit or similar loan if you use the line of credit solely to pay for qualified higher education expenses.").

Firstmark's argument reflects a selective and inaccurate recitation of the I.R.C.'s interpretation of qualified educational loans. *See* 26 C.F.R. § 1.221-1(e)(4), Example 6, Mixed-Use Loans ("because Student J obtains the loan not solely to pay qualified higher education expenses, the *loan* is not a qualified education loan.") (emphasis added); IRS Publication 970, Tax Benefits for Education at 33 (January 17, 2020) ("if you refinance a qualified student loan for more than your original loan and you use the additional amount for any purpose other than qualified education expenses, you can't deduct *any* interest paid on the refinanced loan") (emphasis added); *see also* Supplementary Information to Treasury Department Ruling 9125, ¶ 5 (Internal Revenue Bulletin: 2004-23, June 7, 2004) ("Another requirement of a 'qualified education loan' is that the borrower obtain the loan 'solely' to pay higher education expenses. One commentator suggested that if a taxpayer refinances a qualified education loan and receives an amount in excess of the original qualified education loan, the taxpayer may take an interest deduction under § 221 for interest paid on the refinanced loan. The commentator is correct, but only if the taxpayer uses the excess amount *solely* to pay higher education expenses and satisfies all other requirements of a qualified education loan. Thus, if the taxpayer uses the excess amount for any other purpose, the refinanced loan is not 'solely' to pay higher education expenses, and *no* interest paid on the loan will be deductible.") (emphasis added).

Nothing in these regulations supports Firstmark's argument that loan documents are sufficient to make a loan nondischargeable if it does not otherwise come within the terms of § 523(a)(8).

## IV.    THE MOTION DOES NOT SEEK AN ADVISORY OPINION.

Quite simply, Plaintiff's Motion seeks a ruling declaring that (1) all loans held or serviced by Defendants that are not within the cost of attendance at a Title IV institution are not qualified

education loans and are, therefore dischargeable in bankruptcy; (2) that Defendants' arguments against dischargeability are without merit; (3) that Defendants are obligated to return to Plaintiff and the proposed class members all payments made on discharged debts. This is not a hypothetical question—the status of all of these loans is the central issue in this proceeding. Nor is it a request for an advisory opinion. Discovery in this case has revealed that there are thousands of loans held or serviced by Defendants that, on their face, either exceed the cost of attendance or were issued for attendance at a non-Title IV institution. *See* Supplemental Declaration of John DeBois, dated September 1, 2020, submitted herewith; *see also* Dkt. No. 252 ("Declaration of John DeBois"), filed in support of Plaintiff's Motion for Summary Judgment on July 13, 2020. This controversy is live and currently pending before this Court, and does not call for judgment on a "hypothetical basis, but for an adjudication of present right upon established facts." *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977).

An advisory opinion arises where the court's ruling would lack any impact on the behavior of the defendant toward the plaintiff. *College Standard Magazine v. Student Ass'n of State Univ. of New York at Albany*, 610 F.3d 33, 35 (2d Cir. 2010). Here, Plaintiff seeks a ruling that would declare the debts of Plaintiff and the proposed class dischargeable, declare that Plaintiff and the proposed class are entitled to restitution, and that would enjoin Defendants from continuing their illegal collection efforts. This ruling would have an immediate impact on Defendants' actions as to Plaintiff and the proposed class. *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*." (emphasis in original).

As this Court has already held, "there is nothing speculative about the relief that Ms. Golden seeks . . . [t]he debts have been incurred, the Discharge Order has been entered, and the collection efforts have been undertaken . . . the circumstances as alleged are immediate and real." *In re Golden*, 596 B.R. 239, 260 (Bankr. E.D.N.Y. 2019) (Stong, J.).

This case is no different than any other class case where the plaintiff seeks summary judgment as to defendants' liability and as to a form of relief. *See, e.g.*, *McNamee v. Nationstar Mortgage LLC*, No. 2:14-CV-1948, 2021 WL 201189 (S.D. Ohio Jan. 20, 2021) (plaintiff sought summary judgment that letters to debtors violated the FDCPA for the class of recipients); *American Council of Blind v. City of New York*, No. 18 Civ. 5792, 2020 WL 6151251 (S.D.N.Y. Oct. 20, 2020) (class of blind pedestrians moved for summary judgment as to liability that City's crossing signals violated the ADA); *Orellana v. One if By Land Restaurant LLC*, 2020 WL 5768433 (S.D.N.Y. Sep. 27, 2020) (class of non-exempt tipped employees moved for summary judgment that defendants violated labor laws and were liable for liquidated damages). On these types of motions, courts are properly making summary judgment determinations as to the class as a whole.

