# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Tashanna B. Golden f/k/a Tashanna B. Pearson,<br><br>Debtor. | **Chapter 7**<br><br>**Case No. 16-40809 (ESS)** |
| Tashanna B. Golden f/k/a Tashanna B. Pearson on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>National Collegiate Student Loan Trust 2005-3, National Collegiate Student Loan Trust 2006-4, GS2 2016-A, Pennsylvania Higher Education Assistance Agency d/b/a American Education Services, Firstmark Services,<br><br>Defendants. | **Adv. Proc. No. 17-1005 (ESS)** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE
## EXPERT TESTIMONY OF MARK KANTROWITZ

**McDERMOTT WILL & EMERY**
*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

**LOCKE LORD LLP**
*Attorneys for Defendants National Collegiate Student Loan Trust 2006-4 and Goal Structured Solutions Trust 2016-A*

**PERRY, GUTHERY, HAASE & GESSFORD, P.C., L.L.O.**
*Attorneys for Defendant Nelnet Servicing, LLC, d/b/a Firstmark Services*

**THE SENIAWSKI LAW FIRM PLLC**
*Attorneys for Defendant Nelnet Servicing, LLC, d/b/a Firstmark Services*

# Table of Contents

Table of Authorities .................................................................................................................... ii

Preliminary Statement................................................................................................................ 1

Argument ................................................................................................................................... 1

    Mr. Kantrowitz's Report Should Be Excluded  Because
    It Proffers Impermissible Legal Conclusions. ................................................................... 1

Conclusion ................................................................................................................................. 8

Table of Authorities

**CASES**

*246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*,
    09-CV-889 (NGG) (JMA),
    2011 WL 13254283 (E.D.N.Y. Apr. 1, 2011) ...................................................................... 3, 4

*Breezy Point Co-op., Inc. v. Cigna Prop. and Cas. Co.*,
    868 F.Supp. 33 (E.D.N.Y. 1994) ............................................................................................ 2

*CCM Rochester, Inc. v. Federated Investors, Inc.*,
    14-CV-3600 (VEC),
    2016 WL 11617452 (S.D.N.Y. Aug. 31, 2016)...................................................................... 7

*Daubert v. Merrell Dow Pharm., Inc*.,
    509 U.S. 579 (1993) ................................................................................................................ 1

*Ebbert v. Nassau Cty.*,
    No. CV 05-5445 FB AKT,
    2008 WL 4443238 (E.D.N.Y. Sept. 26, 2008) ....................................................................... 7

*Hygh v. Jacobs*,
    961 F.2d 359 (2d Cir.1992) ................................................................................................ 2, 3

*In re Initial Pub. Offering Sec. Litig.*,
    174 F. Supp. 2d 61 (S.D.N.Y. 2001) .............................................................................. 2, 3, 6

*In re Rezulin Prod. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................................... 2

*Kumho Tire. Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................................................ 1

*Marx & Co., Inc. v. Diners' Club, Inc*.,
    550 F.2d 505 (2d Cir. 1977) ................................................................................................... 2

*Music Sales Corp. v. Morris*,
    73 F. Supp. 2d 364 (S.D.N.Y. 1999) ...................................................................................... 3

*Pearlman v. Cablevision Sys. Corp.*,
    10-CV-4992(JS)(GRB),
    2015 WL 8481879 (E.D.N.Y. Dec. 8, 2015) ......................................................................... 3

*Rush Industries, Inc. v. Garnier LLC*,
    309 Fed. App'x 431 (2d Cir. 2009) ........................................................................................ 7

*Santa Fe Industries v. Green*,
    430 U.S. 462 (1977).................................................................................................................. 6

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991) ................................................................................................. 2

Table of Authorities

*United States v. Duncan*,
   42 F.3d 97 (2d Cir. 1994) .................................................................................................. 2

*United States v. Feliciano*,
   223 F.3d 102 (2d. Cir. 2000) .............................................................................................. 2

*United States v. Scop*,
   846 F.2d 135 (2d Cir. 1988) ....................................................................................... 2, 3, 6, 7

*Wrubel v. John Hancock Life Ins. Co.*,
   11 Civ. 1873(AMD)(LB),
   2016 WL 11430774 (E.D.N.Y. Mar. 11, 2016)..................................................................... 7

**OTHER AUTHORITIES**

Thomas Baker, *The Impropriety of Expert Witness Testimony on the Law*,
   40 U. KAN. L. REV. 325 (1992)........................................................................................... 2

**RULES**

Fed. R. Evid. 702 ............................................................................................................................ 1

Defendants National Collegiate Student Loan Trust 2006-4, Goal Structured Solutions Trust 2016-A, Pennsylvania Higher Education Assistance Agency and Nelnet Servicing, LLC, d/b/a Firstmark Services (collectively the "Defendants") hereby move to exclude the "Expert Report by Mark Kantrowitz" which Plaintiff submitted in support of her partial summary judgment motion.

