UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>Debtor, | Chapter 7<br><br>Case No. 16-40809 (ESS) |
| Tashanna B. Golden<br>*fka* Tashanna B. Pearson on behalf of herself<br>and all others similary situated,<br><br>Plaintiff,<br><br>v.<br><br>Firstmark Services LLC, GS2 2016-A (GS2), National<br>Collegiate Student Loan Trust 2006-4 (NCT 2006),<br>Pennsylvania Higher Assistance Agency, d/b/a<br>American Education Services,<br><br>Defendants. | Adv. Pro. No. 1-17-01005(ESS) |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR CLASS CERTIFICATION

Plaintiff submits this Supplemental Memorandum of Law in Further Support of her Motion for Class Certification and in response to Defendants' Supplemental Memorandum of Law filed on October 26, 2021 (Dkt. No. 438), relating to the Reply Report of Mark Kantrowitz dated September 1, 2021 (Dkt. No. 420) ("Reply Report").

## PRELIMINARY STATEMENT

Mr. Kantrowitz's Reply reiterates two fundamental points, neither of which are rebutted in Defendants' supplemental brief. *First*, Defendants and their lenders had available at the time they made the loans numerous sources to determine whether the loans were within the cost of

attendance. They could have consulted the relevant school; they could have consulted IPEDS; they could have consulted the credit reports of the borrowers; and they could have easily determined whether the school the person was attending was, in fact, a Title IV school. Defendants have admitted that several lenders, in fact, undertook this due diligence before issuing loans, but they also admit that several, including Bank One, the originator of Ms. Golden's NCT loan, did not. The fact that Defendants and their lenders chose not to obtain this information at the time they made the loan is not a basis to deny class certification. Under well-established case law previously cited by Plaintiff, a defendant cannot defeat class certification because of its own failure to obtain the relevant information or maintain adequate records. *See* Plaintiff's Reply Brief in Support of her Motion for Class Certification (Dkt. No. 418) at 21-25. Moreover, a lender or servicer that does not wish to violate § 524 needs to make its own determination that its loan is a qualified education loan before it attempts to collect on the loan after discharge.

*Second*, Mr. Kantrowitz points out that, even now, it is possible for Defendants to determine whether the loans were qualified education loans by obtaining information from the schools themselves, from the National Student Loan Data System "NSLDS", or from IPEDS. The simple truth is that a student's cost of attendance and a school's Title IV status are known and knowable facts. But rather than find those facts, Defendants have chosen to treat their loans as nondischargeable even though they admit that they do not know which of their loans are, in fact, qualified education loans.

Finally, Defendants use their supplemental brief to file what is, in effect, a sur-sur reply (their fourth brief) on their motion to strike the earlier Kantrowitz report on the ground that Mr. Kantrowitz should not be opining on issues of law. Mr. Kantrowitz's Reply Report amply demonstrates that his opinion is based on his experience and intimate knowledge of the college

financial aid industry and his citation to the relevant statutes merely provides the necessary context

for his opinion.  Recitation of a statute is not rendering a legal opinion.

## ARGUMENT

I. **NOTHING IN DEFENDANTS' DEPOSITION OF MR. KANTROWITZ IS INCONSISTENT WITH HIS REPLY REPORT**

Nothing in Defendants' deposition or their brief addresses the fundamental points made in

the Kantrowitz Reply Report, namely, that:

- Whether or not a student attended a Title IV institution can easily be determined by federal government databases;

- Both private and federal loans are routinely reported to the credit reporting agencies so Defendants could have determined what other private loans students received prior to making their loans;

- NSLDS is a repository for all federal loans obtained by every student in the United States.  Defendants can use this repository now to help determine if the loans were qualified education loans, either through subpoena or by asking class members to consent to access their individual files.

- At the time they made the loans (and even now), Defendants and their lenders could have consulted with the individual school to learn the student's cost of attendance and other scholarships, grants and loans.  Even if Defendants are correct (and they are not) that the numbers the schools are required by law to report to IPEDS is not an accurate statement of cost of attendance, the applicable schools have all the necessary records by which Defendants could have determined tuition, room, board, required fees and all scholarships, grants and loans reported to and approved by the school.

- All of these are objective facts and do not require either testimony or cross examination.

