# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Golden,<br><br>                    Debtor. | **Chapter 7**<br><br>**Case No. 16-40809 (ESS)** |
| Tashanna B. Golden f/k/a Tashanna B. Pearson,<br><br>                    Plaintiff,<br><br>       v.<br><br>National Collegiate Student Loan Trust 2006-4, GS2 2016-A, Pennsylvania Higher Education Assistance Authority d/b/a American Education Services and Firstmark Services,<br><br>                  Defendants. | **Adv. Proc. No. 17-1005 (ESS)** |

### TRUST DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL RESPONSES TO PLAINTIFF'S SUPPLEMENTAL DISCOVERY REQUESTS

LOCKE LORD, LLP
200 Vesey Street, 20th Floor
New York, New York 10281

*Attorneys for Defendants*
*National Collegiate Student Loan Trust 2006-4*
*and Goal Structured Solutions Trust 2016-A*

**Table of Contents**

**Page**

Table of Authorities ................................................................................................................... ii

Preliminary Statement .............................................................................................................. 1

Argument .................................................................................................................................. 2

    I.       Plaintiff's Supplemental Discovery Is
           Not Connected To Class Certification. ................................................................. 4

    II.      The Discovery Plaintiff Seeks Is
           Unduly Burdensome And Only Creates Delay .................................................... 12

Conclusion .............................................................................................................................. 13

**Table of Authorities**

**Page**

**FEDERAL CASES**

*Beaton v. Verizon New York, Inc.*,
   No. 20-cv-672 (BMC), 2020 WL 6449235 (E.D.N.Y. Nov. 3, 2020) ......................................... 2

*Burnett v. Wahlburgers Franchising LLC*,
   No. 16-cv-4602 (WFK) (CLP), 2017 WL 11504788 (E.D.N.Y. Dec. 6, 2017) ......................... 2

*Calabrese v. CSC Holdings, In*c.,
   No. 02-cv-5171 (DLI) (JO), 2007 WL 749690 (E.D.N.Y. Mar. 7, 2007) .................................. 3

*Charles v. Nationwide Mut. Ins. Co., Inc.*,
   No. 09-cv-94 (ARR), 2010 WL 7132173 (E.D.N.Y. May 27, 2010) ......................................... 3

*DiDonato v. GC Servs. Ltd. P'ship*,
   No. 20-cv-2154 (LGS), 2021 WL 4219504 (S.D.N.Y. Sept. 16, 2021) ................................. 6, 7

*Dziennik v. Sealift, Inc.*,
   No. 05-cv-4659, 2006 WL 1455464 (E.D.N.Y. May 23, 2006) ................................................ 3

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................................. 5

*EM Ltd. v. Republic of Argentina*,
   695 F.3d 201 (2d Cir. 2012) ..................................................................................................... 2

*Heras v. Metro. Learning Inst.*,
   No. 19-cv-2694 (DG), 2021 WL 3269056 (E.D.N.Y. July 30, 2021) ................................... 2, 3

*In re Facebook, Inc.*,
   No. MDL 12-2389, 2016 WL 5080152 (S.D.N.Y. July 7, 2016) ........................................... 3, 5

*In re Initial Public Offering Secs. Litig.*,
   471 F.3d 24 (2d Cir. 2006) ....................................................................................................... 3

*In re Kind LLC "Healthy & All Natural" Litig.*,
   337 F.R.D. 581 (S.D.N.Y. 2021) ........................................................................................... 3, 5

*Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*,
   No. 13-cv-60, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ................................................... 3

*Jurich v. Compass Marine, Inc.*,
   2013 WL 12353646 (S.D. Ala. June 11, 2013) ..................................................................... 3, 4

*Lindsley v. TRT Holdings, Inc.*,
   No. 3:17-cv-2942-B, 2019 WL 11027792 (N.D. Tex. May 15, 2019) ...................................... 4

*Miller v. Mackey Int'l*,
   452 F.2d 424 (5th Cir. 1971) .................................................................................................... 5

