UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Tashanna B. Golden<br>*fka* Tashanna B. Pearson,<br><br>                    Debtor, | Chapter 7<br><br>Case No. 16-40809 (ESS) |
| Tashanna B. Golden<br>*fka* Tashanna B. Pearson on behalf of herself<br>and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>Firstmark Services LLC, GS2 2016-A (GS2), National<br>Collegiate Student Loan Trust 2006-4 (NCT 2006),<br>Pennsylvania Higher Education Assistance Agency,<br>d/b/a American Education Services,<br><br>                    Defendants. | Adv. Pro. No. 1-17-01005(ESS) |

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION TO COMPEL RESPONSES TO HER SUPPLEMENTAL DISCOVERY REQUESTS**

**Dated: January 5, 2022**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii
PRELIMINARY STATEMENT ...................................................................................................1
  I.      PHEAA'S ARGUMENTS................................................................................................2
II.     THE TRUSTS' ARGUMENTS......................................................................................4
III.    FIRSTMARK'S RESPONSES......................................................................................5
CONCLUSION................................................................................................................................7

# **TABLE OF AUTHORITIES**

Page(s)

Cases

*Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*,
  586 F.2d 962 (2d Cir. 1978) ................................................................................................ 5

*DiDonato v. GC Services Ltd. P'ship*,
  2021 WL 4219504 (S.D.N.Y., Sept. 16, 2021) ......................................................................... 4

*New York v. Mt. Tobacco Co.*,
  2015 WL 3455080 (E.D.N.Y. May 29, 2015) ........................................................................... 7

*North Shore-Long Island Jewish Health Systems, Inc. v. MultiPlan, Inc.*,
  325 F.R.D. 36 (E.D.N.Y. 2018) ............................................................................................. 3, 7

*Thomas v. City of New York*,
  336 F.R.D. 1 (E.D.N.Y. 2020) .................................................................................................. 2

Rules

Federal Rules of Civil Procedure Rule 23 ................................................................................. 3, 5

Federal Rules of Civil Procedure Rule 26(b)(2)(B) ........................................................................ 7

Other Authorities

3 Newberg on Class Actions § 7:14 (5th ed.) ................................................................................ 5

Plaintiff Tashanna Golden ("Plaintiff"), on behalf of herself and the proposed class, submits this Reply Memorandum of Law in Further Support of Her Motion to Compel Responses to Plaintiff's Supplemental Discovery Requests (the "Supplemental Requests").

## PRELIMINARY STATEMENT

Although the various Defendants differ slightly in their arguments against the motion to compel, several common themes emerge:

*First*, Defendants argue that the discovery sought is inappropriate because Plaintiff has already moved for class certification. Yet, they all concede that this Court has already stated that it would find the information sought useful to determine the motion for class certification. They also concede, as they must, that allowing additional discovery is within the broad discretion of the Court. Thus, if the Court finds that the information would be useful with regard to determining the motion for class certification, then such discovery would be appropriate. The fact that Plaintiff believes she can prevail on the motion for class certification on the current record does not mean the discovery is not relevant to the pending motion.

*Second*, all of the Defendants argue that such discovery would be extremely burdensome, yet they fail to provide any delineation of such burden and rest totally on generalities. The only Defendant to attempt to support its claim of burden, Firstmark, makes up numbers out of whole cloth. As Defendants concede, they have "the burden to establish undue burden." Dkt. 447 ("PHEAA Br.") at 6. Ironically, at the same time they argue burden, they assert that they have already provided a substantial amount of the requested information.

*Third*, Defendants argue that the information sought is improper merits discovery. It clearly is not. Defendants assert in their memoranda in opposition to class certification (and actively repeat those arguments here) that the class should not be certified because a large number of the class members' loans are within the cost of attendance, were certified by the schools, or

1

were funded by governmental or nonprofit entities. Plaintiff is entitled to know how many of the putative class members actually come within those categories. Similarly, Defendants repeatedly mischaracterize the information sought by the Supplemental Requests as seeking the "identity" of the of individual class members. *See, e.g.*, Trust Defs.' Br. (Dkt. 45) at 3. As Plaintiff has articulated numerous time, the requested information is not being sought to ascertain the identity of each individual class member, but rather to identify the contours and scope of membership in the proposed class.

The arguments of each particular Defendant are more fully forth below.

### I. PHEAA'S ARGUMENTS

Pennsylvania Higher Education Assistance Agency ("PHEAA")'s arguments are largely self-contradictory. For example, PHEAA consistently argues that it would be unduly burdensome to provide the requested information and yet, at the same time, argues that a large percentage of the information has already been produced. *See, e.g.*, PHEAA Br. (Dkt. 447) at 2, 9, 14; Haveles Decl. (Dkt. 448), at ¶ 18. Of course, by asserting that it has provided *some* of the information sought, PHEAA implicitly concedes that it has not provided all of the information requested, particularly information about which loans have been determined to be within the cost of attendance or which have been certified by the school. It is well-established that an admission that some of the requested discovery has already been produced is not sufficient to establish that there are no other relevant materials to be found. *Thomas v. City of New York*, 336 F.R.D. 1, 2 (E.D.N.Y. 2020). Clearly, Defendants cannot argue in opposition to a motion for class certification that many loans are within the cost of attendance, and, at the same time, refuse to provide discovery to determine the actual extent to which those assertions are true.

