UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

In re:                                                          Chapter 7

TASHANNA B GOLDEN                                Case No. 16-40809-ess
*fka* TASHANNA B PEARSON,

                        Debtor.
-------------------------------------------------------------------------x

TASHANNA B GOLDEN,                                  Adv. Pro. No. 17-01005-ess
*fka* TASHANNA B. PEARSON ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY SITUATED,

                        Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN TRUST
2005-3, NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2006-4 (NCT 2006), GS2 2016-A (GS2),
PENNSYLVANIA HIGHER EDUCATION ASSISTANCE
AGENCY *dba* AMERICAN EDUCATION SERVICES,
FIRSTMARK SERVICES LLC,

                        Defendants.
-------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER ON THE DEFENDANTS' MOTION TO STRIKE THE EXPERT REPORT OF MARK KANTROWITZ

*Appearances:*
  George F. Carpinello, Esq.              H. Peter Haveles, Jr., Esq.
  Adam Shaw, Esq.                         Emilie O'Toole, Esq.
  Jenna Smith, Esq.                       McDermott Will & Emery
  Boies Schiller Flexner LLP              One Vanderbilt Avenue
  30 South Pearl Street (11th Floor)      New York, NY 10017
  Albany, NY 12207                        *Attorneys for Defendant Pennsylvania*
  *Attorneys for Plaintiff Tashanna B. Golden*   *Higher Education Assistance Agency*

Lynn E. Swanson, Esq.
Peter Freiberg, Esq.
Jones Swanson Huddell & Daschbach LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70170
*Attorneys for Plaintiff Tashanna B. Golden*

Jason W. Burge, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (46th Floor)
New Orleans, LA 70130
*Attorneys for Plaintiff Tashanna B. Golden*

Joshua B. Kons, Esq.
Law Offices of Joshua B. Kons, LLC
50 Albany Turnpike (Suite 4024)
Canton, CT 06019
*Attorneys for Plaintiff Tashanna B. Golden*

Gregory T. Casamento, Esq.
R. James DeRose III, Esq.
Locke Lord LLP
Brookfield Place
200 Vesey Street (20th Floor)
New York, NY 10281
*Attorneys for Defendants National Collegiate
Student Loan Trust 2006-4 (NCT 2006) and
GS2 2016-A (GS2)*

J. Matthew Goodin, Esq.
Locke Lord LLP
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
*Attorneys for Defendants National Collegiate
Student Loan Trust 2006-4 (NCT 2006) and
GS2 2016-A (GS2)*

Charles F. Kaplan, Esq.
Perry, Guthery, Haase & Gessford P.C.
L.L.O.
233 South 13th Street (Suite 1400)
Lincoln, NE 68508
*Attorneys for Defendant Firstmark Services
LLC*

Barbara L. Seniawski, Esq.
The Seniawski Law Firm PLLC
1460 Broadway (4th Floor)
New York, NY 10036
*Attorneys for Defendant Firstmark Services
LLC*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the Motion of the defendants National Collegiate Student Loan Trust 2006-4 (NCT 2006) and GS2 2016-A (GS2) ("NCT"), Pennsylvania Higher Education Assistance Agency d/b/a American Education Services ("PHEAA"), and Nelnet Servicing, LLC d/b/a Firstmark Services ("Firstmark") (collectively, the "Defendants") for an order pursuant to Federal Rule of Evidence 702 to strike the expert report of Mark Kantrowitz, submitted by the plaintiff Tashanna Golden, in support of her motion for partial summary judgment.  The Defendants argue, in substance, that Mr. Kantrowitz's expert testimony and report impermissibly sets forth legal opinions and conclusions, and that legal conclusions are the task of the Court, not an expert witness.[1]  They state that "[i]t is well settled, . . . that this is not a proper area for expert testimony and an expert report that does this must be excluded.  Therefore, this Court should strike the report and not give it any consideration in ruling on plaintiff's motion for partial summary motion."  Defendants' Memorandum of Law in Support of Motion to Strike (the "Defs' Mem."), ECF No. 384, at 1.

---

[1] The Court entered an oral decision on the Motion to Strike on January 19, 2022, and as set forth on the record of that hearing, the Court granted in part and denied in part the Defendants' motion.  The Court also identified those portions of the Expert Report of Mark Kantrowitz that would not be considered on the record of the January 19, 2022 hearing.  The Court's findings of fact and conclusions of law as set forth on the record of the January 19, 2022 hearing are incorporated herein by reference.  The Court enters this Memorandum Decision to set forth the legal standards that are applicable to the Motion to Strike and to describe the application of those standards to the questions presented by this motion.

Ms. Golden opposes the Motion to Strike.  She argues, in substance, that Mr. Kantrowitz

is an expert in student financial aid and qualified education loans, and that this expertise and

subject matter, not impermissible legal conclusions, is the subject of his Report.  As she states:

> Mr. Kantrowitz is not, as Defendants claim, offering legal conclusions, or
> usurping the role of this Court as the ultimate arbiter of whether or not Ms.
> Golden's loans are dischargeable.  Rather, his testimony provides helpful context
> to the Court about how the regulatory scheme governing the dischargeability of
> private student loans actually operates.

Plaintiff's Opposition (the "Plf's Opp."), ECF No. 386, at 1.

### Jurisdiction and Authority To Enter a Final Order

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code

Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as

amended by the Order dated December 5, 2012, of the United States District Court for the

Eastern District of New York.  In addition, this Court may adjudicate these claims to final

judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b),

and to the extent that they are not core proceedings, pursuant to Judiciary Code Section 157(c)

because the parties have stated their consent to this Court entering a final judgment.  Jan. 19,

2022 Hearing Tr. at 11:14-12:17.  *See Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 671

(2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with

the consent of all the parties to the proceeding" (quoting 28 U.S.C. § 157(c)(2)).

### Selected Procedural History

*Ms. Golden's Bankruptcy Case*

On February 29, 2016, Ms. Golden filed a voluntary petition for relief under Chapter 7 of

the Bankruptcy Code.  On August 3, 2016, Ms. Golden received a discharge in her bankruptcy

case.  On December 6, 2016, Ms. Golden filed a motion to reopen her bankruptcy case to permit

her to seek a determination of the dischargeability of her student loan debt, and related relief.

