**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re: Tashanna B. Golden ) | |
|     *fka* Tashanna B. Pearson ) | |
| ) | |
| ) | Case No. 16-40809 (ESS) |
| Debtor, ) | |
| ) | |
| Tashanna B. Golden ) | Chapter 7 |
| *fka* Tashanna B. Pearson on behalf of herself ) | |
| and all others similarly situated ) | |
| ) | |
|         Plaintiff, ) | |
| ) | |
|         v. ) | Adv. Proc. No. 17-1005 (ESS) |
| ) | |
| Firstmark Services LLC, GS2 2016-A ) | |
| (GS2), National Collegiate Student Loan ) | |
| Trust 2006-4 (NCT 2006), Pennsylvania ) | |
| Higher Assistance Agency, d/b/a ) | |
| American Education Services, ) | |
| ) | |
| ) | |
|         Defendants. ) | |
| ) | |

**DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE**
**AGENCY'S SUPPLEMENTAL MEMORANDUM OF LAW IN**
**<u>OPPOSITION TO PLAINTIFF'S MOTION COMPEL</u>**

Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") submits this supplemental memorandum of law in response to Plaintiff's Supplemental Memorandum ("Supplemental Memo") (Dkt. 471) and in further opposition to the Motion to Compel Responses to Plaintiff's Supplemental Discovery Requests by plaintiff Tashanna B. Golden.

## PRELIMINARY STATEMENT

At the February 2 hearing on the Motion to Compel, this Court directed Ms. Golden to submit a memorandum to explain why each of the nine specific requests that she identified as critical are relevant to the pending motion for class certification. Ms. Golden's Supplemental Memo purports to respond to that direction. Yet, the Supplemental Memo does nothing more than underscore the fundamental fact that Ms. Golden's discovery requests seek discovery relevant only to the merits of her claims but not relevant to the pending motion for class certification.

Ms. Golden effectively concedes again and again in her Supplemental Memo that this discovery is relevant only to these merits issues. Ms. Golden informs the Court that the discovery at issue on this Motion to Compel is relevant to determine 1) whether a loan exceeds the cost of attendance or 2) whether a loan was funded or guaranteed by a nonprofit or governmental entity.[1] *See* Supplemental Memo at 2, 3, 4. Both of these factual issues are merits issues because the answers to those questions for each putative class member will determine whether as to each particular borrower, the borrower can succeed on the claim that a particular loan is not subject to

---

[1] Indeed, the very arguments made by Ms. Golden demonstrate, among other things, that a class may not be certified. Ms. Golden repeatedly asserts that she needs the various documents and information in order to examine the eligibility of each borrower in the putative class who claims to be not subject to the nondischarge provisions set forth in Section 523(a)(8). If Ms. Golden requires all the information that she seeks in order to defend against the contentions made by each of the defendants in opposition to Ms. Golden's putative class claims, by definition, individual issues of fact predominate. Thus, a class may not be certified.

1

any of the exceptions to discharge is Section 523(a)(8). Discovery on the merits, however, is inappropriate prior to class certification. *See Rahman v. Smith & Wollensky Restaurant Group, Inc.*, 2007 WL 1521117, at *4 (S.D.N.Y. May 24, 2007) ("By contrast, pre-certification discovery on the merits of the class claims is generally inappropriate.").

The standard for pre-certification discovery requires Ms. Golden to establish how the discovery at issue is specifically relevant to Rule 23's class certification requirements. *See Calabrese v. CSC Holdings, Inc.,* No. 02-cv-5171 (DLI)(JO), 2007 WL 749690 (E.D.N.Y. Mar. 7, 2007) (denying plaintiff's motion because the pre-certification discovery at issue concerned solely the sufficiency of the plaintiff's allegations, and not class certification); *Miner v. Government Payment Service, Inc.*, No. 14-cv-7474, 2017 WL 3909508, at *4 (N.D. Ill. Sept. 5, 2017) (noting "pre-certification discovery should not exceed what is necessary to permit the Court to make an informed decision on class certification.").

This requirement means that Ms. Golden must specifically link the discovery to one of Rule 23's requirements. But at no point in her Supplemental Memo does Ms. Golden attempt to argue the relevance of the requested discovery to any of those requirements. At no point does Ms. Golden refer to or cite any of the requirements set forth in Rule 23. Ms. Golden does not contend that the discovery is relevant to the typicality of her claims or her adequacy as a class representative. She does not contend that the information is relevant to numerosity. She does not state that any of the discovery is relevant to establishing that there are common issues of fact justifying certification or that the individual issues of fact do not predominate over such common issues. That silence is tantamount to admitting that Ms. Golden cannot satisfy her burden to obtain pre-certification discovery with respect to the nine requests.

