UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

In re:                                                          Chapter 7

TASHANNA B GOLDEN                                                Case No. 16-40809-ess
*fka* TASHANNA B PEARSON,

                          Debtor.

------------------------------------------------------------------------x

TASHANNA B GOLDEN,                                               Adv. Pro. No. 17-01005-ess
*fka* TASHANNA B. PEARSON ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY SITUATED,

                          Plaintiffs,

v.

NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2006-4 (NCT 2006), GS2 2016-A (GS2),
PENNSYLVANIA HIGHER EDUCATION ASSISTANCE
AGENCY *dba* AMERICAN EDUCATION SERVICES,
FIRSTMARK SERVICES LLC,

                          Defendants.

------------------------------------------------------------------------x

## MEMORANDUM DECISION ON THE DEFENDANTS'
## MOTION FOR A STAY PENDING APPEAL

*Appearances*:

George F. Carpinello, Esq.          H. Peter Haveles, Jr., Esq.
Adam Shaw, Esq.                  Akerman LLP
Jenna Smith, Esq.               1251 Avenue of the Americas
Boies Schiller Flexner LLP      37th Floor
30 South Pearl Street (11th Floor)  New York, NY 10020
Albany, NY 12207            *Attorneys for Defendant Pennsylvania*
  *Attorneys for Plaintiff Tashanna B. Golden*  *Higher Education Assistance Agency*

Lynn E. Swanson, Esq.
Peter Freiberg, Esq.
Jones Swanson Huddell & Daschbach LLC
601 Poydras Street (Suite 2655)
New Orleans, LA 70170
   *Attorneys for Plaintiff Tashanna B. Golden*

Jason W. Burge, Esq.
Fishman Haygood LLP
201 Saint Charles Avenue (46th Floor)
New Orleans, LA 70130
   *Attorneys for Plaintiff Tashanna B. Golden*

Joshua B. Kons, Esq.
Law Offices of Joshua B. Kons, LLC
50 Albany Turnpike (Suite 4024)
Canton, CT 06019
   *Attorneys for Plaintiff Tashanna B. Golden*

Gregory T. Casamento, Esq.
R. James DeRose III, Esq.
Locke Lord LLP
Brookfield Place
200 Vesey Street (20th Floor)
New York, NY 10281
   *Attorneys for Defendants National
   Collegiate Student Loan Trust 2006-4 (NCT
   2006) and GS2 2016-A (GS2)*

J. Matthew Goodin, Esq.
Locke Lord LLP
111 South Wacker Drive, Suite 4100
Chicago, IL 60606
   *Attorneys for Defendants National
   Collegiate Student Loan Trust 2006-4 (NCT
   2006) and GS2 2016-A (GS2)*

Charles F. Kaplan, Esq.
Perry, Guthery, Haase & Gessford P.C.
L.L.O.
233 South 13th Street (Suite 1400)
Lincoln, NE 68508
   *Attorneys for Defendant Firstmark
   Services LLC*

Barbara L. Seniawski, Esq.
The Seniawski Law Firm PLLC
1460 Broadway (4th Floor)
New York, NY 10036
   *Attorneys for Defendant Firstmark
   Services LLC*

July 7, 2025

**HON. ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion for a stay pending appeal (the "Motion to Stay"), of

defendant Pennsylvania Higher Education Assistance Agency d/b/a American Education

Services ("PHEAA"), in which defendants National Collegiate Student Loan Trust 2006-4 (NCT

2006) (the "2006-4 Trust") and GS2 2016-A (the "GS2 2016-A Trust," and together with the

2006-4 Trust, the "Trust Defendants"), and Nelnet Servicing, LLC, d/b/a Firstmark Services

("Firstmark") (collectively, the "Defendants"), have joined, for an order staying the Court's

memorandum decision and order, ECF Nos. 680, 681 (the "Decision" and "Order"), pending the

resolution of the Defendants' request for an interlocutory appeal of this Court's Decision and

Order to the United States District Court for the Eastern District of New York.  The Decision and

Order enjoin the Defendants from taking any acts to collect on two categories of loans that they

own or service, which are held by the plaintiff, Tashanna B. Golden, f/k/a Tashanna B. Pearson,

and all others similarly situated in a putative class, as that class is described in Ms. Golden's

amended complaint in this adversary proceeding.  *See* ECF No. 681, at 8-9 ("Am. Compl.").

The Defendants seek this relief on grounds that the Bankruptcy Court would properly be

exercising its judicial discretion in granting the Motion to Stay under Federal Rule of Bankruptcy

Procedure 8007.

In support of the Motion to Stay, the Defendants argue that there is a strong likelihood

that they will be successful in their appeal to the District Court.  They also argue that, absent a

stay, the Defendants will be irreparably injured.  And the Defendants argue that, if the Decision

and Order is not stayed, Ms. Golden and all others similarly situated in a putative class, are likely

1

to be substantially injured by the Decision and Order, and that, therefore, a stay of the Decision and Order is in the public interest.

Ms. Golden opposes the Motion to Stay. She argues that the Defendants have not made a strong showing of their likelihood of success on appeal, that there is nothing to indicate that they will be irreparably injured if the Court does not grant the Motion to Stay, that she and the putative class are not and will not be injured by the Decision and Order, and that a stay of the Decision and Order would be against the public interest.

In reply, in addition to reaffirming the arguments in their Motion for Stay, the Defendants also point to the Supreme Court's recent decision in *Trump v. CASA, Inc.*, ___ U.S. ___, ___ S. Ct. ___, 2025 WL 1773631 (2025), in their response to Ms. Golden's opposition to the Motion to Stay. The Defendants argue that the *Trump v. CASA* decision renders the Decision and Order invalid, that the Defendants are, resultantly, even more likely to succeed in their appeal to the District Court, and that this further justifies the Court's granting the Motion to Stay.

In essence, the Defendants here ask the Court to revisit many of the issues that it considered when it issued the Decision and Order, albeit from the perspective of what the ramifications of staying the injunctive relief caused by the Decision and Order would be. So, once more, the Court considers both the likelihood of success on the merits and the same equitable considerations that it considered in the Decision and Order: the likelihood of irreparable injury and the balance of hardships, as well as the public interest.

Two months have passed since May 7, 2025, when the Court entered the Decision and Order, and after thorough consideration of the parties' well-researched and reasoned arguments and submissions in support of and in opposition to the Motion to Stay, the Court remains confident that the injunctive relief granted in the Decision and Order is in the public interest and

does not cause the Defendants irreparable injury. The Court also finds that the Defendants have not made a strong showing of the likelihood of their potential success on appeal. And, it is for these reasons, as more fully stated below, that the Defendants' Motion to Stay is denied.

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. In addition, this Court may adjudicate these claims to final judgment to the extent that they are core proceedings pursuant to Judiciary Code Section 157(b).

## Background

This case and Ms. Golden's related individual Chapter 7 case have an extensive procedural history in this Court and the District Court, and familiarity with that history is assumed. The Court's discussion of the factual and procedural background leading up to the entry of the Decision and Order on May 7, 2025, offers a clear picture of the context in which the Court decided Ms. Golden's motion for a preliminary injunction, ECF No. 620 (the "Preliminary Injunction Motion"), accordingly, the Court incorporates that background herein by this reference. *See* Decision at 4–45.

### *The Decision and Order*

On May 7, 2025, the Court entered the Decision and Order, granting the Preliminary Injunction Motion. The Decision and Order restrain and enjoin the Defendants "from taking any acts to collect on loans that exceed the cost of attendance as defined by Internal Revenue Code § 221(D), irrespective of whether those loans were guaranteed by TERI, that are held by Ms. Golden and the Putative Class Members, as the class is described in the Amended Complaint,

that have an outstanding balance subject to collection," and "from taking any acts to collect on post-graduation loans incurred to pay for living expenses while pursuing professional licensure, that are held by Ms. Golden and the Putative Class Members, as the class is described in the Amended Complaint, that have an outstanding balance subject to collection" (together, the "Injunction").  Order, at 8-9.

On May 8, 2025, PHEAA, on behalf of all Defendants, filed a letter, ECF No. 682, seeking, among other things, clarification of the Injunction.

On May 13, 2025, the Court entered an Order that, among other things, directed the Defendants immediately to commence the identification of the borrowers and the loans presently subject to the Injunction and the steps necessary to implement the Injunction as to those borrowers and loans.  ECF No. 685.

*The Defendants' Motions for Leave to Appeal*

On May 21, 2025, the three Defendants all filed interlocutory notices of and motions for leave to appeal this Court's Decision and Order to the U.S. District Court for the Eastern District of New York, ECF Nos. 688, 689, 694 (respectively, the "PHEAA Motion for Leave," "Firstmark Motion for Leave," and "Trust Defendants Motion for Leave").  And on May 22, 2025, the Defendants filed notices of docketing their records on appeal, ECF Nos. 702-04, noting the docket numbers for the three cases on appeal as 25-02069-RER, 25-02070-RER, and 25-02071-RER.

The PHEAA Motion for Leave raises, in substance, two questions on appeal:  1) whether the Court erred as a matter of law in applying Federal Rule of Civil Procedure 19(a) to determine whether loan owners and other entities were required to be joined to the case, PHEAA Motion for Leave at 20-27; and 2) whether the bankruptcy court erred as a matter of law in interpreting

the Second Circuit's ruling in *Bruce v. Citigroup Inc.*, 75 F.4th 297 (2d Cir. 2023), *cert. denied*, ___ U.S. ___, 144 S. Ct. 565, 217 L. Ed. 2d 300 (2024), PHEAA Motion for Leave at 27-37.

The Firstmark Motion for Leave raises, in substance, two questions on appeal: 1) whether the Court erred as a matter of law in applying Federal Rule of Civil Procedure 19(a) to determine whether loan owners and other entities were required to be joined to the case, Firstmark Motion for Leave at 14-21; and 2) whether the Court erred as a matter of law in interpreting the Second Circuit's ruling in *Bruce*, Firstmark Motion for Leave at 21-28.