## V.    THE ABSENT LOAN OWNERS ARE NOT NECESSARY PARTIES.

Defendants again raise the same issue concerning absent loan owners as they did in their opposition to Plaintiff's Motion for a Preliminary Injunction. Yet again, Defendants fail to undertake a proper Rule 19 analysis or to otherwise articulate why full relief cannot be granted among the parties to this proceeding.

As an initial matter, as to Plaintiff Golden, Defendants concede that all necessary parties are before the court, and the court may grant both summary judgment and injunctive relief. Dkt. No. 306, at 16, 19.

As explained above, the creditor has the burden of proving that the loans are nondischargeable. *See* Dkt. No. 244 at 13. If a loan owner objects to a finding of dischargeability, that owner should have come forward during the initial bankruptcy proceeding. The absent loan owners have not done so. *See Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) ("[The defendants'] attempt to assert on behalf of the [absent party] its supposed concern about the dilution of its interest . . . falls outside the language of the rule. It is the absent party that must 'claim an interest.'"). In addition, Defendants bear the burden of proving that joinder of the absent loan owners is necessary. *E&T Skyline Constr., LLC v. Talisman*, No. 19-CV-08069, 2020 WL 6531108, at *7 (S.D.N.Y. July 30, 2020). This is a burden Defendants yet again fail to meet.

Moreover, the loan owners' continued absence from this case shows that they are not a necessary party. Rule 19 is not an invitation for absent parties to sleep on their rights. For that reason, when an absent party is aware of litigation in which it has a potential interest and fails to assert this interest, that failure weighs against finding that party necessary. *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 331 F.R.D. 427, 432–33 (W.D. Wash. 2019) ("Further, MHI is aware of this lawsuit and chose not to claim an interest. MHI's decision not to become involved in a lawsuit of which it is aware weighs against the court finding that it has a legally cognizable interest.") (internal page numbers and citations omitted); *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) ("Sterilization Systems was aware of this action and chose not to claim an interest. That being so, the district court did not err by holding that joinder was 'unnecessary.'"). As Plaintiff noted in her reply brief in support of her Motion for a Preliminary Injunction, there is no question that the absent owners are, and have been for several years, aware of the pendency of this litigation. *See* Dkt. No. 318 at 10. Their failure to assert their rights in this litigation weighs against finding that they are necessary parties under Rule 19.

Indeed, one such owner, Citibank, has long been on notice of this case and has continually fought to not be involved in it at all, even with regard to providing discovery. Significantly, Citibank makes the very point that Plaintiff is making here—the loan owners are not necessary parties under Rule 19 because the servicers of the loans who are violating the discharge injunction on their behalf can protect their interests. Throughout its January 22, 2021 letter to the Court, Citibank ████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Dkt. No. 364; *see also* Dkt. No. 644-1 (Ex. A) at ¶ 14 (████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████

There is no reason the Court cannot afford complete relief without requiring the joinder of all absent loan owners. With this Motion, Plaintiff and the proposed class seek a determination that loans either held or serviced by Defendants that exceeded the cost of attendance or were issued for attendance at a non-Title IV institution are dischargeable in bankruptcy, that all collection efforts should cease, and that Plaintiff and the class members are entitled to restitution. All of this relief can be granted with the current Defendants. A bankruptcy court does not need to bring every creditor into the courtroom in order to stop the illegal collection of a discharged debt, especially where the parties who are actually responsible for the illegal collection activities are already parties before the court. The Court can also award complete restitution of payments collected by Defendants on discharged loans without the need for any other party to be joined.