## PRELIMINARY STATEMENT

In support of her motion for partial summary judgment, Plaintiff has submitted the "Expert Report by Mark Kantrowitz." (Dkt. No. 372-1). This report violates Rule of Evidence 702. Specifically, the core of Mr. Kantrowitz's report purports to interpret the language of several statutes and then makes a series of legal conclusions about whether or not the loans at issue in this case comply with Mr. Kantrowitz's personal reading and interpretation of those statutes. The report does not even attempt to hide this impermissible effort to tell the Court what the law is and how to apply it. It is well settled, however, that this is not a proper area for expert testimony and an expert report that does this must be excluded. Therefore, this Court should strike the report and not give it any consideration in ruling on plaintiff's motion for partial summary motion.

## ARGUMENT

### MR. KANTROWITZ'S REPORT SHOULD BE EXCLUDED BECAUSE IT PROFFERS IMPERMISSIBLE LEGAL CONCLUSIONS.

Not just anyone can submit an expert opinion about any subject. Expert testimony is permitted only from witnesses who have specialized, relevant knowledge that will assist the finder of fact. *See* Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire. Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). That specialized knowledge must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (a). At the same time, the help provided by an expert cannot go too far; expert testimony "must be carefully

circumscribed to assure that the expert does not usurp … the role of the trial judge as to the applicable law or … applying that law to the facts before it." *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (citing *United States v. Scop*, 846 F.2d 135, 139-40 (2d Cir. 1988), mod. on other grounds, 856 F.2d 5 (2d Cir. 1988)); *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 510–11 (2d Cir. 1977)); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 545 (S.D.N.Y. 2004).

Plaintiff has submitted a report from Mark Kantrowitz that does not meet these requirements. Mr. Kantrowitz's report instead make a series of legal conclusions about what certain statutes mean, and then testifies that certain categories of student loans are dischargeable based on his conclusions. Mr. Kantrowitz's unsupported legal conclusions provide no assistance to the Court. Instead, they usurp the role of the Court.

Mr. Kantrowitz's report must be excluded because experts are not permitted to draw legal conclusions or testify about whether or not a defendant has violated statutory provisions. *See*, *e.g.*, *Breezy Point Co-op., Inc. v. Cigna Prop. and Cas. Co.*, 868 F.Supp. 33, 36 (E.D.N.Y. 1994). Nor may an expert testify about what the law means or requires. *See Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir.1992) (The law of this Circuit requires the "exclusion of expert testimony that expresses a legal conclusion."). An expert opinion that does any of this is inadmissible under Rule 702(a). *Id.*; *United States v. Feliciano*, 223 F.3d 102, 121 (2d. Cir. 2000); *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). This "rule prohibiting experts from providing their legal opinions or conclusions is 'so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001) (quoting Thomas Baker, *The Impropriety of Expert Witness Testimony on the Law*, 40 U. KAN. L. REV. 325, 352 (1992)).

An opinion that consists of legal analysis and conclusions is "a would-be brief

2

masquerading as an expert opinion" and must be excluded. *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 09-CV-889 (NGG) (JMA), 2011 WL 13254283, at *6 (E.D.N.Y. Apr. 1, 2011). An opinion that attempts to "communicat[e] a legal standard—explicit or implicit," even if it stops short of "adopting outright a legal conclusion," falls within the same category. *Hygh*, 961 F.2d at 364; *Music Sales Corp. v. Morris*, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999) ("[T]estimony of an expert on matters of domestic law is inadmissible for *any* purpose.")(emphasis added). They both encroach upon and usurp the Court's exclusive duty to decide the law. *Scop*, 846 F.2d at 138-40; *246 Sears Rd. Realty Corp.*, 2011 WL 13254283, at *6; *Pearlman v. Cablevision Sys. Corp.*, 10-CV-4992(JS)(GRB), 2015 WL 8481879, at *8-10 (E.D.N.Y. Dec. 8, 2015) (striking expert report for "impermissibly cross[ing] the boundary from opinion to legal conclusion").