Unable to attack these fundamental points, Defendants attempt to create purported

discrepancies and inconsistencies in Mr. Kantrowitz's testimony.  These purported inconsistencies

are all distortions of Mr. Kantrowitz's consistent, unrebutted opinions.  For example, Defendants

argue that "[w]hen confronted with the web page showing the 2006-2007 student budget published

by the University of Pennsylvania Law School for law students, the only item that Mr. Kantrowitz

disputed was the allowance of health insurance." Defs' Br. at 5. This a blatant misstatement of his testimony. Mr. Kantrowitz merely gave, as an example, the item of health insurance as being a cost that is not included in cost of attendance. Nowhere did he suggest that this was the only such cost. *See* Kantrowitz Dep. at 573:19-577:22.[1] In fact, as Mr. Kantrowitz was attempting to explain, he would have had to do further analysis to determine what other items listed in the webpage would not be included in cost of attendance. *Id.* at 575:16-577:15. He was not allowed to do so because he was cut off by Mr. Casamento. (Casamento: "I asked you if that was correct or not and you said it was, so we're done." *Id.* at 577:20-22). In his earlier report, Mr. Kantrowitz did a full comparison of the costs set forth in the Penn Law web page to show that many of those costs, if not required by the school, would not be considered to be a cost within the cost of attendance. *See* Kantrowitz Report of February 2, 2021 (Dkt. No. 372) at 2-5.

In any event, Defendants conceal the more important fact that, whichever number is used for Penn Law's cost of attendance, the Bank One/NCT loan to Ms. Golden clearly exceeded that cost of attendance. The Bank One/NCT loan of $7,103.00 exceeded even the larger number relied upon by the Defendants less, other scholarships, loans and grants received by Ms. Golden. Mr. Kantrowitz, in his earlier report, makes this important point which Defendants do not and cannot dispute:

> This loan exceeded the cost of attendance after subtracting scholarships, grants and other loans, and therefore could not have been borrowed solely to pay for qualified higher education expenses. Accordingly, it is not a qualified education loan. The lender could have consulted the college's financial aid office to determine whether it exceeded the cost of attendance, minus the aid, but did not. Although school certification is not a legal safe harbor, it would have provided the lender with some comfort as to whether the loan is a qualified education loan. With regard to the Bank One Loan, the lender would have learned through school certification that

---

[1] Defendants cite liberally from the deposition transcript and certain exhibits but fail to provide them to the Court. The transcript of Mr. Kantrowitz's October 12, 2021 supplemental deposition and exhibits 19 and 20, which Defendants cite to, are attached hereto as Appendix A.

their loan did not satisfy the requirements to be considered a qualified education loan.

Kantrowitz February 2, 2021 Report (Dkt. No. 372) at 5.

Indeed, Mr. Kantrowitz goes on to point out that Elaine Varas, the University Director of Financial Aid at the University of Pennsylvania, confirmed that she did not even consider a direct-to-consumer loan, such as NCT's, to be an educational loan at all. Rather, it is merely just a private loan. *Id*. at 5.

Defendants also argue that Mr. Kantrowitz conceded that schools have significant leeway to adjust cost of attendance for different cohorts of students. Defs' Br. at 5. But the testimony that Defendants cite was not in reference to determining whether a loan was a qualified loan, but rather, the process by which schools determine whether a student is eligible for federal aid. As is clear from the transcript, Defendants' counsel was asking Mr. Kantrowitz about the testimony of Ms. Varas, the financial aid administrator from Penn, who admitted that her analysis was simply to determine a student's eligibility for federal aid, not whether any particular loan was a qualified education loan. Mr. Kantrowitz has been consistent in his position that a financial aid officer's determination as to what federal financial aid a student may receive is not the process by which one would determine which loan is a qualified education loan:

> [I]t has been my experience that when a college financial aid administrator certifies a loan, they're focused on the impact on eligibility for federal student aid purposes and not for determining whether the loan is a qualified education loan. Reply Report (Dkt. No. 420) at 7.

> ....

> "In my experience, most college financial aid administrators are not familiar with the term 'qualified education loan' and its definition." *Id*. at 8.

Further, Mr. Kantrowitz was quite specific that the discussion in the Federal Aid Student Handbook, which was the subject of Defendants' counsel's question concerning these additional

costs, relates solely to the issue of a student's eligibility of federal financial aid and not the issue of whether a loan was a qualified education loan. Kantrowitz Dep. Tr. at 521:21-522:4.

In any event, even if Defendants were correct that one must ascertain the individualized amount for each student, that information could have been obtained from the applicable educational institution. Many lenders have chosen to do that. Bank One did not.

Along the same vein, Defendants argue that Mr. Kantrowitz conceded that there are "discrepancies between the IPEDS data and the information posted by the college on their website." Defs' Br. at 6. Mr. Kantrowitz did not say that there were discrepancies. He said that the IPEDS data controls and that what colleges report on their website or in their bulletins may include additional costs, but those costs simply are not part of what determines whether a loan is a qualified education loan under the Higher Education Act. This testimony is entirely consistent with Mr. Kantrowitz's previous testimony and reports. Kantrowitz Dep. Tr. at 518:2-520:13.

Defendants also complain that Mr. Kantrowitz does not provide ample support for his position that IPEDS controls over other data that may be published by the university. But, of course, they ignore the fact that Mr. Kantrowitz cited that legal authority in his February 2 Report (Dkt. No. 372) at 2; *see also* Plaintiff's Reply Brief in Further Support of her Motion for Class Certification (Dkt. No. 418) at 20. The Court can draw its own legal conclusions from the statutes and regulations cited therein.