## Table of Authorities

**Page**

*Miner v. Gov't Payment Serv., Inc.*,
  No. 14-cv-7474, 2017 WL 3909508 (N.D. Ill. Sept. 5, 2017)...................................................... 4

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978)...................................................................................................................... 2

*Putnam v. Eli Lilly & Co.*,
  508 F.Supp.2d 812 (C.D. Cal. 2007) ........................................................................................... 3

*Republic of Argentina v. NML Cap., Ltd.*,
  573 U.S. 134 (2014)...................................................................................................................... 2

*Shih v. Petal Card, Inc.*,
  No. 18-cv-5495 (JFK) (BCM), 2021 WL 5279395 (S.D.N.Y. Nov. 12, 2021).......................... 2

*Stinson v. City of New York*,
  No. 10-cv-4228 (RWS), 2015 WL 8675360 (S.D.N.Y. Dec. 11, 2015)..................................... 3

*Town of New Castle v. Yonkers Contracting Co.*,
  No. 88-cv-2952, 1991 WL 159848 (S.D.N.Y. Aug. 13, 1991).................................................... 3

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)...................................................................................................................... 5

**S<span style="font-variant:small-caps">tate</span> C<span style="font-variant:small-caps">ase</span>**

*In re Nat'l Collegiate Student Loan Trs. Litig.*,
  251 A.3d 116, 128 (Del. Ch. 2020)........................................................................................... 12

Defendants National Collegiate Student Loan Trust 2006-4 and Goal Structured Solutions Trust 2016-A, incorrectly sued as GS2 2016-A (collectively, the "Trust Defendants") submit this Memorandum of Law in Opposition to Plaintiff's Motion To Compel Responses To Plaintiff's Supplemental Discovery Requests.

## PRELIMINARY STATEMENT

Plaintiff is seeking extensive, pre-certification discovery at the last minute after the parties have fully briefed (including sur-replies) her motion for class certification. Plaintiff's rationale for why this should be permitted is because "facts are contested" and she is "entitled to develop those facts through the formal discovery process." (Br. p. 8)(citing 3 Newberg on Class Actions § 7:14 (5th ed.)). Nothing is being contested in the class certification briefing that Plaintiff's enormously burdensome, premature discovery would inform.

The Trust Defendants do two things in their opposition to class certification. They persuasively point out the legal failings in Plaintiff's theories of liability; specifically, determining whether a particular student has a loan or loans that exceeded their "cost of attendance" is a highly individualized, borrower-dependent question, which means that no class can be certified. These are legal arguments. And, the Trust Defendants contest facts specific to Ms. Golden which demonstrate why she herself is not a member of the class she seeks to represent. The parties developed the facts relating to Ms. Golden through years of formal discovery amongst the parties and various third-parties. The discovery Plaintiff is seeking is not directed at Ms. Golden's loans.

The borrower-level data being sought, for people who may or may not be in the class Plaintiff asks to certify, does not elucidate any of the issues the Court must decide to determine if a class can be certified. To allow what Plaintiff is asking would impose a significant and unwarranted burden on the Defendants and it would delay the resolution of the class certification

motion, while not advancing any understanding of the issues before the Court on that motion. Plaintiff's motion should be denied.

In addition to the arguments the Trust Defendants make here, the Trust Defendants adopt and incorporate the arguments made by co-defendants Pennsylvania Higher Education Assistance Agency ("PHEAA") and Nelnet Servicing, LLC (erroneously identified as "Firstmark") in their oppositions to Plaintiff's motion.