PHEAA's brief is also contradictory to the extent it asserts that providing the information would be burdensome because it would require PHEAA to individually gather and review by hand "all records regarding PHEAA's dealings with each particular borrower since the time PHEAA began to service the loan" and "all accounting records regarding payments on the loans by the particular borrowers from and after the time that the borrowers filed petition under relief of the Bankruptcy Code." PHEAA Br. (Dkt. 447) at 16. Elsewhere, PHEAA admits that it has such information in digital form and has already provided such information to Plaintiff. *See* Haveles Decl. (Dkt. 448) at ¶ 18, (admitting that PHEAA has already provided information with regard to the date the loan was made; the original balance of the loan; the current balance of the loan; the date of notice of bankruptcy; any payments made on the loan after bankruptcy; all contacts and communications made since bankruptcy; and all amounts collected since bankruptcy.). Even had PHEAA not contradicted its own statements about the alleged burden of complying with the Supplemental Requests, PHEAA's conclusory statements regarding burden, without articulating that burden with actual facts, are insufficient to avoid such discovery. *See North Shore-Long Island Jewish Health Systems, Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, at 48 (E.D.N.Y. 2018) (holding that general and conclusory objections as to relevance, overbreadth, or burden are insufficient to exclude discovery).

PHEAA also contradicts itself when it asserts on page 10 of its brief that seeking the identity of the individuals is not relevant to the Rule 23 requirements while at the same time stating that is has *already provided* Plaintiff with the identity of the individuals in September 2020. PHEAA Br. (Dkt. 447) at 12-13. In fact, and as discussed further below, the Supplemental Requests do not ask for the names of each of the borrowers, since that specific information is not relevant to class certification.

3

PHEAA cannot argue that the actual information sought by the Supplemental Requests is irrelevant to the issue of class certification. Instead, PHEAA takes the position that Plaintiff is "estopped" (*Id*. at 8) from obtaining the information because Plaintiff has already filed her motion for class certification. But no such estoppel is applicable here and the Court itself said *it* would find the information relevant. Moreover, contrary to PHEAA's assertion, Plaintiff did not make an "unqualified admission that discovery was not relevant to class certification." *Id*. at 11. Clearly, it is relevant to class certification and Defendants' own papers in opposition to the motion for class certification demonstrate that it is so.

## II. THE TRUSTS' ARGUMENTS

The Trust Defendants argue that responding to the Supplemental Requests would be burdensome because the Trusts "do not have employees." Trust Br. (Dkt. 450) at 4, 12. But that fact, of course, is irrelevant to the issue of burden since they admit that they "act through contractual counterparties authorized to act on their behalf, such as PHEAA and Firstmark." *Id*. at 4. The fact that various NCT Trusts, holding billions of dollars of student loans, have chosen to contract out their services does not bear at all on the question of whether the Supplemental Requests are unduly burdensome. Moreover, like PHEAA, the Trusts provide no support for their claim of burden other than conclusory allegations.

The Trusts also emphasize that all of the loans held by the NCT Trust are guaranteed by TERI and that TERI's involvement has been known by Plaintiff since the beginning of the case. *Id*. at 10-11. That only proves that the NCT Trust can easily answer that aspect of the Supplemental Requests. It does not explain why the Trusts cannot answer the several other questions concerning the nature of the loans they hold.[1]

---

[1] The Trusts also cite the decision in *DiDonato v. GC Services Ltd. P'ship*, 2021 WL 4219504 (S.D.N.Y., Sept. 16, 2021) as a reason not to certify a class. *Id*. at 6-7. In our letter of November 8, 2021 (Dkt. 441)

4

The Trust Defendants mischaracterize the information sought by the Supplemental Requests as far-reaching and intrusive pre-certification discovery of the identity of absent class members, and accordingly, the cases they cite to support this mischaracterization are inapposite. Trust Br. (Dkt. 450) at 4, 12. As previously stated, the Supplemental Requests do not seek the identity of class members at all—rather, they seek the records Defendants purport to rely on to support their argument that class treatment is untenable. It would be fundamentally unfair to allow Defendants to rely on these purported records to defeat class certification without providing Plaintiff and the Court the opportunity to review them for themselves. *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.*, 586 F.2d 962, 966 (2d Cir. 1978) ("The Court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues . . . Failure to allow discovery, where there are substantial factual issues relevant to certification of the class, makes it impossible for the party seeking discovery to make an adequate presentation either in its memoranda of law or at the hearing on the motion if one is so held."). While Plaintiff believes that her motion for class certification affirmatively establishes that each of Rule 23's factors has been met, Defendants themselves have put the individual loan files at issue in their opposition to Plaintiff's motion. "If facts are contested with regard to any of these issues, the plaintiff is entitled to develop those facts through the formal discovery process." 3 Newberg on Class Actions § 7:14 (5th ed.).