Case No. 16-40809; ECF No. 19.  That motion was heard and granted by the Court on January 5,

2017, and on January 10, 2017, the Court entered an order reopening Ms. Golden's bankruptcy

case to permit her "to seek a determination of the dischargeability of her student loan debt."

Case No. 16-40809; ECF No. 21.

<u>This Adversary Proceeding</u>

On January 18, 2017, Ms. Golden commenced this adversary proceeding by filing the

Complaint.  ECF No. 1.  On October 17, 2017, Ms. Golden filed an Amended Complaint, adding

class action allegations and new parties.  ECF No. 32.  In this action, she seeks "a determination

that certain debts that she incurred as a student are not nondischargeable student loan debts under

Bankruptcy Code Section 523(a)(8)(B), and a finding of contempt against the Defendants for

civil contempt for willful violations of the bankruptcy discharge injunction."  Mem. Decision on

Firstmark Services' Motion to Compel Arbitration at 2, ECF No. 88 (citing Complaint).

<u>Ms. Golden's Motion for Partial Summary Judgment</u>

On July 13, 2020, Ms. Golden filed a Motion for Partial Summary Judgment (the "Summ.

Judgment Mot.").  ECF No. 244.  In her Summary Judgment Motion, she seeks, in substance:

> an order from this Court declaring that each loan held or serviced by Defendants
> that either exceeded the cost of attendance or was made to a person who was not
> attending a Title IV institution has been discharged by each class member's
> bankruptcy discharge order and that the continued collection on such loans is in
> violation of § 524 of the Bankruptcy Code and the applicable discharge orders.

Summ. Judgment Mot. at 1.

On December 4, 2020, the Defendants each filed opposition to the Summary Judgment

Motion.  PHEAA's Opposition to Plaintiff's Motion for Partial Summary Judgment ("PHEAA

Opp."), ECF No. 327; Firstmark's Opposition to Plaintiff's Motion for Partial Summary

Judgment ("Firstmark Opp."), ECF No. 329; NCT's Opposition to Plaintiff's Motion for Partial

Summary Judgment ("NCT Opp."), ECF No. 336.  And on January 15, 2021, PHEAA filed supplemental opposition to the Summary Judgment Motion.  ECF No. 357.  In their opposition, the Defendants argue, in substance, among other things, that no class has yet been certified, and several issues of material fact prevent the Court from granting the Summary Judgment Motion. PHEAA Opp. at 1; Firstmark Opp. at 3; NCT Opp. at 1.

On February 5, 2021, Ms. Golden filed a reply in further support of the Partial Summary Judgment Motion, including the Declaration and Report of Mr. Kantrowitz, and the Reply Declaration of George F. Carpinello.  ECF Nos. 369, 372, 373; Expert Report of Mark Kantrowitz (the "Kantrowitz Report"), ECF No. 372; Plaintiff's Reply Memorandum in Support of the Motion for Partial Summary Judgment (the "Summ. Judgment Reply"), ECF No. 369.  In her reply, she argues, in substance, that Ms. Golden merely seeks a determination to class-wide liability, and what loans will be subject to this liability, will be determined later.  Summ. Judgment Reply at 1.

*The Defendants' Motion to Strike Mr. Kantrowitz's Declaration and Report*

The Defendants' Motion to Strike has been addressed extensively by the parties, in memoranda of law, letter briefs, and argument.  These submissions are described in greater detail below.  *See infra* pp. 12-20.  The parties have also conferred, at the suggestion and with the encouragement of the Court, on pathways to identify and clarify the issues and, if possible, to identify and limit the areas of disagreement with respect to Mr. Kantrowitz's Report.  To this end, and at the request of the Court, the Defendants filed a marked version of Mr. Kantrowitz's Report, identifying the portions that they argue should be stricken or disregarded and be excluded from evidence

From time to time, and on September 17, 2021, the Court held pre-trial and discovery

conferences and hearings on the Motion to Strike, at which Ms. Golden and the Defendants appeared and were heard.

From time to time, and on September 29, 2021, and November 18, 2021, the Court held further hearings on the Motion, at which the Defendants and Ms. Golden appeared and were heard, and the parties addressed the supplemental filings.

And as noted, on January 19, 2022, the Court entered an oral decision granting in part and denying in part the Motion to Strike, and the record of that hearing was so-ordered.

## Discussion

### *The Scope of the Dispute Before the Court on this Motion to Strike*

At this stage in these proceedings, it is worth noting where the parties agree, and where they disagree. Needless to say, they disagree emphatically as to whether all of Mr. Kantrowitz's Report should be considered by the Court as part of the record on Ms. Golden's Motion for Partial Summary Judgment. But they also agree as to several significant pieces of this picture.

At the outset, Ms. Golden and the Defendants do not dispute that Mr. Kantrowitz is a highly qualified individual, and specifically, that he is qualified to testify as an expert on certain matters. And notably, as the record shows, Mr. Kantrowitz is not a lawyer. As the Court stated, and counsel agreed, at the September 17 hearing:

> THE COURT: It seems to me that the record so far suggest[s] that there is at least some appropriate scope that Mr. Kantrowitz has been offered as an expert, that his expertise has not been disputed, that at least some portion of his expert testimony in the form of the report is not disputed to be appropriately within the subject matter expertise of his expertise and within the boundaries [of admissible evidence]. . . .

Sept. 17, 2021 Hearing Tr. at 99:3-9.

Indeed, as also set forth on the record of the September 17 hearing, the parties agree about the most basic principle that underlies these issues – that is, that the Court is required to

exclude expert testimony that expresses a legal conclusion.  Again, as the Court stated, and

counsel agreed, at the September 17 hearing, "it is also undisputed and the record confirms that

there are boundaries [to expert testimony] that can't be transgressed."  Sept. 17, 2021 Hearing Tr.

at 99:10-12.