Further, Ms. Golden still refuses to acknowledge that PHEAA has already provided discovery responsive to several of the work requests. In the database of 129,000 loans and the corresponding Compass tables produced during 2020, PHEAA provided, among others, data regarding the loan owner, guarantor and institution's name for every one of those loans. Haveles Declaration (Dkt. 448) ¶¶ 7, 9. PHEAA also submitted a list of nonprofit entities that are guarantors of loans that PHEAA services in its opposition to class certification. June 29 Minsker Declaration (Dkt. No. 400-1), Ex. A. All of this information satisfies PHEAA's obligation to respond to Requests L, N and Q. Moreover, it is Ms. Golden's responsibility to evaluate that data. *See* Fed. R. Civ. P. 33(d) (if an interrogatory can be answered by providing business records and the burden of deriving the answer will be the same for both parties, the responding party may sufficiently answer by providing the records and any compilations of them); *Espinal v. Coughlin*, No. 98 CIV. 2579(RPP), 2000 WL 245879, at *1 (S.D.N.Y. Mar. 3, 2000).

It is Ms. Golden's burden to establish the relevance of the discovery that she seeks to compel. *See Miner*, 2017 WL 3909508, at *4 ("plaintiff bears the burden of showing that discovery is likely to produce substantiation of the class allegations"). Plaintiff has failed to carry this burden. Accordingly, as to PHEAA, Ms. Golden's Motion to Compel must be denied in its entirety.

## ARGUMENT

With respect to each of the nine requests, for the reasons set forth below, Ms. Golden is not entitled to an order compelling PHEAA to make further production, either because PHEAA has already produced the requested documents and information or because Ms. Golden has failed to establish that the discovery is necessary for her to satisfy the requirements of Rule 23.

**L.     Identify the lender, originator, servicer or guarantor other than You**

In order to address Request L, understanding the distinction between a loan owner and the originator of the loan is critical. The loan owner is the entity that presently owns the loan, whereas the originator is the entity that made the loan. Given this distinction, the loan owner may not be the same as the loan originator. The loan originator may have sold the loan to the present loan owner or multiple sales of the loan may have occurred over time.

PHEAA has already provided Ms. Golden with all the data regarding the loan owner and guarantor of each of the loans in the database produced in 2020. Haveles Declaration ¶¶ 7, 9. To the extent that the owner of the loan is not the party that originated the loan or that there was a servicer of the loan prior to the loan being provided to PHEAA for servicing, PHEAA can identify that information only by looking at each individual loan file, on a one by one basis. *See* December 22 Minsker Declaration (Dkt. 449) ¶¶ 6-8. And as to subsequent servicers, PHEAA does not have that information—only the loan owner, who would choose a subsequent servicer and assign the loan to that new servicer, would have such information.

Regardless, Ms. Golden has not established that the originator of the loan is relevant to class certification. Instead, Ms. Golden asserts this information is relevant only to PHEAA's continued assertion that the Court cannot certify a class without the loan owners who are necessary parties before the Court. *See* the Supplemental Memorandum at 1. Yet, Ms. Golden already has that information, which is easily extracted with a pivot table from the May 2020 database. Thus, this argument is a red herring. In any event, Ms. Golden has repeatedly declined to join the loan owners to this adversary proceeding. As to the originators, Ms. Golden makes no attempt to establish the relevance of their identity to the necessity of the loan owners as parties under Rule 19.

As established in PHEAA's prior submission, and as still unrebutted by Ms. Golden, review of more than 129,000 loan files to identify the loan originator or prior servicers of the loan is unduly burdensome to PHEAA. To produce this information, PHEAA would need to review each individual loan file to determine the originator or funder of each loan, which would require significant time and resources—the loan files would need to be collected and reviewed one by one. *See* PHEAA's Opposition Memorandum (Dkt. 447) at 16-19; December 22 Minsker Declaration ¶¶ 6-9. Such an undertaking is unduly burdensome to PHEAA and far outweighs any conceivable benefit at this stage of this adversary proceeding. *See Jurich v. Compass Marine, Inc.*, 2013 WL 12353646, at *4 n.3 (S.D. Ala. June 11, 2013) (the plaintiff's requests, which required a "file by file" review for information, were not relevant to class certification and such a search would be unduly burdensome).