The Trust Defendants Motion for Leave raises, in substance, two questions on appeal: 1) whether the Injunction entered by the court is impermissibly vague and exceeds the Court's jurisdiction, and thereby includes borrowers who will not want to be subject to the court's decision, Trust Defendants Motion for Leave at 9-12, 14-16; and 2) whether the Court erred as a matter of law in interpreting the Second Circuit's ruling in *Bruce*, Trust Defendants Motion for Leave 12-16.

*The Compliance Date*

On May 23, 2025, the Court held a pre-trial conference and hearings on the Injunction, at which Ms. Golden and the Defendants appeared and were heard. On May 23, 2025, the Court entered an Order directing the Defendants to have "fully complied with the Injunction by July 7, 2025, which is 61 days from the entry of the Decision and Order." ECF No. 705. On June 12, 2025, the Court held a pre-trial conference and hearings on the Injunction, at which Ms. Golden and the Defendants appeared and were heard.

*The Motion to Stay Pending Appeal and the Supreme Court's Decision in Trump v. CASA, Inc.*

On June 17, 2025, PHEAA filed the Motion to Stay, seeking an order that would stay this Court's Decision and Order pending the Defendants' appeals to the District Court. ECF Nos. 717-18.

PHEAA's Memorandum of Law in Support of the Motion to Stay

At the outset of their memorandum of law in support of the Motion to Stay, ECF No. 718 (the "PHEAA Brief"), PHEAA recites the standard that the Court must apply in considering a motion for stay pending appeal, as stated by the Supreme Court in *Nken v. Holder*, 556 U.S. 418, 434 (2009), and notes that the Second Circuit applies the same standard. PHEAA Brief at 4 (citing *SEC v. Citigroup Global Markets, Inc.*, 673 F.3d 158, 162-63 (2d Cir. 2012). The standard, as quoted by PHEAA, provides that "[i]n determining whether to grant a stay, courts consider four factors: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" PHEAA Brief at 4 (quoting *Nken*, 556 U.S. at 434). PHEAA goes on to argue that all four factors of the *Nken* test weigh in favor of the Defendants. PHEAA Brief at 6-13.

As to *Nken* factor 1, PHEAA argues that it can satisfy this factor "'by showing that there are "serious questions" going to the merits of the dispute [on appeal] and that the balance of the hardships tips decidedly in [its] favor.'" PHEAA Brief at 6 (quoting *Starke v. SquareTrade, Inc.*, 2017 WL 11504834, at *1 (E.D.N.Y. Dec. 15, 2017). PHEAA next argues that it has "a substantial possibility of success" on its appeal for two reasons: first, because this Court erroneously applied Federal Rule of Civil Procedure 19 in determining which parties were

required to be joined to the case; and second, because this Court clearly erred in its application of the Second Circuit's holding in *Bruce* in determining its ability to issue injunctive relief to parties beyond Ms. Golden.  PHEAA Brief at 7.

As to *Nken* factor 2, PHEAA notes that caselaw in this Circuit requires a showing of irreparable harm that is "'neither remote not speculative, but actual and imminent.'"  PHEAA Brief at 9 (quoting *ACC Bondholder Group v. Adelphia Commc'ns Corp.* (*In re Adelphia Communications Corp.*), 361 B.R. 377, 347 (S.D.N.Y. 2007).  PHEAA then argues that absent a stay pending appeal, PHEAA will be irreparably injured because compliance with the Court's Decision and Order "imposes a substantial physical labor and financial burden on PHEAA," and "adversely affect[s] PHEAA's clients."  PHEAA Brief at 11.

As to *Nken* factor 3, PHEAA argues that Ms. Golden will not be harmed by a stay of the Decision and Order because PHEAA has not been collecting on her loans, and because PHEAA has not engaged in collection activities that have risen to the level of harassment.  PHEAA Brief at 11-12.  PHEAA further notes that any damages that might result from payment on discharged loans would be monetary, and therefore remediable through monetary damages, and argues that "'because monetary damages can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm.'"  PHEAA Brief at 12 (quoting *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

Finally, as to *Nken* factor 4, PHEAA argues that a stay of the Decision and Order would serve the public interest because their appeal "will resolve the legal question that *Bruce* left open," because it and the loan owners will not proceed with collection activities, and because borrowers would suffer "prejudice and harm" if the "preliminary injunction is vacated."  PHEAA Brief at 12-13.

On June 17, 2025, the Trust Defendants filed a joinder in motion as to the Motion to Stay. ECF No. 719.

Firstmark's Memorandum of Law in Support of the Motion to Stay

On June 18, 2025, Firstmark filed a joinder in motion as to the Motion to Stay, ECF No. 720, and a memorandum of law in support of the Motion to Stay, ECF No. 721 (the "Firstmark Brief"). At the outset, Firstmark also recites the four-factor test in *Nken*. Firstmark Brief at 2 (quoting *Nken*, 556 U.S. at 434). Like PHEAA, Firstmark also argues that all four factors of the *Nken* test point in favor of the Defendants. Firstmark Brief at 2-5. And Firstmark notes that it adopts and incorporates the arguments in the PHEAA Brief as to factors 1, 2, and 4 of the *Nken* test. Firstmark Brief at 3-4.

As to *Nken* factor 1, Firstmark indicates that its arguments in its motion for leave to appeal are substantially identical to those in the PHEAA Motion for Leave, that it therefore "adopts and joins in" PHEAA's arguments as to *Nken* factor 1, and that it makes no further arguments as to this point. Firstmark Brief at 2-3.

As to *Nken* factor 2, Firstmark again "adopts and joins in" PHEAA's arguments "in full." Firstmark Brief at 3. Firstmark also notes that both it and "nonparty loan owners" will be harmed by the implementation of the Injunction. Firstmark Brief at 3. Firstmark argues that irreparable harm has been shown because it has had to "leverage substantial resources, at considerable cost" to comply with the Injunction, and that it "will be forced to make determinations about some loans out of precaution." Firstmark Brief at 4.

As to *Nken* factor 3, Firstmark does not specifically adopt PHEAA's arguments, but similarly argues that Ms. Golden will not be harmed by a stay of the Decision and Order because

Firstmark "has not been actively servicing [Ms. Golden's] loans . . . since the outset of this proceeding."  Firstmark Brief at 4.

Finally, as to *Nken* factor 4, Firstmark once again adopts and joins in PHEAA's arguments, and notes that "the [Injunction] is likely to cause considerable confusion to" borrowers on loans affected by the Injunction.  Firstmark Brief at 5.

<u>Ms. Golden's Memorandum of Law in Opposition to the Motion to Stay</u>

On June 25, 2025, Ms. Golden filed a memorandum of law in opposition to the Motion to Stay.  ECF No. 725 (the "Golden Opposition").  Ms. Golden agrees with PHEAA and Firstmark that the standard for considering a motion for stay on appeal is set forth in *Nken*, and notes that this Court has previously applied that standard in *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 2022 WL 4073429, at *15 (Bankr. E.D.N.Y. Sept. 2, 2022).  Golden Opposition at 2 (quoting *Homaidan*, 2022 WL 4073429, at *15 (quoting *Uniformed Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020) (quoting *Nken*, 556 U.S. at 434))).

As to *Nken* factor 1, Ms. Golden responds that the Defendants have not made a strong showing of their likelihood of success on the merits of their appeal, because, in substance, "Defendants fail to demonstrate any error in the Court's analysis."  Golden Opposition at 3. More specifically, she argues that the Defendants have not demonstrated that *Nken* factor 1 weighs in their favor because this Court did not misinterpret the holding in *Bruce*, as it expressly indicates that the question of whether a declaratory judgment class, like the one in the Preliminary Injunction Motion, could be the basis for the issuance of injunctive relief was "a question 'for another day.'"  Golden Opposition at 3 (quoting *Bruce* 75 F.4th at 306.)

As to *Nken* factor 2, Ms. Golden responds that the Defendants have failed to show that they will suffer irreparable injury because their argument that time and money will be spent on

compliance does not demonstrate irreparable injury.  Golden Opposition at 4-5.  She argues that

"[i]t is well settled that an alleged harm that 'can be remedied in money damages is the antithesis

of irreparable harm, and such a fact requires that the Court not find an irreparable injury.'"

Golden Opposition at 4-5 (quoting *Toney-Dick v. Doar*, 2013 WL 1314954, at *9 (S.D.N.Y.

March 18, 2023)) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)

(noting that "[i]f an injury can be appropriately compensated by an award of money damages,

then . . . no irreparable injury may be found")).  Ms. Golden notes that this argument extends

beyond money to time and effort, because the "Supreme Court has held [that], '[m]ere injuries,

however substantial, in terms of money, time and energy' do not amount to irreparable harm."

Golden Opposition at 5 (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (holding that

"[m]ere injuries, however substantial, in terms of money, time and energy" do not amount to

irreparable harm)).

As to *Nken* factor 3, Ms. Golden responds that the Defendants do not show that she and

the putative class members will not be injured by the issuance of a stay pending appeal.  Golden

Opposition at 5-6.  She argues that there is an inconsistency in the Defendants' arguments

concerning harm, because, as they argue that the monetary damages they will potentially suffer

at having to implement the Injunction are irreparable, then obviously lifting the stay would

constitute substantial injury to Ms. Golden and the putative class, because she and the putative

class would suffer monetary damages, being once more subject to collection efforts by the

Defendants.  Golden Opposition at 5.  Moreover, Ms. Golden responds that a stay would

possibly permit collection on discharged loans, which would result in the stay permitting the

violation of the "fresh start" debtors are supposed to receive post discharge.  Golden Opposition

at 5-6 (quoting *In re Homaidan*, 646 B.R. 550, 601 (Bankr. E.D.N.Y. 2022)).