Firstmark and PHEAA's argument that any relief against them would be "hollow" is completely false. Firstmark and PHEAA, as servicers of the discharged loans, continue to take

actions that violate § 524 by attempting to collect on discharged debts.  To accept their argument would create an enormous loophole allowing debt collectors to escape liability simply because they do not own the loan.  Section 524 not only enjoins creditors from collecting on discharged debts but also those acting as their agents or assignees.  *In re Nassoko*, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009); *see also In re Lafferty*, 229 B.R. 707, 714-715 (Bankr. N.D. Ohio 1998) (rejecting servicer's attempt to escape liability by blaming collection efforts in violation of § 524 on debt owner, where it was clear that servicer has taken deliberate and illegal actions to collect on discharged debts).  By its plain terms, § 524 applies to "any act to collect a discharged debt."

Defendant PHEEA's argument that the Court cannot issue compete relief because the relief sought impacts the contractual rights of an absent party also misses the mark.  PHEAA cites cases that hold that a party to a contract is a necessary party in an action that determines the validity of the contract.  Dkt. No. 327 at 10-12.  This proceeding, however, does not challenge the validity of any contract.  Rather, it seeks a determination that the loans of Plaintiff and the proposed class have been discharged in bankruptcy.  It does not change the existence of the debt or the relationship of the parties to the debt—it clarifies the applicability of the discharge orders that already exist and affects only the personal liability and the right to collect.  *Haynes v. Chase Bank USA, N.A.* (*In re Haynes*), 2014 WL 3608891, at *7 (Bankr. S.D.N.Y. July 22, 2014).

Firstmark and PHEAA's argument that Rule 19 requires joinder of the absent owners because this case could potentially interfere with the service contracts between themselves and the loan owners is similarly misguided.  What happens to the Defendant servicers' contracts is actually irrelevant to the outcome of this case.  *Mastercard Int'l Inc. v. Visa Intern. Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006) ("We would be significantly broadening both Rule 19(a)(2)(i) and the principle discussed in *Crouse–Hinds* if we found that because the outcome of this case may

impact a separate contract involving a different party, that finding would transform the action into 'an action to set aside a lease or a contract.'"). The contracts between the loan owners and the servicers is not at issue. The fact that those contracts might become less valuable because the parties are finally held accountable for their roles in collecting on discharged debts, or that there may be contribution or indemnification claims among them are merely incidental issues and hardly compelling reasons to deny relief to Plaintiff and the class.

Rule 19(a)(1)(B)(ii) requires joinder of a party claiming an interest in the litigation when his absence would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." For the purpose of Rule 19, courts draw an important distinction between inconsistent obligations, which the Rule is concerned about, and inconsistent adjudications, which the Rule is not concerned about. *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010); Moore's Federal Practice ¶ 19.03 (3d ed. 1997). Inconsistent obligations occur when "a party is unable to comply with one court's order without breaching another court's order regarding the same incident." *Fed. Ins. Co.*, 758 F. Supp. 2d at 258; *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998). Inconsistent adjudications, "by contrast, occur when a defendant successfully defense a claim in one forum, yet loses on another claim arising from the same incident in another forum." *Delgado*, 139 F.3d at 3. The Defendant servicers fail to provide any example of how they would be left with inconsistent obligations as a result of the loan owners' absence. There is nothing in this litigation that would risk leaving the servicers unable to comply with another court's order due to the note holders' absence.

While it is clear that Defendants have not shown that any of the absent loan owners are necessary parties pursuant to Rule 19, even if the Court determines that the absent owners should

be joined, dismissal of this action is not appropriate.  Rather, at most, such a finding requires the joinder of the absent loan owners.

## VI.    RESTITUTION IS AVAILABLE TO PLAINTIFF AND THE CLASS.

### A.  Awarding Restitution is Not Predicated on a Finding of Contempt.

Defendants argue that all claims for restitution are fact-intensive and thus unsuitable for class treatment.  Dkt. No. 329 at 32.  Not only is this an inaccurate statement of the law, as applied to Plaintiff and the proposed class, it is entirely without merit.  Plaintiff and the proposed class are entitled to the return of all funds paid on discharged debts, including interest.[6]