Even though the rules are clear, Plaintiff is doing precisely what the Rules of Evidence prohibit. Mr. Kantrowitz, who is not a lawyer,[1] purports to interpret the meanings of a series of statutes scattered throughout the Bankruptcy Code, the Higher Education Act, and the Internal Revenue Code (along with the corresponding regulatory schemes). He then uses these interpretations as the basis for legal conclusions that go to the heart of the case, *i.e.*: what expenses are properly included within a student's cost of attendance (Dkt. No. 372-1, Expert Report by Mark Kantrowitz, pp. 2-3, 9-11, 14-15);[2] whether school certification creates a legal safe harbor against borrowers' claims that loan proceeds were not used for "qualified higher education expenses" (*Id.*, pp. 7-8); the legal significance of borrowers' self-certifications regarding the use of student loan proceeds (*Id.*, pp. 13-14); and the legally proper way to determine the difference between a

---

[1] If Mr. Kantrowitz were a lawyer, his attempts to shoehorn legal conclusions into an "expert" report would be no less objectionable. *See In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69 (excluding purported expert declaration submitted by two law professors and explaining that they "could have submitted an amicus brief arguing how the law *should* be interpreted, although the time for such a submission has passed")(emphasis in original).

[2] Mr. Kantrowitz defines "cost of attendance" based on nothing more than his own interpretation of the language of the Higher Education Act, 20 U.S.C. 1087*ll*. (Dkt. No. 372-1, p. 2).

3

student's "cost of attendance" and "qualified higher education expenses." (*Id.*, pp. 2-6). Mr. Kantrowitz's report is a textbook example of a legal brief masquerading as an expert opinion. *246 Sears Rd. Realty Corp.*, 2011 WL 13254283, at *6.

The report is a litany of statutory quotation, interpretation and legal conclusion. For example, Mr. Kantrowitz concludes:

- "The definition of qualified higher expenses at 26 USC 221(d)(2) is in terms of the cost of attendance as defined at 20 USC 1087*ll* as of August 4, 1997." (Dkt. No. 372-1, Expert Report by Mark Kantrowitz, p. 4).

- "Colleges and universities are required to report their cost of attendance to the Integrated Postsecondary Education Data System (IPEDS) as part of the program participation agreement. This is mandated by 20 USC 1094(a)(5), (7) and (17), 20 USC 1092, 34 CFR 668.14(b)(19) and 34 CFR 668.43(a)(1). In particular, 20 USC 1092(a)(1)(E) mandates consumer information disclosures to students concerning 'the cost of attending the institution…'" (*Id.*, p. 2).

- "[T]he definition of qualified higher education expenses for the purpose of determining whether a loan is a qualified education loan refers to the statutory definition of cost of attendance …. The definition of qualified higher education expenses does not refer to the authority of college financial aid administrators to make adjustments to the cost of attendance." (*Id.*, p. 15).

- "26 USC 221(d)(1)(C) limits qualified education loans to 'indebtedness incurred by the taxpayer solely to pay qualified higher education expenses ... which are attributable to education furnished during a period during which the recipient was an eligible student.'" (*Id.*, p. 11).

- "[T]hese expenses are not qualified higher education expenses within the scope of the definition at 26 USC 221(d)(2)." (*Id.*).

- "[I]t is private student loan lenders – not college financial aid administrators – that bear the responsibility of determining whether a loan is a qualified education loan [under section 523(a)(8)]." (*Id.*, p. 15).

- "An earlier version of the legislation defined qualified higher education expenses for the student loan interest deduction in terms of 26 USC 529(e)(3), but this was subsequently replaced with the reference to 20 USC 1087ll in the enrolled legislation. Note that the Taxpayer Relief Act of 1997 also changed the definition of qualified higher education expenses in 529(e)(3), in Section 211 of the law. This not only demonstrates that the

    definition of qualified higher education expenses was a specific focus of the law, but also that the legislators who drafted the language for the student loan interest deduction were keen on excluding any changes to the definition that were then under consideration." (*Id.*, p. 11).

- "[S]chool certification is not established as a safe harbor in law or regulation with regard to the determination of whether a loan is a qualified education loan [under section 523(a)(8)]." (*Id.*, p. 15).