Defendants also misrepresent Mr. Kantrowitz's testimony with regard to the ability of lenders to obtain information about a prospective borrower's loans they may have received from other lenders. Defs' Br. at 7. First, contrary to Defendants' assertions, Mr. Kantrowitz was referring to the data that credit reporting agencies have on other loans and not "credit rating data

for a potential borrower." Defs' Br. at 7.[2]   Second, although it is certainly true that whether a loan is reported to a credit reporting agency is at a lender's discretion, that does not detract from the fact that, as Mr. Kantrowitz explained, it is the routine practice of private and government lenders to report their loans to credit reporting agencies. *See* Reply Report (Dkt. No. 420 at 3-4).[3]   The suggestion that any potential private lender could not rely upon the credit history of a potential borrower as reported to the credit reporting agencies is utterly disingenuous given the fact that the lending industry routinely relies upon the credit reports for data concerning a borrower's lending history.   Finally, it is obvious that scholarships and grants would not be reported to a credit reporting agency and Mr. Kantrowitz has not asserted otherwise. But a prudent lender would contact both a credit reporting agency and the relevant institution to obtain a complete picture of a potential borrower's public and private scholarships, loans, and grants.   That is something Bank One did not do.

In addition, as Mr. Kantrowitz explained his Reply Report, The National Student Loan Data System ("NSLDS") is a comprehensive source of all federal loans made to all students at institutions of higher education.  Mr. Kantrowitz makes this point because it is a relevant source of information that can be utilized now to determine the scope of the class.   Either through subpoena or by consent by class members, Defendants can obtain the full extent of the federal loans taken by any of the borrowers.  While this would not provide a complete picture of the class,

---

[2] Lenders, of course, use credit scores to determine whether the borrower is credit worthy, but the relevant point here is that the educational lenders also can and do get credit reports on borrowers to determine the amount of other federal and private loans they received.

[3] Defendants cite pages from Mr. Kantrowitz's Rely Report by assuming the pages of his declaration are part of the Report.  Plaintiff cites to the pages of the actual Report.

it would significantly ease any burden in determining the scope of the class, since it would identify those loans in Defendants' portfolios that exceeded the cost of attendance, less federal loans alone.

Defendants also entirely distort Mr. Kantrowitz's discussion of the use of professional judgment to modify a student's financial aid needs. First, it is important to note that this discussion relates solely to a student's eligibility for federal financial aid and not whether a loan is a qualified education loan. Second, Defendants intentionally confuse the data. For example, Defendants cite a source that says that 97% of all *institutions* use professional judgment to modify a student's financial needs assessment. Defs' Br. at 8. That is not in any way inconsistent with what Mr. Kantrowitz was testifying about or what he stated in his report. Mr. Kantrowitz was referring to the fact that only 2.25% to 2.42% of actual student *cases* involved the exercise professional judgment. Defendants are comparing this number with the percentage of institutions that allow for the exercise of professional judgement. Those are two totally different statistics. In addition, contrary to Defendants' assertions (Defs' Br. at 9), Mr. Kantrowitz did not say that only 10% of the cases involving the exercise of professional judgment result in an increase of student award. What Mr. Kantrowitz stated in his report is that, in only 10% of cases in which professional judgment was exercised, was there any "modification of cost of attendance." Kantrowitz Reply Report at 8. Finally, Defendants are simply wrong when they assert that the audit of St. Louis University (Exhibit 19), in citing the percentage of 2.25% to 4.2%, was only referring to cases in which the family contribution was adjusted. Defs' Br. at 9. In fact, it is the total percentage of *all* cases involving the exercise of professional judgement:

> The national average for the total use of professional judgment, whether or not the amount of Pell Grant awards changed, was approximately 2.25% during the award year of 2000-2001 and reporting 2.42% during the year 2001-2002.

> Exhibit 19 at 2.

In sum, the Defendants' attempt to punch holes in Mr. Kantrowitz's expert report through fabricated discrepancies or inconsistencies, simply fails.  His underlying conclusions, which he has consistently maintained throughout, have not been seriously challenged.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that her Motion for Class Certification be granted.

Dated: November 2, 2021          Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:    */s/ George F. Carpinello*
        George F. Carpinello
        Adam R. Shaw
        Jenna C. Smith
        30 South Pearl Street
        Albany, NY  12207

**JONES SWANSON HUDDELL &
DASCHBACH LLC**
Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua B. Kons (Ct. Bar No. 29159)
50 Albany Turnpike, Suite 4024
Canton, Connecticut 06019

*Counsel for Plaintiff Tashanna B. Golden*

## CERTIFICATE OF SERVICE

I, George F. Carpinello, hereby certify that on the 2nd day of November 2021, I served

the forgoing document on all counsel of record via ECF and electronic mail.

/s/ George F. Carpinello

George F. Carpinello