## ARGUMENT

The Trust Defendants do not dispute that the Court has broad discretion regarding discovery. *See Shih v. Petal Card, Inc.*, No. 18-cv-5495 (JFK) (BCM), 2021 WL 5279395, at *4 (S.D.N.Y. Nov. 12, 2021)(citing *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012), aff'd sub nom. *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134 (2014)); *Beaton v. Verizon New York, Inc.*, No. 20-cv-672 (BMC), 2020 WL 6449235 (E.D.N.Y. Nov. 3, 2020). Nor do the Trust Defendants dispute that there are instances where certain discovery directed at putative class-members is permitted pre-certification. *See, e.g., Burnett v. Wahlburgers Franchising LLC*, No. 16-cv-4602 (WFK) (CLP), 2017 WL 11504788, at *5 (E.D.N.Y. Dec. 6, 2017)(Pollack, Mag.J.). But, this rule "like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351–52 (1978)(holding that the production of putative class members' names pursuant to Federal Rule 26 was not "within the scope of legitimate discovery.") The discovery Plaintiff is seeking to compel falls well outside those ultimate and necessary boundaries.

The discovery at issue here is directed at granular details relating to thousands of particular borrowers who may or may not be members of the putative class. A plaintiff is not automatically entitled to this information. *Heras v. Metro. Learning Inst.*, No. 19-cv-2694 (DG), 2021 WL

3269056, at *1 (E.D.N.Y. July 30, 2021)(citing *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-cv-60, 2013 WL 5132023, at *8 n.9 (E.D.N.Y. Sept. 12, 2013)). In fact, inquiry into the individual circumstances of absent class members is generally improper pre-certification. *Stinson v. City of New York*, No. 10-cv-4228 (RWS), 2015 WL 8675360, at *2 (S.D.N.Y. Dec. 11, 2015)(*Town of New Castle v. Yonkers Contracting Co.*, No. 88-cv-2952, 1991 WL 159848, at *2 (S.D.N.Y. Aug. 13, 1991)).

Extensive pre-certification discovery of absent class members defeats the very purpose of class action litigation. *See In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. 581, 596 (S.D.N.Y. 2021)(citing *Stinson*, 2015 WL 8675360, at *1). Instead, this type of discovery is reserved until after the determination of class-wide issues; this makes sense since the court should first determine if there is a class before allowing this type of discovery. *In re Facebook, Inc.*, No. MDL 12-2389, 2016 WL 5080152, at *4–5 (S.D.N.Y. July 7, 2016). Pre-certification discovery must be limited to prevent "a protracted mini-trial of substantial portions of the underlying litigation." *Calabrese v. CSC Holdings, Inc.*, No. 02-cv-5171 (DLI) (JO), 2007 WL 749690, at *5 (E.D.N.Y. Mar. 7, 2007)(quoting *In re Initial Public Offering Secs. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).

In order to get information that goes towards identifying individual class members pre-certification, Plaintiff must show "a legitimate need for the requested information" and that it is necessary to "establish the appropriateness of certification." *Charles v. Nationwide Mut. Ins. Co., Inc.*, No. 09-cv-94 (ARR), 2010 WL 7132173, *8 (E.D.N.Y. May 27, 2010)(citing *Putnam v. Eli Lilly & Co.*, 508 F.Supp.2d 812, 814 (C.D. Cal. 2007)); *Dziennik v. Sealift, Inc.*, No. 05-cv-4659, 2006 WL 1455464, at *1 (E.D.N.Y. May 23, 2006). The plaintiff must show that the pre-certification discovery sought "is likely to produce substantiation of the class allegation." *Jurich*

3

*v. Compass Marine, Inc.*, 2013 WL 12353646, at *3 (S.D. Ala. June 11, 2013). The burden of demonstrating the relevance and proportionality of the requested pre-certification discovery rests solely with Plaintiff. *See Miner v. Gov't Payment Serv., Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *4 (N.D. Ill. Sept. 5, 2017); *Lindsley v. TRT Holdings, Inc.*, No. 3:17-cv-2942-B, 2019 WL 11027792, at *1 (N.D. Tex. May 15, 2019).

This means that in order to assess Plaintiff's motion, the Court must consider the issues that are before it in the fully-briefed (including sur-replies) motion for class-certification and what is being asked for by Plaintiff. Comparing the discovery Plaintiff seeks to the certification issues before the Court shows that the extensive discovery being sought is unnecessary to the certification motion. Plaintiff admits as much. It means that there is no basis for the discovery Plaintiff seeks to compel and her motion should be denied.