### III. FIRSTMARK'S RESPONSES

Firstmark's brief, like PHEAA's, is contradictory in that it argues that it would be burdensome to provide the requested information, but at the same time asserts that much of the information has already been provided. Inexplicably, it also argues that much of the information

---

we explained why the reasoning in that case was not persuasive and should not be followed. In any event, the merits of class certification itself are not before the Court on this motion.

would have to be retrieved by hand (s*ee* Gentry Decl. (Dkt. 452) at ¶ 9) while, at the same time, admitting that much of the information is already in a database. Firstmark Br. (Dkt. 451) at 4. Firstmark's brief also amply illustrates why the sought discovery is relevant to the issue of class certification. Firstmark argues, on page 2 of its brief, that class certification cannot be granted, *inter alia*, because "many putative class members' loans were made under programs funded in whole or in part by a nonprofit institution or governmental unit" and "many putative class members' loans were certified by the respective schools as within the cost of attendance." Yet, Firstmark argues just as vociferously that obtaining information as to *how many* class members' loans were funded in whole or in part by a nonprofit or governmental institution or were, in fact, certified as within the cost of attendance is somehow irrelevant to class certification.

Finally, Firstmark's attempt to quantify the burden of obtaining the information is disingenuous. On page 12 of its brief, Firstmark states that it "reasonably estimates that the entire project would easily require over 1,000 hours of labor at a cost in the six figure range." In support of this statement, Firstmark cites its attorney's declaration at paragraph 12. However, there is no quantification or explanation in that declaration as to how this number is arrived at other than counsel's *ipse dixit* that "[t]he number of hours of actual labor required to ingest, review, redact and produce such a massive number of documents is *likely* in the thousands and that Firstmark's expenses are *likely* to be in the six figure range." Kaplan Decl. (Dkt. 453) at ¶ 12. (emphasis added). No source with knowledge is cited for this assertion. Indeed, the declaration by a Firstmark employee, Gregory Gentry, a software architect for Firstmark, acknowledges that Gentry also has no personal knowledge of such information. Thus, he states at paragraph 11 that he "*understand[s]*" that the expense of reviewing and producing the documents "is likely to be in the six figure range," (Gentry Decl. (Dkt. 455) at ¶ 11) and that he "*understand[s]*" that the amount

6

of time for such review "is likely in the thousands of hours." *Id*. No basis for his "understanding" is provided and there is no sworn statement of anyone with actual knowledge about the purported burden of producing the requested information.

In any event, even if Firstmark's burden arguments were supported by personal information, they are unavailing. It is well-established that "conclusory allegations that production would require a complicated departure from ordinary business protocol does not meet the burden established in Rule 26(b)(2)(B)". *North Shore-Long Island Jewish Health Sys., Inc.*, 325 F.R.D. at 52; *see also New York v. Mt. Tobacco Co.*, No. 12-CV-6276, 2015 WL 3455080, at *11 (E.D.N.Y. May 29, 2015) (finding conclusory allegations that production would require a "complicated" departure from standard record-keeping protocol were insufficient to meet the burden standard under Rule 26(b)(2)(B)). The "burden" Firstmark attempts to articulate is nothing more than the routine cost of complying with discovery.

## CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that her motion to compel be granted.

Dated: January 5, 2022                     Respectfully submitted,

**BOIES SCHILLER FLEXNER LLP**

By:   */s/ George F. Carpinello*
      George F. Carpinello
      Adam R. Shaw
      Jenna C. Smith
      30 South Pearl Street
      Albany, NY  12207

**JONES SWANSON HUDDELL &
DASCHBACH LLC**

7

Lynn E. Swanson (admitted *pro hac vice*)
Peter Freiberg (admitted *pro hac vice*)
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130

**FISHMAN HAYGOOD LLP**
Jason W. Burge (admitted *pro hac vice*)
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170

**LAW OFFICES OF JOSHUA B. KONS, LLC**
Joshua B. Kons (Ct. Bar No. 29159)
50 Albany Turnpike, Suite 4024
Canton, Connecticut 06019

*Counsel for Plaintiff Tashanna Golden*

## **CERTIFICATE OF SERVICE**

I, George F. Carpinello, hereby certify that on the 5th day of January, 2022, I served the foregoing document on all counsel of record via ECF and electronic mail.

*/s/ George F. Carpinello*
George F. Carpinello