And as the Court confirmed, "I will not consider nor be influenced by a non-lawyer's

conclusion or testimony as to conclusions of law."  Sept. 17, 2021 Hearing Tr. at 99:17-19.  As a

consequence, and again as counsel agree, the question on this Motion to Strike is "how that

series of determinations . . . apply in the particular circumstance" of Mr. Kantrowitz's Report.

Sept. 17, 2021 Hearing Tr. at 99:21-23.

### _Mr. Kantrowitz's Qualifications as an Expert_

The record shows, and the parties do not dispute, the following facts concerning Mr.

Kantrowitz's background and expertise.  Mr. Kantrowitz holds two bachelors' degrees, one in

philosophy and one in mathematics.  Kantrowitz Report at 19.  He also holds a Master of Science

degree in computer science from Carnegie Mellon University.  _Id_.  Mr. Kantrowitz is president

of a consulting firm, "focused on computer science, artificial intelligence and statistical and

policy analysis."  Kantrowitz Report at 16.  The clients of his consulting firm have "included the

Advisory Committee on Student Financial Assistance (ACSFA) a committee established by

Congress to advise it on student financial aid policy."  _Id_.

Mr. Kantrowitz has testified before Congress and in civil cases related to student loans

and education expenses.  Kantrowitz Report at 16, 18.  He has served as a publisher and an

executive for several consumer-directed websites addressing financial aid, student loans, and

other information related to meeting the costs of higher education.  Kantrowitz Report at 16-17.

Mr. Kantrowitz is the author of five books about student financial aid and has been quoted in

several newspaper articles.  Kantrowitz Report at 17-18.

*Mr. Kantrowitz's Declaration and Expert Report*

Mr. Kantrowitz's Report addresses several subjects.  In Part I of his Report, entitled "Introduction," Mr. Kantrowitz describes his report as his "findings and opinions formed to date" in this adversary proceeding, and states that it is based upon his review of the Defendants' opposition to Ms. Golden's Summary Judgment Motion, among other sources.  Kantrowitz Report at 1.

In Part II of his Report, entitled "Cost of Attendance is a Term of Art," Mr. Kantrowitz describes his understanding of the term "cost of attendance," and contrasts his understanding with the description set forth by the Defendants in their opposition to the Summary Judgment Motion.  Kantrowitz Report at 2.  He notes that PHEAA and NCT argue that the University of Pennsylvania cost of attendance for the 2006-2007 academic year was $56,380.  *Id.*

Mr. Kantrowitz disagrees with the Defendants' figure for the 2006-2007 "cost of attendance," for several reasons.  First, Mr. Kantrowitz states that the "cost of attendance" cannot include medical insurance because it "is not part of the cost of attendance as defined by the Higher Education Act of 1965."  *Id.*  Second, he disagrees that Ms. Golden's direct-to-consumer loan from NCT is within the cost of attendance because "the loan exceeded the cost of attendance after subtracting scholarships, grants, and other loans and therefore could not have been borrowed solely to pay for qualified higher education expenses."  Kantrowitz Report at 5.  And Mr. Kantrowitz disagrees with the "individualization" of the "cost of attendance" figure.  Kantrowitz Report at 4.  Mr. Kantrowitz believes the only "individualization" of cost of attendance is the three room and board options reported to the Integrated Postsecondary Education Data Systems, known as IPEDS.  *Id.*  And Mr. Kantrowitz asserts, to the extent "cost

of attendance" can be individualized among students, it is at the discretion of the college

financial aid administrator and occurs very rarely.  Kantrowitz Report at 4-5.

Mr. Kantrowitz states that this contrasts with the Defendants' view.  Kantrowitz Report at

6 (discussing Defendants' Supplemental Statement of Additional Facts (the "Defs' Supp.

Statement of Additional Facts"), ECF No. 360).  As the Defendants argue:

> The data relating to cost of attendance that colleges and universities, including the
> University of Pennsylvania, report to IPEDS is not specific to each student and
> does not reflect the many variations in cost of attendance between students; rather
> the data reported to IPEDS consists of an "average" which is not detailed or
> individualized enough to calculate any individual student's cost of attendance.

Defs' Supp. Statement of Additional Facts at 4.

Mr. Kantrowitz explains that, pursuant to the requirements of Title IV federal student aid

programs, higher education institutions are required to report their cost of attendance to IPEDS,

or face fines or administrative action.  He disagrees that data reported by IPEDS would include

medical insurance as part of cost of attendance.  Kantrowitz Report at 3.  Mr. Kantrowitz

explains that IPEDS is given different data based on whether the program is an undergraduate or

graduate program.  *Id.*

Mr. Kantrowitz also reviews statistical data about how frequently a college administrator

may use his or her professional judgment to modify the "cost of attendance" in determining a

student's eligibility for federal student aid.  Kantrowitz Report at 5.  He draws a distinction

between cost of attendance for federal student aid purposes and what is reported to IPEDS.  He

states, in substance, that the number reported to IPEDS is not individualized among borrowers,

and that college administrators may adjust the cost of attendance for student aid purposes.  He

also notes that this occurs relatively rarely.  Kantrowitz Report at 4-5.

In particular, Mr. Kantrowitz states, "aside from the choice of the student's course of

study and the choice of one of the three room and board options (On Campus, With Parent, Off

Campus), all of which is reported to IPEDS, there is no individualization of a student's cost of

attendance with regard to whether a loan is a qualified education loan."  Kantrowitz Report at 4.

He also states:

> Even if the definition of qualified higher education expenses at 26 USC 221(d)(2)
> permitted individualization in the definition of cost of attendance, use of
> professional judgment to adjust the cost of attendance is relatively rare, in my
> experience.  The Office of the Inspector General at the U.S. Department of
> Education reported that professional judgment was exercised nationally in
> between 2.25% to 2.42% of cases.

*Id*.

Mr. Kantrowitz's discussion of "Cost of Attendance is a Term of Art" concludes with his

statement that the Defendants' assertions that "IPEDS is 'a general number that is not unique to a

profession or student" are "contradicted by the indisputable fact that IPEDS does have separate

fields for tuition and required fees for each program," as shown by the reporting of different

figures for tuition and required fees for programs, for example, in Law and Dentistry.