## M.  Whether the loan was originated or funded by a nonprofit or governmental entity and, if so, identify those loans

Information regarding the nature of the originator or funder of each loan is available only in the individual loan files maintained by PHEAA. As noted above, to produce this information, PHEAA would need to review each individual loan file to obtain the information regarding the originator or funder of each loan. Such an undertaking is unduly burdensome to PHEAA. *See* this Memo at 4–5, *supra*. Even so, PHEAA cannot guarantee that the originator or funder of the loan is identified in every loan file, as PHEAA has only the information that the loan owner provided to PHEAA when it transferred the loan to PHEAA for servicing.

Regardless, whether the loan was originated or funded by a nonprofit or governmental entity is relevant only to the merits of the case. This information is relevant to determining only whether a particular loan falls into an exception under Section 523(a)(8) from discharge. Identification of the actual members of a class prior to certification is not pertinent to pre-

certification discovery. *See Jurich*, 2013 WL 12353646, at *4 (rejecting plaintiff's request for pre-certification discovery to identify putative class members as unnecessary at this stage). Further, Ms. Golden's claim that determining this information will inform who is in or out of the class is misleading because it highlights that Ms. Golden's class definition is circular. *See* PHEAA's Opposition Memo at 33; the Supplemental Memo at 2. The class definition, as written, provides no exclusion for loans funded or guaranteed by a nonprofit or governmental entity. *See* Plaintiff's Class Certification Memo at 6. Ms. Golden's suggestion that knowing which loans are funded or guaranteed by a nonprofit is nothing more than an attempt to seek merits discovery prior to certification.

**N.     Whether the loan was guaranteed by a nonprofit or governmental entity and, if so, identify those loans**

As noted, PHEAA has already provided Ms. Golden with the name of the guarantor of each of the loans in the Compass tables produced in 2020. Haveles Declaration ¶¶ 7, 9. PHEAA also provided a list of all of the nonprofit guarantors for the 129,000 loans in the database in its papers in opposition to the motion for class certification. *See* June 29 Minsker Declaration, Ex. A. The names of the guarantors are therefore sufficient for Ms. Golden to determine whether the guarantor of each loan was a nonprofit or governmental entity. PHEAA is not required to perform that task, as Ms. Golden is capable of drawing the same conclusions from the information provided. *See* this Supplemental Opposition Memo at 3, *supra*.

Regardless, the guarantor information is exclusively relevant to the merits of the case, which Ms. Golden concedes. *See* Supplemental Memo at 2. The guarantor information is relevant to determining only whether a particular loan falls into the exception to discharge under Section 523(a)(8)(i)(A), which is a merits question. Ms. Golden responds, in essence, that the guarantor information is relevant to the Court's determination as to Ms. Golden's summary

judgment motion.[2]  *Id*.  Ms. Golden, however, does not attempt to establish the relevance of the guarantor information to any demand of Rule 23.

**O.     Whether the borrower was an undergraduate or graduate student**

Whether a borrower was an undergraduate or graduate student is irrelevant to class certification and is solely relevant to the merits of the case.  Ms. Golden concedes that: "This information will help [Ms. Golden] and the Court determine which loans are within the cost of attendance."  Supplemental Memo at 2.  The inquiry as to whether a loan is within the cost of attendance is relevant to determining whether a particular loan falls into the exception set forth in Section 523(a)(8)(B).  That issue has no bearing on the elements for class certification, and Ms. Golden does not contend that it does.

Further information regarding whether the borrower was an undergraduate or graduate student is available only in the individual loan files that PHEAA maintains.  To produce this information, PHEAA would need to review each individual loan file to determine this information.  Such an undertaking is unduly burdensome to PHEAA at this stage of the proceeding given that Ms. Golden fails to establish the relevance of the factual issue to class certification.  *See* this Supplemental Opposition Memo at 4–5, *supra*.  Even so, PHEAA cannot guarantee that the information is contained in every loan file, as PHEAA possesses only the information that the loan owner sent to PHEAA when PHEAA began to service the loan.

---

[2] Of course, Ms. Golden has not moved for summary judgment with respect to whether the loans to all the members of the putative class were guaranteed by a not for profit institution.  The only guarantee issue that is the subject of Ms. Golden's motion for partial summary judgment is whether TERI constitutes a not for profit institution for the purposes of Section 523(a)(8)(i)(A).  *See* Plaintiff's Memorandum in Support of Partial Summary Judgment (Dkt. 244) at 18–39.

**P.     Whether the borrower was a full-time or part-time student**

Again, Ms. Golden concedes that whether a borrower was a full-time or part-time student is relevant only to determining whether a loan was within the cost of attendance. As discussed, with respect to the request above, determination as to whether the loan exceeded the cost of attendance is strictly a merits determination.