And, as to *Nken* factor 4, Ms. Golden responds that the question of public interest is well-trodden ground for this Court, and that the Defendants have not shown that a stay of the Injunction would be in the public interest. Golden Opposition at 6. Ms. Golden argues that, as set forth in the Decision and Order, the Court found that the granting of the Preliminary Injunction Motion was in the public interest, and therefore the Injunction that gives effect to the Decision and Order is likewise in the public interest, so that granting a stay that lifts the Injunction would be against the public interest. Golden Opposition at 6.

<u>The Supreme Court's Decision in *Trump v. CASA, Inc.*</u>

On June 27, 2025, the Supreme Court of the United States rendered its decision in *Trump v. CASA, Inc.*, ___ U.S. ___, ___ S. Ct. ___, 2025 WL 1773631 (2025) ("*CASA*"). In *CASA*, the Supreme Court considered whether to enter stays pending appeal in three cases where the United States is challenging lower courts' preliminary injunctions preventing the Government from enforcing an executive order. *CASA*, 2025 WL 1773631, at *4-5. The Supreme Court held that an injunction that "prohibit[s] enforcement of a law or policy against *anyone* . . . likely exceed[s] the equitable authority that Congress has granted to federal courts." *CASA*, 2025 WL 1773631, at *4. For this reason, the Supreme Court granted the Government's motions to stay the preliminary injunctions "to the extent that the injunctions are broader than necessary to provide complete relief to each plaintiff with standing to sue." *CASA*, 2025 WL 1773631, at *15.

On June 30, 2025, the Defendants filed letters with the Court, updating the Court on the status of the Defendants' compliance with the Injunction. ECF Nos. 728, 729, 731. The Trust Defendants' and Firstmark's June 30, 2025, letters additionally state that, in substance, the Supreme Court's decision in *CASA* invalidates this Court's Decision and Order, and that if the Court does not withdraw the Decision and Order, that it should afford the Defendants an

opportunity to provide the Court with briefs that address the effect of the *CASA* decision on the Decision and Order.

On June 30, 2025, Ms. Golden filed a letter, responding to the Defendants' arguments concerning the *CASA* decision.  ECF No. 730.  In substance, she states that that Defendants' arguments are without merit as the *CASA* decision does not invalidate the Decision and Order, and moreover, "has no relevance to this action."  *Id*.

<u>PHEAA's Reply Memorandum of Law in Support of the Motion to Stay</u>

On July 1, 2025, PHEAA filed a reply memorandum of law (the "PHEAA Reply"), and affirmation in further support of the Motion to Stay.  ECF Nos. 732, 733.  In the PHEAA Reply, PHEAA argues that the Supreme Court's decision in *CASA* "mandates the issuance of a stay pending appeal" of the Decision and Order.  PHEAA Reply at 2.  PHEAA also argues that the *CASA* decision does not permit a preliminary injunction to apply to a putative class, only a certified class.  PHEAA Reply at 3.  And, PHEAA argues, since the putative class members are not before the Court, the Defendants cannot be enjoined as to them.  PHEAA Reply at 4.

As to factor 1 of the *Nken* test, PHEAA again argues that it has raised serious questions as to the merits of the Decision and Order, and, in support of this argument, again suggests that the Court's interpretation of Federal Rule of Civil Procedure 19 and the Second Circuit's holding in *Bruce* support this determination.  PHEAA Reply at 5-7.

As to factor 2 of the *Nken* test, PHEAA once more argues that, absent a stay, it will be irreparably injured.  PHEAA Reply at 7-10.  It reiterates that the steps that the Defendants have been required to take to come into compliance with the Injunction have been time-consuming and expensive.  PHEAA Reply at 8-9.  PHEAA also argues that the cases addressing monetary damages are generally about preliminary injunctions, and not the stay of preliminary injunctions

pending appeal.  PHEAA Reply at 9.  And it argues that the harm it has suffered is not exclusive to PHEAA, but has also extended to the absent loan owners of loans that PHEAA services. PHEAA Reply at 9.  Finally, PHEAA argues that its injury is demonstrated by the fact that Court did not order the posting of a bond, and no bond has been posted by Ms. Golden.  PHEAA Reply at 10.

As to factor 3 of the *Nken* test, PHEAA argues that a stay would not harm Ms. Golden or the putative class for the same reasons that it raised in the PHEAA Brief.  PHEAA Reply at 10-11; PHEAA Brief at 11-12.  PHEAA argues that because it does not engage in collection efforts "like a loan owner would," and has not harassed Ms. Golden, or any other putative class member, that the lifting of the stay of the Injunction would risk no harm to Ms. Golden.  PHEAA Reply at 10-11.  PHEAA further argues that any injury that Ms. Golden and putative class members might suffer if a stay of the Injunction resulted in collection on discharged debt, could be rectified with monetary damages.  PHEAA Reply at 11.

And last, as to factor 4 of the *Nken* test, PHEAA argues that a stay would serve the public interest for three reasons: 1) because a stay will permit a decision of the appeal to resolve questions about *Bruce*, PHEAA Reply at 11; 2) because a stay will stop the Court from enforcing an injunction that is against the law under *CASA*, PHEAA Reply at 12; and 3) because the Injunction will cause harm to borrowers if it is not stayed and then was vacated by the District Court.  Reply at 12.

On July 1, 2025, Ms. Golden filed a letter responding to the Defendants' narrative of their efforts and progress to come into compliance with the Court's Injunctions in their June 30, 2025, letters.  ECF No. 734.  She states, in substance, that PHEAA is taking positions regarding its compliance with the Injunction that are inconsistent with the Court's Decision and Order.  *Id*.

On July 2, 2025, the Court held a pre-trial conference and hearings on the Injunction and heard argument on the Motion to Stay, at which Ms. Golden and the Defendants appeared and were heard.

The record is now closed.

## The Applicable Legal Standards

*Bankruptcy Rule 8007*

Under Bankruptcy Rule 8007, a party may move in a bankruptcy proceeding for "a stay of the bankruptcy court's judgment, order, or decree pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). But the barrier to receiving a stay of the order on appeal is high, and "[a] party seeking a stay of a lower court's order bears a difficult burden." *U.S. v. Private Sanitation Industry Ass'n of Nassau Suffolk, Inc.¸* 44 F.3d 1082, 1084 (2d Cir. 1995); *In re Taub*, 470 B.R. 273, 277 (E.D.N.Y. 2012) (holding that "'stays pending an appeal are only granted in limited circumstances.'" (quoting *In re Smith*, 2009 WL 366577, at *2 (E.D.N.Y. Feb. 12, 2009)); *In re Aston Baker*, 2005 WL 2105802, at *4 (E.D.N.Y. Aug. 31, 2005) (holding that stays pending appeal are only granted in limited circumstances). Rule 8007 goes on to clarify that, notwithstanding Rule 7062, "but subject to the authority of the district court," a bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. Fed. R. Bankr. P. 8007(e).

Rule 8007, and the 2014 Rules Committee Notes to Rule 8007, state that a motion for a stay of the judgment, order, or decree of a bankruptcy judge must ordinarily be sought first in the bankruptcy court. Fed. R. Bankr. P. 8007(a)(1); Fed. R. Bankr. P. 8007 2014 Rules Committee

Note.  And nothing in Rule 8007 appears to suggest that the standard is different under a stay sought pending a request for an interlocutory appeal as opposed to an appeal as of right.

### Discussion

The starting point for addressing the Defendants' Motion to Stay is the question of what standard the Court should apply.  In their memoranda of law in support of the Motion to Stay, PHEAA and Firstmark each cite to the four-factor test established by the Supreme Court in *Nken*, and Ms. Golden agrees that this is the appropriate test.  PHEAA Brief at 4 (quoting *Nken*, 556 U.S. at 434); Firstmark Brief at 2 (quoting *Nken*, 556 U.S. at 434); Golden Opposition at 2.  That is, the parties agree that the test is "1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies."  *Nken*, 556 U.S. at 434.

At the same time, PHEAA also makes reference to an alternative formulation of that test which has been applied by some courts in the Second Circuit.  That alternative version is "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated '"a substantial possibility, although less than a likelihood, of success,"' on appeal, and (4) the public interests that may be affected."  *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993) (quoting *Dubose v. Pierce*, 761 F.2d 913, 920 (2d Cir. 1985) (quoting *Hayes v. City Univ. of New York*, 503 F. Supp. 946, 963 (S.D.N.Y. 1980) (citing *Coleman v. Paccar, Inc.*, 424 U.S. 1301, 1305 (1976).  *See* PHEAA Brief at 6-9 (citing *Hamilton Rd. Realty, LLC, v. United States Trustee*, 2021 WL 878734 (E.D.N.Y. March 9, 2021); *Citibank N.A., v. Bombshell Taxi LLC (In*

*re Hypnotic Taxi LLC*), 2017 WL 1393674 (Bankr. E.D.N.Y. April 18, 2017); *Starke*, 2017 WL 11504823)). So, some clarification of the applicable standard is warranted.

*The Four Factor Test Established in* Hirschfeld v. Board of Elections

In 1993, the Second Circuit in *Hirschfeld*, articulated a four-factor test to be considered "before staying the actions of a lower court: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated '"a substantial possibility, although less than a likelihood, of success,'" on appeal, and (4) the public interests that may be affected." *Hirschfeld*, 984 F.2d at 39 (quoting *Dubose*, 761 F.2d at 920 (quoting *Hayes*, 503 F. Supp. at 963 (citing *Coleman*, 424 U.S. at 1305 (noting that "in staying the action of a lower court" a court "must take into account factors such as irreparable harm and probability of success on the merits")))).