Where a creditor receives funds under a mistaken or even good faith belief that the underlying debts were not discharged, that creditor has an obligation to return those funds when the contrary is established.  See *United Healthcare Workers v. Borsos* (*In re Borsos*), 544 B.R. 201, 205-206 (Bankr. E.D. Cal. 2016) (holding that creditor must restore funds garnished in violation of discharge injunction); *Griffin v. U.S.* (*In re Griffin*), 108 B.R. 717, 720 (Bankr. W.D. Ma. 1989) (holding that creditor was required to return funds garnished on discharged student debt in violation of § 524 even though issue was one of first impression and creditor would not be assessed punitive damages or attorney's fees); *Sucre v. MIC Leasing Corp.* (*In re Sucre*), 226 B.R. 340, 348 (Bankr. S.D.N.Y. 1998) ("upon learning of a bankruptcy filing, a creditor has an affirmative duty to return the debtor to the status quo position as of the time of the filing of the petition"); *see also* addition cases cited in Plaintiff's Motion for Partial Summary Judgment, Dkt. No. 244 at 39-41.  As the court reasoned in *Malone v. Norwest Financial California, Inc.*, 245

---

[6] The amount of restitution each class member is able to receive is an issue that should be left for determination after the class is certified and all common issues of fact and law have been resolved.

B.R. 389 (Bankr. E.D. Cal. 2000), there is no question that wrongly obtained funds in violation of

§ 524 must be returned to the debtor:

> It seems plain that no one should be permitted to retain funds obtained in violation of law. Accordingly, a creditor ought not to be permitted to retain funds obtained in violation of § 524. It thus follows that a judgment of disgorgement is in appropriate order, and accordingly a cause of action seeking such a judgment lies.

*Id.* at 395.

Awarding restitution to the class is justified by basic principles of equity, and does not first

require the Court to find Defendants in contempt.  Defendants do not cite a single case in support

of their argument that it does.  According to the U.S. Supreme Court, restitution, *i.e.*, requiring the

wrongdoer to give up its wrongfully obtained profits, by whatever name it is called, "has been a

mainstay of equity courts."  *Liu v. Sec. and Exch. Comm'n*, 140 S. Ct. 1936, 1943 (2020); *see also*

*Chowdhury v. Hansmeier*, 597 B.R. 89, 99 (D. Minn. 2019) (holding that parties that collect funds

after judgment must return those funds if the judgment is later reversed on appeal).  Nor does the

fact that a motion for contempt is the proper vehicle to challenge a creditor's attempt to collect on

a discharged debt in violation of § 524 mean that the Court is limited only to contempt relief.  As

this Court has already held, *in this case*, the Court can also award declaratory relief.  *In re Golden*,

596 B.R. at 259-260.

Defendants cannot avoid restitution by relying on *Taggart v. Lorenzen*, 139 S. Ct. 1795

(2019).  *Taggart* deals with the question of when a party may be subject to contempt for violation

of a discharge order. It does not address at all the question of whether funds received on a

discharged debt must be returned. Indeed, the respondent creditor in *Taggart* expressly

acknowledged in its brief before the Supreme Court that the question of whether the creditor was

required to return improperly obtained funds was separate from the issue of whether a creditor

should be held in contempt.  *Taggart v. Lorenzen*, No. 18-489, Brief for Respondents at 29-30.

("This does not mean that a debtor has no remedy for violation of a discharge order. A court may order the creditor to comply with the discharge order (by, for example, returning property the creditor has collected)."). The case law is clear that where a court order is violated the court can order relief to make a party whole without making a finding of contempt. *In Re Oliver*, 499 B.R. 617, 626 (Bankr. S.D. Ind. 2013) (holding that where school violated the discharge injunction by withholding former student's transcript to coerce payment of tuition that was not protected by § 523(a)(8), school is ordered to issue the transcript, even though "the Court does not believe Ball State should be punished for proceeding in good faith."); *see also Harrison Baking Co. v. Bakery and Confectionary Workers Local No. 3*, 777 F. Supp. 306, 311 (S.D.N.Y. 1991) (ordering reinstatement and back pay where party violated court order but finding that the party should not be held in contempt).

There is no question that restitution is available to return the wrongfully obtained funds to their rightful owners.

**B.  Any Payments Made by Plaintiff and the Class Were Not "Voluntary."**

Firstmark attempts to argue that any payments Ms. Golden made following her discharge in bankruptcy were "voluntary."  Dkt. No. 329 at 31.  The payment of a discharged debt cannot be voluntary unless it is entirely free from creditor influence or inducement.  *In re Nassoko*, 405 B.R. 515, 524 (Bankr. S.D.N.Y. 2009); *Watkins v. Guardian Loan of Massapequa* (*In re Watkins*), 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999) (holding that an agreement to repay a pre-petition debt as a condition for obtaining further credit is not by any "stretch of the imagination" voluntary); *Venture Bank v. Lapides*, 800 F.3d 442, 447-48 (8th Cir. 2015) (stating that in order for a payment to be voluntary, it must be entirely free from creditor influence or inducement).  Defendants' argument that these payments could somehow be voluntary is wrong as a matter of law.