- "A bar study loan cannot be made a qualified education loan by declaring it to be a qualified education loan. It must satisfy the statutory requirements, which the CitiAssist Bar Loan does not. If a dog quacks like a duck, it is still a dog." (*Id.*, p. 12).

- "[T]hese expenses . . . were not 'attributable to education furnished during a period during which the recipient was an eligible student' as required by 26 USC 221(d)(1)(C)." (*Id.*).

- "[T]he BARBRI bar preparation course is not offered by 'an eligible educational institution' as required by 26 USC 221(d)(2)." (*Id.*, p. 13).

- "[T]he statutory definition as enacted in 1997 … excludes the cost of professional licensing or certification." (*Id.*, p. 16).

- "The highlighted language [of 26 CFR 1.6050S-2(e)(2)] limits the discussion of a qualified education loan certification to the purposes of section 6050S, that is, deductibility from income for tax purposes." (*Id.*, p. 14).

- "The purpose of the reduction in 26 USC 221(d)(2) is to prevent double-dipping for tax purposes, so that the taxpayer cannot receive two or more education tax benefits based on the same qualified education expenses. Such coordination restrictions are common throughout the Internal Revenue Code." (*Id.*).

- "[T]he cited regulations limit the determination of whether a loan is a qualified education loans [sic] to IRS reporting requirements." (*Id.*, p. 13).

- "[T]he cited regulation specifies when a loan *is not* a qualified education loan and does not affirmatively specify when a loan *is* a qualified education loan." (*Id.*, p. 14)(emphasis in original).

Each one of these legal conclusions bears upon the ultimate question of whether or not various categories of student loans are non-dischargeable "qualified education loans."

    Mr. Kantrowitz is playing the role of plaintiff's counsel, arguing the proper legal

5

interpretation of relevant statutes and regulations and applying his interpretation of the law to the facts in this case. He is usurping the role of the Court by answering legal questions that are solely within the province of this Court. *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 69-70 ("In our adversarial system, lawyers make arguments, judges write legal opinions—and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court."). This is improper and his report should be excluded.

The Second Circuit's decision in *Scop* requires it. There, the Circuit Court reversed a criminal conviction because the trial court improperly allowed expert testimony that contained legal conclusions. *Scop*, 846 F.2d at 136. The expert had opined that defendants engaged in a "manipulative and fraudulent scheme" within the meaning of federal securities laws. *Id.* at 138. This was a "legal conclusion" because "'[m]anipulation,' 'scheme to defraud,' and 'fraud' are not self-defining terms" but are instead terms subject to judicial interpretation. *Id.* at 140. By labelling defendants' activity manipulative, fraudulent or a scheme, the expert was drawing an improper legal conclusion. A conclusion couched in statutory language to reach a conclusion that is dispositive of a legal issue is not permitted in this circuit. *Id.* at 142.

While examining the term "manipulation" the Second Circuit supported its reasoning by citing the Supreme Court's statement that "manipulation is virtually a term of art in the securities law." *Id.* (citing *Santa Fe Industries v. Green*, 430 U.S. 462, 467-77 (1977)). Accordingly, and particularly germane to this case, *Scop* means that testimony interpreting a legal term of art is improper and should be excluded.[3]

---

[3] The Second Circuit left open a small window for permissible testimony that would not violate the prohibition against legal opinions. Specifically, the court stated: "Had Whitten merely testified that controlled buying and selling of the kind alleged here can create artificial price levels to lure outside investors, no sustainable objection could have been made. Instead, however, Whitten made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations concerning 'manipulation'

Mr. Kantrowitz's report falls into the very same box that the Second Circuit ruled was improper. Mr. Kantrowitz not only persistently testifies as to what is permissible under the pertinent statutes and regulations, and then opines that there was a failure to comply with or act within those laws, but he acknowledges that he is opining on legal terms of art. Section II of Mr. Kantrowitz's report is entitled "Cost of Attendance Is a Term of Art." (Dkt. No. 372-1, Expert Report of Mark Kantrowitz, p. 2). The report spends five pages – about one third of its substance – opining on what the term of art "cost of attendance" means based on Mr. Kantrowitz's readings of statutes. It then makes a series of legal conclusions based on those readings. (*Id.*, pp. 2-6). There is no question his report must be excluded because of this. *See Scop*, 846 F.2d at 142; *Rush Industries, Inc. v. Garnier LLC*, 309 Fed. App'x 431, 432-33 (2d Cir. 2009) (excluding expert opinion comprised of discussion and application of legal standards from consideration on motion for summary judgment); *Ebbert v. Nassau Cty.*, No. CV 05-5445 FB AKT, 2008 WL 4443238, at *12 (E.D.N.Y. Sept. 26, 2008).