Moreover, as evidenced by PHEAA and Firstmark, responding to Plaintiff's supplemental requests would require significant efforts by the Trust Defendants' servicers that are disproportionate to the needs of considering Plaintiff's fully-briefed class certification motion. The Trust Defendants do not have employees. Instead, they act through contractual counterparties authorized to act on their behalf, such as PHEAA and Firstmark. Therefore, as described in further detail below, the Trust Defendants join in and adopt the arguments that PHEAA and Firstmark make regarding the undue burden that production of this discovery would impose on Defendants.

## I.     Plaintiff's Supplemental Discovery Is Not Connected To Class Certification.

The context of the discovery, the information being sought and the timing of the request all bear on whether the discovery is appropriate. When those factors are considered, the inappropriateness of what Plaintiff is requesting becomes clear.

The question before the Court on Plaintiff's motion for class-certification is simply whether the requirements of Rule 23 have been met and her suit can be maintained as a class action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits." *Id.* (citing *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971)). Nor is the question whether an unnamed individual is or is not a member of the proposed class. *See, e.g., In re Kind LLC "Healthy & All Natural" Litig.*, 337 F.R.D. at 596; *In re Facebook, Inc.*, 2016 WL 5080152, at *4–5. The analysis is directed only at determining if "there are questions of law or fact common to the class" and whether a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011). The Court is deciding only if Plaintiff has articulated claims that depend upon common contentions that are capable of class-wide resolution, *i.e.*, are the issues central to the validity of each one of the claims capable of being resolved in one stroke. *Id.* at 350.

Here, Plaintiff filed her motion for class certification in July 2020 seeking to certify the following class:

> Individuals who received private loans owned, held, or serviced by Defendants which were not within the cost of attendance at Title IV institutions as defined in 26 U.S.C. § 221(d); who obtained bankruptcy discharges after October 17, 2005; who were subsequently subjected to Defendants' acts to collect on the loans; and who have not reaffirmed their loans.

(Dkt. No. 255, p. 6.) Thus, the issue before the Court is simply whether this proposed class has articulated common claims subject to being resolved by common answers. *See, e.g., Dukes*, 564 U.S. at 349–50.

Defendants' opposition to class-certification demonstrates that Plaintiff has failed to propose an ascertainable class and cannot satisfy the Rule 23 class certification requirements

5

because there are not common contentions that are capable of class-wide resolution. Resolving the issues Plaintiff is suing upon will require borrower-by-borrower litigation of various legal and factual issues to determine who qualifies to be in the class before notice of the lawsuit can even be sent to those potential members. For instance, the Court must: (i) calculate a borrower's specific "cost of attendance" based on the definition contained in Section 1087ll; (ii) then determine the borrower's stack of student loans; (iii) then determine what scholarships and grants the borrower had; (iv) then order and classify each of the loans the borrower had to determine which loans have priority over which; (v) then assess where each loan fits in relation to the others and in relation to the borrower's "cost of attendance;" (vi) then compare the "cost of attendance," the scholarships and grants, and each individual loan to determine whether a particular loan exceeded the borrower's "cost of attendance;" and (vii) finally determine whether a loan that exceeded the "cost of attendance" is nonetheless non-dischargeable under a provision of Section 523(a)(8), such as Section 523(a)(8)(A)(i). Each of these steps requires a borrower-specific factual inquiry, *i.e.*, a mini-trial. All of this must take place before anyone can tell if a particular borrower even qualifies for the class.