Kantrowitz Report at 6.

In Part III of his Report, entitled "School Certification is Not a Safe Harbor for Lenders,"

Mr. Kantrowitz states his disagreement with the Defendants' assertion that a school's

certification of a private student loan "provides a safe harbor for the lender."  Kantrowitz Report

at 7-8.  He states that while school certification of a direct-to-consumer loan, such as Ms.

Golden's NCT loan, "reduce[s] the likelihood that a private student loan is not a qualified

education loan, school certification does not guarantee that the student's expenses fall within the

cost of attendance that determines whether a loan is a qualified education loan."  Kantrowitz

Report at 8.

Mr. Kantrowitz also reviews the Higher Education Act of 1965 and the requirement at 20

U.S.C. § 1094(a)(6), which bars colleges from certifying federal education loans in excess of the amount that the student is eligible to borrow. Kantrowitz Report at 7. And he reviews the relationship between the safe harbor established in the Truth in Lending Act or TILA, 15 U.S.C. § 1638(e)(5)(C), and the disclosure requirements established by the Student Loan Sunshine Act. *Id*.

Mr. Kantrowitz states that qualified education loans are loans made solely for qualified education expenses, and notes that 26 U.S.C. § 221(d)(2) states that qualified education expenses are based on the definition of cost of attendance in the Higher Education Act of 1965. He also notes that the "cost of attendance" definition was the one in effect on August 4, 1997. He specifies that later changes to the Higher Education Act's definition of cost of attendance apply only to eligibility for federal student aid, not qualified education loans. Kantrowitz Report at 8.

Mr. Kantrowitz also explains how a private lender can ensure the private student loan is a qualified education loan. He identifies "other sources of information to ensure that the loan is a qualified education loan, including:

> Asking the borrower about individualization of cost of attendance by the college financial aid administrator (e.g., housing status, differential tuition based on academic major, dependency care costs, disability-related expenses, and study abroad costs);

> Asking the borrower about certain post-1997 inclusions in the cost of attendance (e.g., purchase of a personal computer, professional licensing and certification fees), that should be excluded from the cost of attendance figures that apply to determining whether a loan is a qualified education loan;

> Asking the borrower about the various exclusions from EFA; and

> Confirming with the three credit reporting agencies – TransUnion, Experian and Equifax – that the borrower does not have any other private education loans.

*Id*.

In Part IV of his Report, entitled "Bar Study Loans Are Not Qualified Education Loans,"

10

Mr. Kantrowitz states that the "cost of attendance" cannot include costs associated with professional credentials and licensing because these costs were not identified in 20 U.S.C. § 1087II prior to August 5, 1997.

Mr. Kantrowitz describes the Federal Student Aid Handbook as regulatory guidance from the U.S. Department of Education to college financial aid administrators.  The Handbook describes cost of attendance as limited to specific categories.  One such category is "an allowance for the one-time direct costs of obtaining a first professional license or certificate for students who are enrolled in a program that requires such professional licensure or certification." Kantrowitz Report at 10.  He explains the Handbook states a student's cost of attendance cannot include the cost of a test prep course that is outside of the student's educational program.  In addition, living expenses incurred after the student graduates are not considered part of the cost of attendance, because the student is no longer an eligible student.  *Id.*  Based on this information, Mr. Kantrowitz states that bar study loans cannot be qualified education loans.  *Id.* And he states that even if "cost of attendance" includes the costs of obtaining a professional license, it cannot include living expenses while getting that license.  *Id.*

Finally, Mr. Kantrowitz provides definitions of statements made by the University of Pennsylvania's Financial Aid Office related to CitiAssit's Bar Study Loan.  He explains that statements made by a financial aid office for this purpose are not certification that the loan is a qualified education expense.  Kantrowitz Report at 12.

In Part V of his Report, entitled "Incorrect Characterization of IRS Reporting Requirements," Mr. Kantrowitz states that the regulations cited by the Defendants address IRS reporting requirements for income tax purposes, rather than for purposes of defining a qualified education loan under 26 U.S.C. § 221(d).  Kantrowitz Report at 13.

In Part VI of his Report, entitled "Reductions in Qualified Higher Education Expenses Are Not Limited to Tax-Free Education Benefits," Mr. Kantrowitz states that the function of certain definitions in the Tax Code is to prevent student taxpayers from claiming multiple tax benefits from the same qualified education expense.  Kantrowitz Report at 14.  He also explains that "this does not preclude subtracting other financial aid and other types [of] education benefits, including taxable education benefits, from the qualified higher education expenses when determining whether a private student loan is qualified."  *Id.*

And Mr. Kantrowitz states that a "qualified education loan" is defined in 26 U.S.C. § 221(d)(1) to be "indebtedness incurred by the taxpayer solely to pay for qualified higher education expenses."  He notes that the Defendants argue that pursuant to Section 221(d), qualified higher education expenses must be calculated by reducing cost of attendance "'by only five narrow categories.'"  *Id.*  Mr. Kantrowitz states that these "five narrow categories" are to prevent multiple tax benefits for the same qualified education loan, not to determine cost of attendance.  *Id.*

*The Defendants' Memorandum in Support of the Motion to Strike*

On March 8, 2021, the Defendants filed this Motion to strike the expert testimony of Mr. Kantrowitz, as set forth in his Report (the "Motion to Strike") (ECF No. 383) together with their Memorandum of Law in Support of the Motion to Strike.  They argue that the Kantrowitz Report violates Federal Rule of Evidence 702 because it "purports to interpret the language of several statutes and then makes a series of legal conclusions about whether or not the loans at issue in this case comply with Mr. Kantrowitz's personal reading and interpretation of those statutes." Defs' Mem. at 1.  They argue that the unsupported legal conclusions in the Kantrowitz Report usurp the role of the Court by interpreting the law and setting forth the conclusion that certain

categories of student loans are dischargeable.  Defs' Mem. at 2.  And they state that the

Kantrowitz Report is "a textbook example of a legal brief masquerading as an expert opinion"

because it interprets the meanings of a series of statutes in the Bankruptcy Code, the Higher

Education Act, and the IRC as the basis for legal conclusions that go to the heart of the case.