Further, information regarding whether the borrower was a full-time or part-time student is available only in the individual loan files that PHEAA maintains. To produce this information, PHEAA would need to review each individual loan file to determine this information. Such an undertaking is unduly burdensome to PHEAA at this stage of the proceeding given that Ms. Golden fails to establish the relevance of the factual issue to class certification. *See* this Supplemental Opposition Memo at 4–5, *supra*. Even so, PHEAA cannot guarantee that the information is contained in every loan file, as PHEAA possesses only the information that the loan owner sent to PHEAA when PHEAA began to service the loan.

**Q.     Identify the institution the borrower attended and state whether such institution was a Title IV institution at the time the loan was made**

PHEAA has already provided Ms. Golden with the name of the institution that each borrower attended in the May 2020 loan database. Haveles Declaration ¶¶ 7, 9. Under Rule 33(d), the names of the institutions are sufficient for Ms. Golden to determine whether each institution was a Title IV institution.[3] PHEAA is not required to perform this analysis for Ms. Golden, as the burden for each party is substantially the same.

---

[3] Moreover, as PHEAA has previously represented to Ms. Golden counsel, all of those institutions are Title IV schools. The field in the database that identifies the academic institution enables Ms. Golden to verify that fact, in accordance with Rule 33(d).

**R.     Whether the loan was certified as within the cost of attendance by the applicable educational institution at any time prior to, or at the time, the loan was made. If so, provide all Documents showing such certification**

The certification of a loan is irrelevant to the class certification inquiry by Ms. Golden's own admissions. Ms. Golden has repeatedly alleged that certification of a loan is evidence that the loan did not exceed the cost of attendance. Whether a loan is within the cost of attendance is relevant to determining only whether a loan falls into the exception set forth in Section 523(a)(8)(B). Thus, the question of whether a particular loan exceeded the cost of attendance is a question of merits and is not relevant to the issues under Rule 23. *See* this Supplemental Opposition Memo at 1, 7 *supra*.

Further, information regarding whether the school certified the borrower's cost of attendance is available only in the individual loan files that PHEAA maintains. To produce this information, PHEAA would need to review each individual loan file to determine this information. Such an undertaking is unduly burdensome to PHEAA at this stage of the proceeding given that Ms. Golden fails to establish the relevance of the factual issue to class certification. *See* this Supplemental Opposition Memo at 4–5, *supra*. Even so, PHEAA cannot guarantee that the information is contained in every loan file, as PHEAA possesses only the information that the loan owner sent to PHEAA when PHEAA began to service the loan.

**S.     Whether the loan was a bar loan, residency loan or other loan made for expenses incurred other than for full or part-time study at an educational institution. For each such loan, identify the type of loan**

As PHEAA has previously informed Ms. Golden, PHEAA does not service bar or residency or similar types of loans. PHEAA therefore has no information responsive to this request.

**U.    The cost of attendance at the applicable educational institution of the person to whom the loan was made and any information concerning any other loans, scholarships or grants received by the person who obtained the loan.  Produce all Documents in Your possession, custody or control relating to such information**

Cost of attendance at each institution has no bearing on whether a class should be certified. Cost of attendance is relevant to determining only whether each putative class member's loans exceed that cost. This issue is a question concerning the merits and has no relevance to class certification. Ms. Golden concedes as much, arguing that the information is relevant to determining only "whether any individual loan is a qualified education loan under § 523(a)(8)(B)." *See* Supplemental Memo at 4.

Further, information regarding a borrower's cost of attendance is available only in the individual loan files that PHEAA maintains. To produce this information, PHEAA would need to review each individual loan file to determine this information. Such an undertaking is unduly burdensome to PHEAA at this stage of the proceeding given that Ms. Golden fails to establish the relevance of the factual issue to class certification. *See* this Supplemental Opposition Memo at 4–5, *supra*. Even so, PHEAA cannot guarantee that the information is contained in every loan file, as PHEAA possesses only the information that the loan owner sent to PHEAA when PHEAA began to service the loan.

## **CONCLUSION**

Because Ms. Golden concedes the discovery not yet produced PHEAA is relevant only to the merits of the claim that the putative class' loans were not discharged and because she does not establish the discovery's relevance to class certification, Ms. Golden's Motion as to PHEAA should be denied in its entirety.

Dated: March 16, 2022

                                            McDERMOTT WILL & EMERY LLP

                                            By: /s/    H. Peter Haveles, Jr.
                                            H. Peter Haveles, Jr.
                                            One Vanderbilt Avenue
                                            New York, New York 10017
                                            Telephone: (212) 547-5400
                                            Facsimile: (212) 547-5444
                                            phaveles@mwe.com

                                            Attorneys for Defendant Pennsylvania Higher Education Assistance Agency