*The Four Factor Test Established in* Nken v. Holder

In 2009, some sixteen years after *Hirschfeld*, the Supreme Court in *Nken v. Holder*, articulated four factors that a court should consider when ruling on a motion to stay pending appeal. They are: "1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; 2) whether the applicant will be irreparably injured absent a stay; 3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and 4) where the public interest lies." *Nken*, 556 U.S. at 434. *See Chafin v. Chafin*, 568 U.S. 165, 179 (2013) (applying the *Nken* test); *Nken*, 556 U.S. at 433 (noting that "[t]he four-factor test [stated in *Nken*] is the 'traditional' one" (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

The determination of whether to apply the *Nken* test or the *Hirschfeld* test could conceivably be significant, as, notably, the formulation of the first *Nken* factor and analogous

third *Hirschfeld* factor are different:  under *Nken* a court considers whether an applicant has made "a strong showing that he is likely to succeed on the merits," *Nken*, 556 U.S. at 434, while under *Hirschfeld*, a court considers whether an applicant has shown "a substantial possibility, although less than a likelihood, of success on appeal," *Hirschfeld*, 984 F.2d at 39 (quotation marks omitted).  That is, the standard set by the *Nken* test is higher, as it calls for a strong showing of likelihood, of success on the merits, while the standard set by the *Hirschfeld* test is lower, as it requires a substantial possibility, "although *less than a likelihood*," of success. *Hirschfeld*, 984 F.2d at 39 (emphasis added).

The Court finds that the *Nken* test is the appropriate test to apply, as opposed to the *Hirschfeld* test, for at least two reasons.  First, the *Nken* test was issued by the Supreme Court, and the courts of the Second Circuit are "'bound to follow the existing precedent of the Supreme Court until that Court tells us otherwise.'"  *McKinney v. City of Middletown*, 49 F.4th 730, 746 (2d Cir. 2022) (quoting *New York State Citizens Coalition for Children v. Poole*, 922 F.3d 69, 79 (2d Cir. 2019)).  And second, the *Hirschfeld* test predates the *Nken* test by sixteen years, and relies on precedent from the Supreme Court from 1976 to support its formulation.  *Nken* is therefore the more recent, and binding, formulation for how a court in the Second Circuit should consider a request for a stay pending appeal, and this Court will therefore apply it.  *See Chafin*, 568 U.S. at 179 (applying the *Nken* test in 2013).  And unsurprisingly, both the Second Circuit and courts within the Second Circuit have reached the same conclusion.  *See, e.g., Mahdawi v. Trump*, 136 F.4th 443, 449 (2d Cir. 2025) (applying *Nken*); *In re GOL Linhas Aéreas Inteligentes S.A.*, 2025 WL 15918330, at *3 (S.D.N.Y. June 5, 2025) (applying *Nken*); *Morales v. Escobar*, 2025 WL 1070234, at *1-2 (E.D.N.Y. April 9, 2025) (applying *Nken*).

*Applying the* Nken *Test*

In *Nken*, the Supreme Court provides helpful guidance as to how to apply the several factors that the test articulates. The Supreme Court held that "[t]he first two factors of the . . . standard are the most critical" for a court's evaluation of whether to grant a stay pending appeal. *Nken*, 556 U.S. at 434. The Court further articulates what the standard entails as to the first two factors. *Nken*, 556 U.S. at 434-35. In particular, as the Supreme Court explains, "it is not enough that the chance of success on the merits be 'better than negligible' . . . '[m]ore than a mere "possibility" of relief is required.' By the same token, simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citations omitted) (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999); *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998)).

That is, in applying the four *Nken* factors, a court must consider all four factors, and assess the strengths and weaknesses of each, because the degree to which a factor is dispositive varies with the other factors' strengths. *See In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (holding that "the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other" (quotation marks omitted)); *In re A2P SMS Antitrust Litig.*, 2014 WL 4247744, at *2 (S.D.N.Y Aug. 27, 2014). At the same time, the moving party must show "'satisfactory' evidence on all four" factors in order to succeed in its request for a stay. *Bijan-Sara Corp. v. Fed. Deposit Ins. Corp. (In re Bijan-Sara Corp.)*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996) (quoting *In re Charles and Lillian Brown's Hotel, Inc.*, 93 B.R. 49, 53 (Bankr. S.D.N.Y 1988). The Second Circuit "has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed." *Adelphia*, 361 B.R. at 347.

Finally, the court's determination of a motion for a stay pending an appeal is "'an exercise of judicial discretion'" and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of discretion." *Nken*, 556 U.S. at 434 (quoting *Virginian Ry. Co. v. United States*, 47 U.S. 658, 672-73 (1926)). *See New York v. United States Department of Homeland Security*, 974 F.3d 210, 214 (2d Cir. 2020) (noting that the assessment of a motion for stay pending appeal is a discretionary question for the court, and that the movant bears the burden of showing that the stay is justified); *Morales*, 2025 WL 1070234, at *2 (same).

### *Nken* Factor 1: Whether the Applicant Has Made a Strong Showing of Likelihood of Success on the Merits

Under the first *Nken* factor, the moving party must demonstrate a "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434. In *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, the Second Circuit indicated that the analysis for whether an applicant has made a strong showing that it is likely to succeed on the merits can be accomplished by considering the merits of the applicant's argument under the "established 'serious questions' standard." *Citigroup*, 598 F.3d 30, 37-38 (2d Cir. 2010) (noting that the Supreme Court, in *Nken*, acknowledged that the standard for granting a stay pending appeal "overlap[s] substantially with the preliminary injunction standard" (citing *Nken*, 556 U.S. at 534)).

"It is well-established in this circuit that a party seeking a stay may satisfy the first factor – 'likelihood of success' – by showing that there are 'serious questions' going to the merits of the dispute and that the balance of hardships tips decidedly in its favor." *Starke*, 2017 WL 11504823, at *2.

Ultimately, "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Mohammed v. Reno*, 309 F.3d

95, 101 (2d Cir. 2002) (quoting *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977)).  As the *Mohammed* court observed, "[s]imply stated, more of one excuses less of the other."  309 F.3d at 101 (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)) (citation omitted).

<u>*Nken* Factor 2: Whether There Will Be Irreparable Injury to the Applicant Absent a Stay</u>

Under the second *Nken* factor, an applicant seeking a stay pending appeal must show that "the applicant will be irreparably injured absent a stay."  *Nken*, 556 U.S. at 434.  The Second Circuit has held that "[i]rreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Scheiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015); *Adelphia*, 361 B.R. at 347 (holding that the harm must be "neither remote nor speculative, but actual and imminent").

The Supreme Court has held, and courts in this Circuit agree, that

> The key word in this consideration is *irreparable*. Mere injuries, however substantial in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson*, 415 U.S. at 90.  *See Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) (quoting *Sampson*) (noting that there is not irreparable harm "where monetary damages may provide adequate compensation").

Courts in this Circuit have also found that irreparable injury may occur absent a stay in time-sensitive contexts, such as an election or a foreclosure sale.  *See, e.g., Hirschfeld*, 984 F.2d at 39 (2d Cir. 1992) (holding that the public's interest in proper election would be compromised if an action to remove candidate's name from ballot was not stayed); *In re Zahn Farms*, 206 B.R.

20

1997 (B.A.P. 2d Cir. 1997) (finding that a debtor's right to appeal from lift stay order would be compromised if the foreclosure sale and replevin of encumbered personalty was not stayed).

*Nken* Factor 3: Whether the Issuance of the Stay Will Substantially Injure Non-Moving Parties

Under the third *Nken* factor, the applicant for a stay must establish that "issuance of the stay will [not] substantially injure the other parties interested in the proceeding." *Nken*, 556 U.S. at 434. "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *Adelphia*, 361 B.R. at 349.

*Nken* Factor 4: Whether the Stay Is in the Public Interest

Finally, under the fourth *Nken* factor, the applicant must demonstrate that the public interest will not be adversely affected if a stay pending appeal is granted. *Nken*, 556 U.S. at 434. This factor of the test balances the goals of efficient case administration and the right to meaningful review on appeal. *Adelphia*, 361 B.R. at 349 (taking into consideration that "'the public interest factors the expedient administration of . . . bankruptcy proceedings,'" while also noting that parties "'have a right to appellate review'" (quoting *In re Savage & Assocs.*, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2025); *In re Agent Orange Prod. Liab. Litig.*, 804 F.2d 19, 20 (2d Cir. 1986)).

\*          \*          \*

Having established that the *Nken* test is the appropriate test to apply to the facts in this case, and clarified what guidance the law in this Circuit offers to courts on how to apply the *Nken* factors, the Court now considers each factor of the *Nken* test in turn, considering that the resolution of this motion is "'an exercise of judicial discretion'" and that the Defendants "bear[] the burden of showing that the circumstances justify an exercise of discretion." *Nken*, 556 U.S. at 434 (quoting *Virginian*, 47 U.S. at 672-73).

<u>Nken *Factor 1:  Whether the Defendants Have Made a Strong Showing that They Are Likely to Succeed on the Merits*</u>

Factor 1 under *Nken* is that the moving party must demonstrate a "whether the stay applicant has made a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434.  In analyzing the first *Nken* factor, the Court must consider the Defendants' arguments in their motions for leave to appeal, to determine whether they have made a strong showing that they are likely to succeed on the merits of those arguments.  In addition, the Court considers the additional question raised by the Defendants – that is, how, if at all, whether the Supreme Court's recent decision in *CASA* affects the Defendants' likelihood of success on the merits.

<u>Whether the Defendants Have Made a Strong Showing that They Are Likely to Succeed on the Merits Due to the Supreme Court's Decision in *Trump v. CASA*</u>

In the Trust Defendants' and Firstmark's June 30, 2025, letters they assert, in substance, that the Supreme Court's decision in *CASA* effectively invalidates this Court's Decision and Order, and that if the Court does not simply vacate the Decision and Order, that it should afford the Defendants an opportunity to provide the Court with briefs that address the effect of the *CASA* decision on the Decision and Order.  ECF Nos. 729, 730.