Ms. Golden testified that she contacted PHEAA more than once to attempt to have her aunt removed as a co-signer of the loan in advance of filing for bankruptcy because she feared the bankruptcy filing would negatively impact her aunt's credit.  Carpinello Reply Decl. at ¶ 11, Ex. J ("Deposition Transcript of Tashanna Golden") at 206:05-24; 208:03-12.  This includes making a formal application to PHEAA.  *Id.* at 210:23-211:03.  PHEAA denied the request.  *Id.* at 212:05-12.  PHEAA continued to send Ms. Golden collection notices after her discharge in bankruptcy.  *Id.* at 227-228.  Ms. Golden felt like she had no choice but to pay make payments.  *Id.*; *Id.* at 241:09-15.  This conduct in no way can be construed as voluntary, and as the Court has already ruled, this inquiry has no bearing on whether Ms. Golden is entitled to restitution.  As the Court reasoned during the parties' August 27 pre-trial conference, testimony as to whether some aspect of Ms. Golden's relationship with her co-signer, her aunt, was a motivating factor for her to make post-discharge payments was irrelevant to whether or not she was in or out of the class, and whether she was entitled to restitution:

> The COURT: But there would still be relief under what I believe is the first count for declaratory judgment [i]f not nondischargeability or discharge by operation of law.  And it seems to me that there's still relief available, so I'm not so sure that I agree that such testimony would put someone in or out of the class.  Sure, if you haven't made a payment, you're not entitled to disgorgement, but I'm not sure… (audio interference).

Carpinello Reply Decl. ¶ 12, Ex. K ("Aug. 27, 2020 Tr.") at 106:17-25.

As to the Citi bar loan, Ms. Golden continued to make payments on that loan after discharge because she continued to receive communications from Firstmark stating that the loan was due and owing.  Golden Dep. at 280:09:281:04.  She was concerned about going into delinquency for nonpayment and viewed paying the bill as the only option to prevent that.  *Id.*  Again, these payments cannot, by any stretch of the word, be considered voluntary.

Defendants specifically advised Plaintiff and the proposed class members that their debts were not discharged in bankruptcy; they threatened to adversely affect borrowers' credit rating by reporting any delinquency in payments; and they aggressively attempted to collect payments on the discharged loans.  Any resulting payments cannot be said to be free from creditor influence.

There is no question of fact as to the class.  When a person whose debts have been discharged in bankruptcy receives a notice from Defendants that their debt is not discharged, that they have an obligation to make the payment, that their payment is subject to collection, and that they will receive a derogatory notation on their credit report if they do not make a payment, then any payment subsequently made cannot, under any sense of the word, be "voluntary."

Defendants' unsupported argument that restitution is unavailable because some class members might be guilty of laches is easily dismissed.  Dkt. No. 329 at 33.  In order to establish laches, a defendant must show unreasonable delay and prejudice.  Defendants cannot and do not even attempt to show either.  First, Defendants induced inaction by Plaintiff and the class by affirmatively deceiving them into believing that their debts were not discharged in bankruptcy, and threatening them if they did not make payments.  Second, Defendants completely fail to allege how they were prejudiced by any delay.  Accordingly, this defense is without merit.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that her motion for partial summary judgment be granted.

Dated: February 5, 2021                    Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:     */s/ George F. Carpinello*
George F. Carpinello
Adam R. Shaw

30

Jenna C. Smith
30 South Pearl Street
Albany, NY  12207

**SMITH LAW GROUP**
Austin C. Smith, Esq.
99 Wall Street #426
New York, NY  10005

**JONES SWANSON HUDDELL &
DASCHBACH LLC**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua B. Kons (Ct. Bar No. 29159)
50 Albany Turnpike, Suite 4024
Canton, Connecticut 06019

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I, George F. Carpinello, hereby certify that on the 5th day of February, 2021, I served the

forgoing document on all counsel of record via ECF and electronic mail.

*/s/ George F. Carpinello*
George F. Carpinello