Finally, even if they were otherwise permitted, Mr. Kantrowitz's opinions are not helpful to this adversary proceeding. To be admissible under Rule 702, the expert's specialized knowledge must assist in the understanding of the evidence in the particular case. *CCM Rochester, Inc. v. Federated Investors, Inc.*, 14-CV-3600 (VEC), 2016 WL 11617452, at *7 (S.D.N.Y. Aug. 31, 2016); *Wrubel v. John Hancock Life Ins. Co.*, 11 Civ. 1873(AMD)(LB), 2016 WL 11430774 at *3 (E.D.N.Y. Mar. 11, 2016) (excluding proffered expert testimony because it will not help the trier in deciding issues). Mr. Kantrowitz admits that he is doing little more than simply interpreting terms that are already "expressly defined" in relevant statutes, such as "cost of attendance," "qualified higher education expenses" and "qualified education loans." The Court can and must

---

and 'fraud.'" *Scop*, 846 F.2d at 140. Mr. Kantrowitz does not respect that limitation, but instead consistently gives his opinion as to whether there has been compliance with the law. *See* pages 4-5, *supra*.

interpret these statutes for itself.[4] Mr. Kantrowitz cannot usurp that function from the Court, no matter what expertise he purports to possess.

## CONCLUSION

For the foregoing reasons, this Court should exclude the report of Mark Kantrowitz from these proceedings.

Dated: March 8, 2021

| **McDERMOTT WILL & EMERY** | **LOCKE LORD LLP** |
|---|---|
| By: */s/ H. Peter Haveles, Jr.*<br>H. Peter Haveles, Jr.<br>340 Madison Avenue<br>New York, New York 10173<br>(212) 547-5650<br>phaveles@mwe.com<br><br>*Attorneys for Defendant*<br>*Pennsylvania Higher Education*<br>*Assistance Agency* | By: */s/ Gregory T. Casamento*<br>Gregory T. Casamento<br>R. James DeRose, III<br>Brookfield Place<br>200 Vesey Street, 20th Floor<br>New York, New York 10281<br>(212) 415-8600<br>gcasamento@lockelord.com<br>rderose@lockelord.com<br><br>J. Matthew Goodin<br>111 South Wacker Drive, Suite 4100<br>Chicago, Illinois 60606<br>(312) 443-0700<br>jmgoodin@lockelord.com<br><br>*Attorneys for Defendants National Collegiate Student Loan Trust 2006-4 and Goal Structured Solutions Trust 2016-A* |

---

[4] Mr. Kantrowitz's legal conclusions are also logically dubious. There is no dispute that room and board is a component of cost of attendance, but Mr. Kantrowitz states that in determining cost of attendance there are only "three room and board options (On Campus, With Parent, Off Campus)." (Dkt. 372-1, p. 4). In fact, Mr. Kantrowitz's conclusion elides consideration of "board." Elaine Varas, Senior University Director of Financial Aid at the University of Pennsylvania, who testified on Penn's behalf subject to subpoena, stated that there is a level of variability between Penn's meal plans up to "8 or 9,000 [dollars] depending on if [a student goes] for the swipes versus the full meal plan." (Dkt. No. 359, Ex. A, Excerpts of Deposition Testimony of Elaine Varas, 41:21-42:13). This variability means that there are more than three different "room and board" options. Even if there were only two choices of meal plans at Penn – "swipes" or "full meal plan" – that would mean there are at least six room and board options.

8

By: **PERRY, GUTHERY, HAASE & GESSFORD, P.C., L.L.O.**

*/s/ Charles F. Kaplan*

Charles F. Kaplan, #25779
233 South 13th Street, Suite 1400
Lincoln, Nebraska 68508
(402) 476-9200
ckaplan@perrylawfirm.com

**THE SENIAWSKI LAW FIRM PLLC**
Barbara L. Seniawski
1460 Broadway FL 4
New York, New York 10036
(212) 595-4536
barbara@seniawskilaw.com

*Attorneys for Defendant Nelnet Servicing, LLC, d/b/a Firstmark Services*

9