Another Court has already found that Plaintiff's proposed class cannot be certified for these and similar reasons. Judge Schofield, considering an almost identical class definition in litigation brought by Plaintiff's lawyers, has decided that individual issues predominate and a class could not be certified. *See DiDonato v. GC Servs. Ltd. P'ship*, No. 20-cv-2154 (LGS), 2021 WL 4219504, at *7 (S.D.N.Y. Sept. 16, 2021). Per Judge Schofield:

> Plaintiff's claim depends upon whether each putative class member's student loan was in fact discharged in bankruptcy. For each potential class member a "mini-hearing" as to the dischargeability of his or her student loans would be necessary. This determination would depend on many individual facts including: (1) the cost of attendance, (2) whether the school was a Title IV institution at the

6

>   time of origination, (3) whether the loan was made under a program funded in part by a nonprofit or governmental unit, (4) whether the Plaintiff filed for bankruptcy and the subject student loans were subject to those proceedings and (5) the outcome of those proceedings, including whether they resulted in a discharge order or a dismissal. In addition, … facts regarding the stated purpose of each potential class member's loan, any certifications the potential class member made, the potential class member's understanding of the purpose of the loan and the loan documents he or she signed are relevant to determine whether that potential class member's loan was dischargeable.

*Id.* These are the questions that the Trust Defendants and the other Defendants raised in opposition to class certification, anticipating the ruling in *DiDonato*.

The discovery that Plaintiff seeks to compel is not directed at the questions that have been raised on class certification. It does not go to the question of whether there are class-wide claims that can be resolved with a single proceeding. It instead seeks to create a granular potential-class member-by-class member picture of people who Plaintiff claims could be in a class if one were certified. It is directed at the individual merits of individual borrowers.

Plaintiff seeks the following:

For each private student loan in Your portfolio made to a person who received a discharge in bankruptcy after January 1, 2005, provide the following information:

A.  The date the loan was made.

B.  The original balance of the loan.

C.  Whether the loan was paid directly to the school or the borrower.

D.  The current balance of the loan.

E.  The date of notice of bankruptcy of the borrower.

F.  Any amounts paid on the loan after bankruptcy.

G.  Whether there is or was at any time a co-borrower on the loan.

H.  Any amounts the co-borrower paid on the loan after notice of discharge of bankruptcy was issued.

7

I. The dates of any contacts or communications made by You or anyone else on behalf of the owner of the loan to the borrower after notice of discharge in bankruptcy was issued.

J. The form of any such contacts or communications and any Documents related to such contacts or communications.

K. Set forth any amounts collected on the loan after bankruptcy and for each such payment, set forth how much was paid to the owner and how much was retained by You or any other servicer on any amount collected.

L. Identify the lender, originator, servicer or guarantor other than You.

M. Whether the loan was originated or funded by a nonprofit or governmental entity. If so, Identify.

N. Whether the loan was guaranteed by a nonprofit or governmental entity. If so, Identify.

O. Whether the borrower was an undergraduate or graduate student.

P. Whether the borrower was a full-time or part-time student.

Q. Identify the institution that the borrower attended and state whether such institution was a Title IV institution at the time the loan was made.

R. Whether the loan was certified as within the cost of attendance by the applicable educational institution at any time prior to, or at the time, the loan was made. If so, provide all Documents showing such certification.

S. Whether the loan was a bar loan, residency loan or other loan made for expenses incurred other than for full or part-time study at an educational institution. For each such loan, Identify the type of loan.

T. Whether, at the time the loan was originated, You, the originator, lender, servicer or anyone else filed a report with a credit reporting agency to the effect that the loan was made and whether any subsequent reports were made to any reporting agency concerning the loan history including any notice sent after You or any originator, funder or servicer of the loan received notice of bankruptcy. For each such loan, Identify the reports and produce a copy of each such report.

U. The cost of attendance at the applicable educational institution of the person to whom the loan was made and any information concerning any other loans, scholarships or grants received by the person who obtained the loan. Produce all Documents in Your possession, custody or control relating to such information.

None of this goes to the issues that have been raised regarding what Plaintiff claims are common questions. It does not inform whether there are common issues or common bodies of proof that allow for a determination of a borrower's "cost of attendance," their loan stacks, or the other individualized issues that have been identified.