Defs' Mem. at 3-4.

The Defendants point to the Second Circuit's decision in *United States v. Scop*, and argue

that *Scop* requires that the Kantrowitz Report be excluded.  Defs' Mem. at 6 (citing *United States*

*v. Scop*, 846 F.2d 135, 136 (2d Cir. 1988)).  They argue that "*Scop* means that testimony

interpreting a legal term of art is improper and should be excluded."  Defs' Mem. at 6.  And they

point to Section II of the Kantrowitz Report, entitled "Cost of Attendance Is a Term of Art," as

an example of how Mr. Kantrowitz crosses this line.  Defs' Mem. at 7 (citing Kantrowitz Report

at 2).

The Defendants also identify several portions of the Report that, they argue, are statutory

legal interpretation and legal conclusion.  Defs' Mem. at 4-5.  And they argue that the

Kantrowitz Report is not helpful here because Mr. Kantrowitz "admits that he is doing little more

than simply interpreting terms that are already 'expressly defined' in relevant statutes, such as

'cost of attendance,' 'qualified higher education expenses' and 'qualified education loans'" –

again, crossing into territory that is plainly reserved for the Court, not an expert witness.  Defs'

Mem. at 7.

*Ms. Golden's Opposition to the Motion to Strike*

On April 2, 2021, Ms. Golden filed the Plaintiff's Opposition.  She disagrees that Mr.

Kantrowitz's Report strays into areas that are reserved for the Court.  She responds that Mr.

Kantrowitz is an expert on issues of student financial aid and the factors that make a private

student loan a qualified education loan.  And he "has extensive experience advising colleges and universities about student loan programs and has frequently consulted for and advised the federal government about student loan programs and proposed legislation."  Plf's Opp. at 1.

Ms. Golden also responds that the Kantrowitz Report provides helpful information that would not be within the expected knowledge of a lay person, as it provides information about the regulatory scheme and industry practice for private student loans.  And she responds that the "gatekeeping" function identified by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is largely irrelevant because this case will not be tried by a jury.  As she states, "'[i]t is well-established that the *Daubert* gatekeeping standard is applied more flexibly when the judge is the factfinder, and accordingly more rigorously when the expert testimony is to be presented to a jury.'"  Plf's Opp. at 2 (quoting *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 629 (S.D.N.Y. 2007)).

Ms. Golden also responds that Mr. Kantrowitz relies on his decades of experience to explain how the regulatory scheme and industry practices work, and how they apply to the situation here.  She states that an expert witness, such as Mr. Kantrowitz, can "'explain sophisticated aspects of a regulatory system'" if such testimony "'shed[s] light on activities not within the common knowledge of a regular juror.'"  Plf's Opp. at 3 (quoting *United States v. Duncan*, 42 F.3d 97, 101 n.3 (2d Cir. 1994).

And Ms. Golden identifies examples of how, in her view, Mr. Kantrowitz provides important and useful information to the Court.  These examples include:

- His explanation that university "certification" of a bar loan serves no relevant purpose for deciding the issues before the Court.  Plf's Opp. at 3-4 (citing Kantrowitz Report at 12-13).  Ms. Golden states that this is not a legal conclusion, rather an explanation of what "school certification" means in the context of different types of education loans, and how the process works.

14

- His explanation about the two distinct applications of the term "cost of attendance." Plf's Opp. at 4.  For example, Mr. Kantrowitz "clarifies how the cost of attendance, as described by the two witnesses from University of Pennsylvania (Anthony Henry and Elaine Varas) is entirely different from the cost of attendance under I.R.C. § 221(d)(2)."  Plf's Opp. at 5.  Ms. Golden states that this is helpful because it explains industry practices and different ways in which this term is used across the industry.  *Id.*

- His explanation of how the cost of attendance is calculated.  Ms. Golden argues that this is useful and appropriate because Mr. Kantrowitz "explains how the cost of attendance should be calculated for the purposes of determining dischargeability under § 523(a)(8)," which is likely to assist the trier of fact.  Plf's Opp. at 6.

<u>The Defendants' Reply</u>

On April 16, 2021, the Defendants filed a reply in further support of the Motion to Strike (the "Reply").  ECF No. 389.  The Defendants reply that this "is not a *Daubert* motion," as it does not seek a determination about whether the Kantrowitz Report meets the minimum thresholds of reliability.  Reply at 1.  They also note that Ms. Golden "agrees . . . [that '[i]t is undisputed that an expert witness cannot offer legal conclusions.'"  Reply at 1 (quoting Plf's Opp. at 3).  Rather, they state, the Kantrowitz Report is inadmissible because it "recites and opines on the law, and then makes a series of legal conclusions applying his view of the law to the facts of the case."  Reply at 1.

In addition, the Defendants reply that Mr. Kantrowitz draws legal conclusions about what 'cost of attendance' means and 'how the regulatory scheme governing the dischargeability of private student loans actually operates'" – and "this type of opinion evidence is prohibited under the Federal Rules of Evidence."  Reply at 1, 2.  They argue that, for example, the Kantrowitz Report "makes an explicit legal conclusion regarding the NCT Loan and qualified education expenses under the Internal Revenue Code" by stating that "'[t]he National Collegiate Trust (NCT) Loan for $7,103 . . . exceeded the cost of attendance after subtracting scholarships, grants

and other loans and therefore could not have been borrowed solely to pay for qualified higher education expenses.  Accordingly, it is not a qualified education loan.'"  Reply at 3 (quoting Kantrowitz Report at 4 n.5).

The Defendants also reply that "'[h]elpfulness' does not somehow override the prohibition on an expert offering legal conclusions.  Expert testimony containing legal conclusions is a category of evidence that simply is not allowed."  Reply at 4 (citing *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64 (S.D.N.Y. 2001)).  And they reply that "[Mr. Kantrowitz] spends five pages attempting to define and interpret a legal term of art – 'cost of attendance' – and then applying his definition of that term to the Bankruptcy Code to conclude that the NCT Loan is dischargeable because it exceeds the cost of attendance as he defines it."  Reply at 5 (citing Kantrowitz Report at 2-7).