The PHEAA Reply also addresses the *CASA* decision and argues that it is a "controlling decision that renders the [Decision and] Order erroneous.  Thus the Order should be stayed pending appeal."  PHEAA Reply at 2.  Noting that the *CASA* decision distinguishes between "universal injunctions" and "properly conducted class actions," PHEAA argues that the injunctive relief in the Decision and Order is invalid, because here, "there is no certified class – there is only a putative class, which does not count."  Reply at 3 (quoting *CASA*, 2025 WL 1773631, at *10 (2025)).

To be sure, the Supreme Court's *CASA* decision is late-breaking news.  And, it is Supreme Court authority, so this Court must consider it with care.  In particular, the Court considers the *CASA* decision in the context of whether the Defendants have made a strong showing that they are likely to succeed on the merits of an appeal of the Decision and Order.  In addressing the question in the context of a motion to stay pending appeal, the Court looks to see if there is a strong showing that the movant is likely to succeed on the merits by determining whether there is a "serious question" going to the merits of the dispute, and whether the balance of the hardships tips decidedly in the movant's favor.  *Citigroup*, 598 F.3d at 37-38.

At the outset, the Court notes that in *CASA*, the Supreme Court takes care to distinguish – and to distinguish clearly – between "universal injunctions" which "reach *anyone* affected by legislative or executive action—no matter how large the group or tangential the effect," and the "modern class action."  CASA, 2025 WL 1773631, at *9 (emphasis in original).  The Supreme Court notes that the strictures of Rule 23 in fact "underscore a significant problem with universal injunction," namely, that class actions "'can come about in federal courts in just one way— through the procedure set out in Rule 23.'"  *CASA*, 2025 WL 1773631, at *10 (quoting *Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011).  On the other hand, "universal injunctions circumvent Rule 23's procedural protections," permitting the creation of quasi-class actions with ease.  *CASA*, 2025 WL 1773631, at *10.  Viewed another way, to the extent that *CASA* describes a problem with "universal injunctions," it also points to a solution embedded in the Federal Rules – a Rule 23 class action.

Here, by contrast, the injunctive relief established by the Decision and Order is not the "universal injunction," "quick fix" "class-action workaround" type conceived of by the Supreme Court.  *Id*.  Instead, the Decision and Order enjoin parties from collecting on certain loans held

by "Ms. Golden and the Putative Class members, as the class is described in the Amended Complaint, that have an outstanding subject to collection." Order, at 8-9. This simply is not the same as, or even comparable to, enjoining "*anyone* affected by legislative or executive action – no matter how large the group or tangential the effect." *CASA*, 2025 WL 1773631, at *9.

Rather, the Amended Complaint limits the putative class to people who have (1) declared bankruptcy; (2) since 2005; (3) with loans owned and or serviced by Defendants; (4) that do not meet the definition of a non-dischargeable qualified education loan in IRC § 221(d) and 11 U.S.C. § 523(a)(8)(B). *See* Am. Compl. The very framework of the putative class limits the potential reach of the injunctive relief, and accordingly the Injunction is not an impermissible "universal injunction," as described in *CASA*.

PHEAA also argues that *CASA* does not permit a preliminary injunction to apply to a putative class, and instead, that a certified class is necessary. PHEAA Reply at 3. And PHEAA further argues that, because this Court did not address the class certification question before deciding the Preliminary Injunction Motion, the putative class members are not before the Court, and therefore, cannot be within the scope of the Injunction. PHEAA Reply at 4.

But PHEAA's argument goes far beyond the Supreme Court's holding in *CASA*. Although PHEAA suggests that "the Supreme Court held . . . that universal injunctions may not be issued against nonparties or when a class has not been certified under Rule 23," the Court's decision does not go that far. PHEAA Reply at 2. In *CASA*, the Supreme Court does not distinguish between a putative and certified class, but rather between class actions on the one hand, as being limited by the strictures of Federal Rule of Civil Procedure 23, and universal injunctions, on the other, as a limitless "quick fix" that serve as a "class-action workaround." *CASA*, 2025 WL 1773631, at * 10.

Here, the Injunction is limited to a putative class.  It is bound, in process and in substance, by Rule 23.  It is not a "quick fix" or a "class-action workaround."  Accordingly, *CASA* does not render it impermissible.  So, while the Court has already determined that the Injunction here does not constitute a "universal injunction" as conceived of by the Supreme Court in *CASA*, even if the Court *were* to consider the Injunction as somehow outside of or separate from the class action structures established by Rule 23, it would not come within the category of "universal injunctions" deemed impermissible by the Supreme Court.

And the Defendants' arguments are not persuasive for at least one additional reason.  If *CASA* reaches as far as they suggest, then, in substance, the Supreme Court has implicitly conditioned *any* injunctive relief – temporary or preliminary or permanent – in a putative class action on the certification of the class.  If the Supreme Court had intended so significantly to alter the landscape of relief that is available in a putative class action setting, it is hard to imagine that it would not have said so.  Therefore, it is safe to say that *CASA* points to class actions as the solution, not the problem, to the circumstances that it describes.

For these reasons, the Court concludes that the Defendants have not made a strong showing of likelihood of success on the question of whether the Supreme Court's *CASA* decision renders the Decision and Order invalid.

### Whether PHEAA and Firstmark Have Made a Strong Showing that They Are Likely to Succeed on the Merits of Their Argument that the Court Misapplied Rule 19

In their motions for leave to appeal PHEAA and Firstmark each address the question of whether the Court erred as a matter of law in concluding that Federal Rule of Civil Procedure 19(a) prohibits injunctive relief here because loan owners and other entities have not been joined as parties to the case.  PHEAA Motion for Leave at 20-27; Firstmark Motion for Leave at 14-21.

25

As to the question of whether the bankruptcy court erred as a matter of law in applying Rule 19(a), this is, in effect, a question that the Court has already addressed extensively in the Decision and Order.  Decision at 113-25.  In addressing the question in the context of a motion for a stay pending appeal, the Court looks to see if there is a strong showing that the movant is likely to succeed on the merits by determining whether there is a "serious question" going to the merits of the dispute, and whether the balance of the hardships tips decidedly in the movant's favor.  *Citigroup*, 598 F.3d at 37-38.

First, the Court considers whether there is a serious question going to the merits as to whether the Court erred as a matter of law in considering whether the joinder of additional parties is required under Rule 19(a) for this case to proceed.

PHEAA and Firstmark argue that the Court erred as a matter of law because it did not apply Rule 19(a)(1)(A), and only applied Rule 19(a)(1)(B), to determine whether the absent loan owners and other entities are required to be joined to the case.  PHEAA Motion for Leave at 20-25; Firstmark Motion for Leave at 14-17.

But here, PHEAA and Firstmark fail to consider the entirety of this Court's decision.  To be sure, in the Decision and Order, the Court makes several specific references to the requirement of Rule 19(a)(1)(B).  But, as the Decision and Order reflect, the Court also considered the language of Rule 19(a)(1)(A).  For example, in the Decision, the Court, citing 4 James Wm. Moore et al., Moore's Federal Practice § 19.03[2][d] (3d ed. 2024), found that joinder should not be compelled when meaningful relief can be granted without the absent party. Decision at 123.  *See* Fed. R. Civ. P. 19(a)(1)(A) (providing that "[a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, *the court cannot accord complete relief*

*among existing parties*" (emphasis added)).  The Court then explicitly held, "*here, the Court is satisfied that it can afford meaningful relief among the parties to this action*."  Decision at 124 (emphasis added).

As to this argument, therefore, there is no serious question going to the merits as to whether the Court erred as a matter of law by somehow overlooking or omitting to consider this Rule 19 issue; rather, the Court considered this issue in analyzing the Preliminary Injunction Motion, and the Decision and Order sets forth the Court's reasoning on this issue.  PHEAA and Firstmark may disagree with the Court's assessment of the impact of Rule 19 here, but that is not the same thing as a failure to consider and apply the Rule.

PHEAA and Firstmark also argue, as they did in their briefs on the Preliminary Injunction Motion, that the Court improperly found that a servicer could substitute for a necessary party where it was not the owner of a loan.  PHEAA Motion for Leave at 25-26; Firstmark Motion for Leave 17-20.  Here again, the Court considered this issue in its Decision and Order.  *See* Decision at 119-22.  In particular, the Court considered several cases holding that a servicer had standing to be the party in interest in a variety of motions.  *See* Decision at 120-22 (citing *In re Conde-Dedonato,* 391 B.R. 247 (Bankr. E.D.N.Y. 2008) (holding that "[a] servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer"); *Densmore v. Litton Loan Servicing* (*In re Densmore*), 445 B.R. 307, 311 (Bankr. D. Vt. 2011) (finding that a servicer had authority to file a proof of claim); *In re Minbatiwalla,* 424 B.R. 104, 108-09 (Bankr. S.D.N.Y. 2010) (same); *In re Alcide,* 450 B.R. 526, 529 (Bankr. E.D. Pa. 2011) (concluding that "a servicer's financial interest in the debtor's unpaid stream of mortgage payments satisfies the initial, and most fundamental, requirement for 'party in interest' status . . . but does not automatically meet the

27

prudential requirement that the movant assert its own legal rights, not that of a third party"); *In re Hayes*, 393 B.R. 259, 267 (Bankr. D. Mass. 2008) (noting that courts "have held that mortgage servicers are parties in interest with standing by virtue of their pecuniary interest in collecting payments under the terms of the notes and mortgages they service"); *In re Hwang*, 438 B.R. 661 (C.D. Cal. 2010) (finding that the bankruptcy court had abused its discretion in holding that a servicer was not a real party in interest with standing to move for stay relief).

That is, as set forth in the Decision and Order, the Court found that the caselaw in this Circuit and beyond demonstrates that a servicer can be a real party in interest where it is not the owner of a loan.  So, as to this argument as well, the Court also finds that PHEAA and Firstmark have not shown that there is a serious question going to the merits.