Plaintiff admits as much. In her motion seeking to compel this discovery, Plaintiff states that notwithstanding the supplemental discovery being sought:

> [She] has more than met her burden of showing that each of Federal Rule of Civil Procedure 23's requirements are met by a preponderance of the evidence. It is estimated that the size of the class is in the thousands; it is undisputed that each proposed class member has received a discharge in bankruptcy and been subject to Defendants' illegal collection efforts post-discharge; Plaintiff Tashanna Golden's claims are typical of the claims of the class; and Ms. Golden and her attorneys are capable and adequate representatives of the interests of the class. Whether Defendants' uniform course of conduct violates the Bankruptcy Code is a common issue that predominates over any individual issues and is an issue that will be resolved by looking at common proof.

(Dkt. No. 444, p. 2).

Her counsel has gone even further and affirmatively conceded that she does not require any of the requested discovery to proceed on her motion for class certification. Specifically:

> MR. CARPINELLO: … we don't need this information to proceed on the motions that are on your docket.
>
> THE COURT: So this is separate from those motions.
>
> MR. CARPINELLO: Correct, correct.

September 29, 2021 Hr'g Tr. at 64:6–11. And – contrary to what they claim here – counsel has stated that they do not need the supplemental discovery to respond to Defendants opposition to class certification.

> We're not saying that we need this information to respond to these motions. We went ahead and filed the motions because we think we can establish numerosity and typicality with the evidence we have

9

> already. We're not -- and I don't think I ever said that anywhere today or ever that we needed this information to file the motions."

September 29, 2021 Hr'g Tr. at 60:20–25.

The disconnect between the supplemental discovery being demanded and class certification crystalizes in Plaintiff's attempts to justify her requests. She claims that she needs this discovery now because "[i]n a last-ditch effort to defeat class certification, Defendants for the first time in their respective oppositions to Plaintiff's Motion for Class Certification, assert that many of the loans held by the proposed class were guaranteed by nonprofits or government institutions" and "Defendants refuse to provide the discovery necessary to prove or disprove these assertions." (Dkt. No. 144, Br. p. 2). She claims the discovery she seeks is necessary to test "the veracity" of Defendants' assertions. (*Id.* p. 11).

Plaintiff is egregiously misstating what has happened to date. The issue of non-profit guaranties has been front and center in this case since the 2006-4 Trust's motion to dismiss, filed in December 2017. There the Trusts raised the argument that Plaintiff's NCT loan was non-dischargeable pursuant to Section 523(a)(8)(A)(i) because the loans owned by the 2006-4 Trust were made under programs that were funded in whole or in part by TERI, a non-profit institution, and/or were guaranteed by TERI. (*See* Dkt. Nos. 45, 60, 122).

Between 2017 and 2019 there was extensive discovery regarding TERI and its guarantees. Plaintiff issued discovery demands relating to the TERI guaranty and the 2006-4 Trust produced documents responsive to the same. Plaintiff also received documents responsive to these requests through third-party document subpoenas to various First Marblehead entities and took their depositions.[1]

---

[1] First Marblehead created the National Collegiate Student Loan Trust securitizations, including the 2006-4 Trust.

Most problematic to Plaintiff's assertion that she needs additional discovery to test the "veracity" of Defendants contentions is Paragraph 29 of "Plaintiff's Statement of Material Facts Not in Dispute" filed in connection with her motion for summary judgment, which was filed at the same time she filed her motion for class certification. This paragraph reads:

> TERI was the entity that guaranteed the student loans. This was critical for securitization since the investors needed the assurance that there would be a guarantee behind those student loans that defaulted. *One hundred percent of FMC's securitized loans were guaranteed by TERI.*

*See* Dkt. No. 253, Carpinello Decl., Ex. L (Dep. Tr. of John Hupalo, at 32:2–7)(emphasis added). By stating that "one hundred percent of FMC's securitized loans were guaranteed by TERI," Plaintiff is admitting that all of the loans in the 2006-4 Trust were guaranteed by TERI because that Trust is a First Marblehead, *i.e.* FMC, securitization. In other words, Plaintiff and her counsel have already admitted that the contentions whose veracity they claim need to be tested are undisputed.