And the Defendants reply that the Second Circuit has rejected the premise that an expert witness may offer legal conclusions if a statutory or regulatory scheme is "complex."  Reply at 5 (citing *F.A.A. v. Landy*, 705 F.2d 624 (2d Cir. 1983)).  Therefore, the Defendants conclude, the Kantrowitz Report should be excluded because it seeks to usurp the Court's duty to decide the law on Ms. Golden's Motion for Partial Summary Judgment.

And finally, the Defendants disagree that they "obfuscate the meaning of 'cost of attendance.'"  Reply at 6.  Instead, they urge the Court to consider the applicable statutes and "the testimony given by officials from the University of Pennsylvania . . . from witnesses who actually administer federal and private financial aid on a daily basis at a prestigious R-1 classified university."  Reply at 7.

*Ms. Golden's June 4, 2021 Letter*

On June 4, 2021, in response to a question from the Court at the May 27, 2021 hearing,

Ms. Golden filed a letter stating that she relies on Mr. Kantrowitz's testimony in the Opening Brief in Support of the Motion for Class Certification and in the Reply Brief in Support of the Motion for Partial Summary Judgment in this adversary proceeding.  ECF No. 395.

*The Defendants' June 7, 2021 Letter*

On June 7, 2021, Firstmark filed a letter on behalf of all Defendants, responding to Ms. Golden's June 4, 2021 letter and stating that the "Defendants' pending Motion to Strike" addresses only Mr. Kantrowitz's Report "on which [Ms. Golden] relies in support of her Motion for Partial Summary Judgment."  ECF No. 396.  In that letter, the Defendants also note that Mr. Kantrowitz prepared an expert report in each of the *Homaidan* and *Golden* cases and state that this Motion to Strike asks the Court to strike the Kantrowitz Report and not to consider it in connection with Ms. Golden's Motion for Partial Summary Judgment.  The Defendants also state that they will separately address Mr. Kantrowitz's Report in *Homaidan* in their opposition to Ms. Golden's Motion for Class Certification in that case.

*The Defendants' Supplemental Memorandum of Law*

On September 22, 2021, PHEAA, joined by the other Defendants, filed a supplemental memorandum of law in support of the Motion to Strike to address three cases identified by counsel for Ms. Golden at the September 17, 2021 hearing.  Defendants' Supplemental Memorandum of Law in Support of the Motion to Strike (the "Defs' Supp. Mem."), ECF No. 428.  The Defendants argue that three new cases cited by Ms. Golden at the September 17, 2021 hearing, *Kortright Capital Partners LP v. Investcorp Investment Advisors Ltd.*, 392 F. Supp. 3d 382 (S.D.N.Y. 2019), *Bank of New York Mellon Trust Co. v. Solstice ABS CBO II, Ltd.*, 910 F. Supp. 2d 629 (S.D.N.Y. 2012)*,* and *51 Webster St., Inc. v. Atlantic Richfield Co.*, 2019 WL 76573 (W.D.N.Y. Jan. 2, 2019), do not "provide[] any new guidance or insight to this Court with

respect to defendants' Motion to Strike."  Instead, they state, these decisions "merely recite the general standards for the admissibility of expert testimony under *Daubert*, all of which are subject to agreement (as the Court noted at the September 17 hearing), but "do not address the requirement to strike expert testimony submitted in support of a motion for summary judgment," and in particular, the standard for "legal opinions couched as expert testimony," which "must be excluded from the record and not merely disregarded."  Defs' Supp. Mem. at 4.

*Ms. Golden's Response to the Defendants' Supplemental Memorandum of Law*

On September 24, 2021, Ms. Golden filed a further memorandum of law responding to the Defendants' September 22, 2021 submission, and supplementing her opposition to the Motion to Strike.  Plaintiff's Response to Defendants' Supplemental Memorandum of Law in Support of the Motion to Strike (the "Response to Supp. Mem."), ECF No. 429.  She responds that the parties do not dispute that Mr. Kantrowitz has decades of experience related to higher education financing and has ample experience to be a reliable expert for the Court.  Response to Supp. Mem. at 1.  She also responds that, because there will not be a jury trial here, "the Court has wide discretion to consider the expert report and to decide for itself what is relevant and reliable and what is not."  *Id*.  And Ms. Golden states that the new cases referenced at the September 17, 2021 hearing reaffirm this distinction, and do not limit the principle to *Daubert* motions.  Response to Supp. Mem. at 2.

*The Defendants' Supplemental Reply Memorandum*

On September 27, 2021, the Defendants filed a supplemental reply memorandum of law in support of the motion to strike Mr. Kantrowitz's testimony.  Defendants' Supplemental Reply Memorandum of Law in Support of the Motion to Strike (the "Supp. Reply Mem."), ECF No. 432.  And that same day, the Defendants, at the request of the Court, filed a marked version of

the Kantrowitz Report, identifying the portions that they argue should be stricken or disregarded and be excluded from evidence.  ECF No. 433.

The Defendants state that Ms. Golden seeks to have the Court view the Motion to Strike, incorrectly, through the lens of *Daubert*.  They also state that Mr. Kantrowitz's "experience and credentials" are not relevant to the determination of whether his Report contains legal conclusions.  Supp. Reply Mem. at 1.  And the Defendants argue that the new cases cited by Ms. Golden at the September 17 hearing address *Daubert* issues and not the inadmissibility of expert legal opinions.  Supp. Reply Mem. at 1-2.

In particular, the Defendants argue the court's *Daubert* analysis in *Kortright Capital Partners LP* does not apply to expert testimony regarding legal opinion.  They also argue because *Kortright* was a ruling on a motion in limine, the judge could defer a ruling on certain testimony until after the trial.  They point out that the same cannot not be done here, because this Motion to Strike concerns a pending motion for summary judgment.  Supp. Reply Mem. at 3-4.

And the Defendants argue that Ms. Golden takes two short quotes out of context in *Bank of New York Mellon Trust Co.* and "all of the decisions to which [Ms. Golden refers] in its discussion of *Bank of New York Mellon* concern *Daubert* motions or objections."  Supp. Reply Mem. at 1.