One more point deserves mention.  In the Decision, the Court addressed at length the considerable body of caselaw addressing asserted Rule 19 deficiencies, and found that, "'the Rule 19 inquiry is a fact specific and practical one, which "should not be based on formalistic or mechanistic grounds but rather on pragmatic analysis of the effect of a potential party's absence."'" Decision at 114 (quoting *Polargrid LLC v. Videsh Sanchar Nigam Ltd.*, 2006 WL 2266351, at *9 (S.D.N.Y. Aug 7, 2006) (quoting *Southeastern Sheet Metal Joint Apprenticeship Training Fund v. Barsuli*, 950 F. Supp. 1406, 1414 (E. D. Wis. 1997))).  *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (finding that Rule 19 is "a practical [rule] and fact specific, and is designed to avoid the harsh results of rigid application").

The Court also found that, in substance, neither courts not parties are helpless in the face of a possible need to join a party to meet Rule 19's requirements.  Instead, as this Court explained, Rule 19, and the cases that interpret, provide a toolkit for parties and courts:

> A plaintiff may plead a reason for nonjoinder under Rule 19(c), if the absent parties are "needed for a just adjudication of the action but . . . have not been joined and

give the reasons for failing to join them." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1625 (4th ed. 2024). And Rule 15(a)(2) permits a plaintiff who has not named a necessary party to seek the opposing parties' consent or leave of court to amend the pleadings. Fed. R. Civ. P. 15(a)(2).

A defendant may address nonjoinder by filing a pre-answer motion to dismiss on grounds of nonjoinder under Federal Rule of Civil Procedure 12(b)(7), or by asserting the defense of nonjoinder in its answer. *See* 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1609 (4th ed. 2024); 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.02[4][b][i] (3d ed. 2024). It is worth noting that here, Firstmark asserted the affirmative defense of lack of joinder in its Answer to the Amended Complaint, but PHEAA and the Trust Defendants do not do so. *See* Firstmark Answer to the Amended Complaint, ECF No. 125, at 18-19.

And where the affirmative defense of nonjoinder of a necessary party is advanced, a court may order the absent party to be brought into the action. As one commentator explains, when nonjoinder is raised by a party, and the "burden is on the party raising the defense to show that the absentee is required to be joined under Rule 19 . . . the court initially will determine if the absentee should be joined as a party . . . [and i]f it decides in the affirmative, the court will order the absentee brought into the action." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1609 (4th ed. 2024). *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.02[3][b] (3d ed. 2024) (stating that "[i]f the court determines that the absentee is necessary and that joinder is feasible, it may permit the plaintiff to effect it or may order that the absentee be joined.")

To be sure, a court also has options to address a situation that raises issues under Rule 19. For example, in situations where not all parties can be joined due to "limitations on service of process, subject matter jurisdiction, and venue," a court has the discretion to make a practical and pragmatic choice "between the alternatives of proceeding with the action in the absence of particular interested persons, and dismissing the action." Fed. R. Civ. P. 19 Advisory Committee's Note to 1966 Amendment. *See* 4 James Wm. Moore et al., *Moore's Federal Practice* § 19.06[1] (3d ed. 2024) (stating that "Rule 19 prescribes a pragmatic process for determining whether an absentee's joinder must be compelled").

Decision at 122-23.

But here, the Defendants do not address that authority, or the toolkit – with options available to plaintiffs, defendants, and the Court as well – that it identifies. That is, they embrace the problem that they see in Rule 19's requirements, but disregard the practical solutions that courts and parties have crafted to address those circumstances. As a consequence, their argument is as incomplete as it is unavailing.

In the absence of a "serious question" that goes to the merits of this issue on appeal, the Defendants have not made a strong showing that they have a likelihood of success on the merits of their appeal.  For these reasons, and based on the entire record, the application of *Nken* factor 1 to this issue weighs against the entry of a stay pending appeal.

<u>Whether the Defendants Have Made a Strong Showing that They Are Likely to Succeed on the Merits of Their Argument that the Court Misinterpreted the Second Circuit's Holding in *Bruce*</u>

PHEAA, Firstmark, and the Trust Defendants each argue in their motions for leave to appeal that this Court erred as a matter of law in interpreting and applying the Second Circuit's ruling in *Bruce*.  PHEAA Motion for Leave at 27-37; Firstmark Motion for Leave at 21-28; Trust Defendants Motion for Leave at 12-14, 18.

Again, the Defendants are raising, in effect, a question that the Court has already addressed extensively in the Decision and Order.  Decision at 125-37.  And here again, in addressing the question in the context of a motion for a stay pending appeal, the Court looks to see if there is a strong showing that the movant is likely to succeed on the merits by assessing whether there is a "serious question" going to the merits of the dispute, and whether the balance of the hardships tips decidedly in the movant's favor.  *Citigroup*, 598 F.3d at 37-38.

In their motions for leave to appeal, the Defendants acknowledge, in substance, that *Bruce* does not address the question of whether a "Bankruptcy Court has the ability to adjudicate the violation of other courts' discharge orders other than by contempt order."  PHEAA Motion for Leave at 30, Trust Defendants Motion for Leave at 12 (suggesting that this Court strained to fit a reading that the *Bruce* Court did not rule as to that question into "a footnote in the *Bruce* decision that seems to suggest that there could be some circumstance somewhere that does allow a Bankruptcy Court to certify a national class").  Instead, they assert that this Court misinterprets

*Bruce* in deciding the Preliminary Injunction Motion, and in granting the Decision and Order a declaratory judgment with ancillary relief that affects debtors outside the Eastern District of New York.  PHEAA Motion for Leave at 27-37; Firstmark Motion for Leave at 21-28; Trust Defendants Motion for Leave at 12-14.

Here again, perhaps unsurprisingly, the Defendants' arguments are substantially similar to their arguments in opposition to the Preliminary Injunction Motion.  *Compare* PHEAA Motion for Leave at 27-37, Firstmark Motion for Leave at 21-28, *and* Trust Defendants Motion for Leave at 12-14, 18, *with* Trust Defendants, PHEAA, and Firstmark's Opposition to the Preliminary Injunction Motion, ECF Nos. 627, 630, 637, PHEAA's memorandum of law regarding the impact of *Bruce*, ECF No. 634, *and* Decision at 125-37.

And in turn, the Court's analysis is also much the same.  In *Bruce*, the Second Circuit was careful to narrowly hold that it found only that "bankruptcy court's civil contempt authority does not extend to other bankruptcy courts' discharge orders in a nationwide class action." *Bruce*, 75 F.4th at 306.  As this Court held in the Decision:

> The Second Circuit also took care to explain what it was *not* deciding in *Bruce*. As the court found, the plaintiff's arguments on appeal that "she (and her proposed fellow class members) are entitled to declaratory relief and damages" presented an issue that it need not reach or determine. *Bruce*, 75 F.4th at 306 n.9. As the court observed, "[w]hether and to what extent relief short of contempt sanctions is available in the case of a discharge violation for which a fair ground of doubt remains is *a question for another day*."

Decision at 126 (quoting *Bruce*, 75 F.4th at 306 n.9 (emphasis added)).  *See Anderson v. Credit One Bank, N.A.* (*In re Anderson*), 2025 WL 957097, at *19 (Bankr. S.D.N.Y. Mar. 28, 2025) (quoting *Bruce*, 75 F.4th at 306 n.9) (noting that "whether a declaratory judgment claim . . . could be maintained on a class wide basis" was an issue the *Bruce* court determined it did not need to decide, and expressly indicated that it was question that remained for another day).

And while Ms. Golden initially sought to pursue claims for contempt, on behalf of a nationwide class, and on a nationwide basis, Ms. Golden now acknowledges that, in light of *Bruce*, her "contempt-based national class claims are no longer viable." Plaintiff's Memorandum of Law in Support of Her Motion for Class Certification, ECF No. 621, at 9. *See* Am. Compl. ¶¶ 74-76. Accordingly, Ms. Golden now seeks a declaratory judgment that the loans at issue here were discharged, and ancillary injunctive relief, against all of the Defendants. *See* Complaint, ECF No. 1, at ¶¶ 21-37; Am. Compl. ¶¶ 70-86.

That is, the vehicle for Ms. Golden's claims is no longer a contempt claim, in accordance with the Second Circuit's ruling in *Bruce*. *Bruce*, 75 F.4th at 306. As this Court noted in its Decision, other courts may adjudge the question of the dischargeability of a debt, and other courts have certified class actions relating to determinations of dischargeability. Decision at 130-32 (citing *In re Anderson*, 2025 WL 957097, at *26 (holding that "a claim seeking declaratory judgment for a violation of the Bankruptcy Code, and specifically in this case Section 524, would not be futile); *In re Homaidan*, 640 B.R. at 863 (noting that a court has the power to deny a "motion to dismiss a putative nationwide class action asserting" discharge violations) (quoting *Vick v. NCO Fin. Sys., Inc.*, 2010 WL 1330637, at *4 (E.D. Tex. Mar. 15, 2010), *report and recommendation adopted*, 2010 WL 1328830 (E.D. Tex. Mar. 30, 2010))); *Turner v. Talbert* (*In re Talbert*), 347 B.R. 804, 807 (Bankr. E.D. La. 2005) (holding that "dischargeability proceedings may be prosecuted as class actions"); *Santa v. Lebner* (*In re Lebner*), 197 B.R. 180, 188 (Bankr. D. Mass. 1996) (noting that "[t]he majority of courts addressing the issue of the permissibility of class actions in discharge litigation under section 523(a) has determined that class actions are permissible"); *Lerch v. Iomazzo* (*In re Iomazzo*), 149 B.R. 767, 775 (Bankr. D.N.J. 1993) (stating that "[t]his court concludes that the more persuasive

view is that class actions are permitted by Fed. R. Bankr. P. 7023 in adversary proceedings under

Bankruptcy Code § 523(c)"); *Rosario v. Livaditis* (*In re Livaditis*), 132 B.R. 897, 901 (Bankr.