The idea that arguing that many loans are guaranteed by non-profits is a "last ditch effort" that justifies supplemental discovery raises serious questions about the purposes of Plaintiff's motion. With respect to Plaintiff's loans and the 2006-4 Trust, loan guarantees made by non-profits has been a central issue in this case since the inception of this adversary proceeding in 2017. This type of guaranty is such an integral part of the landscape of this dispute that Plaintiff makes reference to them in her statement of undisputed material facts filed in July of 2020. *See* Dkt. No. 253, Carpinello Decl., Ex. L (Dep. Tr. of John Hupalo, at 32:2–7)("one hundred percent of FMC's securitized loans were guaranteed by TERI."). To assert that Defendants referenced these guarantees "for the first time in their respective oppositions to Plaintiff's Motion for Class Certification" and then to use that assertion as a basis to seek additional discovery at the eleventh hour speaks only to the quality of Plaintiff's motion.

If anything, the granularity of the discovery that Plaintiff is seeking to compel cuts against Plaintiff's arguments in support of certifying a class. This becomes clear when she states "the discovery will also help the parties better understand the value of the case." (Dkt. No. 44, p. 11). Plaintiff is looking to figure out who can and cannot fit within the class she proposes, so she can attempt to value it. This is a tacit admission that her proposed class suffers from ascertainability issues. Plaintiff cannot tell who is, or is not, in her proposed class without individualized, borrower-specific discovery and the mini-trials necessary to litigate and determine the import of that data.

## II.    The Discovery Plaintiff Seeks Is Unduly Burdensome And Only Creates Delay.

As has been established, the Trust Defendants do not have employees. *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 128 (Del. Ch. 2020). They act through contractual counterparties. *Id.* at 131. This includes co-defendants PHEAA and Firstmark. To the extent that any of the supplemental discovery being demanded (to the extent it exists) were to be produced by the Trust Defendants, much of it would come from their servicers, PHEAA and Firstmark. Accordingly, the Trust Defendants join in and adopt the arguments that PHEAA and Firstmark make regarding the undue burden the demanded discovery imposes.

What Plaintiff is attempting to do here will create an indeterminate and unnecessary delay in resolving this matter. As shown by PHEAA and Firstmark, it will be a massive and lengthy undertaking to produce the extensive discovery that Plaintiff is seeking. Anything that is produced will then need to be digested by the Plaintiff. Then, further briefing on class certification must be done to apply the new information to the class certification issues.

The Trust Defendants have been participating in pre-certification discovery directed at class certification for almost three years. The motion for class certification is fully briefed. Plaintiff

should not be permitted to compel discovery aimed at identifying potential class members at this late date. This is especially so, since what is being demanded does not inform the questions before the Court on class certification. Judge Schofield's handling of these issues in *DiDonato* is again instructive. She refused to allow Plaintiff's counsel – the same lawyers as here – to submit a report by Mark Kantrowitz after briefing on class certification had been completed. *DiDonato v. GC Servs. Ltd. P'ship*, No. 20-cv-2154 (LGS) (S.D.N.Y.), Dkt. No. 185. This was because Judge Schofield found the request to be untimely and "not highly probative of the issue to be decided." *Id.* p. 23:3–6.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to compel should be denied.

Dated: December 22, 2021

**LOCKE LORD LLP**

By: */s/ Gregory T. Casamento*
Gregory T. Casamento
R. James DeRose, III
Brookfield Place
200 Vesey Street, 20th Floor
New York, New York 10281
(212) 415-8600
gcasamento@lockelord.com
rderose@lockelord.com

J. Matthew Goodin
111 South Wacker Drive, Suite 4100
Chicago, Illinois 60606
(312) 443-0700
jmgoodin@lockelord.com

*Attorneys for Defendants
National Collegiate Student Loan Trust
2006-4 and Goal Structured Solutions
Trust 2016-A*