In addition, the Defendants state that the decision in *51 Webster Street* is mischaracterized by Ms. Golden, as that case involved a pre-trial motion in limine and the question of when a decision on an evidence objection should be made, and here, the Motion to Strike arises in the context of Ms. Golden's Motion for Partial Summary Judgment.  Supp. Reply Mem. at 2-3.  The Defendants argue that when a court decides a pre-trial motion in limine, it is not mandatory to determine whether the testimony should be excluded before the testimony is

actually offered at trial, and "that [the] procedural posture is altogether different than the situation confronting this Court on the Motion to Strike" because this expert testimony is being offered in support of a summary judgement motion.  Supp. Reply Mem. at 3.

Finally, the Defendants argue that Ms. Golden's opposition memorandum is an effort to mislead the Court into applying the *Daubert* standard, and ignores the rule in the Second Circuit that legal opinion expert testimony is inadmissible.  As the Defendants state, "plaintiff's opposition memorandum is a transparent effort to mislead the Court into (i) applying the standard under *Daubert* and (ii) ignoring the clear rule of law from the Second Circuit and all of the district courts in this Circuit that legal opinion must be excluded without exception in all circumstances."  Supp. Reply Mem. at 4.

And on September 27, 2021, Ms. Golden filed a letter responding to the Defendants' designation of portions of Mr. Kantrowitz's Report, and stating that the parties had agreed to a three-hour deposition of Mr. Kantrowitz, limited to the matters addressed in his declaration. ECF No. 434.

### *Federal Rule of Evidence 702*

Federal Rule of Evidence 702 addresses the admissibility of expert evidence.  The proponent of the testimony "has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence."  FED. R. EVID. 702 Advisory Committee Notes (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).  And as the Second Circuit has stated, "[i]t is well-established that 'the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence.'"  *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962)).

Viewed another way, as the Supreme Court has observed, "[w]e have held that abuse of discretion is the proper standard of review of a district court's evidentiary rulings," and noted that "[i]ndeed, our cases on the subject go back as far as *Spring Co. v. Edgar*, 99 U.S. 645, 658, 25 L. Ed. 487 (1879)." *General Electric Co. v. Joiner*, 522 U.S. 136, 141 (1997) (citing cases).  As the Court also noted, "the appellate court will not reverse in such a case, unless the ruling is manifestly erroneous." *General Electric Co.*, 522 U.S. at 142.

Courts recognize that questions concerning the admissibility of expert evidence and the court's "gatekeeping" function are viewed somewhat differently in a bench trial setting.  As one Court of Appeals observed, "[w]here the gatekeeper and the factfinder are one and the same – that is, the judge – the need to make such decisions prior to hearing the testimony is lessened." *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006).  As another court found, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir. 2005).

## *Daubert and reliability*

As the Supreme Court held in *Daubert* and elsewhere, trial judges act as gatekeepers to exclude unreliable expert testimony.  *See* FED. R. EVID. 702 Advisory Committee Notes (citing *Daubert*).  But here too, as the parties agree, this is not a *Daubert* motion, and even the most reliable expert cannot be permitted to testify as to a legal conclusion.

## *Expert testimony that expresses a legal conclusion*

Courts agree, and the parties do not dispute, that "'in evaluating the admissibility of expert testimony, this Court requires the exclusion of testimony [that] states a legal conclusion.'" *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d at 62-63 (quoting *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000)).  *See Duncan*, 42 F.3d at 101, 103 (finding that an

IRS agent's expert testimony and "factual conclusions" as to the falsity of certain IRS filings was admissible in a prosecution for bank fraud and conspiracy) (citing cases); *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (observing that "although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts"); *Scop*, 846 F.2d at 140 (stating that "[t]hese provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day").

As the Second Circuit has also noted, "this circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)). The Advisory Committee Notes to Federal Rule of Evidence 704 explain the rationale and policy considerations behind the prohibition against expert testimony expressing legal opinion:

> Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach.
>
> They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" would be allowed.

FED. R. EVID. 704 Advisory Committee Notes.

That is, and again as the parties agree, when considering the admissibility of expert testimony, special attention must be paid to assure "that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Bilzerian*, 926 F.2d at 1294.

Viewed another way, and as courts agree, while there is an absolute prohibition on

experts offering legal conclusions, the purpose of expert testimony is to "help the trier of fact to understand the evidence." FED. R. EVID. 702. And a judge in a bench trial – or on a motion for summary judgment – can recognize and disregard any legal conclusions made by experts far more easily and reliably than a lay-person jury.

Simply put, it is not the expert's role to tell the court what outcome to reach or to replace the court's judgment with that of the expert. At the same time, as the Advisory Committee Notes illustrate, an expert may be permitted to offer opinions, based on his or her experience, that assist the court in deciding the questions in the case.

In *United States v. Scop*, the Second Circuit excluded expert testimony in a criminal securities fraud case where the expert was asked to testify on, in substance, the central issues in the case, including "whether there was a scheme to defraud investors." *Scop*, 846 F.2d at 138. To that end, the expert addressed the meaning of several legal "terms of art" including, "manipulation," "scheme to defraud," and "fraud." *Scop*, 846 F.2d at 140. There, the court found, the expert "made no attempt to couch the opinion testimony at issue in even conclusory factual statements but drew directly upon the language of the statute and accompanying regulations concerning 'manipulation' and 'fraud.'" *Id.*

As a consequence, the expert's opinions would "invade the province of the court" and, in effect, instruct the jury as how it should decide the case – and that, the court found, required the expert's opinion to be excluded. That is, the expert's opinion testimony went far beyond expert testimony based on his experience, and instead, interpreted the applicable law, including certain key legal terms and concepts addressed the matters specifically to be decided by the court.

To the same effect, in *Marx & Co. v. Diners' Club, Inc.*, a civil case tried to a jury, the Second Circuit held that the trial court erred in permitting an expert witness to opine as to the

legal obligations of the parties under a contract for the registration of stock. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505 (2d Cir. 1977). There, the court found that trial court should not have permitted the witness to testify as to whether a delay of one year before registration statements for plaintiffs' stock became effective was "unreasonable," which was a key question in determining whether the defendants were liable. *Marx & Co.*, 550 F.2d at 509.