N.D. Ill. 1991) (observing that "a class dischargeability action may proceed under 11 U.S.C.

§ 523"); *Dickinson v. Duck* (*In re Duck*), 122 B.R. 403, 405 (Bankr. N.D. Cal. 1990) (holding

that a class dischargeability action may be maintained in bankruptcy court because, among other

reasons, "Bankruptcy Rule 7023 contains no exception for nondischargeability actions"); *Craig*

*v. Loan Servicing Center* (*In re Craig*), 56 B.R. 479, 480 (Bankr. W.D. Mo. 1985) (holding that a

state court may make determinations as to dischargeability)).

Accordingly, for these reasons, and based on the entire record, the Court does not find

that the Defendants have raised a serious question of law going to the merits, and therefore, the

Court finds that the Defendants have not made a serious showing of a likelihood of success as to

their arguments concerning this Court's asserted misinterpretation of *Bruce*.

### Whether the Trust Defendants Have Made a Strong Showing that They Are Likely to Succeed on the Merits of Their Argument that the Court Exceeded Its Jurisdiction in Entering the Decision and Order, and Issued an Impermissibly Vague Injunction

The Trust Defendants Motion for Leave raises the additional question of whether the

Injunction entered by the Court was impermissibly vague and exceeded the Court's jurisdiction

and authority.  Trust Defendants Motion for Leave at 9-12, 14-16.  In addressing this question in

the context of a motion to stay pending appeal, the Court looks to see if there is a strong showing

that the movant is likely to succeed on the merits by determining whether there is a "serious

question" going to the merits of the dispute, and whether the balance of the hardships tips

decidedly in the movant's favor.  *Citigroup*, 598 F.3d at 37-38.

Much like the arguments that the Defendants all make with respect to *CASA* and *Bruce*,

the Trust Defendants here argue that nationwide injunctions should viewed with skepticism and

suspicion, and that Article III cabins the federal courts, so that their exercise of judicial power may be directed only to "resolve disputes between parties, not to make laws of general applicability." Trust Defendants Motion for Leave at 10. In substance, the Trust Defendants argue that injunctions that touch individuals who are not parties to suits are improper, and that "Rule 23 minimizes th[is] risk." Trust Defendants Motion for Leave at 10 (citing *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-14 (1985)). So, because the Injunction extends not to a certified class, but to a putative class, the Trust Defendants argue that the Injunction does not "even consider[] Rule 23." Trust Defendants Motion for Leave at 11. The Trust Defendants further argue that if the Injunction is to allowed stand for now, while their request to appeal is pending, that borrowers might unwittingly be harmed if collections resumed following a possible reversal of the Decision and Order. Trust Defendants Motion for Leave at 11-12. Finally, the Trust Defendants argue that the Injunction is impermissibly vague, because it does not adequately describe the categories of loans that it enjoins the Defendants from collecting on. Trust Defendants Motion for Leave at 14-16.

As to the argument that the Court's injunction is impermissible because it exceeds the Court's authority, the Trust Defendants' argument may well prove too much. Much like in the Court's analysis of the Defendants' arguments concerning the *CASA* decision, here the very fact that Ms. Golden's Preliminary Injunction Motion sought to enjoin the Defendants specifically and explicitly as to certain types of loans held by a putative class is evidence that the Injunction is not a "law of general applicability," and that Ms. Golden's has, at the outset, aimed to tailor the relief sought to the categories of assertedly discharged debt at issue, all within the parameters of Federal Rule of Civil Procedure 23. *See* Trust Defendants Motion for Leave at 10 (citing *Philips Petroleum Co. v. Shutts*, 472 U.S. 797, 806-14 (1985)). The fact that Ms. Golden has

been working for years to certify the putative class through multiple motions simply confirms that the Injunction here is bound by the framework of Rule 23. ECF Nos. 255, 621. So, the Trust Defendants are mistaken when they argue that Injunction does not "even consider[] Rule 23." Trust Defendants Motion for Leave at 11. The Court does not find that this argument presents a serious question going to the merits of the Defendants' appeal.

As to the Trust Defendants' argument that, if the Injunction is not to be stayed, borrowers might unwittingly be harmed if collection were to resume if the Decision and Order is vacated, here too the Court finds that this argument does not raise a serious question going to the merits. Trust Defendants Motion for Leave at 11-12. This argument seems to be based on a hypothetical assumption that certain borrowers might be harmed if the Injunction is vacated, and that assumption is neither persuasive nor a legal argument that supports their request for a stay.

Finally, the Trust Defendants argue that the Injunction is impermissibly vague, because it does not adequately describe the type of loans that it enjoins the Defendants from collecting. Trust Defendants Motion for Leave at 14-16. This argument also does not present a serious question going to the merits of the Defendants' appeal. As discussed above, the Injunction is, in fact, narrowly tailored, because it applies to loans owned or serviced by the Defendants, that are held by the putative class, a group which consists of individuals who have (1) declared bankruptcy; (2) since 2005; (3) holding loans owned and or serviced by Defendants; (4) that do not meet the definition of a non-dischargeable qualified education loan in IRC § 221(d) and 11 U.S.C. § 523(a)(8)(B). That is, it applies to particular types of borrowers, and categories of discharged debt, as described in the Amended Complaint and in this Court's decisions. The Trust Defendants may disagree with the Court's conclusions and the injunction that results from them, but that does not render the Injunction vague.

Regarding this argument, the Trust Defendants specifically suggest that the vagueness arises due to the Court's usage of the phrase "exceed the cost of attendance" without any guidance as to what that means.  Trust Defendants Motion for Leave at 14-15.  Here too, this argument comes up short.  The Court has thoroughly and extensively addressed the meaning of "cost of attendance" for the purposes of distinguishing whether the private student loans at issue here are within Ms. Golden's and the putative class members bankruptcy discharges.  Decision at 79-82.

And this Court has elsewhere observed that "cost of attendance" does not account for all possible expenses by the student, but rather consists of "'the "amounts determined by the university" based on specified criteria including tuition and fees, room and board, "books, materials, supplies, transportation, and 'miscellaneous personal expenses'" [which] are "determined by the university" and reported on the IPEDS data system.'"  Decision at 81 (quoting *Homaidan v. Sallie Mae, Inc.* (*In re Homaidan*), 650 B.R. 372, 417 (Bankr. E.D.N.Y. 2022)).  The Court then explicitly held that "the appropriate figure for 'cost of attendance' is not a particular student's likely 'total budget,' but the amount that is determined by the university based on the relevant criteria and reported on the IPEDS data system."  Decision at 81.

Accordingly, for these reasons, and based on the entire record the Court does not find that the Defendants have raised a serious question of law going to the merits, and therefore, the Court finds that the Defendants have not made a serious showing of a likelihood of success as to their arguments that Injunction entered by the Court was impermissibly vague and exceeded the Court's jurisdiction and authority.

*          *          *

In sum, for all of these reasons, based on the entire record, factor 1 of the *Nken* test does not weigh in favor of granting the Defendants' Motion to Stay, because the Defendants have not made a strong showing of a likelihood of success on the merits as to any of the issues they have raised in their motions for leave to appeal to the district court.

Nken *Factor 2:  Whether the Defendants Have Shown that They Will Be Irreparably Injured Absent a Stay*

Factor 2 under *Nken* is "whether the applicant will be irreparably injured absent a stay." *Nken*, 556 U.S. at 434.  The harm must be "neither remote nor speculative, but actual and imminent."  *In re Adelphia*, 361 B.R. at 347 (citing *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).  As the Supreme Court explained, "[t]he key word in this consideration is *irreparable*.  Mere injuries, however substantial in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."  *Sampson*, 415 U.S. at 90.  Viewed another way, the movant must demonstrate that this injury cannot be remedied absent a stay and that monetary relief will not be adequate.  *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011).

The Defendants argue that they have suffered irreparable injury in preparing to comply with the Injunction, because compliance has required them to review their loan portfolios to determine which loans are implicated by the Decision and Order, and because conducting that review was time consuming and expensive.  PHEAA Brief at 11; Firstmark Brief at 4; PHEAA Reply at 8-9.  In addition, PHEAA argues that it has been irreparably harmed because this Court did not direct Ms. Golden to post a bond, and Ms. Golden did not post a bond.  PHEAA Reply at 10.  Finally, the Defendants argue that irreparable injury is demonstrated by the fact that in

37

addition to themselves, other third parties, including the absent loan owners, will be harmed. PHEAA Brief at 11; Firstmark Brief at 3; PHEAA Reply at 9.

As to the Defendants' arguments that the harm they have suffered and will continue to suffer in complying with the Injunction, these costs and burdens do not appear to rise to the level of irreparable harm. As the Defendants acknowledge, the nature of the harm they have suffered, and will suffer, is largely time and expense. PHEAA Brief at 11; Firstmark Brief at 4; PHEAA Reply at 8-9. But it is well established that these kind of burdens can be remedied, if necessary, through monetary relief. *See*, *e.g.*, *Sampson*, 415 U.S. at 90 (observing that "[m]ere injuries, however substantial in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough"); *Scheiderman*, 787 F.3d at 660; *Dexter 345 Inc. v. Cuomo*, 663 F.3d at 63; *Jayaraj*, 66 F.3d at 39. *See* Golden Opposition at 4-5 (quoting *Toney-Dick v. Doar*, 2013 WL 1314954, at *9 (S.D.N.Y. March 18, 2023) (noting that "[i]t is well settled that an alleged harm that 'can be remedied in money damages is the antithesis of irreparable harm, and such a fact requires that the Court not find an irreparable injury'").