The Second Circuit found that permitting the expert's testimony "would give the appearance that the court was shifting to witnesses the responsibility to decide the case." *Marx & Co.*, 550 F.2d at 510. In excluding the expert's testimony, the court observed that "there is a knowledgeable gentleman [or gentlewoman] in a robe whose exclusive province it is to instruct the jury on the law." *Marx & Co.*, 550 F.2d at 512.

Other courts are in accord. *See, e.g., Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (stating that "[t]he problem with testimony containing a legal conclusion is in conveying the witness' unexpressed, and perhaps erroneous, legal standards to the jury.").

That is, as these cases confirm, expert testimony that exceeds the boundaries of opinions based on the expert's experience, and that enters the zone of legal opinion and even the ultimate issue to be decided by the court, should not be considered. But that does not mean that an expert may never offer an expert opinion on matters that may help to inform how a legal standard or test will be applied.

Courts in this Circuit also recognize that it may be appropriate to admit some portions of an expert's testimony, and to exclude others, on a general subject matter that touches on legal standards and how they apply in a particular context.

For example, in *In re Platinum-Beechwood Litigation*, the district court found that an expert witness would not be permitted to testify at trial on the "legal conclusion" that a defendant

"failed to meet its fiduciary duty . . . in various ways." *In re Platinum-Beechwood Litig.*, 469 F. Supp. 3d 105, 116 (S.D.N.Y. 2020). At the same time, the court permitted the expert to testify as to "(1) what a fiduciary or investment manager in a given context would ordinarily do according to relevant industry standards, (2) what the defendants here did instead, and (3) why the latter had the effect of defrauding or harming" the plaintiff. *Id.*

Expert testimony can also be of assistance to the court when the case involves understanding a complex regulatory structure or scheme. Here again, the proper province for the expert's testimony is not legal opinion or interpretation or application of the law, but experienced-based expert opinion as to the context, operation, use, or application of a regulatory scheme.

As one court in this Circuit observed, "'expert testimony is viewed as helpful in cases . . . involving complex statutes or issues outside of the general knowledge of the jury.'" *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 184 (S.D.N.Y. 2018) (quoting *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657 (3d Cir. 2000)). There, the district court permitted an expert to testify as to "the procedures under the complex law governing approvals of generic drugs, which is subject matter that is foreign to the average person." *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d at 184. Referring to the expert, the court continued, "[h]e does not provide 'legal conclusions' or opine on whether Defendants violated the Act, but simply explains the mechanics of drug approval." *Id.* And the court added, "if [his] testimony strays beyond that into matters that are irrelevant or otherwise inadmissible, I will be the first to disallow it." *Id.*

*            *            *

The Court turns to the question of whether some or all of Mr. Kantrowitz's Report should

be stricken because it crosses the line from permissible expert opinion to impermissible legal opinion.

As a preliminary matter, it is worth noting that the Court may strike or disregard portions of expert testimony that state legal opinions and conclusions, and consider other, permissible, expressions of expert opinion that do not cross that line.  That is, the question of whether to strike or disregard Mr. Kantrowitz's expert report is not a matter of "all or nothing."

As the cases show, where an expert testifies as to "legal opinions couched as expert testimony," that testimony cannot be considered.  Defs' Supp. Mem. at 4.  That is, expert testimony that would supplant the role of the court in interpreting the law and applying the law to the facts, or that offers a legal opinion on the ultimate issue to be decided, is not allowed.

First, to be clear, to the extent that Mr. Kantrowitz crosses this line, his testimony will be excluded from the Court's consideration.  To this extent, the Motion to Strike is granted.

Second, and at the same time, where an expert testifies, based on his or her experience and expertise, as to matters that may assist the court, but does not offer legal opinions, that testimony may be considered.  And this does not change merely because the expert's opinion relates to a topic or subject matter where laws and regulations also play a role.  To the extent that Mr. Kantrowitz testifies in this way, based on his experience and expertise, his testimony will not be excluded from the Court's consideration.  To this extent, the Motion to Strike is denied.

Third, and finally, to the extent that an expert's testimony – here, Mr. Kantrowitz's Report – simply states or quotes from legal sources, such as statutes or regulations, or other references, such as handbooks, survey responses and data reported to IPEDS, or the parties' submissions including memoranda of law and letter briefs, that is not a statement of legal opinion, or for that matter expert opinion, at all, and need not be addressed in the context of this

Motion to Strike.  And to this extent as well, the Motion to Strike is denied.

And finally, for the avoidance of doubt, and with or without an asserted objection from the Defendants, this Court will not, directly or indirectly, relinquish its role to ascertain the applicable law, find the facts, and apply the law to those facts, as informed by the parties' arguments, the applicable authorities, and the record.

## Conclusion

For the reasons stated herein and on the record of the January 19, 2022 hearing, and based on the entire record, the Defendants' Motion to Strike the expert report of Mark Kantrowitz is GRANTED in part and DENIED in part.

The Motion to Strike is granted to the extent that the Kantrowitz Report states legal opinions, interpretations, or conclusions with respect to statutes, regulations, and other legal authorities, or alternatively, states a legal opinion on the ultimate issues to be decided in this adversary proceeding, that would supplant the role of the court in interpreting the law and applying the law to the facts, and as identified on the record of the January 19, 2022 hearing, those portions of the Kantrowitz Report will not be considered by the Court.

The Motion to Strike is denied to the extent that the Kantrowitz Report states Mr. Kantrowitz's expert opinion, based on his education, experience, and expertise, as to matters that may assist the Court, but does not cross the line to state legal opinions, interpretations, or conclusions.

The Motion to Strike is also denied to the extent that the Kantrowitz Report states or

quotes from legal sources, including statutes and regulations, and other references, including

handbooks, survey responses and data reported to IPEDS, and the parties' submissions.

IT IS SO ORDERED.



Dated: Brooklyn, New York
     February 4, 2022

Elizabeth S. Stong
United States Bankruptcy Judge