As to PHEAA's argument as to the absence of a direction to post a bond, and the lack of any bond posted by Ms. Golden, PHEAA Reply at 10, this argument is, again, one averring monetary damages, and therefore cannot form the basis for a finding of irreparable harm. *See Sampson*, 415 U.S. at 90.

Separately, PHEAA attempts to distinguish the cases cited by Ms. Golden concerning monetary damages being insufficient to establish irreparable injury on grounds that they address the entry of an injunction, not the stay of an injunction. PHEAA Reply at 9. *See* Golden Opposition at 4-5. But this distinction is unavailing because, as the Supreme Court has held, there is little difference in the standard for the two forms of relief. As the Supreme Court

acknowledged in *Nken*, the standard for granting a stay pending appeal is related to the standard for granting a preliminary injunction, and the Second Circuit has also noted that the *Nken* standard "overlap[s] substantially with the preliminary injunction standard." *Citigroup*, 598 F.3d at 38 (citing *Nken*, 556 U.S. at 434). *Compare Nken*, 556 U.S. at 434 (articulating the second factor of the stay of a preliminary injunction test as "whether the applicant will be irreparably injured absent a stay") *with Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 895 (2d Cir. 2015) (omission in original) (articulating the second factor of the preliminary injunction test as "a likelihood of 'irreparable injury in the absence of an injunction.'" (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010))).

As to the Defendants' arguments that harm may well befall other parties including the absent loan owners, this argument is simply inapposite, because the *Nken* text specifies that this factor concerns whether specifically the "applicant" will suffer irreparable harm in the absence of a stay. *Nken*, 556 U.S. at 434.

And finally, as the record here establishes, the Defendants have each taken all of the necessary steps to bring their actions into compliance with the Injunction, and have done so – despite the concerns they now express as to time and expense – in just sixty days. And each Defendant confirmed on the record of this Court's July 2, 2025, hearing, that they will be fully in compliance with the injunction by July 7, 2025, the date by when compliance is required. May 28, 2025, Order, ECF No. 705, at 5 (ordering the Defendants "to have fully complied with the Injunction[] by July 7, 2025").

In sum, for these reasons, and based on the entire record, factor 2 of the *Nken* test does not weigh in favor of granting the Defendants' Motion to Stay, because the Defendants have not

shown that they would suffer irreparable harm if the Court does not issue a stay pending appeal in this case.

Nken *Factor 3:  Whether the Defendants Have Shown that the Issuance of a Stay Will Not Substantially Harm Other Parties Interested in the Proceeding*

The third *Nken* factor calls for the Court to consider "whether issuance of the stay will substantially injure other parties interested in the proceeding."  *Nken*, 556 U.S. at 434.  The party seeking the stay must establish that a stay will not substantially harm the non-moving party. *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002).  "In other words, the moving party must show that the balance of harms tips in favor of granting the stay." *Adelphia*, 361 B.R. at 349.

The Defendants argue that Ms. Golden will not be harmed by a stay because they have not been collecting on her loans, and because they do not harass Ms. Golden or any of the putative class members with their collection efforts.  PHEAA Brief at 11-12; Firstmark Brief at 4; PHEAA Reply at 10-11.  PHEAA further argues that any injury to Ms. Golden and putative class members could be rectified with monetary damages.  PHEAA Reply at 11.

Ms. Golden responds that just as the Defendants argue that monetary damages constitute irreparable injury to them, then a stay pending appeal of the Injunction will constitute substantial harm to Ms. Golden and the putative class members, because they will be subject to collection efforts again.  Golden Opposition at 5.  Moreover, Ms. Golden argues, staying the Injunction would permit the Defendants to resume collection of discharged debts, and therefore to violate the "fresh start" that debtors earn as the result of securing a bankruptcy discharge.  Golden Opposition at 5-6 (citing *In re Homaidan*, 646 B.R. at 601).

Here, the Defendants have not shown that substantial harm would not be caused by a stay of the Injunction pending appeal.  As the Court found in its Decision on the Preliminary Injunction Motion, any continuing collection and collection efforts of the Defendants as to

discharged loans held by Ms. Golden and the putative class members would risk substantial harm purely as a matter of the "'financial hardship and pressure of continuing to make payments on . . . discharged loans.'"  Decision at 101-02 (quoting Preliminary Injunction Motion at 14).

In addition, a stay of the Injunction – entered after years of discovery, motion practice, and other proceedings – would put Ms. Golden and the putative class members in the situation where the Defendants could resume collection on these loans again at any time and deprive Ms. Golden and the putative class of the benefit of their bankruptcy discharges and fresh start.  As this Court has observed, "'[o]ne of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables a debtor to receive a "fresh start."'"  *In re Golden*, 630 B.R. 896, 911 (Bankr. E.D.N.Y. July 19, 2021) (quoting *McKenzie-Gilyard v. HSBC Bank Nevada, N.A.* (*In re McKenzie-Gilyard*), 388 B.R. 474, 480 (Bankr. E.D.N.Y. 2007)).  This impingement on the centerpiece of a successful bankruptcy case is actual, imminent, and threatens to cause substantial harm that goes beyond monetary compensation.

Finally, it is worth noting that PHEAA's argument that Ms. Golden and the putative class members would not be substantially harmed by making payments on debts that have been discharged seems hard to reconcile with PHEAA's argument that the Defendants' inability to collect on these same debts somehow threatens them with irreparable injury.  PHEAA Reply at 11 (claiming that "any borrowers who made payments on discharged loans can be remedied through monetary damages").  That is, PHEAA makes this argument while simultaneously asserting that the time and money that it has spent on coming into compliance with the Injunction would cause them *irreparable injury*.  PHEAA Brief at 11 (arguing that the "compliance obligation imposes a substantial physical labor and financial burden on PHEAAA . . . [t]hat burden and injury supports this motion for a stay").  The Defendants cannot have it both ways.

That is, they cannot persuasively argue that the monetary burden on them that would be caused by their having to forbear on collecting justifies a showing of irreparable injury, while simultaneously arguing that any harm suffered by Ms. Golden or the other putative class members does not meet the lower threshold of substantial harm, because it can be compensated for with monetary damages.

In sum, for these reasons, and based on the entire record, factor 3 of the *Nken* test does not weigh in favor of granting the Defendants' Motion to Stay, because the Defendants have not shown that Ms. Golden and the putative class members would not suffer substantial harm if the Stay were issued and the Injunction lifted.

Nken *Factor 4:  Whether the Defendants Have Shown that the Public Interest Favors Granting a Stay Pending Appeal*

Factor 4 under *Nken* is the consideration of "where the public interest lies."  *Nken*, 556 U.S. at 434.

In support of the Motion to Stay, the Defendants argue that a stay of the Injunction would serve the public interest because their appeal "will resolve the legal question that *Bruce* left open."  PHEAA Brief at 13.  *See* PHEAA Reply at 11.  The Defendants also argue that a stay of the Injunction would serve the public interest because borrowers will suffer unspecified "prejudice and harm" if the "preliminary injunction is vacated."  PHEAA Brief at 13.  *See* PHEAA Reply at 12.  And Firstmark adds that the "preliminary injunction is likely to cause considerable confusion to the[] borrowers."  Firstmark Brief at 5.  The Defendants additionally argue that a stay of the Injunction would preserve the public interest because it would stop the Court from enforcing an injunction that is impermissible under the Supreme Court's recent decision in *CASA*.  PHEAA Reply at 12.

In response, Ms. Golden argues that the Court found that the granting of the Preliminary Injunction Motion was in the public interest, and therefore the Injunction that comes from the Decision and Order are in the public interest, so, by the Court's own reasoning, granting a stay that lifts the Injunction would be against the public interest.  Golden Opposition at 6.

The Court has already considered this question extensively in the Decision and Order, although from a reciprocal perspective: whether the public interest is served by the issuance of an order preliminarily enjoining the Defendants from collecting on the discharged debts held by Ms. Golden and the putative class members.  Decision at 110-12.  Looking at the question now from the perspective of where the public interest lies in determining whether to grant a stay of the Injunction does not yield a different answer.  Simply put, the public interest is not served by the collection of a discharged debt, the public interest is not disserved by enjoining that activity, and the public interest would be disserved by entering a stay of an order enjoining that activity

In addition, the Defendants' argument that the public interest would be served by the District Court's resolving "the legal question that *Bruce* left open" does not lend support to their request for a stay.  At most, it may lend credence to their argument that an interlocutory appeal should proceed at this time – but that is a different question, for a different time, and for the District Court.

As to the Defendants' argument that the stay would serve the public interest because it would prevent the Injunction from somehow causing harm and confusion to the borrowers if it is later vacated, this argument too falls short.  The Defendants suggest that any change in the effectiveness of the Injunction would cause confusion for borrowers because collections on their loans would become possible again.  But if the Court were to enter a stay of the Injunction, would this also not make collections on the loans held by Ms. Golden and the putative class

members possible again?  Would this therefore not have the same effect of confusing these same borrowers?  If anything, this argument appears to weigh in favor of maintaining the status quo, recognizing the significant efforts made and steps taken by the Defendants to come into compliance with the Injunction, and not staying the Decision and Order.

In sum, for these reasons, and based on the entire record, factor 4 of the *Nken* test does not weigh in favor of granting the Defendants' Motion to Stay, because the Defendants have not shown that the public interest would not be adversely impacted by the stay pending appeal.

### Conclusion

For the reasons stated herein, the Court finds and concludes that the Defendants have not successfully borne "the burden of showing that the circumstances justify an exercise of discretion" to enjoin a stay pending the determination of their request for an interlocutory appeal. *Nken*, 556 U.S. at 434 (quoting *Virginian*, 47 U.S. 672-73).

For these reasons, and based on the entire record, the Defendants' Motion to Stay is Denied.  An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
     July 7, 2025

**Elizabeth S. Stong**
**United States Bankruptcy Judge**